UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————— )
DAVID L. LANDAY                              )
      Plaintiff,                            )
                                            )
          v.                                )      Civil Action No. 04-cv-11955-WGY
                                            )
GMAC COMMERCIAL CREDIT LLC                  )
and GMAC COMMERCIAL FINANCE                 )
LLC,                                        )
      Defendants.                           )
———————————————————————— )

## MEMORANDUM SUPPORTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

This is the second lawsuit between defendant, GMAC Commercial Finance LLC ("GMACCF"),[1] and plaintiff, David L. Landay ("Landay"), to arise from the exact same operative facts. In the first action, a New York state court granted partial summary judgment in favor of GMACCF on all issues of liability, leaving open only the calculation of GMACCF's damages against Landay. The present action constitutes nothing more than an impermissible attempt by Landay to re-litigate issues that have already been resolved against him in New York.

For at least four reasons this Court should dismiss Landay's Federal Court complaint, pursuant to Fed. R. Civ. P. 12(c). First, forum selection clauses contained in the relevant loan documents require that Landay assert any such claims in a New York court. Second, under New York law, which governs this case, the doctrines of *res judiciata* and *collateral estoppel* bar Landay from bringing this lawsuit or re-litigating the issues already resolved in New York. Third, the express language of the applicable loan documents demonstrate that GMACCF is

---

[1]      GMAC Commercial Finance LLC is the successor by merger of GMAC Commercial Credit LLC and GMAC Business Credit LLC. In the interest of avoiding confusion, all three companies are referred to as GMACCF.

entitled to judgment on nearly all of Landay's claims. Finally, even if Landay could, in theory, state a valid claim against GMACCF – and he cannot – under the <u>Colorado River</u> doctrine, this Court should abstain from addressing any such claim.

## I.     STATEMENT OF FACTS[2]

Landay is the former president and CEO of Seneca Sports, Inc. ("Seneca"), a sporting goods distributor, and Brookfield International, Inc. ("Brookfield"), a company that sold juvenile sports equipment and sports toys. Am. Compl. ¶¶ 1, 7-8. In 2000, he sought financing to assist Seneca in an effort to acquire Brookfield. <u>Id.</u> ¶¶ 8-9. GMACCF's predecessor-in-interest provided that financing. <u>Id.</u> ¶ 11. On September 19, 2000, Seneca and Brookfield (collectively, the "Borrowers") entered into a commercial factoring agreement with GMACCF, which provided the Borrowers with a $10 million line of credit, secured by their accounts receivable and other assets (the "Factoring Agreement"). <u>Id.</u> ¶ 12; Ans. ¶ 12 & Ex. 1. On the same day, Landay executed a personal guaranty of the Borrowers' obligations to GMACCF, up to a maximum indebtedness of $3.5 million (the "Guaranty"). Am. Compl. ¶ 13; Ans. ¶ 13 & Ex. 2. Landay also provided GMACCF with a personal Standby Letter of Credit (the "First Standby Letter of Credit") in the amount of $4.1 million, Am. Compl. ¶ 14; Ans. ¶ 14 & Ex. 3, and executed a contract to subordinate to GMACCF certain indebtedness of Seneca to Landay in the amount of $3,450,000 (the "Subordination Agreement"). Am. Compl. ¶ 15; Ans. ¶ 15 & Ex. 4. When Landay signed the Guaranty, he expressly waived "the right to assert in any action or proceeding upon this guaranty any defenses, offsets or counterclaims which the undersigned may now or hereafter have." <u>Id.</u>

---

[2]     Given the procedural posture of this case, GMACCF accepts for the limited purposes of this motion facts as alleged in the First Amended Complaint, <u>See</u> <u>Furtick v. Medford Hous. Auth.</u>, 963 F. Supp. 64, 67 n.9 (D. Mass. 1997).

The Guaranty, the First Standby Letter of Credit and the Subordination Agreement were all incorporated by reference in the Factoring Agreement (collectively, the "2000 Loan Documents"). Ans., Ex. 1, ¶ 12 at pp. 10-11. The Factoring Agreement and the Guaranty provided that New York law governed the parties' transaction and required that the instructions be "construed according to the laws of the State of New York (without giving effect to its choice of law principles)." Id. ¶ 13(b) at p.11; and Ans. Ex. 2 at p. 2. The Factoring Agreement also provided that:

> [Brookfield and Seneca] agree that all actions and proceedings arising out of or relating directly or indirectly to this agreement or any ancillary agreement or any other obligations shall be litigated in the United States District Court for the Southern District of New York or, at [GMAC's] option, in any other courts located in New York State or elsewhere as we may select ... .

