UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-CV-11955-WGY

| | | |
|---|---|---|
| DAVID L. LANDAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF LANDAY'S** |
| v. | ) | **MEMORANDUM IN** |
| | ) | **OPPOSITION TO** |
| GMAC COMMERCIAL CREDIT, LLC and | ) | **DEFENDANTS' MOTION** |
| GMAC COMMERCIAL FINANCE, LLC, | ) | **FOR JUDGMENT ON** |
| | ) | **THE PLEADINGS** |
| Defendants. | ) | |
| | ) | |

## STATEMENT OF THE CASE

A.    The Amended Complaint

In the present case, Landay has asserted seven claims against GMACCF which are based on the facts recited below as well as others set forth in the Amended Complaint:  Count I – Misrepresentation; Count II – Usury; Count III – Breach of Contract, Factoring Agreement; Count IV – Breach of Contract, Forbearance Agreement; Count V – Breach of Covenant of Fair Dealing; Count VI – Violation of Landay's Rights as Junior Credit; and Count VII – M.G.L. c. 93A.

Landay was an officer, director and a major stockholder of Senaca Sports, Inc. and Brookfield International Inc. ("the corporate borrowers") which had offices in Massachusetts.  Amended Complaint, ¶1.  On or about September 19, 2000, GMACCF entered into the Factoring Agreement with the corporate borrowers.  Id. ¶12.  On that date, Landay executed a guaranty in the amount of $3,500,000 and provided a personal standby letter of credit in the amount of $4,100,000 drawn in favor of GMACCF as collateral for the obligations of the corporate borrowers.  Id., ¶¶13-14.  Landay also

subordinated an indebtedness of Senaca Sports, Inc. to him, in the amount of $3,450,000, to GMACCF's loan.  Id., ¶15.  Although GMAC filed a criminal usury notification with the Massachusetts Attorney General's office, the purported filing was untimely.  Id., ¶¶69-70.

The Factoring Agreement provided inter alia that, during the months of May through October of 2001, GMACCF would make an uncollaterized seasonal overadvance of up to $500,000 in excess of advances based on receivables in order to permit the corporate borrowers to continue to operate during their low-sales period.  Id., ¶17.  Moreover, in reliance on GMACCF's specific representation to him that it would make the seasonal overadvance in May of 2001, Landay provided GMACCF an additional $250,000 letter of credit.  Id., ¶¶18-19.  Contrary to its representation and its contractual obligation, GMACCF did not make the May seasonal overadvance in the agreed amounts.  Id., ¶20.  In May and June 2001, GMACCF told Landay that it would make the seasonal overadvance if Landay extended the expiration date on the $250,000 standby letter of credit.  Id., ¶23.  Notwithstanding Landay's extension of the letter of credit, GMACCF continued to withhold the seasonal overadvance and refused to lend sums sufficient for the corporate borrowers to purchase products.  Id., ¶25.

In about July 2001, GMACCF represented to Landay that, if he would extend the expiration date of the $250,000 letter of credit, increase the amount of the personal guaranty by $1,000,000 and deposit $1,000,000 as cash collateral in a bank in GMACCF's favor, it would provide additional funding to the corporate borrowers to allow them an orderly winding down period.  Id., ¶30. In reliance on these promises, the corporate borrowers entered into the Forbearance Agreement with GMACCF, and

Landay signed an amendment increasing the amount of his personal guaranty to $4,500,000, made a $1,000,000 bank deposit in GMACCF's name, and agreed to extend the expiration date on the $250,000 letter of credit.  Id., ¶¶32-33.  However, in violation of their promises to Landay and of the Forbearance Agreement, GMACCF did not advance the funds necessary to keep the corporate borrowers operating, Id., ¶¶35-43; and on September 25, 2001, GMACCF declared the loans in default and demanded payment.  Id., ¶45.

On or about October 15, 2001, GMACCF collected the $4,100,000 letter of credit that Landay had provided in September 2000, Id., ¶48, and, shortly thereafter, collected the $1,000,000 cash deposit furnished by Landay as well as the $250,000 letter of credit.  Id., ¶49.  It proceeded to dispose of the assets of the corporate borrowers in an irresponsible fashion which amounted to waste.  Id., ¶¶51-53.  In 2002, GMACCF sued Landay in New York for an alleged deficiency of over $1,000,000.  Id., ¶55.

B.     The Guaranty

The principal document at issue is the Landay Guaranty ("the Guaranty"), which provides in pertinent part as follows:

> The undersigned also waives the right to assert in any action or proceeding upon this guaranty any defenses, offsets or counterclaims which the undersigned may now or hereafter have.  This guaranty shall be governed by and construed and interpreted in accordance with the laws of the State of New York (without giving effect to New York law on conflicts of law).  All actions and proceedings arising out of or in connection with this guaranty, the Agreement and/or any transactions relating hereto and thereto, including without limitation for recognition or enforcement of any judgment, may be brought in the federal or state courts of the State of New York, or, at the Company's option, in any other courts as the Company may select and the undersigned agrees that such courts are convenient forums and the undersigned unconditionally and irrevocably submits, for the undersigned and its property, to the nonexclusive personal jurisdiction of such courts.

