UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-CV-11955-WGY

| | | |
|---|---|---|
| DAVID L. LANDAY, | ) | |
| | ) | |
| Plaintiff, | ) | **AFFIDAVIT OF** |
| | ) | **DAVID L. LANDAY** |
| v. | ) | |
| | ) | |
| GMAC COMMERCIAL CREDIT, LLC and | ) | |
| GMAC COMMERCIAL FINANCE, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

I, David L. Landay, hereby depose and say as follows:

1.      At all relevant times, I was President, CEO, director and a substantial stockholder of Seneca Sports, Inc. ("Seneca") a company which engaged in the distribution of sporting good products in the United States which had its principal office in Massachusetts.

2.      I am the Plaintiff in the above-entitled case.

3.      I was the principal spokesman for Seneca during the negotiations with what was then known as GMAC Commercial Credit LLC ("the Lender") for financing in the summer of 2000.  Counsel for both Seneca and me, personally, was Gary L. Hoff of Casner and Edwards, LLP.  Attorney Hoff customarily sent me drafts of all documents provided by the Lender as well as his communications with the Lender's attorney, Lou Marcus.

4.      It was my custom and practice at this time to review such drafts, and, if I had any questions, I would discuss them with Attorney Hoff.

5.     I have examined each of the documents which are attached to my affidavit.  Each document was received and reviewed by me during the negotiations with the Lender.  The attached exhibits are true and accurate copies of such documents.

6.     Exhibit A is a copy of a facsimile transmission sheet enclosing a "first draft" of certain documents including a "Guaranty".  It was sent to Hoff by the Lender's attorney, Mr. Marcus on August 14, 2000.

7.     Exhibit B is a draft Guaranty transmitted by Marcus to Hoff on that day.

8.     Exhibit C is a Memorandum from Hoff to Paul Fitzgerald, the Lender's representative, and to Mr. Marcus dated August 15, 2000 with comments on the draft documents.  The only reference made to the Guaranty is to the limitation of $3,500,000 which Mr. Hoff wanted to include.

9.     Exhibit D is an August 16, 2000 letter which Hoff sent to Marcus which refers to his having forwarded "the Memorandum" and marked up pages yesterday.

10.     On information and belief, Exhibit E is a copy of the marked up pages of the Guaranty which Hoff had sent.

11.     Exhibit F is a facsimile transmission from Marcus to Hoff dated September 12, 2000 under cover of which Marcus sent draft documents including a draft of a Personal Guaranty.

12.     Exhibit G is the black-lined draft of the Guaranty which Marcus transmitted on that date.

13.    Exhibit H is a transmittal letter from Marcus to Hoff and Fitzgerald dated September 15, 2000.

14.    Exhibit I is the draft Guaranty which Mr. Marcus transmitted on that date.

15.    Exhibit J is a copy of the Guaranty which I executed at a closing in New York City on September 19, 2000.

16.    A review of all of the guaranties which the Lender sent to Hoff shows that the last large paragraph on page 2 was not amended, changed or modified from the Lender's initial August 14, 2000 draft, Exhibit B, to the final operative document, Exhibit J, which I signed on September 19, 2000.

SIGNED UNDER THE PAINS AND PENALITIES OF PERJURY ON THIS 18th DAY OF APRIL, 2005.


/s/ David L. Landay
DAVID L. LANDAY

193009_1

# EXHIBIT "A"

AUG. -14' 00 (MON) 13:02    GMAC    P. 001

**LOUIS G. MARCUS**
**Attorney at Law**
***c/o* GMAC COMMERCIAL CREDIT LLC**
**LEGAL DEPARTMENT**
**1290 Avenue of the Americas**
**New York, New York 10104**

Telephone No.   212-884-4102
Facsimile No.:   212-884-7372

**FACSIMILE TRANSMITTAL**

**ATTENTION**

**CONFIDENTIALITY NOTE**

The information in this facsimile message ("fax") is sent by an attorney or his or her agent, is intended to be confidential and for the use of only the individual or entity named above.  The information may be protected by attorney/client privilege, work product immunity or other legal rules.  If the reader of this message is not the intended recipient, you are notified that retention, dissemination, distribution or copying of this fax is strictly prohibited.  If you receive this fax in error, please notify us immediately by telephone and return it to the address above. Thank you.

| TO: | Paul Fitzgerald | FAX NO.: | Auto #   *1* |
|-----|-----------------|----------|--------------|
| FROM: | Lou Marcus. | DATE: | August 14, 2000 |
| RE: | SENECA SPORTS, INC. | Pages: | *28* |
| TO: | Gary Hoff, Esq. | FAX NO: | (617) 426-8816 |

I am herewith enclosing a first draft of the following documents:

1.   Factoring Agreement
2.   Secretary's Certificate
3.   Inventory Security Agreement
4.   Equipment Security Agreement
5.   Letter of Credit Financing Supplement
6.   Guaranty
7.   Subordination Agreement
8.   Promissory Note (Re: Subordination Agreement)

Please note that these documents are for the special purposes only and have not been reviewed by my client and we hereby reserve our rights to make or request additional changes.

**IF YOU HAVE ANY TROUBLE WITH THIS TRANSMISSION, PLEASE CALL**
**Linda Paolano AT (212) 884-7274**

**3.      PURCHASE PRICE OF RECEIVABLES**

The purchase price of Receivables is the net face amount thereof less our commission.  The term "net face amount" means the gross face amount of the invoice, less returns, discounts (which shall be determined by us where optional terms are given), anticipation reductions or any other unilateral deductions taken by customers, and credits, and allowances to customers of any nature.  The purchase price will be credited to your account and remitted to you on the "Settlement Date" (hereinafter described).  The Settlement Date for each

# EXHIBIT "B"

# G U A R A N T Y

TO:     **GMAC COMMERCIAL CREDIT LLC**

In consideration of your entering into or your refraining from terminating at this time a Factoring Agreement with Seneca Sports, Inc. ("Client"), bearing the effective date of _____, 2000 (said Factoring Agreement as heretofore or hereafter amended, supplemented and/or restated is hereinafter called the "Agreement") the undersigned hereby guarantees to GMAC COMMERCIAL CREDIT LLC (hereinafter called the "Company"), its successors and assigns, the prompt payment at maturity, or whenever they may become due in accordance with any of their terms, of all now existing and hereafter arising liabilities, indebtedness and obligations of the Client to the Company (including "Obligations," as defined in the Agreement, if such term is defined therein), whenever and however arising or acquired by the Company, whether direct or indirect, absolute or contingent (collectively, the "Obligations") and whether the same may now be or hereafter become due from the Client or the executors, administrators, successors or assigns of the Client, including the cost of protest and all legal expenses of or for collection, or for realization upon any collateral for the Obligations ("Collateral") or other guaranty. If this guaranty and/or any Obligation is placed with an attorney for collection, the undersigned further agrees to pay an attorney's fee of fifteen percent of any principal and interest due and demanded, which is hereby agreed to be just and reasonable and which shall be recoverable with the amount due under this guaranty.

