UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————

|  |  |  |
|---|---|---|
| DAVID L. LANDAY | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-cv-11955-WGY |
| | ) | |
| GMAC COMMERCIAL CREDIT LLC | ) | |
| and GMAC COMMERCIAL FINANCE | ) | |
| LLC, | ) | |
| Defendants. | ) | |

———————————————————————

## REPLY MEMORANDUM SUPPORTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Numerous fundamental flaws infect and ultimately doom Plaintiff's[1] opposition to Defendants' Motion for Judgment on the Pleadings.  For example, Landay's contention that the forum selection clause contained in his Guaranty was permissive rather than mandatory ignores the controlling fact that in his capacity as an officer of Seneca and Brookfield, Landay executed two other contracts which contain forum selection clauses that even Landay admits are mandatory.  Similarly, Landay's assertion that the New York court's order granting partial summary judgment to GMACCF lacks preclusive effect because it amounted to a "dismissal without prejudice" ignores centuries of well-established authority to the contrary.  Additionally, Landay's arguments against the application of collateral estoppel are based on a tortured and inaccurate reading of the New York court's decision, while his defense of the merits of his claims is grounded on a misreading of the applicable loan documents.  Finally, the cases that Landay cites in

———————————————

[1]     All defined terms employed in this Reply Memorandum have the meaning ascribed to them in GMACCF's memorandum in support of its motion for judgment on the pleadings.

support of his opposition to abstention under the <u>Colorado River</u> doctrine are so factually

distinct from this case as to be inapposite.

### I.    The Mandatory Forum Selection Clauses In The Factoring And Forbearance Agreements Govern All of Landay's Claims.

Landay begins his opposition to GMACCF's motion for judgment on the

pleadings by building a straw man and knocking it down.  He erroneously posits that

GMACCF's forum selection argument rests upon the permissive forum selection clause

contained in his Guaranty.  Not surprisingly, Landay proceeds to flatten this false premise

by reference to the substantial body of case law that supports the obvious proposition that

permissive forum selection clauses do not require that the litigation proceed only in the

specified forum.  Pl.'s Mem. at 6-10.

Unfortunately for Landay, GMACCF made clear in its principal brief that at least

three of the seven counts alleged in Landay's Amended Complaint[2] are derivative of

claims belonging to the Borrowers under two agreements that Landay executed on their

behalf: the Factoring Agreement and the Forbearance Agreement.  As Landay

acknowledges, both of those contracts contain mandatory forum selection clauses.

Additionally, the Factoring Agreement's forum selection clause states that it applies to all

claims arising out of or related to "ancillary agreements," and Landay's other four counts

all fit into that category.  Thus, this Court can and should analyze GMACCF's claim that

---

[2]    These counts are: misrepresentation in connection with the Loan Agreements
(Count I); usury in violation of Mass. Gen. Laws ch. 271, § 49 (Count II); breach of the
Factoring Agreement (Count III); breach of the Forbearance Agreement (Count IV);
breach of the covenants of good faith and fair dealing ancillary to the Loan Agreements
(Count V); a violation of Landay's rights as a junior creditor of the Borrowers ("Count
VI); and a violation of Chapter 93A (Count VII).

this lawsuit must be brought in New York without even considering the language in the Guaranty's forum selection clause.[3]

### A.    At Least Three Of Landay's Claims Derive From The Borrowers' Claims.

Nowhere in Landay's opposition memorandum does he dispute GMACCF's contention that Counts III through V of his Amended Complaint arise out of or relate to either the Factoring Agreement, the Forbearance Agreement, or both.  See Defs.' Mem. at 10-11.  Nor does he challenge GMACCF's assertion that because Landay was not a party to either the Factoring Agreement or the Forbearance Agreement, his claims alleging breach of those contracts and their ancillary implied covenants must necessarily be asserted derivatively.  Id. at 11.   In its principal brief, GMACCF clearly stated that the forum selection clauses contained in the Factoring and Forbearance Agreements governed Counts III through V.  Id. at 11-12.  Landay repeatedly acknowledged that those forum selection clauses are mandatory.  Pl.'s Mem. at 7 (contrasting it to the clause in the Guaranty) and 9 (describing the clauses as "mandatory").  Thus, he cannot be heard to dispute – and does not appear to have disputed – that Counts III through V cannot be asserted in Massachusetts.

