UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-CV-11955-WGY

| | |
|---|---|
| DAVID L. LANDAY,<br><br>　　　　Plaintiff,<br><br>v.<br><br>GMAC COMMERCIAL CREDIT, LLC and<br>GMAC COMMERCIAL FINANCE, LLC,<br><br>　　　　Defendants. | **LANDAY'S SURREPLY MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

   I.   <u>Landay Is Not Bound By Any Forum Selection Clause Which Mandates Dismissal Or Transfer Of This Case</u>.

GMACCF's forum selection clause argument falls far wide of the mark. First, Defendants accuse Landay of creating a "straw man" for having pointed out that the only document signed by him <u>in his individual capacity</u> with a forum selection clause is the Guaranty and contending that the Guaranty's forum selection clause is permissive. For the second time, GMACCF points to cases decided under foreign law to ask this Court to <u>override</u> the Guaranty's clause by the mandatory forum selection clauses in other documents, the Factoring Agreement and the Forbearance Agreement, which Landay signed only in a representative capacity. Finally, it incorrectly characterizes certain of Landay's claims as "derivative" of claims of the corporate borrowers in an effort, unsupported by authority, to override the forum selection clause in the Guaranty as to those claims. Landay submits that each of these contentions is completely lacking in merit.

It is undisputed that the Guaranty is the only document containing a forum selection clause that is signed by Landay in his individual capacity; and it is apparently undisputed that the forum selection clause in the Guaranty is permissive, not mandatory. It is also undisputed that GMACCF relied on this clause, admittedly <u>inter alia</u>, in its opening Memorandum. Reply Memorandum, p. 3, n.3. In light of the above, the accusation that Landay was "building a straw man and knocking it down" by arguing persuasively that the forum selection clause in the Guaranty was permissive is absurd.[1]

It should be obvious now that the major thrust of GMACCF's argument is that Landay is bound by the mandatory forum selection clauses in the related Factoring and Forbearance Agreements, although he admittedly signed them <u>only</u> in a representative capacity, i.e., as President of the borrowing corporations, and these clauses clearly contradict the forum selection clause in the Guaranty. In support of this argument, GMACCF cites even more cases decided under foreign law, i.e., non- New York law, than it had cited in its opening Memorandum. While these cases might be good law, although Landay disputes this, they are badly located. As Landay pointed out in his Memorandum in Opposition, pp. 9-10, New York Courts have explicitly rejected GMACCF's argument in this regard. Indeed, one Court has characterized GMACCF's approach as "without foundation in either law or logic." <u>National Union Fire Ins. Co. v. Williams</u>, 223 A.D.2d 395, 396, 637 N.Y.S.2d 36, 37 (App. Div., 1st Dept. 1996).[2]

---

[1] The suggestion that "this Court can and should analyze GMACCF's claim that the lawsuit must be brought in New York without even considering the language in the Guaranty's forum selection clause", Reply Memorandum, pp. 2-3, also falls into this category.

[2] Contrary to GMACCF's argument, Reply Memorandum, p. 5., Landay went beyond "insinuation" to argue that New York's controlling law clearly holds that a forum selection clause in a related document does not override one signed by a guarantor in his individual capacity. Landay's Memorandum in Opposition, pp. 9-10.

2

Finally, GMACCF contends, without citing any supporting authority, that because certain of the claims, Counts III, IV and V in particular, are "derivative" of claims of the corporate borrowers, the mandatory forum selection clauses of the Factoring and the Forbearance Agreements control as to these claims, notwithstanding the contrary clause in Landay's Guaranty.  Landay submits that this contention is also without foundation in either law or logic.  First, the contract claims referred to are not "derivative" in the sense of a derivative action, i.e., a suit by a shareholder to enforce a <u>corporate cause of action</u>.  They are derivative only to the extent that they are based <u>in part</u> on rights which the corporations had under their agreements with GMACCF which GMACCF promised Landay it would honor as consideration for his execution of the Guaranty.[3]  Therefore, the contract claims are clearly covered by the express language of the permissive forum selection clause of the Guaranty which relates to "[a]ll actions and proceedings arising out of or in connection with this Guaranty, the [Factoring] Agreement, and/or any transactions relating hereto and thereto."  Exhibit 2 to Answer, p. 2.  The dearth of authorities in GMACCF's briefing on this issue is telling.  There is simply no basis for overriding the Guaranty's forum selection clause with respect to the contractual claims in the Amended Complaint whether or not based, in part, on rights of the borrowing corporations.

    II.    <u>Should This Court Decide That Venue Is Improper In The District of Massachusetts, It Should Transfer The Case To The Southern District Of New York</u>.

