# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-CV-11955-WGY

DAVID L. LANDAY, )
)
      Plaintiff, )
)
v. )
)
GMAC COMMERCIAL CREDIT, LLC and )
GMAC COMMERCIAL FINANCE, LLC, )
)
      Defendants. )
_____)

## LANDAY'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Fed. R. Civ. P. 34, Plaintiff David L. Landay ("Landay") hereby requests that the Defendants permit Landay to inspect and copy the documents described below at the offices of Lynch, Brewer, Hoffman & Fink, LLP, 101 Federal Street, Boston, Massachusetts within thirty (30) days from the date of service of this request.

The following definitions and instructions apply to these requests to produce:

    A.    "You" is defined as meaning GMAC Commercial Credit LLC and/or GMAC Commercial Finance LLC, or any person acting for or on behalf of either or both.

    B.    "Seneca" and/or "Seneca Sports'" refers to Seneca Sports, Inc.

    C.    "Brookfield" refers to Brookfield International, Inc., a Massachusetts corporation and wholly owned subsidiary of Seneca Sports, Inc.

    D.    "The Borrowers" refers to Seneca Sports, Inc. and Brookfield International, Inc.

    E.    "GMAC" means GMAC Commercial Credit LLC and/or GMAC Commercial Finance LLC and includes its officers, employees, servants,

attorneys and independent consultants and agents such as RAS Management Advisors, Inc.

F. "Seasonal Overadvance" means an advance of funds to Borrowers of up to $500,000 in excess of the advances based on the receivables formula in the Factoring Agreement, all set forth in the portion called "Borrowing Base" in Section 12 of the Factoring Agreement.

G. "Document" is to be construed in its broadest sense, including without limitation, any paper or other writing and any item of graphic material, however recorded or reproduced and including further, without limitation the following:

"Document" and "writing" mean any paper or other writing and any item of graphic material, however recorded or reproduced, including all drafts, copies, or other preliminary materials that are different in any way from the executed or final document, regardless of whether designated 'confidential' or 'privileged' or otherwise restricted, wherever located, whether an original or a copy, including but not limited to e-mails, facsimile transmissions, agreements, contracts, financial statements, invoices, minutes, work sheets, work papers, summaries, and other written records or recordings of any conferences, meetings, visits, interviews, or telephone conversations, financial and statistical data, analyses, surveys, transcripts of testimonies, statements, interviews, affidavits, press releases, memoranda, drafts, memo pads, notes, indices, tabulations, graphs, reports, papers, records, inter-office communications, files, electronic data processing cards, tapes, print-outs, papers or other recordings, tables, compilations, catalogues, telegrams, letters, photographs, diaries, calendars, drawings, data-reports, printed matter, correspondence, communications received or sent, books, brochures, advertising circulars, mailings and publications; and any copy containing thereon or having attached hereto any alterations, notes, comments or other material shall be deemed a separate document from the original or any other copy not containing such material within the foregoing definition.

For each request, to the extent that GMAC claims that it has not retained hard copies of such records, GMAC is requested to search its computer files and to generate hard copies of all material in its computer archives relating to Brookfield/Seneca and responsive to such request.

H. In addition to documents generated by GMAC and/or kept by GMAC in the regular course of business, each request also requires the production of all documents that were on the premises of Seneca and Brookfield on October 22, 2001, the day GMAC took possession of the premises and confiscated all the assets, books and records of said debtors. This

2

includes, but is not limited to, documents generated by and/or provided by GMAC to Seneca/Brookfield, documents generated by Seneca/Brookfield, documents kept by Seneca/Brookfield in the regular course of business, including but not limited to orders from customers, inventories, sales records, purchase records and the like.

I.  If you claim that any document requested hereby is privileged, you should state for each such document:

 (a) The nature of the privilege claimed;

 (b) The nature of the document (e.g., letter, memorandum to file, contract);

 (c) The person or persons who prepared the document;

 (d) The person or persons who signed the document;

 (e) The person or persons to whom the document was addressed, directed or circulated;

 (f) The person or persons who now have possession or custody of the document;

 (g) The date of the document, if dated or the date it was prepared;

 (h) The title or caption of the document, if any;

 (i) The number of pages in the document; and

 (j) The matters addressed in the document.

