# EXHIBIT 2

Case 1:04-cv-11955-WGY     Document 36-3     Filed 07/01/2005     Page 1 of 18

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-CV-11955-WGY

DAVID L. LANDAY,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
GMAC COMMERCIAL CREDIT, LLC and　　　)
GMAC COMMERCIAL FINANCE, LLC,　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　　　　　　)
_____)

[Stamp: RECEIVED JUN 17 2005 EDWARDS & ANGELL]

**<u>PLAINTIFF DAVID LANDAY'S FIRST SET OF INTERROGATORIES</u>**

Pursuant to Fed. R. Civ. P. 33, Plaintiff David L. Landay (hereinafter "Landay") hereby propounds the following interrogatories to be answered under oath by Defendants, GMAC Commercial Credit, LLC and GMAC Commercial Finance.

**<u>INTRODUCTION AND DEFINITIONS</u>**

Wherever used in these interrogatories unless the context requires otherwise:

　　A.　　"You" is defined as meaning GMAC Commercial Credit LLC and/or GMAC Commercial Finance LLC, or any person acting for or on behalf of either or both.

　　B.　　"Seneca" and/or "Seneca Sports'" refers to Seneca Sports, Inc.

　　C.　　"Brookfield" refers to Brookfield International, Inc., a Massachusetts corporation and wholly owned subsidiary of Seneca Sports, Inc.

　　D.　　"The Borrowers" refers to Seneca Sports, Inc. and Brookfield International, Inc.

　　E.　　"GMAC" means GMAC Commercial Credit LLC and/or GMAC Commercial Finance LLC and includes its officers, employees,

servants, attorneys and independent consultants and agents such as RAS Management Advisors, Inc.

F. "Seasonal Overadvance" means an advance of funds to Borrowers of up to $500,000 in excess of the advances based on the receivables formula in the Factoring Agreement, all set forth in the portion called "Borrowing Base" in Section 12 of the Factoring Agreement.

G. "Document" is to be construed in its broadest sense, including without limitation, any paper or other writing and any item of graphic material, however recorded or reproduced and including further, without limitation the following:

"Document" and "writing" mean any paper or other writing and any item of graphic material, however recorded or reproduced, including all drafts, copies, or other preliminary materials that are different in any way from the executed or final document, regardless of whether designated 'confidential' or 'privileged' or otherwise restricted, wherever located, whether an original or a copy, including but not limited to e-mails, facsimile transmissions, agreements, contracts, financial statements, invoices, minutes, work sheets, work papers, summaries, and other written records or recordings of any conferences, meetings, visits, interviews, or telephone conversations, financial and statistical data, analyses, surveys, transcripts of testimonies, statements, interviews, affidavits, press releases, memoranda, drafts, memo pads, notes, indices, tabulations, graphs, reports, papers, records, inter-office communications, files, electronic data processing cards, tapes, print-outs, papers or other recordings, tables, compilations, catalogues, telegrams, letters, photographs, diaries, calendars, drawings, data-reports, printed matter, correspondence, communications received or sent, books, brochures, advertising circulars, mailings and publications; and any copy containing thereon or having attached hereto any alterations, notes, comments or other material shall be deemed a separate document from the original or any other copy not containing such material within the foregoing definition.

H. The word "identify" or any derivative thereof means:

(1) With respect to a person, state his or her full name; residential address; business address; and employer and occupation;

(2) With respect to a company, firm partnership or corporation, state its full name, the address of its place of business, its

2

     place of incorporation or partnership; and the name and address of its registered agent;

(3)  With respect to a document, state the type of documents; its date and author; and any other characteristics necessary to identify the document, including its present location and custodian; and

(4)  With respect to an event, happening, occurrence, conversation or telephone conversation, state the date and place of the event, happening, occurrence, conversation or telephone conversation; the names and addresses of all persons present or participating; and a description of what was said or done and by whom.

I.  "Standard cost value" means factory cost plus the cost of ocean freight or other transportation, as used in Borrowers' monthly inventory report/assignment to GMAC.

J.  "Unit" means an individual item of merchandise. For example, items sold in pairs (such as shoes or skates) are one unit.

