# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAVID L. LANDAY,                           )
                                           )
          Plaintiff,                       )
                                           )
     v.                                    )  C. A. NO. 04-CV-11955 WGY
                                           )
GMAC COMMERCIAL CREDIT, LLC and            )
GMAC COMMERCIAL FINANCE, LLC,              )
                                           )
          Defendants.                      )
_____    )

## RULE 16.1 JOINT STATEMENT

Plaintiff, David L. Landay ("Landay") and Defendant, GMAC Commercial

Finance LLC ("GMAC"), [1] by and through their attorneys, submit this Joint Statement in

accordance with this Court's orders dated February 3, 2005 and March 7, 2005 as well as

Local Rule 16.1(D).

I.       **PROPOSED PRE-TRIAL SCHEDULE**

The parties disagree as to what the pretrial schedule should be.

A.       The Plaintiff proposes the following schedule:

1.       Deadline for GMAC's motion to dismiss:  March 31, 2005

2.       Deadline for Landay's opposition to motion to dismiss:  April 21, 2005

3.       No responses to discovery due until the earlier of the Court's ruling on the

          motion to dismiss or May 15, 2005

4.       Amendments to pleadings due on or before:  July 1, 2005

---

[1]       The First Amended Complaint lists two separate defendants, GMAC Commercial Credit LLC, and
GMAC Commercial Finance LLC, and includes both names in the caption.  For the purposes of this Joint
Statement, Landay accepts GMAC's representation that it is the successor by merger of GMAC
Commercial Credit LLC and GMAC Business Credit LLC.

5.    Plaintiff's expert report due on or before:  November 1, 2005

6.    Defendant's expert report due on or before:  November 22, 2005

7.    Close of discovery:  December 15, 2005

8.    Deadline for motions for summary judgment:  December 15, 2005

9.    Final Pre-Trial Conference:  February, 2006

10.   Ready for Trial:  March, 2006

**B.    The Defendants propose the following schedule:**

1.    Deadline for GMAC's motion to dismiss:  March 31, 2005

2.    Deadline for Landay's opposition to motion to dismiss:  April 21, 2005

3.    No responses to discovery due until the earlier of the Court's ruling on the motion to dismiss or May 31, 2005

4.    Amendments to pleadings due on or before:  July 1, 2005

5.    Landay's expert report due on or before:  September 15, 2005

6.    Landay's expert to be made available for deposition before: September 30, 2005

7.    GMAC's expert report due on or before:  October 11, 2005

8.    Close of discovery:  October 28, 2005

9.    Deadline for motions for summary judgment:  November 23, 2005

10.   Final Pre-Trial Conference:  February, 2006

11.   **Ready for Trial:  March, 2006**

## II.    PRE-TRIAL SCHEDULE/THE NEW YORK ACTION

On or about October 25, 2002, GMAC's predecessor-in-interest, GMAC Commercial Credit LLC filed a Verified Complaint against Landay in the Supreme Court for the State of New York, New York County ("the New York Action"). Both parties are represented by different counsel in the New York Action.

Based on his experience with GMAC's discovery responses in the New York action, Landay anticipates the need for motion practice in order to obtain full disclosure from GMAC. Landay believes that the early discovery deadlines proposed by GMAC are unrealistic and do not provide sufficient time (a) for resolution of expected discovery disputes or (b) for full analysis of complicated financial records once they are produced by GMAC. Landay believes that the deadlines he suggests allow for making a summary judgment motion sufficiently in advance of trial for the Court to give it due consideration; the earlier deadlines suggested by GMAC are not necessary to accomplish this. Moreover, Landay believes that a case of this nature is not a good candidate for summary judgment, in any event, and that full discovery should not be sacrificed because a party hopes to make such motion.

GMAC contends that the parties' discovery experiences in the New York Action should have no bearing on the discovery schedule adopted for this case. For its part, GMAC believes that the discovery schedule should be structured in such a manner that the parties can submit and argue motions for summary judgment sufficiently in advance of the pre-trial conference to afford the Court with a realistic opportunity to rule on any such motions prior to the pre-trial conference. GMAC does not believe that Landay's proposed schedule achieves this objective. Landay disagrees.

By order dated May 25, 2004, the New York court granted GMAC's motion for partial summary judgment in the New York Action.  Since GMAC believes that the claims asserted by Landay in this case are identical to the counterclaims and defenses asserted by Landay in the New York Action, it intends to move to dismiss this action on the grounds that:  1)  the applicable loan documents require any action brought by Plaintiff to be adjudicated in New York;  2)  that the terms of the applicable loan documents on their face bar Plaintiff's claims;  3) that even if the loan documents did not bar this action, this Court should abstain from exercising jurisdiction under the <u>Colorado River</u> doctrine.  <u>See Colorado River Water Conservation Dist. v. United States,</u> 424 U.S. 800 (1976); and  4)  by virtue of the New York Court's ruling, Landay is estopped from asserting the claims that he attempts to raise in this action.  Landay disagrees with GMAC's interpretation of the New York court's May 25, 2004 order and intends to vigorously oppose, GMAC's motion to dismiss.  GMAC wishes to avoid the expenditure of time and money associated with discovery until after this Court rules on its motion to dismiss.

**III.    MISCELLANEOUS DISCOVERY ISSUES**

     **A.    Location of Depositions:**  The parties agree that:

1)    Landay will be deposed in Boston.

2)    GMAC will make its employees (including Rule 30(b)(6) designees) available for deposition in either Boston or New York, at its discretion.  This agreement does not extend to former employees, agents or independent contractors.

3)    All other deposition witnesses may be deposed in any location where they are subject to subpoena or in such other location as counsel to Landay, GMAC and any third party witness may otherwise agree.

**B.    Real Time Transcription of Depositions:** The parties agree that all depositions may be transcribed using real time technology.

**C.    Video Recording of Depositions:** The parties agree that they will be permitted to videotape any deposition provided that the party noticing the deposition gives all other parties twenty-one days' notice of the intention to videotape the deposition.

## IV.    **OTHER ELEMENTS**

**A.**    The parties do not consent to a trial by a magistrate judge.

**B.**    Both parties have submitted fully executed Rule 16.1 Certificates to the Court.

**C.**    Landay presented a written settlement proposal to GMAC on February 25, 2005.  GMAC has rejected said offer.

**D.**    The parties have agreed to conduct ADR before Magistrate Judge Collings in April.

Respectfully submitted,

DAVID L. LANDAY,
By his attorney,

March 21, 2005

_Alan R. Hoffman_

Alan R. Hoffman, BBO# 236860
Lynch, Brewer, Hoffman & Fink, LLP
101 Federal Street, 22nd Floor
Boston, MA 02110
(617) 951-0800


GMAC COMMERCIAL FINANCE LLC,
By its attorneys,

March 21, 2005

_John A. Houlihan_

John A. Houlihan (BBO# 542038)
Mark B. Dubnoff (BBO# 637212)
EDWARDS & ANGELL, LLP
101 Federal Street
Boston, MA 02110
(617) 439-4444

191647_1

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID L. LANDAY ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-cv-11955-WGY |
| ) | |
| GMAC COMMERCIAL CREDIT LLC ) | |
| and GMAC COMMERCIAL FINANCE ) | |
| LLC, ) | |
|     Defendants. ) | |

## GMAC COMMERCIAL FINANCE LLC'S RESPONSE TO
## LANDAY'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant GMAC Commercial Finance LLC ("GMACCF" or "Defendant"),[1] responds and objects to the first request for production of documents propounded by Plaintiff David L. Landay ("Landay" or "Plaintiff") as follows.

### GENERAL OBJECTIONS

Defendant makes the following General Objections (the "General Objections") to Plaintiff's document requests. These General Objections are incorporated by reference into Defendant's response to each and every individual document request, to the extent applicable whether or not specifically stated in any individual response.

1.    Defendant objects to these document requests or any specific document request to the extent that they require Defendant to exceed its obligations under the Federal Rules of Civil Procedure.

---

[1] The First Amended Complaint lists two separate defendants, GMAC Commercial Credit LLC, and GMAC Commercial Finance LLC, and includes both names in the caption. In actuality, GMAC Commercial Finance LLC is the successor by merger of GMAC Commercial Credit LLC and GMAC Business Credit LLC.

2.    Defendant objects to any document request to the extent that it seeks discovery of privileged information or non-discoverable attorney work product pursuant to Fed. R. Civ. P. 26(b)(3) or (b)(4).

3.    Defendant objects to Plaintiff's instruction regarding the contents of a privilege log as it would require Defendant to exceed its obligations under Fed. R. Civ. P. 26(b)(5).

4.    Defendant objects to Plaintiff's general instruction regarding missing or destroyed documents as it would require Defendant to exceed its obligations under the Federal Rules of Civil Procedure.

5.    Responses to Plaintiff's document requests are qualified by the objections, whether general or specific, asserted herein.  Responses to document requests do not waive any objections asserted.

## Specific Responses

### REQUEST NO. 1

All documents referring, reflecting or relating to the funding of the loan GMAC made to the Borrowers pursuant to the Factoring Agreement dated September 19, 2000, including but not limited to:

a.  All documents showing the date funds were first provided by GMAC to Seneca and/or Brookfield;

b.  All documents showing the amount of the funds initially provided by GMAC to Seneca and/or Brookfield;

c.  All documents showing the dates and/or amounts of funds that GMAC provided to Seneca and/or Brookfield in the period September 1, 2000 to date.

### RESPONSE TO REQUEST NO. 1

GMACCF specifically objects to Request No. 1 on the grounds that it seeks information relating to counts that have been dismissed from the lawsuit and, therefore, is

- 2 -

not reasonably calculated to lead to the discovery of admissible evidence. GMACCF further objects to Request No. 1 on the grounds that it is vague and ambiguous, overbroad and unduly burdensome. Subject to and without waiving its objections, GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 2

All documents referring, reflecting or relating to any filing made pursuant to M.G.L. 271, Section 49 concerning GMAC's transactions with Seneca and/or Brookfield and/or Landay, including without limitation, all documents showing the date of any such filing.

RESPONSE TO REQUEST NO. 2

GMACCF specifically objects to Request No. 2 on the grounds that it is vague and ambiguous, especially with regard to its reference to "any filing made pursuant to M.G.L. 271, Section 49." Subject to and without waiving its objections, GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 3

All records that GMAC was required to maintain pursuant to M.G.L. 271, Section 49.

RESPONSE TO REQUEST NO. 3

GMACCF specifically objects to Request No. 3 on the grounds that it calls for a legal conclusion regarding "records that GMAC was required to maintain pursuant to M.G.L. 271, Section 49." GMACCF further objects to Request No. 3 on the grounds that it is vague and ambiguous and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, GMACCF states that

BOS_498139_1/MDUBNOFF

the documents that it will produce to Landay for inspection may include some documents responsive to Request No. 3

REQUEST NO. 4

For the period September 1, 2000 through and including October 22, 2001: All documents referring, reflecting or relating to the interest and/or charges and/or costs and/or fees and/or expenses that GMAC charged Seneca and/or Brookfield and/or Landay on account of funds provided to Borrowers by GMAC, including without limitation:

a.  All documents reflecting entries for interest, charges, fees, expenses or other costs;

b.  All documents showing the calculation of interest, charges, fees, expenses or other costs;

c.  All documents providing the basis for the interest, charges, fees, expenses or other costs calculated, such as documents that show customer refunds that result in a charge-backs to the loan.

RESPONSE TO REQUEST NO. 4

GMACCF specifically objects to Request No. 4 on the grounds that it seeks information relating to counts that have been dismissed from this lawsuit and, therefore, is not reasonably calculated to lead to the discovery of admissible evidence. GMACCF further objects to Request No. 4 on the grounds that it is vague and ambiguous, particularly with regard to its reference to "a charge-backs," and is duplicative of other requests. Subject to and without waiving its objections, GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 5

For the period October 23, 2001 to date: All documents referring, reflecting or relating to the interest and/or charges and/or costs and/or fees and/or expenses that GMAC charged to Seneca and/or Brookfield and/or Landay on account of funds provided to Borrowers by GMAC, including without limitation:

BOS_498139_1/MDUBNOFF

a.  All documents reflecting entries for interest, charges, fees, expenses or other costs;

b.  All documents showing the calculation of interest, charges, fees, expenses or other costs;

c.  All documents providing the basis for the interest, charges, fees, expenses or other costs calculated, such as documents that show customer refunds that result in a charge.

RESPONSE TO REQUEST NO. 5

GMACCF specifically objects to Request No. 5 on the grounds that it seeks information relating to counts that have been dismissed from this lawsuit because such information is not reasonably calculated to lead to the discovery of admissible evidence. GMACCF further objects to Request No. 5 on the grounds that it is vague and ambiguous and duplicative of other requests.  Subject to and without waiving its objections, GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 6

For the period September 1, 2000 to date, all documents referring, reflecting or relating to Borrowers' debt to GMAC, including but not limited to:

a.  The monthly GMAC accounting called for by Section 6 of the Factoring Agreement;

b.  Any and all monthly statements;

c.  Any and all daily statements;

d.  The daily computer "screens" generated by GMAC and provided to Borrowers on the period September 1, 2000 through and including October 23, 2001;

e.  All daily computer screens generated by GMAC since October 23, 2001.

## RESPONSE TO REQUEST NO. 6

GMACCF specifically objects to Request No. 6 on the grounds that it seeks information relating to counts that have been dismissed from this lawsuit and, therefore, is not reasonably calculated to lead to the discovery of admissible evidence. GMACCF further objects to Request No. 6 on the grounds that it is vague, ambiguous, overbroad and unduly burdensome. Subject to and without waiving its objections, GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

## REQUEST NO. 7

For the period September 1, 2000 through October 23, 2001, all documents referring, reflecting or relating to payments made by or on account of Borrowers to GMAC, including but not limited to:

    a.   payments made directly by Borrowers to GMAC;

    b.   collections made by GMAC from customers of Borrowers;

    c.   money paid by Landay to GMAC for the account of the Borrowers;

    d.   collections made by GMAC from assets pledged by Landay bookkeeping entries reflecting the foregoing.

## RESPONSE TO REQUEST NO. 7

GMACCF specifically objects to Request No. 7 on the grounds that it seeks information relating to counts that have been dismissed from this lawsuit and, therefore, is not reasonably calculated to lead to the discovery of admissible evidence. GMACCF further objects to Request No. 7 on the grounds that it is vague, ambiguous, overbroad and unduly burdensome. Subject to and without waiving its objections, GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 8

For the period September 1, 2000 through and including October 22, 2001, all documents referring, reflecting or relating to the amount of money GMAC claims it was owed by debtors on October 22, 2001, including but not limited to documents showing or reflecting the calculation of the sums allegedly owed.

RESPONSE TO REQUEST NO. 8

GMACC specifically objects to Request No. 8 on the grounds that it is vague and ambiguous, especially with regard to its reference to "debtors," since GMACCF has numerous debtors unrelated to this litigation. For this reason, GMACCF further objects to Request No. 8 on the grounds that it is overbroad and unduly burdensome and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 9

For the period October 23, 2001 to date, all documents referring, reflecting or relating to money received by GMAC on account of the loan to Borrowers, including but not limited to:

a. collections by GMAC from customers of Borrowers;

b. collections by GMAC from assets pledged by Landay;

c. collections from the sale of Borrowers' assets;

d. bookkeeping entries reflecting such receipts.

RESPONSE TO REQUEST NO. 9

GMACCF specifically requests to Request No. 9 on the grounds that it is vague and ambiguous. Subject to and without waiving its objections, GMACCF states that it

will produce responsive documents, if any, for inspection at the offices of GMACCF's

counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 10

For the period October 23, 2001 to date, all documents referring, reflecting or relating to the amount of money GMAC claims it is now owed by the Borrowers, including but not limited to documents showing or reflecting the calculation of the sums allegedly owed.

RESPONSE TO REQUEST NO. 10

GMACCF will produce responsive documents, if any, for inspection at the offices

of GMACCF's counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 11

For the period September 1, 2000 to date, all documents referring, reflecting or relating to the amount of money GMAC claims it is owed by Landay on account of his guaranty of GMAC's loan to the Borrowers, including without limitation documents showing or reflecting the calculation of the sums allegedly owed.

