UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-CV-11955-WGY

| | |
|---|---|
| DAVID L. LANDAY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GMACCF COMMERCIAL CREDIT, LLC and ) <br> GMACCF COMMERCIAL FINANCE, LLC, ) <br> ) <br> Defendants. ) <br> ) | **PLAINTIFF'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES AND SUPPORTING MEMORANDUM** |

Plaintiff David L. Landay ("Landay" or "Plaintiff") moves this Court pursuant to Fed. R. Civ. P. 37(a) to enter an order compelling GMAC Commercial Finance LLC ("GMAC" or "Defendant") to provide further answers to each of the seventeen interrogatories contained in Landay's First Set of Interrogatories (the "First Set"), including all subparts. Exhibit 1 hereto is GMAC's Responses to Landay's First Set of Interrogatories.

GMAC has taken the position that it is not required to answer all seventeen of Landay's interrogatories because the interrogatories have subparts. GMAC has counted most subparts as if each were a separate interrogatory, and it has refused to answer any more than the first three interrogatories on the ground that their subparts total the twenty-five interrogatories permitted by the rules. GMAC has not answered Interrogatories 4 through 17 at all. As to the first three interrogatories that GMAC purports to answer, GMAC has raised so many objections to each of these three interrogatories that it is impossible to tell whether or not the information GMAC has deigned to provide is complete.

It is Landay's position that GMAC has waived the right to object to the First Set of Interrogatories because its responses were not served in a timely fashion. Moreover, it is also Landay's position that the subparts do not count as separate interrogatories under Fed.R.Civ.P. 33(a) and Local Rule 26.1(c) and, therefore, his First Set of Interrogatories do not violate the numerical limits imposed by these rules. If, however, the Court finds that the subparts increase the number of interrogatories propounded in the First Set, Landay moves the Court to grant leave pursuant to Fed. R. Civ. P. 33(a) to propound such additional interrogatories and to order GMAC to answer such interrogatories in full and without objection.

## I.    BACKGROUND

In September of 2000, GMAC entered into a factoring relationship with two small corporations (the "Borrowers") of which Landay was president, director, major shareholder and secured creditor for $3,450,000 that he had loaned Borrowers.

As security for loans made to them by GMAC, the corporate Borrowers pledged to GMAC all their assets. In consideration for the loan and pursuant to discussions with GMAC, Landay provided GMAC a personal guaranty as well as substantial additional collateral consisting of personal assets; he also subordinated his prior security interest in Borrowers' assets to the security interest provided by Borrowers to GMAC.

On October 22, 2001, approximately one year after the relationship began, GMAC called the loan, seized the assets of the corporate Borrowers and $5,350,000 in personal collateral that Landay had provided. It also confiscated all the books and records of Borrowers. Approximately seven months later, GMAC sued Landay in New York under his guaranty for an alleged shortfall after supposedly collecting, liquidating

and crediting the assets of the corporate Borrowers. Although Landay has repeatedly asked GMAC to provide him with an accounting concerning the loan and the money allegedly still due, GMAC has not accounted. Indeed, GMAC admits its obligation to account and its failure to do so (Answer, paragraph 54).

Landay commenced the instant litigation against GMAC to recover all his losses caused by GMAC's actions concerning the loan to Borrowers. Landay alleged several causes of action. Four of those claims were sustained by this Court following GMAC's motion for judgment on the pleadings: (a) fraud, (b) usury, (c) violation of Landay's rights as junior creditor, and (d) unfair business practices forbidden by M.G.L. c. 93A.

Landay's First Set of Interrogatories was served on GMAC by hand on June 17, 2005. Defendant's responses were due to be served on July 18, 2005. GMAC did not respond on that date. On July 19, after GMAC's responses were due, the Court granted GMAC's motion to stay discovery, which had been filed on July 1, 2005, until the Court ruled on GMAC's pending motion for judgment on the pleadings. On July 22, 2005, the Court ruled on GMAC's pending motion for judgment on the pleadings, sustaining four of Landay's claims. Landay thereafter made demand for the interrogatory answers that had been due on July 18. However, GMAC did not serve its "GMAC Commercial Finance LLC's Response to Landay's First Set of Interrogatories" (the "Response") <u>until August 10, 2005</u>.[1] GMAC's Response consisted of a battery of objections and very little information. GMAC did not even purport to answer 14 of the 17 interrogatories.

