# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID L. LANDAY ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | Civil Action No. 04-cv-11955-WGY |
| ) | |
| GMAC COMMERCIAL CREDIT LLC ) | |
| and GMAC COMMERCIAL FINANCE ) | |
| LLC, ) | |
| Defendants. ) | |

### GMAC COMMERCIAL FINANCE LLC'S RESPONSE
### TO LANDAY'S FIRST SET OF INTERROGATORIES

Defendant GMAC Commercial Finance LLC ("GMACCF" or "Defendant"),[1] objects and responds to the first set of interrogatories propounded by Plaintiff David L. Landay ("Landay" or "Plaintiff") as follows.

### GENERAL OBJECTIONS

Defendant makes the following General Objections (the "General Objections") to Plaintiff's interrogatories.  These General Objections are incorporated by reference into Defendant's response to each and every individual interrogatory, to the extent applicable whether or not specifically stated in any individual response.

1.    Defendant objects to these interrogatories or any specific interrogatory to the extent that they or it require Defendant to exceed its obligations under the Federal Rules of Civil Procedure.

---

[1]     The First Amended Complaint lists two separate defendants, GMAC Commercial Credit LLC, and GMAC Commercial Finance LLC, and includes both names in the caption.   In actuality, GMAC Commercial Finance LLC is the successor by merger of GMAC Commercial Credit LLC and GMAC Business Credit LLC.

2.      Defendant objects to any interrogatory to the extent that it seeks discovery of privileged information or non-discoverable attorney work product pursuant to Fed. R. Civ. P. 26(b)(3) or (b)(4).

3.      Defendant objects to Plaintiff's proposed definitions of various terms, such as "Document," set forth in the Introduction and Definitions section of Plaintiff's First Set of Interrogatories to the extent those proposed definitions would differ from the Uniform Definitions in Discovery Requests set forth in Local Rule 26.5(C) of this Court.  Defendant will apply the definitions set forth by this Court in its local rules.

4.      Defendant objects to Plaintiff's interrogatories to the extent that they exceed the numerical limitations imposed by Fed. R. Civ. P. 33(a) and Local Rule 26.1(C).  According to the rules, Plaintiff is limited to propounding twenty-five (25) interrogatories on the Defendant and "cannot evade this presumptive limitations through the device of joining as 'subparts' questions that seek information about discrete separate subjects." Fed. R. Civ. P. 33(a), advisory committee's note.   Plaintiff has violated these rules by propounding far in excess of 25 interrogatories, notwithstanding its numbering of only 17 interrogatories.  For example, what Plaintiff has labeled "Interrogatory No. 1" actually consists of no fewer than eight (8) separate interrogatories.   Similarly, "Interrogatory No. 2" actually consists of no fewer than ten (10) separate interrogatories, and "Interrogatory No. 3" actually consists of no fewer than nine (9) separate interrogatories.   Arguably, they each consist of many more separate interrogatories. Thus, Landay has exceeded his limit on interrogatories before even reaching what he has labeled "Interrogatory No. 4."  Accordingly, Defendant is not obligated to respond to "Interrogatory No. 4" through "Interrogatory No. 17," most of which are also objectionable compound interrogatories, and will not do so.  Before filing this Response, Defendant invited Plaintiff to

amend his First Set of Interrogatories to comply with the numerical limits imposed by the Rules, but Plaintiff refused.

5.       Responses to Plaintiff's interrogatories are qualified by the objections, whether general or specific, asserted herein.  Responses to interrogatories do not waive any objections asserted.

### Specific Responses

### INTERROGATORY NO. 1

1. Please describe GMAC's record retention policy and how it relates to documents concerning the Borrowers and Landay.  Please include the following in your answer:

   a. State whether or not GMAC has destroyed or otherwise disposed of any documents that relate to Landay and/or his guaranty and/or the loan to Borrowers to which the Guaranty relates (including the correspondence and transmission documents GMAC received on a daily basis that identified the customer invoices to which collections related) and, if so,

      i.     Identify the documents,
      ii.    State the date of disposition,
      iii.   State the means of disposition,
      iv.    Identify all persons that authorized that disposition, and
      v.     Identify all persons with knowledge concerning the disposition.

   b. State whether or not GMAC has destroyed or otherwise disposed of Borrowers' books and records that it seized on October 22, 2001, and if so,

      i.     Identify the documents,
      ii.    State the date of disposition,
      iii.   State the means of disposition,
      iv.    Identify all persons that authorized the disposition, and
      v.     Identify all persons with knowledge concerning the disposition.

   c. If GMAC has not disposed of the books and records it seized from Borrowers on October 22, 2001, state the location of such documents and identify persons having custody or control of such documents.

   d. Identify persons familiar with GMAC's record retention policy.

   e. State whether or not GMAC maintains a computerized version of documents and, if so, whether you have information related to the Borrowers and/or Landay stored in computers and/or in some format other than hard-copy.

BOS_498508_3.DOC/MDUBNOFF

f. If your response to subsection e. is affirmative, state how such records can be accessed and whether or not hard-copies can be made.

g. Describe the steps GMAC took to comply with the requirements of M.G.L. 271, Section 49.

h. State the current location of documents that GMAC was required to maintain pursuant to M.G.L. 217, Section 49 and, if GMAC no longer has such records in its possession, custody or control, state:

    i. The date such documents left the possession, custody or control of GMAC,

    ii. The means such documents left GMAC's possession, custody or control,

    iii. The last-known location of such documents,

    iv. The identity of their last-known custodian,

    v. The identity of all persons that authorized their removal from the possession, custody or control of GMAC,

    vi. The identity of all persons with knowledge of GMAC's disposition of such documents,

    vii. Whether or not GMAC authorized the destruction of these documents and, if so, state the date they were destroyed, the identity of the persons that authorized the destruction, and the identity of all persons with knowledge of their destruction.

**RESPONSE TO INTERROGATORY NO. 1**

GMACCF specifically objects to Interrogatory No. 1 on the grounds that it is compound in nature and actually consists of no fewer than eight (8) separate interrogatories. Each of the purported subparts, identified by the letters "a" through "h," seeks information about discrete separate subjects, and, therefore, will be treated as a separate interrogatory for purposes of applying the numerical limitations imposed by Fed. R. Civ. P. 33(a) and Local R. 26.1(C).

GMACCF also objects to Landay's request in the introductory paragraph of "Interrogatory No. 1" that GMACCF "describe" its "record retention policy and how it relates to documents concerning the Borrowers and Landay" because such a request is vague, especially insofar as it implies that there is one "policy" that applies equally to all GMACCF records; it is overbroad and unduly burdensome, especially insofar as it would seek information regarding the

- 4 -

retention of records unrelated to the Commercial Services (Factoring) division and/or the Operations Department; and it seeks information that is confidential and proprietary. Subject to and without waiving its general or specific objections, GMACCF responds to the introductory paragraph of "Interrogatory No. 1" as follows:

GMACCF is willing to provide Landay's counsel with a copy of its record retention policy for the Commercial Services division and/or the Operations Department upon execution of an attorneys' eyes only agreement that would ensure its continued confidentiality. Counsel for GMACCF can negotiate the terms of such an agreement with Landay's agreement.

