UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID L. LANDAY<br>     Plaintiff,<br><br>     v.<br><br>GMAC COMMERCIAL CREDIT LLC<br>and GMAC COMMERCIAL FINANCE<br>LLC,<br>     Defendants. | Civil Action No. 04-cv-11955-WGY |

**GMAC COMMERCIAL FINANCE LLC'S OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES**

As this Court is by now well aware, Plaintiff David L. Landay ("Landay") brought this action against Defendant GMAC Commercial Finance LLC ("GMACCF")[1] after losing a parallel lawsuit in New York state court.[2] Landay's motivations are twofold. First, he is seeking to re-litigate those issues that have been decided adversely to him in New York. Second, he is hoping to pressure GMACCF into accepting a discounted settlement of its New York judgment against him by driving up its litigation costs. To that end, he has served GMACCF with vexatious and unduly burdensome discovery requests, many of which far exceed all bounds of a reasonable search for admissible evidence. His First Set of Interrogatories is a case in point. Although Landay has numbered only 17 interrogatories, they contain a total of 121 numbered "subparts," many of which have sub-subparts and/or compound inquiries such as "state the

---

[1] The First Amended Complaint identifies two separate defendants, GMAC Commercial Credit LLC, and GMAC Commercial Finance LLC. GMAC Commercial Finance LLC is the successor by merger of GMAC Commercial Credit LLC and GMAC Business Credit LLC. Therefore, the acronym GMACCF applies to both entities.

[2] More detailed descriptions of the New York case and its similarities to this action are provided in earlier filings, such as the Memorandum Supporting Defendants' Motion for Judgment on the Pleadings (Docket No. 23), which GMACCF incorporates herein by reference.

location of [] documents and identify persons having custody or control" over them.  See "Interrogatory No. 1c."  In total, the interrogatories seek information about more than 100 discrete separate subjects.  GMACCF alerted Landay to the fact that he had exceeded the 25-interrogatory limit imposed by Fed. R. Civ. P. 33(a) and Local R. 26.1(C) almost immediately after this Court's discovery stay was lifted and offered Landay a chance to submit a new, more reasonable set of interrogatories.  Landay refused GMACCF's offer and made no counterproposal.  As a result, GMACCF answered the first 25 (actually 27) separate inquiries that were contained in Landay's interrogatories, to the extent those questions were not otherwise objectionable.  Since GMACCF has fulfilled all of its obligations to respond to Landay's interrogatories, this Court should deny the present motion to compel.

## **Background**

A.    **The New York Action.**

On October 25, 2002, GMACCF sued Landay in the Supreme Court for the State of New York, New York County, Index No. 602238/02 (the "New York Action") to collect on a personal guaranty (the "Guaranty") that Landay had executed in favor of GMACCF to help secure financing that GMACCF provided for Seneca Sports, Inc. ("Seneca") and Brookfield International, Inc. ("Brookfield") (with Seneca, the "Borrowers").  Landay disputed GMACCF's allegations and asserted nine affirmative defenses as well as seven counterclaims.  On May 25, 2004, the New York Court issued an order granting partial summary judgment in favor of GMACCF and against Landay on liability, rejecting all but one of Landay's contentions outright (the "Order").[3]  The Court withheld judgment on the amount of money that Landay owed to GMACCF on the Guaranty.  It referred that issue, along with Landay's related affirmative

---

[3] Copies of this decision have previously been filed with this Court, including as Exhibit 3 to Docket No. 23.

defense that GMACCF had not disposed of the Borrowers' assets in a commercially reasonable manner following their default on the loan, to a Special Referee. See Order at p. 18. The Court also assigned the Special Referee the task of determining the reasonable amount of expenses and attorneys' fees that Landay also owed to GMACCF in connection with its collection efforts. Id. The inquest before the Special Referee is currently scheduled for October 27-28 in New York.

**B.**     **This Lawsuit.**

Nearly four months after the New York Court granted partial summary judgment in favor of GMACCF, Landay filed this lawsuit. He subsequently filed an Amended Complaint, which he served on GMACCF on December 16, 2004. As GMACCF has explained in prior filings, e.g., Docket Nos. 23, 34, the First Amended Complaint essentially mirrored the affirmative defenses and counterclaims that Landay had raised in response to the New York Action that GMACCF had commenced against him. Landay alleged that GMACCF committed misrepresentation in connection with the Loan Agreements (Count I); usury in violation of Mass. Gen. Laws ch. 271, § 49 (Count II); breach of the 2000 Factoring Agreement (Count III); breach of the 2001 Forbearance Agreement (Count IV); breach of the covenants of good faith and fair dealing ancillary to the Loan Agreements (Count V); a violation of Landay's rights as a junior creditor of the Borrowers ("Count VI); and a violation of Chapter 93A (Count VII).

