UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-CV-11955-WGY

| | |
|---|---|
| DAVID L. LANDAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GMAC COMMERCIAL CREDIT, LLC and | ) |
| GMAC COMMERCIAL FINANCE, LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DAVID L. LANDAY'S MOTION FOR SUMMARY JUDGMENT ON
USURY COUNT AND STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Now comes the Plaintiff, David L. Landay and hereby moves pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1 for summary judgment in his favor on Count II of the First Amended Complaint which alleges that the Defendants violated the Massachusetts Usury Statute, M.G.L. c. 271, §49, for the reason that there is no genuine issue as to any material fact as to Count II of the First Amended Complaint and Landay is entitled to judgment as a matter of law.

In support of this motion, Landay relies on the Statement of Material Facts not in Dispute set forth below and a supporting Memorandum, filed herewith.

**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

1.  David L. Landay ("Landay") was at all relevant times a resident of the Commonwealth of Massachusetts and CEO, President, Director and major shareholder of Seneca Sports, Inc. ("Seneca") and Brookfield International, Inc. ("Brookfield", together with Seneca the "Borrowers").  At all relevant times, Seneca, a Delaware corporation, and Brookfield, a Massachusetts corporation, maintained their principal

place of business in Milford, Massachusetts.  Complaint, ¶1; Answer of GMACCF Commercial Finance, LLC ("Answer"), ¶1.

2. GMAC Commercial Credit LLC was until on or about February 1, 2003, a New York limited liability company with its principal place of business at New York, New York.  At or about that date, it merged into GMAC Commercial Finance LLC, a Delaware corporation.  The latter company is the successor in interest to the former and is responsible for all liabilities incurred by the former prior to the merger.  First Amended Complaint, ¶¶2, 3 and 4; Answer, ¶¶2, 3 and 4.  (Hereinafter, the companies are referred to as "GMAC").

3. At all relevant times, Landay was and continues to be a secured creditor of Seneca with a perfected security interest in all of Seneca's assets.  Exhibit A, Affidavit of David L. Landay, ¶3 and Exhibits 2-5.

4. On or about September 19, 2000, GMAC entered into a Factoring Agreement with the Borrowers which provided a maximum loan amount of $10,000,000.  Complaint, ¶12; Answer, ¶12; Exhibit 1 to Answer, p. 10, definition of "Maximum Loan Amount."

5. On or about September 19, 2000, Landay executed a personal guaranty of the obligations of the Borrowers under the Factoring Agreement in the amount of $3,500,000.  On or about that date, Landay also provided a Standby Letter of Credit in the amount of $4,100,000 drawn in favor of GMAC and a subordination agreement pursuant to which Landay subordinated to GMAC pre-existing debt of Seneca to him in the amount of $3,450,000.  Complaint, ¶¶13, 14 and 15; Answer, ¶¶13, 14 and 15; Exhibits 2, 3 and 4 to Answer.

6. On September 19, 2000, GMAC funded its Loan to the Borrowers. The amount funded as of that time was $9,170,130.56. Complaint, ¶68; Answer ¶68; Exhibit A, Affidavit of David L. Landay, Exhibit 1.

7. GMAC sent a letter, return receipt requested, to the Massachusetts Attorney General with respect to the aforementioned extension of credit which was received on September 22, 2000, after credit was extended. Exhibit B, GMAC's Response to Landay's First Set of Interrogatories, Response to Interrogatory 1(g); Exhibit C, Deposition Exhibit 50 (excerpted), which includes Bates# GLAN 01165.

8. In February of 2001, Landay provided an additional letter of credit in the amount of $250,000 with an expiration date of May of 2001. Complaint, ¶19, Answer ¶19; Exhibit 5 to Answer.

9. Subsequently, in May or June of 2001, Landay extended this letter of credit. Complaint, ¶¶23, 25; Answer, ¶25.

10. On or about August 9, 2001, the Borrowers and GMAC entered into a Forbearance Agreement. At that time, Landay signed an Amendment of Guaranty whereby he increased his personal guaranty to $4,500,000. He also provided additional collateral in the form of a $1,000,000 cash deposit in GMAC's name and agreed to extend the date on the $250,000 Letter of Credit. Complaint, ¶¶32, 33; Answer, ¶¶32, 33; Exhibits 6 and 7 to Answer.

11. On September 25, 2001, GMAC declared the loans in default and demanded payment. Complaint, ¶45; Answer, ¶45.

12. On October 15, 2001, GMAC collected the $4,100,000 Standby Letter of Credit that Landay had provided in September 2000. Complaint, ¶48; Answer, ¶48.

13. Thereafter, GMAC collected the $1,000,000 cash deposit that Landay had provided in conjunction with the Forbearance Agreement, plus interest, and the $250,000 Standby Letter of Credit that Landay had extended in conjunction with the Forbearance Agreement.  Complaint, ¶49; Answer, ¶49.

14. On October 22, 2001, GMAC took possession of the Borrowers' assets. On that date, John Rijo, GMAC's agent took over the premises of the Borrowers located in Milford, Massachusetts.  Exhibit D, Deposition of John Rijo, pp. 65-69; Exhibit E, Deposition Exhibit 134.

15. Exhibits 4 and 58 to the Deposition of Kathleen Pappalardo, GMAC's employee and a Rule 30(b)(6) witness, are business records of GMAC which reflect transactions which affected Seneca's loan account from October 1, 2001 up to December 1, 2003.  Ms. Pappalardo identified these documents as "Client Statements". Exhibit F, Deposition of Kathleen Pappalardo, Volume I, pp. 42-47; Exhibit G, Deposition Exhibit 4; Exhibit H, Deposition of Kathleen Pappalardo, Volume II, pp. 46-48; Exhibit I, Deposition Exhibit 58.

16. Exhibit 3 to the Deposition of Kathleen Pappalardo reflects GMAC's "Damages Calculation" in its New York suit against Landay on his personal guaranty.  It covers the period October 22, 2001 to August 17, 2005.  Ms. Pappalardo selected October 22, 2001 as the start date for her calculation of damages because that was the date on which the assets of Seneca were seized.  Exhibit F, Deposition of Kathleen Pappalardo, Volume I, pp. 38-41, 47; Exhibit J, Deposition Exhibit 3.

17. The loan balance as of October 1, 2001 was $7,376,884.31.  By October 22, 2001 it had been reduced to $1,427,511.19.  Exhibit G, Deposition Exhibit 4, Bates# GLAN 01518.  See also paragraphs 12 and 13 above.

18. The interest charged to the Borrowers by GMAC from October 22, 2001 to January 31, 2003 was 28.02%, 8.02% above the usury rate of 20%.  Exhibit K, Affidavit of Keith D. Lowey, ¶4.

19. The usury damages resulting from the 28.02% rate are $121,822.98. Exhibit K, Affidavit of Keith D. Lowey, ¶4.

> Respectfully submitted,
> DAVID L. LANDAY,
> By his attorney,
>
> /s/ Alan R. Hoffman
> Alan R. Hoffman, BBO# 236860
> Lynch, Brewer, Hoffman & Fink, LLP
> 101 Federal Street, 22nd Floor
> Boston, MA 02110
> (617) 951-0800

Dated:  November 23, 2005

## LOCAL RULE 7.1(a)(2) CERTIFICATION

The undersigned hereby certifies, pursuant to Local Rule 7.1(a)(2), that he has conferred with counsel for the Defendants on several occasions including November 17, 2005, in a good faith attempt to resolve or narrow the issues in dispute, and that these efforts were not successful.

> /s/ Alan R. Hoffman
> Alan R. Hoffman

230981_1