

SECURITY AGREEMENT

This Agreement is made by and among David L. Landay and Roger Landay (collectively the "Secured Party"), and Seneca Sports, Inc. (the "Debtor"), a Delaware corporation with a principal place of business at Fortune Boulevard, Granite Park, Milford, Massachusetts.

1. <u>Grant of Security Interest</u>. Debtor hereby conveys and grants to the Secured Party security title to and a security interest in and to any and all assets of Debtor including without limitation, the following:

1.1. <u>Inventory</u>. All inventory of Debtor including without limitation all stock in trade and goods held for sale or lease of every description maintained in the conduct of the Debtor's business, whether now or hereafter existing or acquired (the "Inventory").

1.2. <u>Accounts, Accounts Receivable and Contract Rights</u>. All accounts, accounts receivable, and contract rights of Debtor, whether now or hereafter existing or acquired; all chattel paper and instruments, whether now or hereafter existing or acquired, evidencing any obligation to Debtor for payment for goods sold or leased or services rendered, all interest of the Debtor in any goods the sale or lease of which shall have given or shall give rise to any of the foregoing; and all proceeds of any of the foregoing ("Accounts, Accounts Receivable and Contract Rights").

1.3. <u>Equipment, Fixtures and Furniture</u>.  All equipment, fixtures, vehicles and furniture of Debtor together with all accessions, additions, attachments, accessories, substitutions and replacements thereto together with all proceeds and products thereof and presently located at Fortune Boulevard, Granite Park, Milford, Massachusetts whether now or hereafter existing or acquired (the "Equipment, Fixtures and Furniture").

1.4. <u>General Intangibles</u>.  All general intangibles of Debtor including, without limitation, goodwill, licenses, and permits of any type or description, and all patents, trademarks and trade names whether now or hereafter existing or acquired (the "General Intangibles").

1.5. <u>Collateral Defined</u>.  All assets of Debtor including without limitation, the Inventory, the Accounts, Accounts Receivable and Contract Rights, the Equipment, Fixtures and Furniture, and the General Intangibles, and all proceeds thereof, are herein sometimes collectively called the "Collateral".

2. <u>Liabilities and Obligations Secured</u>.  The security interest granted hereby to the Secured Party is given by the Debtor to secure the payment and performance of Debtor's obligations under (i) a certain Two Hundred Fifty Thousand Dollar ($250,000.00) Promissory Note of even date herewith payable to David L. Landay (the $250,000 Note"), (ii) a certain Fifty Thousand Dollar ($50,000.00) Promissory Note of even date herewith payable to Roger Landay (the "$50,000 Note") and (iii) this

Agreement (all of the foregoing such liabilities and obligations being sometimes hereinafter referred to as the "Liability" or "Liabilities").

3. <u>Debtor's Right to Use Collateral</u>.  Until Default hereunder, Debtor:

3.1. <u>Use of Inventory</u>.  May in the ordinary course of its business, at its own expense, sell, lease or furnish under contracts of service any of the Inventory normally held by Debtor for such purpose.

3.2. <u>Use of Accounts, Accounts Receivable and Contract Rights</u>.  At its own expense, will endeavor to collect, as and when due, all amounts due with respect to any of the Accounts, Accounts Receivable and Contract Rights, including the taking of such action with respect to such collection as Secured Party may reasonably request or, in the absence of such requests, as Debtor may deem advisable; and, in the ordinary course of business, may grant to any party obligated on any of the Accounts, Accounts Receivable and Contract Rights any rebate, refund or adjustment to which such party may be lawfully entitled; and, in connection therewith, may accept the return of goods the sale or lease of which shall have given rise to such Accounts, Accounts Receivable and Contract Rights.

4. <u>Direct Collection by Secured Party</u>.  Upon Default by Debtor, Secured Party may: (a) notify any parties obligated on any of the Accounts, Accounts Receivable and Contract Rights to make payment to the Secured Party of any of the amounts due or to

become due thereunder; and (b) enforce collection of any of the Accounts, Accounts Receivable and Contract Rights by suit or otherwise; (c) endorse, negotiate, cash or deposit, notes, checks, drafts, acceptances, bills of lading, or any other instrument or document evidencing or securing the Accounts, Accounts Receivable and Contract Rights, or any of them; (d) receive, open and dispose of all mail and arrange for the forwarding of same to Secured Party; (e) generally sell, assign, transfer, pledge, make any agreement in respect of or otherwise deal with any Accounts, Accounts Receivable or Contract Rights as fully and completely as if Secured Party were the absolute owner thereof; and (f) surrender, release or exchange all or any part thereof, or compromise or extend or renew for any period (whether or not longer than the original period) any indebtedness thereunder or evidenced thereby, and Debtor hereby appoints, irrevocably, the Secured Party as its true and lawful attorney with full power of substitution, in its name or in the name of the Debtor, for the sole benefit of Secured Party but at the sole expense of Debtor to take all actions or do all things necessary, convenient or incident to the accomplishment of the foregoing.

