```
 1              UNITED STATES DISTRICT COURT
 2                DISTRICT OF MASSACHUSETTS
 3
 4    - - - - - - - - - - - - - - - x
 5    DAVID L. LANDAY,
 6              Plaintiff,              Civil Action
 7    vs.                                No. 04-CV-11955-WGY
 8    GMACCF COMMERCIAL CREDIT, LLC,
 9    and GMACCF COMMERCIAL
10    FINANCIAL, LLC.,
11              Defendants.
12    - - - - - - - - - - - - - - - x
13
14         DEPOSITION OF JOHN RIJO, a witness called by and
15    on behalf of the Plaintiff, taken pursuant to the
16    provisions of the Federal Rules of Civil Procedure,
17    before Dana Welch, a Registered Professional Reporter
18
19    and Notary Public in and for the Commonwealth of
20
21    Massachusetts, at the offices of Lynch Brewer, 101
22
23    Federal Street, Boston, Massachusetts, on Monday,
24
25    November 14, 2005, commencing at 9:46 a.m.
```

*ORIGINAL*

MR. HOULIHAN: Objection.

THE WITNESS: I don't recall any similar to the previous liquidation analysis that we discussed. My conversations were likely with Dick Sabastiao, and Dick Sebastiao likely had conversations with GMAC.

BY MR. HOFFMAN:

Q   Okay. Did you learn at or about the time of that collateral analysis that Mr. Landay was negotiating with a company called Platinum Funding?

MR. HOULIHAN: Objection. Outside the scope. You may answer.

THE WITNESS: Similar to what I had just previously noted, I know that they were working with Resolution Capital. And again, information I wasn't privy to, but I did hear that name before, so I would assume that was one of the organizations or entities they were talking with as far as potential plans.

BY MR. HOFFMAN:

Q   At some point in time, were you given the assignment of taking peaceful possession of the Seneca premises?

MR. HOULIHAN: Objection.

THE WITNESS: I had -- I went to the

Seneca office location to take basically control of the premises.

BY MR. HOFFMAN:

Q    Okay. And who asked you to do that?

MR. HOULIHAN: You may answer that question by responding to the name of the person with whom -- you may answer that question by responding with the name of the person who asked you to take that action, but nothing more.

THE WITNESS: I believe I had conversations with Dick Sebastiao that would have -- to discuss the process of going there.

BY MR. HOFFMAN:

Q    Do you recall what Mr. Sebastiao told you?

A    Again, I don't know -- I don't remember the specifics of the conversation. But that I believe that I was informed that peaceful possession had taken place and that I should go down there to take control of the premises.

Q    Okay. And I take it, you did go there?

A    Yes.

Q    On a particular day?

A    Yes.

Q    And did you write a summary of the events of that day?

| | |
|---|---|
| A | I believe I did, yes. |
| Q | I'm going to show you Exhibit 134. And ask you whether that is a memo that you prepared on or about October 22, 2001 on behalf of RAS in connection with its work for GMAC? |
| A | Yes. |
| Q | And who is Richard Rosenstein? |
| A | I believe he was a local counsel for GMAC. |
| Q | Boston counsel? |
| A | I believe so. |
| Q | Okay. And is it your recollection that you sent this memo to him? |
| A | Yes. |
| Q | Was it by e-mail? |
| A | I'm not sure. |
| Q | Okay. Did you send it to anyone else? |
| A | I don't recall. There's no one copied on it, so I'm not sure. |
| Q | Okay. |
| A | I'm not sure who. |
| Q | Did you ever discuss this memo with Mr. Rosenstein? |
| | MR. HOULIHAN: You can answer that question yes or no. |
| | THE WITNESS: Yes. |

BY MR. HOFFMAN:

Q   Do you recall what was said?

    MR. HOULIHAN: You can answer that question yes or no.

    THE WITNESS: Not specifically.

BY MR. HOFFMAN:

Q   Okay. Have you read this memo in preparation for this deposition?

A   Not specifically.

Q   And I'd ask you to read it to yourself, please.

A   Okay.

    MR. HOULIHAN: Alan, before you ask any questions further on this document, I'd like to speak to the witness concerning potential privilege issues with respect to this document.

    MR. HOFFMAN: Okay.

    (Proceedings interrupted at 11:42 a.m. and reconvened at 11:46 a.m.)

BY MR. HOFFMAN:

Q   You have in front of you Exhibit 134?

A   Yes.

Q   Was this a memo that you wrote for RAS in connection with its representation of GMAC on the Seneca matter?

A   Yes.

Q  And was it written by you in the regular course of RAS's business?

MR. HOULIHAN: Objection. Do you understand what Mr. Hoffman is asking you?

THE WITNESS: Not completely.

BY MR. HOFFMAN:

Q  All right. Was it written in the course of RAS's business, as far as you understand it?

A  In the course of RAS's business?

Q  (Nodding head up and down).

A  In terms of as part of our assignment to the Seneca case?

Q  Yes.

A  Yes.

Q  And were you trying to record in this document events which occurred on October 22nd, 2001, as accurately as you can -- as you could?

A  To summarize as best I could.

Q  And when you read this document just a couple of minutes ago, did you find anything in it which you now believe not to be accurate?

A  Not to my recollection.

Q  Okay. Bullet point number five, where it says, "David expressed concerns that the inventory will be liquidated at too low of cost and that he