```
 1
 2              UNITED STATES DISTRICT COURT
 3               DISTRICT OF MASSACHUSETTS                COPY
 4
 5    DAVID L. LANDAY,                    )
                                          )
 6                    Plaintiff,          )  No. 04-CV-11955-WGY
                                          )
 7            vs.                         )
                                          )
 8    GMACCF COMMERCIAL CREDIT,           )
      LLC, and GMACCF COMMERCIAL          )
 9    FINANCE, LLC,                       )
                                          )
10                    Defendants.         )
      ------------------------------------)
11
12
13
14
15
16         DEPOSITION OF KATHLEEN A. PAPPALARDO
17                   New York, New York
18               Thursday, August 18, 2005
19
20
21
22
23
24    Reported by:
      ANDREA L. KINGSLEY, RPR
25    CSR NO. 001055
      JOB NO. 4765
```

1       Pappalardo
2  August 17, 2005, marked for
3  identification, as of this date.)
4  BY MR. HOFFMAN:
5       Q.   Ms. Pappalardo, we placed in
6  front of you what has been marked for
7  identification Exhibits 1, 2 and 3.
8            For the record, Exhibit 1 is a
9  document that is entitled Seneca Sports
10 Damages Calculation, it appears to go from
11 10/22/2001 to 10/26/04.
12           Exhibit 2 is a document which has
13 the same heading, Seneca Sports Damages
14 Calculation, and it appears to go from
15 6/18/2002 to June 2004.
16           And Exhibit 3 has the same
17 heading, Seneca Sports Damages Calculation,
18 and it goes or appears to go from
19 10/22/2001 to August 17, 2005.
20           Have you ever seen these three
21 documents before?
22      A.   Yes.
23      Q.   Do you know who created these
24 documents?
25      A.   I did.

Pappalardo

Q. Can you take a look at Exhibit 2 and can you explain to us what Exhibit 2 is?

A. Exhibit 2 is probably when I started without a lot of knowledge of the dates and then I believe I was instructed to go to Exhibit 1 and begin with 10/22/01.

Q. Was Exhibit 2 created in or about June or July of 2004? I see the last date is June 2004.

A. Most likely.

Q. Can you compare for me Exhibits 1 and 2 and just look at the line entry for June 2004 on each of those two documents.

A. Um-hmm.

Q. Are they the same or are they slightly different?

A. They're slightly different --

MR. HOULIHAN: June.

A. Oh, June. They are slightly different.

Q. As you sit here today, do you know why the two documents are slightly different?

Page 40

Pappalardo

A. It would have depended on the beginning point. And then all the information pulled forward.

Q. Which of these two documents did you create first, to the best of your memory?

A. Exhibit 2.

Q. Do you know why you selected a start date of 6/18/2002?

A. I don't recall.

Q. Then you later were asked to go back to an earlier date?

A. Yes.

Q. Do you know who asked you to do that?

A. I don't recall.

Q. How did you select the date of October 22, 2001, if you know?

A. That was the date, I believe, that we seized the assets.

Q. You see the balance on that date?

A. Yes.

Q. Now we're looking at Exhibit 1 for the purposes of the record.

                    Pappalardo

1        Do you recall where you got the
2  balance from?
3    A.  From a document called the
4  client's statement.
5    Q.  By the way, did you do this by
6  yourself or did anyone else help you create
7  Exhibit 2 and 3?
8    A.  I did it myself.
9    Q.  Were client statements the
10 principal source that you used to develop
11 the figures?
12   MR. HOULIHAN:  Objection.
13   A.  Yes.
14   Q.  Did you use any other source to
15 the best of your memory?
16   A.  After a certain point the client
17 statements were no longer generated.  I
18 used other company records to get some of
19 the charges, such as legal fees.
20   Q.  Do you know what point the
21 company stopped generating client
22 statements?
23   A.  I believe it was sometime in the
24 fall of 2003.

