UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-CV-11955-WGY

| | |
|---|---|
| DAVID L. LANDAY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GMACCF COMMERCIAL CREDIT, LLC and )<br>GMACCF COMMERCIAL FINANCE, LLC, )<br>)<br>Defendants. )<br>) | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON USURY COUNT** |

## **INTRODUCTION**

Plaintiff David L. Landay ("Landay") brings this motion under Fed. R. Civ. P. 56 for summary judgment on Count II of the First Amended Complaint ("Complaint") which the Court has previously determined, by denying Defendants' Motion for Judgment on the Pleadings, states a claim of usury on which relief can be granted. In this Count, Landay alleged that GMAC Commercial Credit, LLC (with GMAC Commercial Finance, LLC "GMAC") violated M.G.L. c. 271, §49 with respect to the loan it made to Seneca Sports, Inc. ("Seneca") on or about September 19, 2000 by charging interest and expenses at a rate greater than 20%. Complaint, ¶¶67, 68. Landay further alleged that GMAC's purported criminal usury notification to the Attorney General of Massachusetts was ineffectual to immunize its excessive charges since the notice was received by the office of the Attorney General <u>after</u> the loan was funded. Complaint, ¶¶69, 70. Landay requested the Court to "void the loan and/or provide Landay with other relief consistent with equitable principles, allowing him to recover the damages he suffered on account of the usury,…" Complaint, ¶71.

In this memorandum, Landay will establish that there is no genuine issue of material fact as to his usury claim and that he is entitled to judgment as a matter of law. Before establishing that he has met his burden of proof with regard to the elements of the civil tort of usury, Landay will address two foundational arguments which he expects GMAC to assert: choice of law and standing.

GMAC argued on its Motion for Judgment on the Pleadings, <u>inter</u> <u>alia</u>, that Count II should be dismissed because "the Massachusetts statute has no applicability here, since the parties agreed that New York law governed their business relationship." Memorandum Supporting Defendant's Motion for Judgment on the Pleadings, p. 17. Landay contends that, by denying the motion with respect to the Usury Count, this Court has already resolved this issue in Landay's favor. Nonetheless, Landay will reargue the point in this Memorandum and reiterate the basis for his contention that the narrow choice of law provision in the Guaranty is not applicable to the civil tort alleged in Count II.

As to the standing argument, Landay will establish that, under Massachusetts law, a subordinated secured creditor and a guarantor each have standing to assert a claim of usury with respect to the underlying loan. Since he was both with regard to Seneca and the GMAC loan, he will contend that he has standing to assert the usury claim set forth in the Complaint.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1.  David L. Landay ("Landay") was at all relevant times a resident of the Commonwealth of Massachusetts and CEO, President, Director and major shareholder of Seneca Sports, Inc. ("Seneca") and Brookfield International, Inc. ("Brookfield",

together with Seneca the "Borrowers"). At all relevant times, Seneca, a Delaware corporation, and Brookfield, a Massachusetts corporation, maintained their principal place of business in Milford, Massachusetts. Complaint, ¶1; Answer of GMACCF Commercial Finance, LLC ("Answer"), ¶1.

2.   GMAC Commercial Credit LLC was until on or about February 1, 2003, a New York limited liability company with its principal place of business at New York, New York. At or about that date, it merged into GMAC Commercial Finance LLC, a Delaware corporation. The latter company is the successor in interest to the former and is responsible for all liabilities incurred by the former prior to the merger. First Amended Complaint, ¶¶2, 3 and 4; Answer, ¶¶2, 3 and 4. (Hereinafter, the companies are referred to as "GMAC").

3.   At all relevant times, Landay was and continues to be a secured creditor of Seneca with a perfected security interest in all of Seneca's assets. Exhibit A, Affidavit of David L. Landay, ¶3 and Exhibits 2-5.

4.   On or about September 19, 2000, GMAC entered into a Factoring Agreement with the Borrowers which provided a maximum loan amount of $10,000,000. Complaint, ¶12; Answer, ¶12; Exhibit 1 to Answer, p. 10, definition of "Maximum Loan Amount."

5.   On or about September 19, 2000, Landay executed a personal guaranty of the obligations of the Borrowers under the Factoring Agreement in the amount of $3,500,000. On or about that date, Landay also provided a Standby Letter of Credit in the amount of $4,100,000 drawn in favor of GMAC and a subordination agreement pursuant to which Landay subordinated to GMAC pre-existing debt of Seneca to him in

the amount of $3,450,000.  Complaint, ¶¶13, 14 and 15; Answer, ¶¶13, 14 and 15; Exhibits 2, 3 and 4 to Answer.

