# EXHIBIT 10

## FORBEARANCE AGREEMENT

THIS FORBEARANCE AGREEMENT ("Forbearance Agreement") made as of this 9th day of August, 2001 among SENECA SPORTS, INC. ("Seneca"), having its chief executive office at 75 Fortune Boulevard, Milford, Massachusetts 01757, BROOKFIELD INTERNATIONAL, INC. ("Brookfield"; and together with Seneca, individually and collectively, the "Clients"), having its chief executive office at 75 Fortune Boulevard, Milford, Massachusetts 01757 and GMAC COMMERCIAL CREDIT LLC ("Factor"), having its chief executive office at 1290 Avenue of the Americas, New York, New York 10104.

### WITNESSETH:

WHEREAS, Clients and Factor have entered into a Factoring Agreement dated as of the 19th day of September, 2000 (as amended, the "Agreement") and various notes, instruments, guaranties, agreements and other documents executed and/or delivered in connection therewith (all of the foregoing, together with the Agreement, as the same now exist or may hereafter be amended, restated, replaced, renewed, extended, supplemented, substituted or otherwise modified, collectively, the "Factoring Documents"); and

WHEREAS, the Clients hereby acknowledge, confirm and agree that (a) Events of Default have occurred under the Agreement and the other Factoring Documents, which Events of Default continue to exist and which Factor has suffered to exist, to wit Events of Default occurring in connection with Clients' breach of Paragraph 4(a) of the Agreement (Repayment of Excess Obligations), Paragraph 7(a) of the Agreement (Representations and Warranties as to Receivables), Paragraph 7(c) of the Agreement (Financial Statements), Paragraph 9(ii) of the Agreement (Indebtedness), Paragraph 9(iv) of the Agreement (Tangible Net Worth), Paragraph 9(v) of the Agreement (Fixed Charge Coverage Ratio), Paragraph 9(vi) of the Agreement (Pre-Tax Profits), Paragraph 10(i)(c) of the Agreement (License Fees), Paragraph 10(ii) of the Agreement (Discharge of Obligations), Paragraph 10(iii) of the Agreement (Notification of Events of Default) and Paragraph 10(iv) of the Agreement (Certified Financial Statements), (collectively, the "Existing Defaults"); and (b) as a result of the Existing Defaults, the Factor is entitled, as of the date hereof, to terminate the Agreement and to exercise any and all of its rights and remedies under the Agreement, the other Factoring Documents, applicable law or otherwise to realize upon the Collateral and to collect the obligations owing to Factor under the Agreement and the other Factoring Documents; and

WHEREAS, in order for the Clients to continue to operate their business for the purpose of maximizing the value of their assets while they conduct an orderly liquidation of their business and assets, the Clients have requested that the Factor forbear for a limited period of time from exercising its rights and remedies under the Agreement and the other Factoring Documents; and

WHEREAS, the Factor has advised the Clients that the Factor will not waive the Existing Defaults and desires to preserve the rights and remedies arising under the Agreement

115602-3

GLAN 00695

and the other Factoring Documents as a result of the existence and continuance of the Existing Defaults; and

WHEREAS, subject to the terms and conditions set forth herein, Factor has agreed to accommodate the request of the Clients to forbear from exercising the rights and remedies of the Factor under the Agreement and other Factoring Documents for a limited period of time.

NOW THEREFORE, in consideration of the foregoing, and for good and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

1. **Acknowledgment of Outstanding Obligations**. Each of the Clients hereby acknowledges, confirms and agrees that as of August 8, 2001, the Clients, jointly and severally, owe the Factor the aggregate principal amount of not less than $6,719,177.62, contingent obligations arising in connection with Letters of Credit in the aggregate face amount of $110,000, plus accrued and unpaid interest and plus all costs, fees, commissions, expenses and other sums and charges due and owing to the Factor under the Agreement and the other Factoring Documents, including, without limitation, all costs and expenses (including attorneys' fees and expenses) incurred by Factor (all of the foregoing is collectively referred to as the "Existing Debt"). Each of the Clients hereby acknowledges, confirms and agrees that as of the date hereof, the Existing Debt is due and owing by the Clients jointly and severally to the Factor without offset, defense or counterclaim of any kind, nature or description whatsoever.

2. **Binding Effect of Agreement and Other Factoring Documents**. Each of the Clients hereby acknowledges, confirms and agrees that: (a) the Agreement and each of the other Factoring Documents to which such Client is a party have been duly executed and delivered to the Factor, and each is in full force and effect as of the date hereof; (b) the covenants, agreements and obligations of each Client contained in or incurred under the respective Factoring Documents to which such Client is a party constitute the legal, valid and binding obligations of such Client, are enforceable against such Client, in accordance with the terms and conditions of the Agreement and the other Factoring Documents to which such Client is a party, and each such Client has no valid offset, defense or counterclaim to the enforcement of such obligations or such Factoring Documents to which it is a party; and (c) Factor is and shall be entitled to the rights, remedies and benefits provided for in the Agreement and the other Factoring Documents and pursuant to applicable law, subject to the terms and conditions of this Forbearance Agreement.