Id. ¶ 13(c) at 11. Similarly, the Guaranty stated that "all actions arising out of or in connection with the Guaranty may be brought in the federal or state courts of the State of New York or, at the Company's option, in any other courts as the Company may select ...." Id.

Effective as of August 9, 2001, GMACCF and the Borrowers entered into a forbearance agreement (the "Forbearance Agreement"), pursuant to which the Borrowers expressly acknowledged the existence of defaults under the Factoring Agreement and related documents. Am. Compl. ¶ 38; Ans. ¶ 38 & Ex. 6, p.1. Additionally, the Borrowers admitted that as of August 8, 2001, they owed GMACCF the aggregate principal amount of $6,719,177.62, plus other obligations. Id. at p.2. They also released and discharged GMACCF:

> and its successors and assigns from any and all actions, causes of actions, suits, debts, dues, sums of money, accounts …, contracts, controversies, agreements, promises, … claims and demands whatsoever, in law, admiralty or equity, which against [GMAC], any [Borrower], or any of its respective successors or assigns, ever had, now or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of this Forbearance Agreement arising under or in any way connected with the [2000 Loan Documents] or this Forbearance Agreement.

BOS_482850_4/JHOULIHAN

Id. ¶ 4 at pp.2-3.

The Forbearance Agreement also stated that it would be governed by New York law and that each of the Borrowers explicitly consented to the exclusive jurisdiction of the Supreme Court of the State of New York and the United States District Court for the Southern District of New York for any "action or proceeding under, arising out of or related to this Forbearance Agreement and the [2000 Loan Documents]." Id., ¶ 9(c) at p.5.

In conjunction with the Forbearance Agreement, Landay signed a Ratification and Amendment of Guaranty on August 9, 2001, which ratified "all terms and provisions of the Guaranty," acknowledged Landay's consent to the execution of the Forbearance Agreement, and increased the limit on his personal exposure to GMACCF from $3.5 million to $4.5 million (the "Ratification of Guaranty"). Am. Compl. ¶ 32; Ans. ¶ 32 & Ex. 7, pp. 1-2. In the Ratification of Guaranty Landay confirmed that his obligations under the Guaranty were due and owing to GMACCF "without offset, defense or counterclaim of any kind, nature or description whatsoever." Ans. ¶ 32 & Ex. 7, p.1.

As of September 25, 2001, the Borrowers were in default of the Forbearance Agreement. Am. Compl. ¶45. Accordingly, GMACCF demanded payment. Id. On October 15, 2001, GMACCF collected Landay's $4.1 million Standby Letter of Credit. Id. ¶ 48; Ans. ¶ 48. One week later, GMACCF took possession of the Borrowers' accounts receivable and other assets. Am. Compl. ¶ 50. GMACCF then proceeded to liquidate the Borrowers' assets with the assistance of its consultant RAS Management Advisors, Inc. ("RAS"). See generally Am. Compl. ¶¶ 51-54.

After liquidation of the Borrower's assets, GMACCF faced a deficiency of more than $1 million. It demanded that Landay, as guarantor, satisfy the deficiency. Am. Compl. ¶ 55. Landay refused, so GMACCF proceeded to litigate the parties' dispute in New York. Id. ¶ 58.

## II.     PROCEDURAL HISTORY

On or about October 25, 2002, GMACCF filed a Verified Complaint against Landay in New York.[3] The Complaint sought recovery from Landay of $1,235,055, together with contractual interest calculated at a rate of $267.69 per diem and attorneys' fees, on theories of breach of contract and account stated. See Ex. 1. Landay responded with a Verified Answer and Counterclaims, in which he disputed GMACCF's allegations and asserted nine affirmative defenses, as well as seven counterclaims.[4] GMACCF denied Landay's Counterclaims, and after some discovery, moved for summary judgment. On May 25, 2004, the New York court granted partial summary judgment in favor of GMACCC and against Landay on liability.[5] In reaching its decision, the New York court held that GMACCC was entitled to recovery for breach of contract, and that Landay could not assert defenses or counterclaims based on theories of breach of contract, breach of the implied covenant of good faith and fair dealing, fraudulent inducement, predatory lending practices, violation of Massachusetts' criminal usury statute, or a violation of Chapter 93A. See Ex. 3.