Exhibit 2 to Answer, p. 2.  As will be argued below, the waiver clause is limited to suits

brought by GMACCF on the Guaranty.  Moreover, the forum selection clause is

permissive, not mandatory.  Finally, the choice of law provision is limited to

interpretation of the Guaranty and does not govern Landay's tort claims.

      C.    <u>The New York Decision</u>

The New York State Court allowed GMACCF's motion for partial summary

judgment on liability only, thereby dismissing Landay's counterclaims and affirmative

defenses with the exception of his claim that GMACCF disposed of the collateral in a

commercially unreasonable manner.  The <u>only</u> finding which was essential to the

decision was that "Landay has waived the right to assert counterclaims and defenses

with one exception."  Exhibit C to GMACCF's Memorandum, p. 12.  As will be argued

below, the decision is not <u>res judicata</u> of the causes of action in the Amended

Complaint; nor is Landay collaterally estopped from pursuing these claims by any

finding made by the New York Judge.

## **ARGUMENT**

Preliminary, New York law, which governs the construction and interpretation of

the Guaranty, provides certain principles of general applicability which favor Landay's

interpretation of the provisions at issue.  Under New York law, "[a] guaranty is to be

interpreted in the strictest manner."  <u>White Rose Food v. Saleh</u>, 99 N.Y.2d 589, 591,

788 N.E.2d 602, 603 (2003).  <u>See</u> <u>Compagnie Financiere De Cic Et De L'Union</u>

<u>Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 188 F.3d 31, 34 (2d Cir.

1999) ("guarantee agreements are construed <u>strictissimi juris</u> under New York law");

and In re Stamell, 252 B.R. 8, 22 (Bankr. E.D.N.Y. 2000), quoting 63 N.Y. Jur. 2d,

Guaranty and Suretyship §116.

Where the language of a contract is clear and unambiguous, the Court should

interpret the contract by its language and give the words used their "plain meaning."

Utica Alloys, Inc. v. Alcoa, Inc., 303 F. Supp. 2d 247, 253 (N.D.N.Y. 2004).  See

Seabury Constr. Corp. v. Jeffrey Chain Corp., 289 F.3d 63, 68 (2d Cir. 2002) ("[w]here

the contract is unambiguous, courts must effectuate its plain language").  "A contract is

unambiguous when it has a 'definite and precise meaning, unattended by danger of

misconception in the purport of the contract itself and concerning which there is no

[reasonable] basis for difference of opinion'".  Utica Alloys, Inc., 303 F. Supp. 2d at 253,

quoting Krumme v. WestPoint Stevens, Inc., 238 F.3d 133, 139 (2d Cir. 2000).  To the

extent that a court finds a contract provision to be ambiguous, it should construe it

against the drafter.  "Where an ambiguity exists in a standard-form contract supplied by

one of the parties, the well-established contra proferentem principle requires that the

ambiguity be construed against that party."  Westchester Resco Co., L.P. v. New

England Reinsurance Corp., 818 F.2d 2, 3 (2d Cir. 1987) (emphasis in original).  See

Unity Creations, Inc. v. Trafcon Indus., Inc., 137 F. Supp. 2d 108, 111 (E.D.N.Y. 2001)

(ambiguous forum section clause is construed against the drafter).  This rule is

especially applicable "when the provision being construed would cut off a party's right to

obtain any remedy."  Van-Go Transport Co. v. New York City Bd. of Educ., 53 F. Supp.

2d 278, 283 (E.D.N.Y. 1999).

I.    <u>The Forum Selection Clause Of The Landay Guaranty Is Non-Exclusive And,
Therefore, Venue Is Proper In This Court.</u>

Landay contends that the plain meaning of the third sentence of the penultimate

paragraph of the Landay Guaranty is that the guarantor is consenting to jurisdiction in

any forum in which GMACCF chooses to file suit.  Therefore, it is a permissive, not a

mandatory, forum selection clause.  This sentence states in relevant part:  "All actions

and proceedings arising out of or in connection with this guaranty, the Agreement

and/or transactions relating hereto and thereto,…<u>may</u> be brought in the federal or state

courts of the State of New York or, at the Company's option, in any other courts as the

Company may select and the undersigned agrees that such courts are convenient

forums and the undersigned unconditionally and irrevocably <u>submits</u>, for the

undersigned and its property, to the <u>nonexclusive personal jurisdiction</u> of such courts."

Exhibit 2 to Answer, p. 2 (emphasis added).

Landay's interpretation of the plain meaning of the clause is fully supported by

the text.  First, the forum selection clause is directed to the guarantor's agreement to

"submit" to the "personal jurisdiction" of whatever court the lender decides to file its

enforcement action in.  Second, and critically, the use of the word "may" instead of

"shall" signals that the clause is a permissive one.  "In common usage and

understanding, the word 'shall' signifies a command.  The word 'may' is permissive."