Demand of payment, presentment, protest and notice of dishonor or non-payment are hereby expressly waived, and if any of the Obligations are payable on demand, the Company may, in its sole and absolute discretion, determine the reasonableness of the period, if any, to elapse prior to the making of demand.

The undersigned hereby consents and agrees that, without notice to or further assent from the undersigned, the time of payment of all or any of the Obligations, or any other provisions of the Obligations, may be extended, changed or modified, the parties thereto discharged, any or all Collateral released without obtaining other Collateral in substitution therefor, and any composition or settlement consummated and accepted, and that the undersigned will remain bound upon this guaranty notwithstanding one or more such extensions, changes, modifications, discharges, releases, compositions or settlements. The undersigned further consents and agrees that this guaranty shall not be impaired or otherwise affected by any failure to call for, take, hold, protect or perfect, continue the perfection of or enforce any security interest in or other lien upon, any Collateral or by any failure to exercise, delay in the exercise, exercise or waiver of, or forbearance or other indulgence with respect to, any right or remedy available to the Company. Any statement of account which is binding on the Client under the Agreement shall be binding on the undersigned for all purposes under this guaranty.

The Company may also at any time in its discretion sell, assign, transfer and deliver the whole of the Collateral, or any part thereof, or any substitutes therefor, or any additions thereto, at public or private sale, at any time or place selected by the Company, at such prices as it may deem best and either for cash or for credit or future delivery, at the option of the Company without either demand, advertisement or notice of any kind to the undersigned, which are hereby expressly waived.

The undersigned assigns, pledges and grants a security interest to the Company in any money or property belonging to the undersigned at any time in the possession of the Company or in the possession of any parent, affiliate or subsidiary of the Company (hereinafter called a "Related Company"), including any deposit balances and all property held by the Company or a Related Company for any purpose including safekeeping, custody, transmission, collection, or pledge, and all proceeds of the foregoing, as security for the performance by the undersigned of the obligations under this guaranty, whether due or not, with full power and authority to apply any such money, property and proceeds to the extinguishment of any such obligations and to sell, enforce, collect or otherwise realize on said money, property or proceeds in accordance with applicable law.

The undersigned agrees that the Company is not to be obligated in any manner to inquire into the powers of the Client, or its successors, its of their directors, officers, or agents, acting or purporting to act on its or their behalf, and any liabilities purporting to be contracted for the Client, or its successors, by its or their directors, officers, or agents, in the professed exercise of such powers, shall be deemed to form a part of the liabilities guaranteed hereunder even though the incurrence of such liabilities be in excess of the powers of the Client, its successors, or its or their directors, officers, or agents aforesaid, or shall be in any way irregular, defective or informal.

The liability of the undersigned on this guaranty shall be direct, immediate, absolute, continuing, unconditional and unlimited and not conditional or contingent upon the pursuit by the Company of whatever remedies it may have against the Client or the Client's successors, executors, administrators or assigns, or the security or liens it may possess, and this guaranty shall be and shall be construed as being and intended to be, a continuing guaranty of the payment of any and all Obligations either made, endorsed or contracted by the Client, or any successor of the Client, prior to the receipt by the Company of written notice of the revocation of this guaranty by the undersigned, and of all extensions or renewals thereof in whole or in part; and notwithstanding the death of, or the revocation of this guaranty by, the undersigned guarantor, the liability of the guarantor so revoking and of the estate of the guarantor who dies shall continue as to Obligations incurred or contracted by the Client, or any successor of the Client, prior to such revocation or death and as to all extensions and renewals thereof, in whole or in part.

Rev.7/27/99
S285/D1                                    - 1 -                                    (GTYINDIV)

If any payment of the Obligations is made by or for the benefit of the Client and is repaid by the Company to the Client or any other party pursuant to any federal, state or other law, including those relating to bankruptcy, insolvency, preference or fraudulent transfer, then to the extent of such repayment, the liability of the undersigned with respect to such Obligation shall continue in full force and effect. The undersigned agrees that if the Company gives to the undersigned written notice of the institution of any action or proceeding, legal or otherwise between the Company and the Client, the undersigned shall be conclusively bound by the adjudication in any such legal or other proceeding, or by any judgment or award decree entered therein.

Until such time as the Obligations have been fully and indefeasibly paid, the undersigned waives any claim or other right which the undersigned may now have or hereafter acquire against the Client or any other person that is primarily or contingently liable on any obligation that arises from the existence or performance of the undersigned's obligations under this guaranty, including, without limitation, any right of subrogation, reimbursement, exoneration, contribution, or indemnification.

The undersigned also waives the right to assert in any action or proceeding upon this guaranty any defenses, offsets or counterclaims which the undersigned may now or hereafter have. This guaranty shall be governed by and construed and interpreted in accordance with the laws of the State of New York (without giving effect to New York law on conflicts of law). All actions and proceedings arising out of or in connection with this guaranty, the Agreement and/or any transactions relating hereto and thereto, including without limitation for recognition or enforcement of any judgment, may be brought in the federal or state courts of the State of New York or, at the Company's option, in any other courts as the Company may select and the undersigned agrees that such courts are convenient forums and the undersigned unconditionally and irrevocably submits, for the undersigned and its property, to the nonexclusive personal jurisdiction of such courts. The undersigned agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. The undersigned additionally hereby waives: (a) personal service of process and consents that service of process upon the undersigned may be made by certified or registered mail, return receipt requested, directly to the undersigned at the address of the undersigned appearing below and service so made shall be deemed completed two (2) days after the same shall have been so mailed; (b) any claim that the undersigned is not personally subject to the jurisdiction of the above named courts; and (c) notice of the acceptance of this guaranty. This guaranty cannot be altered or discharged orally.

THE UNDERSIGNED WAIVES THE RIGHT TO TRIAL BY JURY IN ALL ACTIONS BROUGHT BY OR AGAINST THE COMPANY.

IN WITNESS WHEREOF, the undersigned has duly executed these presents this _____ day of _____, 2000.

_____
Signature of Individual

David Landay
Typed Name of Individual

_____

_____
Address

STATE OF
                        SS.
COUNTY OF

On this _____ day of _____, 2000, before me personally appeared David Landay to me known and known to me to be the individual described in and who executed the foregoing instrument and that such individual duly acknowledged to me that such individual executed same.