### B.    Landay's Other Claims Also Are Governed By Mandatory Forum Selection Clauses Contained In the Factoring And Forbearance Agreements.

Aspects of Landay's other allegations against GMACCF are also derivative of claims belonging to the Borrowers under the Factoring and Forbearance agreements.  For example, in Count II, Landay seeks, among other things, to void the loan agreements between GMACCF and the Borrowers because of GMACCF's alleged violation of Mass.

---

[3]    GMACCF acknowledges that it quoted the Guaranty's forum selection clause in its principal brief, but it also quoted the forum selection clauses in the Factoring and Forbearance Agreements, and those are sufficient to resolve the present issue.

    BOS_486611_3/MDUBNOFF

Gen. Laws ch. 271, § 49.  See Am. Compl. ¶¶ 67-71.  Similarly, Landay bases his claim

of misrepresentation (Count I) in part on alleged fraud regarding GMACCF's promise to

forbear from enforcing the loan documents with the Borrowers.  See Pl.'s Mem. at 17

(citing Am. Compl. ¶¶ 29, 30, 63).  For the reasons stated above, the forum selection

clauses in the Factoring and Forbearance agreements control all such derivative

allegations and effectively bar their assertion in this Court.

More significantly, the forum selection clause in the Factoring Agreement states

that it applies to all "actions and proceedings arising out of or relating directly or

indirectly to … any ancillary agreement."  Each of Landay's other allegations fits into

this category.  To the extent they are not derivative (see above), Counts I, II and VII each

arise out of or relate to the Guaranty, a Standby Letter of Credit, and a Subordination

Agreement, all of which were executed contemporaneously with the Factoring

Agreement and incorporated in the Factoring Agreement by reference.  See Ans., Ex. 1, ¶

12 at pp.10-11.  Count VI, meanwhile, arises out of the Subordination Agreement.

Nowhere in his opposition memorandum does Landay dispute that these agreements are

"ancillary agreements" within the meaning of the Factoring Agreement's forum selection

clause.  It necessarily follows that he cannot dispute that Counts I, II, VI and VII are

governed by that clause and cannot be asserted in this Court.[4]

---

[4]     Since GMACCF is not relying on the Guaranty's forum selection clause in
support of its motion to dismiss, it is irrelevant whether the clause was clear or
ambiguous.  Thus, this Court does not need to consider the Affidavit that Landay
submitted in support of his opposition to GMACCF's motion or any of the arguments
relating to it.

C.    **Landay is Bound By The Contracts He Signed On Behalf Of The Borrowers.**

While Landay never directly challenges GMACCF's contention that the

mandatory forum selection clauses contained in the Factoring Agreement and

Forbearance Agreement govern all of his claims, he seems, at times, to imply that he may

not be bound by those contracts because he signed them in a representative capacity.  See

Pl.'s Mem. at 7 (stating that "borrowing corporations" agreed to litigate their claims

under the Factoring Agreement in New York) and 9 (stating that the agreements were

executed between GMACCF and the "corporate borrowers").  Wisely, he never attempts

to develop this insinuation into a full-blown argument.  As GMACCF mentioned in its

principal brief, forum selection clauses "bind nonsignatories that are closely related to the

contractual relation or that should have foreseen governance by the clause."  Hadley v.

Shaffer, 2003 WL 21960406, * 6 (D. Del. Aug. 12, 2003) (citing Hugel v. Corp. of

Lloyd's, 999 F.2d 206, 209-210 (7th Cir. 1993); Manetti-Farrow, Inc. v. Gucci Am., Inc.,

858 F.2d 509, 514 n.5 (9th Cir. 1988); Coastal Steel Corp. v. Tilghman Wheelabrator,

Ltd., 709 F.2d 190, 202 (3d Cir. 1983)).  Thus, in Hugel v. Corp. of Lloyd's, the Seventh

Circuit held that even though the president, chairman and primary owner of two

corporations had signed a contract with a third party in his individual capacity, the forum

selection clause contained in that contract could be enforced against the two corporations

because they were "so closely related" to the individual.  See 999 F.2d at 209-210.