The statute of limitations question should loom large in this Court's analysis of the interests of justice under 28 U.S.C. §1406(a).  For example, both Count II, Usury,

---

[3] In this regard the Guaranty reads:  "In consideration of [GMACCF] entering into….a Factoring Agreement with Senaca Sports, Inc.….Exhibit 2 to Answer."

3

and Count VII, Chapter 93A, are governed by the four-year statute of limitations, M.G.L. c. 260, §5A, which obtains for "actions arising on account of violations of law intended for the protection of consumers." The first extension of credit under the Factoring Agreement was made on the date of the closing, September 19, 2000. This case was filed on September 8, 2004. A dismissal would, therefore, lead to a substantial loss of significant rights since a re-filed case now would be time-barred as to at least a significant part of these two claims.

The Supreme Court has explicitly recognized that the "interest of judgment" is generally served by a transfer in lieu of a dismissal when serious statute of limitations issues are presented. In <u>Goldlawr, Inc. v. Heiman</u>, 369 U.S. 463, 466-467 (1962), the Court wrote as follows:

> The language of §1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not. The section is thus in accord with the general purpose which has prompted many of the procedural changes of the past few years—that of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits. When a lawsuit is filed, that filing shows a desire on the part of the plaintiff to begin his case and thereby toll whatever statutes of limitation would otherwise apply. The filing itself shows the proper diligence on the part of the plaintiff which such statutes of limitation were intended to insure. If by reason of the uncertainties of proper venue a mistake is made, Congress, by the enactment of §1406(a), recognized that 'the interest of justice' may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by what the late Judge Parker aptly characterized as 'time-consuming and justice-defeating technicalities'.

<u>See</u> 15 Wright, Miller, and Cooper, <u>Federal Practice and Procedure</u>, §3827, at 268-269 (2d ed. 1986).

> It is not surprising that in most cases of improper venue the courts conclude that it is in the interest of justice to transfer to a proper forum

4

>rather than to dismiss. The reasons for doing this are especially compelling if the statute of limitations has run, so that dismissal would prevent a new suit by plaintiff,…

Id., and cases cited. See also Domond v. Great American Recreation, Inc., 116 F. Supp. 2d 368, 375 (E.D.N.Y. 2000) ("A majority of courts have held that transferring an action is more appropriate than dismissal when such action will likely cause future statute of limitations problems").

GMACCF gleans from a 1976 case a purported standard "knew or should have known that venue was improper" which was enunciated in a case involving a lack of personal jurisdiction, where the statute of limitations was not an issue. Mulcahy v. Guertler, 416 F. Supp. 1083, 1086 (D. Mass. 1976). This Court applied a similar but more rigorous standard in a case where the plaintiff "did not have a good faith belief that the Defendants were subject to personal jurisdiction in this Court." Pedzewick v. Foe, 963 F. Supp. 48, 52 (D. Mass. 1997). While the latter case involved both a jurisdictional and a statute of limitations problem, like Mulcahy, it is distinguishable from the case at bar because there is no claim of a lack of personal jurisdiction over GMACCF in Massachusetts. In any event, in light of the forum selection clause in the Guaranty and New York law to the effect that a guarantor is not bound by collateral [to him] documents, it is clear that Landay not only acted in good faith but also "neither knew nor should have known, in the exercise of reasonable diligence, that venue was improper" in Massachusetts. Compare Dindio v. First Babylon, Inc., 328 F. Supp. 2d 126 (D. Mass. 2004). In Dindio, a magistrate judge distinguished Pedzewick and ordered transfer instead of dismissal pursuant to 28 U.S.C. §1406(a) where the plaintiff was not trying to evade the statute of limitations (as this Court, determined that Pedzewick was)

5

and the case did not present "a situation where 'by no stretch of the imagination' could Massachusetts exercise jurisdiction over the defendant." Dundio, 328 F. Supp. 2d at 129.

    III.    <u>The New York Decision Allowing Summary Judgment Is Not Res Judicata</u>.

Seizing on Landay's statement that the decision of the New York Court "amounted to a dismissal without prejudice", GMACCF creates its own "straw man" by claiming that Plaintiff is contending that the decision <u>was</u> a dismissal without prejudice and spends several pages arguing that generally a judgment is with prejudice unless it specifically states that it is without prejudice. While GMACCF does address the principal thrust of Landay's argument in passing – i.e., that the New York decision cannot possibly be <u>res judicata</u> since the holding, properly interpreted, was merely that defenses and counterclaims were not available in the New York action – its argument in that regard does not hold water.