If you claim that any document requested hereby is missing, or has been destroyed, you should furnish the same information with respect to the document as that requested for a document claimed to be privileged, and in addition, shall state:

 (k) The contents of the document as best they can be recalled;

 (l) The person or persons who last had possession, custody or control of the document; and

 (m) The date, place and circumstances of the destruction or loss of the document.

3

J.  Unless otherwise specified, each request calls for documents for the period September 1, 2000 to date.

## REQUESTS FOR PRODUCTION

### REQUEST NO. 1

All documents referring, reflecting or relating to the funding of the loan GMAC made to the Borrowers pursuant to the Factoring Agreement dated September 19, 2000, including but not limited to:

a. All documents showing the date funds were first provided by GMAC to Seneca and/or Brookfield;

b. All documents showing the amount of the funds initially provided by GMAC to Seneca and/or Brookfield;

c. All documents showing the dates and/or amounts of funds that GMAC provided to Seneca and/or Brookfield in the period September 1, 2000 to date.

### REQUEST NO. 2

All documents referring, reflecting or relating to any filing made pursuant to M.G.L. 271, Section 49 concerning GMAC's transactions with Seneca and/or Brookfield and/or Landay, including without limitation, all documents showing the date of any such filing.

### REQUEST NO. 3

All records that GMAC was required to maintain pursuant to M.G.L. 271, Section 49.

### REQUEST NO. 4

For the period September 1, 2000 through and including October 22, 2001: All documents referring, reflecting or relating to the interest and/or charges and/or costs and/or fees and/or expenses that GMAC charged Seneca and/or Brookfield and/or Landay on account of funds provided to Borrowers by GMAC, including without limitation:

a. All documents reflecting entries for interest, charges, fees, expenses or other costs;

b. All documents showing the calculation of interest, charges, fees, expenses or other costs;

4

   c. All documents providing the basis for the interest, charges, fees, expenses or other costs calculated, such as documents that show customer refunds that result in a charge-backs to the loan.

## REQUEST NO. 5

For the period October 23, 2001 to date: All documents referring, reflecting or relating to the interest and/or charges and/or costs and/or fees and/or expenses that GMAC charged to Seneca and/or Brookfield and/or Landay on account of funds provided to Borrowers by GMAC, including without limitation:

   a. All documents reflecting entries for interest, charges, fees, expenses or other costs;

   b. All documents showing the calculation of interest, charges, fees, expenses or other costs;

   c. All documents providing the basis for the interest, charges, fees, expenses or other costs calculated, such as documents that show customer refunds that result in a charge.

## REQUEST NO. 6

For the period September 1, 2000 to date, all documents referring, reflecting or relating to Borrowers' debt to GMAC, including but not limited to:

   a. The monthly GMAC accounting called for by Section 6 of the Factoring Agreement;

   b. Any and all monthly statements;

   c. Any and all daily statements;

   d. The daily computer "screens" generated by GMAC and provided to Borrowers on the period September 1, 2000 through and including October 23, 2001;

   e. All daily computer screens generated by GMAC since October 23, 2001.

## REQUEST NO. 7

For the period September 1, 2000 through October 23, 2001, all documents referring, reflecting or relating to payments made by or on account of Borrowers to GMAC, including but not limited to:

    a. payments made directly by Borrowers to GMAC;

    b. collections made by GMAC from customers of Borrowers;

    c. money paid by Landay to GMAC for the account of the Borrowers;

    d. collections made by GMAC from assets pledged by Landay bookkeeping entries reflecting the foregoing.

## REQUEST NO. 8

For the period September 1, 2000 through and including October 22, 2001, all documents referring, reflecting or relating to the amount of money GMAC claims it was owed by debtors on October 22, 2001, including but not limited to documents showing or reflecting the calculation of the sums allegedly owed.

## REQUEST NO. 9

For the period October 23, 2001 to date, all documents referring, reflecting or relating to money received by GMAC on account of the loan to Borrowers, including but not limited to:

    a. collections by GMAC from customers of Borrowers;

    b. collections by GMAC from assets pledged by Landay;

    c. collections from the sale of Borrowers' assets;

    d. bookkeeping entries reflecting such receipts.

## REQUEST NO. 10

For the period October 23, 2001 to date, all documents referring, reflecting or relating to the amount of money GMAC claims it is now owed by the Borrowers, including but not limited to documents showing or reflecting the calculation of the sums allegedly owed.