K.  "Loan balance" means the total amount of money due to GMAC from Borrowers at any moment in time.

L.  "Intellectual property" means patents, trademarks, trade names, designs, drawings and other like materials related to patents, trademarks and trade names.

M.  "Loan Documents" means the documents relating to Borrowers' borrowings from GMAC, consisting of the September 19, 2000 Factoring Agreement between GMAC and Borrowers, the Personal Guaranty signed by Landay and dated September 19, 2000, the Subordination Agreement signed by Landay and dated September 19, 2000, the Forbearance Agreement between Borrowers and GMAC, dated as of August 9, 2001, the Amendment of Guaranty signed by Landay and dated August 9, 2001.

## INTERROGATORIES

### INTERROGATORY NO. 1

Please describe GMAC's record retention policy and how it relates to documents concerning the Borrowers and Landay. Please include the following in your answer:

3

a. State whether or not GMAC has destroyed or otherwise disposed of any documents that relate to Landay and/or his guaranty and/or the loan to Borrowers to which the Guaranty relates (including the correspondence and transmission documents GMAC received on a daily basis that identified the customer invoices to which collections related) and, if so,

  (i)  identify the documents,
  (ii)  state the date of disposition,
  (iii)  state the means of disposition,
  (iv)  identify all persons that authorized the disposition, and
  (v)  identify all persons with knowledge concerning the disposition.

b. State whether or not GMAC has destroyed or otherwise disposed of Borrowers' books and records that it seized on October 22, 2001, and if so,

  (i)  identify the documents,
  (ii)  state the date of disposition,
  (iii)  state the means of disposition,
  (iv)  identify all persons that authorized the disposition, and
  (v)  identify all persons with knowledge concerning the disposition.

c. If GMAC has not disposed of the books and records it seized from Borrowers on October 22, 2001, state the location of such documents and identify persons having custody or control of such documents.

d. Identify persons familiar with GMAC's record retention policy.

e. State whether or not GMAC maintains a computerized version of documents and, if so, whether you have information related to the Borrowers and/or Landay stored in computers and/or in some format other than hard-copy.

f. If your response to subsection e. is affirmative, state how such records can be accessed and whether or not hard-copies can be made.

g. Describe the steps GMAC took to comply with the requirements of M.G.L. 271, Section 49.

h. State the current location of documents that GMAC was required to maintain pursuant to M.G.L. 217, Section 49 and, if GMAC no longer has such records in its possession, custody or control, state:

4

(i) the date such documents left the possession, custody or control of GMAC,
(ii) the means such documents left GMAC's possession, custody or control,
(iii) the last-known location of such documents,
(iv) the identity of their last-know custodian,
(v) the identity of all persons that authorized their removal from the possession, custody or control of GMAC,
(vi) the identity of all persons with knowledge of GMAC's disposition of such documents,
(vii) whether or not GMAC authorized the destruction of these documents and, if so, state the date they were destroyed, the identity of the persons that authorized the destruction, and the identity of all persons with knowledge of their destruction.

## INTERROGATORY NO. 2

Please account for EACH and EVERY Account Receivable of the Borrowers that existed on October 22, 2001, when GMAC took charge of the assets of Borrowers. Include the following in your answer:

a. State the name of Borrower's customer that owed the account receivable.

b. State the amount owed on October 22, 2001.

c. State the amount collected by GMAC to date.

d. Describe the efforts made by GMAC to collect the receivable.

e. Identify all agents, servants or employees of GMAC responsible for collecting the receivable.

f. State the date or dates the receivable was collected by GMAC.

g. If the full amount owed by Borrowers' customer was not collected by GMAC, state the reason for the shortfall.

h. Identify all documents that reflect or relate to your response to subsection g above.

i. Identify all documents on which the receivable is reflected and state where on the document (e.g., page, column heading and line number) the receivable is reflected.