RESPONSE TO REQUEST NO. 11

GMACCF will produce responsive documents, if any, for inspection at the offices

of GMACCF's counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 12

For the period September 1, 2000 to date, all documents referring, reflecting or relating to the accounts receivable of the Borrowers, including but not limited to:

    a.  the weekly accounts receivable listing provided to GMAC by Borrowers in the period September 2000 through October 22, 2001;

    b.  Borrowers' invoices to customers, copies of which were provided to GMAC daily;

    c.  documents showing the accounts receivable as of October 22, 2001, including documents showing the customer and amount owed by such customer;

    d.  documents relating to the collection of accounts receivable by GMAC after October 22, 2001, including documents showing the customer, the amount owed by such customer and the amount collected from such customer;

- 8 -

    e.   accounts receivable listings prepared by and/or maintained by GMAC;

    f.   documents concerning payments made by customers of Borrowers, including but not limited to correspondence, forms or other documents accompanying such payments;

    g.   bookkeeping entries made by GMAC, including but not limited to those reflecting or relating to receipt of payments of accounts receivable;

    h.   correspondence with Borrowers' customers.

RESPONSE TO REQUEST NO. 12

GMACCF specifically objects to Request No. 12 to the extent it assumes facts not in evidence, including but not limited to Landay's claim that the Borrowers provided GMACCF with weekly accounts receivable listings and daily copies of invoices sent to customers. GMACCF further objects to Request No. 12 on the grounds that it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 13

For the period September 1, 2000 to date, all documents referring, reflecting or relating to Borrowers' inventory, including but not limited to:

    a.   the weekly inventory reports provided to GMAC by Borrowers in the period September 1, 2000 through October 22, 2001;

    b.   inventory listings prepared by and/or maintained by GMAC;

    c.   documents showing the inventory as of October 22, 2001;

    d.   documents referring, reflecting or relating to fulfillment of orders that were outstanding on October 22, 2001;

    e.   documents referring, reflecting or relating to the sale of Borrowers' inventory by GMAC, including but not limited to any offers to purchase inventory;

    f.   documents referring, reflecting or relating to the return of inventory;

BOS_498139_1/MDUBNOFF

g.   bookkeeping entries made by GMAC referring, reflecting or relating to the sale of Borrowers' inventory and/or the return of inventory;

h.   the location of Borrowers' inventory, including inventory of which GMAC took possession on October 22, 2001 but has not sold to date.

<u>RESPONSE TO REQUEST NO. 13</u>

GMACCF specifically objects to Request No. 13 to the extent it assumes facts not in evidence, including but not limited to Landay's claim that the Borrowers provided GMACCF with weekly inventory reports.  GMACCF further objects to Request No. 13 on the grounds that it is overbroad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving its objections, GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

<u>REQUEST NO. 14</u>

For the period September 1, 2000 to date, all documents referring, reflecting or relating to Borrowers' assets other than inventory and accounts receivable, including but not limited to:

a.   The periodic Hard Asset listing provided by Borrowers to GMAC;

b.   Documents referring, reflecting or relating to Borrowers' intellectual property, including, patents, trademarks and trade names, including, but not limited to, copies of all governmental filings, all drawings and illustrations, all correspondence and all lists of such property;

c.   Documents referring, reflecting or relating to the location of Borrowers' assets since October 23, 2001;

d.   Documents referring, reflecting or relating to the sale of any of Borrowers' assets by GMAC, including communications or other documents concerning any offers to purchase assets;

e.   GMAC bookkeeping entries that refer, reflect or relate to the sale of any of Borrowers' assets.

BOS_498139_1/MDUBNOFF

RESPONSE TO REQUEST NO. 14

GMACCF specifically objects to Request No. 14 to the extent it assumes facts not in evidence, including but not limited to Landay's claim that the Borrowers provided GMACCF with a "periodic Hard Asset listing." Subject to and without waiving its objections, GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 15

All documents referring, reflecting or relating to GMAC's efforts to sell Borrowers' assets and/or collect outstanding accounts receivable.

RESPONSE TO REQUEST NO. 15

GMACCF will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 16

All documents referring, reflecting or relating to the accounting GMAC promised the Borrowers and Landay in a letter dated October 24, 2001, (admitted by GMAC in paragraph 54 of its Answer in this action), including but not limited all documents referring, reflecting or relating to GMAC's failure to provide such accounting to date (also admitted by GMAC in paragraph 57 of its Answer).

RESPONSE TO REQUEST NO. 16

GMACCF specifically objects to Request No. 16 on the grounds that it seeks information relating to counts that have already been dismissed from this lawsuit and, therefore, is not reasonably calculated to lead to the discovery of admissible evidence. GMACCF further objects to Request No. 16 on the grounds that it is vague and ambiguous and assumes facts not in evidence. Subject to and without waiving its objections, GMACCF states that it will produce responsive documents, if any, for

inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

## REQUEST NO. 17

All documents referring, reflecting or relating to the Factoring Agreement, including but not limited to communications between Landay and Paul Fitzgerald of GMAC's Boston office and communications between Landay and Jane Frangos of GMAC's New York office.

## RESPONSE TO REQUEST NO. 17

GMACCF specifically objects to Request No. 17 on the grounds that it seeks information relating to claims that already have been dismissed from this lawsuit and, therefore, is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

## REQUEST NO. 18

All documents referring, reflecting or relating to Landay's Guaranty, including but not limited to representations made by Paul Fitzgerald, communications between Fitzgerald and Landay, and communications between Frangos and Landay.

## RESPONSE TO REQUEST NO. 18

GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

## REQUEST NO. 19

All documents referring, reflecting or relating to Standby Letters of Credit provided by Landay to GMAC, including but not limited to:

    a.  All Standby Letters of Credit and copies thereof;

b. All documents referring, reflecting or relating to GMAC's collection of funds pursuant to Landay's Standby Letters of Credit;

c. All GMAC bookkeeping entries referring, reflecting or relating to its collection of the funds;

d. As to the $4,1000,000 Standby Letter of Credit provided by Landay in 2000: all documents referring, reflecting or relating to representations made by Fitzgerald to Landay; communications between Fitzgerald and Landay; communications between Frangos and Landay; communications between Fitzgerald and Frangos; communications between and among Fitzgerald and others at GMAC; communications between and among Frangos and others at GMAC; communications to with and among GMAC personnel, including GMAC committee members and committee reports;

e. As to the $250,000 Standby Letter of Credit provided by Landay in 2001 and all extensions thereof: all documents referring, reflecting or relating to representations made by Fitzgerald to Landay; communications between Fitzgerald and Landay; communications between Frangos and Landay; communications between Fitzgerald and Frangos; communications between and among Fitzgerald and others at GMAC; communications between and among Frangos and others at GMAC; communications to with and among GMAC personnel, including GMAC committee members and committee reports.

## RESPONSE TO REQUEST NO. 19

GMACCF specifically objects to Request No. 19 on the grounds that it is overbroad, unduly burdensome and refers to a non-existent $4,1000,000 Standby Letter of Credit. Subject to and without waiving its objections, GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

## REQUEST NO. 20

All documents referring, reflecting or relating to any "Seasonal Overadvance" to Borrowers, including but not limited to: communications between Fitzgerald and Landay; communications between Frangos and Landay; communications between Fitzgerald and Frangos; communications between and among Fitzgerald and others at GMAC; communications between and among Frangos and others at GMAC; communications to, with and among GMAC personnel, including GMAC committee members and committee reports.

RESPONSE TO REQUEST NO. 20

GMACCF specifically objects to Request No. 20 on the grounds that it seeks information relating to counts that have already been dismissed from this lawsuit and, therefore, is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 21

All documents referring, reflecting or relating to the Subordination Agreement between Landay and GMAC (admitted by GMAC in Paragraph 15 of its Answer), including without limitation, notices (if any) to Landay in his capacity as a subordinated creditor made by GMAC prior to and/or following GMAC's seizure of the assets of the Borrowers.

RESPONSE TO REQUEST NO. 21

GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 22

All documents referring, reflecting or relating to the Forbearance Agreement and/or the financial plan annexed to and incorporated into it, including without limitation, communications with Borrowers, communications with Landay, communications between and among GMAC personnel, reports to and from committees, committee minutes.

RESPONSE TO REQUEST NO. 22

GMACCF specifically objects to Request No. 22 on the grounds that it seeks information relating to counts that already have been dismissed from this lawsuit and, therefore, is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, GMACCF states that it will produce

responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 23

All documents referring, reflecting or relating to the schedules in the financial plan incorporated in the Forbearance Agreement, including without limitation, documents concerning any request by Borrowers or Landay for changes to the schedules, either before or following execution of the Forbearance Agreement.

RESPONSE TO REQUEST NO. 23

GMACCF specifically objects to Request No. 23 on the grounds that it seeks information relating to counts that already have been dismissed from this lawsuit and, therefore, is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 24

All documents referring, reflecting or relating to the payment of Borrowers' expenses by Landay personally, including but not limited to any communications between Frangos and Landay.

RESPONSE TO REQUEST NO. 24

GMACCF specifically objects to Request No. 24 on the grounds that it assumes facts not in evidence. GMACCF specifically objects to Request No. 24 on the grounds that it relates to counts that already have been dismissed from this lawsuit and, therefore, is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 25

All documents referring, reflecting or relating to the Amendment of Guaranty, including without limitation communications with Landay and/or representations made to him by GMAC personnel, including Frangos.

RESPONSE TO REQUEST NO. 25

GMACCF objects to Request No. 25 on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 26

All documents referring, reflecting or relating to the $1,000,000 cash deposit made by Landay in the name of GMAC, including without limitation, all communications concerning that $1,000,000 of additional collateral, documents evidencing the $1,000,000 deposit in the name of GMAC, documents showing GMAC's collection of the $1,000,000 from that account, bookkeeping entries by GMAC relating to collection of that $1,000,000.

RESPONSE TO REQUEST NO. 26

GMACCF objects to Request No. 26 on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 27

All documents referring, reflecting or relating to GMAC's declaring Borrowers in default and calling due the loan, including but not limited to documents generated during GMAC's decision-making process.

RESPONSE TO REQUEST NO. 27

GMACCF specifically objects to Request No. 27 on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence and is vague and ambiguous, especially with regard to its reference to "GMAC's decision-making process." Subject to and without waiving its objections, GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 28

All documents referring, reflecting or relating to any proposal by Landay and/or Borrowers to obtaining financing from another source that would pay off all or part of the GMAC loan, including but not limited to a proposal that involved financing from Platinum Credit Corp.

RESPONSE TO REQUEST NO. 28

GMACCF specifically objects to Request No. 28 on the grounds that it is vague and ambiguous and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 29

All GMAC internal reports concerning the loan to Borrowers, including all loan committee reports.

RESPONSE TO REQUEST NO. 29

GMACCF specifically objects to Request No. 29 on the grounds that it seeks information relating to counts that already have been dismissed from this lawsuit and, therefore, is not reasonably calculated to lead to the discovery of admissible evidence. GMACCF further objects to Request No. 29 on the grounds that it is vague and

ambiguous.  Subject to and without waiving its objections, GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 30

All GMAC internal reports concerning Landay's Guaranty, including loan committee reports.

RESPONSE TO REQUEST NO. 30

GMACCF specifically objects to Request No. 30 on the grounds that it is vague and ambiguous.  Subject to and without waiving its objections, GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 31

All documents described by GMAC in the 11 categories listed in Disclosure B of GMAC's F.R.Civ.P.26(a)(1) Initial Disclosure Statement Dated March 25, 2005.

RESPONSE TO REQUEST NO. 31

GMACCF states that it will produce responsive documents, if any, for inspection at the offices of GMACCF's counsel at a time mutually convenient to the parties' counsel.

REQUEST NO. 32

All the books and records of Borrowers.

RESPONSE TO REQUEST NO. 32

GMACCF specifically objects to Request No. 32 on the grounds that it is vague and ambiguous.  Subject to and without waiving its objections, GMACCF states that it

BOS_498139_1/MDUBNOFF

will produce responsive documents, if any, for inspection at the offices of GMACCF's

counsel at a time mutually convenient to the parties' counsel.

Respectfully submitted,

GMAC COMMERCIAL FINANCE
LLC

John A. Houlihan (BBO # 542038)
Mark B. Dubnoff (BBO # 637212)
Edwards & Angell, LLP
101 Federal Street
Boston, MA  02110
(617) 439-4444

**<u>Certificate of Service</u>**

I, Mark B. Dubnoff, hereby certify that on this 29th day of July, 2005, I caused a copy of the foregoing document to be sent by first-class mail, postage prepaid, to Alan R. Hoffman, Lynch, Brewer, Hoffman & Fink, LLP, 101 Federal Street, Boston, MA 02110, counsel for David L. Landay.

Mark B. Dubnoff

BOS_498139_1/MDUBNOFF

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID L. LANDAY<br>    Plaintiff,<br><br>v.<br><br>GMAC COMMERCIAL CREDIT LLC<br>and GMAC COMMERCIAL FINANCE<br>LLC,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 04-cv-11955-WGY |

## GMAC COMMERCIAL FINANCE LLC'S RESPONSE
## TO LANDAY'S FIRST SET OF INTERROGATORIES

Defendant GMAC Commercial Finance LLC ("GMACCF" or "Defendant"),[1] objects and responds to the first set of interrogatories propounded by Plaintiff David L. Landay ("Landay" or "Plaintiff") as follows.

### GENERAL OBJECTIONS

Defendant makes the following General Objections (the "General Objections") to Plaintiff's interrogatories. These General Objections are incorporated by reference into Defendant's response to each and every individual interrogatory, to the extent applicable whether or not specifically stated in any individual response.

1.    Defendant objects to these interrogatories or any specific interrogatory to the extent that they or it require Defendant to exceed its obligations under the Federal Rules of Civil Procedure.

---

[1]    The First Amended Complaint lists two separate defendants, GMAC Commercial Credit LLC, and GMAC Commercial Finance LLC, and includes both names in the caption. In actuality, GMAC Commercial Finance LLC is the successor by merger of GMAC Commercial Credit LLC and GMAC Business Credit LLC.

2.      Defendant objects to any interrogatory to the extent that it seeks discovery of privileged information or non-discoverable attorney work product pursuant to Fed. R. Civ. P. 26(b)(3) or (b)(4).

3.      Defendant objects to Plaintiff's proposed definitions of various terms, such as "Document," set forth in the Introduction and Definitions section of Plaintiff's First Set of Interrogatories to the extent those proposed definitions would differ from the Uniform Definitions in Discovery Requests set forth in Local Rule 26.5(C) of this Court.  Defendant will apply the definitions set forth by this Court in its local rules.

4.      Defendant objects to Plaintiff's interrogatories to the extent that they exceed the numerical limitations imposed by Fed. R. Civ. P. 33(a) and Local Rule 26.1(C).  According to the rules, Plaintiff is limited to propounding twenty-five (25) interrogatories on the Defendant and "cannot evade this presumptive limitations through the device of joining as 'subparts' questions that seek information about discrete separate subjects." Fed. R. Civ. P. 33(a), advisory committee's note.   Plaintiff has violated these rules by propounding far in excess of 25 interrogatories, notwithstanding its numbering of only 17 interrogatories.  For example, what Plaintiff has labeled "Interrogatory No. 1" actually consists of no fewer than eight (8) separate interrogatories.   Similarly, "Interrogatory No. 2" actually consists of no fewer than ten (10) separate interrogatories, and "Interrogatory No. 3" actually consists of no fewer than nine (9) separate interrogatories.   Arguably, they each consist of many more separate interrogatories. Thus, Landay has exceeded his limit on interrogatories before even reaching what he has labeled "Interrogatory No. 4."  Accordingly, Defendant is not obligated to respond to "Interrogatory No. 4" through "Interrogatory No. 17," most of which are also objectionable compound interrogatories, and will not do so.  Before filing this Response, Defendant invited Plaintiff to

amend his First Set of Interrogatories to comply with the numerical limits imposed by the Rules, but Plaintiff refused.

5.      Responses to Plaintiff's interrogatories are qualified by the objections, whether general or specific, asserted herein.  Responses to interrogatories do not waive any objections asserted.