The information sought by Landay's First Set of Interrogatories is necessary to Landay's claims in the instant action. Landay will accept this information from any

---

[1] GMAC's counsel notified the undersigned that responses would be available late on August 9, 2005. The undersigned did not object to a delivery on August 10, 2005, as opposed to August 9th since a delay of one additional day was immaterial to him.

appropriate source: documents, depositions or interrogatories. Unfortunately, the documents produced to date do not answer these questions; in fact they raise questions. Indeed, a large portion of the interrogatories seek explanations of documents produced by GMAC. Moreover, although one of GMAC's many objections to Landay's interrogatories is that a deposition is more appropriate than an interrogatory (see e.g., GMAC's Responses, p. 11), GMAC objected to most of the designated topics and refused to allow the witness to testify for the corporation on 26 of 33 topics at the August 19, 2005 30(b)(6) deposition.

In other words, it appears to be GMAC's position that it need not provide many of the details concerning the loan to Borrowers from which this litigation stems, no matter what discovery device Landay seeks to employ.

The application of GMAC's position to the facts shows it to be untenable. It is particularly troublesome in light of the tight discovery schedule established in this case. Discovery is scheduled to end on October 28, 2005, and there are many relevant issues as to which GMAC continues to resist discovery.

## II.    ARGUMENT

A.    <u>GMAC Has Waived All Objections</u>.

GMAC's answers and objections to Landay's First Set of Interrogatories were due to be served on July 18, 2005. GMAC did not obtain an extension from Landay or from the Court prior to that date. Since the Court did not stay discovery until <u>after</u> the deadline for GMAC's response, all of GMAC's objections to Landay's First Set of Interrogatories are deemed waived.

In this regard, the law is clear that the failure to file <u>timely</u> objections to the interrogatories constitutes a waiver of objections. <u>Krewson v. City of Quincy</u>, 120 F.R.D. 6, 7 (D. Mass. 1988); <u>Marx v. Kelly, Hart & Hallman, P.C.</u>, 929 F.2d 8, 12 (1st Cir. 1991). Moreover, it has been held that the mere filing of a motion for a stay does not free the moving party for its obligation to obey the discovery rules. See, <u>Willemijn Houdstermaatschaapij Bv, A v. Apollo Computer, Inc.</u>, 707 F. Supp. 1429, 1441 (D. Del. 1989).

> Defendant's argument assumes that the moment it has filed a motion to stay discovery on the damages issue, it need no longer obey basic discovery rules. Defendant is in effect granting itself a stay of discovery. Simple logic teaches that defendant has put the presumption on the wrong side: unless and until it is granted a stay, defendant should be required to conduct discovery as if no motion had been filed at all.

While this Court, unlike the Court in the <u>Apollo Computer, Inc.</u> case, did allow a temporary stay, the stay, which was entered <u>after</u> the due date for GMAC's response, did not operate retroactively to relieve GMAC of its prior waiver. This is not a harsh result. Any objections that are appropriate are discernable from the face of the interrogatories; certainly GMAC's objection that the subsections exceed the maximum interrogatory allowance was discernable, albeit incorrect. Objections can be decided upon within the time limits provided in the Federal Rules. On the other hand, gathering information and formulating it into an interrogatory answer is a more time consuming process, and a stay as to their production can be reasonable under the appropriate circumstances.

Even assuming arguendo that the Court's stay allowed GMAC to delay serving its objections, that stay ended on July 22. Any objections served thereafter were late by any measure. GMAC did not serve its response (including objections) until August 10,

2005, although as noted above GMAC's counsel offered to serve them the day before. Accordingly, all objections must be deemed waived. In this regard, see Local Rule 33.1(D) which, in the analogous situation of objections to interrogatories being overruled, requires the objecting party to serve answers in 14 days "after it is determined that [the interrogatories] should be answered."

      B.     <u>Landay's Interrogatories Do Not Exceed The Numerical Limitation</u>.

Alternatively, even if they are not deemed waived, for the reasons shown below they should be overruled and GMAC ordered to answer in full. GMAC has refused to answer more than the first three interrogatories on the ground that Landay has exceeded the numerical limitation imposed by Fed. R. Civ. P. 33(a) and Local Rule 26.1(c). These rules permit 25 interrogatories <u>and</u> an unlimited number of subparts to such 25 interrogatories so long as the subparts "are logical extensions of the basic interrogatory and seek only to obtain specified additional particularized information with respect to the basic interrogatory." Local Rule 26.1(c). Put another way, Local Rule 26.1(c) specifically provides that subparts of a basic interrogatory that meet the above description are <u>not</u> counted separately towards the 25 interrogatory limit.