### RESPONSE TO "INTERROGATORY NO. 1a."

GMACCF specifically objects to what Landay has labeled subpart "a" of "Interrogatory No. 1" on the grounds that "otherwise disposed of" is vague and ambiguous; that it is not reasonably calculated to lead to the discovery of admissible evidence; and that it is predicated on factual assertions that have yet to be proven, such as Landay's statement that GMACCF received correspondence and transmission documents on a daily basis that identified the customer invoices to which collections related. Subject to and without waiving its general or specific objections, GMACCF responds to "Interrogatory No. 1a" as follows:

GMACCF has not knowingly destroyed any documents relating to Landay and/or his guaranty and/or the loan to the Borrowers to which the Guaranty relates. While it is possible that some responsive documents or copies thereof have been accidentally misplaced or discarded, such conduct would not have been undertaken pursuant to any GMACCF policy or practice. In light of the foregoing, subparts (i) through (v) of "Interrogatory No. 1a" are not applicable and require no additional response.

**RESPONSE TO "INTERROGATORY NO. 1b."**

GMACCF also specifically objects to what Landay has labeled subpart "b" of "Interrogatory No. 1" on the grounds that the terms "otherwise disposed of" and "books and records" are vague and ambiguous; it is unduly burdensome; and it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its general or specific objections, GMACCF responds to "Interrogatory No. 1b" as follows:

GMACCF has not knowingly destroyed any records that it obtained from the Borrowers on or about October 22, 2001. While it is possible that some documents that it obtained from the Borrowers on or about October 22, 2001 or copies thereof have been accidentally misplaced or discarded, such conduct would not have been undertaken pursuant to any GMACCF policy or practice. GMACCF also refers Landay to the deposition transcript of John Rijo of RAS Management Advisers, Inc. ("RAS"), who was deposed in connection with the lawsuit that GMACCF filed against Landay in the Supreme Court of the State of New York, in a case docketed at Case No. 602338/02 (the "New York Action"). GMACCF specifically directs Landay's attention to the following portions of the transcript: Page 26, Line 16 through Page 28, Line 15, and Page 79, Line 11 through Page 81, Line 9. In light of the foregoing, subparts (i) through (v) of "Interrogatory No. 1b" are not applicable and require no additional response.

**RESPONSE TO "INTERROGATORY NO. 1c."**

GMACCF also specifically objects to what Landay has labeled subpart "c" of "Interrogatory No. 1" on the grounds that the terms "disposed of" and "books and records" are vague and ambiguous; and that it is compound in nature. Subject to and without waiving its general or specific objections and notwithstanding its compound nature, GMACCF will regard "Interrogatory No. 1c" as a single interrogatory and respond to it as follows:

BOS_498508_3.DOC/MDUBNOFF

To the best of GMACCF's knowledge, all of the records that GMACCF seized from the Borrowers on or about October 22, 2001, either have been produced to Landay in connection with the New York Action and this litigation or are still in the storage facility referenced by Mr. Rijo at his deposition.  See GMACCF's Resp. to Int. No. 1b, above.  The facility is called Armored Self-Storage and is located at 498 Fortune Blvd. in Milford, Mass.

**RESPONSE TO "INTERROGATORY NO. 1d."**

GMACCF also specifically objects to what Landay has labeled subpart "d" of "Interrogatory No. 1" on the grounds that the term "familiar with" is vague and ambiguous; and because it is unduly burdensome, especially since the request is unlimited in time, geography or scope.  Subject to and without waiving its general or specific objections, GMACCF responds to "Interrogatory No. 1d" as follows:

GMACCF's record retention policy is published on the company's intranet to all employees, so every GMACCF employee is arguably "familiar with" at least some aspect of the policy.  There are different provisions addressing records maintained by different departments. It would be unduly burdensome for GMACCF to "identify" each and every one of its employees.

**RESPONSE TO "INTERROGATORY NO. 1e."**

GMACCF also specifically objects to what Landay has labeled subpart "e" of "Interrogatory No. 1" on the grounds that the term "computerized version of documents" is vague and ambiguous, especially since it may or may not include microfiche; it is vague and ambiguous with regard to time and scope; and the interrogatory is compound in nature.  Subject to and without waiving its general or specific objections and notwithstanding its compound nature, GMACCF will regard "Interrogatory No. 1e" as a single interrogatory and respond as follows:

BOS_498508_3.DOC/MDUBNOFF

GMACCF maintains compact disks ("CDs") that contain records of many electronic files that were once stored on its mainframe computer. Other computer files are stored on microfiche. Some of the documents that have been stored on either CDs or microfiche relate to the Borrowers and/or Landay.

**RESPONSE TO "INTERROGATORY NO. 1f."**

GMACCF also specifically objects to what Landay has labeled subpart "f" of "Interrogatory No.1" on the grounds that it is vague and ambiguous, especially with regard to its use of the terms "records" and "hard-copies," and because it is compound in nature. Subject to and without waiving its general or specific objections and notwithstanding its compound nature, GMACCF will regard "Interrogatory No. 1f" as a single interrogatory and respond as follows:

A person seeking to access such records on a CD would need to know which CD to search, what computer codes have been assigned to various file categories stored on the CD, and what codes have been assigned to various clients or customers, such as the Borrowers and/or Landay. A person seeking to access records on microfiche would have to know precisely where to find the microfiche that might contain such records. Hard copies of retrieved files can be made.

**RESPONSE TO "INTERROGATORY NO. 1g."**

GMACCF specifically objects to what Landay has called subpart "g" of "Interrogatory No. 1" on the grounds that it asks a fact witness to make a legal conclusion as to what the requirements of M.G.L. 271, Section 49 are; it is not reasonably calculated to lead to the discovery of admissible evidence, since M.G.L. 271, Section 49 has no applicability to any of the loan agreements in this case; and it is vague and ambiguous, especially with regard to its use of

the term "the steps."    Subject to and without waiving its general or specific objections, GMACCF responds to "Interrogatory No. 1g" as follows:

Even if M.G.L. 271, Section 49 had any applicability to this case, which it does not, GMACCF fully complied with its requirements because it did not charge usurious interest rates on the loans to the Borrowers.  As the document Bates numbered GLAN 01523 indicates, the interest that GMACCF charged on the loan was approximately 8.35% in the month ending November 30, 2001.  Similarly, the document Bated numbered GLAN 01527 indicates that the interest rate on the loans was approximately 8.09% in the month ending December 31, 2001.

Additionally, in response to a direct request from Seneca's counsel, GMACCF sent the document Bates numbered GLAN 01165 to the Massachusetts Attorney General's Office on or about September 19, 2000.

## RESPONSE TO "INTERROGATORY NO. 1h."

GMACCF also objects to what Landay has labeled subpart "h" of "Interrogatory No. 1" on the grounds that it calls for a legal conclusion regarding the requirements under M.G.L. 217, Section 49 (which does not even exist); it is not reasonably calculated to lead to the discovery of admissible evidence, especially insofar as it seeks the "current location" of various documents; it is vague and ambiguous; it is overbroad insofar as it does not refer to this litigation; and it is compound in nature.  Subject to and without waiving its general or specific objections, and notwithstanding its compound nature, GMACCF will regard "Interrogatory No. 1h" as a single interrogatory and respond to it as follows:

GMACCF was not required to maintain any documents pursuant to a nonexistent provision of the Massachusetts General Laws.  To the extent that Landay intended to refer to M.G.L. 271, Section 49, GMACCF still did not have to maintain any documents.  However,

BOS_498508_3.DOC/MDUBNOFF

GMACCF has produced to Landay all non-privileged documents that it could find after a diligent search, which relate to Landay's usury allegation.  None of the subparts of "Interrogatory No. 1h" is applicable.