GMACCF answered and then moved for judgment on the pleadings. At a May 18, 2005 hearing, this Court granted GMACCF's motion in part, dismissing Counts III, IV and V of the Amended Complaint as well as Count VII to the extent that it was grounded on allegations supporting Counts III, IV or V. As to the remaining counts, the Court took GMACCF's motion under advisement.

## C. Discovery Generally

On June 9, while the parties were awaiting a decision on the motion for judgment on the pleadings, Landay served GMACCF with a set of document production requests. On June 17, Landay served GMACCF with a set of interrogatories. While Landay purported to ask only 17 interrogatories, they had a combined total of 121 subparts, many of which contained multiple sub-subparts. The document itself was nearly an inch thick and consisted of a 17-page main document and 166 pages of exhibits. By contrast, when GMACCF later served Landay with its set of interrogatories, also purporting to number 17, the entire document was four pages long.[4]

On July 1, GMACCF filed a motion to stay discovery pending the Court's ruling on whether to dismiss the remaining counts of the amended complaint. See Docket No. 36. In the motion, GMACCF explained that there would be no purpose served by requiring it to expend substantial resources responding to the document production requests and interrogatories, given the possibility of dismissal. Id. Landay filed an opposition on July 14. Docket No. 39. This Court granted the stay with an electronic order issued on July 19.

This stay presumably lifted on Friday, July 22, when this Court issued an opinion denying the remainder of GMACCF's motion for judgment on the pleadings. The following Monday, counsel for Landay sent a letter to GMACCF's counsel stating that in light of the Court's ruling, GMACCF's responses to the document production requests and interrogatories were both due immediately.[5] The next day, July 26, GMACCF's counsel sent a responsive letter disagreeing with Landay's counsel's interpretation of when the responses were due.[6] GMACCF's counsel stated that GMACCF actually had thirty days from the lifting of the stay, or

---

[4]   A copy is attached as Exhibit 1.
[5]   The letter was written by Anne Hoffman, a colleague of Landay's counsel-of-record Alan Hoffman, who was on vacation at the time. A copy of the letter is attached as Exhibit 2.
[6]   A copy of this letter is attached as Exhibit 3.

until August 21, to respond to Landay's outstanding discovery requests. However, GMACCF's counsel also stated that notwithstanding the additional time, he would "endeavor to get you GMACCF's responses and objections to Landay's document production requests by the end of this week." Ex. 3. GMACCF's counsel further stated that he would "work toward getting answers to Landay's interrogatories for you, but I note at the outset that Landay's interrogatories are facially objectionable in that they clearly exceed the limit of twenty-five interrogatories imposed by Fed. R. Civ. P. 33." Id. The letter continued: "Rather than simply objecting to all interrogatories after the twenty-fifth, I want to give you an opportunity to send me a revised set that comports with the Rules." Id. "Please let me know your intentions by the end of the week." Id.

On July 27, Landay's counsel responded with a letter claiming that GMACCF had waived all of its objections to Landay's document production requests and interrogatories, including any based on the numerical limits imposed by Rule 33, because more than 30 days had elapsed since the interrogatories were served.[7] Landay's counsel did not respond directly to GMACCF's invitation to submit a revised, more reasonable set of interrogatories. See Ex. 4. Nor did she make any counterproposals toward comprise. Id. Instead, she just reiterated her demand that GMACCF provide its responses immediately. Id.

The next day, GMACCF's counsel sent a further response disagreeing with Landay's position on waiver and stating that all of its "objections are preserved and may be asserted in response to plaintiff's document productions requests and interrogatories."[8] The letter continued: "Since you did not respond to my invitation to amend plaintiff's interrogatories to have them comport with the numerical restrictions imposed by Fed. R. Civ. P. 33 and Local R.

---

[7] A copy of this letter is attached as Exhibit 4.
[8] A copy of this letter is attached as Exhibit 5.