5. <u>Notification by Debtor</u>.  Upon Default and at the request of Secured Party, Debtor at its own expense, will notify any parties obligated on any of the Accounts, Accounts Receivable and Contract Rights to make payment to Secured Party of any amounts due or to become due thereunder.

6. <u>Remittance to Secured Party</u>.  Upon Default and after notice from Secured Party, Debtor will forthwith, upon receipt, transmit and deliver to Secured Party, in the form received, all cash, checks, drafts, items, chattel paper and other instruments or writings for the payment of money (properly endorsed, where required, so that such items may be collected by Secured Party) which may be received by Debtor at any time in full or partial payment or otherwise as proceeds of any of the Collateral.  After such notice from Secured Party, Debtor will not commingle any such proceeds with any other of its funds or property, but will hold them separate and apart from its own funds or property and upon express trust for Secured Party until delivery is made to Secured Party.  Debtor hereby irrevocably appoints Secured Party its attorney-in-fact to endorse, in the name of the Debtor, any item representing any payment on or proceeds of any of the Collateral.

7. <u>Warranties</u>.  Debtor hereby represents, warrants and covenants that:

7.1. <u>Location of Business and Collateral</u>.  Debtor's chief place of business is located at Fortune Boulevard, Granite Park, Milford, Massachusetts, and all the Collateral is now located at said address.  All Debtor's books and records concerning the Collateral, the Liabilities and Debtor's business generally, are located at the address where the Collateral is located.  Debtor shall promptly disclose the location of and afford Secured Party access to all of Debtor's books and records upon reasonable advance notice (which notice may be given verbally), provided

Secured Party shall not, in exercising such right of access, unreasonably interfere with the business of Debtor. Debtor will notify Secured Party in writing at least thirty (30) days in advance of any change in the location of the Collateral and any change of the location of its books and records within the Commonwealth of Massachusetts and will not remove any Collateral (except in the ordinary course of business and as permitted by this Agreement) or any books and records from such state without the prior written consent of Secured Party.

8. **Agreements of Debtor**. Debtor hereby covenants and agrees that:

8.1. **Perfection of Security Interest**. Upon request of Secured Party, it will execute such financing statements, continuation statements, and other documents, pay the cost of filing or recording the same in all public offices deemed necessary or appropriate by Secured Party, and do such other acts and things, all as Secured Party may from time to time request, to establish and maintain a valid security interest in all the Collateral, free of all other liens and claims except those expressly permitted or granted hereby.

8.2. **Location of Inventory**. Except as otherwise required in the ordinary conduct of the Debtor's business, it will keep all Inventory at Fortune Boulevard, Granite Park, Milford, Massachusetts.

8.3. <u>Book and Records</u>.  Debtor will keep at Fortune Boulevard, Granite Park, Milford, Massachusetts all its books and records concerning all the Collateral, the Liabilities and Debtor's business generally, which books and records will be of such character as will enable Secured Party or its designees to determine at any time the status of such Collateral, Liabilities and business and, unless Secured Party shall otherwise consent in writing, Debtor will not duplicate any such books and records at any other address.

8.4. <u>Furnishing of Information</u>.  It will furnish Secured Party with such information concerning Debtor, the Collateral, the Liabilities and its business, generally, including without limitation, any obligors on any Accounts, Accounts Receivable and Contract Rights as Secured Party may from time to time reasonably request.

8.4. <u>Inspection</u>.  It will permit Secured Party and its designees, from time to time, to inspect the Collateral, and to inspect, audit and make copies of and extracts from books, records, and all other papers in possession of Debtor pertaining to the Collateral, the Liabilities, Debtor's business generally and any obligors on any of the Accounts, Accounts Receivable and Contract Rights.

8.5. <u>Insurance</u>.  It will at all times keep its business and all Inventory and Equipment, Fixtures and Furnishings insured against loss, damage, theft and other risks including, without limitation, general liability, in such amounts and with such

companies and under such policies and in such form as shall be reasonably satisfactory to Secured Party, which policies shall contain standard lender's loss payable clauses in favor of Secured Party under which all losses thereunder shall first be paid to Secured Party as its interest may appear, then to Debtor.  Debtor shall provide Secured Party with certificates of such insurance naming Secured Party as loss payee and which provide that at least twenty (20) days prior written notice of any change or cancellation thereof shall be given to Secured Party by the insurance company.  Debtor hereby grants to Secured Party the right, upon any Default by Debtor, to cancel any such insurance policies and to receive any return or unearned premiums which may be due upon cancellation of any policies insuring the Collateral and directs the insurers to pay Secured Party any amounts so due. Debtor hereby irrevocably appoints Secured Party its attorney-in-fact to endorse any draft or check which may be payable to Debtor in order to collect such return or unearned premiums or the proceeds of such insurance. The Secured Party shall be entitled to the insurance proceeds upon any loss or casualty and shall apply any proceeds of such insurance which may be received by it toward payment of the Liabilities, whether or not due, in such order of application as Secured Party shall determine.  If Secured Party so requests, the originals or true copies of such policies shall be deposited with Secured Party.