Page 42

1          Pappalardo
2          MR. HOFFMAN: Why don't we mark
3     this as a group exhibit and, if you
4     want to, we can break it down later. I
5     don't know if it will be necessary. It
6     was an exhibit to the interrogatories
7     and it's a series of documents which I
8     believe the witness will identify as
9     client statements.
10         (Landay Exhibit 4, client
11    statements, marked for identification,
12    as of this date.)
13         (Discussion off the record.)
14    Q.   Ms. Pappalardo, can you look
15 through Exhibit 4 and I will ask you if you
16 can identify those documents?
17    A.   They're client statements.
18    Q.   I notice that there's a different
19 format or there's several different
20 formats. Are they all client statements?
21    A.   Yes.
22    Q.   They appear -- the first one says
23 as of date 10/31/01; correct?
24    A.   Correct.
25    Q.   That's the first page which is

1   Pappalardo
2   GLAN 1516.  What is the date of the last
3   statement that appears on this exhibit?
4       A.    It's either 9/30/02 or 8/30/02.
5   It's pretty blurry.
6       Q.    Let's use Exhibit 3 for a moment.
7   If you take a look at Exhibit 3, you will
8   see -- let's look on the interest.  There's
9   an interest charge September 2003.  Do you
10  see that?
11      A.    Okay.
12      Q.    Does that interest charge appear
13  on the last client statement?
14      A.    Well, the last client statement
15  here is '02.
16      Q.    I see.  Let's work -- what
17  interest charge appears on the last client
18  statement?
19      A.    It looks like September of '02,
20  $7,976.59.
21      Q.    Do you see that in September of
22  '02 that figure appears on Exhibit 3 under
23  interest?
24      A.    Yes.
25      Q.    So can we safely assume that this

Page 44

1          Pappalardo
2  is the September statement?
3      A.   Yes.
4      Q.   The interest charges go all the
5  way to the end, correct, on Exhibit 3?
6          MR. HOULIHAN:  Objection.
7      A.   That's correct.
8      Q.   There's an over advance charge
9  that goes through September of 2003.  Do
10 you see that?
11     A.   Yes.
12     Q.   So is it your memory that you had
13 client statements at least through
14 September of 2003 to look at in preparing
15 Exhibit 3?
16         MR. HOULIHAN:  Objection.
17     A.   Yes.
18     Q.   Do you still have those documents
19 somewhere?
20     A.   Yes.
21     Q.   Up through September of 2003?
22     A.   Yes.
23 RQ      MR. HOFFMAN:  I would like
24 production of those documents.  I don't
25 think we've gotten them.

1       Pappalardo
2           MR. HOULIHAN:  I have no idea
3   whether you have them or not but if you
4   do not have them then we will produce
5   them.
6           MR. HOFFMAN:  Okay.  That's fair
7   enough.
8       Q.  Now can you -- are these client
9   statements, are they records which were
10  made by I guess it would be -- either GMAC
11  Commercial Credit or GMAC Commercial
12  Finance in the regular course of their
13  business?
14      A.  Yes.
15      Q.  Can you explain to me how you
16  used Exhibit 4 documents, i.e. the client
17  statements, to create the Seneca Sports
18  damages calculation?
19      A.  I used the information from all
20  these statements and laid it out on a
21  spreadsheet so it would just be easier to
22  view on one document without having to flip
23  through several pages.  Every month end
24  where we had a client statement was tied
25  out to the month end on the client

Page 46

Pappalardo

statement. The client statements have all the individual transactions. In some cases here there's a summary page where it adds things and I would just pull the summary for the month.

Q. Do you know how those client statements were created at either of the two companies? Were they created on a monthly basis to your knowledge?

A. To the best of my knowledge, they were computer generated.

Q. The opening balance is 1427511.19; correct, on Exhibit 3?

A. Correct.

Q. Is it fair to say that you got that opening balance from the October statement?

A. Yes.

Q. Did you do any further checking to determine whether that opening balance was accurate?

A. No.

Q. So you just accepted what was on the October statement?

1                    Pappalardo

2       A.    Yes.

3       Q.    In the course of your work on
4  this assignment, did you ever see
5  statements, client statements going back to
6  the beginning of the loan?

7       A.    I don't recall viewing them going
8  back that far.

9       Q.    Do you remember your thought
10 process in starting the Seneca Sports
11 damages calculation from October 22, 2001?

12            MR. HOULIHAN:  Objection.

13      A.    What do you mean by thought
14 process?

15      Q.    In other words, why did you pick
16 that date as opposed to the beginning of
17 the loan or opposed to any other date?

18      A.    As I stated earlier, that was the
19 date that the assets were seized.

20      Q.    So you made a determination that
21 that was an appropriate date to start from?

22            MR. HOULIHAN:  Object.

23      A.    That was the date I was asked to
24 start from.

25      Q.    So someone asked you to start