6. On September 19, 2000, GMAC funded its Loan to the Borrowers.  The amount funded as of that time was $9,170,130.56.  Complaint, ¶68; Answer ¶68; Exhibit A, Affidavit of David L. Landay, Exhibit 1.

7. GMAC sent a letter, return receipt requested, to the Massachusetts Attorney General with respect to the aforementioned extension of credit which was received on September 22, 2000, after credit was extended.  Exhibit B, GMAC's Response to Landay's First Set of Interrogatories, Response to Interrogatory 1(g); Exhibit C, Deposition Exhibit 50 (excerpted), which includes Bates# GLAN 01165.

8. In February of 2001, Landay provided an additional letter of credit in the amount of $250,000 with an expiration date of May of 2001.  Complaint, ¶19, Answer ¶19; Exhibit 5 to Answer.

9. Subsequently, in May or June of 2001, Landay extended this letter of credit.  Complaint, ¶¶23, 25; Answer, ¶25.

10. On or about August 9, 2001, the Borrowers and GMAC entered into a Forbearance Agreement.  At that time, Landay signed an Amendment of Guaranty whereby he increased his personal guaranty to $4,500,000.  He also provided additional collateral in the form of a $1,000,000 cash deposit in GMAC's name and agreed to extend the date on the $250,000 Letter of Credit.  Complaint, ¶¶32, 33; Answer, ¶¶32, 33; Exhibits 6 and 7 to Answer.

11. On September 25, 2001, GMAC declared the loans in default and demanded payment.  Complaint, ¶45; Answer, ¶45.

12. On October 15, 2001, GMAC collected the $4,100,000 Standby Letter of Credit that Landay had provided in September 2000. Complaint, ¶48; Answer, ¶48.

13. Thereafter, GMAC collected the $1,000,000 cash deposit that Landay had provided in conjunction with the Forbearance Agreement, plus interest, and the $250,000 Standby Letter of Credit that Landay had extended in conjunction with the Forbearance Agreement. Complaint, ¶49; Answer, ¶49.

14. On October 22, 2001, GMAC took possession of the Borrowers' assets. On that date, John Rijo, GMAC's agent took over the premises of the Borrowers located in Milford, Massachusetts. Exhibit D, Deposition of John Rijo, pp. 65-69; Exhibit E, Deposition Exhibit 134.

15. Exhibits 4 and 58 to the Deposition of Kathleen Pappalardo, GMAC's employee and a Rule 30(b)(6) witness, are business records of GMAC which reflect transactions which affected Seneca's loan account from October 1, 2001 up to December 1, 2003. Ms. Pappalardo identified these documents as "Client Statements". Exhibit F, Deposition of Kathleen Pappalardo, Volume I, pp. 42-47; Exhibit G, Deposition Exhibit 4; Exhibit H, Deposition of Kathleen Pappalardo, Volume II, pp. 46-48; Exhibit I, Deposition Exhibit 58.

16. Exhibit 3 to the Deposition of Kathleen Pappalardo reflects GMAC's "Damages Calculation" in its New York suit against Landay on his personal guaranty. It covers the period October 22, 2001 to August 17, 2005. Ms. Pappalardo selected October 22, 2001 as the start date for her calculation of damages because that was the date on which the assets of Seneca were seized. Exhibit F, Deposition of Kathleen Pappalardo, Volume I, pp. 38-41, 47; Exhibit J, Deposition Exhibit 3.

5

17. The loan balance as of October 1, 2001 was $7,376,884.31. By October 22, 2001 it had been reduced to $1,427,511.19. Exhibit G, Deposition Exhibit 4, Bates# GLAN 01518. <u>See also</u> paragraphs 12 and 13 above.

18. The interest charged to the Borrowers by GMAC from October 22, 2001 to January 31, 2003 was 28.02%, 8.02% above the usury rate of 20%. Exhibit K, Affidavit of Keith D. Lowey, ¶4.