3. **Acknowledgment of Liens and Security Interests**. Each of the Clients hereby ratifies and confirms its respective grant to the Factor of the liens upon and security interests in its properties and assets heretofore mortgaged, pledged, granted or assigned to Factor under the Factoring Documents, and acknowledges and confirms that such liens and security interests secure and shall continue to secure the obligations of the Client to the Factor under the Agreement and the other Factoring Documents.

4. **Release**. In consideration of the agreement of the Factor to forbear from exercising its rights and remedies arising in connection with the Existing Defaults, each of the

Clients forever releases and discharges the Factor, and its successors and assigns from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law, admiralty or equity, which against the Factor, any Client, or any of its respective successors or assigns, ever had, now or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of this Forbearance Agreement arising under or in any way connected with the Agreement, the other Factoring Documents or this Forbearance Agreement.

5. **Preservation of Existing Defaults**. Each of the Clients hereby acknowledges, confirms and agrees that (a) the Existing Defaults are preserved and shall continue to exist after the execution and delivery of this Forbearance Agreement; and (b) subject to the conditions set forth in this Forbearance Agreement, the rights and remedies of the Factor arising by reason of the Existing Defaults are preserved in all respects without prejudice to the Factor, including, without limitation, Factor's right to charge interest at the Default Rate (as defined in the Agreement). Factor and Client confirm that Factor is presently charging interest on the Client's Obligations (as defined in the Agreement) at the Default Rate.

6. **Forbearance**.

(a) Each of the Factor and the Clients agrees that, during the Forbearance Period (as defined below), the Factor will forbear from exercising any of its rights and/or remedies arising by reason of the Existing Defaults to realize upon the Collateral, or any part thereof, and/or to commence any action against the Clients, individually or collectively, to collect the obligations owing by the Clients to the Factor. For the purposes of this Forbearance Agreement, the term "Forbearance Period" shall mean that period commencing on the date hereof and ending on the earlier to occur of (i) January 30, 2002 and (ii) the date of occurrence of an Additional Default (as defined below).

(b) Upon the termination of the Forbearance Period, the agreement of the Factor to forbear shall automatically and without further action or notice terminate and be of no further force or effect, it being expressly agreed that the effect of such termination of the Forbearance Period will be to permit the Factor, without notice, demand or advertisement (all of which are expressly waived by the Clients), to exercise its rights and remedies arising by reason of the Existing Defaults or applicable law with respect to the Collateral and the obligations owing by the Clients, all without further notice, passage of time or forbearance of any kind, or nature.

7. **Modification to the Factoring Documents**. In addition to the Clients' covenants and agreements set forth in the Agreement and in the other Factoring Documents, and notwithstanding anything to the contrary set forth in the Agreement or the other Factoring Documents, each of the Clients acknowledges, confirms and agrees that:

(a) The definition of "Borrowing Base" appearing in Section 12 of the Agreement is hereby amended and restated in its entirety as follows:

" "Borrowing Base" shall mean the lesser of (a) $10,000,000.00 or (b) the sum of (i) ninety percent (90%) of Eligible Receivables, (which percentage may be decreased or adjusted at any time, in our sole discretion), plus (ii) the lesser of (x) forty percent (40%) of Eligible Inventory or (y) $2,500,000 plus (iii) 100% of the face amount of the Standby Letter of Credit plus (iv) the amount of the Cash Deposit held by us in good and available funds pursuant to that certain letter re: Cash Deposit dated August 9, 2001 by and between us and David L. Landay; minus (v) the face amount of any outstanding Letters of Credit minus (vi) Reserves."

(b) In addition to and not in limitation of Factor's rights to establish Reserves under the Agreement, in its sole and absolute discretion, Factor shall establish an additional Reserve in the amount equal to eight percent (8%) of the aggregate amount of all Receivables purchased by Factor from Clients with respect to which such Receivables Toys-R-Us is the account debtor.

(c) Concurrently with the execution of this Forbearance Agreement, David L. Landay, shall execute and deliver to and in favor of Factor (i) an Amendment and Ratification of Guaranty, substantially in the form annexed hereto as Exhibit A, and (ii) a letter re: Cash Deposit, substantially in the form annexed hereto as Exhibit B, all in form and substance satisfactory to Factor.

(d) On or before August 15, 2001, David L. Landay shall deliver to Factor an original amendment to that certain Letter of Credit number 1551257988 issued by Fleet National Bank on the application of David L. Landay for the account of the Clients and for the benefit of Factor, which amendment shall provide for the extension of the expiry date of such Letter of Credit from October 30, 2001 to March 31, 2002.