Characterizing the Guaranty as absolute and unconditional, the New York court held that Landay was bound by the terms of the Guaranty, especially since he ratified them in the Ratification of Guaranty. Id. at 10-11. The Court also held that Landay had waived his right to assert any counterclaims or defenses against GMACCF, except for those relating to whether

---

3     A copy of the Verified Complaint is attached as Exhibit 1.
4     A copy of Landay's Verified Answer and Counterclaims is attached as Exhibit 2.
5     A copy of the New York court's decision is attached as Exhibit 3.

GMACCF disposed of the Borrowers' assets in a commercially reasonable manner.[6]  Id. at 12.

The New York court based this holding on the express waiver contained in the Guaranty and its

conclusion that such waiver provisions are enforceable under New York law, even with regard to

claims of (1) lack of consideration, (2) fraud and fraudulent inducement, and (3) breach of the

covenant of good faith and fair dealing.  Id.

The New York court also held that Landay could not assert claims and defenses

belonging to the Borrowers, because they were no longer going concerns and Landay neither

controlled them nor owned 100 percent of their stock.  Id. at 13.  However, the court noted that

even if Landay could assert claims on behalf of the Borrowers, there would be nothing to assert

because the Borrowers waived all of their defenses and counterclaims when they executed the

Forbearance Agreement.  Id.

Finally, the Court concluded that the issue of whether GMACCF met its statutory

obligation to dispose of the Borrowers' assets in a commercially reasonable manner could not be

waived under New York law.  Id. at 14.  It referred that issue to a Special Referee, together with

the calculation of the attorneys' fees and other collection costs due to GMACCF.  Id. at 17-18.

After the Court's ruling, GMACCF and Landay proceeded with limited discovery on the

issue of commercial reasonableness.  Meanwhile, Landay filed an appeal of the court's partial

summary judgment ruling, pursuant to a New York procedural rule that permits parties to appeal

portions of a case without waiting for a "final judgment" on all claims.  N.Y. C.P.L.R. §5701

(2005).

---

[6]     In addition to rejecting Landay's counterclaim for predatory lending practices, the Court
stated that Landay's contention that the entire transaction was void because GMACCF had
violated a Massachusetts usury statute was not properly before the Court inasmuch as Landay
had raised it for the first time in his reply papers.  Ex. 3 at 16.  The Court noted, however, that a
violation of the statute did not result in mandatory voidance of the transaction.  Id. at 16-17.

On September 9, 2004, Landay initiated this action.  He subsequently filed an Amended Complaint, which he served on GMACCF on December 16, 2004.  Among other things, Landay's First Amended Complaint alleges that GMACCF committed misrepresentation in connection with the Loan Agreements (Count I); usury in violation of Mass. Gen. Laws ch. 271, § 49 (Count II); breach of the Factoring Agreement (Count III); breach of the Forbearance Agreement (Count IV); breach of the covenants of good faith and fair dealing ancillary to the Loan Agreements (Count V); a violation of Landay's rights as a junior creditor of the Borrowers ("Count VI); and a violation of Chapter 93A (Count VII).  Each of these claims arises from the same core of operative facts at issue in the New York litigation.  Compare Am. Compl. with Exs. 1-3.  Moreover, each of Landay's claims in this action mirrors a claim or defense already adjudicated by the New York court.  Accordingly, GMACCF moved to dismiss Landay's claims.

### III.    ARGUMENT

A motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) "should be evaluated under the familiar standard applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted." Canty v. Old Rochester Reg'l Sch. Dist., 54 F. Supp. 2d 66, 68 (D. Mass. 1999).  The court "must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff[]." Alternative Energy, Inc. v. St. Paul Fire & Marine Ins., 267 F.3d 30, 33 (1st Cir. 2001).  However, the court, need not accept "a complainant's unsupported conclusions or interpretations of law." Stein v. Royal Bank of Canada, 239 F.3d 389, 392 (1st Cir. 2001).  If "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," then the motion should be granted.  Pena-Borrero v. Estremeda, 365 F.3d 7, 11 (1st Cir. 2004).