<u>ASM Communications, Inc. v. Allen</u>, 656 F. Supp. 838, 839 (S.D.N.Y. 1987) (held forum

selection clause using word shall is mandatory).  <u>See also</u> <u>Hartford Fire Ins. Co. v.

Novocargo USA, Inc.</u>, 156 F. Supp. 2d 372, 376 (S.D.N.Y. 2001) (use of word "may" in

arbitration clause renders it permissive).  Third, the use of the phrase "nonexclusive

personal jurisdiction" shows that this clause was not intended to provide exclusivity and

that its focus was the agreement by the guarantor not to challenge personal jurisdiction (or venue) over it upon a suit filed by the lender on the guaranty.  Finally, Landay's position is advanced by a comparison with the forum selection clauses in other documents drafted by the lender.  For example, the contemporaneous Factoring Agreement, Exhibit 1 to Answer, paragraph 13(c), states that the borrowing corporations "agree that all actions and proceedings arising out of or relating directly or indirectly to this agreement or other obligations shall be litigated in the United States District Court for the Southern District of New York or [other specified forums]" (emphasis added).

New York law supports Landay's position.  In Columbia Casualty Co. v. Bristol-Myers Squibb Co., 215 A.D.2d 91, 95, 635 N.Y.S.2d 173, 175 (App. Div., 1st Dep't 1995), the insurer agreed that "at the request of the Assured," it would "submit to the jurisdiction of any Court of competent jurisdiction within the United States and [would] comply with all requirements necessary to give such Court jurisdiction…."  The Appellate Division held that this provision was clearly permissive.

> The clause merely states that the insurer will submit to the jurisdiction to be selected by the insured.  There is no indication that such selection shall be the exclusive forum nor of the parties' intent to submit to a particular venue.  The language of the clause constituted a 'service of suit clause' rather than a mandatory and exclusive forum selection clause.  Unlike a mandatory forum selection provision, a 'service of suit clause' is akin to a permissive consent-to-forum clause which does not bar subsequent actions commenced by the insurer, such as the within declaratory judgment action, in a proper forum of the insurer's choice.

Id. at 96, 635 N.Y.S.2d at 176.  See Reliance Ins. Co. v. Six Star, Inc., 155 F. Supp. 2d 49, 58 (S.D.N.Y. 2001) (clause providing that parties will submit to the jurisdiction of the State of New York and will comply with all the requirements necessary to give such court jurisdiction held to be not mandatory but permissive since there was no clear

indication of exclusivity); <u>Leasing Serv. Corp. v. Patterson Enters., Ltd.</u>, 633 F. Supp.

282, 283-284 (S.D.N.Y. 1986) (clause by which borrowers agreed "to the venue and

jurisdiction of any court located within the State and County of New York" held not

mandatory since it does not indicate exclusivity); and <u>Credit Alliance Corp. v. Crook</u>,

567 F. Supp. 1462, 1465 (S.D.N.Y. 1983) (same, contrasting clause which stated that

any suit <u>shall</u> be brought in one of two counties).  Finally, the Court in <u>Orix Credit

Alliance, Inc. v. Mid-South Materials Corp.</u>, 816 F. Supp. 230, 231 (S.D.N.Y. 1993),

considered language in which the guarantors agreed "to the venue and jurisdiction of

any court in the State and County of New York regarding any matter arising hereunder."

In holding that the terms were not mandatory, the District Court wrote:

> The language in the Guaranties merely states that [the Guarantors] <u>agree</u>
> to the jurisdiction of a court located in the state and county of New York,
> not such a court <u>shall</u> have jurisdiction nor that it would be the exclusive
> forum for all disputes arising out of this contract.

<u>Id.</u> at 233 (emphasis in original).

While Landay contends that the language at issue is unambiguous, and clearly a

permissive as opposed to a mandatory forum selection clause, to the extent this Court

concludes that the clause is ambiguous, it is bound by New York principles of statutory

construction to construe it against GMACCF.  This is so because it was clearly drafted

by the lender.  Affidavit of David L. Landay and Exhibits attached thereto.[1]  In this

---

[1] While Landay believes that the plain meaning of the language of the Guaranty favors his position that
the Forum Selection Clause is permissive, not mandatory, he has filed an affidavit which provides
admissible evidence of what should be an undisputed fact – that GMACCF drafted the language at issue.
Should the Court find an ambiguity and, then, rely on Landay's affidavit, the Motion for Judgment on the
Pleadings should be converted to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(c) with
regard to the first issue raised by GMACCF, the interpretation of the Forum Selection Clause.  However,
should this Court decide that the admission of the affidavit requires conversion, it should not deem the
entire motion a motion for summary judgment since the affidavit is being solely offered on the issue on
interpretation of the Guaranty and not on any of the other issues raised by this motion.  <u>Compare</u> <u>Krijn v.
Pogue Simone Real Estate Co.</u>, 896 F.2d 687, 689-690 (2d Cir. 1990) (while conversion of a Rule 12(c)

regard, an examination of the draft history of the Guaranty reveals that it was on a form prepared by the lender.  See initial draft of the Guaranty, Exhibit B to Landay Affidavit, which is in all relevant respects identical to the executed Guaranty and which contains the following in the lower left corner:  "Rev 7/27/99."  See Westchester Resco, L.P. v. New England Reinsurance Corp., supra, 818 F.2d 2, as to standard-form contract.