_____
Notary Public

# EXHIBIT "C"

CASNER & EDWARDS, LLP

MEMORANDUM

**To:**     **Paul Fitzgerald, Lou Marcus**

**From:**   **Gary Hoff**

**Date:**   **August 15, 2000**

**RE:**     **GMACCC, LC Factoring Arrangement with Seneca Sports, Inc.**

---

The following memorandum contains a list of those issues as to which the documents forwarded yesterday are either at variance from the commitment letter or are otherwise of significant concern to Seneca. There are, in addition, a minimal number of less important modifications or corrections which will be shown on a mark up to be forwarded to Mr. Marcus promptly.

### Factoring Agreement.

1.      Section 4 (b)(ii) allows for a proration of the Minimum Volume Charge on Receivables for a Partial First Year. However, it appears to make the Minimum Volume Charge on Receivables fully applicable to a Last Partial Year, without proration, even if the Last Partial Year results from the normal expiration of the agreement on the Termination Date three years from now. We would request that a proration be made as to the Last Partial Year in the event that it results from a simple expiration of the Agreement.

2.      . Section 9 does not have any of the financial covenants filled in. Could you please provide your proposed covenants. (As an incidental matter, the definition of Fixed Charge Coverage Ratio appears to have some language missing).

3.      Section 12:

The Borrowing Rate is ¼% higher than as indicated in the commitment letter.

The Default Rate is 1% higher than as indicated in the commitment letter.

An Eligible Receivable must be payable to Seneca, but Section 8(a) requires all Receivables to bear a notice that it is payable to GMACCC.

Subordination Agreement is defined to require the subordination of $2,900,000 in debt due to David Landay from Seneca. The agreed upon amount of subordinated debt was $2,300,000.

2

4.    Other.  It is my understanding that an account will be maintained for Seneca at Fleet Bank.  I am somewhat confused however as to how the mechanics of collection, deposit and drawing by Seneca are intended to work.

### Guaranty.

The Guaranty of David Landay is, under the terms of the commitment letter, to be a guaranty limited in amount to $3,500,000.

### Subordination Agreement and Promissory Note.

As mentioned above, the amount of debt due to Mr. Landay to be subordinated to GMACCC is to be limited to $2,300,000, and should therefore not include all the obligations due to Mr. Landay from Seneca.  In addition, Seneca should be allowed to make payments of principal provided the Company is not in Default.  There are existing notes evidencing the debt to be subordinated.  Accordingly, the note included will not be required.

# EXHIBIT "D"

CASNER & EDWARDS, LLP

ATTORNEYS AT LAW

ONE FEDERAL STREET
BOSTON, MASSACHUSETTS 02110

TELEPHONE
(617) 426-5900

FACSIMILE (617) 426-8810

ANDREW J. CASNER, JR.
(1974-1999)
THOMAS D. EDWARDS
(1976-1987)
HASKELL A. KASSLER
WALTER H. MAYO III
MARTIN E. GREENBLATT
CHARLES M. HAMANN
ROBERT A. MURPHY
ROBERT E. COWDEN III
JOHN H. ASHBY
DOUGLAS K. MANSFIELD
ANDREW M. HIGGINS
TERRANCE J. HAMILTON
ANITA W. ROBBOY

ROBERT S. KUTNER
DAVID J. CHAVOLLA
STEPHEN M. PERRY
PETER A. CARO
GARY L. HOFF
GREGG S. BLACKBURN
LINDA A. OUELLETTE
JOAN M. GRIFFIN
DONNA B. MACKENNA
GARY L. KEMP
MATTHEW T. MURPHY
MARK W. WILLIAMSON
WILLIAM F. MCSWEENY III
CHRISTOPHER P. MAFFUCCI
MARTHA A. CORAVOS

August 16, 2000

**BY FAX (212) 884-7372**

Louis G. Marcus, Esq.
c/o GMAC Commercial Credit, LLC
Legal Department
1290 Avenue of the Americas
New York, New York 10104

RE:    Factoring Agreement between GMAC Commercial Credit, LLC ("GMACCC")
and Seneca Sports, Inc. ("Seneca")

Dear Lou:

Subsequent to the memorandum and marked up change pages which I forwarded to you yesterday, David Landay has informed me of certain other points which should have been made.

He has informed me that he and Paul Fitzgerald had agreed that his stand by letter of credit would be in the amount of $4,000,000 not $4,100,000. In addition, the supplemental agreement relating to letters of credit limits the use of letters of credit to support foreign orders of products. I am informed that one of the licenses which Seneca is acquiring (from Disney Corporation) must be supported by a letter of credit in the amount of $138,000. Seneca needs to have the authority to issue that letter of credit under the supplemental agreement.

I also wish to bring to your attention that there is an insurance funded stock purchase agreement among Seneca and its shareholders pursuant to which Seneca is named as the beneficiary on certain life insurance policies, the sole purpose of which is to provide funds to Seneca in order to redeem shares of stock held by stockholders. Although the language of the Factoring Agreement does not specifically include this type of insurance I wish to make certain that the proceeds of any such life insurance are specifically excluded from the transaction.

CASNER & EDWARDS, LLP

Louis G. Marcus, Esq.
August 16, 2000
Page 2


     As I indicated in my fax cover sheet to you, we need to obtain GMACCC's preferred language for the stand by letter of credit which is to be issued on Mr. Landay's behalf by Fleet Private Bank.

Very truly yours,

Gary L. Hoff

GLH:mtl

cc: Mr. David Landay
    Mr. Neal Finklestein
    Mr. Paul Fitzgerald

4348.001

#163631

# EXHIBIT "E"

*Limited*
**G U A R A N T Y**

**TO:    GMAC COMMERCIAL CREDIT LLC**

In consideration of your entering into or your refraining from terminating at this time a Factoring Agreement with Seneca Sports, Inc. ("Client"), bearing the effective date of _____, 2000 (said Factoring Agreement as heretofore or hereafter amended, supplemented and/or restated is hereinafter called the "Agreement") the undersigned hereby guarantees to GMAC COMMERCIAL CREDIT LLC (hereinafter called the "Company"), its successors and assigns, the prompt payment at maturity, or whenever they may become due in accordance with any of their terms, of all now existing and hereafter arising liabilities, indebtedness and obligations of the Client to the Company (including "Obligations," as defined in the Agreement, if such term is defined therein), whenever and however arising or acquired by the Company, whether direct or indirect, absolute or contingent (collectively, the "Obligations") and whether the same may now be or hereafter become due from the Client or the executors, administrators, successors or assigns of the Client, including the cost of protest and all legal expenses of or for collection, or for realization upon any collateral for the Obligations ("Collateral") or other guaranty.  If this guaranty and/or any Obligation is placed with an attorney for collection, the undersigned further agrees to pay an attorney's fee of fifteen percent of any principal and interest due and demanded, which is hereby agreed to be just and reasonable and which shall be recoverable with the amount due under this guaranty. *The liability of the undersigned to the Company pursuant to this guaranty shall not exceed $5,500,000 in the aggregate.* Demand of payment, presentment, protest and notice of dishonor or non-payment are hereby expressly waived, and if any of the Obligations are payable on demand, the Company may, in its sole and absolute discretion, determine the reasonableness of the period, if any, to elapse prior to the making of demand.