Landay is similarly "closely related" to the corporations in this case, and he clearly

should have foreseen that any dispute arising out of either the Factoring Agreement or the

Forbearance agreement would be governed by their forum selection clauses when he

signed them.

**D.      This Court Should Dismiss This Case, Not Transfer It To New York**

Landay contends that if this court were to enforce the forum selection clauses contained in the applicable documents, it should transfer this case to the Southern District of New York, pursuant to 28 U.S.C. § 1406(a), instead of dismissing it.  See Pl.'s Mem. at 10.  A transfer, however, would undermine the interests of justice, not serve them.

Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a) (emphasis added).  By placing the word "shall" before "dismiss" instead of "may," Congress clearly demonstrated its intent to have dismissal be the default result when a plaintiff filed suit in the wrong forum.  See Skilling v. Funk Aircraft Co., 173 F. Supp. 939, 942 (W.D. Mo. 1959) (analyzing legislative history to 1949 amendment to statute).  The burden is on the plaintiff to show that a transfer would serve the interests of justice.  See Mulcahy v. Guertler, 416 F. Supp. 1083, 1086 (D. Mass. 1976) (dismissing case instead of transferring it, where "plaintiff has furnished no reason why it would be more in the interests of justice for this Court to transfer the case rather than to dismiss it.").

Stating a concern about statute of limitations problems, as Landay has in this case, see Pl.'s Mem. at 10, is insufficient to meet this burden.  Skilling, 173 F. Supp. at 943. See also Hapaniewski v. City of Chicago Heights, 883 F. 2d 576, 579-580 (7th Cir. 1989).  Instead, the plaintiff must show that it neither knew nor should have known, in the exercise of reasonable diligence, that venue was improper in the forum in which it filed the lawsuit.  Mulcahy, 416 F. Supp. at 1086 (citing Hall v. Rubin, 240 F. Supp. 470

(D. Mass. 1965)).  Landay has not come close to meeting this burden in this case.  He has made general assertions that some or all of his claims might be time-barred if he were forced to re-file them in New York, but he has not cited any legal authority in support of this concern.  More importantly, he has not demonstrated that his selection of the wrong forum was due to excusable neglect.  This is not a case like <u>Goldlawr v. Heiman</u>, 369 U.S. 463, 466 (1962), where the plaintiff "made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn." Here, there was nothing "elusive" about the forum selection clauses contained in the Factoring and Forbearance Agreements.  Landay signed these agreements and had just as much access to them as GMACCF.  Moreover, he knew that the forum selection clauses contained in these agreements were mandatory.  <u>See</u> Pl.'s Mem. at 7, 9.  He, therefore, cannot be heard to cry "excusable neglect."  Given the language of 28 U.S.C. § 1406(a), this case should be dismissed.

**II**.    **Landay's Claim That The New York Court's Decision Lacks Preclusive Effect Is Based On A Misunderstanding Of Both The Law And The Facts.**

Landay's contention that the New York court's dismissal of his counterclaims has no <u>res judicata</u> effect because it amounted to a "dismissal without prejudice" is so contrary to embedded common law principles that very few litigants appear to have even asserted the position since the turn of the last century.  Given Landay's willingness to challenge well established common law authority, it comes as no great surprise that his related claim that the specific issues resolved by the New York court were not "essential" to its ultimate rulings and, therefore, have no collateral estoppel effect is based on a misreading of the New York court's opinion and a misunderstanding of its relationship to this case.

BOS_486611_3/MDUBNOFF

**A.**     **As A Matter Of Law, The New York Ruling Was "With Prejudice."**

Landay contends that the New York Court's decision granting partial summary judgment for GMACCF does not preclude him from bringing this lawsuit because the New York court did not specifically state that Landay was barred from bringing affirmative claims against GMACCF.  See Pl.'s Mem. at 10-11.  Thus, Landay concludes, the New York court's ruling amounted to a dismissal of his counterclaims "without prejudice which would not preclude their resurrection as causes of action in Massachusetts."  Id.  Landay purports to find support for this position in Salerno v. Leica, Inc., 139 F Supp. 2d 377, 385 (W.D.N.Y. 2001), but Salerno does not aid Landay's cause.