First, Landay eschews any intent to argue that the New York decision <u>was</u> "without prejudice". Words must have meaning, and "amounted to" certainly does not mean "is" in most dictionaries. To put it another way, analogy is not identity.

Second, while GMACCF argues that "[n]othing in the New York Court's ruling indicates that the Court determined that Landay had selected the wrong forum in which to assert his claim against GMACCF", Reply Memorandum, p. 11 n.5, it points to nothing in the decision which indicates that the Court was making a determination that Landay was giving GMACCF a pre-release of all potential claims in executing the Guaranty. Landay submits that nowhere in the decision can there be found even a hint of any such meaning. Moreover, as the proponent of the <u>res judicata</u> defense,

6

GMACCF has the burden of demonstrating that the New York decision is preclusive. Wolf v. Gruntal & Co., 45 F.3d 524, 529 (1st Cir. 1995) ("as the proponent of res judicata defense, Gruntal was charged with the burden of [proof]").

Thirdly, the only New York precedent directly on point clearly sides with Landay in interpreting a virtually identical guaranty. In that case, the District Court, in dismissing counterclaims asserted by the guarantors, wrote: "[b]oth Guaranties prohibit the bringing of 'any counterclaims' in an action for its enforcement. This can not be construed as prohibiting any separate suit on any claims the defendants might assert." United Bank of Africa, P.L.C., New York Branch v. Odimayo, No. 93 Civ. 3998, 1994 WL 185826, at *4 (S.D.N.Y. May 10, 1994) (emphasis added).

Finally, Landay's argument that the New York Court's decision was not res judicata because the Court determined that it did not have the power to address Landay's claims in the New York action is fully supported by applicable case law.

In the Gruntal case, supra, the arbitration clause mandated arbitration of "any controversy" but excepted claims asserting violations of "Federal securities/commodities law." The parties also agreed that New York law would be applicable. Wolf filed suit in the District of Maine; his complaint contained a federal Rule 10b-5 claim and seven state-law claims. The District Court ruled that the state law claims were subject to arbitration, but refused to stay the federal claim. After Wolf demanded arbitration of his state law claims and recovered an award of $200,000, Gruntal moved for summary judgment in the Maine District Court on res judicata grounds.

The First Circuit reversed the District Court's decision that the federal securities claim was precluded by the arbitral award on the state law claims. Citing the

7

Restatement (Second) of Judgments, the Court ruled that "Res Judicata is not implicated if the forum which rendered the prior 'judgment' (viz the arbitral award) lacked 'jurisdiction' over the putatively precluded claim (viz the Rule 10b-5 claim"). Gruntal, 45 F.3d at 527.  In its decision, the Court noted that the "arbitral tribunals' authority over particular 'claims' is for the most part predetermined by contract; that is by written agreement of the parties." Id., 45 F.3d at 528 (emphasis in original).

While the instant case is not identical to the Gruntal case, the strong similarities make Gruntal a persuasive, binding precedent.  Like the arbitration agreement in Gruntal, the Landay Guaranty, properly construed, constituted an agreement that the court charged with enforcing the Guaranty would not have authority to decide Landay's claims against GMACCF.  Therefore, the New York Court's decision dismissing the counterclaims was not res judicata as to the claims set forth in the Amended Complaint since that decision was a determination that the New York Court had no power to hear such claims.  See also Latino Officers Ass'n v. City of New York, 253 F. Supp. 2d 771, 782 (claim preclusion does not apply where there is "incomplete overlap" between relief available to plaintiffs in first action and in second action).[4]  Finally, it is clear that no penalty should be imposed on a litigant, like Landay, who attempted to assert all his claims in a single action, where such attempt is unsuccessful. Epperson v. Enter. Express, Inc., 242 F.3d 100, 109 (2d Cir. 2001) ("we decline to adopt a rule that would

---

[4] In this regard, the Restatement (Second) of Judgments provides, § 26(1)(c) provides as follows:

(1)  When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:
(c)  The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief;…. (emphasis added).

8

prohibit litigants from pursuing some of their claims on a narrower jurisdictional basis after their attempt to allege a jurisdictional basis that would resolve all of their claims in one proceeding was rejected"), citing 18 Wright, Miller and Cooper, <u>Federal Practice and Procedure</u>, §4412, at 93 (1981).