## REQUEST NO. 11

For the period September 1, 2000 to date, all documents referring, reflecting or relating to the amount of money GMAC claims it is owed by Landay on account of his guaranty of GMAC's loan to the Borrowers, including without limitation documents showing or reflecting the calculation of the sums allegedly owed.

## REQUEST NO. 12

For the period September 1, 2000 to date, all documents referring, reflecting or relating to the accounts receivable of the Borrowers, including but not limited to:

a. the weekly accounts receivable listing provided to GMAC by Borrowers in the period September 2000 through October 22, 2001;

b. Borrowers' invoices to customers, copies of which were provided to GMAC daily;

c. documents showing the accounts receivable as of October 22, 2001, including documents showing the customer and amount owed by such customer;

d. documents relating to the collection of accounts receivable by GMAC after October 22, 2001, including documents showing the customer, the amount owed by such customer and the amount collected from such customer;

e. accounts receivable listings prepared by and/or maintained by GMAC;

f. documents concerning payments made by customers of Borrowers, including but not limited to correspondence, forms or other documents accompanying such payments;

g. bookkeeping entries made by GMAC, including but not limited to those reflecting or relating to receipt of payments of accounts receivable;

h. correspondence with Borrowers' customers.

## REQUEST NO. 13

For the period September 1, 2000 to date, all documents referring, reflecting or relating to Borrowers' inventory, including but not limited to:

a. the weekly inventory reports provided to GMAC by Borrowers in the period September 1, 2000 through October 22, 2001;

b. inventory listings prepared by and/or maintained by GMAC;

c. documents showing the inventory as of October 22, 2001;

d. documents referring, reflecting or relating to fulfillment of orders that were outstanding on October 22, 2001;

e. documents referring, reflecting or relating to the sale of Borrowers' inventory by GMAC, including but not limited to any offers to purchase inventory;

f. documents referring, reflecting or relating to the return of inventory;

g. bookkeeping entries made by GMAC referring, reflecting or relating to the sale of Borrowers' inventory and/or the return of inventory;

h. the location of Borrowers' inventory, including inventory of which GMAC took possession on October 22, 2001 but has not sold to date.

## REQUEST NO. 14

For the period September 1, 2000 to date, all documents referring, reflecting or relating to Borrowers' assets other than inventory and accounts receivable, including but not limited to:

a. The periodic Hard Asset listing provided by Borrowers to GMAC;

b. Documents referring, reflecting or relating to Borrowers' intellectual property, including, patents, trademarks and trade names, including, but not limited to, copies of all governmental filings, all drawings and illustrations, all correspondence and all lists of such property;

c. Documents referring, reflecting or relating to the location of Borrowers' assets since October 23, 2001;

d. Documents referring, reflecting or relating to the sale of any of Borrowers' assets by GMAC, including communications or other documents concerning any offers to purchase assets;

e. GMAC bookkeeping entries that refer, reflect or relate to the sale of any of Borrowers' assets.

## REQUEST NO. 15

All documents referring, reflecting or relating to GMAC's efforts to sell Borrowers' assets and/or collect outstanding accounts receivable.

## REQUEST NO. 16

All documents referring, reflecting or relating to the accounting GMAC promised the Borrowers and Landay in a letter dated October 24, 2001, (admitted by GMAC in paragraph 54 of its Answer in this action), including but not limited all documents

8

referring, reflecting or relating to GMAC's failure to provide such accounting to date (also admitted by GMAC in paragraph 57 of its Answer).

### REQUEST NO. 17

All documents referring, reflecting or relating to the Factoring Agreement, including but not limited to communications between Landay and Paul Fitzgerald of GMAC's Boston office and communications between Landay and Jane Frangos of GMAC's New York office.

### REQUEST NO. 18

All documents referring, reflecting or relating to Landay's Guaranty, including but not limited to representations made by Paul Fitzgerald, communications between Fitzgerald and Landay, and communications between Frangos and Landay.