5

j.  Identify all documents on which the collection of the receivable is reflected and state where on the document (e.g., page, column heading and line number) the collection is reflected.

k.  State whether the collection of such receivable was credited to Borrowers' and, if so, identify all documents on which such credit is reflected and state where on the document it appears.

l.  State whether you have destroyed or otherwise disposed of any documents that referred, reflected, or related to this receivable and, if so, identify such documents and state what became of them, including the date they ceased to exist.

m.  State whether you maintain computerized records that contain information concerning Borrowers' accounts receivable and, if so, describe such records including but not limited to whether or not there are hard-copies of such records extant.

n.  State the location of the Accounts Receivable records that Borrowers maintained and which were seized by GMAC on October 22, 2001. If you claim you no longer have such records in your possession, custody or control, state (i) the date you last had them in your possession, custody or control, (ii) the address of their last-known location, (iii) the identity of the person(s) who have the records now, and (iv) what you did to the records to cause them to no longer be in your possession, custody or control.

**INTERROGATORY NO. 3**

Please explain the purpose of the GMAC documents attached as Exhibit 1 hereto and include in your answer the following information:

a.  State whether these documents in any way related to your efforts to collect accounts receivable.

b.  Identify all persons to whom these documents were sent and provide the means and dates of transmission.

c.  Explain the purpose of these letters and state whether you expected to receive any response from Borrowers.

d.  State whether GMAC received any response to these letters and, if so, to which of these letters did it receive a response and from whom did it receive such response?

e.  As to letters asking Borrowers to identify the invoice to which received money related (see e.g. GLAN 02257 and 02254; 02213-4; 02215-23;

6

    02227-8; 02279-81; 02277-8; 02237-9; 02242; 02251-6; 02273-4) please state: (i) whether such invoices were ever identified, (ii) whether GMAC ever credited Borrowers for the remittances discussed in these letters, (iii) explain the meaning of GMAC's statement "If we do not receive clarification, we will presume that the remittance belongs to GMAC Commercial Credit in satisfaction of an existing obligation that we erroneously posted" (see, e.g. GLAN 02251), and (iv) explain the meaning of GMAC's statement "Your non-response in this matter will be regarded as disclaiming any interest in the subject remittance in favor of GMAC...." (see e.g., GLAN 02257).

f. If your answer to e(ii) above is affirmative, identify all documents that reflect the payments credited to Borrowers and state where on the document that credit is reflected.

g. As to letters asking Borrowers to send copies of invoices (see e.g., GLAN 02282 - 95; GLAN 02258-60) describe how the matter was resolved and whether or not GMAC collected the money from the customers who owed the accounts receivable.

h. If your answer to g. above is affirmative, state whether GMAC credited the Borrowers with the sums collected and, if so, identify all documents that reflect such credit to Borrowers and state where on the document such credit appears.

i. As to letters concerning charge backs (see e.g., GLAN 02229-30; 02234-6; 02243; 02231; 02232-3; 02240; 02241; 02243; 02245; 02246-50; 02261-63; 02264-68; 02269-72; 02275), state how the matter was resolved, including whether or not a lack of response from Borrowers to these letters resulted in GMAC allowing the charge backs in full and without challenge.

j. Identify all documents referring, reflecting or relating to the matters in each of the letters attached as Exhibit1.

k. Identify all GMAC agents, servants or employees with any knowledge concerning the letters in Exhibit1 and the matters referred to therein.

## INTERROGATORY NO. 4

    Please account for all Borrowers' inventory seized by GMAC on October 22, 2001. In addition to providing (1) the total inventory cost value as of October 22, 2001 and (2) the total amount of money received by GMAC to date from the sale of Borrowers' inventory, provide the following details for each and every style number in Borrowers' inventory as of October 22, 2001:

7

a. the standard cost value per unit (pair or single item, as appropriate),

b. the number of units in that style,

c. the number of units GMAC sold in liquidation,

d. the identity of the buyer in liquidation and buyer's date of purchase,

e. the amount received by GMAC from the sale,

f. if unsold, the present and/or last known location of such inventory item(s), including the address and name of the person(s) having possession, custody or control.

g. Identify all documents on which the inventory item is reflected and state where on the document it is reflected.

h. Identify all documents on which the sale of this inventory item is reflected and state where on the document it appears.

i. State whether the sale of such inventory was credited to Borrowers and, if so, identify all documents that reflect such credit to Buyers' and state where on the documents it appears.