**Specific Responses**

**INTERROGATORY NO. 1**

1.  Please describe GMAC's record retention policy and how it relates to documents concerning the Borrowers and Landay.  Please include the following in your answer:

    a.  State whether or not GMAC has destroyed or otherwise disposed of any documents that relate to Landay and/or his guaranty and/or the loan to Borrowers to which the Guaranty relates (including the correspondence and transmission documents GMAC received on a daily basis that identified the customer invoices to which collections related) and, if so,

        i.    Identify the documents,
        ii.   State the date of disposition,
        iii.  State the means of disposition,
        iv.   Identify all persons that authorized that disposition, and
        v.    Identify all persons with knowledge concerning the disposition.

    b.  State whether or not GMAC has destroyed or otherwise disposed of Borrowers' books and records that it seized on October 22, 2001, and if so,

        i.    Identify the documents,
        ii.   State the date of disposition,
        iii.  State the means of disposition,
        iv.   Identify all persons that authorized the disposition, and
        v.    Identify all persons with knowledge concerning the disposition.

    c.  If GMAC has not disposed of the books and records it seized from Borrowers on October 22, 2001, state the location of such documents and identify persons having custody or control of such documents.

    d.  Identify persons familiar with GMAC's record retention policy.

    e.  State whether or not GMAC maintains a computerized version of documents and, if so, whether you have information related to the Borrowers and/or Landay stored in computers and/or in some format other than hard-copy.

f.  If your response to subsection e. is affirmative, state how such records can be accessed and whether or not hard-copies can be made.

g.  Describe the steps GMAC took to comply with the requirements of M.G.L. 271, Section 49.

h.  State the current location of documents that GMAC was required to maintain pursuant to M.G.L. 217, Section 49 and, if GMAC no longer has such records in its possession, custody or control, state:

    i.    The date such documents left the possession, custody or control of GMAC,

    ii.    The means such documents left GMAC's possession, custody or control,

    iii.    The last-known location of such documents,

    iv.    The identity of their last-known custodian,

    v.    The identity of all persons that authorized their removal from the possession, custody or control of GMAC,

    vi.    The identity of all persons with knowledge of GMAC's disposition of such documents,

    vii.    Whether or not GMAC authorized the destruction of these documents and, if so, state the date they were destroyed, the identity of the persons that authorized the destruction, and the identity of all persons with knowledge of their destruction.

## RESPONSE TO INTERROGATORY NO. 1

GMACCF specifically objects to Interrogatory No. 1 on the grounds that it is compound in nature and actually consists of no fewer than eight (8) separate interrogatories. Each of the purported subparts, identified by the letters "a" through "h," seeks information about discrete separate subjects, and, therefore, will be treated as a separate interrogatory for purposes of applying the numerical limitations imposed by Fed. R. Civ. P. 33(a) and Local R. 26.1(C).

GMACCF also objects to Landay's request in the introductory paragraph of "Interrogatory No. 1" that GMACCF "describe" its "record retention policy and how it relates to documents concerning the Borrowers and Landay" because such a request is vague, especially insofar as it implies that there is one "policy" that applies equally to all GMACCF records; it is overbroad and unduly burdensome, especially insofar as it would seek information regarding the

retention of records unrelated to the Commercial Services (Factoring) division and/or the Operations Department; and it seeks information that is confidential and proprietary. Subject to and without waiving its general or specific objections, GMACCF responds to the introductory paragraph of "Interrogatory No. 1" as follows:

GMACCF is willing to provide Landay's counsel with a copy of its record retention policy for the Commercial Services division and/or the Operations Department upon execution of an attorneys' eyes only agreement that would ensure its continued confidentiality. Counsel for GMACCF can negotiate the terms of such an agreement with Landay's agreement.

## RESPONSE TO "INTERROGATORY NO. 1a."

GMACCF specifically objects to what Landay has labeled subpart "a" of "Interrogatory No. 1" on the grounds that "otherwise disposed of" is vague and ambiguous; that it is not reasonably calculated to lead to the discovery of admissible evidence; and that it is predicated on factual assertions that have yet to be proven, such as Landay's statement that GMACCF received correspondence and transmission documents on a daily basis that identified the customer invoices to which collections related. Subject to and without waiving its general or specific objections, GMACCF responds to "Interrogatory No. 1a" as follows:

GMACCF has not knowingly destroyed any documents relating to Landay and/or his guaranty and/or the loan to the Borrowers to which the Guaranty relates. While it is possible that some responsive documents or copies thereof have been accidentally misplaced or discarded, such conduct would not have been undertaken pursuant to any GMACCF policy or practice. In light of the foregoing, subparts (i) through (v) of "Interrogatory No. 1a" are not applicable and require no additional response.

**RESPONSE TO "INTERROGATORY NO. 1b."**

GMACCF also specifically objects to what Landay has labeled subpart "b" of "Interrogatory No. 1" on the grounds that the terms "otherwise disposed of" and "books and records" are vague and ambiguous; it is unduly burdensome; and it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its general or specific objections, GMACCF responds to "Interrogatory No. 1b" as follows:

GMACCF has not knowingly destroyed any records that it obtained from the Borrowers on or about October 22, 2001. While it is possible that some documents that it obtained from the Borrowers on or about October 22, 2001 or copies thereof have been accidentally misplaced or discarded, such conduct would not have been undertaken pursuant to any GMACCF policy or practice. GMACCF also refers Landay to the deposition transcript of John Rijo of RAS Management Advisers, Inc. ("RAS"), who was deposed in connection with the lawsuit that GMACCF filed against Landay in the Supreme Court of the State of New York, in a case docketed at Case No. 602338/02 (the "New York Action"). GMACCF specifically directs Landay's attention to the following portions of the transcript: Page 26, Line 16 through Page 28, Line 15, and Page 79, Line 11 through Page 81, Line 9. In light of the foregoing, subparts (i) through (v) of "Interrogatory No. 1b" are not applicable and require no additional response.

**RESPONSE TO "INTERROGATORY NO. 1c."**

GMACCF also specifically objects to what Landay has labeled subpart "c" of "Interrogatory No. 1" on the grounds that the terms "disposed of" and "books and records" are vague and ambiguous; and that it is compound in nature. Subject to and without waiving its general or specific objections and notwithstanding its compound nature, GMACCF will regard "Interrogatory No. 1c" as a single interrogatory and respond to it as follows:

BOS_498508_3.DOC/MDUBNOFF

To the best of GMACCF's knowledge, all of the records that GMACCF seized from the Borrowers on or about October 22, 2001, either have been produced to Landay in connection with the New York Action and this litigation or are still in the storage facility referenced by Mr. Rijo at his deposition. See GMACCF's Resp. to Int. No. 1b, above. The facility is called Armored Self-Storage and is located at 498 Fortune Blvd. in Milford, Mass.

## RESPONSE TO "INTERROGATORY NO. 1d."

GMACCF also specifically objects to what Landay has labeled subpart "d" of "Interrogatory No. 1" on the grounds that the term "familiar with" is vague and ambiguous; and because it is unduly burdensome, especially since the request is unlimited in time, geography or scope. Subject to and without waiving its general or specific objections, GMACCF responds to "Interrogatory No. 1d" as follows:

GMACCF's record retention policy is published on the company's intranet to all employees, so every GMACCF employee is arguably "familiar with" at least some aspect of the policy. There are different provisions addressing records maintained by different departments. It would be unduly burdensome for GMACCF to "identify" each and every one of its employees.

## RESPONSE TO "INTERROGATORY NO. 1e."

GMACCF also specifically objects to what Landay has labeled subpart "e" of "Interrogatory No. 1" on the grounds that the term "computerized version of documents" is vague and ambiguous, especially since it may or may not include microfiche; it is vague and ambiguous with regard to time and scope; and the interrogatory is compound in nature. Subject to and without waiving its general or specific objections and notwithstanding its compound nature, GMACCF will regard "Interrogatory No. 1e" as a single interrogatory and respond as follows:

- 7 -

GMACCF maintains compact disks ("CDs") that contain records of many electronic files that were once stored on its mainframe computer. Other computer files are stored on microfiche. Some of the documents that have been stored on either CDs or microfiche relate to the Borrowers and/or Landay.

## RESPONSE TO "INTERROGATORY NO. 1f."

GMACCF also specifically objects to what Landay has labeled subpart "f" of "Interrogatory No.1" on the grounds that it is vague and ambiguous, especially with regard to its use of the terms "records" and "hard-copies," and because it is compound in nature. Subject to and without waiving its general or specific objections and notwithstanding its compound nature, GMACCF will regard "Interrogatory No. 1f" as a single interrogatory and respond as follows:

A person seeking to access such records on a CD would need to know which CD to search, what computer codes have been assigned to various file categories stored on the CD, and what codes have been assigned to various clients or customers, such as the Borrowers and/or Landay. A person seeking to access records on microfiche would have to know precisely where to find the microfiche that might contain such records. Hard copies of retrieved files can be made.

## RESPONSE TO "INTERROGATORY NO. 1g."

GMACCF specifically objects to what Landay has called subpart "g" of "Interrogatory No. 1" on the grounds that it asks a fact witness to make a legal conclusion as to what the requirements of M.G.L. 271, Section 49 are; it is not reasonably calculated to lead to the discovery of admissible evidence, since M.G.L. 271, Section 49 has no applicability to any of the loan agreements in this case; and it is vague and ambiguous, especially with regard to its use of

BOS_498508_3.DOC/MDUBNOFF

the term "the steps."    Subject to and without waiving its general or specific objections, GMACCF responds to "Interrogatory No. 1g" as follows:

Even if M.G.L. 271, Section 49 had any applicability to this case, which it does not, GMACCF fully complied with its requirements because it did not charge usurious interest rates on the loans to the Borrowers.  As the document Bates numbered GLAN 01523 indicates, the interest that GMACCF charged on the loan was approximately 8.35% in the month ending November 30, 2001.  Similarly, the document Bated numbered GLAN 01527 indicates that the interest rate on the loans was approximately 8.09% in the month ending December 31, 2001.

Additionally, in response to a direct request from Seneca's counsel, GMACCF sent the document Bates numbered GLAN 01165 to the Massachusetts Attorney General's Office on or about September 19, 2000.

**RESPONSE TO "INTERROGATORY NO. 1h."**

GMACCF also objects to what Landay has labeled subpart "h" of "Interrogatory No. 1" on the grounds that it calls for a legal conclusion regarding the requirements under M.G.L. 217, Section 49 (which does not even exist); it is not reasonably calculated to lead to the discovery of admissible evidence, especially insofar as it seeks the "current location" of various documents; it is vague and ambiguous; it is overbroad insofar as it does not refer to this litigation; and it is compound in nature.  Subject to and without waiving its general or specific objections, and notwithstanding its compound nature, GMACCF will regard "Interrogatory No. 1h" as a single interrogatory and respond to it as follows:

GMACCF was not required to maintain any documents pursuant to a nonexistent provision of the Massachusetts General Laws.  To the extent that Landay intended to refer to M.G.L. 271, Section 49, GMACCF still did not have to maintain any documents.  However,

GMACCF has produced to Landay all non-privileged documents that it could find after a diligent search, which relate to Landay's usury allegation. None of the subparts of "Interrogatory No. 1h" is applicable.

## INTERROGATORY NO. 2

Please account for EACH and EVERY Account Receivable of the Borrowers that existed on October 22, 2001, when GMAC took charge of the assets of Borrowers. Include the following in your answer:

a. State the name of Borrower's customer that owed the account receivable.

b. State the amount owed on October 22, 2001.

c. State the amount collected by GMAC to date.

d. Describe the efforts made by GMAC to collect the receivable.

e. Identify all agents, servants or employees of GMAC responsible for collecting and receivable.

f. State the date or dates the receivable was collected by GMAC.

g. If the full amount owed by Borrowers' customer was not collected by GMAC, state the reason for the shortfall.

h. Identify all documents that reflect or relate to your response to subsection g. above.

i. Identify all documents on which the receivable is reflected and state where on the document (e.g., page, column heading and line number) the receivable is reflected.

j. Identify all documents on which the collection of the receivable is reflected and state where on the document (e.g., page, column heading and line number) the collection is reflected.

k. State whether the collection of such receivable was credited to Borrowers' and, if so, identify all documents on which such credit is reflected and state where on the document it appears.

l. State whether you have destroyed or otherwise disposed of any document that referred, reflected, or related to this receivable and, if so, identify such documents and state what became of them, including the date they ceased to exist.

m. State whether you maintain computerized records that contain information concerning Borrowers' accounts receivable and, if so, describe such records including but not limited to whether or not there are hard-copies of such records extant.

n.  State the location of the Accounts Receivable records that Borrowers maintained and which were seized by GMAC on October 22, 2001.  If you claim you no longer have such records in your possession, custody or control, state (i) the date you last had them in your possession, custody or control, (ii) the address of their last-known location, (iii) the identity of the person(s) who have the records now, and (iv) what you did to the records to cause them to no longer be in your possession, custody or control.

## RESPONSE TO INTERROGATORY NO. 2

GMACCF specifically objects to Interrogatory No. 2 on the grounds that it is compound in nature and actually consists of no fewer than ten (10) separate interrogatories.  Although the subparts that Landay has labeled "a," "b," "c," and "f" are arguably part of one interrogatory, and the subparts that Landay has labeled "h" and "i" may be closely related enough to be considered part of a second interrogatory, each of the other "subparts" seeks information about discrete separate subjects, and, therefore, will be treated as a separate interrogatory for purposes of determining compliance with the numerical limitations imposed by Fed. R. Civ. P. 33(a) and Local R. 26.1(C).

GMACCF also objects to the introductory paragraph of what Landay has labeled "Interrogatory No. 2" on the grounds that the term "account for" is vague and ambiguous; that it is unduly burdensome, insofar as it seeks individualized information about every account receivable; that it seeks information more readily attainable from an alternate discovery method such as a deposition; and that it duplicates discovery from the New York Action.  Subject to and without waiving these objections, GMACCF responds to the introductory paragraph of "Interrogatory No. 2" as follows:

GMACCF refers Landay to GMACCF's response to Landay's Interrogatory No. 4 in the New York Action and incorporates that response herein by reference.  As in the New York Action, GMACCF refers Landay to the documents Bates numbered GLAN 01516 to GLAN 01582 for information about the accounts receivable that were collected after October 22, 2001.

GMACCF also refers Landay to document Bates numbered LAN 0168, which indicates the total amount of accounts receivable that were owed to the Borrowers as of October 22, 2001.

### RESPONSE TO "INTERROGATORY NO. 2a, 2b, 2c, and 2f."

GMACCF also specifically objects to what Landay has labeled subparts "a," "b," "c," and "f" on the grounds that they are overly broad and unduly burdensome, especially insofar as they seek detailed information about each individualized account receivable of the Borrowers; they duplicate discovery from the New York Action; and they seek information that is more readily obtainable through an alternate discovery method, such as a deposition. Subject to and without waiving its general or specific objections, GMACCF responds to subparts "a," "b," "c," and "f" of "Interrogatory No. 2" as follows:

GMACCF has not located records in its own office files or computer databases listing the names of every individual customer who owed money to the Borrowers as of October 22, 2001, let alone the amount of each account receivable, the amount collected, and the date of collection. GMACCF, however, has provided Landay with numerous documents that indicate when accounts receivable were received and when certain customers paid certain amounts. These documents include those with Bates numbers GLAN 01516 through GLAN 01582 and GLAN 01684 through GLAN 01830. Additionally, it is possible that some information responsive to "Interrogatory No. 2a" and "Interrogatory No. 2b" can be found in documents stored at the facility referenced by John Rijo at his deposition. See GMACCF's Resp. to "Interrogatory No. 1b," above. GMACCF also states that as of October 22, 2001, the total amount of accounts receivables owed to the Borrowers was $869,885.82. GMACCF collected $588,000.

BOS_498508_3.DOC/MDUBNOFF

GMACCF also refers Landay to document Bates numbered LAN 0168, which indicates the total amount of accounts receivable that were owed to the Borrowers as of October 22, 2001.

**RESPONSE TO "INTERROGATORY NO. 2a, 2b, 2c, and 2f."**

GMACCF also specifically objects to what Landay has labeled subparts "a," "b," "c," and "f" on the grounds that they are overly broad and unduly burdensome, especially insofar as they seek detailed information about each individualized account receivable of the Borrowers; they duplicate discovery from the New York Action; and they seek information that is more readily obtainable through an alternate discovery method, such as a deposition. Subject to and without waiving its general or specific objections, GMACCF responds to subparts "a," "b," "c," and "f" of "Interrogatory No. 2" as follows:

GMACCF has not located records in its own office files or computer databases listing the names of every individual customer who owed money to the Borrowers as of October 22, 2001, let alone the amount of each account receivable, the amount collected, and the date of collection. GMACCF, however, has provided Landay with numerous documents that indicate when accounts receivable were received and when certain customers paid certain amounts. These documents include those with Bates numbers GLAN 01516 through GLAN 01582 and GLAN 01684 through GLAN 01830. Additionally, it is possible that some information responsive to "Interrogatory No. 2a" and "Interrogatory No. 2b" can be found in documents stored at the facility referenced by John Rijo at his deposition. See GMACCF's Resp. to "Interrogatory No. 1b," above. GMACCF also states that as of October 22, 2001, the total amount of accounts receivables owed to the Borrowers was $869,885.82. GMACCF collected $588,000.