While Landay has not found precedents directly interpreting the applicable Local Rule, there is some authority supporting a broad interpretation of the rule. In <u>Myers v. U.S. Paint Company</u>, 116 F.R.D. 165 (D. Mass. 1987), the Court considered a set of interrogatories which, with subparts, numbered 73 at a time when the Local Rule called for no more than 30 interrogatories and did not address the issue of subparts. In ruling in favor of the propounder, the Court wrote as follows:

> For example, if the subparts to a particular interrogatory bore no relation either to the primary question or to one another, the Court could, on the

> basis of its inherent powers to enforce its local rules, strike the set as being a deliberate attempt to circumvent Local Rule 16(a)(1). However, if the subparts are a logical extension of the basic interrogatory and seek to obtain specified additional information with respect to the basic interrogatory, a party does not violate Local Rule 16(a)(1) as it presently stands if the interrogatories, though numbering less than thirty, actually exceed thirty if subparts are counted.

Clark v. Burlington Northern Railroad, 112 F.R.D. 117, 119-120 (N.D. Miss. 1986) apparently concerned a local rule similar to the prior District of Massachusetts rule. In that case, the Court wrote instructively as follows:

> Although this interrogatory obviously calls for several separate bits of information concerning the train involved in the accident, it actually is only one question, even though the subparts are separately enumerated. Interrogatory No. 28, in essence, asks defendant to describe its train. All of the information specifically requested by Interrogatory No. 28 would be encompassed within an interrogatory phrased: 'Please describe Train No. 765 at the time of its collision with the plaintiff's automobile." Such an interrogatory would clearly constitute only one question. Indeed, it could reasonable be construed to call for even more information than the specifics requested by Interrogatory No. 28. The subparts of Interrogatory No. 28 do not expand the scope of the question, "Please describe Train No. 765." Indeed, the subparts serve to narrow the scope by informing defendant of the precise descriptive details desired by plaintiff and relieves defendant of any obligation to supply other information.

In light of theses glosses on the law relating to subparts, the subsections to Landay's seventeen interrogatories meet the criteria of Local Rule 26.1(c). Every interrogatory asks a general question and has subsections that refine for GMAC the information sought by that general question. In every case, the subsections "are logical extensions of the basic interrogatory and seek only to obtain specific particularized information with respect to the basic interrogatory". An examination of the three interrogatories that GMAC has answered (albeit subject to numerous objections) is illustrative.

7

1. <u>Interrogatory 1</u>

GMAC claims that this interrogatory should be counted as "no fewer than eight (8) separate interrogatories." Exhibit 1, p. 2. However, this interrogatory simply asks GMAC to describe its record retention policy and how it relates to documents concerning Borrowers and Landay. The subparts to this interrogatory ask GMAC to be sure that it includes in its answer certain kinds of information concerning its policy and those documents. In this case, where (a) GMAC has failed to produce relevant GMAC documents that Landay believes once existed, these details are essential for discovery. This interrogatory and all its subparts are truly "reasonably calculated to lead to the discovery of admissible evidence" (e.g., documents not yet produced) Fed. R. Civ. P. 26(b)(1). And by no stretch of the imagination can the subparts be called anything but "logical extensions of the basic interrogatory" that "seek only to obtain specific particularized information with respect to the basic interrogatory." Local Rule 26.1(c).

2. <u>Interrogatory 2</u>

Similarly, Interrogatory 2, which GMAC counts as "no fewer than ten (10) separate interrogatories" (Exhibit 1, p. 2), is one basic interrogatory asking GMAC to describe and account for each account receivable that it seized from Borrowers on October 22, 2001. The subparts are designed simply to show the information necessary to the description and accounting.

GMAC has not produced documents sufficient for Landay to ascertain this information himself; for example, it has failed and refused to provide the accounting that it admits is due (Answer, paragraph 54). Clearly the information sought is essential to

Landay's claims and clearly the interrogatory is a single interrogatory with related subparts that should not be counted as separate interrogatories.