## INTERROGATORY NO. 2

Please account for EACH and EVERY Account Receivable of the Borrowers that existed on October 22, 2001, when GMAC took charge of the assets of Borrowers.   Include the following in your answer:

   a.   State the name of Borrower's customer that owed the account receivable.

   b.   State the amount owed on October 22, 2001.

   c.   State the amount collected by GMAC to date.

   d.   Describe the efforts made by GMAC to collect the receivable.

   e.   Identify all agents, servants or employees of GMAC responsible for collecting and receivable.

   f.   State the date or dates the receivable was collected by GMAC.

   g.   If the full amount owed by Borrowers' customer was not collected by GMAC, state the reason for the shortfall.

   h.   Identify all documents that reflect or relate to your response to subsection g. above.

   i.   Identify all documents on which the receivable is reflected and state where on the document (e.g., page, column heading and line number) the receivable is reflected.

   j.   Identify all documents on which the collection of the receivable is reflected and state where on the document (e.g., page, column heading and line number) the collection is reflected.

   k.   State whether the collection of such receivable was credited to Borrowers' and, if so, identify all documents on which such credit is reflected and state where on the document it appears.

   l.   State whether you have destroyed or otherwise disposed of any document that referred, reflected, or related to this receivable and, if so, identify such documents and state what became of them, including the date they ceased to exist.

   m.  State whether you maintain computerized records that contain information concerning Borrowers' accounts receivable and, if so, describe such records including but not limited to whether or not there are hard-copies of such records extant.

n.  State the location of the Accounts Receivable records that Borrowers maintained and which were seized by GMAC on October 22, 2001.  If you claim you no longer have such records in your possession, custody or control, state (i) the date you last had them in your possession, custody or control, (ii) the address of their last-known location, (iii) the identity of the person(s) who have the records now, and (iv) what you did to the records to cause them to no longer be in your possession, custody or control.

## RESPONSE TO INTERROGATORY NO. 2

GMACCF specifically objects to Interrogatory No. 2 on the grounds that it is compound in nature and actually consists of no fewer than ten (10) separate interrogatories.  Although the subparts that Landay has labeled "a," "b," "c," and "f" are arguably part of one interrogatory, and the subparts that Landay has labeled "h" and "i" may be closely related enough to be considered part of a second interrogatory, each of the other "subparts" seeks information about discrete separate subjects, and, therefore, will be treated as a separate interrogatory for purposes of determining compliance with the numerical limitations imposed by Fed. R. Civ. P. 33(a) and Local R. 26.1(C).

GMACCF also objects to the introductory paragraph of what Landay has labeled "Interrogatory No. 2" on the grounds that the term "account for" is vague and ambiguous; that it is unduly burdensome, insofar as it seeks individualized information about every account receivable; that it seeks information more readily attainable from an alternate discovery method such as a deposition; and that it duplicates discovery from the New York Action.  Subject to and without waiving these objections, GMACCF responds to the introductory paragraph of "Interrogatory No. 2" as follows:

GMACCF refers Landay to GMACCF's response to Landay's Interrogatory No. 4 in the New York Action and incorporates that response herein by reference.  As in the New York Action, GMACCF refers Landay to the documents Bates numbered GLAN 01516 to GLAN 01582 for information about the accounts receivable that were collected after October 22, 2001.

BOS_498508_3.DOC/MDUBNOFF

GMACCF also refers Landay to document Bates numbered LAN 0168, which indicates the total amount of accounts receivable that were owed to the Borrowers as of October 22, 2001.

**RESPONSE TO "INTERROGATORY NO. 2a, 2b, 2c, and 2f."**

GMACCF also specifically objects to what Landay has labeled subparts "a," "b," "c," and "f" on the grounds that they are overly broad and unduly burdensome, especially insofar as they seek detailed information about each individualized account receivable of the Borrowers; they duplicate discovery from the New York Action; and they seek information that is more readily obtainable through an alternate discovery method, such as a deposition. Subject to and without waiving its general or specific objections, GMACCF responds to subparts "a," "b," "c," and "f" of "Interrogatory No. 2" as follows:

GMACCF has not located records in its own office files or computer databases listing the names of every individual customer who owed money to the Borrowers as of October 22, 2001, let alone the amount of each account receivable, the amount collected, and the date of collection. GMACCF, however, has provided Landay with numerous documents that indicate when accounts receivable were received and when certain customers paid certain amounts. These documents include those with Bates numbers GLAN 01516 through GLAN 01582 and GLAN 01684 through GLAN 01830. Additionally, it is possible that some information responsive to "Interrogatory No. 2a" and "Interrogatory No. 2b" can be found in documents stored at the facility referenced by John Rijo at his deposition. <u>See</u> GMACCF's Resp. to "Interrogatory No. 1b," above. GMACCF also states that as of October 22, 2001, the total amount of accounts receivables owed to the Borrowers was $869,885.82. GMACCF collected $588,000.

**RESPONSE TO "INTERROGATORY NO. 2d."**

GMACCF also specifically objects to what Landay has labeled subpart "d" of "Interrogatory No. 2" on the grounds that it is overbroad and unduly burdensome to ask GMACCF to "describe" its collection efforts as to each individual account receivable of the Borrowers, especially since such efforts were made more than three (3) years ago; it duplicates discovery from the New York Action; and the information requested is more readily obtainable through alternate discovery methods, such as a deposition. Subject and without waiving its general or specific objections, GMACCF responds to "Interrogatory No. 2d" as follows:

GMACCF has no way of reconstructing its efforts to collect individual receivables on the Borrowers' account. As a general matter, however, it would have been consistent with GMACCF's existing policy for employees in GMACCF's collections department to have tried to contact the Borrowers' customers, by mail and/or telephone, in an effort to collect those receivables. Some of the documents that GMACCF has produced to Landay appear to relate to those collection efforts.

**RESPONSE TO "INTERROGATORY NO. 2e."**

GMACCF also objects to what Landay has labeled subpart "e" of "Interrogatory No. 2" on the grounds that the terms "servants" and "and receivable" are vague and ambiguous; and because it is unduly burdensome for GMACCF to identify each of its employees who tried to collect each of the Borrowers' various accounts receivable. Subject to and without waiving its general or specific objections, GMACCF will assume that Landay intended to write "the receivable" at the end of "Interrogatory No. 2e" and responds as follows:

GMACCF has a collections department that is dedicated generally to the collection of customers' accounts receivable. GMACCF is not aware at this time which employees within that department were specifically assigned to any of the Borrowers' specific accounts receivable.

### RESPONSE TO "INTERROGATORY NO. 2g."

GMACCF also specifically objects to what Landay has labeled subpart "g" to "Interrogatory No. 2" on the grounds that it is unduly burdensome to ask for information relating to each specific account receivable that was collected; it seeks information that more readily attainable from the Borrowers' customers than from GMACCF, such as why those customers chose not to pay their full debts; and it duplicates discovery from in the New York Action. Subject to and without waiving its general or specific objections, GMACCF responds to "Interrogatory No. 2g" as follows:

GMACCF is not certain why particular customers chose not to pay their full debts to the Borrowers. GMACCF, however, directs Landay to the documents Bates numbered GLAN 01684 through 01830, which Landay already possesses, according to his Rule 26(a) initial disclosures. Those documents include information regarding why certain customers were given various credits on various accounts receivable.