26.1(C), GMACCF will respond only to the first twenty-five of those interrogatories." Ex. 5. Landay did not respond to this letter until he began preparing the motion to compel.

On July 29, 2005, a mere seven days after this Court's ruling, GMACCF provided Landay with its initial objections and responses to his document production requests. On August 10, GMACCF provided Landay with its interrogatory responses. GMACCF was prepared to provide Landay with those responses on August 8, but around that time, its counsel became aware of a storage facility in Milford, Massachusetts, which they believed might contain some responsive documents. As a result, GMACCF's counsel contacted Landay's counsel, informed him of this development and began making arrangements to secure the documents, review them for content and produce them to Landay to the extent appropriate.[9] Landay's inspection of these materials began on August 23.

Primarily because of these newly-discovered documents, the parties filed a Joint Motion for Modification of the Case Management Order. See Docket No. 44. The modifications, which were approved by this Court on September 12, effectively pushed back several of the key discovery deadlines in this case, including the date on which Landay must present his expert report (moved from September 15 until October 6), the date on which he must make his expert available for deposition (moved from September 30 until October 15), and the date on which

---

[9] Simultaneously, GMACCF's counsel conferred with Landay's counsel regarding a brief delay in the delivery of the interrogatory responses. More specifically, GMACCF's counsel stated that although he believed the responses were not actually due until August 21, an argument could be made that they were due on August 8, since there were fourteen days between the date that Landay had served the interrogatories upon GMACCF (June 17) and the date GMACCF had moved for a stay of discovery (July 1), and an additional sixteen days between the date the stay was presumably lifted (July 22) and August 7, which was a Sunday. Landay's counsel stated that if GMACCF provided him with the responses on August 9, he would not argue that they were untimely because they should have been served on August 8; he did, however, reserve the right to argue that the responses should have been delivered on July 18. The next day, Landay's counsel gave GMACCF an additional one-day extension to deliver the interrogatory responses.

discovery would close (moved from October 28 until November 11).  See id.  As a result, Landay has recovered whatever discovery time he may claim to have lost as a result of either the issuance of the stay or the discovery of the Milford documents.

### D.     GMACCF's Objections And Responses To Landay's Interrogatories

Since Landay had completely rebuffed GMACCF's overtures toward resolving their dispute over the number of interrogatories that Landay had asked, GMACCF was compelled to assert its objection within its Response to Landay's First Set of Interrogatories ("GMACCF's Response").  Thus, GMACCF's Response included the following general objection:

> Defendant objects to Plaintiff's interrogatories to the extent that they exceed the numerical limitations imposed by Fed. R. Civ. P. 33(a) and Local Rule 26.1(C). According to the rules, Plaintiff is limited to propounding twenty-five (25) interrogatories on the Defendant and "cannot evade this presumptive limitations through the device of joining as 'subparts' questions that seek information about discrete separate subjects." Fed. R. Civ. P. 33(a), advisory committee's note. Plaintiff has violated these rules by propounding far in excess of 25 interrogatories, notwithstanding its numbering of only 17 interrogatories.  For example, what Plaintiff has labeled "Interrogatory No. 1" actually consists of no fewer than eight (8) separate interrogatories.  Similarly, "Interrogatory No. 2" actually consists of no fewer than ten (10) separate interrogatories, and "Interrogatory No. 3" actually consists of no fewer than nine (9) separate interrogatories.  Arguably, they each consist of many more separate interrogatories.  Thus, Landay has exceeded his limit on interrogatories before even reaching what he has labeled "Interrogatory No. 4."  Accordingly, Defendant is not obligated to respond to "Interrogatory No. 4" through "Interrogatory No. 17," most of which are also objectionable compound interrogatories, and will not do so.  Before filing this Response, Defendant invited Plaintiff to amend his First Set of Interrogatories to comply with the numerical limits imposed by the Rules, but Plaintiff refused.

GMACCF's Response at p. 2.

Additionally, GMACCF specifically objected to what Landay had labeled "Interrogatory No. 1" on the ground that each of the eight (8) purported subparts, identified by letters "a" through "h," sought information about discrete, separate subjects and therefore should be treated as separate interrogatories.  GMACCF's Response at p. 4.  GMACCF did not object to treating

as single interrogatories what Landay had labeled as five sub-subparts to "Interrogatory No. 1a," five sub-subparts of "Interrogatory No. 1b," and seven sub-subparts of "Interrogatory 1h." Id. at pp. 4-10.