8.6. <u>Collection Expenses</u>.  After Default, Debtor will reimburse Secured Party for all expenses, including, without limitation, reasonable attorneys' fees and legal expenses, incurred by Secured Party in seeking to collect or enforce any rights under or with respect to the Collateral and incurred by Secured Party in seeking to collect any of the Liabilities and to enforce any rights hereunder.

8.7. <u>Change of Location</u>.  Debtor will immediately give written notice to Secured Party of any change in the chief place of business of Debtor.

8.8. <u>Maintenance of Collateral</u>.  Debtor will at all times keep the Collateral in first class order and repair, normal wear and tear excepted.

8.9. <u>Payment and Taxes</u>.  Debtor will pay all real and personal property taxes, assessments and charges and all franchises, income, unemployment, old age benefits, withholding, sales and other taxes assessed against it, or payable by it at such times and in such manner as to prevent any penalty from accruing or any lien or charge from attaching to any of the Collateral.

8.10. <u>Indemnification</u>.  After Default, Debtor will indemnify and save Secured Party harmless from all loss, costs, damage, liability or expense (including, without limitation, and reasonable attorneys' fees and disbursements) that Secured Party may have sustained or incurred by reason of defending or protecting the security interest created herein or the priority

thereof or in the prosecution or defense of any action or proceeding concerning any matter growing out of or in connection with this Agreement and/or the Collateral.

9. <u>Performance of Debtor's Obligations by Secured Party</u>. At its option, Secured Party may from time to time perform any agreement of Debtor hereunder which Debtor shall fail to perform and after Default, may pay taxes, discharge encumbrances and pay for claims, insurance, repairs and maintenance on or with respect to the Collateral or take any other action which Secured Party deems necessary for the maintenance or preservation of any of the Collateral or its interest therein, and Debtor agrees to forthwith reimburse Secured Party for all expenses incurred in connection with the foregoing together with interest thereon at the rate of ten percent (10%) per annum.

10. <u>Events of Default</u>. "Default" as used herein shall mean the occurrence of any of the following events:

10.1. The failure of the Debtor to make any payment of principal or interest under the Note when due.

10.2. The Debtor (or any co-maker or guarantor hereof) shall (1) apply for or consent to the appointment of a receiver, trustee, custodian or liquidator of it or any of its property, (2) admit in writing its inability to pay its debts as they mature, (3) make a general assignment for the benefit of creditors, (4) be declared insolvent or be the subject of an order for relief under Title 11 of the United States Code, or (5) file a voluntary petition in bankruptcy, or a petition or an answer seeking

reorganization or an arrangement with creditors or to take advantage of any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution or liquidation law or statute, or any answer admitting the material allegations of a petition filed against it in any proceeding under any such law or if corporate action shall be taken for the purpose of effecting any of the foregoing.

10.3. An order, judgment or decree shall be entered, without the application, approval or consent of the Debtor, by any court of competent jurisdiction, approving a petition seeking reorganization of the Debtor, or appointing a receiver, trustee, custodian or liquidator of the Debtor, or of all or a substantial part of the assets of the Debtor, and such order, judgment or decree shall continue unstayed and in effect for a period of sixty (60) days.

10.4. <u>Sale or Transfer of Collateral</u>. The sale, transfer or exchange, either directly or indirectly, of the Collateral or any portion thereof without the Secured Party's prior written consent.

11.      <u>Procedures on Default.</u>

11.1.  <u>Remedies</u>. Whenever a Default shall be existing, Secured Party may declare any and all Liabilities immediately due and payable, without further notice or demand, and at the option of Secured Party, Secured Party may exercise any one or more of the following remedies: (a) the Secured Party may exercise from time to time any rights and remedies available to it under applicable law; (b) may require Debtor to cease the sale, lease or

furnishing under contract of service of any of Inventory and cease the use or consumption thereof in business; (c) may require Debtor at its expense to assemble all the Collateral at a place convenient and satisfactory to Secured Party; (d) the Secured Party may enter upon and use the Debtor's premises and all equipment used or useful in the preservation and maintenance of the Collateral for a reasonable period of time, without any rental or other compensation, and take immediate possession of all or any portion of the Collateral with or without legal process, and timely take such measures as it may deem necessary for the proper care and protection thereof, and may haul, deliver, store (for a reasonable period of time), and sell the Collateral or any part thereof, at such time or times and for such sum or sums of money as it may deem proper, which sale may be public or private and with or without notice (except such notice as may be required by law), and at said sale Secured Party may become the purchaser of the Collateral; the Secured Party is further authorized to conduct a sale, either by public auction or by private sale, as provided in the Uniform Commercial Code in the event of a default; and/or (e) may require Debtor to pay all costs of Secured Party of collection of any and all the Liabilities and enforcement of rights hereunder, including reasonable attorneys' fees and legal expenses.