19. The usury damages resulting from the 28.02% rate are $121,822.98. Exhibit K, Affidavit of Keith D. Lowey, ¶4.

## **ARGUMENT**

**I.    This Court Should Grant Summary Judgment To Landay On Count II Of His First Amended Complaint Since There Is No Genuine Issue As To Any Material Fact And He Is Entitled To Judgment As A Matter Of Law.**

A.    <u>M.G.L. c. 271, §49, The Massachusetts Criminal Usury Statute, Is Controlling Law.</u>

In Defendants' Motion for Judgment on the Pleadings, which this Court denied with respect to the Usury Count, GMAC argued that the usury claim must fail because the choice of law provisions at issue cover "contract-based claims", the usury claim is contract-based and New York usury law would apply. Reply Memorandum Supporting Defendants' Motion for Judgment on the Pleadings, p. 15. In its argument GMAC ignored the language of the principal document which binds Landay to it – the Guaranty, Exhibit 2 to Answer. The choice of law provision contained in the Guaranty reads: "[t]his <u>guaranty</u> shall be governed by and construed and interpreted in accordance with the laws of the State of New York." Exhibit 2 to Answer, p. 2 (emphasis added).

6

Landay contends that, under New York's substantive law, the applicable provision, i.e., the one in the Guaranty, is a narrow choice of law provision which does not extend to tort claims, like his civil usury claim.  In this regard, New York's substantive law provides that the parties' choice of law provision indicating that a <u>contract</u> would be governed by a certain state's law does not determine that such state's law will govern a tort claim arising incident to the contract.  <u>Krock v. Lipsay</u>, 97 F.3d 640, 645 (2d Cir. 1996), and cases cited; and <u>Champlain Enter., Inc. v. United States</u>, 945 F. Supp. 468, 471 (N.D.N.Y. 1996) ("[u]nder New York law, a choice-of-law provision indicating that a contract will be governed by a certain body of law does not dictate the law that will govern non-contract based claims").  <u>See also</u>, <u>Fustok v. Conticommodity Services, Inc.</u>, 618 F. Supp. 1082, 1089 (S.D.N.Y. 1985) ("under New York's conflict of law rules a contractual choice of law provision 'does not bind [the parties] as to causes of action sounding in tort'").

Landay submits that the usury claim set forth in Count II of the First Amended Complaint is clearly a claim sounding in tort, since it involves civil consequences of a criminal law violation.  <u>See</u> 1A <u>C.J.S.</u> <u>Actions</u> § 66 ("A person may offend against the state, and also be liable for civil damages or other relief growing out of the same offense, as every criminal act which injures the person or property of another is also a civil tort redressable by the courts").  <u>See also</u>, <u>Micera v. Neworld Bank</u>, 412 Mass. 728, 729-730, 592 N.E.2d 1294, 1295 (1992) (Four-year statute of limitations for consumer protection action, not six-year contract statute of limitations is applicable to statutory violation of M.G.L. c. 183, § 60 which limits increase in the rate of interest on a loan as a

7

condition of renewing mortgage note).[1]  Therefore, the cases cited in the previous paragraph are dispositive of the choice of law issue.

Even if this Court were to find, notwithstanding the above, that the parties have chosen New York law to be applicable to a usury claim, it should refuse to apply New York's less rigorous usury statute on public policy grounds.  In Greenwood Trust Co. v. Massachusetts, 776 F. Supp. 21 (D. Mass. 1991), rev'd, 971 F.2d 818 (1st Cir. 1992)[2], this Court refused the invitation to apply Delaware law, chosen by the parties, to a Massachusetts consumer credit transaction in light of the Commonwealth's strong public policy against usurious transactions which this Court found to exist in the consumer context.  See Greenwood, 776 F. Supp. at 41-42, citing Restatement (Second) of Conflict of Laws 187(2)(b).[3]  Landay submits that the same fundamental public policy on which the Greenwood decision turned should be found to exist in the business context and should serve as a bar to the application of New York law to this case.

---

[1] See, also, Restatement (Second) of Torts 874A:
"When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action."

[2] The First Circuit Court reversed the District Court's determination that the claim was not preempted by federal law.

[3] "Under section 187(2) of the Restatement the law of the state chosen by the parties to govern their contractual rights will be applied…unless…

'(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in determination of the particular issue and which, under the rule of §188, would be state of the applicable law in the absence of an effective choice by the parties'."

8

In light of the above, this Court should not disturb the ruling that it implicitly made on Defendants' Motion for Judgment on the Pleadings to the effect that the Massachusetts Usury Statute controls the issues raised in Count II of the Complaint.[4]

### B. Landay Has Standing To Assert The Usury Claim Both In His Capacity As Junior Creditor And Guarantor.

As noted above, Landay is both a creditor of Seneca with a subordinated, secured position and a guarantor of the Seneca loan. Whichever of these two hats he wears, Landay has standing to assert the usury claim.