(e) Clients acknowledge that Factor has retained RAS Management to conduct, on behalf of Factor, from time to time, field examinations, collateral analysis, orderly liquidation analysis and/or other business analysis of the Clients and the Collateral. Clients hereby acknowledge, confirm and agree that, (i) without limitation of Factor's rights to charge the Clients' account for other costs, fees, and expenses incurred by Factor, all costs, fees and expenses charged to Factor by RAS Management, as billed, shall be charged by Factor to the Client's account and (ii) Clients shall fully cooperate in all respects with the representatives of RAS Management by, including, without limitation, providing representatives of RAS Management with access to the Clients' books and records and all Collateral and making representatives of the Clients available to representatives of RAS Management to discuss the Clients' books and records and the Collateral.

8. **Additional Defaults; Remedies.**

(a) The occurrence of any one or more of the following shall constitute an "Additional Default" under this Forbearance Agreement:

(i) the breach of any representations, warranties, covenants or agreements contained in this Forbearance Agreement;

(ii) the failure by David L. Landay to timely comply with the terms and conditions of that certain letter re: Cash Deposit dated August 9, 2001 by and between David L. Landay and Factor;

(iii) the occurrence of an Event of Default under the Agreement or the other Factoring Documents, other than any of the Existing Events of Default; or

(iv) if, as of the Friday of each week during the Forbearance Period, the Clients fail to maintain "Net Availability", as determined by Factor in its sole and absolute discretion, equal to or greater than the "Net Availability" amounts for each such week set forth on the line identified as "Net Availability" on the Seneca Sports Projected Availability annexed hereto as Exhibit C; it being acknowledged that for the week ending January 25, 2002, "Net Availability" shall mean an amount equal to $1,298,673.

(b) Upon the occurrence of any Additional Default hereunder, and notwithstanding anything to the contrary contained in this Forbearance Agreement, the Factor may thereupon, and at any time and from time to time thereafter, in full or in part, exercise any and all of its rights and remedies under this Forbearance Agreement, the Agreement or the other Factoring Documents, applicable law or otherwise, all of which rights and remedies shall be non-exclusive and cumulative and exercisable in whatever order or manner as the Factor, in its sole discretion, may deem appropriate.

9. **General Provisions**.

(a) Upon the request of the Factor, the Clients shall execute and deliver to Factor, or cause to be executed and delivered, all such additional documents, instruments and agreements as the Factor, may determine, in its sole discretion, is necessary or desirable to effectuate the purposes and intent of this Forbearance Agreement.

(b) This Forbearance Agreement shall be binding upon each of the Clients and their respective successors and assigns.

(c) The validity of this Forbearance Agreement, its construction, interpretation and enforcement, shall be determined under and according to the laws of the State of New York, without any reference to its principles of conflicts of law. Each of the Clients hereby consents to the exclusive jurisdiction of the Supreme Court of the State of New York for the County of New York and the United States District Court for the Southern District of New York in any action or proceeding under, arising out of or related to this Forbearance Agreement and the Factoring Documents, confirms that such courts are convenient forums, and that each such Client submits to the personal jurisdiction of such courts. Each Client hereby consents to the service of process by registered or certified mail, return receipt requested, directed to such Client at such Clients' address set forth above, and each Client agrees that service so made shall be deemed complete five (5) days after the date of mailing.

GLAN 00699

(d) EACH OF THE CLIENTS HEREBY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING UNDER, ARISING OUT OF OR RELATED TO THIS FORBEARANCE AGREEMENT.

(e) The unenforceability or invalidity of any one or more provisions hereof shall not render any other provisions herein contained unenforceable or invalid.

(f) This Forbearance Agreement is the result of a full and complete negotiation at arm's length by all parties hereto. No prior drafts or memoranda prepared by any parties shall be used to construe or interpret any provision hereof, nor shall any one party hereto be considered the "drafter" of this Forbearance Agreement for the purposes of construing the terms, conditions and obligations set forth herein. This Forbearance Agreement sets forth the entire understanding of the parties with respect to the matters set forth herein and supersedes in their entirety any and all understandings and agreements, whether written or oral, of the parties with respect to the foregoing. Except as expressly amended or otherwise modified hereby (including, without limitation, the preservation of the Existing Defaults), the Agreement and the other Factoring Documents remain in full force and effect in accordance with their existing terms and provisions as of the date hereof, except that, in the event of any conflict between any term or provision of this Forbearance Agreement and any term or provision of the Agreement or the other Factoring Documents, the term or provision of this Forbearance Agreement shall control. This Forbearance Agreement cannot be changed, modified, amended, waived or terminated in any respect, except by a writing executed by the party to be charged.

(g) This Forbearance Agreement may be executed in one or more counterparts, each of which shall constitute but one and the same Forbearance Agreement.

IN WITNESS WHEREOF, the parties hereto have duly executed this Forbearance Agreement as of the date first written above.

GMAC COMMERCIAL CREDIT LLC

By: [signature]

Title: PRESIDENT & CEO

[SIGNATURES CONTINUED ON NEXT PAGE]

[SIGNATURES CONTINUED FROM PREVIOUS PAGE]

AGREED TO:

SENECA SPORTS, INC.

By: _____

Title: Pres.

BROOKFIELD INTERNATIONAL, INC.

By: _____

Title: Pres.