In evaluating a Rule 12(c) motion, a court may consider the complaint, documents expressly incorporated or referred to in the complaint, public records, and documents central to the plaintiff's claims.  Alternative Energy, Inc. v. St. Paul Fire & Marine Ins., 267 F.3d at 33. Thus, in considering GMACCF's motion, this Court may review all of the loan documents referenced in Landay's Amended Complaint, such as the Factoring Agreement, the Guaranty, the Forbearance Agreement and the Ratification of Guaranty.  Additionally, this Court may consider all of the public documents from the New York litigation without converting this motion into one for summary judgment.  Id.  See also Lakeside Builders, Inc. v. Planning Bd. of Franklin, No. CIV.A. 00-12170-GAO, 2002 WL 31655250, *2 (D. Mass. Mar. 21, 2002) ("[w]hen evaluating a motion ... for judgment on the pleadings, a court may properly consider public documents from earlier state court cases").

## A.    Landay Cannot Bring His Claims In Massachusetts.

In this Circuit, forum selection clauses are considered "prima facie valid" and will be "enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."  Silva v. Encyclopedia Brittanica Inc., 239 F.3d 385, 386 (1st Cir. 2001) quoting, M/S Bremen v. Zapata Off Shore Co., 407 U.S. 1, 10 (1971).  The same rule applies under New York law.  Fleet Capital Leasing/Global Vendor Fin. v. Angiuli Motors, Inc., 2005 WL 419261, 2005 N.Y. Slip Op. 01315, (App. Div., Feb 22, 2005).[7]  In order to establish that a forum selection clause is unreasonable a "resisting party must present evidence of fraud, undue influence, overweening bargaining power or such serious inconvenience in litigating in the selected forum that it is effectively deprived of its day in court."  Farrington v. Centrust

---

[7]    Since there is no conflict between federal common law and New York law with respect to the enforceability of forum selection clauses, this Court need not decide the Erie issue of whether to apply state or federal law.  Cf. Silva, 239 F.3d at 386 n.1.

<u>Mortgage Corp.</u>, 1989 WL 120698, *1 (D. Mass. Oct. 2, 1989) <u>citing</u>, <u>Bremen</u>, 407 U.S. at 12-19.  It is not enough to allege that the contract containing the forum selection clause was the product of fraud or fraudulent inducement.  Rather, the resisting party must plead and prove that the forum selection clause in particular was fraudulently induced.  <u>See</u> <u>D'Antuono v. CCH Computer Sys.</u>, 570 F. Supp. 708, 711 (D.R.I. 1983).  ("Just as fraud in the inducement of a contract containing an arbitration clause is insufficient to sidetrack arbitration absent a showing that <u>the clause itself</u> was impermissibly obtained, so too, misrepresentation in the procurement of a contract is not, standing alone, a basis on which a forum selection covenant contained therein can <u>ipso facto</u> be invalidated.") (emphasis in original) (internal citation omitted); <u>Rokeby-Johnson v. Kentucky Agr. Energy Corp.</u>, 489 N.Y.S.2d 69, 74 (App. Div. 1985) (similar).[8]

In this case, Landay alleged misrepresentation (Count I), but he has not pled and cannot prove that the forum selection clauses contained in the loan documents was the product of a fraud.  Therefore, he cannot be heard to complain that the clauses are unreasonable.  Nor could Landay seriously dispute that his claims are covered by the forum selection clauses in the loan documents.  The original Factoring Agreement included a commitment to litigate "all actions and proceedings arising out of or relating directly or indirectly to this agreement or any ancillary agreement or any other obligations" in federal court in New York..."  Similarly, the Guaranty contained a New York forum selection clause covering "[a]ll actions and proceedings arising out of in connection with this guaranty" which Landay reaffirmed in the Ratification of Guaranty.  <u>See</u> Ans. Ex. 7 at p. 1[9]

---

[8]    The holding in <u>Rokeby-Johnson</u> has since been reversed on different grounds.  <u>See</u> <u>Columbia Cas. Co. v. Bristol-Myers Squibb Co.</u>, 635 N.Y.S.2d 173 (App. Div. 1995).

[9]    See also the Forbearance Agreement.  Ans. Ex. 6 ¶ 9(c) at p. 5.

Courts routinely interpret clauses such as "arising out of" or "related to" broadly.  See, e.g., Brennen v. Phyto-Riker Pharm. Ltd., 2002 WL 1349742, * 4 (S.D.N.Y. June 20, 2002) (the phrase "arising out of or relating to" is interpreted broadly).  See also Ninigret Devel. Corp. v. Narragansett Indian Wetuomuck Housing, 207 F.3d 21, 31 (1st Cir. 2000) ("arising out of or relating to" language is broad in context of arbitration agreements).  However, even discounting the broad interpretation generally applied to such phrases, it is beyond reasonable dispute that all seven of Landay's claims against GMACCF arise out of or are related to the Factoring Agreement, the Guaranty, the Forbearance Agreement, the Ratification of Guaranty, or one of the "ancillary agreements" referenced in the Factoring Agreement's forum selection clause.