Perhaps, the weakness of GMACCF's argument based on the language in the Guaranty has necessitated its resort to the mandatory forum selection clauses in the Factoring Agreement and in the later Forbearance Agreement between GMACCF and the corporate borrowers and to foreign case-law, notwithstanding the explicit choice of New York law for construction of the Guaranty.  GMACCF's Memorandum, pp 11-12. Suffice to say that applicable New York law does not support this effort to engraft these clauses into the Guaranty.

The case of National Union Fire Insurance Co. v. Williams, 223 A.D.2d 395, 396-397, 637 N.Y.S.2d 36, 37-38 (App. Div., 1st Dep't 1996) is on point.  There, the defendants sought a ruling that the forum selection clause in certain promissory notes trumped a contrary clause in an indemnification agreement between the insurance company and them.  In characterizing the defendants approach as "without foundation in either law or logic", the Court wrote: "While the respective agreements are unquestionably part of the same overall transaction, each involves different parties and serves a distinct purpose."  Id. at 396, 637 N.Y.S.2d at 37.  It concluded, in language applicable to the present case: "Finally, if the choice of law and selection of forum

---

motion to a motion for summary judgment would have been proper on "jurisdiction" issues in a discrimination case, conversion on issue of whether plaintiff had "a prima facie" case was reversible error).

provisions of the notes were to be adopted, as defendants suggest, the contradictory provisions of the indemnification agreement would be rendered mere surplusage, a result that offends a fundamental principle of contract interpretation." Id. at 397, 637 N.Y.S.2d at 38. See also Nat'l Union Fire Ins. Co. v. Robert Christopher Assocs., 257 A.D.2d 1, 7, 691 N.Y.S.2d 35, 40 (App. Div. 1999) ("a guarantee is presumed to be a separate obligation" from the contract it indemnifies); and Packer v. TDI Systems, Inc., 959 F. Supp. 192, 198-199 (S.D.N.Y. 1997) (doctrine of reading two instruments together not applicable where instruments do not involve same parties).

Finally, even were this Court to decide that the forum selection clause was mandatory, it should not dismiss this case but rather transfer it under the authority of 28 U.S.C. §1406(a) to the United States District Court for the Southern District of New York. On a motion to dismiss based on a mandatory forum selection clause, the Court has discretion to transfer an action in the interests of justice to any district in which it could have been brought. Vitricon, Inc v. Midwest Elastomers, Inc., 148 F. Supp. 2d 245, 249 (E.D.N.Y. 2001). The interests of justice support the exercise of discretion by this Court in Landay's favor since a dismissal might result in the forfeiture of his tort claims as time-barred. Roberson v. Norwegian Cruise Line, 897 F. Supp. 1285, 1289 (C.D. Cal. 1995) (interests of justice dictated transfer rather than dismissal as passenger may have had a statute of limitations problem if case were dismissed).

II.    Neither Res Judicata Nor Collateral Estoppel Bars The Prosecution Of Any Of The Claims Asserted In Landay's Amended Complaint.

A.    Res Judicata

With regard to the issues of res judicata, and collateral estoppel, the inquiry must begin with an examination and analysis of what was decided. In its Memorandum of

Decision, the New York Court granted GMACCF's motion "to the extent that partial summary judgment on liability only is granted against David L. Landay" and "in favor of GMACCF." Exhibit C to GMACCF's Memorandum, p. 18. The single ruling which was essential to this decision was expressed in this manner:

> Landay had waived his right to assert counterclaims and defenses, with one exception discussed below….The guaranty expressly provides that Landay 'waives the right to assert in any action or proceeding upon this guaranty any defense, offsets or counterclaims which [Landay] may now or hereafter have'….Such waiver provisions are enforceable.

Id., p.12. Significantly, there is absolutely is no indication in the decision that the New York Court was deciding an issue not before it, i.e., whether the waiver clause constituted an agreement by Landay to release any claims which he might have against GMACCF, which release would bar the assertion of such claims in a separate action.

Thus, it is clear that the New York Judge decided only that Landay's counterclaims (and defenses) could not be asserted in "any action or proceeding upon this guaranty." Since Landay was found to be barred by contract only from asserting the causes of action now set forth in his Amended Complaint as counterclaims in New York, to contend, as GMACCF does, that the New York Court's decision is res judicata with respect to the assertion of those claims in another forum is an unwarranted stretch. To put it another way, the New York Court's decision dismissing the counterclaims amounted to a dismissal without prejudice which would not preclude their resurrection as causes of action in Massachusetts. See Salerno v. Leica, Inc., 139 F. Supp. 2d 377, 385 n.4 (W.D.N.Y. 2001).