The undersigned hereby consents and agrees that, without notice to or further assent from the undersigned, the time of payment of all or any of the Obligations, or any other provisions of the Obligations, may be extended, changed or modified, the parties thereto discharged, any or all Collateral released without obtaining other Collateral in substitution therefor, and any composition or settlement consummated and accepted, and that the undersigned will remain bound upon this guaranty notwithstanding one or more such extensions, changes, modifications, discharges, releases, compositions or settlements.  The undersigned further consents and agrees that this guaranty shall not be impaired or otherwise affected by any failure to call for, take, hold, protect or perfect, continue the perfection of or enforce any security interest in or other lien upon, any Collateral or by any failure to exercise, delay in the exercise, exercise or waiver of, or forbearance or other indulgence with respect to, any right or remedy available to the Company.  Any statement of account which is binding on the Client under the Agreement shall be binding on the undersigned for all purposes under this guaranty.

The Company may also at any time in its discretion sell, assign, transfer and deliver the whole of the Collateral, or any part thereof, or any substitutes therefor, or any additions thereto, at public or private sale, at any time or place selected by the Company, at such prices as it may deem best and either for cash or for credit or future delivery, at the option of the Company without either demand, advertisement or notice of any kind to the undersigned, which are hereby expressly waived.

The undersigned assigns, pledges and grants a security interest to the Company in any money or property belonging to the undersigned at any time in the possession of the Company or in the possession of any parent, affiliate or subsidiary of the Company (hereinafter called a "Related Company"), including any deposit balances and all property held by the Company or a Related Company for any purpose including safekeeping, custody, transmission, collection, or pledge, and all proceeds of the foregoing, as security for the performance by the undersigned of the obligations under this guaranty, whether due or not, with full power and authority to apply any such money, property and proceeds to the extinguishment of any such obligations and to sell, enforce, collect or otherwise realize on said money, property or proceeds in accordance with applicable law.

The undersigned agrees that the Company is not to be obligated in any manner to inquire into the powers of the Client, or its successors, its or their directors, officers, or agents, acting or purporting to act on its or their behalf, and any liabilities purporting to be contracted for the Client, or its successors, by its or their directors, officers, or agents, in the professed exercise of such powers, shall be deemed to form a part of the liabilities guaranteed hereunder even though the incurrence of such liabilities be in excess of the powers of the Client, its successors, or its or their directors, officers, or agents aforesaid, or shall be in any way irregular, defective or informal. *except as set forth above*

The liability of the undersigned on this guaranty shall be direct, immediate, absolute, continuing, unconditional and unlimited and not conditional or contingent upon the pursuit by the Company of whatever remedies it may have against the Client or the Client's successors, executors, administrators or assigns, or the security or liens it may possess, and this guaranty shall be and shall be construed as being and intended to be, a continuing guaranty of the payment of any and all Obligations either made, endorsed or contracted by the Client, or any successor of the Client, prior to the receipt by the Company of written notice of the revocation of this guaranty by the undersigned, and of all extensions or renewals thereof in whole or in part; and notwithstanding the death of, or the revocation of this guaranty by, the undersigned guarantor, the liability of the guarantor so revoking and of the estate of the guarantor who dies shall continue as to Obligations incurred or contracted by the Client, or any successor of the Client, prior to such revocation or death and as to all extensions and renewals thereof, in whole or in part.

If any payment of the Obligations is made by or for the benefit of the Client and is repaid by the Company to the Client or any other party pursuant to any federal, state or other law, including those relating to bankruptcy, insolvency, preference or fraudulent transfer, then to the extent of such repayment, the liability of the undersigned with respect to such Obligation shall continue in full force and effect. The undersigned agrees that if the Company gives to the undersigned written notice of the institution of any action or proceeding, legal or otherwise between the Company and the Client, the undersigned shall be conclusively bound by the adjudication in any such legal or other proceeding, or by any judgment or award decree entered therein.

Until such time as the Obligations have been fully and indefeasibly paid, the undersigned waives any claim or other right which the undersigned may now have or hereafter acquire against the Client or any other person that is primarily or contingently liable on any obligation that arises from the existence or performance of the undersigned's obligations under this guaranty, including, without limitation, any right of subrogation, reimbursement, exoneration, contribution, or indemnification.

The undersigned also waives the right to assert in any action or proceeding upon this guaranty any defenses, offsets or counterclaims which the undersigned may now or hereafter have. This guaranty shall be governed by and construed and interpreted in accordance with the laws of the State of New York (without giving effect to New York law on conflicts of law). All actions and proceedings arising out of or in connection with this guaranty, the Agreement and/or any transactions relating hereto and thereto, including without limitation for recognition or enforcement of any judgment, may be brought in the federal or state courts of the State of New York or, at the Company's option, in any other courts as the Company may select and the undersigned agrees that such courts are convenient forums and the undersigned unconditionally and irrevocably submits, for the undersigned and its property, to the nonexclusive personal jurisdiction of such courts. The undersigned agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. The undersigned additionally hereby waives: (a) personal service of process and consents that service of process upon the undersigned may be made by certified or registered mail, return receipt requested, directly to the undersigned at the address of the undersigned appearing below and service so made shall be deemed completed two (2) days after the same shall have been so mailed; (b) any claim that the undersigned is not personally subject to the jurisdiction of the above named courts; and (c) notice of the acceptance of this guaranty. This guaranty cannot be altered or discharged orally.

THE UNDERSIGNED WAIVES THE RIGHT TO TRIAL BY JURY IN ALL ACTIONS BROUGHT BY OR AGAINST THE COMPANY.

IN WITNESS WHEREOF, the undersigned has duly executed these presents this _____ day of _____, 2000.

_____
Signature of Individual

<u>David Landay</u>
Typed Name of Individual

_____

_____
Address

STATE OF

COUNTY OF                SS.