In Salerno, the court actually ruled that res judicata barred a plaintiff from suing his former employer under the Employee Retirement Income Security Act ("ERISA") for severance benefits, where he had previously tried to sue the same employer in a different federal court for unlawful discrimination in denying those benefits.  See 139 F. Supp. 2d at 387.  In so doing, the court stated in a footnote that a different lawsuit brought by the plaintiff against the employer in state court, which had expressly been dismissed "without prejudice" on the basis of ERISA preemption, was irrelevant to the res judicata analysis. Id. at 385 n.4.  Significantly, however, the court reached that conclusion because ERISA preemption divests a state court of subject matter jurisdiction, and a dismissal based on lack of subject matter jurisdiction cannot have any res judicata effect.  Id.

In this case, the New York court did not ground its dismissal of Landay's counterclaims on a determination that it lacked subject matter jurisdiction or was the improper forum for considering Landay's allegations.  Rather, the New York court

BOS_486611_3/MDUBNOFF

determined that Landay's defenses and all but one of his counterclaims lacked merit
because Landay had waived them and such waivers were enforceable.  Defs.' Mem., Ex.
3 at 12.  Moreover, unlike the state court referenced in <u>Salerno</u>, the New York court in
this case never stated that its dismissal of most of Landay's counterclaims was "without
prejudice."  In such circumstances, the law presumes that the dismissal was "with
prejudice" and operates as a procedural bar to Landay's assertion of the same causes of
action elsewhere.  <u>Lyon v. Perin & Gaff Mfg. Co.</u>, 125 U.S. 698, 702 (1888) ("Where
words of qualification, such as 'without prejudice,' or other terms indicating a right or
privilege to take further legal proceedings on the subject, do not accompany the decree, it
is presumed to be rendered on the merits.") (citation omitted).

Indeed, this principle is so firmly embedded in the common law that most of the
cases addressing it are of ancient vintage.  <u>See, e.g.</u>, <u>Bigelow v. Winsor</u>, 1 Gray (Mass.)
299, 301 (1854) ("[A] plea in bar, stating a dismissal of a former bill, is conclusive
against a new bill, if the dismissal was upon hearing, and if that dismissal be not, in direct
terms, 'without prejudice.'"); <u>C. & S.S. Perine v. Dunn</u>, 4 Johns. Ch. 140, 1 N.Y. Ch.
Ann. 793 (1819) ("A bill regularly dismissed upon the merits, where the matter has been
passed upon, and there is no direction that the dismission be without prejudice, may be
pleaded in bar of a new bill for the same matter.").  <u>See also</u> <u>James v. James</u>, 297 Mass.
254, 257 (1937) (similar); <u>Roach v. Roach</u>, 190 Mass. 253, 254 (1906) (similar);
<u>Borrowscale v. Tuttle</u>, 5 Allen (Mass.) 377, 378 (1862) (similar).  A diligent search
revealed only one jurisdiction, Michigan, where litigants have even questioned this
principle in the past 50 years, and the result there was no different.  <u>See</u> <u>In re Estate of
Koernke</u>, 169 Mich. App. 397, 400 (1988) ("an order, complete on its face but silent as to

the 'prejudice,' is presumed to be a disposition on the merits.").  GMACCF has found no

contrary authority.

Certainly, none of the cases cited by Landay in his memorandum, see Pl.'s Mem.

at 12-13, supports his position.  For example, in Parker v. Blauvelt Volunteer Fire Co., 93

N.Y. 2d 343 (1999), the New York Court of Appeals based its ruling that res judicata did

not bar a plaintiff from asserting in a second lawsuit a claim that had been dismissed in a

prior lawsuit on the fact that the first court expressly stated that the dismissal was

"without prejudice" to the plaintiff re-asserting the claim in a second action.  See 93 N.Y.