### IV. <u>Collateral Estoppel May Not Be Applied To Bar Landay's Claims</u>.

GMACCF's arguments set forth at pages 11-13 of its Reply Memorandum require only a brief rebuttal. As noted above, GMACCF has the burden of establishing the scope of the New York decision and has not pointed to a single word or phrase which indicates that the Court was holding that Landay had released GMACCF from all potential claims. Moreover, the <u>Odimayo</u> case supports Landays position that the decision was limited in scope to barring the claims from the New York case. The hypothetical which GMACCF posits – a declaratory judgment to void or negate the Guaranty – while creative, is simply inapposite to Landay's case. As the <u>Odimayo</u> case suggested, the dismissal <u>could</u>, <u>in theory</u>, be preclusive as to one or more of the claims in the second action. However, Landay's claims do not fall into this category.

GMACCF's remaining arguments should also be rejected. GMACCF conflates "step[ping] into the shoes" of the borrowing corporations with asserting claims based in part on the contracts between the borrowers and GMACCF, which it misleadingly characterizes as "derivative" claims. In light of the above, there simply is no collateral estoppel on the contract claims. Finally for the reasons stated in his Memorandum in Opposition, the Usury Count is clearly not precluded.

V.    <u>The Amended Complaint States Claims Upon Which Relief Can Be Granted.</u>[5]

A motion to dismiss for failure to state a claim is looked upon with disfavor and rarely granted. <u>Druker v. Sullivan</u>, 334 F. Supp. 861, 864 (D. Mass. 1971); <u>Walsh v. McGee</u>, 918 F. Supp. 107, 112 (S.D.N.Y. 1996). When considering such a motion, the Court is bound to accept allegations of the Complaint as true and draw all reasonable inference from them in favor of the plaintiff. <u>Lindsay v. Future Elecs. Corp.</u>, 930 F. Supp. 677 (D. Mass. 1996). The Court may dismiss a complaint only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

A.    <u>Counts I and VII</u>

GMACCF's argument that Counts I (Misrepresentation) and Count VII (Chapter 93A) fail to state a claim is based on the same discredited principle – that a guarantor is bound by documents which he signed in a representative capacity only, here the Forbearance Agreement – which it has argued on the forum selection clause issue. Again, the law of New York State is to the contrary. Moreover, the Chapter 93A Count survives because <u>it is not limited to allegations of fraud in the inducement</u>. For example, it incorporates by reference the allegation that GMACCF committed criminal usury. See paragraphs 67-70 as incorporated by paragraph 85 of the Amended Complaint. In this regard, <u>In re Tavares</u>, 298 B.R. 195, 203 (Bankr. D. Mass. 2003) holds that "a violation of G.L. c. 271 § 49 would constitute a violation of G.L. c. 93A § 2."

---

[5] While some of the language in the Reply Memorandum suggested to Landay that GMACCF was making a more open-ended attack on the Amended Complaint on grounds of insufficiency than that which is contained in GMACCF's Motion and opening Memorandum, defense counsel has assured the undersigned that there was no intent to enlarge the scope of the motion as filed and, in particular, no intent to broaden the scope of the insufficiency argument. Therefore, it is unnecessary for Landay to argue "waiver" due to any perceived incongruence between the Motion and the Reply.

Moreover, a significant part of the Chapter 93A claims relates to unfair acts and practices engaged in by GMACCF <u>after</u> the date of the Forbearance Agreement which are not based on allegations of fraud in the inducement.  <u>See</u> paragraphs 39 to 59 of the Amended Complaint.  Therefore, to the extent that the language of integration in the Factoring Agreement were found to be binding on Landay, these aspects of his Chapter 93A claim would still be viable.

    B.    <u>Count II</u>

Landay has stated a claim under the Massachusetts Usury Statute, M.G.L. c. 271, § 49, since he has alleged that the notice which GMACCF sent to the Attorney General did not arrive until after credit was extended.  <u>See</u> <u>Schwartz v. Levensailor</u>, No. 01-583OH, 2002 WL 31103936, at *1-2 (Mass. Super. 2002).  Moreover, Massachusetts, like most jurisdictions permits a person other than the borrower to assert a claim that the underlying loan was usurious.  <u>LBM Fin., LLC v. Edgewater Inv. Ltd. P'ship</u>, No. 01798, 01656, 02286, 2004 WL 2075565, at *4 (Mass. Super. Aug. 5, 2004)  <u>See also</u> 12 <u>Am. Jur. 2d</u> <u>Bills and Notes</u> § 571 ("the defense of illegality of an instrument has been held available to guarantors…particularly in regard to the defense of usury").