### REQUEST NO. 19

All documents referring, reflecting or relating to Standby Letters of Credit provided by Landay to GMAC, including but not limited to:

a. All Standby Letters of Credit and copies thereof;

b. All documents referring, reflecting or relating to GMAC's collection of funds pursuant to Landay's Standby Letters of Credit;

c. All GMAC bookkeeping entries referring, reflecting or relating to its collection of the funds;

d. As to the $4,1000,000 Standby Letter of Credit provided by Landay in 2000: all documents referring, reflecting or relating to representations made by Fitzgerald to Landay; communications between Fitzgerald and Landay; communications between Frangos and Landay; communications between Fitzgerald and Frangos; communications between and among Fitzgerald and others at GMAC; communications between and among Frangos and others at GMAC; communications to with and among GMAC personnel, including GMAC committee members and committee reports;

e. As to the $250,000 Standby Letter of Credit provided by Landay in 2001 and all extensions thereof: all documents referring, reflecting or relating to representations made by Fitzgerald to Landay; communications between Fitzgerald and Landay; communications between Frangos and Landay; communications between Fitzgerald and Frangos; communications between and among Fitzgerald and others at GMAC; communications between and

among Frangos and others at GMAC; communications to with and among GMAC personnel, including GMAC committee members and committee reports.

### REQUEST NO. 20

All documents referring, reflecting or relating to any "Seasonal Overadvance" to Borrowers, including but not limited to: communications between Fitzgerald and Landay; communications between Frangos and Landay; communications between Fitzgerald and Frangos; communications between and among Fitzgerald and others at GMAC; communications between and among Frangos and others at GMAC; communications to, with and among GMAC personnel, including GMAC committee members and committee reports.

### REQUEST NO. 21

All documents referring, reflecting or relating to the Subordination Agreement between Landay and GMAC (admitted by GMAC in Paragraph 15 of its Answer), including without limitation, notices (if any) to Landay in his capacity as a subordinated creditor made by GMAC prior to and/or following GMAC's seizure of the assets of the Borrowers.

### REQUEST NO. 22

All documents referring, reflecting or relating to the Forbearance Agreement and/or the financial plan annexed to and incorporated into it, including without limitation, communications with Borrowers, communications with Landay, communications between and among GMAC personnel, reports to and from committees, committee minutes.

### REQUEST NO. 23

All documents referring, reflecting or relating to the schedules in the financial plan incorporated in the Forbearance Agreement, including without limitation, documents concerning any request by Borrowers or Landay for changes to the schedules, either before or following execution of the Forbearance Agreement.

### REQUEST NO. 24

All documents referring, reflecting or relating to the payment of Borrowers' expenses by Landay personally, including but not limited to any communications between Frangos and Landay.

10

**REQUEST NO. 25**

All documents referring, reflecting or relating to the Amendment of Guaranty, including without limitation communications with Landay and/or representations made to him by GMAC personnel, including Frangos.

**REQUEST NO. 26**

All documents referring, reflecting or relating to the $1,000,000 cash deposit made by Landay in the name of GMAC, including without limitation, all communications concerning that $1,000,000 of additional collateral, documents evidencing the $1,000,000 deposit in the name of GMAC, documents showing GMAC's collection of the $1,000,000 from that account, bookkeeping entries by GMAC relating to collection of that $1,000,000.

**REQUEST NO. 27**

All documents referring, reflecting or relating to GMAC's declaring Borrowers in default and calling due the loan, including but not limited to documents generated during GMAC's decision-making process.

**REQUEST NO. 28**

All documents referring, reflecting or relating to any proposal by Landay and/or Borrowers to obtaining financing from another source that would pay off all or part of the GMAC loan, including but not limited to a proposal that involved financing from Platinum Credit Corp.

**REQUEST NO. 29**

All GMAC internal reports concerning the loan to Borrowers, including all loan committee reports.

**REQUEST NO. 30**

All GMAC internal reports concerning Landay's Guaranty, including loan committee reports.

**REQUEST NO. 31**

All documents described by GMAC in the 11 categories listed in Disclosure B of GMAC's F.R.Civ.P.26(a)(1) Initial Disclosure Statement Dated March 25, 2005.

**REQUEST NO. 32**

All the books and records of Borrowers.

> DAVID L. LANDAY,
>
> By his attorneys,
>
> *Alan R. Hoffman*
> Alan R. Hoffman, BBO #236860
> LYNCH, BREWER, HOFFMAN & FINK, LLP
> 101 Federal Street, 22nd Floor
> Boston, MA  02110-1800
> (617) 951-0800

Dated:  June 9, 2005

195707_1

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand) (mail) on June 9, 2005.

*Alan R. Hoffman*