j. Identify all documents on which your collection of money from the sale of such inventory item is reflected and state where on the document it appears.

k. State whether you have in your possession, custody or control all GMAC documents that ever reflected or concerned this inventory item and, if not, Identify all documents that GMAC would have generated or received in the normal course of its business concerning such item and state what became of such documents, including the date they ceased to exist.

l. State whether you maintain computerized records that contain information concerning Borrowers' inventory and, if so, describe such records including but not limited to whether or not there are hard-copies of such records extant.

m. State the location of the inventory records that Borrowers maintained and which were seized by GMAC on October 22, 2001. If you claim you no longer have such records in your possession, custody or control, state: (i) the date you last had them in your possession, custody or control, (ii) the address of their last-known location, (iii) the identity of the person(s) who have the records now, and (iv) the circumstances surrounding your disposition of such records.

8

## INTERROGATORY NO. 5

Please account for each of the several hundred patents and trademarks assigned to GMAC by Borrowers' and taken by GMAC into its possession custody and control on October 22, 2001. Include in your answer the identity of each patent and trademark and with respect to each patent and trademark identified provide the following details:

a. Describe the steps you have taken since October 22, 2001 to preserve and maintain such items.

b. Describe the steps you have taken to sell them.

c. Identify all offers to purchase that have been made for such property, including the identity of the offeror and the amount offered.

d. Identify all sales you have made, including the identity of the purchaser and the amount paid.

e. Identify all GMAC agents, servants or employees who had or have any responsibility for the maintenance of Borrowers' intellectual property.

f. Identify all GMAC agents, servants or employees have or had any responsibility for selling Borrowers' intellectual property in liquidation.

g. Identify all records in your possession custody or control that refer, reflect or relate to Borrowers' intellectual property.

h. If you no longer have in your possession, custody or control the documents referring, reflecting or relating to Borrowers' intellectual property state: (i) the date you last had them in your possession, custody or control, (ii) the address of their last-known location, (iii) the identity of the person(s) who have the records now or, if unknown to you, the identity of the last-known custodian of said records, and (iv) the circumstances surrounding your disposition of such documents.

## INTERROGATORY NO. 6

Excepting Accounts Receivable, Inventory and Intellectual Property, please account for all other assets of Borrowers' seized by GMAC on October 22, 2001 (e.g. computers). Include in your answer an identification of each asset and with respect to the identified asset provide the following details:

a. State whether it was sold by GMAC and, if so, the dollar amount of the sale.

9

b. If sold, identify the buyer and date of purchase.

c. If sold, identify all documents upon which that sale is reflected and state where on the document it appears.

d. If sold, state whether or not Borrowers were credited with the sale and, if so, identify all documents upon which such credit is reflected and state where on the documents such credit appears.

e. If not sold, state the current location of the asset and identify the person or persons that have possession, custody or control of it.

f. If you do not know the current location of the unsold assets, state its last-known location and the identity of the person or persons that had possession, custody or control of it.

g. Identify all GMAC agents servants or employees who have or had any responsibility for the preservation and/or sale of these assets.

## INTERROGATORY NO. 7

With respect to each asset identified by you in responses to Interrogatories 2, 4, 5 and 6 as to which GMAC has abandoned its sales and/or collections efforts, state the date you abandoned such efforts and describe the steps you have taken to provide notice (if any) of this to Landay in his capacity as junior creditor. Please include the following details in you answer:

a. the location of each asset for which you have abandoned efforts,

b. the date GMAC determined to abandon its sales and/or collections efforts,

c. whether or not GMAC advised Landay in his capacity as junior creditor that GMAC was ceasing its sales and/or collections efforts and, if so, the date and form of the notice, and

d. whether or not GMAC advised Landay in his capacity as junior creditor that this asset was available to Landay for satisfaction of Borrowers' debt to him and, if so, the date and the form of the notice.

e. Identify all persons that have knowledge relating to your answer to this interrogatory.

f. Identify all documents that relate, refer to or reflect your answer to this interrogatory.