BOS_498508_3.DOC/MDUBNOFF

**RESPONSE TO "INTERROGATORY NO. 2d."**

GMACCF also specifically objects to what Landay has labeled subpart "d" of "Interrogatory No. 2" on the grounds that it is overbroad and unduly burdensome to ask GMACCF to "describe" its collection efforts as to each individual account receivable of the Borrowers, especially since such efforts were made more than three (3) years ago; it duplicates discovery from the New York Action; and the information requested is more readily obtainable through alternate discovery methods, such as a deposition. Subject and without waiving its general or specific objections, GMACCF responds to "Interrogatory No. 2d" as follows:

GMACCF has no way of reconstructing its efforts to collect individual receivables on the Borrowers' account. As a general matter, however, it would have been consistent with GMACCF's existing policy for employees in GMACCF's collections department to have tried to contact the Borrowers' customers, by mail and/or telephone, in an effort to collect those receivables. Some of the documents that GMACCF has produced to Landay appear to relate to those collection efforts.

**RESPONSE TO "INTERROGATORY NO. 2e."**

GMACCF also objects to what Landay has labeled subpart "e" of "Interrogatory No. 2" on the grounds that the terms "servants" and "and receivable" are vague and ambiguous; and because it is unduly burdensome for GMACCF to identify each of its employees who tried to collect each of the Borrowers' various accounts receivable. Subject to and without waiving its general or specific objections, GMACCF will assume that Landay intended to write "the receivable" at the end of "Interrogatory No. 2e" and responds as follows:

GMACCF has a collections department that is dedicated generally to the collection of customers' accounts receivable. GMACCF is not aware at this time which employees within that department were specifically assigned to any of the Borrowers' specific accounts receivable.

## RESPONSE TO "INTERROGATORY NO. 2g."

GMACCF also specifically objects to what Landay has labeled subpart "g" to "Interrogatory No. 2" on the grounds that it is unduly burdensome to ask for information relating to each specific account receivable that was collected; it seeks information that more readily attainable from the Borrowers' customers than from GMACCF, such as why those customers chose not to pay their full debts; and it duplicates discovery from in the New York Action. Subject to and without waiving its general or specific objections, GMACCF responds to "Interrogatory No. 2g" as follows:

GMACCF is not certain why particular customers chose not to pay their full debts to the Borrowers. GMACCF, however, directs Landay to the documents Bates numbered GLAN 01684 through 01830, which Landay already possesses, according to his Rule 26(a) initial disclosures. Those documents include information regarding why certain customers were given various credits on various accounts receivable.

## RESPONSE TO "INTERROGATORY NO. 2h."

GMACCF also objects to what Landay has labeled subpart "h" of "Interrogatory No. 2" on the grounds that it is vague and ambiguous and unduly burdensome, especially insofar as it seeks information about individual customers of the Borrowers. Subject to and without waiving its objections, GMACCF responds to "Interrogatory No. 2h" as follows:

GMACCF has produced thousands of documents to Landay for his review, many of which contain the information sought by this interrogatory, including the documents Bates numbered GLAN 01684 through 01830.

### RESPONSE TO "INTERROGATORY NO. 2i."

GMACCF also specifically objects to what Landay has labeled subpart "i" to "Interrogatory No. 2" on the grounds that it is vague and ambiguous; and it is overbroad and unduly burdensome, especially insofar as it seeks information about individual customers of the Borrowers and to the extent it seeks specific references to pages and column headings.  Subject to and without waiving its objections, GMACCF responds to "Interrogatory No. 2i" as follows:

See response to "Interrogatory No. 2h" above.

### RESPONSE TO "INTERROGATORY NO. 2j."

GMACCF also specifically objects to what Landay has labeled subpart "j" to "Interrogatory No. 2" on the grounds that it is vague and ambiguous; and it is overbroad and unduly burdensome, especially insofar as it seeks information about individual customers of the Borrowers and to the extent it seeks specific references to pages and column headings.  Subject to and without waiving its objections, GMACCF responds to "Interrogatory No. 2j" as follows:

Among the documents that GMACCF has produced to Landay which reflect collections of accounts receivable are those Bates numbered GLAN 01516 through GLAN 01582 and GLAN 01684 through GLAN 01830.

### RESPONSE TO "INTERROGATORY NO. 2k."

GMACCF also specifically objects to what Landay has labeled subpart "k" to "Interrogatory No. 2" on the grounds that is overbroad and unduly burdensome, especially insofar as it seeks information about individual customers of the Borrowers; it duplicates

BOS_498508_3.DOC/MDUBNOFF

discovery from the New York Action; and it is compound in nature.  Subject to and without

waiving its objections, and notwithstanding the compound nature of the interrogatory, GMACCF

will regard "Interrogatory No. 2k" as a single interrogatory and respond as follows:

All collections of known accounts receivable were credited to the Borrowers as reflected

on documents Bates numbered GLAN 01516 through GLAN 01582.

**RESPONSE TO "INTERROGATORY NO. 2l."**

GMACCF also specifically objects to what Landay has labeled subpart "l" of

"Interrogatory No. 2" on the grounds that it is vague and ambiguous, especially with regard to its

use of the terms "disposed of" and "became of them"; it is unduly burdensome; and it is

compound in nature.  Subject to and without waiving its general or specific objections and

notwithstanding the compound nature of the interrogatory, GMACCF will regard "Interrogatory

No. 2l" as a single interrogatory and respond as follows:

GMACCF has not knowingly destroyed any documents that referred to any of the

accounts receivable for the Borrowers.  It is possible that some hard copies of documents may

have been misplaced or that duplicates have been discarded, but such conduct would not have

been pursuant to any GMACCF policy or practice.  See also GMACCF's Responses to

"Interrogatory No. 2m" and "Interrogatory No. 2n" below.

**RESPONSE TO "INTERROGATORY NO. 2m."**

GMACCF specifically objects to what Landay has labeled subpart "m" of "Interrogatory

No. 2" on the grounds that it is vague and ambiguous, especially with regard to its confusing use

of verb tenses and its use of the terms "hard-copies" and "extant;" and because it is compound in

nature.  Subject to and without waiving its general or specific objections, notwithstanding the

- 16 -

compound nature of the interrogatory, GMACCF will regard "Interrogatory No. 2m" as a single interrogatory and respond as follows:

GMACCF does maintain some computerized records that relate to the Borrowers' accounts receivable and has already produced printouts of such records to Landay, such as those with Bates numbers GLAN 01516 through GLAN 01582. However, it is likely that some computer records relating to the Borrowers' accounts receivable no longer exist, as some computer files are automatically deleted from GMACCF's system approximately twelve months after their creation. For example, information that employees in the collections department might have entered into the computer system regarding why certain customers of the Borrowers were receiving certain credits on particular accounts may no longer exist. Additionally, if GMACCF ever did have computerized records that identified each and every one of the Borrowers' accounts receivable as of October 22, 2001, it is highly unlikely that such records continue to exist. GMACCF, however, may be able to obtain records that show the outstanding accounts receivable as of December 31, 2001, and reserves the right to supplement its discovery responses if it can locate such information. If computer records relating to the Borrowers' accounts receivable continue to exist, it should be possible to make hard copies of such records.

**RESPONSE TO "INTERROGATORY NO. 2n."**

GMACCF specifically objects to what Landay has labeled subpart "n" of "Interrogatory No. 2" on the grounds that it is vague and ambiguous and compound in nature. Subject to and without waiving its general or specific objections, notwithstanding the compound nature of the interrogatory, GMACCF will regard "Interrogatory No. 2n" as a single interrogatory and respond as follows:

GMACCF is unaware of any records relating to the Borrowers' accounts receivable as of October 22, 2001, other than those that have already been produced to Landay during discovery or that are still in the storage facility referenced by John Rijo in his deposition. See GMACCF's Resp. to Int. No. 1b, above.

**INTERROGATORY NO. 3**

Please explain the purpose of the GMAC documents attached as Exhibit 1 hereto and include in your answer the following information:

a. State whether these documents in any way related to your efforts to collect accounts receivable.

b. Identify all persons to whom these documents were sent and provide the means and dates of transmission.

c. Explain the purpose of these letters and state whether you expected to receive any response from Borrowers.

d. State whether GMAC received any response to these letters and, if so, to which of these letters did it receive a response and from whom did it receive such response?

e. As to letters asking Borrowers to identify the invoice to which received money related (see e.g. GLAN 02257 and 02254; 02213-4; 02215-23; 02227-8; 02279-81; 02237-9; 02251-6; 02273-4) please state: (i) whether such invoices were ever identified, (ii) whether GMAC ever credited Borrowers for the remittances discussed in these letters, (iii) explain the meaning of GMAC's statement "If we do not receive clarification, we will presume that the remittance belongs to GMAC Commercial Credit in satisfaction of an existing obligation that we erroneously posted" (see, e.g. GLAN 022510, and (iv) explain the meaning of GMAC's statement "Your non-response in this matter will be regarded as disclaiming any interest in the subject remittance in favor of GMAC . . ." (see e.g., GLAN 02257).

f. If your answer to e(ii) above is affirmative, identify all documents that reflect the payments credited to Borrowers and state where on the document that credit is reflected.

g. As to letters asking Borrowers to send copies of invoices (see e.g., GLAN 02282 – 95; GLAN 02258-60) describe how the matter was resolved and whether or not GMAC collected the money from the customers who owed the accounts receivable.

h. If your answer to g. above is affirmative, state whether GMAC credited the Borrowers with the sums collected and, if so, identify all documents that reflect such credit to Borrowers and state where on the document such credit appears.

   i.  As to letters concerning charge backs (see e.g., GLAN 02229-30; 02234-6; 02243; 02231; 02232-3; 02240; 02241; 02243; 02245; 02246-50; 02261-63; 02264-68; 02269-72; 02275), state how the matter was resolved, including whether or not a lack of response from Borrowers to these letters resulted in GMAC allowing the charge backs in full and without challenge.

   j.  Identify all documents referring, reflecting or relating to the matters in each of the letters attached as Exhibit 1.

   k.  Identify all GMAC agents, servants or employees with any knowledge concerning the letters in Exhibit 1 and the matters referred to therein.

## RESPONSE TO INTERROGATORY NO. 3

GMACCF specifically objects to what Landay has labeled "Interrogatory No. 3" on the grounds it is compound in nature and actually consists of no fewer than nine (9) separate interrogatories. Although the subparts that Landay has labeled "e" and "f" are arguably part of one interrogatory, and the subparts that Landay has labeled "g" and "h" may be closely related enough to be considered part of a second interrogatory, each of the other "subparts" seeks information about discrete separate subjects, and, therefore, will be treated as a separate interrogatory for purposes of determining compliance with the numerical limitations imposed by Fed. R. Civ. P. 33(a) and Local R. 26.1(C). Accordingly, Landay will have reached his numerical limit with what he has labeled subpart "i" of "Interrogatory No. 3."

GMACCF also objects to the introductory paragraph of "Interrogatory No. 3" on the grounds that it is vague and ambiguous, especially insofar as it asks GMACCF to "explain the purpose" of documents; it is not reasonably calculated to lead to the discovery of admissible evidence, since the documents speak for themselves and no other evidence about the "purpose" of the documents would be admissible; and it is unduly burdensome.

## RESPONSE TO "INTERROGATORY NO. 3a."

GMACCF also specifically objects to what Landay has labeled subpart "a" of "Interrogatory No. 3" on the grounds that it is vague insofar as it contains no reference to the

Borrowers or Landay; and because it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its general or specific objections, Landay responds to "Interrogatory No. 3a" as follows:

The documents attached as Exhibit 1 to Landay's First Set of Interrogatories are related to GMACCF's efforts to collect the Borrowers' accounts receivable as of October 22, 2001.

**RESPONSE TO "INTERROGATORY NO. 3b."**

GMACCF also specifically objects to what Landay has labeled subpart "b" of "Interrogatory No. 3" on the grounds that it is unduly burdensome, insofar as it seeks information regarding the "means and dates of transmission;" it is not reasonably calculated to lead to the discovery of admissible evidence, especially since the documents speak for themselves; it is vague and ambiguous; and it is compound in nature. Subject to and without waiving its general or specific objections and notwithstanding its compound nature, GMACCF will regard "Interrogatory No. 3b" as a single interrogatory and respond as follows:

GMACCF cannot be certain where the documents were sent but has no reason to believe they were sent to anyone other than the addressees on the documents.

**RESPONSE TO "INTERROGATORY NO. 3c."**

GMACCF also specifically objects to what Landay has labeled subpart "c" of "Interrogatory No. 3" on the grounds that the request to "explain the purpose" of documents is vague, ambiguous and not reasonably calculated to lead to the discovery of admissible evidence, especially since the documents speak for themselves; because the term "you" is vague in this context; and because it is compound in nature. Subject to and without waiving it general or specific objections, notwithstanding its compound nature, GMACCF will regard "Interrogatory No. 3c" as a single interrogatory and respond as follows:

- 20 -

GMACCF has no reason to believe that the "purpose" of the specific documents attached as Exhibit 1 to Landay's First Set of Interrogatories differed from those expressed in the documents themselves. As a general matter, many of the documents included in Exhibit 1 are of the type that would have been generated routinely by GMACCF's computers upon the occurrence of the events described in those documents and would have transmitted to the last known address of a GMACCF client. GMACCF does not know which, if any, of its employees had actual knowledge that these documents were mailed out, or whether any of those employees had expectations of receiving a response.

## RESPONSE TO "INTERROGATORY NO. 3d."

GMACCF also specifically objects to what Landay has labeled subpart "d" of "Interrogatory No. 3" on the grounds that it is vague and ambiguous, especially insofar as it consists of several questions about many different documents; it is unduly burdensome; and it is compound in nature. Subject to and without waiving its general or specific objections, and notwithstanding its compound nature, GMACCF will regard "Interrogatory No. 3d" as a single interrogatory and respond as follows:

At the present time, GMACCF does not know whether it received any responses to the documents attached as Exhibit 1.

## RESPONSE TO "INTERROGATORY NO. 3e and 3f."

GMACCF also specifically objects to what Landay has labeled subparts "e" and "f" of "Interrogatory No. 3" on the grounds that they are vague and ambiguous, especially insofar as they inaccurately describe the contents of some of the documents listed therein and there are some inconsistencies between the Bates numbers listed in "Interrogatory No. 3e" and those stamped on the documents attached as Exhibit 1; they are not reasonably calculated to lead to the

discovery of admissible evidence, especially insofar as they ask for inadmissible opinions as to the meanings of certain language within the documents; they are unduly burdensome; and they are compound in nature.  Subject to and without waiving its general or specific objections, GMACCF will regard "Interrogatory No. 3e" and "Interrogatory No. 3f" as a single interrogatory and respond as follows:

(i)      To the extent that the documents identified in "Interrogatory No. 3e" ask for the identification of specific invoices to which received money related, GMACCF does not know at present whether such invoices were ever identified.  GMACCF reserves the right to supplement this response.

(ii)     As a general practice, GMACCF would have credited the Borrowers for all remittances referenced in the documents identified in "Interrogatory No. 3e."  Upon receipt of such remittances, GMACCF would have credited the Borrowers' cash on account and reduced the Borrowers' overall loan balance.  Such credits would have been reflected as "collections" in the client statement accounts, copies of which GMACCF has produced to Landay in the New York Action and has reproduced here (see GLAN 01516 through GLAN 01582). Documentation of the credits also may have been reflected in the Borrowers' cash reports and/or in other documents that GMACCF has produced to Landay.

(iii)    There is no document with the Bates number GLAN 022510.  However, the statement referenced in what Landay has labeled sub-subpart "(iii)" of "Interrogatory No. 3e" appears in the document Bates numbered GLAN 02251.  GMACCF has no reason to believe it means anything other than what it says.