3. <u>Interrogatory 3</u>

Interrogatory 3, which GMAC counts as "no fewer than nine (9) interrogatories" (Exhibit 1, p. 11), is the last interrogatory to which GMAC has provided any "answer." As with the preceding two interrogatories, Interrogatory 3 is a basic interrogatory with related subparts that should not be counted as separate interrogatories. The subparts are "logical extensions of the basic interrogatory" that "seek only to obtain specific particularized information with respect to the basic interrogatory." Local Rule 26.1(c).

Specifically, Interrogatory 3 asks GMAC to explain the purpose of certain documents that it produced in the New York case (and which it recently produced again in this action) and to include in its answer the specifics sought in the subparts of the interrogatory, including what action GMAC took based on such documents. The documents in question are of a similar nature: They appear to be letters sent by GMAC to Borrowers <u>after Borrowers' employees had been expelled from the premises by GMAC and all Borrowers records confiscated by GMAC,</u> and they appear to call for Borrowers to provide GMAC with certain information and/or take certain actions or suffer negative consequences at the hands of GMAC, i.e., the acceptance of a customer's claim that it was entitled to pay a lesser amount than that which appeared on the invoice.

In an action where sharp business practices are extremely relevant to Plaintiff's c. 93A claim, an explanation concerning GMAC's motives and expectations concerning these letters is crucial. The subsections to the basic interrogatory simply instruct GMAC

9

that its explanation of these letters should contain the information described in the subsections. The subsections should not have been counted separately.

    4.    <u>Interrogatory 4 - Interrogatory 17</u>

The unanswered interrogatories – Interrogatories 4 through 17 – are constructed in a manner similar to the first three interrogatories. There is a basic interrogatory followed by subparts "which are logical extensions of the basic interrogatory and seek only to obtain specified additional particularized with respect to the basic interrogatory." Local Rule 26.1 (c). As is the case with Interrogatories 1 through 3, none of the subparts of Interrogatories 4 through 17 is subject to being counted as a separate interrogatory under the rules. Consequently, GMAC should be ordered to respond to all the interrogatories in Landay's First Set of Interrogatories, including all subparts.

    C.    <u>The Interrogatories And All Subparts Should Be Allowed By The Court</u>.

Even if the subparts are deemed separate interrogatories (which they are not) pursuant to Fed. R. Civ. P. 33(a) the Court should give Landay leave to propound all seventeen interrogatories and their subparts because the information sought is essential to the discovery of admissible evidence proving Landay's four remaining claims, to wit, fraud, usury, junior creditor rights and M.G.L. Chapter 93A.

As shown above, Landay requires detailed information concerning GMAC's loan to Borrowers, a loan for which GMAC has held Landay liable and for which it has seized his assets and the assets of Borrowers. This includes details concerning interest, fees, and other charges made to the loan (usury; M.G.L. Chapter 93A) and the disposition, collection and application of Landay's assets and Borrowers assets to satisfy that loan

(usury, junior creditor rights, M.G.L. 93A).  The seventeen interrogatories and their subparts seek this information.

Landay has shown above how the first three interrogatories are necessary to help prove his claims.  The remaining interrogatories are equally necessary. <u>Interrogatory 4</u> asks GMAC to account for the Borrowers' inventory that it seized on October 22, 2001.  <u>Interrogatory 5</u> asks GMAC to account for the Borrowers' patents and trademarks seized by GMAC on October 22, 2001.  <u>Interrogatory 6</u> asks GMAC to account for all other assets that it seized from Borrowers.  <u>Interrogatory 7</u> inquires into all assets "as to which GMAC has abandoned its sales and/or collection efforts." <u>Interrogatory 8</u> asks GMAC to explain entries in financial reports that it has produced to Landay and which purportedly supply some of the information sought by Landay (See <u>e.g</u>., Response, pp. 11, 12, 15 and 16).  <u>Interrogatory 9</u> asks GMAC to supply accounting details for a Letter of Credit for which the Borrowers were charged. <u>Interrogatory 10 asks</u> GMAC to explain the entries in another set of financial reports that it provided to Landay.  <u>Interrogatory 11</u> asks GMAC to explain the entries on a financial document it provided to Landay   <u>Interrogatory 12</u> asks GMAC to explain its actions concerning another lender's proposal to pay off Borrowers' loan; specifically, it inquires into the facts alleged in Paragraphs 47 and 48 of the Complaint, facts relevant to Landay's c.93A claim.  <u>Interrogatory 13</u> asks about a GMAC employee named in GMAC's Disclosure Statement Pursuant to Fed. R. Civ. P. 26(a).  <u>Interrogatory 14</u> asks for the last-know addresses and telephone numbers of three GMAC employees; two are named in Landay's Complaint and the third swore to representations made by GMAC in the New York action.  <u>Interrogatory 15</u> asks GMAC to identify the custodian of

11

documents that had been in the possession of the above-listed employees.