### RESPONSE TO "INTERROGATORY NO. 2h."

GMACCF also objects to what Landay has labeled subpart "h" of "Interrogatory No. 2" on the grounds that it is vague and ambiguous and unduly burdensome, especially insofar as it seeks information about individual customers of the Borrowers. Subject to and without waiving its objections, GMACCF responds to "Interrogatory No. 2h" as follows:

GMACCF has produced thousands of documents to Landay for his review, many of which contain the information sought by this interrogatory, including the documents Bates numbered GLAN 01684 through 01830.

**RESPONSE TO "INTERROGATORY NO. 2i."**

GMACCF also specifically objects to what Landay has labeled subpart "i" to "Interrogatory No. 2" on the grounds that it is vague and ambiguous; and it is overbroad and unduly burdensome, especially insofar as it seeks information about individual customers of the Borrowers and to the extent it seeks specific references to pages and column headings. Subject to and without waiving its objections, GMACCF responds to "Interrogatory No. 2i" as follows:

See response to "Interrogatory No. 2h" above.

**RESPONSE TO "INTERROGATORY NO. 2j."**

GMACCF also specifically objects to what Landay has labeled subpart "j" to "Interrogatory No. 2" on the grounds that it is vague and ambiguous; and it is overbroad and unduly burdensome, especially insofar as it seeks information about individual customers of the Borrowers and to the extent it seeks specific references to pages and column headings. Subject to and without waiving its objections, GMACCF responds to "Interrogatory No. 2j" as follows:

Among the documents that GMACCF has produced to Landay which reflect collections of accounts receivable are those Bates numbered GLAN 01516 through GLAN 01582 and GLAN 01684 through GLAN 01830.

**RESPONSE TO "INTERROGATORY NO. 2k."**

GMACCF also specifically objects to what Landay has labeled subpart "k" to "Interrogatory No. 2" on the grounds that is overbroad and unduly burdensome, especially insofar as it seeks information about individual customers of the Borrowers; it duplicates

BOS_498508_3.DOC/MDUBNOFF

discovery from the New York Action; and it is compound in nature. Subject to and without waiving its objections, and notwithstanding the compound nature of the interrogatory, GMACCF will regard "Interrogatory No. 2k" as a single interrogatory and respond as follows:

All collections of known accounts receivable were credited to the Borrowers as reflected on documents Bates numbered GLAN 01516 through GLAN 01582.

### RESPONSE TO "INTERROGATORY NO. 2l."

GMACCF also specifically objects to what Landay has labeled subpart "l" of "Interrogatory No. 2" on the grounds that it is vague and ambiguous, especially with regard to its use of the terms "disposed of" and "became of them"; it is unduly burdensome; and it is compound in nature. Subject to and without waiving its general or specific objections and notwithstanding the compound nature of the interrogatory, GMACCF will regard "Interrogatory No. 2l" as a single interrogatory and respond as follows:

GMACCF has not knowingly destroyed any documents that referred to any of the accounts receivable for the Borrowers. It is possible that some hard copies of documents may have been misplaced or that duplicates have been discarded, but such conduct would not have been pursuant to any GMACCF policy or practice. See also GMACCF's Responses to "Interrogatory No. 2m" and "Interrogatory No. 2n" below.

### RESPONSE TO "INTERROGATORY NO. 2m."

GMACCF specifically objects to what Landay has labeled subpart "m" of "Interrogatory No. 2" on the grounds that it is vague and ambiguous, especially with regard to its confusing use of verb tenses and its use of the terms "hard-copies" and "extant;" and because it is compound in nature. Subject to and without waiving its general or specific objections, notwithstanding the

compound nature of the interrogatory, GMACCF will regard "Interrogatory No. 2m" as a single interrogatory and respond as follows:

GMACCF does maintain some computerized records that relate to the Borrowers' accounts receivable and has already produced printouts of such records to Landay, such as those with Bates numbers GLAN 01516 through GLAN 01582. However, it is likely that some computer records relating to the Borrowers' accounts receivable no longer exist, as some computer files are automatically deleted from GMACCF's system approximately twelve months after their creation. For example, information that employees in the collections department might have entered into the computer system regarding why certain customers of the Borrowers were receiving certain credits on particular accounts may no longer exist. Additionally, if GMACCF ever did have computerized records that identified each and every one of the Borrowers' accounts receivable as of October 22, 2001, it is highly unlikely that such records continue to exist. GMACCF, however, may be able to obtain records that show the outstanding accounts receivable as of December 31, 2001, and reserves the right to supplement its discovery responses if it can locate such information. If computer records relating to the Borrowers' accounts receivable continue to exist, it should be possible to make hard copies of such records.

## RESPONSE TO "INTERROGATORY NO. 2n."

GMACCF specifically objects to what Landay has labeled subpart "n" of "Interrogatory No. 2" on the grounds that it is vague and ambiguous and compound in nature. Subject to and without waiving its general or specific objections, notwithstanding the compound nature of the interrogatory, GMACCF will regard "Interrogatory No. 2n" as a single interrogatory and respond as follows:

BOS_498508_3.DOC/MDUBNOFF

GMACCF is unaware of any records relating to the Borrowers' accounts receivable as of October 22, 2001, other than those that have already been produced to Landay during discovery or that are still in the storage facility referenced by John Rijo in his deposition. See GMACCF's Resp. to Int. No. 1b, above.

## INTERROGATORY NO. 3

Please explain the purpose of the GMAC documents attached as Exhibit 1 hereto and include in your answer the following information:

a. State whether these documents in any way related to your efforts to collect accounts receivable.

b. Identify all persons to whom these documents were sent and provide the means and dates of transmission.

c. Explain the purpose of these letters and state whether you expected to receive any response from Borrowers.

d. State whether GMAC received any response to these letters and, if so, to which of these letters did it receive a response and from whom did it receive such response?

e. As to letters asking Borrowers to identify the invoice to which received money related (see e.g. GLAN 02257 and 02254; 02213-4; 02215-23; 02227-8; 02279-81; 02237-9; 02251-6; 02273-4) please state: (i) whether such invoices were ever identified, (ii) whether GMAC ever credited Borrowers for the remittances discussed in these letters, (iii) explain the meaning of GMAC's statement "If we do not receive clarification, we will presume that the remittance belongs to GMAC Commercial Credit in satisfaction of an existing obligation that we erroneously posted" (see, e.g. GLAN 022510, and (iv) explain the meaning of GMAC's statement "Your non-response in this matter will be regarded as disclaiming any interest in the subject remittance in favor of GMAC . . ." (see e.g., GLAN 02257).

f. If your answer to e(ii) above is affirmative, identify all documents that reflect the payments credited to Borrowers and state where on the document that credit is reflected.

g. As to letters asking Borrowers to send copies of invoices (see e.g., GLAN 02282 – 95; GLAN 02258-60) describe how the matter was resolved and whether or not GMAC collected the money from the customers who owed the accounts receivable.

h. If your answer to g. above is affirmative, state whether GMAC credited the Borrowers with the sums collected and, if so, identify all documents that reflect such credit to Borrowers and state where on the document such credit appears.