Similarly, GMACCF specifically objected to what Landay had labeled "Interrogatory No. 2" on the grounds that the fourteen purported subparts – labeled "a" through "n" – actually comprised no fewer than ten separate inquiries on discrete subjects. Id. at p. 11. While GMACCF agreed to treat what Landay had labeled subparts "a," "b," "c," and "f" as a single interrogatory, and to treat what Landay had labeled subparts "h" and "i" as another single interrogatory, GMACCF contended that each of the other "subparts" sought information about separate subjects and, therefore, had to be treated as separate interrogatories for purposes of determining compliance with the numerical limitations imposed by Fed. R. Civ. P. 33(a) and Local R. 26.1(C). Id. GMACCF did not object to treating all four purported sub-subparts of "interrogatory no. 2n" as a single interrogatory. Id. at pp. 17-18.

With regard to purported "Interrogatory No. 3," and its purported subparts "a" through "k," GMACCF specifically objected on the grounds that it consisted of no fewer than nine (9) separate inquiries on discrete subjects. Id. at p. 19. GMACCF stated that while purported subparts while "e" and "f" were arguably part of one interrogatory and subparts "g" and "h" were arguably part of a second interrogatory, each of the other "subparts" sought information about discrete subjects and therefore would be treated as separate interrogatories for purposes of determining compliance with the numerical limitation imposed by the rules. Id. at p. 19. GMACCF did not object to treating the four purported sub-subparts of "interrogatory no. 3e" as a single interrogatory. Id. at pp. 21-22.

GMACCF raised other objections to the 27 separate interrogatories that it had identified and then responded to them thoroughly, subject to those objections. GMACCF did not answer what Landay had labeled "Interrogatory Nos. 4 through 17" on the grounds that he had exceeded his numerical limitations. Most of those "interrogatories" had their own disconnected subparts. All in all, GMACCF's counsel spent more than 40 hours preparing GMACCF's Response.

### Argument

Contrary to Landay's contention, GMACCF has not waived any of its objections to Landay' interrogatories. It served those objections and responses well within the 30-day period after the stay of discovery was lifted. Landay's theory that GMACCF's Response actually was due <u>before the stay was issued</u> effectively would nullify this Court's granting of the stay. Moreover, even if GMACCF's objections and responses had been untimely, this Court should exercise its discretion to deny Landay's motion to compel further responses, since the interrogatories clearly "exceed the bounds of fair discovery." <u>See</u> <u>Krewson v. City of Quincy</u>, 120 F.R.D. 6, 7 (D Mass. 1988). While Landay purports to have asked only 17 interrogatories, each containing numerous subparts, most of the 121 "subparts" are simply interrogatories dressed in subparts' clothing.

In actuality, Landay has asked GMACCF for information relating to no fewer than 100 "discrete separate subjects." Fed. R. Civ. P. 33(a), Advisory Committee's note. Therefore, under the federal and local rules, GMACCF was justified in answering only the first 25 (or 27). GMACCF also was justified in raising each of the specific objections that it asserted in response to those interrogatories. Accordingly, this Court should deny Landay's Motion to Compel further responses to his interrogatories.

A.     **GMACCF Has Not Waived Any Of Its Objections**

Landay cites to three cases in support of his waiver argument: Krewson v. City of Quincy, 120 F.R.D. 6; Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d 8 (1st Cir. 1991); and Willemijn Houdstermaatschaapij Bv, A v. Apollo Computer, Inc., 707 F. Supp. 1429 (D Del. 1989). None of those cases, however, is on point, since discovery was not stayed in any of them. See, e.g., Willemijn Houdstermaatschaapij Bv, A v. Apollo Computer, Inc., 707 F. Supp. at 1441 (noting that the request for a stay in that case had been denied). In fact, the only one of Landay's cases that has any bearing on this action is Krewson, but that is because of its recognition of the principle that even where a party has waived its discovery objections, a court has discretion not to compel the party to respond to any "request [that] far exceeds the bounds of fair discovery." Krewson, 120 F.R.D. at 7 (quoting Slauenwhite v. Bekum Maschinenfabriken, GMBH, 35 F.R. Serv. 2d 975 (D. Mass. 1983)). Neither Krewson nor either of the other two cases stands for the principle that when a party moves for a stay of discovery, which the Court ultimately grants, the party still was required to act as if the stay had been denied.