11.2. <u>Notices</u>. If any notification of intended disposition of any of the Collateral is required by law, such notification if mailed shall be deemed reasonably and properly given if mailed at least ten (10) days before such disposition in accordance with Section 14 hereof.

11.3. <u>Disposition of Proceeds</u>. After a Default, any proceeds of any disposition by Secured Party of any of the Collateral may be applied by Secured Party to the payment of expenses in connection with the Collateral or the foreclosure or repossession and sale thereof, including reasonable attorneys' fees and legal expenses, and any balance of such proceeds may be applied by Secured Party toward the payment of such of the Liabilities, in such order of application, as Secured Party may from time to time elect, and any remaining balance paid to Debtor. David L. Landay and Roger Landay hereby agree that any such proceeds shall be applied to the Liabilities of Debtor under the $250,000 Note and the 50,000 Note pro rata in the proportion that the total amount due under each Note bears to the total amount due under both Notes.

12. <u>Termination</u>. This Security Agreement shall continue until, and shall terminate in full upon full payment and performance of all the obligations under the Notes.

13.     <u>Miscellaneous.</u>

13.1.   <u>Non-Waiver of Rights</u>. No delay or failure on the part of the Secured Party in exercising any right, power or privilege under this Agreement or under any document evidencing or securing

-13-

any Liability or any document, agreement or instrument related thereto shall impair any such right, power or privilege or be construed as a waiver of any default or any acquiescence therein. No single or partial exercise of any such right, power or privilege shall preclude the further exercise of such right, power or privilege, or the exercise of any other right, power or privilege. No waiver shall be valid against Secured Party unless made in writing and signed by Secured Party, and then only to the extent expressly specified therein. All remedies provided herein and in any document, agreement or instrument given in connection with or pursuant to this Agreement or any of the Liabilities and all remedies otherwise afforded Secured Party by law shall be cumulative and shall be available to Secured Party, from time to time, until all the Liabilities have been paid in full and every other obligation under this Agreement or any liability given in connection with or pursuant to this Agreement has been fully satisfied.

13.2. Counterparts. This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one Agreement.

13.3. Governing Law. This Agreement shall in all respects be construed in accordance with and governed by the laws of Massachusetts.

13.4. <u>Captions</u>. The captions of the sections of this Agreement are inserted for convenience only and shall not be deemed to constitute a part hereof or used in construing the intent of the parties.

13.5. <u>Severability</u>. If any part of any provision of this Agreement shall be invalid or unenforceable under applicable law, said part shall be ineffective to the extent of such invalidity only, without in any way affecting the remaining parts of said provision or the remaining provisions.

13.6. <u>Modification</u>. This Agreement shall not be modified or amended except in writing signed by the party to be bound.

13.7. <u>Survival of Representations</u>. All representations, warranties, covenants, and agreements contained herein or made in writing by the Debtor in connection herewith or relating to or arising out of any of the Liabilities shall survive the execution and delivery of this Agreement.

13.8. <u>Custody of Collateral</u>. The Secured Party shall exercise reasonable care in the custody and preservation of any Collateral in its possession and if such is exercised shall not be liable to the Debtor for damage or loss of the Collateral while in the possession of the Secured Party.

13.9. <u>Successors, Assigns, Etc.</u> All rights of the Secured Party hereunder shall inure to the benefit of its successors and assigns and this Agreement shall be binding upon Debtor and its successors and assigns.

14. <u>Notices</u>.  All notices and other communications required or permitted by this Agreement shall be made in writing, personally delivered or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed to the parties at their addresses as specified below their signatures to this Agreement, marked to the attention of the individual signing this Agreement on behalf of the party to receive notice, or to such other address or person as to which the party to receive notice shall have given the other party in accordance herewith. Any notice so mailed shall be deemed to have been given and received by the party to whom addressed on the date said notice was properly deposited in the mail.

SIGNED, SEALED AND DELIVERED on February 28, 1991.

DEBTOR:

SENECA SPORTS, INC.

By: _____
David L. Landay, President
P.O. Box 719
Fortune Boulevard
Granite Park
Milford, Massachusetts

SECURED PARTY:

_____
David L. Landay
85 East India Row
Apt. 20F
Boston, MA  02110

_____
Roger Landay
7 Lookout Farm Road
South Natick, MA  01760