In this regard, Massachusetts, like most jurisdictions, permits a person other than the borrower to assert a claim that the underlying loan was usurious. In LBM Financial, LLC v. Edgewater Investment Ltd. Partnership, Nos. 01798, 01656, 02286, 2004 WL 2075565, at *4 (Mass. Super. Aug. 5, 2004), the Court considered a challenge under M.G.L. c. 271, §49 brought by a "junior attaching creditor". In holding that the junior creditor, KOC, had standing, the Court wrote: "Surely the public policy interests of the usury statute are furthered by KOC's present claim."

Landay submits that, as a subordinated creditor of Seneca with a perfected security interest, Exhibit A, Affidavit of David L. Landay, ¶3 and Exhibits 2-5, his status is identical to that of KOC in the LBM Financial, LLC case. Moreover, the rationale of

---

[4] The fact that GMAC attempted to comply with M.G.L. c. 271, §49 by writing a letter to the Massachusetts Attorney General gives further support to Landay's position. The first paragraph of this letter reads as follows:

"In accordance with the requirements of G.L. c. 271, §49, on behalf of GMAC Commercial Credit LLC, a New York limited liability company (the "Lender") (the "Lenders"), its advisors, partners, directors, officers, employees and agents, your are hereby notified that the Lender intends to engage in a transaction or transactions with the Borrower pursuant to a Factoring Agreement dated as of September 19, 2000, which, but for the provisions of paragraph (d) of said Section 49, may be proscribed under the provisions of paragraph (a) of said Section. The address of the Lender is in care of GMAC Commercial Credit, LLC, 1290 Avenue of the Americas, New York, NY 10104, Attention. Frank Imperato."

Exhibit C, Deposition Exhibit 50.

9

that case, i.e., that the public policy of Massachusetts would be furthered by allowing affected persons other than the debtor to assert usury claims, would clearly be applicable to a guarantor, like Landay, from whom the lender is attempting to collect the underlying debt.  The proposition that a guarantor has standing to pursue a usury claim is clearly within the penumbra of the LBM Financial, LLC precedent; and such a holding would be consistent with the law in many other jurisdictions.  See 12 Am. Jur. 2d Bills and Notes § 571 ("[t]he defense of illegality of an instrument has been held available to guarantors…particularly in regard to the defense of usury").

    C.    <u>GMAC Violated M.G.L. c. 271, §49.</u>

The Massachusetts Criminal Usury Statute reads in pertinent part as follows:

(a)  Whoever in exchange for either a loan of money or other property knowingly contracts for, charges, takes or receives, directly or indirectly, interest and expenses the aggregate of which exceeds an amount greater than twenty per centum per annum upon the sum loaned or the equivalent rate for a longer or shorter period, shall be guilty of criminal usury and shall be punished by imprisonment in the state prison for not more than ten years or by a fine of not more than ten thousand dollars, or by both such fine and imprisonment.  For the purposes of this section the amount to be paid upon any loan for interest or expenses shall include all sums paid or to be paid by or on behalf of the borrower for interest, brokerage, recording fees, commissions, services, extension of loan, forbearance to enforce payment, and all other sums charged against or paid or to be paid by the borrower for making or securing directly or indirectly the loan, and shall include all such sums when paid by or on behalf of or charged against the borrower for or on account of making or securing the loan, directly or indirectly, to or by any person, other than the lender, if such payment or charge was known to the lender at the time of making the loan, or might have been ascertained by reasonable inquiry….

(d)  The provisions of paragraph (a) to (c), inclusive, shall not apply to any person who notifies the attorney general of his intent to engage in a transaction or transactions which, but for the provisions of this paragraph, would be prescribed under the provisions of paragraph (a) providing any such person maintains records of any such transaction.

The undisputed evidence shows that GMAC violated the statute. First, GMAC did not come within the exemption provided by paragraph (d) of Section 49 because it did not notify the Attorney General <u>in advance</u> of the extension of credit of its "intent to engage in a transaction or transactions…which…would be prescribed by paragraph (a)." Such a notice, to be effective, had to <u>precede</u> the extension of credit made by the lender. See <u>Clean Harbors, Inc. v. John Hancock Life Ins. Co.</u>, 64 Mass. App. Ct. 347, 365, 833 N.E.2d 611, 625 (2005) ("While it is true that §49(d) itself does not specify when, in the loan process, the notification of intent must be filed, our cases have consistently construed the requirement to mean that the notice should be on file with the Attorney General by the time the loan proceeds are disbursed"). <u>See also</u>, <u>Schwartz v. Levensailor</u>, No. 01-583OH, 2002 WL 31103936, at *1-2 (Mass. Super. Sept. 16, 2002).