For example, Count I alleges that GMACCF made a series of misrepresentations to Landay that caused him to over-expose his personal assets to GMACCF as security for the Borrowers' obligations.  See Am. Compl. ¶¶ 60-65.  More specifically, Landay alleges that but for GMACCF's misrepresentations, he never would have provided GMACCF with the original Guaranty, the First Standby Letter of Credit, the Subordination Agreement, a second Standby Letter of Credit for $250,000, the Ratification of Guaranty, or cash collateral in the amount of $1 million.  Id. ¶ 64.  Obviously, this allegation relates to the Factoring Agreement, the Guaranty, and the Forbearance Agreement, so it must be asserted in New York.  Similarly, in Count II Landay alleges that GMACCF's transactions with the Borrowers were usurious in violation of Mass. Gen. Laws, ch.271, §49, and should be voided.  Am. Compl. ¶¶ 66-71.  Count II specifically refers to the September 19, 2000 loan that GMACCF extended to the Borrowers under the Factoring Agreement, Id. ¶ 68.  Thus it too "arises out of or relates to" that agreement and must be asserted in New York.  Count III, which contains allegations of breach of the Factoring Agreement, by definition arises out of that agreement.  Likewise, Count IV, which

- 10 -

alleges breach of the Forbearance Agreement, arises out of that agreement; and Count V, which

alleges breach of the covenant of fair dealing "implicit in the Factoring Agreement and the

related agreements with Landay and in the Forbearance Agreement and the related agreements

with Landay," arises out of both of those agreements.  Count VI, which alleges that GMACCF

owed a duty to Landay as a senior creditor of Seneca that it allegedly breached by wasting

Seneca's assets during the liquidation, arises under the Subordination Agreement, which is one

of the ancillary agreements referenced in the Factoring Agreement's forum selection clause.

Finally, Count VII, which alleges that GMACCF's overall course of conduct toward Landay and

the Borrowers violated Chapter 93A, clearly arises out of and relates to all of the various loan

agreements.  As a result, the forum selection clauses contained in the loan agreements preclude

Landay from bringing this action here.

Landay cannot avoid the scope of the forum selection clauses in the Factoring Agreement

and the Forbearance Agreement by arguing that he signed those documents in a representative

rather than an individual capacity.  First of all, "[f]orum selection clauses bind nonsignatories

that are closely related to the contractual relation or that should have foreseen governance by the

clause."  Hadley v. Shaffer, 2003 WL 21960406, * 6 (D. Del. Aug. 12, 2003) (citations omitted).

As the former President and CEO of the Borrowers, and the person who executed the Factoring

and Forbearance Agreements on behalf of the Borrowers, Landay was intimately related to the

underlying transactions and cannot profess surprise at the application of the forum selection

provisions of those agreements.  Moreover, to the extent that Landay alleges breaches of the

Factoring and Forbearance agreements and their ancillary covenants of fair dealing (Counts III-

V), he necessarily asserts those claims derivatively.  Accordingly, he must stand in the shoes of

the Borrowers.  Since any claims of the Borrowers against GMACCF are clearly governed by the

forum selection clauses contained in the Factoring and Forbearance agreements it follows that any derivative claim must also be governed by the same forum selection provisions.  See XR Co. v. Block & Balestri, P.C., 44 F. Supp. 2d 1296, 1301 (S.D. Fla. 1999) ("where the interests of a non-party are 'completely derivative of,' that is, 'directly related to, if not predicated upon' those of a contracting party, the non-party is bound by the contract's forum selection clause").

**B.    The Doctrines Of _Res Judicata_ and _Collateral Estoppel_ Preclude This Action.**

As a matter of law, Federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged."  See Texaco Puerto Rico, Inc. v. Medina, 834 F.2d 242 (1st Cir. 1987) quoting Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466 (1982).

_1.    Landay's Claims Are Barred By the Doctrine of Res Judicata._

New York courts apply a "transactional" approach to _res judicata_, pursuant to which "a valid final judgment on a claim or claims precludes future litigation between the same parties of claims arising from the same causes of actions, i.e., the same transactions or series of transactions, even if based upon different theories or if seeking a different remedy."  Schulz v. New York. State Legislature, 278 A.D.2d 710, 712 (App. Div. 2000).  To establish the affirmative defense of _res judicata_, a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiff, or someone in privity with him; and (3) the claims asserted in the subsequent action were, or could have been, raised in the first action.  Pantoja v. Scott, No. 96 CIV. 8593, 2001 WL 1313358, at *6 (S.D.N.Y. Oct. 26, 2001).