A number of cases decided under New York law give further support to the lack of merit in GMACCF's res judicata claim. They stand for the general proposition that

res judicata does not bar the second action if the plaintiff was unable to seek a certain remedy or form of relief in the first action. In Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 712 N.E.2d 647 (1999), the Court of Appeals considered a claim of res judicata in connection with the trial court's dismissal of a 42 U.S.C. § 1983 action from an earlier case which had been brought pursuant to a state statutory procedure, "Article 78", to challenge the plaintiff-employee's firing. In pertinent part, the Court wrote as follows:

> In plaintiff's prior article 78 proceeding, [the] Supreme Court correctly dismissed his section 1983 civil rights damage claims as not incidental to the primary relief of reinstatement he sought. Therefore, the termination of the prior article 78 proceeding on the merits was not res judicata as to the section 1983 damage claims. Our holding in this regard is also consistent with the position of the Restatement (Second) of Judgments that res judicata is inapplicable where the plaintiff 'was unable to *** seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain *** multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action *** to seek that remedy or form of relief.' (Restatement [Second] of Judgments § 26 [1] [c]….)

Blauvelt, 93 N.Y.2d at 348-349, 712 N.E.2d at 650. In Neuman v. Harmon, 965 F. Supp. 503, 508 (S.D.N.Y. 1997), the Court rejected a res judicata defense where it appeared that the claim of fraud in the inducement of a mutual release was not litigated in a prior state action, nor could it have been litigated because the judge believed that it was subject to an arbitration clause. See also Gidatex, S.R.L. v. Campaniello Imports, Ltd., 13 F. Supp. 2d 420, 424 (S.D.N.Y. 1998) (same); Kondracke v. Blue, 716 N.Y.S.2d 533, 536, 277 A.D.2d 953 (App. Div., 4th Dep't 2000) (res judicata not applicable to subsequent damages action where plaintiff was precluded by statute from obtaining complete relief in worker's compensation action); and Hayden v. L.I.L.C.O., 116 Misc.

2d 445, 452, 455 N.Y.S.2d 715, 719-720 (N.Y. Dist. Ct. 1982) (second action not barred

by res judicata where party is unable to assert counterclaims in small claims case).

    B.    Collateral Estoppel

    As GMACCF correctly points out, in order to prevail on a collateral estoppel

defense, a party has the burden of proving "an identity of issue which has necessarily

been decided in the prior action and is decisive of the present action." Gilberg v.

Barbieri, 53 N.Y.2d 285, 291, 423 N.E.2d 807 (1981) (emphasis added); Juan C. v.

Cortines, 89 N.Y.2d 659, 667, 679 N.E.2d 1061 (1997). In this regard, it has been held

that a finding not shown to be essential to the first court's decision "is not controlling in a

later litigation." Silberstein v. Silberstein, 218 N.Y. 525, 528, 113 N.E. 495 (1916) "The

estoppel extends to material facts which are in issue between the parties to the action,

and to such as necessarily bear upon, control and are essential to the adjudication

made." Karameros v. Luther, 279 N.Y. 87, 93, 17 N.E.2d 779 (1938). In this regard, an

"essential" finding has been defined as "one from which the resolution of the ultimate

legal issue necessarily followed." Church v. New York State Thruway Auth., 2004 WL

3222892, at 3* (N.Y. App. Div., 3d Dep't Mar. 10, 2005) (quoting Hinchey v. Sellers, 7

N.Y.2d 287, 293, 165 N.E.2d 156 (1959)). Moreover, as to the decisiveness

requirement, the issue in question, "must be the point actually to be determined in the

second action or proceeding such that 'a different judgment in the second would destroy

or impair rights or interests established by the first'." Ryan v. New York Tel. Co., 62

N.Y.2d 494, 467 N.E.2d 487, 501 (1984) (internal citation omitted).

    In its Memorandum at p. 15, GMACCF lists a series of findings made by the New

York Court and then, without any analysis, contends that "these rulings make it

impossible for Landay to prevail on Counts I through V or Count VII of his Amended Complaint." Landay submits that this argument should be deemed waived.[2] Moreover, in light of the above principles, none of these findings can have preclusive effect on any of the Counts in the Amended Complaint.

The first four findings which relate to the waiver of counterclaims and defenses cannot provide the basis for collateral estoppel since, while essential to the New York decision, they are decisive of nothing in the present action. As noted above, the waiver clause only relates to Landay's inability to present a substantive challenge to a suit brought on the guaranty; indeed GMACCF does not appear to argue to the contrary.[3] Thus, these findings cannot possibly be decisive of any cause of action which appears in the Amended Complaint. For example, while a finding of no fraud on the merits in case one could collaterally estop the plaintiff from asserting a misrepresentation claim in case two, a finding of waiver of the right to assert affirmative defenses and counterclaims in case one could not bar the prosecution of fraud-based claims, like Counts I and VII of the Amended Complaint, in case two.