On this _____ day of _____, 2000, before me personally appeared David Landay to me known and known to me to be the individual described in and who executed the foregoing instrument and that such individual duly acknowledged to me that such individual executed same.

_____
Notary Public

# EXHIBIT "F"

## LOUIS G. MARCUS
**Attorney at Law**
**c/o GMAC COMMERCIAL CREDIT LLC**
**LEGAL DEPARTMENT**
1290 Avenue of the Americas
New York, New York 10104

Telephone No.  212-884-.7102
Facsimile No.:  212-884-7372

### FACSIMILE TRANSMITTAL

TO:  Paul Fitzgerald              FAX NO.:

FROM:  Louis Marcus              DATE:        September 12, 2000

RE:  SENECA SPORTS, INC.        Pages: 21

cc:  (Gary Hoff, Esq.)            FAX No.  (617) 426-8810

---

I am herewith enclosing revised blacklined drafts for the following documents:

1.   **Factoring Agreement**
2.   **Equipment Security Agreement**
3.   **Subordination Agreement**
4.   **Personal Guaranty**

Please note that these documents have not be reviewed by GMAC and we reserve the right to make or request additional changes.  Please call me with any comments you may have.

---

### ATTENTION:  CONFIDENTIALITY NOTE

The information in this facsimile message ("fax") is sent by an attorney or his . or her agent, is intended to be confidential and for the use of only the individual or entity named above.  The information may be protected by attorney/client privilege, work product immunity or other legal rules.  If the reader of this message is not the intended recipient, you are notified that retention, dissemination, distribution or copying of this fax is strictly prohibited.  If you receive this fax in error, please notify us immediately by telephone and return it to the address above.  Thank you

**IF YOU HAVE ANY TROUBLE WITH THIS TRANSMISSION, PLEASE CALL**
**Linda Paolano AT (212) 884-7274**

# EXHIBIT "G"

GUARANTY **DRAFT FOR DISCUSSION PURPOSES ONLY**

TO:    **GMAC COMMERCIAL CREDIT LLC**

In consideration of your entering into or your refraining from terminating at this time a Factoring Agreement with Seneca Sports, Inc. ("Client"), bearing the effective date of _____, 2000 (said Factoring Agreement as heretofore or hereafter amended, supplemented and/or restated is hereinafter called the "Agreement") the undersigned hereby guarantees to GMAC COMMERCIAL CREDIT LLC (hereinafter called the "Company"), its successors and assigns, the prompt payment at maturity, or whenever they may become due in accordance with any of their terms, of all now existing and hereafter arising liabilities, indebtedness and obligations of the Client to the Company (including "Obligations," as defined in the Agreement, if such term is defined therein), whenever and however arising or acquired by the Company, whether direct or indirect, absolute or contingent (collectively, the "Obligations") and whether the same may now be or hereafter become due from the Client or the executors, administrators, successors or assigns of the Client, including the cost of protest and all legal expenses of or for collection, or for realization upon any collateral for the Obligations ("Collateral") or other guaranty. If this guaranty and/or any Obligation is placed with an attorney for collection, the undersigned further agrees to pay an attorney's fee of fifteen percent of any principal and interest due and demanded, which is hereby agreed to be just and reasonable and which shall be recoverable with the amount due under this guaranty.

Demand of payment, presentment, protest and notice of dishonor or non-payment are hereby expressly waived, and if any of the Obligations are payable on demand, the Company may, in its sole and absolute discretion, determine the reasonableness of the period, if any, to elapse prior to the making of demand.

The undersigned hereby consents and agrees that, without notice to or further assent from the undersigned, the time of payment of all or any of the Obligations, or any other provisions of the Obligations, may be extended, changed or modified, the parties thereto discharged, any or all Collateral released without obtaining other Collateral in substitution therefor, and any composition or settlement consummated and accepted, and that the undersigned will remain bound upon this guaranty notwithstanding one or more such extensions, changes, modifications, discharges, releases, compositions or settlements. The undersigned further consents and agrees that this guaranty shall not be impaired or otherwise affected by any failure to call for, take, hold, protect or perfect, continue the perfection of or enforce any security interest in or other lien upon, any Collateral or by any failure to exercise, delay in the exercise, exercise or waiver of, or forbearance or other indulgence with respect to, any right or remedy available to the Company. Any statement of account which is binding on the Client under the Agreement shall be binding on the undersigned for all purposes under this guaranty.

The Company may also at any time in its discretion sell, assign, transfer and deliver the whole of the Collateral, or any part thereof, or any substitutes therefor, or any additions thereto, at public or private sale, at any time or place selected by the Company, at such prices as it may deem best and either for cash or for credit or future delivery, at the option of the Company without either demand, advertisement or notice of any kind to the undersigned, which are hereby expressly waived.

The undersigned assigns, pledges and grants a security interest to the Company in any money or property belonging to the undersigned at any time in the possession of the Company or in the possession of any parent, affiliate or subsidiary of the Company (hereinafter called a "Related Company"), including any deposit balances and all property held by the Company or a Related Company for any purpose including safekeeping, custody, transmission, collection, or pledge, and all proceeds of the foregoing, as security for the performance by the undersigned of the obligations under this guaranty, whether due or not, with full power and authority to apply any such money, property and proceeds to the extinguishment of any such obligations and to sell, enforce, collect or otherwise realize on said money, property or proceeds in accordance with applicable law.

The undersigned agrees that the Company is not to be obligated in any manner to inquire into the powers of the Client, or its successors, its or their directors, officers, or agents, acting or purporting to act on its or their behalf, and any liabilities purporting to be contracted for the Client, or its successors, by its or their directors, officers, or agents, in the professed exercise of such powers, shall be deemed to form a part of the liabilities guaranteed hereunder even though the incurrence of such liabilities be in excess of the powers of the Client, its successors, or its or their directors, officers, or agents aforesaid, or shall be in any way irregular, defective or informal.

The liability of the undersigned on this guaranty shall be direct, immediate, absolute, continuing, unconditional and unlimited and not conditional or contingent upon the pursuit by the Company of whatever remedies it may have against the Client or the Client's successors, executors, administrators or assigns, or the security or liens it may possess, and this guaranty shall be and shall be construed as being and intended to be, a continuing guaranty of the payment of and all obligations either made, endorsed or contracted by the Client, or any successor of the Client, prior to the receipt by the Company of written notice of the revocation of this guaranty by the undersigned, and of all extensions or renewals thereof in whole or in part; and notwithstanding the death of, or the revocation of this guaranty by, the undersigned guarantor, the liability of the guarantor so revoking and of the estate of the guarantor who dies shall continue as to Obligations incurred or contracted by the Client, or any successor of the Client, prior to such revocation or death and as to all extensions and renewals thereof, in whole or in part.