2d at 349.  The Court of Appeals naturally ruled that res judicata principles did not apply

to the second action, because it "would be inequitable to preclude a party from asserting a

claim under the principle of res judicata, where, as in this case, '[t]he court in the first

action has expressly reserved the plaintiff's right to maintain the second action.'"  Id. at

349 (citing Rest. (Second) of Judgments § 26[1][b]).  In this case, the New York court

did not expressly reserve Landay's right to maintain a second action when it dismissed all

but one of his counterclaims.  Parker, therefore, is inapposite.

Similarly off-point is Neuman v. Harmon, 965 F. Supp. 503 (S.D.N.Y. 1997).  In

that case, a plaintiff was permitted to assert claims in a lawsuit that a judge in a prior

limited proceeding believed he lacked the power to resolve.  Id. at 508.  The court in

Neuman explained that res judicata does not apply where "the initial forum did not have

power to award [the] full measure of relief sought in the latter litigation" or "formal

jurisdictional or statutory barriers prevented [the plaintiff] from presenting to a court in

one action [the] entire claim including any theories of recovery or demands for relief that

might have been available to him under applicable law."  Id. at 507 (internal quotation

BOS_486611_3/MDUBNOFF

omitted).  In this case, the New York court's dismissal of Landay's affirmative defenses and most of his counterclaims was not based on any belief that Landay had simply asserted them in the wrong forum.  There is no mention of lack of jurisdiction or power to resolve the dispute anywhere in the court's written opinion.  <u>See generally</u> Defs.' Mem., Ex. 3.  To the contrary, the decision indicates that the court exercised jurisdiction over Landay's defenses and counterclaims and concluded that with one exception, none had any merit.  <u>Id.</u> at 12.  Thus, unlike in <u>Neuman</u>, <u>res judicata</u> applies here as a bar to the plaintiff's claims.[5]

## B.   Landay's Arguments Against Collateral Estoppel Are Based On A Fundamental Misreading Of The New York Court's Opinion.

In its principal brief, GMACCF listed nine legal and factual findings of the New York court, which it claimed had collateral estoppel effect in this case.  Defs.' Mem. at 15.  Landay claims that none of these findings has any applicability here.  Pl.'s Mem. at 14.  Landay acknowledges that the first four findings – that Landay's Guaranty was absolute and unconditional; that Landay was bound by its terms; that he had waived his right to assert any defenses, offsets or counterclaims with one exception; and that such waiver provisions were enforceable – were "essential to the New York decision," but he states that they are not decisive of anything in the present action because they relate only "to Landay's inability to present a substantive challenge to a suit <u>brought on the</u>

---

[5]   For reasons explained in the text, the other cases cited by Landay for the proposition that <u>res judicata</u> is not applicable where a plaintiff was unable to seek his full remedies in a prior adjudication are off-point here.  <u>See</u> <u>Gidatex, S.R.L. v. Campaniello Imports, Ltd.</u>, 13 F. Supp. 2d 420 (S.D.N.Y. 1998); <u>Kondracke v. Blue</u>, 716 N.Y.S. 2d 533 (App. Div. 2000); <u>Hayden v. L.I.L.C.O.</u>, 116 Misc. 2d 445 (N.Y. Dist. Ct. 1982), <u>cited in</u> Pl.'s Mem. at 12-13.  Nothing in the New York court's ruling indicates that the court determined that Landay had selected the wrong forum in which to assert his claims against GMACCF.

guaranty."  Id. (emphasis in original).  In other words, according to Landay, while the New York court ruled that he had waived his right to assert counterclaims and defenses in a lawsuit initiated by GMACCF, it was silent on the questions of whether Landay could assert affirmative claims against GMACCF in a separate action, even where those affirmative claims arose out of or related to the Guaranty.  This is nonsensical.