GMACCF argues, however, that the usury claim must fail because the choice of law provisions at issue cover "contract-based claims", the usury claim is contract-based and New York usury law would apply.  Again, GMACCF chooses to ignore the principal document which binds Landay to it – the Guaranty.  The choice of law provision which is relevant to this case reads:  "[t]his <u>guaranty</u> shall be governed by and construed and interpreted in accordance with the laws of the State of New York." Exhibit 2 to Answer,

11

p. 2 (emphasis added).  As noted at page 18 of Landay's Memorandum in Opposition, this is a narrow choice of law provision which does not extend to tort claims.  See also Fustok v. Conticommodity Services, Inc., 618 F. Supp. 1082, 1089 (S.D.N.Y. 1985) ("under New York's conflict of law rules a contractual choice of law provision 'does not bind [the parties] as to causes of action sounding in tort'").  The usury claim is most aptly characterized as a tort claim, since it involves civil consequences of a criminal law violation.  See 1A C.J.S. Actions § 66 ("A person may offend against the state, and also be liable for civil damages or other relief growing out of the same offense, as every criminal act which injures the person or property of another is also a civil tort redressable by the courts").  See also Micera v. Neworld Bank, 412 Mass. 728, 729-730, 592 N.E.2d 1294, 1295 (1992) (Four-year statute of limitations for consumer protection action, not six-year contract statute of limitations is applicable to statutory violation of M.G.L. c. 183, § 60 which limits increase in the rate of interest on a loan as a condition of renewing mortgage note).[6]  Therefore, the cases cited in Landay's Memorandum in Opposition are dispositive of this issue.

None of the cases cited by GMACCF at page 16 of its Reply Memorandum holds that a claim of civil usury is not a tort.  In this regard, the case of Bentley v. Providian Fin. Corp., No. 02 Civ. 5714, 2003 WL 22234700 (S.D.N.Y. Apr. 21, 2003), involved a pro se plaintiff and did not describe the choice of law provision at issue.  The case of In re N. Parent, Inc., 221 B.R. 609, 615 (Bankr. D. Mass. 1998), involved a broad choice of

---

[6] See also Restatement (Second) of Torts 874A:
"When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action."

12

law provision <u>coupled with</u> a mandatory forum selection clause.  <u>Brock v. First Fidelity Acceptance Corp.</u>, 214 B.R. 877 (E.D. Ark. 1997), does hold that a usury claim is comprehended by a narrow choice of law clause, but was <u>not decided</u> under controlling New York precedent, which is to the contrary.  The final case, <u>Greenwood Trust Co. v. Commonwealth of Massachusetts</u>, 776 F. Supp. 21 (D. Mass. 1991), <u>rev'd</u> 971 F.2d 818 (1st Cir. 1992)[7], is similar to <u>Brock</u> in this regard.  Moreover, in <u>Greenwood</u>, this Court refused the invitation to apply Delaware law, chosen by the parties, to a Massachusetts consumer credit transaction in light of the Commonwealth's strong public policy against usurious transactions. In a word, New York law controls on this issue and, under New York law, the narrow choice of law provision in the Guaranty does not preclude the application of Massachusetts law to the usury claim. [8]

    C.    <u>Counts III-V</u>

The short answer to GMACCF's argument regarding the contract claims is that Landay is clearly not bringing a derivative action on behalf of the borrowing corporations.  As noted in Landay's Memorandum in Opposition, Count V is explicitly based on GMACCF's breach of its duty of good faith and fair dealing under the "related agreements with Landay", including the Guaranty.  Indeed, in light of GMACCF's act of making the Guaranty a part of the pleadings, Counts III and IV are also properly understood as alleging a breach of GMACCF's obligation to Landay under the

---

[7] The First Circuit Court reversed the District Court's determination that the claim was not preempted by federal law.

[8] To the extent that New York law were deemed to apply and to the extent that the transaction in this case is not usurious under New York law, this Court should follow <u>Greenwood</u> and apply Massachusetts law to the Usury claim.

Guaranty, i.e., the obligation it undertook to fulfill its obligations to the borrowing corporations under the Factoring and Forbearance Agreements.[9]

## CONCLUSION

For the reasons stated above, GMACCF's Motion for Judgment on the Pleadings should be denied.

Respectfully submitted,<br>
DAVID L. LANDAY,<br>
By his attorney,<br>
<br>
/s/ Alan R. Hoffman<br>
Alan R. Hoffman, BBO# 236860<br>
Lynch, Brewer, Hoffman & Fink, LLP<br>
101 Federal Street, 22nd Floor<br>
Boston, MA 02110<br>
(617) 951-0800

Dated: May 16, 2005

194448_1

---

[9] With regard to the abstention argument which GMACCF has made, Landay will rely on his Memorandum in Opposition except to point out that regardless of the outcome of the New York case most, if not all of Landay's claims, including Chapter 93A and Usury, will still be viable and will need to be addressed.