## **INTERROGATORY NO. 8**

Please explain the GMAC monthly reports attached hereto as Exhibit 2 (GLAN01516-01520; GLAN 01521-01524; GLAN 01525-01528; GLAN 01529-01531; GLAN 01532-01535; GLAN 01536- 01538; GLAN 01539-01541; GLAN 01542-01544; GLAN 01545-01547; GLAN 01548-01550; GLAN 01551-01553; GLAN 01554-01556.) Include the following information in your explanation:

a. Explain why these reports are in three different formats (compare GLAN 01516-01520 to GLAN 01529-01531 to GLAN 01551-01553) including, without limitation whether these are three different kinds of reports or whether one format simply replaced the other.

b. For each "MISC CHG/CR" entry: (i) state what the charge or credit was for, (ii) identify the contract document and provision therein that you claim permitted you to make that charge, (iii) identify all persons who authorized such charge, (iv) identify all persons who have knowledge concerning such charge, and (v) identify all documents that reflect or relate to the reasons for making such charge.

c. For each of the "COLLECTIONS" entries that apparently increase the loan balance (see, e.g., the December 2001 statement, GLAN 01525-01528, 12/4/01 collections entry in the amount of $126,239.89): (i) explain to what the entry relates, and (ii) explain how a collection can increase a loan balance.

d. For each "CASH ADVANCE" entry: (i) state to whom the cash advance was made, (ii) state for what purpose it was made, (iii) identify the contract document and provision therein that you claim permitted your to make that charge to the loan, (iv) identify all persons who authorized such charge, (v) identify all persons having knowledge concerning such charge, and (vi) identify all documents that reflect or relate to the reasons for making such charge.

e. For each "CHARGE BACK" entry: (i) state what "charge back" means, (ii) state the reason for the charge back, (iii) state whether the charge back relates to a customer of Borrowers' and, if so, identify such customer, (iv) describe the efforts GMAC made to verify the validity of the charge back claimed by Borrowers' customer, (v) identify all contract documents and provision therein that you claim permitted you to make that charge back, (vi) identify all persons who authorized such chargeback, (vii) identify all persons who have knowledge concerning such charge back, and (viii) identify all documents that reflect or relate to the reasons for making such charge.

f.  For each "OVERADV CHGE" entry: (i) explain what "overadvance" means, (ii) identify the "overadvance" to which the entry relates, including the date it was incurred and how it was incurred, (iii) identify the contract provision that you claim permitted you to make this charge, (iv) identify all persons who authorized such charge, (v) identify all persons having knowledge concerning such charge, and (vi) identify all documents that reflect or relate to the reasons for making such charge.

g.  For each "WIRE CHARGES" entry: (i) identify the charge to which it relates, including the date it was incurred, by whom it was incurred and why it was incurred, (ii) identify the contract provision that you claim allows you to make this charge, (iii) identify all persons who authorized such charge, (iv) identify all persons having knowledge concerning such charge, and (v) identify all documents that reflect or relate to the reasons for making such charge.

h.  For each "DBA" entry, explain what this entry means, including; (i) what is "DBA", (ii) the reasons for posting this entry, (iii) the contract provision that you claim permits this entry, (iv) the identity of all persons who have knowledge concerning this entry, and (v) the identity of all documents that reflect or relate to this entry.

i.  For each "BANK CHARGES" entry: (i) identify the bank charges to which this entry relates including the name of the bank, the purpose of the charge, the date the charge was incurred, by whom it was incurred and why it was incurred, (ii) identify the contract provision that you claim allows you to make this charge, (iii) identify all persons who authorized such charge, (iv) identify all persons having knowledge concerning such charge, and (v) identify all documents that reflect or relate to the reasons for making such charge.

j.  For the "LC CHGE" on GLAN 01540: (i) identify the charge to which this entry relates including the purpose of the charge, the date the charge was incurred, by whom it was incurred and why it was incurred, (ii) identify the contract provision that you claim allows you to make this charge, (iii) identify all persons who authorized such charge, (iv) identify all persons having knowledge concerning such charge, and (v) identify all documents that reflect or relate to the reasons for making such charge.