(iv)     GMACCF has no reason to believe that the statement referenced in what Landay has labeled sub-subpart "(iv)" of "Interrogatory No. 3e" means anything other than what it says.

**RESPONSE TO "INTERROGATORY NO. 3g and 3h."**

GMACCF also specifically objects to what Landay has labeled subparts "g" and "h" of "Interrogatory No. 3" on the grounds that they are vague and ambiguous; they are not reasonably calculated to lead to the discovery of admissible evidence; they are unduly burdensome; they seek information more readily obtainable through an alternate discovery method, such as a deposition; and they are compound in nature. Subject to and without waiving its general or specific objections and not withstanding the compound nature of "Interrogatory No. 3g" and Interrogatory No. 3h" GMACCF will regard them as a single interrogatory and respond as follows:

At this time, GMACCF does not have specific knowledge as to how issues relating to the specific invoices referenced in GLAN 02282-95 and GLAN 02258-60 were resolved. GMACCF has, however, collected about $588,000 of the Borrowers' total accounts receivable, which may have included those referenced in the aforementioned documents. If GMACCF obtains more detailed information, it will supplement this response accordingly.

**RESPONSE TO "INTERROGATORY NO. 3i."**

GMACCF also specifically objects to what Landay has labeled subpart "i" of "Interrogatory No. 3" on the grounds that it is vague and ambiguous, especially insofar as it asks how an undefined "matter" was resolved; it is not reasonably calculated to lead to the discovery of admissible evidence; it seeks information more readily obtainable from an alternate discovery method, such as a deposition; it is unduly burdensome; and it is compound in nature. Subject to and without waiving its general or specific objections, notwithstanding its compound nature, GMACCF will regard "Interrogatory No. 3i" as a single interrogatory and respond as follows:

BOS_498508_3.DOC/MDUBNOFF

At this time, GMACCF cannot state how the matters relating to specific charge-backs referenced in the documents listed in "Interrogatory No. 3i" were resolved, but it refers Landay to the documents that it produced in the New York Action and reproduced here that relate to charge-backs and other credits. These documents include but are not limited to the client statement accounts, GLAN 01516 through GLAN 01582, and the documents numbered GLAN 1618-65. As a general practice, if GMACCF had not received a response from a client to letters of the type identified in "Interrogatory No. 3i," it would have approved the charge-backs and applied them as debits on the client's account receivable.

**RESPONSE TO "INTERROGATORY NO. 3j."**

GMACCF also specifically objects to what Landay has labeled subpart "j" of "Interrogatory No. 3" on the grounds that it is overbroad and unduly burdensome. Subject to and without waiving its general or specific objections, GMACCF responds to "Interrogatory No. 3j" as follows:

All of the documents in GMACCF's custody, possession, or control that refer, reflect, or relate to any of the matters that Landay attached as Exhibit 1 to his First Set of Interrogatories were produced to Landay in the New York Action and reproduced to Landay in this action.

**RESPONSE TO "INTERROGATORY NO. 3k."**

GMACCF specifically objects to what Landay has labeled subpart "k" of "Interrogatory No. 3" on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence; and is unduly burdensome. Subject to and without waiving its general or specific objections, GMACCF responds to "Interrogatory No. 3k" as follows:

There are numerous persons with at least some knowledge about the letters in Exhibit 1, and it would be unduly burdensome to identify them all.

**INTERROGATORY NO. 4**

Please account for all Borrowers' inventory seized by GMAC on October 22, 2001. In addition to providing (1) the total inventory cost value as of October 22, 2001 and (2) the total amount of money received by GMAC to date from the sale of Borrowers' inventory, provide the following details for each and every style number in Borrowers' inventory as of October 22, 2001:

    a.   The standard cost value per unit (pair or single item, as appropriate),

    b.   The number of units in that style,

    c.   The number of units GMAC sold in liquidation,

    d.   The identity of the buyer in liquidation and buyer's date of purchase,

    e.   The amount received by GMAC from the sale,

    f.   If unsold, the present and/or last known location of such inventory item(s), including the address and name of the person(s) having possession, custody or control.

    g.   Identify all documents on which the inventory item is reflected and state where on the document it is reflected.

    h.   Identify all documents on which the sale of this inventory item is reflected and state where on the document it appears.

    i.   State whether the sale of such inventory was credited to Borrowers and, if so, identify all documents that reflect such credit to Buyers' and state where on the documents it appears.

    j.   Identify all documents on which your collection of money from the sale of such inventory item is reflected and state where on the document it appears.

    k.   State whether you have in your possession, custody or control all GMAC documents that ever reflected or concerned this inventory item and, if not, identify all documents that GMAC would have generated or received in the normal course of its business concerning such item and state what became of such documents, including the date they ceased to exist.

    l.   State whether you maintain computerized records that contain information concerning Borrowers' inventory and, if so, describe such records including but not limited to whether or not there are hard-copies of such records extant.

    m.  State the location of the inventory records that Borrowers maintained and which were seized by GMAC on October 22, 2001. If you claim you no longer have such records in your possession, custody or control, state: (i) the date you last had them in your possession, custody or control, (ii) the address of their last-known location, (iii) the

identity of the person(s) who have the records now, and (iv) the circumstances surrounding your disposition of such records.

## RESPONSE TO INTERROGATORY NO. 4

See General Objections.  GMACCF also specifically reserves all of its other objections to this interrogatory.

## INTERROGATORY NO. 5

Please account for each of the several hundred patents and trademarks assigned to GMAC by Borrowers' and taken by GMAC into its possession, custody and control on October 22, 2001.  Include in your answer the identity of each patent and trademark and with respect to each patent and trademark identified provide the following details:

a.  Describe the steps you have taken since October 22, 2001 to preserve and maintain such items.

b.  Describe the steps you have taken to sell them.

c.  Identify all offers to purchase that have been made for such property, including the identity of the offeror and the amount offered.

d.  Identify all sales you have made, including the identity of the purchaser and the amount paid.

e.  Identify all GMAC agents, servants or employees who had or have any responsibility for the maintenance of Borrowers' intellectual property.

f.  Identify all GMAC agents, servants or employees have or had any responsibility for selling Borrowers' intellectual property in liquidation.

g.  Identify all records in your possession custody or control that refer, reflect or relate to Borrowers' intellectual property.

h.  If you no longer have in your possession, custody or control the documents referring, reflecting or relating to Borrowers' intellectual property state:  (i) the date you last had them in your possession, custody or control, (ii) the address of their last-known location, (iii) the identity of the person(s) who have the records now or, if unknown to you, the identity of the last-known custodian of said records, and (iv) the circumstances surrounding your disposition of such documents.

## RESPONSE TO INTERROGATORY NO. 5

See General Objections.  GMACCF also specifically reserves all of its other objections to this interrogatory.

BOS_498508_3.DOC/MDUBNOFF

## INTERROGATORY NO. 6

Excepting Accounts Receivable, Inventory and Intellectual Property, please account for all other assets of Borrowers' seized by GMAC on October 22, 2001 (e.g. computers). Include in your answer an identification of each asset and with respect to the identified asset provide the following details:

a. State whether it was sold by GMAC and, if so, the dollar amount of the sale.

b. If sold, identify the buyer and date of purchase.

c. If sold, identify all documents upon which that sale is reflected and state where on the document it appears.

d. If sold, state whether or not Borrowers were credited with the sale and, if so, identify all documents upon which such credit appears.

e. If not sold, state the current location of the asset and identify the person or persons that have possession, custody or control of it.

f. If you do not know the current location of the unsold assets, state its last-known location and the identity of the person or persons that had possession, custody or control of it.

g. Identify all GMAC agents servants or employees who have or had any responsibility for the preservation and/or sale of these assets.

## RESPONSE TO INTERROGATORY NO. 6

See General Objections. GMACCF also specifically reserves all of its other objections to this interrogatory.

## INTERROGATORY NO. 7

With respect to each asset identified by you in responses to Interrogatories 2, 4, 5 and 6 as to which GMAC has abandoned its sales and/or collections efforts, state the date you abandoned such efforts and describe the steps you have taken to provide notice (if any) of this to Landay in his capacity as junior creditor. Please include the following details in you answer:

a. The location of each asset for which you have abandoned efforts,

b. The date GMAC determined to abandon its sales and/or collections efforts,

c. Whether or not GMAC advised Landay in his capacity as junior creditor that GMAC was ceasing its sales and/or collections efforts and, if so, the date and form of the notice, and

BOS_498508_3.DOC/MDUBNOFF

d. Whether or not GMAC advised Landay in his capacity as junior creditor that this asset was available to Landay for satisfaction of Borrowers' debt to him and, if so, the date and the form of the notice.

e. Identify all persons that have knowledge relating to your answer to this interrogatory.

f. Identify all documents that relate, refer to or reflect your answer to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 7**

See General Objections.  GMACCF also specifically reserves all of its other objections to

this interrogatory.

**INTERROGATORY NO. 8**

Please explain the GMAC monthly reports attached hereto as Exhibit 2 (GLAN01516-01520; GLAN 01521-01524; GLAN 01525-01528; GLAN 01529-01531; GLAN 01532-01535; GLAN 01536-01538; GLAN 01539-01541; GLAN 01542-01544; GLAN 01545-01547; GLAN 01548-01550; GLAN 01551-01553; GLAN 01554-01556.)  Include the following information in your explanation:

a. Explain why these efforts are in three different formats (compare GLAN 01516-01520 to GLAN 01529-01531 to GLAN 01551-01553) including, without limitation whether these are three different kinds of reports or whether one format simply replaced the other.

b. For each "MISC CHG/CR" entry:  (i) state what the charge or credit was for, (ii) identify the contract document and provision therein that you claim permitted you to make that charge, (iii) identify all persons who authorized such charge, (iv) identify all persons who have knowledge concerning such charge, and (v) identify all documents that reflect or relate to the reasons for making such charge.

c. For each of the "COLLECTIONS" entries that apparently increase the loan balance (see, e.g., the December 2001 statement, GLAN 01525-01528, 12/4/01 collections entry in the amount of $126,239.89): (i) explain to what the entry relates, and (ii) explain how a collection can increase a loan balance.

d. For each "CASH ADVANCE" entry:  (i) state to whom the cash advance was made, (ii) state for what purpose it was made, (iii) identify the contract document and provisions therein that you claim permitted you to make that charge to the loan, (iv) identify all persons who authorized such charge, and (vi) identify all documents that reflect or relate to the reasons for making such charge.

e. For each "CHARGE BACK" entry:  (i) state what "charge back" means, (ii) state the reason for the charge back, (iii) state whether the charge back relates to a customer of Borrwers' and, if so, identify such customer, (iv) describe the efforts GMAC made to verify the validity of the charge back claimed by Borrowers' customer, (v) identify all contract documents and provision therein that you claim permitted you to make that

- 28 -

charge back, (vi) identify all persons who authorized such chargeback, (vii) identify all persons who have knowledge concerning such charge back, and (viii) identify all documents that reflect or relate to the reasons for making such charge.

f. For each "OVERADV CHGE" entry: (i) explain what "overadvance" means, (ii) identify the "overadvance" to which the entry relates, including the date it was incurred and how it was incurred, (iii) identify the contract provision that you claim permitted you to make this charge, (iv) identify all persons who authorized such charge, (v) identify all persons having knowledge concerning such charge, and (vi) identify all documents that reflect or relate to the reasons for making such charge.

g. For each "WIRE CHARGES" entry: (i) identify the charge to which it relates, including the date it was incurred, by whom it was incurred and why it was incurred, (ii) identify the contract provision that you claim allows you to make this charge, (iii) identify all persons who authorized such charge, and (v) identify all documents that reflect or relate to the reasons for making such charge.

h. For each "DBA" entry, explain what this entry means, including: (i) what is "DBA", (ii) the reasons for posting this entry, (iii) the contract provision that you claim permits this entry, (iv) the identity of all persons who have knowledge concerning this entry, and (v) the identity of all documents that reflect or relate to this entry.

i. For each "BANK CHARGES" entry: (i) identify the bank charges to which this entry relates including the name of the bank, the purpose of the charge, the date the charge was incurred, by whom it was incurred and why it was incurred, (ii) identify the contract provision that you claim allows you to make this charge, (iii) identify all persons who authorized such charge, (iv) identify all persons having knowledge concerning such charge, and (v) identify all documents that reflect or relate to these reasons for making such charge.

j. For the "LC CHGE" on GLAN 01540: (i) identify the charge to which this entry relates including the purpose of the charge, the date the charge was incurred, by whom it was incurred and why it was incurred, (ii) identify the contract provision that you claim allows you to make this charge, (iii) identify all persons who authorized such charge, (iv) identify all persons having knowledge concerning such charge, and (v) identify all documents that reflect or relate to the reasons for making such charge.

## RESPONSE TO INTERROGATORY NO. 8

See General Objections.  GMACCF also specifically reserves all of its other objections to this interrogatory.

BOS_498508_3.DOC/MDUBNOFF

**INTERROGATORY NO. 9**

If the "LC CHGE" entry on GLAN 01540 relates to a $110,000 Letter of Credit provided to Disney on account of Buyers, please explain your accounting with respect to that Letter of Credit. Include the following information in your explanation:

a. State whether or not the $110,000 for the Disney Letter of Credit was carried as part of the loan balance since the year 2001.

b. State whether the entry on GLAN 01540 reflects a $56,908.22 payment to Disney in 2002 on that letter of credit.

c. If your answer to the foregoing is affirmative, state whether or not the remaining $53,091.78 of the $110,000 letter of credit was ever paid to Disney or whether the payment of $56,908.22 was in full satisfaction of money owed Disney.

d. If the $56,908.22 payment was full satisfaction to Disney on a Letter of Credit for which GMAC had already charged Borrowers' $110,000, please explain why $56,908.22 was added to the loan balance rather than $53,091.78 being deducted from the loan balance.

**RESPONSE TO INTERROGATORY NO. 9**

See General Objections. GMACCF also specifically reserves all of its other objections to this interrogatory.

**INTERROGATORY NO. 10**

Explain each document in the group of documents marked Exhibit 3 hereto (GLAN 02170-73, 02156-59, 02160-65, 01963-4; 01986-92), including a statement about:

a. What the document purports to show, and

b. What the entries means.

**RESPONSE TO INTERROGATORY NO. 10**

See General Objections. GMACCF also specifically reserves all of its other objections to this interrogatory.

**INTERROGATORY NO. 11**

Please explain each and every entry on the document that GMAC provided to Landay entitled "Seneca Sports Damages Calculation" (annexed hereto as Exhibit 5), and include the following details in your response:

a. Identify each and every document that GMAC consulted to prepare Exhibit 5.

b. Identify all persons that participated in the preparation of Exhibit 5.

c. Identify all documents that provide the underlying data for each figure on each line of each column of Exhibit 5.

d. As to the "Balance" column of Exhibit 5: (i) state what the figures in that column represent, including whether each figure purports to be the total amount of money allegedly owed to GMAC by the Borrowers on the date indicated in the far left column, and (ii) identify all the component parts of the Balance figures (e.g., principal, interest, charges, Letter of Credit etc.).

e. State how GMAC arrived at the 10/22/01 Balance of $1,427,511.9 in Exhibit 5 and include in your answer: (i) the dollar amount attributable to principal, (ii) the dollar amount attributable to interest, (and (iii) the dollar amounts and identity of all other charges and/or components parts of this balance figure.

f. Reconcile the 10/22/2001 Balance figure in Exhibit 5 with the entries shown on GMAC's 10/22/01 Computer Screen that it provided to Borrowers (Exhibit 6 hereto). Include in your answer an explanation of the entries on Exhibit 6.

g. As to the entries in the "Advances" column in Exhibit 5, explain what "advances" mean and, if these entries indicate money paid by GMAC to or on account of Seneca: (i) identify the persons or persons to whom such payments were made and for each payment, (ii) state the purpose of the payment, and (iii) state why GMAC was making advances with respect to a company that was no longer operating.

h. As to the entries in the Collections/Paydowns column in Exhibit 5: (i) identify each source of collected money and the amount collected from that source, and (ii) explain and provide details concerning entries that appear to increase the loan balance (e.g. May, August, Sept and Oct 2002).

i. Explain what the "Recovery" column in Exhibit 5 shows, particularly the March 2004 entry.

j. As to the "Overadvance Charge" column in Exhibit 5, provide the following information:

   i. What is an "overadvance charge"?

   ii. Identify the language in the loan documents that permits each charge reflected in this column,

   iii. As to each monthly overadvance charge listed, state whether you had made an overadvance to Borrowers in that month,

   iv. Explain how overadvance charges could be incurred by a business that was no longer taking advances from GMAC and was out of business,

- 31 -

   v. Explain why overadvance charges were charged to the loan through September 2003 and why they stopped after September 2003.

k. Explain the entries in the "Commission Charges" column in Exhibit 5, including: (i) the identity of anyone who received commissions, (ii) the purpose of the commission, (iii) the persons who authorized the incurring of such charge, and (iv) the identity of the loan document provisions that authorizes such charge.

l. As to each entry in the "Bank Charges" column in Exhibit 5: (i) identify the bank to which the charges relate, and (ii) state the purpose for which the charge was incurred.

m. As to each entry in the "Legal" column in Exhibit 5: (i) state the purpose for which the charge was incurred and, if it reflects payments to lawyers, (ii) identify the lawyers, and (iii) describe the work performed.

n. As to each entry in the "Misc Charges" column in Exhibit 5: (i) identify each of the charges that comprise the monthly entry and for each such individual charge, (ii) state the reason it was incurred, and (iii) state the identity of the loan document provision that authorizes such charge.

o. Explain the "(14,405.00)" entry for august 2003 in the Misc. Charges column in Exhibit 5 and the September 2003 "14,405.00" entry that follows it, including: (i) to what do these entries relate, and (ii) why is one entry a positive and the other a negative?