<u>Interrogatories 16 and 17</u> ask GMAC to provide details concerning Borrowers' loan balance; they specifically ask GMAC to show how much was charged in interest, fees and other costs over the life of the loan – information relevant to Landay's usury claim.

It is important to note that Landay has not been able to obtain much of the information sought from any source to date. All of these inquiries stem from the fact that GMAC has refused to account to Landay and has produced precious little of its own records.

      D.      <u>All Of GMAC's Specific Objections Should Be Overruled</u>.

In additions to the objections discussed above, GMAC has objected to the interrogatories that it has answered (Interrogatories 1 – 3) on many grounds. Although GMAC has answered these interrogatories to some extent, these objections should be overruled so that Landay is assured of obtaining all relevant information; these objections may be shielding critical information that GMAC has but will not reveal.

      1.      <u>Vague and Ambiguous</u>

The detailed subparts (about which GMAC has complained) prevent these interrogatories from being vague and ambiguous. All such objections should be stricken and GMAC ordered to answer.

      2.      <u>Overbroad and Unduly Burdensome</u>

The interrogatories call for information uniquely in GMAC's possession. GMAC has objected to Interrogatories 1- 3 on the grounds that they are overbroad and burdensome. These objections have no merit. Every detail sought by Landay is essential to his case and, hence, none of the interrogatories can be criticized as

overbroad.  For example, in Interrogatory 2 Landay inquires into each and every account receivable seized by GMAC.  In order to ascertain how much of which accounts receivable GMAC collected (junior creditor claim; Chapter 93A claim) and how much of the collections it credited to the loan balance (usury; Chapter 93A), Landay needs this information.

Moreover, the cry of burden by GMAC is specious. Landay has not propounded interrogatories sweeping in scope.  The interrogatories focus on a single short-lived loan (to Borrowers) and how GMAC treated that loan, including the disposition of assets it seized.  In Interrogatory 2 Landay is asking GMAC to provide him with the details of the liquidation of Borrowers' assets – an event that occurred over a finite period of time, specifically in a short period of time following October 22, 2001.

GMAC claims it has not destroyed documents (Response, p. 5) and it claims that it has computer records relating to Borrowers and/or Landay (Response, p. 8).[2]  While it may be inconvenient for GMAC to ascertain the requested information from those records, it is not overly burdensome for it to do so when the information is crucial to Landay's case.

---

[2] GMAC asserts that it may not have all documents or computer records relating to Borrowers and/or Landay because of the passage of time.  See, e.g., Response, page. 17.  Apparently GMAC has not looked for such records.  The interrogatories require GMAC to look for such records, and, if it has them, to respond with information from such records.  On the other hand, if GMAC has destroyed those records, it must so advise Landay. Indeed, the destruction of such records is, in and of itself, a fact relevant to Landay's Chapter 93A claim.  GMAC commenced its action against Landay in New York on June 17, 2002.  From that moment on GMAC was obligated not to destroy records that related to Borrowers and Landay.  The records concerning the assets seized by GMAC (including accounts receivable records that provide the information sought in Interrogatory 2), date from October 22, 2001 to date.  The New York action was commenced about seven months after October 22, 2001.  If, as GMAC states on page 17 of its Response, "some computer files are automatically deleted…. approximately twelve months after their creation" (emphasis added), the records that supply information about collection and liquidation of Borrowers' assets existed when GMAC commenced the New York action and/or were created after it had begun.  As documents relevant to a pending litigation, they should not have been destroyed.