BOS_498508_3.DOC/MDUBNOFF

i. As to letters concerning charge backs (see e.g., GLAN 02229-30; 02234-6; 02243; 02231; 02232-3; 02240; 02241; 02243; 02245; 02246-50; 02261-63; 02264-68; 02269-72; 02275), state how the matter was resolved, including whether or not a lack of response from Borrowers to these letters resulted in GMAC allowing the charge backs in full and without challenge.

j. Identify all documents referring, reflecting or relating to the matters in each of the letters attached as Exhibit 1.

k. Identify all GMAC agents, servants or employees with any knowledge concerning the letters in Exhibit 1 and the matters referred to therein.

## RESPONSE TO INTERROGATORY NO. 3

GMACCF specifically objects to what Landay has labeled "Interrogatory No. 3" on the grounds it is compound in nature and actually consists of no fewer than nine (9) separate interrogatories. Although the subparts that Landay has labeled "e" and "f" are arguably part of one interrogatory, and the subparts that Landay has labeled "g" and "h" may be closely related enough to be considered part of a second interrogatory, each of the other "subparts" seeks information about discrete separate subjects, and, therefore, will be treated as a separate interrogatory for purposes of determining compliance with the numerical limitations imposed by Fed. R. Civ. P. 33(a) and Local R. 26.1(C). Accordingly, Landay will have reached his numerical limit with what he has labeled subpart "i" of "Interrogatory No. 3."

GMACCF also objects to the introductory paragraph of "Interrogatory No. 3" on the grounds that it is vague and ambiguous, especially insofar as it asks GMACCF to "explain the purpose" of documents; it is not reasonably calculated to lead to the discovery of admissible evidence, since the documents speak for themselves and no other evidence about the "purpose" of the documents would be admissible; and it is unduly burdensome.

## RESPONSE TO "INTERROGATORY NO. 3a."

GMACCF also specifically objects to what Landay has labeled subpart "a" of "Interrogatory No. 3" on the grounds that it is vague insofar as it contains no reference to the

BOS_498508_3.DOC/MDUBNOFF

Borrowers or Landay; and because it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its general or specific objections, Landay responds to "Interrogatory No. 3a" as follows:

The documents attached as Exhibit 1 to Landay's First Set of Interrogatories are related to GMACCF's efforts to collect the Borrowers' accounts receivable as of October 22, 2001.

## RESPONSE TO "INTERROGATORY NO. 3b."

GMACCF also specifically objects to what Landay has labeled subpart "b" of "Interrogatory No. 3" on the grounds that it is unduly burdensome, insofar as it seeks information regarding the "means and dates of transmission;" it is not reasonably calculated to lead to the discovery of admissible evidence, especially since the documents speak for themselves; it is vague and ambiguous; and it is compound in nature. Subject to and without waiving its general or specific objections and notwithstanding its compound nature, GMACCF will regard "Interrogatory No. 3b" as a single interrogatory and respond as follows:

GMACCF cannot be certain where the documents were sent but has no reason to believe they were sent to anyone other than the addressees on the documents.

## RESPONSE TO "INTERROGATORY NO. 3c."

GMACCF also specifically objects to what Landay has labeled subpart "c" of "Interrogatory No. 3" on the grounds that the request to "explain the purpose" of documents is vague, ambiguous and not reasonably calculated to lead to the discovery of admissible evidence, especially since the documents speak for themselves; because the term "you" is vague in this context; and because it is compound in nature. Subject to and without waiving it general or specific objections, notwithstanding its compound nature, GMACCF will regard "Interrogatory No. 3c" as a single interrogatory and respond as follows:

GMACCF has no reason to believe that the "purpose" of the specific documents attached as Exhibit 1 to Landay's First Set of Interrogatories differed from those expressed in the documents themselves.  As a general matter, many of the documents included in Exhibit 1 are of the type that would have been generated routinely by GMACCF's computers upon the occurrence of the events described in those documents and would have transmitted to the last known address of a GMACCF client.  GMACCF does not know which, if any, of its employees had actual knowledge that these documents were mailed out, or whether any of those employees had expectations of receiving a response.

**RESPONSE TO "INTERROGATORY NO. 3d."**

GMACCF also specifically objects to what Landay has labeled subpart "d" of "Interrogatory No. 3" on the grounds that it is vague and ambiguous, especially insofar as it consists of several questions about many different documents; it is unduly burdensome; and it is compound in nature.  Subject to and without waiving its general or specific objections, and notwithstanding its compound nature, GMACCF will regard "Interrogatory No. 3d" as a single interrogatory and respond as follows:

At the present time, GMACCF does not know whether it received any responses to the documents attached as Exhibit 1.

**RESPONSE TO "INTERROGATORY NO. 3e and 3f."**

GMACCF also specifically objects to what Landay has labeled subparts "e" and "f" of "Interrogatory No. 3" on the grounds that they are vague and ambiguous, especially insofar as they inaccurately describe the contents of some of the documents listed therein and there are some inconsistencies between the Bates numbers listed in "Interrogatory No. 3e" and those stamped on the documents attached as Exhibit 1; they are not reasonably calculated to lead to the

BOS_498508_3.DOC/MDUBNOFF

discovery of admissible evidence, especially insofar as they ask for inadmissible opinions as to the meanings of certain language within the documents; they are unduly burdensome; and they are compound in nature. Subject to and without waiving its general or specific objections, GMACCF will regard "Interrogatory No. 3e" and "Interrogatory No. 3f" as a single interrogatory and respond as follows:

      (i)     To the extent that the documents identified in "Interrogatory No. 3e" ask for the identification of specific invoices to which received money related, GMACCF does not know at present whether such invoices were ever identified. GMACCF reserves the right to supplement this response.

      (ii)    As a general practice, GMACCF would have credited the Borrowers for all remittances referenced in the documents identified in "Interrogatory No. 3e." Upon receipt of such remittances, GMACCF would have credited the Borrowers' cash on account and reduced the Borrowers' overall loan balance. Such credits would have been reflected as "collections" in the client statement accounts, copies of which GMACCF has produced to Landay in the New York Action and has reproduced here (see GLAN 01516 through GLAN 01582). Documentation of the credits also may have been reflected in the Borrowers' cash reports and/or in other documents that GMACCF has produced to Landay.

      (iii)   There is no document with the Bates number GLAN 022510. However, the statement referenced in what Landay has labeled sub-subpart "(iii)" of "Interrogatory No. 3e" appears in the document Bates numbered GLAN 02251. GMACCF has no reason to believe it means anything other than what it says.

      (iv)   GMACCF has no reason to believe that the statement referenced in what Landay has labeled sub-subpart "(iv)" of "Interrogatory No. 3e" means anything other than what it says.

## RESPONSE TO "INTERROGATORY NO. 3g and 3h."

GMACCF also specifically objects to what Landay has labeled subparts "g" and "h" of "Interrogatory No. 3" on the grounds that they are vague and ambiguous; they are not reasonably calculated to lead to the discovery of admissible evidence; they are unduly burdensome; they seek information more readily obtainable through an alternate discovery method, such as a deposition; and they are compound in nature.  Subject to and without waiving its general or specific objections and not withstanding the compound nature of "Interrogatory No. 3g" and Interrogatory No. 3h" GMACCF will regard them as a single interrogatory and respond as follows:

At this time, GMACCF does not have specific knowledge as to how issues relating to the specific invoices referenced in GLAN 02282-95 and GLAN 02258-60 were resolved.  GMACCF has, however, collected about $588,000 of the Borrowers' total accounts receivable, which may have included those referenced in the aforementioned documents.  If GMACCF obtains more detailed information, it will supplement this response accordingly.