That, of course, would be the illogical result under Landay's waiver theory, for if Landay is correct and GMACCF was required to provide him with its objections and responses to interrogatories on July 18, the day before the Court granted GMACCF's motion for a stay, then the Court's ruling would be rendered a nullity. In granting the stay, this Court must have accepted GMACCF's argument that it should not have to waste time and resources responding to Landay's document production requests and interrogatories while the motion for judgment on the pleadings was still pending. Landay's logic would strip the Court's order of its intended effect.

Indeed, Landay's counsel must realize the absurdity of their position or they would have demanded GMACCF's interrogatory responses on July 19, notwithstanding the Court's order,

because more than 30 days had elapsed since the interrogatories had been served. At the very least, Landay's counsel would have demanded production of GMACCF's documents on July 11, while the motion for a stay was still pending. Additionally, Landay's memorandum opposing the stay, filed on July 14, would have included an argument that GMACCF's motion was moot with regard to the documents since the 30-day period had expired. It did not.

Clearly, the Court agreed with GMACCF's contention that GMACCF should not have to respond to any of Landay's discovery requests until such time as the motion for judgment on the pleadings was denied. Since that event did not occur until July 22, GMACCF's discovery obligations did not begin until that date. Accordingly, GMACCF's objections and responses to Landay's document production requests and interrogatories were not due until Monday, August 22.[10] Cf. Smith v. MCI Tel., 124 F.R.D. 665, 685 (D. Kan. 1989) (where magistrate judge denied a motion for a stay, party should have produced documents responsive to an outstanding request within 30 days after the denial of the stay). The fact that GMACCF chose to provide Landay with its discovery responses long before this deadline is simply evidence of GMACCF's willingness to act reasonably and in good faith toward Landay throughout this case.

In stark contrast, Landay has repeatedly served GMACCF with outrageously burdensome and irrelevant discovery requests, such as this set of interrogatories with all of its extremely detailed subparts and sub-subparts. In fact, these interrogatories are so blatantly beyond the realm of fair discovery that even if GMACCF had waived its objections to them, this Court should follow Krewson and decline to compel further responses to them. See 120 F.R.D. at 7.

---

[10] An alternative approach would be to subtract the time between which GMACCF received the interrogatories and the time it moved for the stay from the overall 30-day period. Under this approach, GMACCF had sixteen days following the dissolution of the stay, or until August 8, in which to respond to the interrogatories. Landay's counsel has agreed to treat GMACCF's responses as having been delivered on August 8.

Landay cannot even claim to be prejudiced by any alleged delay in receiving the responses. At most, the stay postponed Landay's discovery plan by three weeks (from July 1 until July 22). This is the precise extension of time that GMACCF agreed to give Landay to provide an expert report (from September 15 until October 6). GMACCF has agreed to similar postponements of other discovery deadlines. Under such circumstances, a finding of waiver would be manifestly unfair.

**B.     Landay's Interrogatories Far Exceed The Numerical Limits**

Rule 33(a) provides that absent leave of court or written stipulation, "any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts." Fed. R. Civ. P. 33(a). The local rules impose the same numerical restriction. Local R. 26.1(c). "Parties cannot evade this presumptive limitation through the device of joining as 'subparts' questions that seek information about discrete separate subjects." Fed. R. Civ. P. 33(a), Advisory Committee's note. In this case, Landay has clearly tried to evade the presumptive limitations by attaching many "subparts" to each of his numbered interrogatories.

For example, while so-called "Interrogatory No. 1" purports to contain eight subparts, two of which have five sub-subparts and one of which has seven sub-subparts, all eight of the "subparts" seek information about discrete separate subjects. Thus, "subpart a" asks whether GMACCF has destroyed "or otherwise disposed of" any documents that relate to Landay and/or his Guaranty; "subpart b" asks whether GMACCF has destroyed "or otherwise disposed of" the Borrowers' books and records that GMACCF seized on October 22, 2001; "subpart c" asks GMACCF to identify both the location of the Borrowers' books and records and the persons having custody or control over such documents; "subpart d" asks GMACCF to identify persons familiar with its record retention policy; "subpart e" asks both whether GMACCF maintains a

computerized version of documents, and if so, whether it has such documents that relate to the Borrowers and/or Landay; "subpart f" asks both how such computerized records can be accessed and whether hard copies can be made of those records; "subpart g" asks for a description of the steps that GMACCF took to comply with the requirements of M.G.L. 271, Section 49; and "subpart h" asks both for the current location of documents that GMACCF was required to maintain pursuant to M.G.L. 217, Section 49 [sic] and what happened to such documents if they are no longer in GMACCF's possession. See GMACCF's Response at pp. 3-4.[11]