Second, "interest and expenses" charged in connection with the Seneca loan exceeded 20% for a period of 15 months. In this regard, Landay's expert, Lowey set forth the charges to the loan covering the period October 22, 2001 to January 31, 2003 in the reports which he attached and referenced in his affidavit and calculated that the usury interest rate for that period was 28.02%. Exhibit K, Affidavit of Keith D. Lowey, ¶4. Moreover, he has also averred, without any expert opinion to the contrary, that the aforementioned period is an appropriate one to utilize in a usury analysis since GMAC took control over the collateral on October 22, 2001 and there was no significant loan activity after January 31, 2003.[5] Exhibit K, Affidavit of Keith D. Lowey, Exhibit 1, pp. 2-3.

---

[5] The Usury Statute applies to an interest (and expenses) rate "which exceeds an amount greater than twenty per centum per annum upon the sum loaned or the equivalent rate <u>for a longer or shorter period</u>." M.G.L. c. 271, §49(a) (emphasis added).

11

Third, the charges to the loan which Lowey identified, Exhibit K, Affidavit of Keith D. Lowey, Exhibit 3, are properly includable in a usury calculation. This is so because they come within the definition of "interest and expenses" covered by the statute. In this regard, the Courts have given an expansive reading to the "interest and expenses" language of the Massachusetts Usury Statute. For example, in <u>Comstock v. Steinbergh</u>, No. 20042093J, 2004 WL 3120554, at *3 (Mass. Super. Dec. 16, 2004), the Court wrote that "Massachusetts courts also have determined that the 'interest and expenses' calculation under G.L. c. 271, §49(a) includes default provisions that trigger additional interest payments, mortgage brokers' fees, and attorneys fees." <u>See also</u>, <u>In re Tavares</u>, 298 B.R. 195, 203 (Bankr. D. Mass. 2003); and <u>Begelfer v. Najarian</u>, 381 Mass. 177, 185-186, 409 N.E.2d 167, 172-173 (1980).

The six major categories of charges – interest, facility fees, overadvance fees, minimum sale commissions, legal fees and RAS invoices – which Lowey identified from GMAC's records are specifically provided for in the Factoring Agreement, Exhibit 1 to Answer. <u>See</u> Factoring Agreement paragraph 4b(i) for interest; paragraph 4b(vi) for facility fee; paragraph 4b(i) and definition of "Overadvance Rate" for overadvances; 4b(ii) for minimum sale commission; and paragraph 14(d) for RAS invoices (liquidator's fees) and attorneys fees. The other referenced charges, which are minimal, also appear to be loan expenses within the meaning of the Statute. Landay submits that he has established all the elements of the statutory tort of civil usury.

## **CONCLUSION**

For the reasons stated above, this Court should allow this motion and order a partial summary judgment in his favor on Count II of the First Amended Complaint in the

amount of $121,822.98 as set forth in ¶4 and Exhibit 2 to the Affidavit of Keith D. Lowey, Exhibit K.  Moreover, this Court should reserve any further action on the Usury Count until the trial where Landay will seek other relief on Count II including voiding the Seneca loan and a return of $5,350,000 which GMAC collected from Landay after GMAC declared Seneca to be in default.[6]

                                  Respectfully submitted,
                                  DAVID L. LANDAY,
                                  By his attorney,

                                  /s/ Alan R. Hoffman
                                  Alan R. Hoffman, BBO# 236860
                                  Lynch, Brewer, Hoffman & Fink, LLP
                                  101 Federal Street, 22nd Floor
                                  Boston, MA 02110
                                  (617) 951-0800

Dated:  November 23, 2005

## CERTIFICATE OF SERVICE

    I hereby certify that a true copy of David L. Landay's Motion for Summary Judgment on Usury Count and Statement of Material Facts Not In Dispute and Plaintiff's Memorandum in Support of Motion for Summary Judgment on Usury Count was served upon the attorney of record for each other party by hand on November 23, 2005.

                                  /s/ Alan R. Hoffman
                                  Alan R. Hoffman

230476_1

---

[6] "Any loan at a rate of interest proscribed under the provisions of paragraph (a) may be declared void...." M.G.L. c. 271, §49(c).