Although the first judgment must be "final" before it can be given _res judicata_ effect, under New York law, "a state court's grant of partial summary judgment constitutes a 'final'

judgment for res judicata purposes." Pantoja v. Scott, 2001 WL 1313358, at *6. See also

Hennessy v. Cement And Concrete Worker's Union Local 18A, 963 F. Supp. 334, 336-37

(S.D.N.Y. 1997) (where the court granted partial summary judgment for a defendant on its

counterclaims, that ruling had res judicata effect, even though the court left open the questions

of defendant's damages and the plaintiff's other claims for trial); Creed Taylor, Inc. v. CBS, Inc.,

718 F. Supp. 1171, 1175 (S.D.N.Y. 1989) (the entry of partial summary judgment constituted a

final decision for res judicata purposes even though it left four causes of action unresolved).

Moreover, a ruling can have res judicata effect even while an appeal is pending. See Petrella v.

Siegel, 843 F.2d 87, 90 (2d Cir. 1988) ("the determination of the state supreme court … is

entitled to res judicata effect, even though the [losing party] may be appealing that

determination"); In re Capoccia, 272 A.D.2d 838, 847 (App. Div. 2000) ("it is well established

that the pendency of an appeal does not affect the use of an order or judgment as an estoppel").

        In this case, res judicata applies because the New York court's partial summary judgment

against Landay constituted an adjudication on the merits of all but one of Landay's defenses and

counterclaims, and there is no claim that he has asserted in this case that he could not have

asserted in the New York litigation.  Indeed, for all intents and purposes, Landay did little in this

case other than to replicate his pleadings from the New York case, simply re-casting the

affirmative defenses and counterclaims asserted in New York as affirmative claims.  For

example, Landay's first claim in this action (misrepresentation) corresponds to his second

affirmative defense in the New York action.  His Count II claim (usury) is merely another way of

articulating the "predatory lending practices" referenced in his fifth New York counterclaim.  His

fifth claim here (breach of the implied covenant of fair dealing) mirrors both his third affirmative

defense and his first counterclaim in New York.  His sixth claim (violation of Landay's rights as

junior creditor of Seneca) is a restated version of his second and fourth counterclaims in New York; and his seventh claim (violation of Chapter 93A) was his seventh counterclaim in New York. Finally, while Landay's New York pleadings did not include specific causes of action based on breaches of the Factoring Agreement (Count III) and the Forbearance Agreement (Count IV), his New York pleading contain numerous allegations of such breaches. See generally Ex. 2. It necessarily follows that the doctrine of *res judicata* as it is applied under New York law, bars each of the claims asserted by Landay in this Court.

2.    *Landay's Claims Are Barred By the Doctrine of Collateral Estoppel.*

"Collateral estoppel, or issue preclusion, prevents a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party." Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp., 94 N.Y.2d 426, 431-32 (2000) (internal quotation omitted). "[T]here are but two necessary requirements for the invocation of the doctrine of collateral estoppel." Gilberg v. Barbieri, 53 N.Y.2d 285, 291 (1981). "There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling." Id. While the party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present litigation and the prior determination, the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action. Juan C. v. Cortines, 89 N.Y.2d 659, 667 (1997).

As with *res judicata*, *collateral estoppel* will attach when an issue has been resolved in a partial summary judgment order. State Bank of Albany v. McAuliffe, 108 A.D.2d 979, 980-81, 485 N.Y.S.2d 139, 141 (App. Div. 1985); United States v. McGann, 951 F. Supp. 372, 380-82

(E.D.N.Y. 1997). Similarly, under New York law, "the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding." Disorbo v. Hoy, 343 F.3d 172, 183 (2d Cir. 2003).