The fifth and sixth findings relied on, relating to Landay's incapability of asserting claims of the borrower, cannot support an estoppel for two reasons. First, in light of the New York Court's holding regarding the waiver in the Guaranty, such findings were

---

[2] "Issues adverted to in a perfunctory manner, unaccompanied by some effort of developed argumentation, are deemed waived." King v. Town of Hanover, 116 F.3d 965, 970 (1st Cir. 1997) (internal citation omitted); Nextel Communications of the Mid-Atlantic, Inc. v. Town of Hanson, 311 F. Supp. 2d 142, 152 n.8 (D. Mass. 2004).

[3] In this regard, the case of United Bank of Africa, P.L.C., New York Branch v. Odimayo, No. 93 Civ. 3998, 1994 WL 185826 (S.D.N.Y. May 10, 1994) is persuasive authority. The guaranties at issue in that case each contained a waiver of "any defense, set off, or counterclaim…." Id. at *1. In dismissing the counterclaims asserted by the guarantors, the court wrote: "[b]oth guaranties prohibit the bringing of 'any counterclaims' in an action for its enforcement. This cannot be construed as prohibiting any separate suit on any claims the defendants might assert." Id. at *4.

unessential, immaterial and even gratuitous.  Second, the Amended Complaint contains

Counts which are based on GMACCF's conduct <u>directly towards Landay</u> and, thus,

these findings would not be "decisive" in the present case in any event.  For example,

the Misrepresentation Count, Count I, alleges that GMACCF made false representations

"designed to cause Landay" to provide certain collateral and that Landay relied on these

representations to his detriment.  Amended Complaint, ¶¶58-63.

Additionally, a procedural waiver, as the New York Court found with regard to the

usury defense, cannot be used as a bar to Count II of the Complaint, the Usury Count.

This is so because a procedural default like the late assertion of an affirmative defense

cannot form the basis for an estoppel under New York law.  <u>Allston v. Incorporated</u>

<u>Village of Rockville Ctr.</u>, 267 N.Y.S.2d 564, 25 A.D.2d 545, 546 (N.Y. App. Div., 2d

Dep't 1966); and <u>Fuchsberg & Fuchsberg v. Galizia</u>, 300 F.3d 105, 109 (2d Cir. 2002)

("if a court does not address an issue because it deems the argument on the issue to

have been waived, then, for collateral estoppel purposes, the issue has not been

decided").  Moreover, the finding relating to the usury defense was not necessary to the

decision in light of the New York Court's substantive waiver ruling.

The last finding on which GMACCF relies, i.e., that voiding the transaction for

usuriousness is not mandatory, cannot be decisive of the Usury Count since the New

York Court acknowledges that a Court <u>has discretion to void the transaction</u>, if the

lender charge usurious rates.  Exhibit C to GMACCF's Memorandum, p. 17.  Moreover,

the New York Court also noted that a court has discretion to rewrite the transaction to

reflect legal lending rates, citing <u>Beach Assocs., Inc. v. Fauser</u>, 9 Mass. App. Ct. 386,

394, 401 N.E.2d 859, 863-864 (1980).  Because GMACCF's effective interest rates

were so outrageous, such a discretionary finding on Count II made by this Court would benefit Landay significantly.

III.   <u>Landay Has Not Waived Any Of His Claims Against GMACCF.</u>

GMACCF has not argued, nor could it, that the waiver language of the Guaranty – [Landay] "waives the right to assert in any action or proceeding upon this guaranty any defense, offsets or counterclaims" – is comprehensive enough to bar the prosecution of the causes of actions contained in the Amended Complaint.  Indeed, the limited nature of the waiver is clearly the plain meaning of this provision.[4]  Rather, in a desperate effort to find some rationale for avoiding the merits of the issues raised by Landay, GMACCF narrowly and unfairly interprets the various Counts of the Amended Complaint and misinterprets or misapplies the language of the Guaranty and various collateral documents.  As will be demonstrated below, GMACCF's waiver arguments are completely lacking in merit.

A.   <u>Count I - Misrepresentation</u>

In its discussion of the Fraud Count, GMACCF acknowledges that Landay alleges that GMACCF engaged in a <u>series of misrepresentations</u> that caused him to over-expose his personal assets as collateral.  GMACCF's Memorandum, p.15; First Amended Complaint, ¶61.  However, it seizes only on the representation that GMACCF would look initially to the assets of the borrowing corporations and proceeds to use it as a straw man for the entire fraud claim, citing contradictory language in the Landay Guaranty.  GMACCF's Memorandum, pp.15-16.  In making this argument, GMACCF completely ignores the remaining allegations of fraud which Landay makes, i.e., that

---

[4] Were it not, the language should be construed against the drafter, GMACCF, in any event.  <u>See</u> <u>supra</u>, p. 5.