P. 018                                                          SEP.-12'00(TUE) 16:42    GMAC

If any payment of the Obligations is made by or for the benefit of the Client and is repaid by the Company to the Client or any other party pursuant to any federal, state or other law, including those relating to bankruptcy, insolvency, preference or fraudulent transfer, then to the extent of such repayment, the liability of the undersigned with respect to such Obligation shall continue in full force and effect. The undersigned agrees that if the Company gives to the undersigned written notice of the institution of any action or proceeding, legal or otherwise between the Company and the Client, the undersigned shall be conclusively bound by the adjudication in any such legal or other proceeding, or by any judgment or award decree entered therein.

Until such time as the Obligations have been fully and indefeasibly paid, the undersigned waives any claim or other right which the undersigned may now have or hereafter acquire against the Client or any other person that is primarily or contingently liable on any obligation that arises from the existence or performance of the undersigned's obligations under this guaranty, including, without limitation, any right of subrogation, reimbursement, exoneration, contribution, or indemnification.

Notwithstanding anything to the contrary contained herein, the undersigned's liability hereunder shall not exceed a total maximum aggregate amount of $3,500,000.00.

The undersigned also waives the right to assert in any action or proceeding upon this guaranty any defenses, offsets or counterclaims which the undersigned may now or hereafter have. This guaranty shall be governed by and construed and interpreted in accordance with the laws of the State of New York (without giving effect to New York law on conflicts of law). All actions and proceedings arising out of or in connection with this guaranty, the Agreement and/or any transactions relating hereto and thereto, including without limitation for recognition or enforcement of any judgment, may be brought in the federal or state courts of the State of New York or, at the Company's option, in any other courts as the Company may select and the undersigned agrees that such courts are convenient forums and the undersigned unconditionally and irrevocably submits, for the undersigned and its property, to the nonexclusive personal jurisdiction of such courts. The undersigned agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. The undersigned additionally hereby waives: (a) personal service of process and consents that service of process upon the undersigned may be made by certified or registered mail, return receipt requested, directly to the undersigned at the address of the undersigned appearing below and service so made shall be deemed completed two (2) days after the same shall have been so mailed; (b) any claim that the undersigned is not personally subject to the jurisdiction of the above named courts; and (c) notice of the acceptance of this guaranty. This guaranty cannot be altered or discharged orally.

THE UNDERSIGNED WAIVES THE RIGHT TO TRIAL BY JURY IN ALL ACTIONS BROUGHT BY OR AGAINST THE COMPANY.

IN WITNESS WHEREOF, the undersigned has duly executed these presents this _____ day of _____, 2000.


_____
Signature of Individual

David Landay
Typed Name of Individual

_____

_____
Address


STATE OF

                    SS.
COUNTY OF

On this _____ day of _____, 2000, before me personally appeared David Landay to me known and known to me to be the individual described in and who executed the foregoing instrument and that such individual duly acknowledged to me that such individual executed same.


                                    _____
                                    Notary Public

**EXHIBIT "H"**

# LOUIS G. MARCUS
### ATTORNEY AT LAW
## c/o GMAC COMMERCIAL CREDIT LLC
### 1290 Avenue of the Americas
### New York, New York 10104

September 15, 2000

Tel:    (212) 884-4102
Fax:    (212) 884-7372

Gary L. Hoff, Esq.
Casner & Edwards, LLP
One Federal Street
Boston, MA 02110

Mr. Paul Fitzgerald
Senior Vice President
GMAC Commercial Credit LLC
One Washington Mall, 2nd Floor
Boston, MA 02108

Gentlemen:

    As discussed, I am enclosing blacklined or unchanged versions of most of the documents for the Seneca transaction. The UCC's and certain letter agreements, which I discussed with Gary, will follow on Monday.

Very truly yours,

Louis G. Marcus

Enclosures

# EXHIBIT "I"

## GUARANTY

**TO:     GMAC COMMERCIAL CREDIT LLC**

In consideration of your entering into or your refraining from terminating at this time a Factoring Agreement with Seneca Sports, Inc. ("Client"),and Brookfield International, Inc. (jointly and severally "Client"), bearing the effective date of _____, 2000 (said Factoring Agreement as heretofore or hereafter amended, supplemented and/or restated is hereinafter called the "Agreement") the undersigned hereby guarantees to GMAC COMMERCIAL CREDIT LLC (hereinafter called the "Company"), its successors and assigns, the prompt payment at maturity, or whenever they may become due in accordance with any of their terms, of all now existing and hereafter arising liabilities, indebtedness and obligations of the Client to the Company (including "Obligations," as defined in the Agreement, if such term is defined therein), whenever and however arising or acquired by the Company, whether direct or indirect, absolute or contingent (collectively, the "Obligations") and whether the same may now be or hereafter become due from the Client or the executors, administrators, successors or assigns of the Client, including the cost of protest and all legal expenses of or for collection, or for realization upon any collateral for the Obligations ("Collateral") or other guaranty.  If this guaranty and/or any Obligation is placed with an attorney for collection, the undersigned further agrees to pay an attorney's fee of fifteen percent of any principal and interest due and demanded, which is hereby agreed to be just and reasonable and which shall be recoverable with the amount due under this guaranty.

Demand of payment, presentment, protest and notice of dishonor or non-payment are hereby expressly waived, and if any of the Obligations are payable on demand, the Company may, in its sole and absolute discretion, determine the reasonableness of the period, if any, to elapse prior to the making of demand.

The undersigned hereby consents and agrees that, without notice to or further assent from the undersigned, the time of payment of all or any of the Obligations, or any other provisions of the Obligations, may be extended, changed or modified, the parties thereto discharged, any or all Collateral released without obtaining other Collateral in substitution therefor, and any composition or settlement consummated and accepted, and that the undersigned will remain bound upon this guaranty notwithstanding one or more such extensions, changes, modifications, discharges, releases, compositions or settlements.  The undersigned further consents and agrees that this guaranty shall not be impaired or otherwise affected by any failure to call for, take, hold, protect or perfect, continue the perfection of or enforce any security interest in or other lien upon, any Collateral or by any failure to exercise, delay in the exercise, exercise or waiver of, or forbearance or other indulgence with respect to, any right or remedy available to the Company.  Any statement of account which is binding on the Client under the Agreement shall be binding on the undersigned for all purposes under this guaranty.

The Company may also at any time in its discretion sell, assign, transfer and deliver the whole of the Collateral, or any part thereof, or any substitutes therefor, or any additions thereto, at public or private sale, at any time or place selected by the Company, at such prices as it may deem best and either for cash or for credit or future delivery, at the option of the Company without either demand, advertisement or notice of any kind to the undersigned, which are hereby expressly waived.