Under Landay's theory, he could have avoided the adverse rulings of the New York court simply by outracing GMACCF to the courthouse door and filing a declaratory judgment action that sought to void or negate the Guaranty for the reasons stated in his affirmative defenses and counterclaims.  Landay would have been the plaintiff in such an action, so by definition, he would not have been asserting "counterclaims."  Indeed, if one accepts Landay's argument, he still could file a declaratory judgment action in New York based on the same counterclaims that have been dismissed once.  Presumably, Landay believes that if such an action were assigned to the same judge who ruled against him previously, the result might be different the second time around.  There could be two contradictory rulings by the same judge: one that GMACCF is entitled to recover some yet-to-be-determined amount of money from Landay on his Guaranty, and one that GMACCF is entitled to no such recovery.  GMACCF is not aware of any cases where such a self-contradictory result was permitted to stand.[6]

---

[6]    In United Bk. of Africa, P.L.C., New York Branch v. Odimayo, No. 93 Civ. 3998, 1994 WL 185826 (S.D.N.Y. May 10, 1994), relied upon by Landay, a court dismissed a guarantor's counterclaims "without prejudice," but simultaneously suggested that the dismissal might be "res judicata with respect to any of the claims set forth in the presently asserted counterclaims."  See 1994 WL 185826, at *4.  It is not clear whether the defendant ever did try to re-assert his dismissed counterclaims as affirmative claims in a separate action, so the issue of inconsistent rulings may never have come up.  The decision in Odimayo appears not to have been followed by any subsequent court.

BOS_486611_3/MDUBNOFF

With regard to the New York court's fifth and sixth findings – that Landay cannot assert claims or defenses belonging to the Borrowers, and that the Borrowers waived such defenses and counterclaims against GMACCF anyway – Landay suggests that they cannot have any collateral estoppel effect here because they were not essential to the New York court's holding regarding Landay's waiver in the Guaranty.  Perhaps Landay has forgotten his argument in the New York case that even if he had waived certain claims under the Guaranty, he could still step into the shoes of the Borrowers and assert the same claims on their behalf.  Because Landay raised this argument, the New York court's ruling that he could not do so was essential to its dismissal of his claims. Those rulings also are applicable here to the extent that Landay purports to assert claims derivatively on behalf of the Borrowers, as he does in Counts III through V.  The seventh finding of the New York court – that the Borrowers' waivers were enforceable – is relevant here for the same reasons.  Finally, the New York court's rulings regarding Landay's usury claims were essential to its decision dismissing those claims, so that decision may have collateral estoppel effect in this case.  Landay may not relitigate those issues here.

**III.    Landay Has Failed To Defend Most Of His Claims On Their Merits.**

Even if Landay's arguments with regard to the forum selection clauses, res judicata, and collateral estoppel had merit, and they do not, he has failed to explain how he could prove any set of facts to support Counts I through V or VII of his Amended Complaint.  Accordingly, those claims still should be dismissed with prejudice.

**A.    Landay Has Not Demonstrated How He Could Prevail On Counts I Or VII.**

In arguing that he has not waived his claims for misrepresentation (Count I) or a violation of Chapter 93A (Count VII), Landay does not explain how he possibly could

BOS_486611_3/MDUBNOFF

prove that he reasonably relied on GMACCF's alleged misrepresentations. Indeed, Landay does not even attempt to rebut GMACCF's contention that in light of the express terms of the Guaranty,[7] he could never prove "reasonable reliance" with regard to the alleged misrepresentations about GMACCF looking first to the Borrowers' assets before attempting to collect from Landay. Compare Defs.' Mem. at 15-16 with Pl.'s Mem. at 16-17. Instead, Landay accuses GMACCF of using those alleged misrepresentations as a "straw man" and ignoring his other fraud allegations: i.e., that GMACCF would make seasonal over-advances to the Borrowers and that GMACCF would "forbear and provide additional financing if Landay increased his guaranty and collateral." Pl.'s Mem. at 16-17.

He then states that even though those additional alleged misrepresentation pre-dated the Forbearance Agreement, which expressly stated that it constituted "the entire understanding of the parties," Landay was not bound by that language because he signed the Forbearance Agreement in a representative capacity only. Pl.'s Mem. at 17. Landay, however, does not address GMACCF's contention that Landay expressly acknowledged and consented to the execution of the Forbearance Agreement when he personally executed the Ratification of Guaranty at the same time. See Defs.' Mem. at 16, citing Ans., Ex. 7 at p. 1.