**INTERROGATORY NO. 9**

If the "LC CHGE" entry on GLAN 01540 relates to a $110,000 Letter of Credit provided to Disney on account of Buyers, please explain your accounting with respect to that Letter of Credit. Include the following information in your explanation:

a. State whether or not the $110,000 for the Disney Letter of Credit was carried as part of the loan balance since the year 2001.

b. State whether the entry on GLAN 01540 reflects a $56,908.22 payment to Disney in 2002 on that letter of credit.

c. If your answer to the foregoing is affirmative, state whether or not the remaining $53,091.78 of the $110,000 letter of credit was ever paid to Disney or whether the payment of $56,908.22 was in full satisfaction of money owed Disney.

d. If the $56,908.22 payment was full satisfaction to Disney on a Letter of Credit for which GMAC had already charged Borrowers' $110,000, please explain why $56,908.22 was added to the loan balance rather than $53,091.78 being deducted from the loan balance.

## INTERROGATORY NO. 10

Explain each document in the group of documents marked Exhibit 3 hereto (GLAN 02170-73, 02156-59, 02160-65, 01963-4; 01986-92), including a statement about:

a. what the document purports to show, and

b. what the entries mean.

## INTERROGATORY NO. 11

Please explain each and every entry on the document that GMAC provided to Landay entitled "Seneca Sports Damages Calculation" (annexed hereto as Exhibit 5), and include the following details in your response:

a. Identify each and every document that GMAC consulted to prepare Exhibit 5.

b. Identify all persons that participated in the preparation of Exhibit 5.

c. Identify all documents that provide the underlying data for each figure on each line of each column of Exhibit 5.

d. As to the "Balance" column of Exhibit 5: (i) state what the figures in that column represent, including whether each figure purports to be the total amount of money allegedly owed to GMAC by the Borrowers on the date indicated in the far left column, and (ii) identify all the component parts of the Balance figures (e.g., principal, interest, charges, Letter of Credit etc.).

e.  State how GMAC arrived at the 10/22/01 Balance of $1,427,511.9 in Exhibit 5 and include in your answer: (i) the dollar amount attributable to principal, (ii) the dollar amount attributable to interest, and (iii) the dollar amounts and identity of all other charges and/or components parts of this balance figure.

f.  Reconcile the 10/22/2001 Balance figure in Exhibit 5 with the entries shown on GMAC's 10/22/01 Computer Screen that it provided to Borrowers (Exhibit 6 hereto). Include in your answer an explanation of the entries on Exhibit 6.

g.  As to the entries in the "Advances" column in Exhibit 5, explain what "advances" mean and, if these entries indicate money paid by GMAC to or on account of Seneca: (i) identity the persons or persons to whom such payments were made and for each payment, (ii) state the purpose of the payment, and (iii) state why GMAC was making advances with respect to a company that was no longer operating.

h.  As to the entries in the Collections/Paydowns column in Exhibit 5: (i) identify each source of collected money and the amount collected from that source, and (ii) explain and provided details concerning entries that appear to increase the loan balance (e.g. May, August, Sept and Oct 2002).

i.  Explain what the "Recovery" column in Exhibit 5 shows, particularly the March 2004 entry.

j.  As to the "Overadvance Charge" column in Exhibit 5, provide the following information:

   (i)   What is an "overadvance charge"?
   (ii)  Identify the language in the loan documents that permits each charge reflected in this column,
   (iii) As to each monthly overadvance charge listed, state whether you had made an overadvance to Borrowers in that month,
   (iv)  Explain how overadvance charges could be incurred by a business that was no longer taking advances from GMAC and was out of business,
   (v)   Explain why overadvance charges were charged to the loan through September 2003 and why they stopped after September 2003.

k.  Explain the entries in the "Commission Charges" column in Exhibit 5, including: (i) the identity of anyone who received commissions, (ii) the purpose of the commission, (iii) the persons who authorized the incurring of such charge, and (iv) the identity of the loan document provision that authorizes such charge.