## RESPONSE TO INTERROGATORY NO. 11

See General Objections. GMACCF also specifically reserves all of its other objections to this interrogatory.

## INTERROGATORY NO. 12

With respect to the Platinum proposal discussed in Paragraphs 47 and 48 of Plaintiff's First Amended Complaint, please explain why GMAC did not accept the proposal and include the following information in your answer:

a. Identify all agents, servants and employees of GMAC who knew about the proposal.

b. Identify all persons who were involved in GMAC's decision concerning the proposal.

c. State whether the analysis in Exhibit 4 hereto (RAS 266-289) concerns the Platinum proposal.

d. If your answer to c. above is affirmative, state whether the author of that document was aware at the time of its preparation that the proposal called for Platinum to provide funding to Borrowers and to pay of the GMAC loan.

e. State the purpose of the analysis made in Exhibit 4.

- 32 -

## RESPONSE TO INTERROGATORY NO. 12

See General Objections.  GMACCF also specifically reserves all of its other objections to

this interrogatory.

## INTERROGATORY NO. 13

With respect to Kathleen A. Pappalardo named in your Initial Disclosure Statement pursuant to Fed. R. Civ. P. 26 9a), state in detail the nature of her knowledge concerning the account histories of Borrowers, including but not limited to the following information:

a. Provide her current job description and state the dates that she has been employed in this position.

b. For every other position she has held at GMAC, provide a job description and the dates she was employed in that position.

c. State whether she had any responsibility for the liquidation *if* Borrowers' assets, and, if so, describe that responsibility.

d. State whether she had any responsibility for collections from the sale of Borrowers' assets, and, if so, describe her responsibilities.

e. State whether she had any responsibilities relating to the collection of Borrowers' accounts receivable and, if so, describe her responsibilities.

f. State whether she had any responsibility for crediting collections to the Borrowers' loan balance and, if so, describe those responsibilities.

g. State whether she had any responsibilities concerning charges made to Borrowers' loan and, if so, describe her responsibilities.

## RESPONSE TO INTERROGATORY NO. 13

See General Objections.  GMACCF also specifically reserves all of its other objections to

this interrogatory.

## INTERROGATORY NO. 14

Provide the last-known addresses and telephone numbers of the former GMAC employees named in the First Amended Complaint and/or your Initial Disclosure Statement, to wit:

a. Jane Frangos,

b. John R. Fitzpatrick, and

c.  Paul Fitzgerald.

## RESPONSE TO INTERROGATORY NO. 14

See General Objections.  GMACCF also specifically reserves all of its other objections to

this interrogatory.

## INTERROGATORY NO. 15

Identify the present custodian of any documents relating to Borrowers, Landay and/or the transactions at issue in this litigation that had been in the possession of the above listed former employees at the time of termination of employment.

## RESPONSE TO INTERROGATORY NO. 15

See General Objections.  GMACCF also specifically reserves all of its other objections to

this interrogatory.

## INTERROGATORY NO. 16

Please provide the details concerning the loan balance Borrowers owed GMAC as of midnight of September 18, for each years 2001, 2002, 2003 and 2004, including but not limited to:

a.  The total loan balance as of that date,

b.  The dollar amount of the principal portion of that loan balance,

c.  The dollar amount of the interest portion of that loan balance, and

d.  The dollar amount of charges, fees, expenses or other costs included in the loan balance.

## RESPONSE TO INTERROGATORY NO. 16

See General Objections.  GMACCF also specifically reserves all of its other objections to

this interrogatory.

## INTERROGATORY NO. 17

Please provide the details of the loan balance Borrowers owed GMAC as of the end of each month beginning September 30, 2000 to the end of the month just prior to the date this document is signed, including but not limited to:

a.  The total loan balance as of that date,

BOS_498508_3.DOC/MDUBNOFF

b. The dollar amount of the principal portion of that loan balance,

c. The dollar amount of the interest portion of that loan balance, and

d. The dollar amount of charges, fees, expenses or other costs included in the loan balance.

BOS_498508_3.DOC/MDUBNOFF

**RESPONSE TO INTERROGATORY NO. 17**

See General Objections.  GMACCF also specifically reserves all of its other objections to

this interrogatory.

Kathleen A. Pappalardo, Vice President

As to Objections,

GMAC COMMERCIAL FINANCE LLC

John A. Houlihan (BBO # 542038)
Mark B. Dubnoff (BBO # 637212)
Edwards & Angell, LLP
101 Federal Street
Boston, MA  02110
(617) 439-4444

- 36 -

## <u>Certificate of Service</u>

I, Mark B. Dubnoff, hereby certify that on this 10th day of August, 2005, I caused a copy of the foregoing document to be sent by hand to Alan R. Hoffman, Lynch, Brewer, Hoffman & Fink, LLP, 101 Federal Street, Boston, MA 02110, counsel for David L. Landay.

Mark B. Dubnoff

BOS_498508_3.DOC/MDUBNOFF

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-CV-11955-WGY

DAVID L. LANDAY,                          )
                                          )
                Plaintiff,                )
                                          )
v.                                        )
                                          )
GMACCF COMMERCIAL CREDIT, LLC and         )
GMACCF COMMERCIAL FINANCE, LLC,           )
                                          )
                Defendants.               )
_____)

### NOTICE OF DEPOSITION OF
### GMACCF COMMERCIAL FINANCE, LLC

To:     GMACCF Commercial Finance, LLC
        c/o John A. Houlihan, Esq.
        Edwards & Angell, LLP
        101 Federal Street
        Boston, MA 02110

Please take notice that at 10:00 a.m. on Thursday, August 18, 2005 at the offices

of Goodkind, Labaton Rudoff & Sucharow LLP. 100 Park Avenue, 12th Floor, New York,

New York, 10017-5563, the Plaintiff in this action, David L. Landay, by his attorney, will

take the deposition upon oral examination of GMACCF Commercial Finance, LLC

pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.

The deposition shall take place before an officer authorized to administer oaths

and shall be recorded by stenographic means.

The Defendant GMACCF Commercial Finance, LLC is being deposed with

respect to all the matters described in the attached Schedule A.

This oral examination will continue from day to day until completed.



EXHIBIT
Landay
54
8-19-05

You are invited to attend and cross-examine.

Respectfully submitted,
DAVID L. LANDAY,
By his attorney,


_____

Alan R. Hoffman, BBO# 236860
Lynch, Brewer, Hoffman & Fink, LLP
101 Federal Street, 22nd Floor
Boston, MA 02110
(617) 951-0800

Dated:  August 9, 2005

## SCHEDULE A
## DEFINITIONS

Wherever used in this Schedule unless the context requires otherwise:

A.    "Seneca" and/or "Seneca Sports'" refers to Seneca Sports, Inc.

B.    "Brookfield" refers to Brookfield International, Inc., a Massachusetts
      corporation and wholly owned subsidiary of Seneca Sports, Inc.

C.    "The Borrowers" refers to Seneca Sports, Inc. and Brookfield
      International, Inc.

D.    "GMAC" means GMAC Commercial Credit LLC and/or GMAC
      Commercial Finance LLC and includes its officers, employees,
      servants, attorneys and independent consultants and agents such   as
      RAS Management Advisors, Inc.

E.    "Seasonal Overadvance" means an advance of funds to Borrowers
      of up to $500,000 in excess of the advances based on the
      receivables formula in the Factoring Agreement, all set forth in the
      portion called "Borrowing Base" in Section 12 of the Factoring
      Agreement.

F.    "Record" or "Document" is to be construed in its broadest sense, including
      without limitation, any paper or other writing and any item of graphic
      material, however recorded or reproduced and including further,
      without limitation the following:

      "Document", "Record" or "Writing" mean any paper or other writing and
      any item of graphic material, however recorded or reproduced, including
      all drafts, copies, or other preliminary materials that are different in any
      way from the executed or final document, regardless of whether
      designated 'confidential' or 'privileged' or otherwise restricted, wherever
      located, whether an original or a copy, including but not limited to e-mails,
      facsimile transmissions, agreements, contracts, financial statements,
      invoices, minutes, work sheets, work papers, summaries, and other
      written records or recordings of any conferences, meetings, visits,
      interviews, or telephone conversations, financial and statistical data,
      analyses, surveys, transcripts of testimonies, statements, interviews,
      affidavits, press releases, memoranda, drafts, memo pads, notes, indices,
      tabulations, graphs, reports, papers, records, inter-office communications,
      files, electronic data processing cards, tapes, print-outs, papers or other
      recordings, tables, compilations, catalogues, telegrams, letters,
      photographs, diaries, calendars, drawings, data-reports, printed matter,
      correspondence, communications received or sent, books, brochures,
      advertising circulars, mailings and publications; and any copy containing

3

thereon or having attached hereto any alterations, notes, comments or other material shall be deemed a separate document from the original or any other copy not containing such material within the foregoing definition.

G.    "Loan balance" means the total amount of money due to GMAC from Borrowers at any moment in time.

H.    "Intellectual property" means patents, trademarks, trade names, designs, drawings and other like materials related to patents, trademarks and trade names.

I.    "Loan Documents" means the documents relating to Borrowers' borrowings from GMAC, consisting of the September 19, 2000 Factoring Agreement between GMAC and Borrowers, the Personal Guaranty signed by Landay and dated September 19, 2000, the Subordination Agreement signed by Landay and dated September 19, 2000, the Forbearance Agreement between Borrowers and GMAC, dated as of August 9, 2001, the Amendment of Guaranty signed by Landay and dated August 9, 2001.

## TOPICS

1.    The nature of the Factoring Business engaged in by GMAC including but not limited to the following:

    a.    How Factoring works,

    b.    The size of GMAC's Factoring Business; and

    c.    What type of record – keeping GMAC used and uses to keep track of its hours.

2.    The Factoring Agreement between Seneca Sports, Inc. and Brookfield Athletic, Inc. (the "Borrowers") and GMAC dated September 19, 2000, the related transactions (including without limitation Landay's guaranty and subordination of debt), relationships and disputes, including without limitation the issues in the instant action and the action between the Landay and GMAC (the "parties") in New York.

3.    Records and record-keeping relating to the Factoring Agreement and all related agreements (including the guaranty and the debt subordination) including but not limited to the following:

    a.    GMAC general record keeping practices.

    b.    GMAC's general record retention policy.

c.     The records kept by GMAC generally with respect to a transaction of this nature, including the form of such records (e.g., documents, records in computer form – disc or otherwise, microfiche, etc).

d.     The records that were made with respect to these matters, including documents and computer records and records of any other nature.

e.     The underlying documentation for GMAC book-keeping entries, including but not limited to documents and information GMAC received from other sources (such as Borrower's customers or Borrowers) concerning (i) collections or receipts from customers of the Borrower or (ii) inventory of Borrowers.

f.     The location and/or disposition of all records relating to Borrowers and/or Landay.

g.     The location and/or disposition of all of records kept and maintained by Borrowers, which records were seized by GMAC on October 22, 2001, including but not limited to Borrowers' business records admitted to be in GMAC's possession (GMAC Answer, paragraph 50).

h.     All other matters inquired into in Interrogatory 1 in Landay's First Set of Interrogatories served upon GMAC in this action.

3.     GMAC's calculation of the amounts of money claimed due on the loan to Borrowers in the period September 19, 2000 to date, including but not limited to: (a) the interest charged; and (b) all other charges and fees posted to the loan.

4.     The details of the account history of GMAC's loan to Borrowers from September 19, 2000 to date, including but not limited to information of the nature described in Interrogatories 16 and 17 of Landay's First Set of Interrogatories in this action.

5.     The GMAC monthly statements attached as Exhibit 2 to Landay's First Set of Interrogatories and all other such GMAC statements for the period September 19, 2000 to date; this includes monthly statements (not yet produced by GMAC) for the months preceding and following the months contained in Exhibit 2.

6.     The meaning of the entries in GMAC documents produced in the action between the parties in New York and in the instant action, including

5

without limitation, the entries made in the documents attached as Exhibits 2, and 3 to Landay's First Set of Interrogatories in this action.  Landay seeks explanations such as those described in Interrogatory 8, 9 and 10 of Landay's First Set of Interrogatories in this action.

7.    The transactions, documentation and records that underlie the entries in the GMAC documents produced in the New York action between the parties and in the instant action, including without limitation the entries made in the documents attached as Exhibits 2 and 3 to Landay's First Set of Interrogatories in this action.

8.    The collateral provided by Landay to GMAC as additional security for Borrowers, including without limitation, the collection by GMAC of such collateral (see Answer, paragraph 48 and 49) and the crediting of such collection to the Borrowers' loan balance.

9.    The identification, collection and disposition of the Borrowers' assets by GMAC including but not limited to: (a) GMAC's sales and collection efforts to date; (b) GMAC's internal bookkeeping/accounting concerning receipts from the sale and/or collection of such assets; and (c) the location and identification of the assets that GMAC has admitted it still has in its possession (see Answer, paragraph 52).

10.   The accounts receivable of Borrowers, including but not limited to a description of the accounts receivable extant on October 22, 2001, GMAC's bookkeeping practices such as the maintenance of aging reports (if any), the collection of Borrowers' accounts receivable by GMAC, a description of the accounts collected and not collected, the crediting of collections to Borrowers, and all other information described in Interrogatories 2 and 7 of Landay's First Set of Interrogatories in this action.

11.   Documents such as those attached as Exhibit 1 to Landay's First Set of Interrogatories, including but not limited to information of the nature described in Interrogatory 3 of Landay's First Set of Interrogatories in this action.

12.   The Borrower's inventory, including the inventory that was seized by GMAC on or about October 22, 2001 and the bookkeeping entries made by GMAC showing the sale of any such inventory as well as information of the nature described in Interrogatories 4 and 7 of Landay's First Set of Interrogatories in this action.

13.   The Borrower's intellectual property (trademarks, trade names, patents, etc), including but not limited to: (a) GMAC's maintenance of and/or sale or other disposition of these assets following seizure on or about October

6

22, 2001 to date (including but not limited to any actions taken by GMAC concerning purchase inquiries about which it was advised by Landay's New York counsel, Steve Rosenberg); (b) GMAC's record keeping concerning such assets and the sale or disposition thereof; and (c) information of the nature described in Interrogatories 5 and 7 of Landay's First Set of Interrogatories.

14.    All Borrowers' assets other than accounts receivable, inventory and intellectual property that were seized by GMAC on October 22, 2001, including without limitation the identity and disposition of such assets, the bookkeeping entries made crediting the loan with collections relating to such assets (if any), the location of any unsold assets, the documents that GMAC maintained that reflect such assets, and information of the nature described in Interrogatories 6 and 7 of Landay's First Set of Interrogatories.

15.    Exhibit 4 to Landay's First Set of Interrogatories.

16.    Exhibit 5 to Landay's First Set of Interrogatories, including without limitation an explanation of each entry, the source of the information for each entry, how each such entry was calculated and information of the nature described in Interrogatory 11 of Landay's First Set of Interrogatories.