The Court should overrule all such objections and order GMAC to provide further answers to each interrogatory to which such objection was made. Some examples on how GMAC has "hidden" information behind such objections are: <u>Response to Interrogatory 1(d)</u>, where GMAC refuses to identify ANY employee who may have knowledge concerning its record retention policy concerning documents relating to Borrowers and/or Landay (Response, page 7); <u>Response to Interrogatory 2a, 2b,2c and 2f</u> where GMAC is apparently resisting a search for files that contain the information sought (Response, page 11); <u>Response to Interrogatory 2(e)</u> where GMAC has refused to identify any of its employees who were involved in collecting the Borrowers' accounts receivable (Response, p.13); <u>Response to Interrogatory 2(g)</u> where GMAC refuses to provide its reasons for accepting less than the amounts owed by Borrowers' customers and instead directs Landay to documents that do not provide such answer and flippantly states "GMACCF is not certain why particular customers chose not to pay their full debts…" (Response, page 14); <u>Response to Interrogatory 2 (h) – (m)</u> where GMAC seeks to avoid providing details concerning accounts receivable while acknowledging that such information may exist in its records (Response, page 17)  <u>But see</u>, footnote 1 <u>supra</u>.

The foregoing are but a few of the many instances where GMAC has objected to an interrogatory or its subpart and then provided very limited information. The Court should overrule that all such objections and should order GMAC to answer fully, even if such answer forces GMAC to admit it has destroyed records following commencement of the litigation in New York. (See footnote 1).

3. "Duplicates Discovery" And/Or "Alternative Discovery Method"

GMAC has objected to numerous subsections of Interrogatories 1-3 on the ground that it has provided such information in the New York action. It has also objected too many subsections on the ground that another method of discovery, such as a deposition is more appropriate. Such objection should be stricken and GMAC ordered to provide further answers. These objections are specious.

First, that some or all information might be obtainable through a different discovery device is not generally a valid ground of objection. In this regard, it has been held that it is not a valid objection to an interrogatory that information is available by deposition. Glick v. McKesson & Robbins, 10 F.R.D. 477 (D. Mo. 1950); In re Shopping Carts Antitrust Litigation, 95 F.R.D. 299 (D.N.Y. 1982).

Moreover, GMAC has not provided Landay with much of the information sought by way of discovery in the New York case or otherwise. GMAC's paltry document production in the New York action did not supply the bulk of information requested here and, in fact, the limitations of the New York production gave rise to many of the interrogatories propounded in the instant case. The deponents in the New York actions did not have the information sought here; they expressed a lack of knowledge to such details. Finally, GMAC's suggestion that the information sought by these interrogatories should be sought by way of deposition cannot prevail in light of the extreme limitations that GMAC has put on the scope of the 30(b)(6) deposition taken on August 19, 2005. (See p. 4 supra).[3]

---

[3] While defense counsel has indicated that GMAC will produce a witness or witnesses who would respond for the corporation with regard to most if not all of the designated topics, as edited by him, the redefinition and consequent narrowing of the seven topics as to which Ms. Pappalardo was permitted to

15

The objections should be overruled and GMAC should be ordered to provide further answers.

4. GMAC's Answers Are Evasive And Incomplete

Whether due to the objections made or otherwise, the answers that GMAC provided to Interrogatories 1 – 3 are evasive and incomplete. Some aspects of these answers are described in the discussions above. In the interest of economy, suffice it to say here that GMAC has not provided information that it hints at, including such basic information as the names of employees. It should be ordered to provide further answers to Interrogatories 1 -3.

GMAC has not answered Interrogatories 4 – 17 at all. It should be ordered to respond fully to such interrogatories, including all subparts.

## IV.     CONCLUSION

For all the foregoing reasons all GMAC's objections to Landay's First set of Interrogatories should be overruled and GMAC should be ordered to provide further answers; and Landay should be awarded its reasonable attorneys fees incurred in prosecuting this motion.

---

represent GMAC does not give Landay comfort that the information necessary to a fair and orderly prosecution of the case will be forthcoming.

        Respectfully submitted,
        DAVID L. LANDAY,
        By his attorney,


        /s/ Alan R. Hoffman
        Alan R. Hoffman, BBO# 236860
        Lynch, Brewer, Hoffman & Fink, LLP
        101 Federal Street, 22nd Floor
        Boston, MA 02110
        (617) 951-0800

Dated: September 6, 2005

## LOCAL RULE 7.1(a)(2) CERTIFICATION

The undersigned hereby certifies, pursuant to Local Rule 7.1(a)(2), that on August 31, 2005, he has conferred with counsel for the Defendants, John A. Houlihan, Esq. in a good faith attempt to resolve or narrow the issues in dispute, and that theses efforts were not successful.


        /s/ Alan R. Hoffman
        Alan R. Hoffman

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail on September 6, 2005.


        /s/ Alan R. Hoffman
        Alan R. Hoffman

198744_1