## RESPONSE TO "INTERROGATORY NO. 3i."

GMACCF also specifically objects to what Landay has labeled subpart "i" of "Interrogatory No. 3" on the grounds that it is vague and ambiguous, especially insofar as it asks how an undefined "matter" was resolved; it is not reasonably calculated to lead to the discovery of admissible evidence; it seeks information more readily obtainable from an alternate discovery method, such as a deposition; it is unduly burdensome; and it is compound in nature.  Subject to and without waiving its general or specific objections, notwithstanding its compound nature, GMACCF will regard "Interrogatory No. 3i" as a single interrogatory and respond as follows:

BOS_498508_3.DOC/MDUBNOFF

At this time, GMACCF cannot state how the matters relating to specific charge-backs referenced in the documents listed in "Interrogatory No. 3i" were resolved, but it refers Landay to the documents that it produced in the New York Action and reproduced here that relate to charge-backs and other credits.   These documents include but are not limited to the client statement accounts, GLAN 01516 through GLAN 01582, and the documents numbered GLAN 1618-65.   As a general practice, if GMACCF had not received a response from a client to letters of the type identified in "Interrogatory No. 3i," it would have approved the charge-backs and applied them as debits on the client's account receivable.

**RESPONSE TO "INTERROGATORY NO. 3j."**

GMACCF also specifically objects to what Landay has labeled subpart "j" of "Interrogatory No. 3" on the grounds that it is overbroad and unduly burdensome.   Subject to and without waiving its general or specific objections, GMACCF responds to "Interrogatory No. 3j" as follows:

All of the documents in GMACCF's custody, possession, or control that refer, reflect, or relate to any of the matters that Landay attached as Exhibit 1 to his First Set of Interrogatories were produced to Landay in the New York Action and reproduced to Landay in this action.

**RESPONSE TO "INTERROGATORY NO. 3k."**

GMACCF specifically objects to what Landay has labeled subpart "k" of "Interrogatory No. 3" on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence; and is unduly burdensome.   Subject to and without waiving its general or specific objections, GMACCF responds to "Interrogatory No. 3k" as follows:

There are numerous persons with at least some knowledge about the letters in Exhibit 1, and it would be unduly burdensome to identify them all.

**INTERROGATORY NO. 4**

Please account for all Borrowers' inventory seized by GMAC on October 22, 2001. In addition to providing (1) the total inventory cost value as of October 22, 2001 and (2) the total amount of money received by GMAC to date from the sale of Borrowers' inventory, provide the following details for each and every style number in Borrowers' inventory as of October 22, 2001:

a.  The standard cost value per unit (pair or single item, as appropriate),

b.  The number of units in that style,

c.  The number of units GMAC sold in liquidation,

d.  The identity of the buyer in liquidation and buyer's date of purchase,

e.  The amount received by GMAC from the sale,

f.  If unsold, the present and/or last known location of such inventory item(s), including the address and name of the person(s) having possession, custody or control.

g.  Identify all documents on which the inventory item is reflected and state where on the document it is reflected.

h.  Identify all documents on which the sale of this inventory item is reflected and state where on the document it appears.

i.  State whether the sale of such inventory was credited to Borrowers and, if so, identify all documents that reflect such credit to Buyers' and state where on the documents it appears.

j.  Identify all documents on which your collection of money from the sale of such inventory item is reflected and state where on the document it appears.

k.  State whether you have in your possession, custody or control all GMAC documents that ever reflected or concerned this inventory item and, if not, identify all documents that GMAC would have generated or received in the normal course of its business concerning such item and state what became of such documents, including the date they ceased to exist.

l.  State whether you maintain computerized records that contain information concerning Borrowers' inventory and, if so, describe such records including but not limited to whether or not there are hard-copies of such records extant.

m. State the location of the inventory records that Borrowers maintained and which were seized by GMAC on October 22, 2001. If you claim you no longer have such records in your possession, custody or control, state: (i) the date you last had them in your possession, custody or control, (ii) the address of their last-known location, (iii) the

- 25 -

identity of the person(s) who have the records now, and (iv) the circumstances surrounding your disposition of such records.

## RESPONSE TO INTERROGATORY NO. 4

See General Objections. GMACCF also specifically reserves all of its other objections to this interrogatory.

## INTERROGATORY NO. 5

Please account for each of the several hundred patents and trademarks assigned to GMAC by Borrowers' and taken by GMAC into its possession, custody and control on October 22, 2001. Include in your answer the identity of each patent and trademark and with respect to each patent and trademark identified provide the following details:

a.  Describe the steps you have taken since October 22, 2001 to preserve and maintain such items.

b.  Describe the steps you have taken to sell them.

c.  Identify all offers to purchase that have been made for such property, including the identity of the offeror and the amount offered.

d.  Identify all sales you have made, including the identity of the purchaser and the amount paid.

e.  Identify all GMAC agents, servants or employees who had or have any responsibility for the maintenance of Borrowers' intellectual property.

f.  Identify all GMAC agents, servants or employees have or had any responsibility for selling Borrowers' intellectual property in liquidation.

g.  Identify all records in your possession custody or control that refer, reflect or relate to Borrowers' intellectual property.

h.  If you no longer have in your possession, custody or control the documents referring, reflecting or relating to Borrowers' intellectual property state: (i) the date you last had them in your possession, custody or control, (ii) the address of their last-known location, (iii) the identity of the person(s) who have the records now or, if unknown to you, the identity of the last-known custodian of said records, and (iv) the circumstances surrounding your disposition of such documents.

## RESPONSE TO INTERROGATORY NO. 5

See General Objections. GMACCF also specifically reserves all of its other objections to this interrogatory.

BOS_498508_3.DOC/MDUBNOFF

**INTERROGATORY NO. 6**

Excepting Accounts Receivable, Inventory and Intellectual Property, please account for all other assets of Borrowers' seized by GMAC on October 22, 2001 (e.g. computers). Include in your answer an identification of each asset and with respect to the identified asset provide the following details:

a. State whether it was sold by GMAC and, if so, the dollar amount of the sale.

b. If sold, identify the buyer and date of purchase.

c. If sold, identify all documents upon which that sale is reflected and state where on the document it appears.

d. If sold, state whether or not Borrowers were credited with the sale and, if so, identify all documents upon which such credit appears.

e. If not sold, state the current location of the asset and identify the person or persons that have possession, custody or control of it.

f. If you do not know the current location of the unsold assets, state its last-known location and the identity of the person or persons that had possession, custody or control of it.

g. Identify all GMAC agents servants or employees who have or had any responsibility for the preservation and/or sale of these assets.

**RESPONSE TO INTERROGATORY NO. 6**

See General Objections. GMACCF also specifically reserves all of its other objections to

this interrogatory.

**INTERROGATORY NO. 7**

With respect to each asset identified by you in responses to Interrogatories 2, 4, 5 and 6 as to which GMAC has abandoned its sales and/or collections efforts, state the date you abandoned such efforts and describe the steps you have taken to provide notice (if any) of this to Landay in his capacity as junior creditor. Please include the following details in you answer:

a. The location of each asset for which you have abandoned efforts,

b. The date GMAC determined to abandon its sales and/or collections efforts,

c. Whether or not GMAC advised Landay in his capacity as junior creditor that GMAC was ceasing its sales and/or collections efforts and, if so, the date and form of the notice, and

d. Whether or not GMAC advised Landay in his capacity as junior creditor that this asset was available to Landay for satisfaction of Borrowers' debt to him and, if so, the date and the form of the notice.

e. Identify all persons that have knowledge relating to your answer to this interrogatory.

f. Identify all documents that relate, refer to or reflect your answer to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 7

<u>See</u> General Objections.  GMACCF also specifically reserves all of its other objections to

this interrogatory.