None of these "subparts" is "logically or factually subsumed within and necessarily related to the primary question," Chapman v. California Dept. of Educ., 2002 WL 32854376, * 1 (N.D. Cal. Feb. 6, 2002) (quoting Safeco of America v. Rawstron, 181 F. R.D. 441, 445 (C.D. Cal. 1998)), presuming the "primary question" is how GMACCF's record retention policy relates to documents concerning the Borrowers and Landay. See Motion to Compel at p.8. That is, one can certainly "describe GMACCF's record retention policy" without ever answering any of the subparts, because GMACCF has a written policy that it has offered to produce to Landay's counsel under a confidentiality agreement. See GMACCF's Response at pp. 4-5.

Similarly, there is no "direct relationship between the various bits of information called for by the subparts," Chapman, 2002 WL 32854376, at * 1 (citations omitted), because the question of whether GMACCF has destroyed certain documents relating to the loan documents (subpart a) is unrelated to whether it has destroyed the Borrowers' books and records (subpart b), which is unrelated to the identities of the people familiar with the policy (subpart d), all of which are unrelated to the other subparts. There is no "common theme" running through all eight inquiries. See 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice &

---

[11] As indicated by this summary, many of the "subparts" themselves contain compound inquiries, such as "c," "e" and "f."

Proc., § 2168.1, at 261 (2d ed. 1994). Thus, they should each be counted as separate interrogatories under Fed. R. Civ. P. 33(a) and Local R. 26(C).

Landay's suggestion that these subparts are mere "refinements" of a more general question about how GMAC's record retention policy relates to documents concerning the Borrowers and Landay, see Motion to Compel at pp. 7-8, is akin to a claim that all 17 of Landay's interrogatories are actually just subparts or refinements of a single interrogatory that asks the broad question: "identify all evidence that relates to this lawsuit." Indeed, Landay's logic helps demonstrate why GMACCF properly objected to "Interrogatory No. 1" on the grounds that it was overbroad and unduly burdensome. See Fed. R. Civ. P. 26(b)(2)(iii). If Landay is correct that he can ask 25 separate interrogatories as broad and expansive as what he labeled "Interrogatory No. 1" with all of its subparts and sub-subparts, the amount of time, energy and legal fees needed to provide thorough responses would be outrageously high. This, of course, appears to be precisely Landay strategy.

What Landay has labeled "Interrogatory No. 2" suffers from similar infirmities. It actually purports to have fourteen different "subparts." GMACCF concedes that subparts "a", "b", "c", "f" are closely related enough to be regarded as a single interrogatory, and it responded to them as such. See GMACCF's Response at pp. 11-12. Similarly, subparts "h" and "i" are also closely related enough to one another to be considered a single interrogatory, and GMACCF responded to them as such. Id. at pp. 11, 14-15. Each of the other "subparts," however, sought information relating to a discrete separate subject and, therefore, should be counted as separate interrogatories under Rule 33(a).

For example, Landay's request that GMACCF identify all persons responsible for collecting accounts receivable ("subpart e") is neither logically or factually subsumed within the

overarching request to "account for EACH and EVERY Account Receivable of the Borrowers," nor directly related to any of the other "subparts." Similarly discrete and separate were the inquiries regarding why GMACCF might not have collected the full amounts owed by certain customers ("subpart g"), the identification of all documents that reflect such shortfalls ("subpart h"), the identification of documents reflecting collections of receivables ("subpart j"), whether such collection were credited to the Borrowers ("subpart k"), whether any documents reflecting such credits have been destroyed ("subpart l"), whether computerized records exist concerning the accounts receivable ("subpart m"), and the location of the accounts receivable records that were seized from the Borrowers on October 22, 2001 ("subpart n"). As with "Interrogatory No. 1," these purported subparts are not mere refinements of any general question. Landay's suggestion that they are necessary components of any answer to "Interrogatory No. 2" again demonstrates its overbroad and unduly burdensome nature.