In the New York litigation, the Court's ruling in favor of GMACCF included the following legal and factual findings, all of which have preclusive effect here. Landay's Guaranty to GMACCF was "absolute and unconditional." Ex. 3 at 10. Landay is bound by the Guaranty's terms. Id. at 11. Landay has waived his right to assert any counterclaims or defenses under the Guaranty, with one exception. Id. at 12. The waiver provisions of the Guaranty are enforceable. Id. Landay cannot assert claims and defense belonging to the Borrowers. Id. at 13. The Borrowers waived all of their defenses and counterclaims against GMACCF. Id. Those waivers are enforceable. Id. at 14. Landay has waived his right to argue that the entire transaction is void on the ground that GMACCF violated that Massachusetts usury statute. Id. at 16. Even if GMACCF had violated the statute, there would not be a mandatory voidance of the transaction. Id. Collectively, these rulings make it impossible for Landay to prevail on Counts I through V or VII of his Amended Complaint. Accordingly, those counts should be dismissed.

## C.    Landay Waived Nearly All Of His Claims Against GMACCF.

Even if Landay were not precluded from bringing this action in Massachusetts, GMACCF still would be entitled to judgment on the pleadings on Counts I through V and VII because the loan documents themselves demonstrate that Landay cannot prove any facts sufficient to support those claims. For example, Count I alleges that GMACCF engaged in a series of misrepresentations that caused Landay to over-expose his personal assets as security for the Borrowers' debt. Am. Compl. ¶ 61. Landay claims that GMACCF misled him into thinking that it would look first to the Borrowers' assets before collecting the security that Landay

personally provided: i.e., his Guaranty, his Standby Letters of Credit, and his cash collateral.  Id. ¶¶ 60-65.  However, the Guaranty's express terms, which Landay affirmed in his Ratification of Guaranty, make clear that as a matter of law, Landay could not have reasonably relied on any such representation.  The Guaranty provided that it "shall not be impaired or otherwise affected by any failure to … perfect, continue the perfection of or enforce any security interest in or other lien upon, any Collateral or by any failure to exercise ... any right or remedy available to the Company."  Ans., Ex. 2 at p. 1.  The Guaranty also explicitly stated that Landay's obligation "shall be direct, immediate, absolute, continuing, unconditional and unlimited and not conditional or contingent upon the pursuant by [GMACCF] of whatever remedies it may have against [the Borrowers] or [the Borrowers'] successors, executors, administrators or assigns, or the security or liens it may possess ... ."  Id.   Thus, all relevant times, Landay knew that GMACCF had the right to seize his personal assets before trying to sell off the Borrowers' assets.  Indeed, that is the very nature of an unconditional guaranty.

Additionally, when Landay executed the Ratification of Guaranty, he expressly acknowledged and consented to the execution of the Forbearance Agreement.  Ans., Ex. 7 at p.1. That document, which Landay signed in a representative capacity, made clear that it constituted "the entire understanding of the parties with respect to the matters set forth herein and supercedes in their entirety any and all understandings and agreements, whether written or oral, of the parties with respect to the foregoing."  Ans., Ex. 6 ¶ 9(f), at p.6.  In light of this statement, Landay cannot be heard to complain about oral representations allegedly made before the Forbearance Agreement and Ratification of Guaranty were executed.  Thus, Count I must be dismissed with prejudice.

BOS_482850_4/JHOULIHAN

Similarly, Count II should be dismissed for the reasons set forth in the New York Court's partial summary judgment order. That is, contrary to Landay's contention, Mass. Gen. Laws, ch. 271, § 49 does not provide for the voiding of a commercial transaction. See Ex. 3 at pp. 16-17 citing Beach Assocs., Inc. v. Fauser, 9 Mass. App. Ct. 386 (1980). Moreover, the Massachusetts statute has no applicability here, since the parties agreed that New York law governed their business relationships.

Counts III through V should be dismissed because Landay lacks standing to assert them. As the New York Court correctly found, Landay cannot assert any claims derivatively for either of the Borrowers – such as breach of the Factoring Agreement, breach of the Forbearance Agreement, or breach of their ancillary covenants of good faith and fair dealing – because the companies are no longer going concerns and Landay does not own 100 percent of their stock. See First New York Bank for Business v. DeMarco, 130, B.R. 650, 655 (Bankr. S.D.N.Y. 1991), cited in Ex. 3 at p.13. Count VII suffers from the same infirmity to the extent that Landay is purporting to assert claims on behalf of the Borrowers. To the extent that Landay purports to allege GMACCF violated Chapter 93A with regard to him personally, his claim is barred by the same express language in the Guaranty that was referenced with regard to Count I. Thus, as a matter of law, GMACCF cannot be said to have engaged in unfair or deceptive practices toward either Landay or the Borrowers.[10]

## D.    This Court Should Abstain From Adjudicating This Dispute.

It is well established that federal courts may decline to exercise jurisdiction in deference to a parallel state proceeding based on considerations of "wise judicial administration, giving

---

[10]    Additionally, since the relevant loan documents all state that the parties' relationship shall be governed by New York law, the Massachusetts Consumer Protection Statute, by definition, has no applicability here.