GMACCF represented to Landay that it would make seasonal overadvances without an intent to do so, Amended Complaint, ¶¶18, 23, 63, that GMACCF represented that it would forbear and provide additional financing if Landay increased his guaranty and collateral without an intent to do so, Id., ¶¶29-30, 63, and that GMACCF represented that it would repay expenses advanced to the corporation by Landay without an intent to do so.  Id., ¶¶31, 63.

The only argument which GMACCF advances with regard to the remaining allegations of fraud is the language in the Forbearance Agreement regarding "the entire understanding of the parties" which Landay signed in a representative capacity only.  As noted above, New York law does not support this argument.  See supra, pp. 9-10. Significantly no such language appears in the Landay Guaranty or in the Ratification of Guaranty.

B.      Count II – Usury

GMACCF argues, first, that the Usury Count should be dismissed because Mass. Gen. L. c. 271, §49 "does not provide for voiding of a commercial transaction." GMACCF's Memorandum, p. 17.  This is an incorrect statement of the law.  See Beach Assocs., Inc., supra, 9 Mass. App. Ct. at 394, 401 N.E.2d at 863-864 ("It was within the discretion of the judge, based upon all the facts, circumstances, and conditions surrounding the loan, to void it, to rescind it, to refund, to credit any excessive interest paid, to reform the contract, or to provide any other relief consistent with equitable principles") (emphasis added).  Second, GMACCF contends that "the Massachusetts statute has no applicability here, since the parties agreed that New York law governed their business relationships."  GMACCF's Memorandum, p. 17.  The choice of law

17

provision in the Guaranty, however, is not nearly so broad.  It reads in relevant part: "[t]his guaranty shall be governed by and construed and interpreted in accordance with the laws of the State of New York."  Exhibit 2 to Answer, p. 2.  In this regard, New York's substantive law provides that the parties' choice of law provision indicating that a <u>contract</u> would be governed by a certain state's law does not determine that such state's law will govern a tort claim arising incident to the contract.  <u>Krock v. Lipsay</u>, 97 F.3d 640, 645 (2d Cir. 1996), and cases cited; and <u>Champlain Enter., Inc. v. United States</u>, 945 F. Supp. 468, 471 (N.D.N.Y. 1996) ("[u]nder New York law, a choice-of-law provision indicating that a contract will be governed by a certain body of law does not dictate the law that will govern non-contract claims").[5]  <u>See also</u> <u>Hammelburger v. Foursome Inn Corp.</u>, 437 N.Y.S.2d 356, 358-359, 76 A.D. 646, 649 (2d Dep't 1980). (claim of violation of a criminal usury statute cannot be waived).[6]

  C. <u>Counts III-V – Contract</u>

  GMACCF's argument that Landay lacks standing to pursue the borrowing corporations' contractual rights under the Factoring Agreement, Count III, and the Forbearance Agreement, Count IV, is incorrect.  This is so because Landay has alleged a partial failure of consideration with respect to each of these contracts, and a guarantor is not precluded from raising the failure of the lender to provide the promised consideration as a defense, or presumably, a separate cause of action.  <u>Culver v.</u>

---

[5] <u>Compare</u> <u>Nanopierce Technologies, Inc. v. Southridge Capital Management LLC</u>, No. 02 Civ. 0767, 2002 WL 31819207, *10 (S.D.N.Y. Oct. 10, 2002) which reached a contrary result based on the presence of <u>both</u> a choice of law provision <u>and</u> a mandatory forum selection clause which remitted the parties to the New York Courts.

[6] Since both the corporate borrowers and GMACCF had offices in Massachusetts and since GMACCF registered, albeit late, with the Massachusetts Attorney General, Landay submits that this Court will choose to apply Massachusetts law to this claim.  However, this issue need not be decided on a motion for a judgment on the pleadings.

Parsons, 7 A.D.3d 931, 933, 777 N.Y.S.2d 536, 538 (N.Y. App. Div., 3d Dep't 2004) ("defendant [guarantor] is not precluded from asserting, as a defense, a partial or total failure of consideration").  With respect to the Factoring Agreement, Landay has alleged that GMACCF failed to make seasonal overadvances to the corporate borrowers as promised.  Amended Complaint, ¶¶18-25.  As to the Forbearance Agreement, Landay has alleged that GMACCF failed to provide funds to the corporate borrowers as promised.  Id., ¶¶39-43.  Count V is not barred by a lack of standing for the additional reason that it alleges a breach of the covenant of good faith and fair dealing not only with regard to the Factoring and the Forbearance Agreements but also "related agreements with Landay." Id., ¶83.