The undersigned assigns, pledges and grants a security interest to the Company in any money or property belonging to the undersigned at any time in the possession of the Company or in the possession of any parent, affiliate or subsidiary of the Company (hereinafter called a "Related Company"), including any deposit balances and all property held by the Company or a Related Company for any purpose including safekeeping, custody, transmission, collection, or pledge, and all proceeds of the foregoing, as security for the performance by the undersigned of the obligations under this guaranty, whether due or not, with full power and authority to apply any such money, property and proceeds to the extinguishment of any such obligations and to sell, enforce, collect or otherwise realize on said money, property or proceeds in accordance with applicable law.

The undersigned agrees that the Company is not to be obligated in any manner to inquire into the powers of the Client, or its successors, its or their directors, officers, or agents, acting or purporting to act on its or their behalf, and any liabilities purporting to be contracted for the Client, or its successors, by its or their directors, officers, or agents, in the professed exercise of such powers, shall be deemed to form a part of the liabilities guaranteed hereunder even though the incurrence of such liabilities be in excess of the powers of the Client, its successors, or its or their directors, officers, or agents aforesaid, or shall be in any way irregular, defective or informal.

The liability of the undersigned on this guaranty shall be direct, immediate, absolute, continuing, unconditional and unlimited and not conditional or contingent upon the pursuit by the Company of whatever remedies it may have against the Client or the Client's successors, executors, administrators or assigns, or the security or liens it may possess, and this guaranty shall be and shall be construed as being and intended to be, a continuing guaranty of the payment of any and all Obligations either made, endorsed or contracted by the Client, or any successor of the Client, prior to the receipt by the Company of written notice of the revocation of this guaranty by the undersigned, and of all extensions or renewals thereof in whole or in part; and notwithstanding the death of, or the revocation of this guaranty by, the undersigned guarantor, the liability of the guarantor so revoking and of the estate of the guarantor who dies shall continue as to Obligations incurred or contracted by the Client, or any successor of the Client, prior to such revocation or death and as to all extensions and renewals thereof, in whole or in part.

If any payment of the Obligations is made by or for the benefit of the Client and is repaid by the Company to the Client or any other party pursuant to any federal, state or other law, including those relating to bankruptcy, insolvency, preference or fraudulent transfer, then to the extent of such repayment, the liability of the undersigned with respect to such Obligation shall continue in full force and effect. The undersigned agrees that if the Company gives to the undersigned written notice of the institution of any action or proceeding, legal or otherwise between the Company and the Client, the undersigned shall be conclusively bound by the adjudication in any such legal or other proceeding, or by any judgment or award decree entered therein.

Until such time as the Obligations have been fully and indefeasibly paid, the undersigned waives any claim or other right which the undersigned may now have or hereafter acquire against the Client or any other person that is primarily or contingently liable on any obligation that arises from the existence or performance of the undersigned's obligations under this guaranty, including, without limitation, any right of subrogation, reimbursement, exoneration, contribution, or indemnification.

Notwithstanding anything to the contrary contained herein, the undersigned's liability hereunder shall not exceed a total maximum aggregate amount of $3,500,000.00. Such amount shall be in addition to a certain Letter of Credit open for the account of the undersigned for the benefit of the Company.

The undersigned also waives the right to assert in any action or proceeding upon this guaranty any defenses, offsets or counterclaims which the undersigned may now or hereafter have. This guaranty shall be governed by and construed and interpreted in accordance with the laws of the State of New York (without giving effect to New York law on conflicts of law). All actions and proceedings arising out of or in connection with this guaranty, the Agreement and/or any transactions relating hereto and thereto, including without limitation for recognition or enforcement of any judgment, may be brought in the federal or state courts of the State of New York or, at the Company's option, in any other courts as the Company may select and the undersigned agrees that such courts are convenient forums and the undersigned unconditionally and irrevocably submits, for the undersigned and its property, to the nonexclusive personal jurisdiction of such courts. The undersigned agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. The undersigned additionally hereby waives: (a) personal service of process and consents that service of process upon the undersigned may be made by certified or registered mail, return receipt requested, directly to the undersigned at the address of the undersigned appearing below and service so made shall be deemed completed two (2) days after the same shall have been so mailed; (b) any claim that the undersigned is not personally subject to the jurisdiction of the above named courts; and (c) notice of the acceptance of this guaranty. This guaranty cannot be altered or discharged orally.

THE UNDERSIGNED WAIVES THE RIGHT TO TRIAL BY JURY IN ALL ACTIONS BROUGHT BY OR AGAINST THE COMPANY.

IN WITNESS WHEREOF, the undersigned has duly executed these presents this _____ day of _____, 2000.

_____

Signature of Individual

David Landay
Typed Name of Individual

_____

Address

STATE OF

           ss.

COUNTY OF

On this _____ day of _____, 2000, before me personally appeared David Landay to me known and known to me to be the individual described in and who executed the foregoing instrument and that such individual duly acknowledged to me that such individual executed same.

_____

Notary Public

# EXHIBIT "J"

# GUARANTY

TO:   **GMAC COMMERCIAL CREDIT LLC**

In consideration of your entering into or your refraining from terminating at this time a Factoring Agreement with Seneca Sports, Inc. and Brookfield International, Inc. (jointly and severally "Client"), bearing the effective date of _____, 2000 (said Factoring Agreement as heretofore or hereafter amended, supplemented and/or restated is hereinafter called the "Agreement") the undersigned hereby guarantees to GMAC COMMERCIAL CREDIT LLC (hereinafter called the "Company"), its successors and assigns, the prompt payment at maturity, or whenever they may become due in accordance with any of their terms, of all now existing and hereafter arising liabilities, indebtedness and obligations of the Client to the Company (including "Obligations," as defined in the Agreement, if such term is defined therein), whenever and however arising or acquired by the Company, whether direct or indirect, absolute or contingent (collectively, the "Obligations") and whether the same may now be or hereafter become due from the Client or the executors, administrators, successors or assigns of the Client, including the cost of protest and all legal expenses of or for collection, or for realization upon any collateral for the Obligations ("Collateral") or other guaranty.  If this guaranty and/or any Obligation is placed with an attorney for collection, the undersigned further agrees to pay an attorney's fee of fifteen percent of any principal and interest due and demanded, which is hereby agreed to be just and reasonable and which shall be recoverable with the amount due under this guaranty.

Demand of payment, presentment, protest and notice of dishonor or non-payment are hereby expressly waived, and if any of the Obligations are payable on demand, the Company may, in its sole and absolute discretion, determine the reasonableness of the period, if any, to elapse prior to the making of demand.