---

[7]    As set forth in GMACCF's principal brief, these terms included a provision that the Guaranty "shall not be impaired or otherwise affected by any failure to … perfect, continue the perfection of or enforce any security interest in or other lien upon, any Collateral or by any failure to exercise ... any right or remedy available to the Company," and a provision that Landay's obligation "shall be direct, immediate, absolute, continuing, unconditional and unlimited and not conditional or contingent upon the pursuant by [GMACCF] of whatever remedies it may have against [the Borrowers] or [the Borrowers'] successors, executors, administrators or assigns, or the security or liens it may possess ... ." Defs.' Mem. at 16 (citing Ans., Ex.2 at p.1).

Landay is ducking GMACCF's challenges to the merits of his claims, and for good reason.  He knows that GMACCF has the better of the argument.  Landay simply cannot prove that he reasonably relied on any alleged misrepresentations regarding GMACCF's security collection efforts in light of his express representations in the Guaranty, which he ratified one year later.  Nor can he hope to prove that he is not bound by the terms of the Forbearance Agreement, in light of his express acknowledgment and consent to that agreement in the Ratification of Guaranty.  In short, no set of circumstances exists in which Landay could satisfy all the elements of his claims for misrepresentation or a Chapter 93A violation.  Therefore, Counts I and VII should be dismissed with prejudice.

## B.    Landay Cannot Prevail On His Usury Claim.

Notwithstanding the parties' multiple agreements containing New York choice-of-law provisions, Landay contends that he can assert a claim against GMACCF under the Massachusetts usury statute, Mass. Gen. Laws ch.271, § 49, because the choice-of-law provisions at issue apply only to contract-based claims, not tort-based claims.  See Pl.'s Mem. at 17-18.  The principal problem with this argument, of course, is that Landay's usury claim is contract-based.  He is seeking to void the note and loan agreements that GMACCF entered into with the Borrowers, on the grounds that the interest rates charged were unlawfully high.  Am. Compl. ¶ 71.  This is a claim on the agreements themselves.  Thus, in light of the parties' agreements to have their contractual relations governed by New York law, the Massachusetts usury statute has no applicability here.  Landay must look to New York law.

Not only is Landay's position inconsistent with the plain meaning of the parties' choice-of-law provisions, it is also inconsistent with established case law, which holds that contractual choice-of-law provisions govern usury claims like the one at issue here. See, e.g., Bentley v. Providian Fin. Corp., No. 02 Civ. 5714, *3 (S.D.N.Y. Apr. 21, 2003) (dismissing claim based on New York usury statute, where parties signed contract with New Hampshire choice-of-law provision); In re. N. Parent, Inc., 221 B.R. 609, 630 (Bankr. D. Mass. 1998) (stating that usury claims are subject to forum selection clause); In re Brock, 214 B.R. 877, 880 (Bankr. D. Ark. 1997) (stating that Arkansas courts generally uphold choice-of-law agreements in usury cases). But see Greenwood Trust Co. v. Massachusetts, 776 F. Supp. 21 (D. Mass. 1991) (applying Massachusetts usury statute in consumer context),[8] overruled on other grounds, 971 F.2d 818 (1st Cir. 1992). Accordingly, Count II should be dismissed.

### C.    Landay's Claims For Breach Of The Loan Agreements And Their Ancillary Covenants Also Fail.

With regard to Counts III through V of his Amended Complaint, Landay failed to rebut GMACCF's argument that the New York court was correct in its ruling that he cannot assert claims derivatively for either of the Borrowers because the companies are no longer going concerns and he no longer owns 100% of their stock. See Defs.' Mem. at 17 (citing First New York Bank for Business v. DeMarco, 130 B.R. 650, 655 (Bankr. S.D.N.Y. 1991)). For this reason alone, Counts III through V should be dismissed with prejudice.

---

[8]    It is noteworthy here that Landay does not claim to be a "consumer" for purposes of his Chapter 93A claim (Count VII), as he purports to bring his claim under Section 11 instead of Section 9, which requires a demand letter before filing suit.