14

l.  As to each entry in the "Bank Charges" column in Exhibit 5: (i) identify the bank to which the charges relate, and (ii) state the purpose for which the charge was incurred.

m. As to each entry in the "Legal" column in Exhibit 5: (i) state the purpose for which the charge was incurred and, if it reflects payments to lawyers, (ii) identify the lawyers, and (iii) describe the work performed.

n. As to each entry in the "Misc Charges" column in Exhibit 5: (i) identify each of the charges that comprise the monthly entry and for each such individual charge, (ii) state the reason it was incurred, and (iii) state the identity of the loan document provision that authorizes such charge.

o. Explain the "(14,405.00)" entry for August 2003 in the Misc. Charges column in Exhibit 5 and the September 2003 "14,405.00" entry that follows it, including: (i) to what do these entries relate, and (ii) why is one entry a positive and the other a negative?

**INTERROGATORY NO. 12**

With respect to the Platinum proposal discussed in Paragraphs 47 and 48 of Plaintiff's First Amended Complaint, please explain why GMAC did not accept the proposal and include the following information in your answer:

a. Identify all agents, servants and employees of GMAC who knew about the proposal.

b. Identify all persons who were involved in GMAC's decision concerning the proposal.

c. State whether the analysis in Exhibit 4 hereto (RAS 266-289) concerns the Platinum proposal.

d. If your answer to c. above is affirmative, state whether the author of that document was aware at the time of its preparation that the proposal called for Platinum to provide funding to Borrowers and to pay off the GMAC loan.

e. State the purpose of the analysis made in Exhibit 4.

**INTERROGATORY NO. 13**

With respect to Kathleen A. Pappalardo named in your Initial Disclosure Statement pursuant to Fed. R. Civ. P. 26 (a), state in detail the nature of her knowledge concerning the account histories of Borrowers, including but not limited to the following information:

15

a. Provide her current job description and state the dates that she has been employed in this position.

b. For every other position she has held at GMAC, provide a job description and the dates she was employed in that position.

c. State whether she had any responsibility for the liquidation if Borrowers' assets, and, if so, describe that responsibility.

d. State whether she had any responsibility for collections from the sale of Borrowers' assets, and, if so, describe her responsibilities.

e. State whether she had any responsibilities relating to the collection of Borrowers' accounts receivable and, if so, describe her responsibilities.

f. State whether she had any responsibility for crediting collections to the Borrowers' loan balance and, if so, describe those responsibilities.

g. State whether she had any responsibilities concerning charges made to Borrowers' loan and, if so, describe her responsibilities.

**INTERROGATORY NO. 14**

Provide the last-known addresses and telephone numbers of the former GMAC employees named in the First Amended Complaint and/or your Initial Disclosure Statement, to wit:

a. Jane Frangos,

b. John R. Fitzpatrick, and

c. Paul Fitzgerald.

**INTERROGATORY NO. 15**

Identify the present custodian of any documents relating to Borrowers, Landay and/or the transactions at issue in this litigation that had been in the possession of the above-listed former employees at the time of termination of employment.

**INTERROGATORY NO. 16**

Please provide the details concerning the loan balance Borrowers owed GMAC as of midnight of September 18, for each of the years 2001, 2002, 2003 and 2004, including but not limited to:

a.  the total loan balance as of that date,

b.  the dollar amount of the principal portion of that loan balance,

c.  the dollar amount of the interest portion of that loan balance, and

d.  the dollar amount of charges, fees, expenses or other costs included in the loan balance.

**INTERROGATORY NO. 17**

Please provide the details of the loan balance Borrowers owed GMAC as of the end of each month beginning September 30, 2000 to the end of the month just prior to the date this document is signed, including but not limited to:

a.  the total loan balance as of that date,

b.  the dollar amount of the principal portion of that loan balance,

c.  the dollar amount of the interest portion of that loan balance, and

d.  the dollar amount of charges, fees, expenses or other costs included in the loan balance.

Respectfully submitted,
DAVID L. LANDAY,
By his attorney,

*Alan R. Hoffman*
Alan R. Hoffman, BBO# 236860
Lynch, Brewer, Hoffman & Fink, LLP
101 Federal Street, 22nd Floor
Boston, MA 02110
(617) 951-0800

Dated: June 17, 2005

196020_1

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand) (mail) on June 17, 2005
*Alan R. Hoffman*

17