17.    GMAC reports such as Exhibit 6 to Landay's First Set of Interrogatories, including without limitation an identification of all such computer reports relating to the Borrowers and Landay, an explanation of the entries, the source of information for each entry, and information of the nature described in Interrogatory 11.

18.    The Letter of Credit provided to Disney on account of Borrowers, including without limitation information of the nature described in Interrogatory 9 of Landay's First Set of Interrogatories.

19.    The accounting sought by Landay concerning the alleged debt owed GMAC, including but not limited to GMAC's failure and/or refusal to provide that accounting (admitted by GMAC in paragraph 54 of its Answer.)

20.    The Seasonal Overadvance discussed in paragraphs 17 and 18 of the Amended Complaint, including without limitation GMAC's denial (Answer, Paragraph 20) of Landay's allegation that GMAC failed to make the May Seasonal Overadvance in the amounts agreed.

21.    The circumstances surrounding Landay providing the $250,000 Letter of Credit admitted by GMAC in paragraph 19 of its Answer.

22. The circumstances surrounding Landay's extension of the deadline for the $250,000 Letter of Credit, admitted by GMAC in Paragraph 25 of its Answer.

23. GMAC's engagement of RAS Associates concerning Borrowers and/or Landay (a) in the period prior to October 22, 2001; and (b) in the period October 22, 2001 to date, including but not limited to the work RAS performed for GMAC.

24. The Forbearance Agreement and Ratification and Amendment of Guaranty (GMAC Answer, paragraph 32), including without limitation, the circumstances surrounding execution of these documents, GMAC's internal discussions and communications (including with any agent or expert that it engaged, such as RAS Associates), and representations made by GMAC to Landay.

25. The circumstances surrounding (including any representations by GMAC to Landay) Landay's provision of an additional $1,000,000 in cash collateral and an extension of the $250,000 Letter of Credit. See paragraph 33 of GMAC Answer admitting that Landay provided the foregoing.

26. GMAC's performance of the terms of the Forbearance Agreement and the Financial Plan (including the schedules) incorporated therein, including but not limited to: (a) the release of funds to Borrowers; and (b) a description of all documents relating to the release of such funds (including what bookkeeping entries reflect the release of funds).

27. Communications concerning the Financial Plan and/or the release of funds to Borrowers pursuant to such plan, including without limitation, communications: (a) within GMAC; (b) between GMAC and its advisors (such as RAS); and (c) between Landay and/or Borrowers and GMAC.

28. GMAC's decision to declare the loan in default and seek immediate payment.

29. The Platinum proposal discussed in Paragraphs 47 and 48 of the Complaint, including without limitation the discussions and actions taken by GMAC concerning that proposal and why GMAC chose to foreclose on Borrowers rather than allow the loan to be bought out by Platinum.

30. GMAC's filing pursuant to M.G.L. 271, Section 49, including without limitation, the date GMAC's document was actually received and file-stamped by the Massachusetts Attorney General.

31.    GMAC's compliance with the document retention requirements of M.G.L. 271, Section 49.

32.    The class action settlements with (a) Visa/MasterCard; and (b) General American Insurance about which GMAC was advised by Landay's New York council Steve Rosenberg.

33.    The current home and work addresses and telephone numbers of John R. Fitzpatrick and Jane Frangos.

198328_1

**EXHIBIT E**

<u>In lieu of Landay's proposed designation #3</u>:  GMAC's calculation of the amounts of money claimed due on the loan to Borrowers for the period October 22, 2001 to date.

<u>In lieu of Landay's proposed designation #4</u>:  The account history of GMAC's loan to Borrowers from October 22, 2001 to date.

<u>In lieu of Landay's proposed designation #5</u>: The GMAC monthly statements attached as Exhibit 2 to Landay's First Set of Interrogatories for the period October 22, 2001 to date.

<u>In lieu of Landay's proposed designation #6 and #7</u>:  The entries made in the documents attached as Exhibits 2, and 3 to Landay's First Set of Interrogatories in this action.

<u>In lieu of Landay's proposed designation #8</u>:  The crediting against the Borrowers' loan balance of the collection of the $4,100,000 letter of credit, the $250,000 standby letter of credit and the $1,000,000 cash deposit supplied by Landay as collateral to secure the Borrowers' loan.

<u>In lieu of Landay's proposed designation #16</u>: First Set of Interrogatories.        The entries in Exhibit 5 to Landay's

<u>In lieu of Landay's proposed designation #17</u>: First Set of Interrogatories.        The entries in Exhibit 6 to Landay's



EXHIBIT
Landay
55
8·19·05

PENGAD 800-631-6989

# EXHIBIT F

# In The Matter Of:

*Gmac Commercial Credit, LLC  v.*
*David L. Landay*

---

*John Rijo*
*Vol. 1, March 29, 2004*

---

*Greenhouse Reporting, Inc.*
*Computerized Litigation Support*
*363 Seventh Avenue*
*20th Floor*
*New York, NY  10001*
*(212) 279-5108     FAX: (212) 279-5431*

Original File JR032904.V1, 213 Pages
Min-U-Script® File ID: 3767149642

**Word Index included with this Min-U-Script®**

Page 25

*J. Rijo*

[1]
[2] time this happened?
[3]    A: It would have been — I don't
[4] remember the specific date, no.
[5]    Q: Can you generally?
[6]    A: Generally the entire process I was
[7] at Seneca, the liquidation was only months, it
[8] would have been the early October, end of
[9] November.
[10]    Q: The only thing you know about it is
[11] what's reflected in your memos?
[12]    A: I don't quite understand what you're
[13] asking.
[14]    Q: Here's what I'm trying to avoid,
[15] sir. We all can read your memos and I don't
[16] want you to have sit here day after day reading
[17] those memos. There are a lot of memos.
[18]    I'm saying if you're going to tell
[19] me, the thing I know is what's in my memo,
[20] I don't need to yank it out and I can just read
[21] it on my own. If you know something in addition
[22] to what's reflected in your memo, then tell us.
[23]    A: That's the only thing that I recall.
[24]    Q: Is in your memos?
[25]    A: About the accounts receivable,

Page 26

*J. Rijo*

[1]
[2] correct.
[3]    Q: Did you maintain duplicates of that
[4] backup information on accounts receivable that
[5] you sent to GMAC?
[6]    A: No, not that I recall. Don't
[7] remember.
[8]    Q: At a certain point in time you no
[9] longer were involved with Seneca, correct?
[10]    A: Correct.
[11]    Q: And at that point in time there was
[12] still additional inventory, correct, you hadn't
[13] sold everything?
[14]    A: Correct, there was still some
[15] inventory.
[16]    Q: There was still records at the
[17] company, correct?
[18]    A: I believe there was still some
[19] records at the company.
[20]    Q: Do you know what happened to those
[21] records?
[22]    A: The majority of the records were
[23] relocated to the storage units down the street
[24] from Seneca.
[25]    Q: Under whose name were those records

Page 27

*J. Rijo*

[1]
[2] kept?
[3]    A: The storage units was taken out in
[4] GMAC's name.
[5]    Q: Do you know how long there was a
[6] lease on that storage unit?
[7]    A: I don't recall. Most storage units
[8] have some lease. I don't recall the specifics
[9] with this lease, but there was some kind of
[10] agreement.
[11]    Q: Did you have anything to do with
[12] entering into that lease?
[13]    A: Yes.
[14]    Q: What did you do?
[15]    A: I located and coordinated with the
[16] unit available to have the records moved to.
[17]    Q: You said it was down the street from
[18] Seneca?
[19]    A: Yes.
[20]    Q: What street was that?
[21]    A: I believe it was Fortune Boulevard.
[22]    Q: Do you remember the name of the
[23] storage facility?
[24]    A: The specific name, no idea.
[25]    Q: Anywhere close to it?

Page 28

*J. Rijo*

[1]
[2]    A: The name?
[3]    Q: Yes.
[4]    A: No honestly, I don't. It's a
[5] public storage right down the street from the
[6] office.
[7]    Q: Same block?
[8]    A: No. Less than probably a mile,
[9] though.
[10]    Q: On Fortune?
[11]    A: I believe on Fortune. I'm not sure
[12] if there's a name change of the street after you
[13] pass a certain length, but it's basically the
[14] same street. Seneca's address was Fortune, so I
[15] assume it's the same street.
[16]    Q: Other than the accounts receivable
[17] backup that you sent to GMAC, are you aware of
[18] any other documents regarding accounts
[19] receivables other than the ones that you were
[20] involved with, because those were ongoing
[21] clients of Seneca?
[22]    MR. WAGNER: Objection to the
[23] form. You can answer it if you understood
[24] it.
[25]    A: I don't understand it.

**EXHIBIT G**

Page 1

1

2          UNITED STATES DISTRICT COURT

3            DISTRICT OF MASSACHUSETTS

4

5    DAVID L. LANDAY,                )
                                     )
6            Plaintiff,              )   No. 04-CV-11955-WGY
                                     )
7            vs.                     )
                                     )
8    GMACCF COMMERCIAL CREDIT,       )
     LLC, and GMACCF COMMERCIAL      )
9    FINANCE, LLC,                   )
                                     )
10           Defendants.             )
     ----------------------------)

11

12

13

14

15

16        DEPOSITION OF KATHLEEN A. PAPPALARDO

17            New York, New York

18          Thursday, August 18, 2005

19

20

21

22

23

     Reported by:
24   ANDREA L. KINGSLEY, RPR
     CSR NO. 001055
25   JOB NO. 4765

Page 170

Pappalardo

1
2      A.  I don't know anything about John
3  Rijo's other than that I skimmed through
4  it.
5      **Q.  What I'm saying, does it not**
6  **appear that he is making reference to**
7  **backup tapes of Seneca's computer system?**
8          MR. HOULIHAN:  Objection.
9      A.  That's what it appears.
10     **Q.  Have you ever seen such tapes or**
11 **used them in the course of your work?**
12     A.  These are Seneca's tapes?
13     **Q.  Seneca's tapes.**
14     A.  I've never seen or used them.
15     **Q.  Other than reading pages 9 and 10**
16 **of Mr. Rijo's deposition, have you been**
17 **made aware from any source that they exist**
18 **or existed?**
19         MR. HOULIHAN:  You may answer yes
20     or no.
21     A.  No.
22 RQ     MR. HOFFMAN:  I guess for the
23     record I just want to state that the
24     deposition transcript indicates that
25     the witness, Jay Rijo, sent them to

TSG Reporting - Worldwide    212-702-9580

Page 171

Pappalardo

1
2  counsel.  If in fact they are in the
3  possession of GMACCF's counsel, we'd
4  certainly like to have copies of them
5  pursuant to our document request.  If
6  they're found in some other location,
7  we'd also like other copies.
8          MR. HOULIHAN:  The deposition that
9  Mr. Hoffman has been reading from is a
10 deposition that was taken in the New
11 York action.  There has been
12 substantial discovery disputes in the
13 New York action and, to my knowledge,
14 I'm not admitted in the New York action
15 and I have no desire to become enmeshed
16 in the New York action but as far as I
17 understand it, Mr. Landay's repeated
18 efforts to obtain additional
19 documentation in the New York action
20 have all been denied by the New York
21 court.  And that as far as the New York
22 court is concerned, the production that
23 has been made to date in the New York
24 action is fully compliant with the
25 requirements of the New York action.

TSG Reporting - Worldwide    212-702-9580

Page 172

Pappalardo

1
2      I am certainly willing to listen
3  to Mr. Hoffman explain how the
4  materials might be relevant or
5  reasonably calculated to the lead to
6  the discovery of admissible evidence in
7  the Massachusetts action but on the
8  face of it, I'm not sure that I see it.
9      This is probably also a good
10 opportunity for me to go back to the
11 point I said in the beginning, I would
12 revisit at the end of the deposition --
13 are you done?
14         MR. HOFFMAN:  No.  I would like to
15     respond to what you just said.
16         MR. HOULIHAN:  But are you done
17     with the witness?
18         MR. HOFFMAN:  Are we done with the
19     witness?
20         MR. LANDAY:  I think so yes.
21         MR. HOULIHAN:  In connection with
22     the matter that I sort of said I would
23     consider and respond at the end, I
24     would just like to note a couple of
25     things.

TSG Reporting - Worldwide    212-702-9580

Page 173

Pappalardo

1
2      The forbearance agreement which is
3  dated August 9, 2001 states on page 2
4  that each of the clients, which would
5  be the Seneca and Brookfield,
6  Mr. Landay was an executive officer of
7  both companies, "Each of the clients
8  hereby acknowledges, confirms and
9  agrees that as of August 8, 2000, the
10 client jointly and severally owes the
11 factor of the GMACCF the aggregate
12 principal amount of not less than
13 $6,719,177.62."
14     After some additional text which I
15 won't burden people with in the same
16 paragraph it states, "Each of the
17 clients hereby acknowledges, confirms
18 and agrees that as of the date hereof
19 the existing debt is due and owing by
20 the clients jointly and severally to
21 the factor without offset, defense or
22 counterclaim of any kind, nature or
23 prescription whatsoever.  And that
24 document is signed on behalf of Seneca
25 and Brookfield by what appears -- with

TSG Reporting - Worldwide    212-702-9580

Pappalardo

a signature that appears to be
Mr. Landay's as president.
     In addition to that --
     MR. HOFFMAN: Can you tell me what
that all relates to?
     MR. HOULIHAN: It relates to the
relevance of any materials that goes
back -- that go back prior to depending
on how you want to either calculate the
end of September 2001 or October 22,
2001. As I understand, it much of the
documents that you've asked to have
produced relate to periods as to which
I don't see how there could possibly be
any dispute and, therefore, I don't see
how they could possibly lead to the
discovery of evidence that would be
admissible in our action.
     There's additional documentation
that indicates that your client has
accepted the balance due as of -- in
one document August, 2001, and another
document as of the end of September
2001. Given that fact, I do not see

Pappalardo

how documentation relating to periods
prior to at the earliest August 5, 2001
could be reasonably calculated to lead
to the discovery of admissible evidence
in the Massachusetts action. So I can
provide other documentation if you like
but that's the gist of it.
     I'm willing to listen to an
explanation of how that could possibly
be but it seems to me the balance
that's outstanding and the fact that
there's no defense to that balance has
already been admitted and is not
contested and, therefore, documentation
relating to how that balance is created
is irrelevant to the disputes in
Massachusetts and I don't see how it
could possibly lead to the discovery of
admissible evidence.
     I also point out that your
complaint to the extent there's any
mention of usurious interest rates, the
allegations in the complaint are
limited to the months of November and

Pappalardo

December 2001 and so my -- for present
purposes, I am not willing to commit to
producing documents that relate to time
periods prior to August of 2001.
     MR. HOFFMAN: Well, obviously I
disagree totally, totally with what
you've said. Your description of
relevancy wouldn't even survive in a
court of law as opposed to discovery.
Moreover, these documents belong to the
principal, not all of them, the
warehouse documents belong to the
corporation, or the corporations which
I believe have now been delivered to
your office.
     But talking about the documents
which have been identified today by the
witness, I believe, namely, let's talk
about the client statements, it is
astounding in my view that you take the
position that client statements
relating to an account on which you are
suing my client as guarantor are not
discoverable and, frankly, I don't

Pappalardo

blame you for this because --
     MR. HOULIHAN: That's not our
action.
     MR. HOFFMAN: As I say, I don't
blame you for this, I say they are
relevant to my action, I'm certain they
are relevant to the other action, but
we have chapter 93A count, we have a
usury count, I do not agree with
your -- with regard to usury, I think
if rates were usurious including all
expenses earlier, I think we're
entitled to recover them. So I just
disagree. I think we're going to have
to be fighting this one out in court.
     MR. HOULIHAN: That maybe but I
don't see how when the corporate
defendants both acknowledge that a debt
is due in a certain amount as of August
of 2001. And that there's no defense
to that date as of August 2001, how
there could possibly be an issue with
respect to usury for periods prior to
that time.