## INTERROGATORY NO. 8

Please explain the GMAC monthly reports attached hereto as Exhibit 2 (GLAN01516-01520; GLAN 01521-01524; GLAN 01525-01528; GLAN 01529-01531; GLAN 01532-01535; GLAN 01536-01538; GLAN 01539-01541; GLAN 01542-01544; GLAN 01545-01547; GLAN 01548-01550; GLAN 01551-01553; GLAN 01554-01556.)  Include the following information in your explanation:

a. Explain why these efforts are in three different formats (compare GLAN 01516-01520 to GLAN 01529-01531 to GLAN 01551-01553) including, without limitation whether these are three different kinds of reports or whether one format simply replaced the other.

b. For each "MISC CHG/CR" entry: (i) state what the charge or credit was for, (ii) identify the contract document and provision therein that you claim permitted you to make that charge, (iii) identify all persons who authorized such charge, (iv) identify all persons who have knowledge concerning such charge, and (v) identify all documents that reflect or relate to the reasons for making such charge.

c. For each of the "COLLECTIONS" entries that apparently increase the loan balance (see, e.g., the December 2001 statement, GLAN 01525-01528, 12/4/01 collections entry in the amount of $126,239.89): (i) explain to what the entry relates, and (ii) explain how a collection can increase a loan balance.

d. For each "CASH ADVANCE" entry: (i) state to whom the cash advance was made, (ii) state for what purpose it was made, (iii) identify the contract document and provisions therein that you claim permitted you to make that charge to the loan, (iv) identify all persons who authorized such charge, and (vi) identify all documents that reflect or relate to the reasons for making such charge.

e. For each "CHARGE BACK" entry:  (i) state what "charge back" means, (ii) state the reason for the charge back, (iii) state whether the charge back relates to a customer of Borrwers' and, if so, identify such customer, (iv) describe the efforts GMAC made to verify the validity of the charge back claimed by Borrowers' customer, (v) identify all contract documents and provision therein that you claim permitted you to make that

BOS_498508_3.DOC/MDUBNOFF

charge back, (vi) identify all persons who authorized such chargeback, (vii) identify all persons who have knowledge concerning such charge back, and (viii) identify all documents that reflect or relate to the reasons for making such charge.

f.  For each "OVERADV CHGE" entry: (i) explain what "overadvance" means, (ii) identify the "overadvance" to which the entry relates, including the date it was incurred and how it was incurred, (iii) identify the contract provision that you claim permitted you to make this charge, (iv) identify all persons who authorized such charge, (v) identify all persons having knowledge concerning such charge, and (vi) identify all documents that reflect or relate to the reasons for making such charge.

g.  For each "WIRE CHARGES" entry: (i) identify the charge to which it relates, including the date it was incurred, by whom it was incurred and why it was incurred, (ii) identify the contract provision that you claim allows you to make this charge, (iii) identify all persons who authorized such charge, and (v) identify all documents that reflect or relate to the reasons for making such charge.

h.  For each "DBA" entry, explain what this entry means, including: (i) what is "DBA", (ii) the reasons for posting this entry, (iii) the contract provision that you claim permits this entry, (iv) the identity of all persons who have knowledge concerning this entry, and (v) the identity of all documents that reflect or relate to this entry.

i.  For each "BANK CHARGES" entry: (i) identify the bank charges to which this entry relates including the name of the bank, the purpose of the charge, the date the charge was incurred, by whom it was incurred and why it was incurred, (ii) identify the contract provision that you claim allows you to make this charge, (iii) identify all persons who authorized such charge, (iv) identify all persons having knowledge concerning such charge, and (v) identify all documents that reflect or relate to these reasons for making such charge.

j.  For the "LC CHGE" on GLAN 01540: (i) identify the charge to which this entry relates including the purpose of the charge, the date the charge was incurred, by whom it was incurred and why it was incurred, (ii) identify the contract provision that you claim allows you to make this charge, (iii) identify all persons who authorized such charge, (iv) identify all persons having knowledge concerning such charge, and (v) identify all documents that reflect or relate to the reasons for making such charge.

**RESPONSE TO INTERROGATORY NO. 8**

See General Objections.  GMACCF also specifically reserves all of its other objections to this interrogatory.

BOS_498508_3.DOC/MDUBNOFF

### INTERROGATORY NO. 9

If the "LC CHGE" entry on GLAN 01540 relates to a $110,000 Letter of Credit provided to Disney on account of Buyers, please explain your accounting with respect to that Letter of Credit. Include the following information in your explanation:

a. State whether or not the $110,000 for the Disney Letter of Credit was carried as part of the loan balance since the year 2001.

b. State whether the entry on GLAN 01540 reflects a $56,908.22 payment to Disney in 2002 on that letter of credit.

c. If your answer to the foregoing is affirmative, state whether or not the remaining $53,091.78 of the $110,000 letter of credit was ever paid to Disney or whether the payment of $56,908.22 was in full satisfaction of money owed Disney.

d. If the $56,908.22 payment was full satisfaction to Disney on a Letter of Credit for which GMAC had already charged Borrowers' $110,000, please explain why $56,908.22 was added to the loan balance rather than $53,091.78 being deducted from the loan balance.

### RESPONSE TO INTERROGATORY NO. 9

See General Objections. GMACCF also specifically reserves all of its other objections to this interrogatory.

### INTERROGATORY NO. 10

Explain each document in the group of documents marked Exhibit 3 hereto (GLAN 02170-73, 02156-59, 02160-65, 01963-4; 01986-92), including a statement about:

a. What the document purports to show, and

b. What the entries means.

### RESPONSE TO INTERROGATORY NO. 10

See General Objections. GMACCF also specifically reserves all of its other objections to this interrogatory.

### INTERROGATORY NO. 11

Please explain each and every entry on the document that GMAC provided to Landay entitled "Seneca Sports Damages Calculation" (annexed hereto as Exhibit 5), and include the following details in your response:

a. Identify each and every document that GMAC consulted to prepare Exhibit 5.