Along the same lines, what Landay has labeled "Interrogatory No. 3," with its eleven purported "subparts" actually consists of no fewer than nine discrete separate inquiries. Asking GMACCF to state whether the documents attached as Exhibit 1 to Landay's Interrogatories (computer-generated letters) related to GMACCF's collection efforts ("subpart a") is different than asking for identifications of all persons to whom the letters were sent ("subpart b"), which is different than a request to explain the purpose of those letters ("subpart c"), and all of the other inquiries. The only "subparts" that were closely-related enough to be regarded as single interrogatories were the combinations of "e" and "f" and "g" and "h." GMACCF gave detailed responses to all nine of the separate queries contained in "Interrogatory No. 3."

Since "Interrogatory No. 1" actually consisted of no fewer than eight (8) separate interrogatories, "Interrogatory No. 2" consisted of no fewer than ten (10) separate

interrogatories, and "Interrogatory No. 3" actually consist of no fewer than nine (9) separate interrogatories, Landay had exceeded the numerical limitations imposed by Fed. R. Civ. P. 33(a) and local R. 26(C) before even reaching what he labeled "Interrogatory No. 4." Accordingly, GMACCF was justified in not responding to Interrogatory Nos. 4-17. This Court should not compel such responses.

C.      **Landay Should Not Be Granted Leave To Ask Additional Interrogatories**

Landay contends that if he has exceeded the numerical limits for asking interrogatories, this Court should grant him leave to propound additional interrogatories; namely, those that he has labeled Interrogatory Nos. 4-17." See Motion to Compel at pp. 10-12. Landay claims that "the information sought is essential to the discovery of admissible evidence proving Landay's four remaining claims." Id. at p. 10. With all due respect, Landay should have thought of this at the time that GMACCF offered him an opportunity to submit a revised list of interrogatories, not after GMACCF had to exert substantial resources and incur great expense responding to his first 27 interrogatories. Landay, however, opted against engaging in the cooperative discovery contemplated by Local R. 26.1(A). He should not be rewarded for his sharp discovery tactics.

Besides, Landay already has obtained substantial documentary information relating to what he labeled Interrogatory Nos. 4-17. He has, for example, all of the documents that GMACCF seized from the Borrowers on October 22, 2001, which presumably includes information relating to the Borrowers' inventory (Interrogatory No. 4); the Borrowers' intellectual property (Interrogatory No. 5); and the Borrowers' other assets (Interrogatory No. 6). Additionally, Landay has had an opportunity to depose GMACCF representative Kathleen Pappalardo about other topics covered in his interrogatories, such as entries in financial reports and related documents (Interrogatory Nos. 8, 10 and 11); accounting details for Letter of Credit

(Interrogatory No. 9), and details concerning the Borrowers' loan balance (Interrogatory Nos. 16 and 17).  Presumably, Landay can obtain other information through other depositions.

For all the aforementioned reasons, this Court should deny Landay's request for leave to repound additional interrogatories.

**D.      Each of GMACCF's Specific Objections Should be Upheld.**

Contrary to Landay's assertions, each of the specific objections that GMACCF raised to the interrogatories that it did answer were properly stated and should be upheld.

**1.      Vague And Ambiguous**

Landay's claim that his interrogatories could not have been vague and ambiguous because they contained detailed subparts is nonsensical.  See Motion to Compel at p. 12.  GMACCF's Response points out precisely which terms in Landay's interrogatories were vague and ambiguous and explains why they were hard to understand.  See generally GMACCF's Response at pp. 4-24.  GMACCF will let those written objections speak for themselves.

**2.      Overbroad And Unduly Burdensome**

Of all the misstatements and mischaracterizations that Landay has made in connection with this case, perhaps none is more startling than his declaration that he "has not propounded interrogatories sweeping in scope." Motion to Compel at p. 13.  Even a cursory read of Landay's First Set of Interrogatories reveals them to be outrageously broad and burdensome.  The 17 numbered interrogatories contain a total of 121 subparts, many of which have their own sub-subparts, and this does not even count all of the internally compound questions that are not identified by any specific number, letter, or Roman numeral.  Landay has asked GMACCF to provide him with so much excruciating detail about every conceivable fact that may or may not be related to this lawsuit, the New York Action, or GMACCF's general business practices that it

would be impossible to satisfy his demands.  This is an example of Landay's use of a discovery strategy that is calculated to fomenting disputes.