BOS_482850_4/JHOULIHAN

regard to conservation of judicial resources and comprehensive disposition of litigation."

Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). In

Colorado River, the Supreme Court identified four factors that courts should consider when

determining whether to abstain from exercising jurisdiction: (1) whether either court has

assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the

desirability of avoiding piecemeal litigation; and (4) the order in which the forums obtained

jurisdiction. Id. at 817-818. Subsequently, the Court listed two additional factors worthy of

consideration: (5) whether state or federal law controls; and (6) the adequacy of the state forum

to protect the parties' rights. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460

U.S. 1, 17 n.20 (1983). A seventh factor, mentioned but not applied in Moses H. Cone, but

considered by some courts is the "vexatious or reactive nature of the federal lawsuit." Elmendorf

Grafica, Inc. v. D.S. America (East), Inc., 48 F.3d 46, 50 (1st Cir. 1995) citing Fuller Co. v.

Ramon I. Gil, Inc., 782 F.2d 306, 308-10 (1st Cir. 1986). "No one factor is necessarily

determinative; a carefully considered judgment taking into account both the obligation to

exercise jurisdiction and the combination of factors counselling against that exercise is required."

Colorado River, 424 U.S. at 818-19.

In this case, the first two Colorado River factors are of little importance, since (1) neither

this Court nor the New York court has jurisdiction over relevant property, and (2) Massachusetts

is only slightly less convenient to Michigan-based GMACCF than New York. However, the

other five factors all counsel against this court's exercise of jurisdiction. For example, with

regard to the third factor, the retention of jurisdiction over this action by this Court will

inevitably lead to piecemeal adjudication of the parties' dispute. The New York case is nearly

three years old and should be nearing its final resolution, while this action has only just begun. If

this Court retains jurisdiction, the progress of the two cases will almost certainly be marked by a wasteful duplication of effort and the entirely unnecessary risk that this Court and the New York court may enter inconsistent interlocutory orders.

As for the fourth factor, the Supreme Court stated that the order in which jurisdiction was obtained by the concurrent forums "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses H. Cone, 460 U.S. at 22. Here, not only was the New York case filed much earlier, but it is also much farther advanced than this action. All issues relating to liability already have been decided, and it is not unreasonable to expect that a final ruling on GMACCF's damages and attorneys' fees could be issued before discovery even closes in this action.

With regard to the fifth factor, New York law controls this dispute, as expressly provided by the choice of law provisions in the Factoring Agreement, the Guaranty, and the Forbearance Agreement. See McCarthy v. Azure, 22 F.3d 351, 356 n.5 (1st Cir. 1994) (stating that as a general matter, courts should enforce reasonable contractual choice-of-law provisions). The sixth factor also counsels for abstention, as the New York proceeding is perfectly adequate to protect each of the parties' rights. Lastly, inasmuch as Landay filed this lawsuit only after receiving an adverse ruling from the New York court it is entirely legitimate to describe this action as "vexatious and reactive in nature."

In light of all these factors, even if Landay could assert a valid claim, this Court should abstain from exercising jurisdiction over any such claim in accordance with the Colorado River doctrine.

## V.    CONCLUSION

For all the reasons outlined in this memorandum, this Court should grant judgment on the pleadings in favor of GMACCF and dismiss all of Landay's claims on the grounds that the doctrines of *res judicata* and collateral estoppel prevent Landay from relitigating issues previously resolved in the New York action.  Even if those doctrines did not bar Landay's claims, as the New York court has already recognized the applicable provisions of the Loan Documents would.  Moreover, Landay's failure to assert his claims in New York as required by the applicable forum selection clauses also compels dismissal.  Finally, even if this Court declines to dismiss Landay's complaint, it should abstain from exercising jurisdiction over this matter under the <u>Colorado River</u> doctrine.

Respectfully submitted,

GMAC COMMERCIAL FINANCE LLC

/s/ John A. Houlihan
/s/ Mark B. Dubnoff
John A. Houlihan (BBO # 542038)
Mark B. Dubnoff (BBO # 637212)
Edwards & Angell, LLP
101 Federal Street
Boston, MA  02110
(617) 439-4444

DATED: March 31, 2005