D.    Count VII – Chapter 93A

GMACCF concedes that the Chapter 93A Count "purports to allege GMACCF violated Chapter 93A with regard to him personally" but relies on the "same express language in the Guaranty that was referenced with regard to Count I," GMACCF's Memorandum p. 17, to contend that Landay has waived this claim.  The language cited by GMACCF focuses principally on Landay's acknowledgement that the lender was not obligated to try to collect from the borrower before calling the guaranty.  Landay submits that neither the language relied on by GMACCF, nor any other language in the Landay Guaranty, amounted to a waiver of his fraud-based Chapter 93A claim.  Moreover, GMACCF's secondary argument – that Chapter 93A is inapplicable "since the relevant loan documents all state that the parties' relationship shall be governed by New York law," GMACCF's Memorandum p. 17 n.10 – is without merit for the reasons stated above with respect to the Usury Count.  The case of Popkin v. National Benefit Life

19

Insurance Co., 711 F. Supp. 1194, 1200 (S.D.N.Y. 1989) is on point in rejecting

GMACCF's contention in this regard, even though the choice of law provision was

considerably more comprehensive than the one in the case at bar ("I am not persuaded

that Popkin's claim alleging unfair trade practices is a matter concerning the validity,

interpretation, performance [or] effect of the Agency Agreement [and] I therefore reject

defendant's assertion that the Chapter 93A claim is inconsistent with the Agency

Agreement").[7]

IV.     The Court Should Not Abstain From Adjudicating This Dispute Since This
        Case Does Not Present The "Exceptional Circumstances" Which Would
        Warrant A Stay.

In KPS & Associates, Inc. v. Designs By FMC, Inc., 318 F.3d 1, 10-11 (1st Cir.

2003), the First Circuit affirmed the District Court's refusal to stay an action, parallel to a

New York case previously filed by the Massachusetts defendant.  The Massachusetts

action included breach of contract, quantum merit and Chapter 93A claims.  In so doing,

the Court set forth the standards by which a trial court should be guided in exercising its

discretion.  It first determined that the exercise of that discretion was "greatly

constrained by what the Supreme Court has labeled an 'exceptional-circumstances

test'."  Id. at 10 (internal citation omitted).  It noted that, pursuant to this test, "[t]here

must be some extraordinary circumstances for a federal court to shrink from 'the

virtually unflagging obligation of the federal courts to exercise the jurisdiction given

them'."  Id., citing Currie v. Group Ins. Comm'n, 290 F.3d 1, 10 (1st Cir. 2002) (quoting

Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)).

An analysis of the factors identified in the Colorado River case clearly establishes

that no exceptional circumstances are present which would warrant a stay.  Landay

---

[7] GMACCF does not contend that Landay waived Count VI of the Amended Complaint.

agrees with GMACCF that the first factor – whether either court has assumed

jurisdiction over a <u>res</u> – is not applicable.  However, Landay submits that the second

factor – the inconvenience of the federal forum – tilts in plaintiff's favor, since, clearly,

the forum is not inconvenient to GMACCF.  The third factor – the desirability of avoiding

piecemeal litigation – and the fourth factor – the order in which the forums obtained

jurisdiction – should be given little or no weight under the circumstances of this case

since the New York Court's decision that counterclaims could not be asserted in a suit

on the Guaranty necessitated a second suit brought by Landay as the only way he

could assert his claims against GMACCF.  Moreover, since Landay's claims are for the

most part separate from the issues to be litigated in New York – commercial

reasonableness of disposition of collateral and damages – there will not be "wasteful

duplication of effort" and there is little likelihood of inconsistent interlocutory orders.

As to the fifth factor, while federal law does not provide the rule of decision on the

merits, contrary to GMACCF's contention, Massachusetts law will control many of the

issues to be litigated in this case.  As noted above, the parties chose New York law only

for construction of the Guaranty.  The sixth factor – whether the state court is able to

protect plaintiff's rights – tilts heavily in Landay's favor since the New York Court has

ruled that it <u>cannot</u> protect Landay's rights.  Finally, this Court should reject GMACCF's

crocodile tears regarding the "vexatious and reactive" nature of the claims since the

New York Court's decision left Landay no choice but to assert his claims in a separate

action.  See also <u>Neuman v. Harmon</u>, <u>supra</u>, 965 F. Supp. at 510-511, where the

District Court made a similar analysis of the various <u>Colorado River</u> factors and ruled

that the defendant had failed to overcome the "heavy presumption favoring the exercise

of jurisdiction," citing <u>Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.</u>, 800 F.2d 325, 327 (2d Cir. 1986).  Indeed, in <u>Neuman</u>, the Court specifically found the state court forum <u>could</u> adequately protect the plaintiff's rights and nevertheless allowed the later-filed federal action to proceed.

## <u>CONCLUSION</u>

For the reasons stated above, GMACCF's Motion for Judgment on the Pleadings should be denied <u>in</u> <u>toto</u>.  Alternatively if this Court determines that the forum selection clause in the Landay Guaranty is mandatory, it should transfer the case to the United States District Court for the Southern District of New York in the interests of justice.

Respectfully submitted,
DAVID L. LANDAY,
By his attorney,


/s/ Alan R. Hoffman
Alan R. Hoffman, BBO# 236860
Lynch, Brewer, Hoffman & Fink, LLP
101 Federal Street, 22nd Floor
Boston, MA 02110
(617) 951-0800

Dated: April 21, 2005


192646_1