The undersigned hereby consents and agrees that, without notice to or further assent from the undersigned, the time of payment of all or any of the Obligations, or any other provisions of the Obligations, may be extended, changed or modified, the parties thereto discharged, any or all Collateral released without obtaining other Collateral in substitution therefor, and any composition or settlement consummated and accepted, and that the undersigned will remain bound upon this guaranty notwithstanding one or more such extensions, changes, modifications, discharges, releases, compositions or settlements.  The undersigned further consents and agrees that this guaranty shall not be impaired or otherwise affected by any failure to call for, take, hold, protect or perfect, continue the perfection of or enforce any security interest in or other lien upon, any Collateral or by any failure to exercise, delay in the exercise, exercise or waiver of, or forbearance or other indulgence with respect to, any right or remedy available to the Company.  Any statement of account which is binding on the Client under the Agreement shall be binding on the undersigned for all purposes under this guaranty.

The Company may also at any time in its discretion sell, assign, transfer and deliver the whole of the Collateral, or any part thereof, or any substitutes therefor, or any additions thereto, at public or private sale, at any time or place selected by the Company, at such prices as it may deem best and either for cash or for credit or future delivery, at the option of the Company without either demand, advertisement or notice of any kind to the undersigned, which are hereby expressly waived.

The undersigned assigns, pledges and grants a security interest to the Company in any money or property belonging to the undersigned at any time in the possession of the Company or in the possession of any parent, affiliate or subsidiary of the Company (hereinafter called a "Related Company"), including any deposit balances and all property held by the Company or a Related Company for any purpose including safekeeping, custody, transmission, collection, or pledge, and all proceeds of the foregoing, as security for the performance by the undersigned of the obligations under this guaranty, whether due or not, with full power and authority to apply any such money, property and proceeds to the extinguishment of any such obligations and to sell, enforce, collect or otherwise realize on said money, property or proceeds in accordance with applicable law.

The undersigned agrees that the Company is not to be obligated in any manner to inquire into the powers of the Client, or its successors, its or their directors, officers, or agents, acting or purporting to act on its or their behalf, and any liabilities purporting to be contracted for the Client, or its successors, by its or their directors, officers, or agents, in the professed exercise of such powers, shall be deemed to form a part of the liabilities guaranteed hereunder even though the incurrence of such liabilities be in excess of the powers of the Client, its successors, or its or their directors, officers, or agents aforesaid, or shall be in any way irregular, defective or informal.

The liability of the undersigned on this guaranty shall be direct, immediate, absolute, continuing, unconditional and unlimited and not conditional or contingent upon the pursuit by the Company of whatever remedies it may have against the Client or the Client's successors, executors, administrators or assigns, or the security or liens it may possess, and this guaranty shall be and shall be construed as being and intended to be, a continuing guaranty of the payment of any and all Obligations either made, endorsed or contracted by the Client, or any successor of the Client, prior to the receipt by the Company of written notice of the revocation of this guaranty by the undersigned, and of all extensions or renewals thereof in whole or in part; and notwithstanding the death of, or the revocation of this guaranty by, the undersigned guarantor, the liability of the guarantor so revoking and of the estate of the guarantor who dies shall continue as to Obligations incurred or contracted by the Client, or any successor of the Client, prior to such revocation or death and as to all extensions and renewals thereof, in whole or in part.

If any payment of the Obligations is made by or for the benefit of the Client and is repaid by the Company to the Client or any other party pursuant to any federal, state or other law, including those relating to bankruptcy, insolvency, preference or fraudulent transfer, then to the extent of such repayment, the liability of the undersigned with respect to such Obligation shall continue in full force and effect. The undersigned agrees that if the Company gives to the undersigned written notice of the institution of any action or proceeding, legal or otherwise between the Company and the Client, the undersigned shall be conclusively bound by the adjudication in any such legal or other proceeding, or by any judgment or award decree entered therein.

Until such time as the Obligations have been fully and indefeasibly paid, the undersigned waives any claim or other right which the undersigned may now have or hereafter acquire against the Client or any other person that is primarily or contingently liable on any obligation that arises from the existence or performance of the undersigned's obligations under this guaranty, including, without limitation, any right of subrogation, reimbursement, exoneration, contribution, or indemnification.

Notwithstanding anything to the contrary contained herein, the undersigned's liability hereunder shall not exceed a total maximum aggregate amount of $3,500,000.00. Such amount shall be in addition to a certain Standby Letter of Credit open for the account of the undersigned and/or theClient for the benefit of the Company.

The undersigned also waives the right to assert in any action or proceeding upon this guaranty any defenses, offsets or counterclaims which the undersigned may now or hereafter have. This guaranty shall be governed by and construed and interpreted in accordance with the laws of the State of New York (without giving effect to New York law on conflicts of law). All actions and proceedings arising out of or in connection with this guaranty, the Agreement and/or any transactions relating hereto and thereto, including without limitation for recognition or enforcement of any judgment, may be brought in the federal or state courts of the State of New York or, at the Company's option, in any other courts as the Company may select and the undersigned agrees that such courts are convenient forums and the undersigned unconditionally and irrevocably submits, for the undersigned and its property, to the nonexclusive personal jurisdiction of such courts. The undersigned agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. The undersigned additionally hereby waives: (a) personal service of process and consents that service of process upon the undersigned may be made by certified or registered mail, return receipt requested, directly to the undersigned at the address of the undersigned appearing below and service so made shall be deemed completed two (2) days after the same shall have been so mailed; (b) any claim that the undersigned is not personally subject to the jurisdiction of the above named courts; and (c) notice of the acceptance of this guaranty. This guaranty cannot be altered or discharged orally.

THE UNDERSIGNED WAIVES THE RIGHT TO TRIAL BY JURY IN ALL ACTIONS BROUGHT BY OR AGAINST THE COMPANY.

IN WITNESS WHEREOF, the undersigned has duly executed these presents this _19_ day of ___September___, 2000.


_____
Signature of Individual

David Landay
Typed Name of Individual

_85 East India Row, Apar_
_Boston, MA 02110_
Address


STATE OF New York
                          ss.
COUNTY OF New York

On this _19th_ day of _September_____, 2000, before me personally appeared David Landay to me known and known to me to be the individual described in and who executed the foregoing instrument and that such individual duly acknowledged to me that such individual executed same.

                                          _____
    JOAN H. HIGHLAND                       Notary Public
  Notary Public, State of New York
          No. 4984973
    Qualified in Putnam County
  Certificate filed in New York County
  Commission Expires August 5, 2001