Landay's only defense of these claims is based on a theory that he has alleged a partial failure of consideration with respect to both the Factoring Agreement and the Forbearance Agreement.  Pl.'s Mem. at 18-19.  Once again, however, Landay relies on a mischaracterization of his own causes of action.  Counts III through V allege actual breaches of the contracts and their ancillary covenants of good faith and fair dealing, not that the contracts and covenants were invalid for lack of consideration.  Am. Compl. ¶¶ 72-81.  Moreover, even if those counts did allege lack of consideration, the claims should be dismissed for the reasons stated in the New York opinion:  namely, that the Borrowers waived their right to challenge the agreements based on lack of consideration, and such waivers are enforceable.  See General Trading Co. v. A&D Food Corp., 292 A.D. 2d 266 (N.Y. App. Div. 2002), cited in Defs.' Mem., Ex. 3, at p. 12.  For all of these reasons, Counts III through V should be dismissed with prejudice.

## IV.    The Cases On Which Landay Relies In His Opposition To Abstention Have No Bearing On This Case.

Landay relies primarily on two cases in support of his argument that this Court should not abstain from exercising jurisdiction over this case under the Colorado River doctrine, see Pl.'s Mem. at 19-21, but both differ markedly from this case  In KPS & Assoc., Inc. v. Designs By FMC, Inc., 318 F.3d 1 (1st Cir. 2003), the First Circuit ruled that a Federal District Court in Massachusetts properly exercised jurisdiction over a case that had been filed only nine days after the initiation of a parallel proceeding in New York state court.  318 F.3d at 7, 11.  Applying the factors articulated by the Supreme Court in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976) and Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983), the First Circuit concluded that the defendant had not overcome the "heavy presumption favoring

the exercise of jurisdiction." Id. at 10-11.  Among other things, when considering the

fourth factor relating to the order of the lawsuits, the First Circuit recalled the Supreme

Court's instruction in Moses Cone that this factor "should not be measured exclusively

by which complaint was filed first, but rather in terms of how much progress has been

made in the two actions." Id. at 11 (citing Moses Cone, 460 U.S. at 21).  The First

Circuit noted that at the time the district court in Massachusetts heard the defendant's

motion to dismiss, the New York litigation was proceeding "anemically," whereas the

plaintiff in the Massachusetts case "was prosecuting the instant case at an appreciable

pace." Id.  Similarly, in Neuman v. Harmon, the New York federal court declined to

abstain from exercising jurisdiction because even though a South Carolina state action

had commenced approximately two and one-half months prior to the New York lawsuit,

"the state court suit [had] not proceeded significantly further than this federal suit." 965

F. Supp. at 511.

      By contrast, in this case, the state court lawsuit is much farther along than the

present action.  The New York court already has decided all issues relating to liability

and has ordered the parties to proceed to inquest before a special referee on the issue of

damages.  With the possible exception of one deposition, discovery is concluded.  The

damages inquest should be scheduled shortly, and it is reasonable to expect a prompt

resolution of the remaining issues.  In this case, discovery has not even commenced.  The

factual posture of this case, therefore, is very different in this case than it was in either

KPS Assoc. or Neuman.  Here, the danger of piecemeal litigation is much greater than in

either of the cases relied on by Landay.  Unlike in those other cases, "exceptional

circumstances" do exist here to warrant abstention under Colorado River.

## V.    Conclusion

For all the foregoing reasons and for the reasons addressed in GMACCF's

principal memorandum, this Court should grant judgment on the pleadings in favor of

GMACCF and dismiss all of Landay's claims on the grounds that the doctrines of *res*

*judicata* and collateral estoppel prevent Landay from relitigating issues previously

resolved in the New York action.  Even if those doctrines did not bar Landay's claims, as

the New York court has already recognized, the applicable provisions of the Loan

Documents would.  Moreover, Landay's failure to assert his claims in New York as

required by the applicable forum selection clauses also compels dismissal.  Finally, even

if this Court declines to dismiss Landay's complaint, it should abstain from exercising

jurisdiction over this matter under the Colorado River doctrine.


Respectfully submitted,

GMAC COMMERCIAL FINANCE LLC


/s/ John A. Houlihan
/s/ Mark B. Dubnoff
John A. Houlihan (BBO # 542038)
Mark B. Dubnoff (BBO # 637212)
Edwards & Angell, LLP
101 Federal Street
Boston, MA  02110
(617) 439-4444

DATED: May 2, 2005

BOS_486611_3/MDUBNOFF