Page 178

```
 1         Pappalardo
 2      MR. HOFFMAN:  Well, then we
 3   disagree.  We'll have to agree to
 4   disagree.
 5      MR. HOULIHAN:  That will require
 6   probably a motion.  I'm not willing to
 7   agree to produce that material without
 8   some indication of how it could be
 9   relevant because I don't see it.
10      MR. HOFFMAN:  Let me confer with
11   my client just for one second.
12      MR. HOULIHAN:  Sure.
13      (Recess taken.)
14      MR. HOFFMAN:  I have nothing
15   further to say unless you have
16   something further to say.
17      MR. HOULIHAN:  No.  The only other
18   thing I would say, as far as I'm
19   concerned, I'm certainly willing to
20   listen to anything more that you have
21   to say on the subject, but unless
22   there's something more that you have to
23   say, as far as I'm concerned, what
24   we've had on the record would suffice
25   for purposes of the discovery
```

TSG Reporting - Worldwide   212-702-9580

Page 179

```
 1         Pappalardo
 2   conference that we're supposed to have
 3   under the local rules.
 4      MR. HOFFMAN:  You may go off the
 5   record.
 6      (Time noted: 5:37)
 7
 8   _____
 9      KATHLEEN A. PAPPALARDO
10
11   Subscribed and sworn to before me
12   this ____ day of _____, 2005
13
14   _____
15
16
17
18
19
20
21
22
23
24
25
```

TSG Reporting - Worldwide   212-702-9580

Page 180

```
 1
 2         C E R T I F I C A T E
 3   STATE OF NEW YORK   )
 4                    : ss.
 5   COUNTY OF NEW YORK  )
 6      I, ANDREA L. KINGSLEY, a Notary
 7   Public within and for the State of New
 8   York, do hereby certify:
 9      That KATHLEEN A. PAPPALARDO, the
10   witness whose deposition is
11   hereinbefore set forth, was duly sworn
12   by me and that such deposition is a
13   true record of the testimony given by
14   the witness.
15      I further certify that I am not
16   related to any of the parties to this
17   action by blood or marriage, and that
18   I am in no way interested in the
19   outcome of this matter.
20      IN WITNESS WHEREOF, I have
21   hereunto set my hand this 23rd day
22   of August, 2005.
23
24   _____
25      ANDREA L. KINGSLEY
```

TSG Reporting - Worldwide   212-702-9580

Page 181

```
 1
 2   ---------------- I N D E X ---------------
 3   WITNESS        EXAMINATION BY      PAGE
 4   K. Pappalardo   Mr. Hoffman      9
 5
 6   ---------- INFORMATION REQUESTS ----------
 7   DIRECTIONS: 26
 8   RULINGS:
 9   TO BE FURNISHED:
10   REQUESTS: 44, 50, 65, 170
11   MOTIONS:
12
13   -------------- EXHIBITS --------------
14   LANDAY              FOR ID.
15   Landay Exhibit 1, Seneca Sports Damages
16   Calculation 10/22/2001 to 10/26/04..... 37
17   Landay Exhibit 2, Seneca Sports Damages
18   Calculation 6/18/2002 to June 2004..... 37
19   Landay Exhibit 3, Seneca Sports Damages
20   Calculation 10/22/2001 to August 17, 2005
21   ..................................... 37
22   Landay Exhibit 4, client statements.... 42
23   Landay Exhibit 5, GLAN 2398 through 2419
24   ....................................... 80
25
```

TSG Reporting - Worldwide   212-702-9580

Page 182

--------------- EXHIBITS ---------------

LANDAY                         FOR ID.

Landay Exhibit 6, screen dated 10/22/01...
................................... 96

Landay Exhibit 7, screen dated 10/29/01...
................................... 96

Landay Exhibit 8, screen dated 12/13/01...
................................... 97

Landay Exhibit 9, memo with attachments
dated February 14, 2001............... 107

Landay Exhibit 10, GMAC Commercial Credit
loan committee minutes February 10, 2001
................................... 110

Landay Exhibit 11, March 10, 2001 e-mail
................................... 112

Landay Exhibit 12, April 6, '01 e-mail....
................................... 112

Landay Exhibit 13, April 17, 2001 e-mail
................................... 112

Landay Exhibit 14, loan committee document
dated April 25, 2001.................. 113

Landay Exhibit 15, loan committee minutes
of April 30, 2001..................... 113

TSG Reporting - Worldwide    212-702-9580

Page 183

1
2       --------------- EXHIBITS ---------------
3       LANDAY                         FOR ID.
4       Landay Exhibit 16, loan committee minutes
5       dated 5/14/01......................... 113
6       Landay Exhibit 17, client contract
7       information........................... 113
8       Landay Exhibit 18, memo dated June 27, 2001
9       ................................... 113
10      Landay Exhibit 19, GMAC Commercial Credit
11      clients account for review as of 5/03/01
12      ................................... 113
13      Landay Exhibit 20, memo dated May 9,
14      2001 ......................................
15      113
16      Landay Exhibit 21, loan committee meeting
17      minutes 7/2/01........................ 114
18      Landay Exhibit 22, printed document
19      relating to Seneca Sports............. 114
20      Landay Exhibit 23, printed document
21      relating to Seneca Sports, Inc. 8/8/01....
22      ................................... 114
23      Landay Exhibit 24, loan committee memo
24      dated November 8, 2001................ 114
25      Landay Exhibit 25, document........... 124

TSG Reporting - Worldwide    212-702-9580

Page 184

1
2       --------------- EXHIBITS ---------------
3       LANDAY                         FOR ID.
4       Landay Exhibit 26, Seneca Sports, Inc.
5       liquidation analysis as of June 30, 2001
6       ................................... 125
7       Landay Exhibit 27, memo to Doug Rainville
8       dated 7/20/2004....................... 125
9       Landay Exhibit 28, report from John Rijo
10      dated October 19, 2001................ 125
11      Landay Exhibit 29, memo dated October 22,
12      2001.................................. 125
13      Landay Exhibit 30, memo dated October 23,
14      2001.................................. 125
15      Landay Exhibit 31, memo dated October 24,
16      2001.................................. 125
17      Landay Exhibit 32, memo dated October 25,
18      2001.................................. 125
19      Landay Exhibit 33, memo dated October 29,
20      2001.................................. 125
21      Landay Exhibit 34, memo dated October 30,
22      2001.................................. 126
23      Landay Exhibit 35, memo dated October 30,
24      2001.................................. 126
25

TSG Reporting - Worldwide    212-702-9580

Page 185

1
2       --------------- EXHIBITS ---------------
3       LANDAY                         FOR ID.
4       Landay Exhibit 36, memo dated November 1,
5       2001.................................. 126
6       Landay Exhibit 37, memo dated November 2,
7       2001.................................. 126
8       Landay Exhibit 38, memo dated November 4,
9       2001.................................. 126
10      Landay Exhibit 39, memo dated November 6,
11      2001.................................. 126
12      Landay Exhibit 40, memo dated November 7,
13      2001.................................. 126
14      Landay Exhibit 41, memo dated November 8,
15      2001.................................. 126
16      Landay Exhibit 42, memo dated November 9,
17      2001.................................. 127
18      Landay Exhibit 43, memo dated November 15,
19      2001.................................. 127
20      Landay Exhibit 44, memo dated November 19,
21      2001.................................. 127
22      Landay Exhibit 45, memo dated November 20,
23      2001.................................. 127
24      Landay Exhibit 46, memo dated November 21,
25      2001.................................. 127

TSG Reporting - Worldwide    212-702-9580

Page 186

1
2  -------------- EXHIBITS --------------
3  LANDAY                    FOR ID.
4  Landay Exhibit 47, computer cover sheet...
5  ..................................... 127
6  Landay Exhibit 48, memo dated November 26,
7  2001.................................. 127
8  Landay Exhibit 49, GMAC Commercial Finance,
9  LLC's response to Landay's first set of
10  interrogatories...................... 141
11  Landay Exhibit 50, GLAN 01165 through GLAN
12  01171................................ 142
13  Landay Exhibit 51, Exhibit 3 to Landay
14  first set of interrogatories.......... 147
15  Landay Exhibit 52, Exhibit 1 to the
16  interrogatories...................... 160
17  Landay Exhibit 53, Seneca Sports accounts
18  receivable aging report............... 161
19
20
21
22
23
24
25

TSG Reporting - Worldwide    212-702-9580

Page 187

1
*** ERRATA SHEET ***
2
3  CASE: LANDAY V GMAC
   DATE: AUGUST 18, 2005
4  WITNESS: KATHLEEN A. PAPPALARDO
5  PAGE  LINE      FROM      TO
6   |      |        |         |
7   |      |        |         |
8   |      |        |         |
9   |      |        |         |
10  |      |        |         |
11  |      |        |         |
12  |      |        |         |
13  |      |        |         |
14  |      |        |         |
15  |      |        |         |
16  |      |        |         |
17  |      |        |         |
18
19
20        KATHLEEN A. PAPPALARDO
21  Subscribed and sworn to before me
    this _____ day of _____, 2005
22
23
24  _____
        (Notary Public)
    My Commission Expires:
25

TSG Reporting - Worldwide    212-702-9580

# EXHIBIT H

1

2                    UNITED STATES DISTRICT COURT

3                    DISTRICT OF MASSACHUSETTS

4

5      DAVID L. LANDAY,                    )

6                    Plaintiff,           )

7           vs.                           )    No. 04-CV-11955-WGY

8      GMACCF COMMERCIAL CREDIT,  )

9      LLC, and GMACCF COMMERCIAL )

10     FINANCE, LLC,                      )

11                    Defendants.         )

12

13

14          DEPOSITION OF KATHLEEN A. PAPPALARDO

15                  New York, New York

16              Friday, August 19, 2005

17

18

19

20

21

22

23     Reported by:

24     Bonnie Pruszynski, RMR

25     JOB NO. 4766

Page 2

```
1
2                    August 19, 2005
3                    10:07 a.m.
4
5
6          Deposition of KATHLEEN A. PAPPALARDO,
7    held pursuant to Rule 30(b)(6) of the
8    Federal Rules of Civil Procedure at the
9    offices of Cohen, Tauber, Spievack & Wagner,
10   LLP, 420 Lexington Avenue, New York, New
11   York, pursuant to Notice, before Bonnie
12   Atella Pruszynski, Registered Merit
13   Reporter, and Notary Public of the State of
14   New York.
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
1
2    A P P E A R A N C E S:
3
4    LYNCH BREWER HOFFMAN & FINK, LLP
5    Attorneys for Plaintiffs
6           101 Federal Street
7           Boston, Massachusetts 02110
8    BY:    ALAN HOFFMAN, ESQ.
9
10   EDWARDS & ANGEL, LLP
11   Attorneys for Defendants
12          101 Federal Street
13          Boston, Massachusetts 02110
14   BY:    JOHN A. HOULIHAN, ESQ.
15
16   COHEN TAUBER SPIEVACK & WAGNER, LLP
17   Attorneys for Plaintiffs in New York Action
18          420 Lexington Avenue
19          New York, New York  10170
20   BY:    STEPHEN WAGNER, ESQ.
21          SIMCHA HERZOG, ESQ.
22
23
24
25
```

Page 4

```
1
2          IT IS HEREBY STIPULATED AND AGREED, by
3    and between counsel for the respective parties
4    hereto, that the filing, sealing and
5    certification of the within deposition shall be
6    and the same are hereby waived;
7          IT IS FURTHER STIPULATED AND AGREED
8    that all objections, except as to the form of the
9    question and motions to strike, shall be reserved to
10   the time of the trial;
11         IT IS FURTHER STIPULATED AND AGREED
12   that the within deposition may be signed before
13   any Notary Public with the same force and effect
14   as if signed and sworn to before the Court.
15
16
17
18
19
20
21
22
23
24
25
```

Page 5

```
1
2          MR. WAGNER:  Good morning.
3          After yesterday's deposition,
4    Mr. Houlihan told me certain questions came
5    up with regard to a computer tape that the
6    witness was asked about, and that there was
7    a reference by someone that Mr. Rijo had
8    testified to back-up computer tapes.
9          Frankly, I didn't know anything about
10   the computer tapes, although I was present
11   at the Rijo deposition.
12         But at Mr. Houlihan's request, we went
13   back and went through all of the boxes that
14   we have, that we have accumulated since the
15   beginning of this case and, we did find five
16   cassettes that I am going to identify for
17   the record.
18         These cassettes are the old tape
19   cassettes with actual tape, and they appear
20   to be the back-up tapes that were discussed
21   by Mr. Rijo and asked about yesterday.
22         The first tape I will identify is
23   labeled Seneca Sports System Tape One,
24   10-03-01.  Underneath it says name:  SYS 1.
25         The second cassette is Seneca Sports
```

Page 6

1
2  System Tape Two, 10-23-01, name: SYS 2.
3     The third cassette is dated
4  10-22-2001, with the following letters on it
5  C O P -- I'm sorry, C-O-M-P-S-E-N-B-O 1 001.
6     The fourth cassette is labeled Seneca
7  Sports, VOL 555, tape one, 10-23-01. Name:
8  VOL 551.
9     And the last cassette is labeled
10 Seneca Sports, VOL 555 tape 2, 10-23-01.
11 Name: VOL 552.
12    I'm going to make copies of the labels
13 and give them to counsel.
14    MR. HOULIHAN:  And you are going to
15 give the labels to counsel, and then we are
16 going to work together, both sets of counsel
17 in both the New York action and the
18 Massachusetts action, to locate a
19 third-party vendor to attempt to run the
20 tapes and verify what's on them, and make
21 whatever arrangements are suitable once we
22 determine what's on them, in terms of
23 printing out paper copies of portions of it.
24    MR. HOFFMAN:  Sounds acceptable to us.
25    MR. WAGNER:  Okay.

TSG Reporting - Worldwide    212-702-9580

Page 7

1
2     MR. HOFFMAN:  Are we all set?
3     MR. HOULIHAN:  Off the record.
4     (Discussion held off the record)
5     MR. HOFFMAN:  Firstly, I think we
6  should agree that the same stipulations that
7  were entered into yesterday would apply to
8  today's deposition.
9     MR. HOULIHAN:  Correct.  Including the
10 opening statement that related to the
11 inter-relation between the New York action
12 and the Massachusetts action.
13    MR. HOFFMAN:  Correct, right.  Agreed.
14    I have marked as Exhibit 1, a Notice
15 of Deposition of GMACCF Commercial Finance,
16 LLC, a 30(b)(6) deposition, which contains a
17 listing of topics.
18    Exhibit 2 is a listing of topics
19 prepared by Mr. Houlihan as to which this
20 witness is being proffered as a 30(b)(6)
21 witness; is that correct?
22    MR. HOULIHAN:  That's correct.
23    MR. HOFFMAN:  At her fact deposition
24 yesterday --
25    (Discussion held off the record)

TSG Reporting - Worldwide    212-702-9580

Page 8

1
2     Correct that to 54 and 55.  The notice
3  of deposition is labeled Exhibit 54, and the
4  statement of topics prepared by Mr. Houlihan
5  is Landay Exhibit 55.
6     (Landay Exhibit 54 and Landay Exhibit
7  55 marked for identification as of this
8  date.)
9     MR. HOFFMAN:  Yesterday, we took the
10 fact deposition of the witness, Ms.
11 Pappalardo, and a portion, if not a
12 substantial portion of the questioning
13 related to issues covered by the topics on
14 Landay Exhibit 55.
15    I do not intend to repeat the -- to
16 any substantial degree, the testimony that
17 was taken yesterday.
18    My proposal, which I discussed with
19 Mr. Houlihan, is that when we receive the
20 transcript of the fact deposition, that I
21 undertake the burden of going through it and
22 identify by page number, by line number,
23 those portions which I believe are, are
24 covered in Exhibit 55 as topics to be, for
25 which this witness is being proffered today

TSG Reporting - Worldwide    212-702-9580

Page 9

1
2  as the 30(b)(6) witness.
3     And that Mr. Houlihan review my
4  listing and respond as to whether he is in
5  agreement with all or part of it.  And that
6  we work in good faith to come to a
7  resolution of agreement as to which portions
8  of the fact deposition that was taken
9  yesterday are also to be considered as
10 30(b)(6) deposition.
11    And that's the proposal that I am
12 making in connection with the deposition
13 today.
14    MR. HOULIHAN:  I am willing to go
15 forward with the proposal as outlined by
16 Mr. Hoffman, with the understanding that the
17 witness is here and prepared to answer
18 whatever 30(b)(6) questions, whatever
19 appropriate 30(b)(6) questions Mr. Hoffman
20 puts forward.
21    And while I am certainly willing to
22 work in good faith to identify any parts of
23 yesterday's testimony that might be
24 appropriate 30(b)(6) testimony, I am not
25 agreeing to bring the witness back after

TSG Reporting - Worldwide    212-702-9580