BOS_498508_3.DOC/MDUBNOFF

b.  Identify all persons that participated in the preparation of Exhibit 5.

c.  Identify all documents that provide the underlying data for each figure on each line of each column of Exhibit 5.

d.  As to the "Balance" column of Exhibit 5:  (i) state what the figures in that column represent, including whether each figure purports to be the total amount of money allegedly owed to GMAC by the Borrowers on the date indicated in the far left column, and (ii) identify all the component parts of the Balance figures (e.g., principal, interest, charges, Letter of Credit etc.).

e.  State how GMAC arrived at the 10/22/01 Balance of $1,427,511.9 in Exhibit 5 and include in your answer:  (i) the dollar amount attributable to principal, (ii) the dollar amount attributable to interest, (and (iii) the dollar amounts and identity of all other charges and/or components parts of this balance figure.

f.  Reconcile the 10/22/2001 Balance figure in Exhibit 5 with the entries shown on GMAC's 10/22/01 Computer Screen that it provided to Borrowers (Exhibit 6 hereto).  Include in your answer an explanation of the entries on Exhibit 6.

g.  As to the entries in the "Advances" column in Exhibit 5, explain what "advances" mean and, if these entries indicate money paid by GMAC to or on account of Seneca:  (i) identify the persons or persons to whom such payments were made and for each payment, (ii) state the purpose of the payment, and (iii) state why GMAC was making advances with respect to a company that was no longer operating.

h.  As to the entries in the Collections/Paydowns column in Exhibit 5:  (i) identify each source of collected money and the amount collected from that source, and (ii) explain and provide details concerning entries that appear to increase the loan balance (e.g. May, August, Sept and Oct 2002).

i.  Explain what the "Recovery" column in Exhibit 5 shows, particularly the March 2004 entry.

j.  As to the "Overadvance Charge" column in Exhibit 5, provide the following information:

    i.    What is an "overadvance charge"?

    ii.   Identify the language in the loan documents that permits each charge reflected in this column,

    iii.  As to each monthly overadvance charge listed, state whether you had made an overadvance to Borrowers in that month,

    iv.   Explain how overadvance charges could be incurred by a business that was no longer taking advances from GMAC and was out of business,

BOS_498508_3.DOC/MDUBNOFF

    v.    Explain why overadvance charges were charged to the loan through September 2003 and why they stopped after September 2003.

k.  Explain the entries in the "Commission Charges" column in Exhibit 5, including: (i) the identity of anyone who received commissions, (ii) the purpose of the commission, (iii) the persons who authorized the incurring of such charge, and (iv) the identity of the loan document provisions that authorizes such charge.

l.  As to each entry in the "Bank Charges" column in Exhibit 5: (i) identify the bank to which the charges relate, and (ii) state the purpose for which the charge was incurred.

m.  As to each entry in the "Legal" column in Exhibit 5: (i) state the purpose for which the charge was incurred and, if it reflects payments to lawyers, (ii) identify the lawyers, and (iii) describe the work performed.

n.  As to each entry in the "Misc Charges" column in Exhibit 5: (i) identify each of the charges that comprise the monthly entry and for each such individual charge, (ii) state the reason it was incurred, and (iii) state the identity of the loan document provision that authorizes such charge.

o.  Explain the "(14,405.00)" entry for august 2003 in the Misc. Charges column in Exhibit 5 and the September 2003 "14,405.00" entry that follows it, including: (i) to what do these entries relate, and (ii) why is one entry a positive and the other a negative?

### RESPONSE TO INTERROGATORY NO. 11

See General Objections. GMACCF also specifically reserves all of its other objections to this interrogatory.

### INTERROGATORY NO. 12

With respect to the Platinum proposal discussed in Paragraphs 47 and 48 of Plaintiff's First Amended Complaint, please explain why GMAC did not accept the proposal and include the following information in your answer:

a.  Identify all agents, servants and employees of GMAC who knew about the proposal.

b.  Identify all persons who were involved in GMAC's decision concerning the proposal.

c.  State whether the analysis in Exhibit 4 hereto (RAS 266-289) concerns the Platinum proposal.

d.  If your answer to c. above is affirmative, state whether the author of that document was aware at the time of its preparation that the proposal called for Platinum to provide funding to Borrowers and to pay of the GMAC loan.

e.  State the purpose of the analysis made in Exhibit 4.

**RESPONSE TO INTERROGATORY NO. 12**

See General Objections.  GMACCF also specifically reserves all of its other objections to

this interrogatory.

**INTERROGATORY NO. 13**

With respect to Kathleen A. Pappalardo named in your Initial Disclosure Statement pursuant to Fed. R. Civ. P. 26 9a), state in detail the nature of her knowledge concerning the account histories of Borrowers, including but not limited to the following information:

  a.  Provide her current job description and state the dates that she has been employed in this position.

  b.  For every other position she has held at GMAC, provide a job description and the dates she was employed in that position.

  c.  State whether she had any responsibility for the liquidation *if* Borrowers' assets, and, if so, describe that responsibility.

  d.  State whether she had any responsibility for collections from the sale of Borrowers' assets, and, if so, describe her responsibilities.

  e.  State whether she had any responsibilities relating to the collection of Borrowers' accounts receivable and, if so, describe her responsibilities.

  f.  State whether she had any responsibility for crediting collections to the Borrowers' loan balance and, if so, describe those responsibilities.

  g.  State whether she had any responsibilities concerning charges made to Borrowers' loan and, if so, describe her responsibilities.

**RESPONSE TO INTERROGATORY NO. 13**

See General Objections.  GMACCF also specifically reserves all of its other objections to

this interrogatory.

**INTERROGATORY NO. 14**

Provide the last-known addresses and telephone numbers of the former GMAC employees named in the First Amended Complaint and/or your Initial Disclosure Statement, to wit:

  a.  Jane Frangos,

  b.  John R. Fitzpatrick, and

c.  Paul Fitzgerald.

## RESPONSE TO INTERROGATORY NO. 14

See General Objections.  GMACCF also specifically reserves all of its other objections to

this interrogatory.

## INTERROGATORY NO. 15

Identify the present custodian of any documents relating to Borrowers, Landay and/or the transactions at issue in this litigation that had been in the possession of the above listed former employees at the time of termination of employment.

## RESPONSE TO INTERROGATORY NO. 15

See General Objections.  GMACCF also specifically reserves all of its other objections to

this interrogatory.

## INTERROGATORY NO. 16

Please provide the details concerning the loan balance Borrowers owed GMAC as of midnight of September 18, for each years 2001, 2002, 2003 and 2004, including but not limited to:

a.  The total loan balance as of that date,

b.  The dollar amount of the principal portion of that loan balance,

c.  The dollar amount of the interest portion of that loan balance, and

d.  The dollar amount of charges, fees, expenses or other costs included in the loan balance.

## RESPONSE TO INTERROGATORY NO. 16

See General Objections.  GMACCF also specifically reserves all of its other objections to

this interrogatory.

## INTERROGATORY NO. 17

Please provide the details of the loan balance Borrowers owed GMAC as of the end of each month beginning September 30, 2000 to the end of the month just prior to the date this document is signed, including but not limited to:

a.  The total loan balance as of that date,

BOS_498508_3.DOC/MDUBNOFF

b.  The dollar amount of the principal portion of that loan balance,

c.  The dollar amount of the interest portion of that loan balance, and

d.  The dollar amount of charges, fees, expenses or other costs included in the loan balance.

BOS_498508_3.DOC/MDUBNOFF

**RESPONSE TO INTERROGATORY NO. 17**

<u>See</u> General Objections.  GMACCF also specifically reserves all of its other objections to

this interrogatory.

_Kathleen G. Pappalardo_
Kathleen A. Pappalardo, Vice President


As to Objections,

GMAC COMMERCIAL FINANCE LLC

_Mark B. Dubnoff_
John A. Houlihan (BBO # 542038)
Mark B. Dubnoff (BBO # 637212)
Edwards & Angell, LLP
101 Federal Street
Boston, MA  02110
(617) 439-4444

## <u>Certificate of Service</u>

I, Mark B. Dubnoff, hereby certify that on this 10th day of August, 2005, I caused a copy of the foregoing document to be sent by hand to Alan R. Hoffman, Lynch, Brewer, Hoffman & Fink, LLP, 101 Federal Street, Boston, MA 02110, counsel for David L. Landay.

Mark B. Dubnoff

BOS_498508_3.DOC/MDUBNOFF