Landay served GMACCF with a 17-page document to which was attached six exhibits containing 166 pages of additional materials.  By contrast, GMACCF's First Set of Interrogatories was contained entirely in a four-page document.  The burdensome nature of Landay's interrogatories is further revealed by the fact that it took GMACCF and its counsel more than 40 hours of labor to provide Landay with 19 pages of new text that Landay still finds unsatisfactory.  One can only imagine the level of detail that Landay was expecting to find in these interrogatory responses.

### 3. **Reasonably Calculated To Lead To The Discovery Of Admissible Evidence.**

Landay has not even addressed GMACCF's objections that some of Landay's interrogatories are not reasonably calculated to lead to the discovery of admissible evidence.  For that reason alone, those objections should be sustained.  Moreover, the objections are clearly well founded, because many of Landay's interrogatories, while arguably related to the New York Action or dismissed counts, have nothing to do with Landay's remaining claims in this case.  This category includes all of "Interrogatory No. 1" and any "subpart" of any other interrogatory that relate to the issue of document retention.  Landay propounded all of these interrogatories because of his belief that GMACCF was not complying with its discovery obligations in the New York Action.  He has no good faith basis to believe that he is missing any documents in this case, especially since GMACCF has produced more than one million documents for inspection, by his estimation.  His continued inquiries about document retention are irrelevant.

    **4.**    **Allegations Of "Hidden Information"**

Landay's allegation that GMACCF has "hidden" relevant information from him, <u>see</u> Motion to Compel at p. 14, is unfounded and inaccurate, as demonstrated by the very examples to which he cites. The reason why GMACCF stated that it would be unduly burdensome to "identify" its employees with knowledge of its record retention policy is because most, if not all, GMACCF employees are "familiar with" at least some aspect of the policy. GMACCF's Response at p. 7. Thus, GMACCF would have to provide Landay with the names and last known addresses for every single one of its employees, which would be quite onerous, not to mention irrelevant. Similarly, GMACCF never indicated that it is "resisting a search for files that contain the information sought" in Interrogatory Nos. 2a, 2b, 2c and 2f. Motion to Compel at p. 14. What GMACCF stated was that it "has not located records in its own office files or computer databases listing the names of every individual customer who owed money to the Borrowers as of October 22, 2001." GMACCF's Response at p. 12. With regard to Landay's other allegations, GMACCF directs the Court's attention to its actual responses to Interrogatory Nos. 2e, 2g, and 2h-m.

In short, GMACCF is not using its objections to "hide" discoverable information from Landay. GMACCF has asserted certain objections because the interrogatories are objectionable.

    **5.**    **Duplicative Discovery And Use Of Alternative Discovery Methods.**

Landay takes issue with GMACCF's objections based on the duplicative nature of certain interrogatories and the fact that many seek information more readily obtainable through alternative discovery methods, such as depositions. Landay appears to suggest that this is not a valid basis for objecting. He must not be familiar with Fed. R. Civ. P. 26(b)(2)(i), which states that discovery may be limited if it "is unreasonably cumulative or duplicative, or is obtainable

from some other source that is more convenient, less burdensome, or less expensive." Landay provides no explanation of why he needs GMACCF to provide him with information that he either already possesses or that he might be able to obtain more readily through alternative means. GMACCF's objections are valid and should be upheld.

### 6. Alleged Evasiveness And Incompleteness

Contrary to what Landay would have this Court believe, See, Motion to Compel at p. 16, GMACCF has not been evasive and incomplete in answering Landay's interrogatories. Sharing Landay's "interest of economy" GMACCF believes that it is sufficient to simply direct this Court's attention to GMACCF's Response.

### Conclusion

For all the foregoing reasons, this Court should deny Plaintiff's Motion to Compel Answers to Interrogatories and should instead require Plaintiff to reimburse GMACCF for its costs and reasonable attorneys' fees associated with defending this motion.

GMAC COMMERCIAL FINANCE LLC
By its attorneys,

DATED: September 21, 2005         /s/ Mark B. Dubnoff
                                  John A. Houlihan (BBO # 542038)
                                  Mark B. Dubnoff (BBO # 637212)
                                  Edwards & Angell, LLP
                                  101 Federal Street
                                  Boston, MA  02110
                                  (617) 439-4444