# EXHIBIT 22

**United States District Court**
**District of Massachusetts**
Civil Action No. 04-11955WGY
David L. Landay v. GMAC Commercial Credit LLC et al.
**Expert Witness Report of Keith D. Lowey, CPA**
October 10, 2005

## I.    Background

The Plaintiff in this litigation matter, David L. Landay ("Landay"), was the CEO, president, director and major shareholder of Seneca Sports, Inc. ("Seneca"), a distributor of adult and children's sporting good products and Brookfield International, Inc. ("Brookfield"), a purveyor of juvenile sports equipment and sports toys. In the summer of 2000, Landay, on Seneca's behalf, sought financing from GMAC Commercial Credit LLC ("GMAC") to purchase Brookfield. On or about September 19, 2000, Seneca and GMAC entered into a commercial factoring agreement with a line of credit up to $10,000,000 (the "Factoring Agreement") that was secured by Seneca's and Brookfield's accounts receivable, inventory and other assets, and by a personal guaranty and standby letter of credit from Landay. GMAC contends that Seneca and Brookfield defaulted on the covenants of the Factoring Agreement. On or about August 9, 2001, Seneca and Brookfield executed a Forbearance Agreement ("Forbearance Agreement") with GMAC that modified the Factoring Agreement and required Landay to and put up an additional $1,000,000 in cash collateral. The Forbearance Agreement included a financial plan that provided a schedule for loan draws, loan payments and established a formula for eligible accounts receivable. On or about October 15, 2001, GMAC collected Landay's $1,000,000 in cash collateral and collected on his standby letters of credit totaling $4.35MM. On or about October 22, 2001, GMAC seized Seneca's and Brookfield's assets and proceeded to liquidate them.

## II.    The Issues

In my capacity as expert for the plaintiff, I have been asked to assess: 1) whether the interest and expenses charged by GMAC on the Factoring Agreement exceeded the 20% ceiling under the Massachusetts usury statute as articulated in M.G.L. 271, Section 49 and 2) whether GMAC and/or its agents acted in a commercially reasonable manner to maximize the return on the liquidation of the Seneca collateral securing the Factoring Agreement, specifically the accounts receivable, inventory and intellectual property.

## III.    Qualification as Expert

I am President of Verdolino & Lowey, P.C. ("V&L"), a diverse accounting firm offering forensic accounting, business liquidation services, litigation support, business advisory, management consulting and tax planning and compliance services. I have 22 years of accounting experience: three at one of the former international Big Eight

accounting firms, four at a well-known privately-held company in the capacity as CFO and Controller and the remaining 15 at my present practice. I am a Certified Public Accountant, licensed to practice in Massachusetts and Rhode Island. Over the past 19 years, the largesse of my practice has focused on complex business issues and analysis and business litigation in connection with bankrupt, insolvent or otherwise under-performing enterprises. A copy of my current Curriculum Vitae is attached as Exhibit G.

My firm has incurred total fees of $21,561.00 through September 30, 2005 in connection with this litigation. Additional fees and expenses may be billed between now and the time of trial if additional work is requested by counsel for Landay. My compensation is not contingent on the outcome of this litigation.

## IV.    Documentation Reviewed

In connection with the work performed in this engagement, numerous documents and records were reviewed; including but not limited to: complaints, responses to interrogatories, deposition transcripts and related exhibits and various company records. For a complete list of documents reviewed see Exhibit H.

## V.    Findings

In my expert opinion: (1) GMAC charged Seneca interest and expenses in excess of 20% (the Commonwealth of Massachusetts usury rate) for the period October 22, 2001 to January 31, 2003, and (2) GMAC, on its own or through its Liquidating Agent, RAS ("Liquidating Agent" or "RAS"), did not act in a commercially reasonable manner in liquidating the assets of Seneca.

## VI.    Usury

In order to calculate the overall interest rate charged on the GMAC loan, a schedule was prepared that re-created the loan activity for the history of the loan. This recreation effort was performed as a result of GMAC not being able to provide the plaintiff with a similar schedule. GMAC provided the plaintiff with a summarized schedule (by month) of the loan activity, monthly client statements and some daily cash records. In order to validate the activity, and prepare an accurate calculation of the periodic interest being charged on the loan, this comprehensive schedule was prepared. The analysis ultimately afforded me the opportunity to review the loan activity by transaction (i.e., individual charges to the loan, individual payments / receipts posted to the loan, draws against the loan, adjustments to the loan balance, etc.) for propriety. As of the writing of this report, there are still numerous transactions for which GMAC has provided no support.

I calculated the annualized effective interest rate for the period from October 22, 2001 (the "Takeover Date") to January 31, 2003 as being 27.10%. The rationale for specifically identifying this period was that it begins with the date that GMAC took

control of the Seneca business and concludes at the end of the month that includes the last significant transaction that was posted to the loan balance, i.e. on 1/9/03 GMAC posted a collection of $103,341.50 against the outstanding loan balance. GMAC wrote the balance of the loan off on 11/24/03. During the period from 2/1/03 to 11/24/03, only monthly interest and over-advance fees were charged to the loan along with two *de minimus* receipts totaling less than $300. Since I could not determine the reason that GMAC waited until November 2003 to write off the loan, I ignored the period from 2/1/03 to 11/24/03 in preparing the usury calculation.

The effect of interest being charged at a rate in excess of 20% (the "Usury Interest Damages") for the period 10/22/01 to 1/31/03 amounts to $107,775.20, as evidenced by the calculation in Exhibit D. Additionally, see Exhibit E for the calculation of the interest rate being charged on the loan and Exhibit F for the loan transaction activity for this period.

## VII.    Commercial Reasonableness

In assessing whether or not GMAC or RAS acted in a commercially reasonable manner, I considered all of the documents made available for review. See Exhibit H for a complete listing of these documents. The primary documents relied upon include: the GMAC Commercial Credit Corp. New Client Report dated July 19, 2000 (see Exhibit B for excerpts from this report) and the periodic update reports, including various liquidation analyses, prepared by John Rijo ("Rijo" or the "Liquidating Agent") of RAS for the period June 30, 2001 to November 26, 2001. The liquidation analyses that were reviewed and included as part of the reports prepared for those dates, were prepared as of June 30, 2001, October 5, 2001 and October 19, 2001, respectively.

My observations on this area of inquiry are as follows:

- The loan was considered by GMAC to be primarily a collateral-based loan, 56% of the original loan advance of which was secured by the assets of Landay. GMAC's loan write-up indicated that it was a "strong collateral loan with over 50% of the initial funding supported by a Standby LC, A/R to be factored with retailers we know well, and a *(sic)* **advance rate against inventory supported by a liquidation value appraisal.**" (emphasis added).

- Despite GMAC recognizing that Seneca "performed poorly with increasing losses over the past three years" and that its "balance sheet is weak with a negative retained earnings and a sizeable deficit in working capital", it still approved the loan.

- In its loan write-up, GMAC acknowledged the importance of Landay's industry experience, including his knowledge of the licenses, trademarks and patents (collectively "the intellectual property") and his personal

3

resources.   See Exhibit C for a complete listing of Seneca's and
Brookfield's intellectual property.   Examples of the weight GMAC
assigned to his personal resources and industry knowledge include the
following excerpts from the loan write-up:

- "… a $3.5MM personal guaranty of the President and majority
  owner, David Landay, secured by a $4MM Letter of Credit
  issued by Fleet Bank **tying him very closely to our loan**"
  (emphasis added).

- "Seneca primarily through David Landay, has a long
  established credibility in the industry within which he has
  more than thirty years experience … with Landay's personal
  exposure in this loan it would appear **he would have incentive
  to liquidate for the highest possible return.   Additionally he
  would have the opportunity to sell the licenses to another
  distributor/manufacturer that is in the industry to further
  enhance any recovery**" (emphasis added).

- "David Landay is absorbing a large portion of the risk with his
  $4.0MM letter of credit and $2.9MM of subordinated debt,
  with GMAC being in a strong position of control, utilizing our
  factoring product and in possession of his Letter of Credit."

- GMAC acknowledged the value of Seneca's and Brookfield's intellectual
  property.   It funds the purchase of the Brookfield intellectual property for
  $1.6MM with its loan to Seneca.   Further recognition of the value of that
  intellectual property is evidenced within the loan write-up by the
  following excerpts:

  - "Seneca's distinction is its long time participation in this
    industry, and subsequent relationships it has developed, and its
    **strong licensed brand recognition in the market place.**"
    (emphasis added).

  - "Competition in toys is keen, however start-ups in this
    category are rare due to the need to garner licensed brands.
    Seneca/Brookfield have long-term license agreements with the
    premier brands which management knows intimately."

  - In making its recommendation for the loan, the report writer
    sites "a good strategic acquisition in Brookfield International,
    and a good list of license agreements which are key to their
    marketing efforts."

4

Notwithstanding any of the above, my review of the Rijo reports and other related material indicates that neither GMAC nor its agent made more than a minimal effort to obtain a value for the intellectual property. Further, there has been no evidence that any funds were realized from the sale of those assets.

- In preparing the Liquidation Analyses as of June 30, 2001 and October 5, 2001, Rijo provides for a liquidation that is projected to take 12 and 10 weeks, respectively, and the retention of key employees in accounting, shipping, sales and accounts receivable for a period of 5 to 10 weeks. **This is important to note.** If the goal of a liquidation is to maximize the overall return, sufficient time needs to be provided to allow the liquidating party the opportunity to administer/liquidate the remaining assets. In this case, the remaining assets were inventory, accounts receivable, intellectual and personal property. If sufficient time is not provided, a liquidator may be forced to accept lesser offers than he might otherwise procure if given more time. Further, from a cost and efficiency perspective, it is generally important to retain those individuals who are most familiar with the important assets that are being liquidated/collected in any given situation. Those individuals are usually more cost effective than professionals being retained and, as a result of their familiarity and experience with the company and/or particular assets, are in a position to liquidate/collect a particular asset more efficiently and effectively.

Although the Liquidator intends, as of 10/5/01, to retain certain key employees to assist him with the liquidation over the proposed 10 to 12 week period, and GMAC acknowledges Landay's experience with and knowledge of the intellectual property, as well as his potential motivation in maximizing any recovery under a liquidation scenario, that expertise was not drawn upon. The Liquidator took control of the business on very short notice - October 22, 2001, the day of the asset seizure. Based on my review of the periodic update reports prepared by the Liquidator, the majority of the liquidation was completed by November 16, 2001 – **in just 27 days.** No one was retained to assist the Liquidator in selling the inventory. See a further discussion of this point below. Although the Liquidator did use certain key company personnel, he did so only on a very limited basis: customer service personnel, 22 hours; accounting staff (CFO), 32 hours; computer systems personnel, 12 hours; and shipping/warehouse personnel, 152.75 hours. No one was retained and little, if any effort, was made to try and recover anything with regard to the intellectual property - despite GMAC's recognition of its value AND its funding of the Seneca purchase of the Brookfield intangibles for $1.6MM thirteen months earlier. It is worth mentioning that Seneca's portfolio of trademarks, patents and licenses is not even reflected in that $1.6MM figure. Presumably, the value of the combined intellectual property exceeded $1.6MM.

5

- GMAC took responsibility for collecting the A/R. It appears as though it was given supporting documentation for the accounts with outstanding balances but company personnel were not utilized to assist in dealing with the high volume of credits and adjustments that were being sought by many of Seneca's customers. Customer checks were received via lockbox by GMAC and any discrepancies between company records and payment received were identified. The determination as to the propriety of any credit taken by a customer was up to Seneca to investigate and follow-up on. GMAC acted merely as a recipient of payments and record keeper of same. I have not been able to determine what, if any, collection effort was expended by GMAC. In the event of a discrepancy between invoice and payment amount, GMAC generated and sent a letter to Seneca giving them 60 days to investigate and resolve the discrepancy. Initially, these discrepancy letters were sent to the company at its main location in Milford, Massachusetts. Unfortunately, after 10/22/01, there was no one there to respond to these letters. Further, eventually these letters ended up being forwarded back to GMAC when the Milford location was vacated in late November and the company's mail forwarded to GMAC. In effect, GMAC was sending itself the discrepancy letters. Landay and his Attorney found unopened discrepancy letters in the records that were retrieved from the off-site storage facility during the document production process. GMAC has represented that it collected approximately $588k from A/R on a balance of $1.3MM as reported by the company. Due to insufficient information provided by GMAC, I have not been able to verify this figure.

  In order to project a liquidation value of the company's A/R as of 10/22/01, I reviewed the analyses prepared by the Liquidator and other relevant information provided to me. As a result of this analysis, I have utilized an overall 46% expected recovery rate. See Exhibit A for this calculation. In Rijo's analyses as of 6/30/00 and 10/5/00, respectively, he used an overall 53% and 55% recovery rate. Notwithstanding, his 10/19/01 liquidation analysis projected only a 41% recovery rate. The company historically had a 90% to 94% collection rate – but these recovery rates do not take into consideration certain credits and allowances that were made available to various large customers. Thus, I would characterize the overall collection rate of 46% that I used for projection purposes as being conservative. It is clear that the failure to retain key employees and the abbreviated timeframe within which the liquidation was conducted led to less than optimal results from RAS.

- The company's inventory was sold primarily via bulk sales by Rijo. As of the Takeover Date, the Liquidator focused on selling the remaining inventory of $1,293M as quickly as he could. Although Rijo's Liquidation Analyses as of 6/30/01, 10/5/01 and 10/19/01, respectively,

consistently provided for inventory to be liquidated at 42% of cost, it appears as though the actual recovery on the inventory was approximately 20% of cost. GMAC claims that it has received approximately $255k from the sale of inventory, $281k less than Rijo's projected recovery of $536k. To date, I have not been able to verify the actual amount collected from the sale of inventory due to incomplete records being turned over by GMAC. It is clear that the reduced timeframe and lack of retention of a key employee in this area impacted the overall inventory recovery.

According to an inventory liquidation value appraisal prepared by Ozer Valuation Services ("Ozer"), on which GMAC relied (see Exhibit B) in making its loan decision, as of May 2000, Seneca's inventory could have been liquidated at 65 % of cost **utilizing a 42 day going out of business sale** (emphasis added). Ozer calculated the net recovery after all related expenses at 53% and then further reserved an additional 6% to cover unexpected costs. This brought the appraised liquidation value to a net of 47% of cost. This value exceeds the 42% liquidation value BEFORE ANY EXPENSES that Rijo applied. The shorter time period utilized by the Liquidator promoted a "fire" sale perspective with little or no recognition given to open orders on the books as of the Takeover Date. The Liquidator only accepted offers on a cash in advance or COD basis; no credit was extended. These payments terms effectively limited participation of larger customers who do not do business on a cash basis. The Open Order Report dated 10/22/01 had open orders totaling in excess of $1.5MM. To date, I have not been able to verify which of these orders could have been filled with the remaining inventory. However, I want to point out that it is highly likely that any shipments made to an existing customer with an outstanding purchase order would have generated a higher return – and perhaps even a profit. Again, given the fact that no key employees were retained that were familiar with Seneca's customer base, GMAC put itself in a position whereby it was highly unlikely that it could maximize inventory recovery.

In order to project a recovery on the remaining inventory, I utilized a 47% of cost recovery rate - the NET recovery rate determined by Ozer. Given the wide disparity between the Ozer appraisal of 65% of cost and the 42% employed by Rijo, I believe that the company could have realized a higher percentage on the inventory liquidation than what Rijo projected if more time had been taken, people with more familiarity with the inventory had been retained and sales to customers with open orders were pursued.

- As indicated above, it is my opinion that given the fact that GMAC: (1) made little or no effort to liquidate Seneca's intellectual property; (2) did not conduct an "orderly liquidation" of Seneca's inventory since it failed to take at least six weeks to conduct the liquidation in favor of a "fire sale" time line; (3) did not retain key employees to maximize the recovery

7

related to the intellectual property, A/R and inventory, it was not commercially reasonable in its liquidation of the Seneca assets that remained as of 10/22/01. In order to calculate a damage amount (See Exhibit A), I applied a recovery rate to the actual A/R and inventory balances as of 10/22/01 to arrive at a projected total liquidation recovery amount. This amount was compared to the total amount recovered by GMAC for A/R and inventory. The result of this calculation is a shortfall, or damage amount, of $360,360. **This calculation does not take into consideration any value for the intellectual property.** I was not able to assign a value to the intellectual property at this time.

## VIII. Additional Information

I reserve the right to supplement my conclusion and analysis included herein should additional information become available.

Respectfully submitted,

Keith D. Lowey
October 10, 2005

Exhibit A
Page 1 of 2

**Seneca Sports, Inc.**
*Commercial Reasonableness Damage Calculation*

| | SRAS Liquidation Analysis Ex Corp | | | V&L Projected Results | GMAC Actual Results | Difference |
|---|---|---|---|---|---|---|
| | 08/30/01 | 10/05/01 | 10/19/01 | 10/22/01 | 10/22/01 | |
| Liquidation Proceeds - | | | | | | |
| Accounts Receivable | 1,255,030 | 748,437 | 523,635 | 595,858 | | |
| Inventory | 304,972 | 501,566 | 536,202 | 608,022 | | |
| PP & E | 22,133 | 22,133 | - | - | | |
| Total | 1,582,135 | 1,272,136 | 1,059,837 | 1,203,981 | 843,621 | 360,360 |
| Total Accounts Receivable | 2,377,194 | 1,353,892 | 1,263,551 | 1,306,681 | | |
| Liquidation Value Percentage | 53% | 55% | 41% | 46% | | |
| Total Inventory | 2,107,091 | 1,608,324 | 1,377,209 | 1,293,664 | | |
| Net Adjustments To Calculated Liquidation Value | 564,833 | 131,433 | 44,288 | - | | |
| Unadjusted Liquidation Value | 889,805 | 632,999 | 580,490 | 608,022 | | |
| Liquidation Value Percentage - Unadjusted | 42% | 42% | 42% | 47% | | |

Exhibit A
Page 2 of 2

**Seneca Sports, Inc**
**AR Aging Summary / A/R Liquidation Analysis**
**10/23/01**

| | Balance | Current | 1 - 30 Days | 31 - 60 Days | 61+ Days |
|---|---|---|---|---|---|
| **TOTAL** | $1,306,681.05 | $799,153.06 | $312,535.00 | $25,830.18 | $169,162.81 |
| | 100% | 61% | 24% | 2% | 13% |
| Adjustments - | | | | | |
| Ames | ($84,063.42) | $0.00 | $0.00 | ($2,274.00) | ($81,789.42) |
| MD Meyer | ($43,348.88) | $0.00 | $0.00 | $0.00 | ($43,348.88) |
| JC Penney | ($50,000.00) | ($50,000.00) | $0.00 | $0.00 | $0.00 |
| Toys R US | ($110,000.00) | ($110,000.00) | $0.00 | $0.00 | $0.00 |
| Sears | ($50,000.00) | ($50,000.00) | $0.00 | $0.00 | $0.00 |
| Finger Hut | ($39,878.00) | ($39,878.00) | $0.00 | $0.00 | $0.00 |
| Meijer | ($43,617.00) | ($43,617.00) | $0.00 | $0.00 | $0.00 |
| | | | | | |
| **Adjusted A/R Balance** | $885,773.75 | $505,658.06 | $312,535.00 | $23,556.18 | $44,024.51 |
| Excess Dilution - 5.6% | ($47,137.96) | ($28,316.85) | ($17,501.96) | ($1,319.15) | - |
| Write-off over 60 days | ($44,024.51) | - | - | - | ($44,024.51) |
| | $794,611.28 | | | | |
| 75% collection rate | $595,958.46 | | | | |
| Overall collection percentage | 46% | | | | |

Note: The dilution factor and elimination of the greater than 60 day A/R is consistent with GMAC's methodology of calculating the net recoverable amount of Seneca's A/R.

**Excerpts from GMAC CC – New Client Report (dated June 22, 2000, approved by the Marketing Credit Committee July 20, 2000).**

## Nature of Proposal

Seneca began operation in July 1990, when David Landay, President and part owner, left Brookfield International with a group of other key managers. Brookfield, at the time, was run as part of Hyde Athletic.

Seneca did $35MM in annual sales in 1995, at the height of the skateboard craze but has seen volume diminish since then as the market matured and flattened out. In planning their future, Landay and his managers felt they needed new lines and a concentrated effort on the top of the market. They started looking at companies that would make good acquisition candidates. Within a very short period of time after setting their strategy...a financial consultant out of Greenwich, approached Landay about a wheeled goods marketer that was looking for a buyer. The Company was Brookfield. Landay, having started Brookfield, was well aware of their operation, and he and his managers decided it would be an excellent fit with Seneca.

## Brookfield Acquisition

The Brookfield acquisition has been structured as an asset purchase with the price based on the book value of the inventory and the other intangible assets. The intangible assets represent the license agreements, which include such brand names as Barbie, Hot Wheels (Mattel), Scooby-Doo (Warner Bros.), Mickey Mouse (Disney), and are being valued at $1.6MM. The projected book value of the inventory is $1.7MM and the molds are valued at $47M making the total price $3,383.0M.

The inventory after closing is to be shipped to Seneca's warehouse in Milford, MA. The acquisition is designed to give Landay the licenses that he is very familiar with and their attendant sales. Seneca plans to only retain the sales manager and two other people. With the additional sales and royalties management believes that Seneca will return to profitability. Since Landay had originally developed Brookfield he is comfortable with the sales volume and their margins and **his personal assets are supporting over 50% of the initial funding.** The licenses will be transferred to Seneca with the permission of the licensors.

## Competition

Competition in the toy industry is fierce. Relationships, product demand, and service are key to success. **Seneca primarily through David Landay, has a long established credibility in the industry within which he has more than thirty years experience.**

**Competition** continued

He has developed strong brand name licensing agreements with the top names in the industry and has a long standing relationship with the suppliers in the Pacific Rim, reinforced by the fact Charles Chen, a significant Pacific Rim manufacture/supplier to the industry, is a owner of Seneca.

Seneca's distinction is its long time participation in this industry, and subsequent relationships it has developed, and **its strong licensed brand recognition in the marketplace.**

## Accounts Receivable

Our June 22, 2000 Audit Report reflects a good receivable position....The Credit Department has reviewed the account receivable list and advises it is of acceptable quality. Whereas our facility to Seneca requires a Factoring Agreement, we will have the ability to fully manage the extension of credit and collection of their receivables.

## Receivables – Brookfield International
Though our audit did not include Brookfield's accounts receivable; we had the credit Department review the top 25 customers of Brookfield. The list was deemed acceptable and recommended by them.

Exposure is centered in: Toys R Us, Target Stores, J.C. Penney, Ames Department Stores, K Mart, Sears Roebuck

## Inventory

The inventory consists of fully assembled in-line skates, roller skates, skateboards as well as other sporting goods and related protective equipment.

Ozer Valuation Services did an inventory appraisal for Wells Fargo Business Credit in May of this year. The net liquidation value they came up with was **47% of cost on a 42 day going out of business scenario** factoring in all costs including financial, advertising, occupancy, payroll, supervision, store, etc..... Ozer separated the various goods into categories and had recovery against cost swing from 67% for skateboards, skates, protective gear, to 52% for power wheels, ice skates and certain accessories. The major dollars in the inventory fell into categories with liquidation values over 62%..... **Ozer came up with an average recovery against cost before expenses of 65% and netting $427M of expenses, including their $120M fee, came up with a net recovery against cost of 53%, which they further reduced to 47% to cover unexpected events. Since Landay is personally guaranteeing and supporting the loan with a substantial**

**Inventory** continued

**L/C, it would appear that he would want to maximize any liquidation scenario and
reduce expenses therefore a 50% advance rate is proposed here.**

**Financial Analysis**

Over the past three years Seneca has performed poorly with increasing losses. While a
number of problems have led to these results, the major issue has been the decline in
sales due to major suppliers bypassing wholesalers to buy unbranded merchandise
directly and the marked decline in the demand of in-line skates….. Management believes
the key to turning the company around is obtaining enough established licenses to brand
their merchandise which will generate more volume with their customers and will lead to
profitability. The proposed Brookfield acquisition is a result of this strategy as the
company holds many licenses including Looney Tunes, Barbie, Hot Wheels, etc.
Without the Brookfield acquisition the company plans to move out of their warehouse
location and continue to downsize until they are profitable. They are still unprofitable to
date, supporting the excess overhead of the facility, due to the desire to acquire
Brookfield, which they believe will fit perfectly into their existing operation.

**The balance sheet is weak with a negative retained earnings and a sizeable deficit in
working capital,** but if the $2.9MM in subordinated notes (with David Landay) are
added back in with the proposed $4.1MM letter of credit there would exist a $1.7MM net
worth.

Receivables have been one of the few bright spots, coming down from 57 days in 1997 to
42 days in 1999…. Seneca's customer list was reviewed by the credit area and considered
acceptable, supporting a 90% advance on the factored receivables.

**Financial Rationale**

- **Strong collateral loan with over 50% of the initial funding supported by a
  Standby Letter of Credit, A/R to be factored with retailers we know well, and
  a advance rate against inventory supported by a liquidation value appraisal.**

- **A strategic acquisition of Brookfield which will integrate nicely with Seneca,
  enabling them to benefit from the increased sales while limiting additions to
  overhead.**

- **A $3.5MM personal guaranty of the President and majority owner, David
  Landay, secured by a $4MM Letter of Credit issued by Fleet Bank tying him
  very closely to our loan.**

- **Solid profitability on the account with the ability to sell our factoring product
  along with our lending.**

Exhibit B
Page 4 of 4

<u>Risk & Mitigants</u>

- **Return to profitability is predicated on a successful assimilation of Brookfield into the Seneca operations, with little financial information on Brookfield.  David Landay is absorbing a large portion of the risk with his $4.0MM letter of credit and $2.9MM of subordinated debt, with <u>GMAC being in a strong position of control</u>, utilizing our factoring product and in possession of his Letter of Credit.**

- **The inventory advance rate is tight against the liquidation value appraisal, but <u>with Landay's personal exposure in this loan it would appear he would have incentive to liquidate for the highest possible return.  Additionally he would have the opportunity to sell the licenses to another distributor/manufacturer who is in the industry to further enhance any recovery.</u>**

- **Competition in toys is keen, however start-ups in this category are rare due to the need to garner licensed brands.  <u>Seneca/Brookfield have long-term license agreements with the premier brands</u> which management knows intimately.**

<u>Recommendation</u>
**We recommend approval of this transaction <u>based upon our well secured position,</u> which includes a $4MM Letter of Credit issued by Fleet Bank, <u>our ability to fully control receivables</u> through a Factoring Agreement, a good strategic acquisition in Brookfield International, and <u>a good list of license agreements which are key to their marketing efforts.</u>**

Exhibit C
Page 1 of 10

**Seneca Sports, Inc**
**Licenses**

| License Name | Original Purchaser | Territory | Product |
|---|---|---|---|
| Mattel - Barbie | Brookfield International, Inc | USA and its territories | Wheeled Goods, Accessories, Winter Goods, Outdoor Games, Miscellaneous |
| Mattel Hot Wheels | Brookfield International, Inc | USA and its territories | Roller Skates, In-Line Skates, Scooters, Accessories - Pads, Helmets, Skateboards |
| Disney Properties - Winnie the Pooh | Brookfield International, Inc | USA and its territories, and Canada | Roller Skates, In-Line Skates, Scooters, Skateboards, Pads, Accessories (bags), Helmets |
| Disney Properties - Mickey Standard Characters | Brookfield International, Inc | USA and its territories, and Canada | Roller Skates, In-Line Skates, Scooters, Skateboards, Pads, Accessories (bags), Helmets |
| Warner Brothers - Looney Tunes | Brookfield International, Inc | USA and its territories | Skateboards, Snowboards, Ice & Roller & In-Line Skates, Protective Accessories, Fingerboards, Scooterboards |
| Warner Brothers - Scooby Doo | Brookfield International, Inc | USA and its territories | Skateboards, Snowboards, Ice & Roller & In-Line Skates, Protective Accessories, Fingerboards, Scooterboards |
| | | | |
| Mattel Hot Wheels Slumber | Seneca Sports, Inc | USA and its territories, and Canada | Slumber Bags, Dome Tents, Structured Tents, Dean Bag Chair |
| Mattel - Barbie Aquatic | Seneca Sports, Inc | USA and its territories | 20" Beach Ball, 24" Beach Ball, Swim Rings, Inflatable Pools, Inflatable Chair Lounger, Other Inflatables |
| Fisher Price | Seneca Sports, Inc | USA and its territories, and Canada | Power Wheels, Non-Electric Accessories |
| Harley Davidson | Seneca Sports, Inc | USA and Canada | Skateboards, Snowboards, Accessories, Protective Gear |

Page 1 of 1

Exhibit C
Page 2 of 10

**Seneca Sports Inc.**
**Patents**

| TITLE | Country | Ref # | Type | Filed | Serial # | Issued | Patent # | Status | SOURCE |
|---|---|---|---|---|---|---|---|---|---|
| REAR ENTRY IN-LINE SKATE | CANADA | 0428400401 | CEQ | 11/9/1993 | 1006925 | 12/8/1994 | 75282 | ABANDONED | L02104 |
| PACKAGE FOR BALL, PUMP, AND CONES (AS AMENDED) | CANADA | 0428500020CA3 | CEQ | 05/15/1992 | 1505928 | | | ABANDONED | L02104 |
| SAFETY LAWN DART | CANADA | 0428500020CA1 | CEQ | 09/25/1992 | 2070140 | | | ABANDONED | L02103 |
| IN-LINE WHEELED SKATE AND TOE STOP | CANADA | 0428800CA1 | DCA | 6/23/1994 | 2126993 | | | ABANDONED | L02104 |
| BALL TOSS AND CATCH TOY | CANADA | 0428800023CA1 | DCA | 4/13/1993 | 2133743 | | | ABANDONED | L02104 |
| WHEELED SKATE | CHINA | 0428800022CA1 | CEQ | 9/21/1993 | 2163388 | | | ABANDONED | L02105 |
| BALL TOSS AND CATCH TOY | CHINA | 0428800TCH1 | CEQ | 04/14/1993 | 93104333.6 | | | ABANDONED | L02104 |
| IN-LINE WHEELED SKATE AND TOE STOP | FRANCE | 0428800TFR1 | DCA | 09/16/1994 | 9410620.0 | | | ABANDONED | L02104 |
| IN-LINE WHEELED SKATE AND TOE STOP | GERMANY | 0428800TDE1 | DCA | 6/10/1994 | 9461003.4.4 | 3/25/1998 | 682320 | ABANDONED | L02104 |
| IN-LINE WHEELED SKATE AND TOE STOP | GERMANY | 0428800TDE1 | DCA | 6/10/1994 | 9461003.4.4 | 3/25/1998 | 684092163 | ABANDONED | L02104 |
| SAFETY LAWN DART | GERMANY | 0428800DE1 | CEQ | 09/25/1992 | P42262241 | | | ABANDONED | L02103 |
| IN-LINE WHEELED SKATE BOOT TONGUE | IRELAND | 0428800IE1 | CEQ | 4/21/1996 | D11268 | 1/13/1997 | D11242 | ABANDONED | L02105 |
| PACKAGE FOR BALL, PUMP, AND CONES (AS AMENDED) | IRELAND | 0428500IE1 | CEQ | 11/10/1990 | D14091 | 10/21/1992 | D1241 | ABANDONED | L02105 |
| WHEELED SKATE | IRELAND | 0428800IE1 | CEQ | 04/12/1996 | D10090 | 1/13/1997 | D1241 | ABANDONED | L02105 |
| BALL TOSS AND CATCH TOY | IRELAND | 0428800GE1 | CEQ | 9/10/1996 | 980828 | | | ABANDONED | L02103 |
| IN-LINE WHEELED SKATE AND TOE STOP | TAIWAN | 0428800TW1 | CEQ | 01/08/1993 | 83209979 | 8/11/1995 | 103466 | ABANDONED | L02105 |
| SAFETY LAWN DART | TAIWAN | 0428800TW1 | CEQ | 09/24/1993 | 84203385 | 9/7/1996 | 106701 | ABANDONED | L02105 |
| SAFETY LAWN DART | TAIWAN | 0428800TW1 | CEQ | 10/15/1991 | 81206092 | 12/9/1992 | UM-76514 | ABANDONED | L02106 |
| DEFLATED BALL AND INFLATION PUMP PACKAGE | TAIWAN | 0428800TW1 | CEQ | 3/22/1992 | 81302005 | | | ABANDONED | L02105 |
| SAFETY LAWN DART | TAIWAN | 0428800TH1 | CEQ | 11/22/1991 | 14691 | | | ABANDONED | L02104 |
| IN-LINE WHEELED SKATE BOOT TONGUE | THAILAND | 0428800TW1 | CEQ | 4/21/1992 | 15729 | | | ABANDONED | L02104 |
| REAR ENTRY IN-LINE SKATE | THAILAND | 04 2800TGB1 | DCA | 05/16/1994 | B4610334.4 | 3/25/1998 | 682330 | ABANDONED | L02103 |
| IN-LINE WHEELED SKATE CHASSIS | UNITED KINGDOM | 0428400GB1 | CEQ | 5/10/1993 | 2035096 | 4/21/1994 | 2035069 | ABANDONED | L02105 |
| IN-LINE WHEELED SKATE BOOT TONGUE | UNITED KINGDOM | 0428800063.1 | CEQ | 11/09/1995 | 2055897 | 8/14/1999 | 2055897 | ABANDONED | L02105 |
| SAFETY LAWN DART | UNITED KINGDOM | 0428800TGB1 | CEQ | 1/16/1995 | 2055898 | 8/14/1996 | 2066898 | ABANDONED | L02105 |
| WHEELED SKATE | UNITED KINGDOM | 0428800GB1 | CEQ | 09/28/1992 | 82204329 | | | ABANDONED | L02105 |
| CATCHING GAME WITH REMOVABLE HITTING COVER | UNITED KINGDOM | 04288009258.1 | CEQ | 9/12/1996 | 98190954.4 | 04/19/1996 | 2289867 | ABANDONED | L02105 |
| BALL TOSS AND CATCH TOY | UNITED STATES | 0428802B800 | NEW | 3/16/1993 | 07/851,801 | 11/24/1992 | 5166584 | ABANDONED | L02104 |
| TRAINING WHEEL FOR IN-LINE SKATES | UNITED STATES | 0428812700 | NEW | 04/17/1992 | 07/870,067 | 12/29/1992 | 5174550 | ABANDONED | L02105 |
| WHEELED SKATES | UNITED STATES | 0428811000 | NEW | 7/28/1992 | 07/877,421 | 2/2/1993 | 5183276 | ABANDONED | L02106 |
| IN-LINE WHEELED SKATE WITH TOE STOP | UNITED STATES | 0428803700 | NEW | 07/21/1992 | 07/922,805 | | | ABANDONED | L02103 |
| WHEELED SKATE | UNITED STATES | 0428805000 | CEP | 8/20/1995 | 08/484,939 | | | ABANDONED | L02104 |
| WHEELED SKATE BOOT CLOSURE ASSEMBLY | UNITED STATES | 0428800200 | NEW | 7/6/1995 | 08/875,105 | | | ABANDONED | L02106 |
| SKATEBRAKE | UNITED STATES | 0428812700 | NEW | 1/17/1997 | 07/763,828 | | | ABANDONED | L02106 |
| DEFLATED BALL AND INFLATION PUMP PACKAGE | UNITED STATES | 0428812000 | R62 | 3/6/1996 | 08/034,188 | | | ABANDONED | L02104 |
| SNOW SHOE WITH SELF-CENTERING BINDING | UNITED STATES | 0428820001 | NEW | 7/22/1993 | 290/010,860 | | | ABANDONED | L02105 |
| N/A | UNITED STATES | 0428805800 | NEW | 1/20/1998 | 60/073,129 | | | ABANDONED | L02105 |
| N/A | UNITED STATES | 0428807000 | NEW | N/A | | | | ABANDONED | L02105 |
| N/A | UNITED STATES | 0428804001 | NEW | N/A | | | | ABANDONED | L02105 |
| N/A | UNITED STATES | 0428806001 | NEW | N/A | | | | ABANDONED | L02105 |
| N/A | UNITED STATES | 0428807001 | NEW | N/A | | | | ABANDONED | L02105 |
| N/A | UNITED STATES | 0428804001 | NEW | N/A | | | | ABANDONED | L02105 |
| N/A | UNITED STATES | 0428809001 | NEW | N/A | | | | ABANDONED | L02105 |
| N/A | UNITED STATES | 0428810001 | NEW | N/A | | | | ABANDONED | L02106 |
| N/A | UNITED STATES | 0428811001 | NEW | N/A | | | | ABANDONED | L02105 |
| N/A | UNITED STATES | 0428815700 | NEW | 7/6/1995 | US94007618 | | | ABANDONED | L02106 |
| MULTI-TERRAIN IN-LINE SKATE CHASSIS | UNITED STATES | 0428816701 | NEW | 9/14/1999 | 040585.618 | | | ALLOWED | L02104 |
| PROTECTIVE ATHLETIC PADS FOR JOINT SURFACES | UNITED STATES | 0428814000 | NEW | | | | | CLOSED | L02108 |
| N/A | UNITED STATES | 0428815001 | NEW | | | | | CLOSED | L02106 |
| N/A | UNITED STATES | 0428817001 | NEW | | | | | CLOSED | L02106 |
| N/A | UNITED STATES | 0428812001 | NEW | | | | | CLOSED | L02108 |
| N/A | UNITED STATES | 0428813001 | NEW | | | | | CLOSED | L02106 |
| N/A | UNITED STATES | 0428823001 | NEW | | | | | CLOSED | L02108 |
| LASER SKATEBOARD DECORATION INVENTION | UNITED STATES | 0428824000 | NEW | | | | | CLOSED | L02108 |
| COLLAPSIBLE SAFETY CONE | UNITED STATES | 0428813001 | NEW | | | | | CLOSED | L02106 |
| BUMPER BAG | UNITED STATES | 0428816001 | NEW | | | | | CLOSED | L02108 |
| SOFT SKATERS CAP | UNITED STATES | 0428818001 | NEW | | | | | CLOSED | L02108 |

Exhibit C
Page 3 of 10

Seneca Sports Inc.
Patents

| TITLE | Country | Ref # | Type | Filed | Serial # | Issued | Patent # | Status | SOURCE |
|---|---|---|---|---|---|---|---|---|---|
| KNEE PAD AND ELBOW PAD (DESIGN) | CHINA | 04288/019CN1 | CEQ | 02/28/1992 | 92300042.7 | 2/28/1993 | 92300042.7 | EXPIRED | L02103 |
| DEFLATED BALL AND INFLATION PUMP PACKAGE | CHINA | 04288/020CN1 | CEQ | 3/26/1992 | 92201065.3 | 7/24/1993 | 92301065.3 | EXPIRED | L02104 |
| SAFETY LAWN DART | FRANCE | 04288/009FR1 | CEQ | 09/21/1992 | 9011223 | 11/04/1994 | 9011223 | EXPIRED | L02103 |
| PACKAGE FOR BALL, PUMP, AND CONES (AS AMENDED) | GERMANY | 04288/000DE2 | CON | 04/13/1992 | M9200235.4 | 04/13/1992 | M9200235.4 | EXPIRED | L02103 |
| PACKAGE FOR BALL, PUMP, AND CONES (AS AMENDED) | GERMANY | 04288/000DE3 | CON | 04/28/1992 | M9202398.9 | 04/28/1992 | M9202398.9 | EXPIRED | L02103 |
| SAFETY LAWN DART | IRELAND | 04288/009IE1 | CEQ | 09/25/1992 | 922908 | 04/17/1996 | 68769 | EXPIRED | L02103 |
| SAFETY LAWN DART | UNITED STATES | 04288/000IM1 | NEW | 9/27/1991 | D07/07,055 | 5/12/1992 | 6110082 | EXPIRED | L02103 |
| PACKAGE FOR BALL, PUMP, AND CONES (AS AMENDED) | BENELUX | 04288/000BX1 | CEQ | 05/19/1991 | 66502 | | 66502 | ISSUED | L02103 |
| KNEE PAD AND ELBOW PAD (DESIGN) | BENELUX | 04288/019BX2 | CON | 02/23/1992 | | 12/21/1992 | 21683 | ISSUED | L02103 |
| KNEE PAD AND ELBOW PAD (DESIGN) | BENELUX | 04288/019BX1 | CEQ | 3/23/1982 | 67005-01 | | 22404-02 | ISSUED | L02103 |
| KNEE PAD AND ELBOW PAD (DESIGN) | CANADA | 04288/000CA1 | CEQ | 02/24/1992 | 1609927 | 7/28/1992 | 71151 | ISSUED | L02103 |
| PACKAGE FOR BALL, PUMP, AND CONES (AS AMENDED) | CANADA | 04288/000CA2 | CON | 05/18/1982 | 1609927 | 01/26/1993 | 72747 | ISSUED | L02103 |
| PACKAGE FOR BALL, PUMP, AND CONES (AS AMENDED) | CANADA | 04288/000CA4 | CEQ | 05/09/1996 | 1992-1082 | 2/14/1997 | 79884 | ISSUED | L02103 |
| IN-LINE WHEELED SKATE AND TOE STOP | EUROPEAN PATENT CONVENT | 04288/00TEP1 | CEQ | 06/16/1994 | 94610034.4 | 3/26/1996 | 682230 | ISSUED | L02105 |
| PACKAGE FOR BALL, PUMP, AND CONES (AS AMENDED) | FRANCE | 04288/000FR3 | CON | 05/17/1991 | 913068 | 05/17/1991 | 913068 | ISSUED | L02103 |
| PACKAGE FOR BALL, PUMP, AND CONES (AS AMENDED) | FRANCE | 04288/000FR2 | CON | 04/13/1992 | 922316 | 04/13/1992 | 922316 | ISSUED | L02103 |
| KNEE PAD AND ELBOW PAD (DESIGN) | FRANCE | 04288/000FR3 | CON | 04/30/1992 | 922776 | 04/30/1992 | 922776 | ISSUED | L02103 |
| PACKAGE FOR BALL, PUMP, AND CONES (AS AMENDED) | GERMANY | 04288/000DE1 | CON | 09/21/1990 | M9103702.8 | 09/21/1991 | M9103702.8 | ISSUED | L02103 |
| PACKAGE FOR BALL, PUMP, AND CONES (AS AMENDED) | IRELAND | 04288/000IE1 | CEQ | 03/14/1992 | M9202522.8 | 8/17/1992 | M9202522.6 | ISSUED | L02103 |
| KNEE PAD AND ELBOW PAD (DESIGN) | IRELAND | 04288/000IE3 | CON | 11/18/1991 | D13202 | 08/19/1993 | D9551 | ISSUED | L02103 |
| PACKAGE FOR BALL, PUMP, AND CONES (AS AMENDED) | IRELAND | 04288/000IE3 | CON | 11/18/1991 | D10692 | 08/19/1993 | D9556 | ISSUED | L02103 |
| KNEE PAD AND ELBOW PAD (DESIGN) | ITALY | 04288/00IIT1 | CEQ | 06/17/1991 | MB10000369 | 05/06/1996 | 62205 | ISSUED | L02103 |
| KNEE PAD AND ELBOW PAD (DESIGN) | SPAIN | 04288/000ES1 | CEQ | 09/17/1991 | 124039 | 02/07/1992 | 124039 | ISSUED | L02103 |
| KNEE PAD AND ELBOW PAD (DESIGN) | TAIWAN | 04288/00ITW1 | CEQ | | 81301497 | 8/11/1992 | 33750 | ISSUED | L02104 |
| DEFLATED BALL, PUMP AND CONES (AS AMENDED) | UNITED KINGDOM | 04288/004GB1 | CEQ | 11/19/1990 | 2014761 | 11/19/1990 | 2014761 | ISSUED | L02104 |
| KNEE PAD AND ELBOW PAD (DESIGN) | UNITED KINGDOM | 04288/00IGB1 | CEQ | 10/29/1991 | 2020773 | 7/8/1992 | 2020773 | ISSUED | L02105 |
| PACKAGE FOR BALL, PUMP, AND CONES (AS AMENDED) | UNITED KINGDOM | 04288/010GB1 | CON | 8/20/1991 | 2021363 | 10/14/1992 | 2021363 | ISSUED | L02104 |
| PACKAGE FOR BALL, PUMP, AND CONES (AS AMENDED) | UNITED KINGDOM | 04288/000GB1 | CON | 11/19/1991 | 2022545 | 11/17/1992 | 2022545 | ISSUED | L02104 |
| KNEE PAD AND ELBOW PAD (DESIGN) | UNITED KINGDOM | 04288/033GB1 | CON | 11/19/1991 | 2022936 | 07/21/1992 | 2022936 | ISSUED | L02103 |
| MULTI-TERRAIN IN-LINE SKATE CHASSIS | UNITED KINGDOM | 04288/035GB1 | CEQ | 04/17/1992 | 2036497 | 16/4/1994 | 2026497 | ISSUED | L02104 |
| IN-LINE WHEELED SKATE WITH TOE STOP | UNITED STATES | 04288/026001 | NEW | 8/3/1993 | 08/102,476 | 5/2/1995 | 5411277 | ISSUED | L02105 |
| IN-LINE WHEELED SKATE | UNITED STATES | 04288/026001 | NEW | 04/17/1992 | 08/723,978 | 12/9/1995 | 5477216 | ISSUED | L02105 |
| PACKAGE FOR INFLATED FOOTBALL WITH VALVE AND INFLATION PUMP | UNITED STATES | 04288/078001 | NEW | 12/13/1994 | 08/354,009 | 7/16/1998 | 5656026 | ISSUED | L02105 |
| PACKAGE FOR BALL, PUMP AND CONES (AS AMENDED) | UNITED STATES | 04288/039001 | NEW | 6/11/1996 | 08/096,265 | 1/16/2000 | 6053082 | ISSUED | L02106 |
| PACKAGE FOR BALL, PUMP, AND CONES (AS AMENDED) | UNITED STATES | 04288/020001 | NEW | 11/19/1990 | 07/615,648 | 09/15/1992 | D339,377 | ISSUED | L02104 |
| IN-LINE WHEELED SKATE BOOT TONGUE | UNITED STATES | 04288/000001 | NEW | 11/18/1991 | 07/783,720 | 12/01/1992 | D331,369 | ISSUED | L02104 |
| TOE STOP FOR IN-LINE SKATE | UNITED STATES | 04288/087001 | NEW | 11/18/1996 | 29/049,717 | 09/21/1993 | D334,886 | ISSUED | L02104 |
| BALL TOSS AND CATCH TOY | UNITED STATES | 04288/037001 | NEW | 04/17/1992 | 07/763,627 | 11/24/1993 | D339,060 | ISSUED | L02103 |
| SKATE BOOT CHASSIS | UNITED STATES | 04288/000 WO 1 | NEW | 8/3/1993 | US93/07490 | 11/24/1995 | D341,165 | ISSUED | L02105 |
| SKATE BOOT | WIPO | 04288/023 WO 1 | PCT | 04/13/1993 | US93/03046 | | D341,667 | ISSUED | L02104 |
| DEFLATED BALL, PUMP AND PUMP | WIPO | 04288/077CA1 | CEQ | 02/02/1999 | US98/00/252 | 1/25/1994 | D343,669 | NAT PHASE | L02104 |
| IN-LINE WHEELED SKATE WITH ADJUSTABLE BOOT TONGUE | CANADA | 04288/077CA1 | DCA | 5/6/1998 | 1995-1081 | | D344,010 | PENDING | L02108 |
| IN-LINE WHEELED SKATE WITH ADJUSTABLE BOOT | CANADA | 04288/018001 | CEQ | 7/27/1993 | | 09/20/1994 | D350,893 | PENDING | L02104 |
| PROTECTIVE ATHLETIC PADS FOR JOINT SURFACES | CANADA | 04?4M/167CA1 | DCA | 8/24/2000 | N/A | 12/13/1994 | D353,377 | PENDING | L02108 |
| IN-LINE WHEELED SKATE CHASSIS | CHINA | 04288/167CH1 | CEQ | 9/13/2000 | N/A | 4/11/1997 | D376,697 | PENDING | L02108 |
| MULTI-TERRAIN IN-LINE SKATE CHASSIS | THAILAND | 04288/088TH1 | CEQ | 8/11/1994 | 23312 | | D379,080 | PENDING | L02108 |
| IN-LINE WHEELED SKATE PLATE FOR CHASSIS | THAILAND | 04288/035TH1 | CEQ | 08/01/1994 | 23313 | | D379,657 | PENDING | L02108 |
| IN-LINE WHEELED SKATE WITH TOE STOP | THAILAND | 04288/138TH1 | CEQ | 02/28/1996 | 42481 | | D384,437 | PENDING | L02105 |
| IN-LINE WHEELED SKATE WITH ADJUSTABLE BOOT | UNITED KINGDOM | 04288/138GB1 | DCA | 02/02/1998 | 18776.5 | | | PENDING | L02108 |
| ADJUSTING THE SIZE OF A LINED SPORT BOOT | UNITED STATES | 04288/152001 | NEW | 2/4/1999 | 09/017,420 | | | PENDING | L02108 |

Page 2 of 3

10/10/2005 16:55 FAX 16179510811    LynchBrewerHoffman&Fink    @019

Exhibit C
Page 4 of 10

Seneca Sports Inc.
Patents

| TITLE | Country | Ref # | Type | Filed | Serial # | Issued | Patent # | Status | SOURCE |
|---|---|---|---|---|---|---|---|---|---|
| SKATE WITH IMPROVED CHASSIS SUSPENSION | UNITED STATES | 04288/12/3001 | NEW | 3/10/1999 | 09/265,664 | | | | L02108 |
| SKATE BOOT CHASSIS | UNITED KINGDOM | 04288/04/GB1 | CEQ | | | | | PENDING | L02106 |
| N/A | UNITED STATES | 04288/03/3001 | NEW | | | | | PROPOSED | L02104 |
| N/A | UNITED STATES | 04288/04/3001 | NEW | | | | | PROPOSED | L02104 |
| ADJUSTING THE SIZE OF A LINED SPORT BOOT | UNITED KINGDOM | 04288/16/2/GB1 | CEQ | 2/1/2000 | 2338.2 | | | PUBLISHED | L02106 |

**Seneca Sports, Inc**

**Trademarks**

| Trademark Name | Mark ID | Countries |
|---|---|---|
| ADRENALINE | 228 | United States |
| ADRENALINE | 278 | United States |
| AIR FOAM | 229 | United States |
| ALPHA and Device | 209 | Germany |
| ALPHA and Device | 274 | United States |
| ALPHA and Device | 275 | United Kingdom |
| ALPHA and Device | 324 | Ireland |
| ALPHA and Device | 328 | Poland |
| AVENGER | 276 | United States |
| BEACH BUM | 290 | United States |
| COMFORT TOUCH | 212 | United States |
| EQUALIZER | 220 | United States |
| FORSTER | 231 | United States |
| FORSTER | 287 | United States |
| FORSTER | 299 | Taiwan |
| FUTURA | 184 | United States |
| GENESIS | 171 | China (PRC) |
| GENESIS | 172 | UK |
| GENESIS | 223 | Taiwan |
| GENESIS | 232 | Germany |
| GENESIS | 273 | US |
| HUTCH | 238 | Canada |
| HUTCH | 239 | US |
| HUTCH | 281 | Taiwan |
| HUTCH | 283 | China (PRC) |
| HUTCH | 293 | US |
| HUTCH | 294 | US |
| HUTCH and device | 240 | Canada |
| HUTCH and device | 241 | US |
| HUTCH and device | 243 | US |
| HUTCH and device | 282 | China (PRC) |
| HUTCH MAKES YOU FEEL LIKE A PRO and device | 244 | France |
| HUTCH MAKES YOU FEEL LIKE A PRO and device | 245 | Germany |
| HUTCH MAKES YOU FEEL LIKE A PRO and device | 246 | UK |
| HUTCH MAKES YOU FEEL LIKE A PRO and device | 247 | UK |
| HUTCH MAKES YOU FEEL LIKE A PRO and device | 249 | UK |

**Seneca Sports, Inc**

**Trademarks**

| Trademark Name | Mark ID | Countries |
|---|---|---|
| I.T.S.C. | 185 | US |
| I.T.S.C. Integrated Toe Stop Chassis | 204 | UK |
| IDEAL | 250 | US |
| IDEAL | 286 | US |
| INFERNO | 206 | Germany |
| INFERNO | 207 | UK |
| INFERNO | 221 | US |
| INFERNO | 296 | Ireland |
| INFERNO | 297 | Poland |
| INTEGRATED TOE STOP CHASSIS | 186 | US |
| INTEGRATED TOE STOP CHASSIS | 187 | China (PRC) |
| INTEGRATED TOE STOP CHASSIS | 188 | Japan |
| JUNIOR JAM | 251 | US |
| MAKES YOU FEEL LIKE A PRO | 253 | US |
| MARAUDER | 205 | US |
| MAXIMUM INTENSITY | 279 | US |
| MONSTER JAM | 254 | US |
| RIM SHAKER | 259 | US |
| S DEVICE (Seneca) | 201 | Germany |
| S DEVICE (Seneca) | 202 | UK |
| S DEVICE (Seneca) | 203 | Ireland |
| S DEVICE (Seneca) | 226 | Turkey |
| SENECA | 313 | Thailand |
| SENECA | 322 | Pakistan |
| SENECA | 149 | US |
| SENECA | 160 | Austria |
| SENECA | 161 | Brazil |
| SENECA | 162 | Brazil |
| SENECA | 163 | Benelux |
| SENECA | 164 | Canada |
| SENECA | 165 | Switzerland |
| SENECA | 166 | Czech Republic |
| SENECA | 167 | France |
| SENECA | 168 | Italy |
| SENECA | 169 | New Zealand |
| SENECA | 170 | Poland |

Page 2 of 5

Exhibit C
Page 7 of 10

**Seneca Sports, Inc**
**Trademarks**

| Trademark Name | Mark ID | Countries |
| --- | --- | --- |
| SENECA | 195 | Spain |
| SENECA | 222 | Japan |
| SENECA | 224 | The Slovak Republic |
| SENECA | 236 | Mexico |
| SENECA | 292 | Romania |
| SENECA | 298 | Croatia |
| SENECA (stylized) | 150 | Chile |
| SENECA (stylized) | 151 | China (PRC) |
| SENECA (stylized) | 152 | Czech Republic |
| SENECA (stylized) | 153 | Germany |
| SENECA (stylized) | 154 | Spain |
| SENECA (stylized) | 156 | Hong Kong |
| SENECA (stylized) | 157 | Ireland |
| SENECA (stylized) | 158 | The Netherlands Antilles |
| SENECA (stylized) | 159 | Thailand |
| SENECA (stylized) | 218 | UK |
| SENECA (stylized) | 248 | China (PRC) |
| SENECA (stylized) | 302 | Malaysia |
| SENECA and device | 314 | Singapore |
| SENECA and device | 136 | Australia |
| SENECA and device | 137 | Benelux |
| SENECA and device | 138 | China (PRC) |
| SENECA and device | 139 | Canada |
| SENECA and device | 140 | Germany |
| SENECA and device | 141 | France |
| SENECA and device | 142 | Hong Kong |
| SENECA and device | 143 | Indonesia |
| SENECA and device | 144 | Italy |
| SENECA and device | 225 | Turkey |
| SENECA and device | 262 | Japan |
| SENECA and device | 264 | Philippines |
| SENECA and device | 317 | South Korea |
| SENECA and device | 266 | Thailand |
| SENECA.JUEGO DEL SABER | 197 | Spain |
| SENECA.JUEGO DEL SABER with device | 196 | Spain |
| SENECA SPORTS and device | 323 | European Union |

Exhibit C
Page 8 of 10

Seneca Sports, Inc
Trademarks

| Trademark Name | Mark ID | Countries |
|---|---|---|
| SENECA SPORTS and device | 198 | Germany |
| SENECA SPORTS and device | 199 | UK |
| SENECA SPORTS and device | 200 | Ireland |
| SENECA SPORTS and device | 288 | US |
| STICKY MITTS | 133 | US |
| STREET BEAT | 219 | US |
| STREET CRUISERS | 173 | US |
| STREET CRUISERS | 174 | Benelux |
| STREET CRUISERS | 175 | Canada |
| STREET CRUISERS | 176 | China (PRC) |
| STREET CRUISERS | 177 | Germany |
| STREET CRUISERS | 178 | Denmark |
| STREET CRUISERS | 179 | France |
| STREET CRUISERS | 180 | UK |
| STREET CRUISERS | 181 | Ireland |
| STREET CRUISERS | 182 | Mexico |
| STREET CRUISERS | 183 | Taiwan |
| STREET FORCE | 189 | US |
| STREET FORCE | 190 | Canada |
| STREET FORCE | 191 | China (PRC) |
| STREET FORCE | 192 | UK |
| STREET FORCE | 193 | Mexico |
| STREET FORCE | 194 | Taiwan |
| STREET GLIDERS | 217 | US |
| STREET STYLE | 145 | US |
| STREET STYLE | 146 | Germany |
| STREET STYLE | 147 | UK |
| STREET STYLE | 148 | Ireland |
| STREET TALK | 269 | US |
| STREETLITES | 127 | US |
| STREETLITES | 128 | Canada |
| STREETLITES | 129 | Germany |
| STREETLITES | 130 | France |
| STREETLITES | 131 | UK |
| STRIKE FORCE | 270 | US |
| TALON | | US |

Exhibit C
Page 9 of 10

| Seneca Sports, Inc | | |
| Trademarks | | |
| Trademark Name | Mark ID | Countries |
| TALONS | 312 | China (PRC) |
| TALONS | 242 | Canada |
| THE HAMMER | 132 | US |
| TRITON | 237 | US |
| WAHOO | 210 | Mexico |
| WAHOO | 211 | Mexico |
| WAHOO | 213 | UK |
| WOODSIES | 214 | Canada |
| ZERO | 271 | US |
| ZERO | 208 | Germany |
| ZERO | 325 | Poland |

Page 5 of 5

**Seneca Sports, Inc.**
**Intellectual Property**
**Brookfield Asset Purchase**

| Reg No./App. No. | Country | Name | Filed | Registered |
|---|---|---|---|---|
| **Patents** | | | | |
| 2362407 | Canada | Adjustable In-Line Skate Mechanism | | 02/13/03 |
| PCT/US00/03610 | International | Adjustable In-Line Skate Mechanism – Santarsiero based on 60/119,860 dated 2/12/99 | | |
| 2000-558243 | Japan | Adjustable In-Line Skate Mechanism | | |
| 385478 | US | Skate Boot Toe Vent - Santarsiero | | 06/23/98 |
| 2161672 | US | Miscellaneous Design (Chuck Logo) | | 04/21/98 |
| 5400484 | US | Adjustable Roller Skate - H. Gay | 01/31/96 | 03/28/95 |
| 5622609 | US | Adjustable Skate Brake - H. Gay | | 06/04/96 |
| 5645913 | US | Skate with Animated Figures or Features - Santarsiero | | 12/08/98 |
| 5954348 | US | Roller Skate Wheel Control Mechanism - Santarsiero et al | | 12/08/98 |
| 6128794 | US | Combined Sleeping Bag & Activity Surface | | 09/21/99 |
| 6185068 | US | Combined Sleeping Bag & Activity Surface | | |
| 09/090,750 | US | Adjustable In-Line Skate Mechanism | | |
| 60/119,860 | US | Adjustable In-Line Skate Mechanism - Santarsiero | | |
| D353,429 | US | Child's In-Line Skate (Design) H. Gay et al | | 12/13/94 |
| D373,609 | US | Roller Skate (Design) Santarsiero et al | | 09/10/96 |
| D394,890 | US | In-Line Skate - Santarsiero | | 06/02/98 |
| | | | | |
| **Trademarks** | | | | |
| 1660188 | Argentina | Brookfield | 02/07/95 | |
| 1160058 | Austria | Brookfield | 10/14/94 | 12/28/94 |
| 559731 | Benelux | Brookfield | 10/17/94 | 10/17/94 |
| 447112 | Chile | Brookfield | 10/17/94 | 06/23/95 |
| 174697 | Colombia | Brookfield | 10/31/94 | 06/25/96 |
| VR6804 | Denmark | Brookfield | | 03/15/96 |
| 94/540,559 | France | Brookfield | 10/17/94 | 12/09/94 |
| 2812066 | Germany | Brookfield | 10/17/94 | 10/17/94 |
| 3972416 | Germany | Zero | 10/11/94 | 10/11/94 |
| 1,687,886 | Great Britain | Brookfield | 10/10/94 | 04/28/94 |
| UK00128005 | Great Britain | Zero | | |
| 154202 | Ireland | Brookfield | 10/17/94 | 04/25/94 |
| 007/700,089 | Italy | PF Flyers | 02/24/04 | 12/30/88 |
| 466476 | Mexico | Brookfield | 12/16/94 | 12/16/94 |
| 171328 | Norway | Brookfield | 10/07/94 | 02/26/96 |
| 74749 | Panama | Brookfield | | 03/10/95 |
| Unknown | Poland | Zero | | |
| 424047 | Switzerland | Brookfield | 10/20/94 | 10/20/94 |
| 1,839,705 | US | Brookfield | 02/02/93 | 06/28/94 |
| 1,842,444 | US | Easy Rollers | 04/25/94 | 08/29/95 |
| 1,915,174 | US | Brookfield | 10/27/95 | 06/03/97 |
| 2,067,917 | US | Cool Flo System | | |
| 2,184,303 | US | Genesis | | |
| 2,297,501 | US | Zero | | |
| 15089/94 | Venezuela | Brookfield | 11/11/94 | |

Exhibit D
Page 1 of 1

SENECA SPORTS, INC. / GMAC USURY INTEREST DAMAGE CALCULATION

| Begin Date | End Date | Monthly Charges | Average Balance | Days | Monthly Rate | Cumulative Days | Cumulative Charges | Cumulative Average Balance | CumulativeRate to Date | Interest Charge At 20% | Monthly Damages (over charge) | Cumulative Monthly Damages (over charge) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/22/01 | 10/31/01 | $ 68,675.69 | $ 1,422,788.18 | 10 | 173.77% | 10 | $ 88,675.69 | $ 1,422,788.18 | 173.77% | $ 7,904.37 | $ 80,771.32 | $ 60,771.32 |
| 11/01/01 | 11/30/001 | $ 29,289.42 | $ 1,157,676.89 | 30 | 30.36% | 40 | $ 87,065.11 | $ 1,223,954.21 | 72.04% | $ 19,294.61 | $ 9,994.81 | $ 70,766.13 |
| 12/01/01 | 12/31/01 | $ 21,810.63 | $ 1,040,816.62 | 31 | 24.34% | 71 | $ 119,775.74 | $ 1,143,993.60 | 53.09% | $ 17,925.21 | $ 3,885.42 | $ 74,651.55 |
| 01/01/02 | 01/31/02 | $ 80,193.44 | $ 1,067,277.10 | 31 | 87.26% | 102 | $ 199,969.18 | $ 1,120,677.80 | 62.98% | $ 18,380.88 | $ 61,812.56 | $ 136,464.10 |
| 02/01/02 | 02/28/02 | $ 27,331.83 | $ 1,124,220.01 | 28 | 31.26% | 130 | $ 227,301.01 | $ 1,121,440.74 | 56.13% | $ 17,487.87 | $ 9,843.96 | $ 146,308.07 |
| 03/01/02 | 03/31/02 | $ 11,893.65 | $ 1,132,664.73 | 31 | 12.19% | 161 | $ 239,194.66 | $ 1,123,601.88 | 47.80% | $ 19,507.00 | $ (7,613.35) | $ 138,694.71 |
| 04/01/02 | 04/30/02 | $ 68,590.19 | $ 1,200,537.44 | 30 | 68.58% | 191 | $ 307,784.85 | $ 1,135,688.00 | 51.08% | $ 20,008.98 | $ 48,581.23 | $ 187,275.95 |
| 05/01/02 | 05/31/02 | $ 11,295.28 | $ 1,213,588.48 | 31 | 10.81% | 222 | $ 319,080.13 | $ 1,148,564.27 | 45.13% | $ 20,900.89 | $ (9,605.41) | $ 177,670.54 |
| 06/01/02 | 06/30/02 | $ 10,702.23 | $ 1,224,848.71 | 30 | 10.49% | 252 | $ 329,782.36 | $ 1,155,883.85 | 40.78% | $ 20,414.15 | $ (9,711.92) | $ 167,958.62 |
| 07/01/02 | 07/31/02 | $ 10,231.12 | $ 1,149,594.23 | 31 | 10.34% | 283 | $ 340,013.48 | $ 1,155,194.88 | 37.44% | $ 19,768.57 | $ (9,567.45) | $ 158,391.17 |
| 08/01/02 | 08/31/02 | $ 10,219.46 | $ 1,157,481.88 | 31 | 10.25% | 314 | $ 350,232.94 | $ 1,155,418.69 | 34.75% | $ 19,934.07 | $ (9,714.61) | $ 148,676.57 |
| 09/01/02 | 09/30/02 | $ 10,223.45 | $ 1,194,791.62 | 30 | 10.27% | 344 | $ 360,456.39 | $ 1,158,852.38 | 32.55% | $ 19,913.19 | $ (9,689.74) | $ 138,986.82 |
| 10/01/02 | 10/31/02 | $ 10,558.30 | $ 1,205,533.45 | 31 | 10.17% | 375 | $ 371,014.69 | $ 1,162,718.81 | 30.63% | $ 20,763.69 | $ (10,205.39) | $ 128,781.44 |
| 11/01/02 | 11/30/02 | $ 7,712.56 | $ 1,218,029.38 | 30 | 7.60% | 405 | $ 378,727.25 | $ 1,166,816.63 | 28.85% | $ 20,300.49 | $ (12,587.93) | $ 116,193.51 |
| 12/01/02 | 12/31/02 | $ 11,566.11 | $ 1,225,675.89 | 31 | 10.99% | 436 | $ 390,293.36 | $ 1,171,022.90 | 27.52% | $ 21,114.03 | $ (9,547.92) | $ 106,645.59 |
| 01/01/03 | 01/31/03 | $ 21,287.24 | $ 1,170,443.21 | 31 | 21.12% | 467 | $ 411,580.60 | $ 1,170,984.42 | 27.10% | $ 20,157.63 | $ 1,129.61 | $ 107,775.20 |
| | | $ 411,580.60 | | | | | | | | $ 303,805.40 | | $ 107,775.20 |

Exhibit E
Page 1 of 1

SENECA SPORTS, INC. / GMAC INTEREST CALCULATIONS

| Begin Date | End Date | Monthly Charges | Average Balance | Days | Monthly Rate | Accumulated Days | Accumulated Charges | Accumulated Average Balance | Cumulative Rate to Date |
|---|---|---|---|---|---|---|---|---|---|
| 10/22/01 | 10/31/01 | $ 68,676.69 | $ 1,422,786.18 | 10 | 173.77% | 10 | $ 68,676.69 | $ 1,422,786.18 | 173.77% |
| 11/01/01 | 11/30/01 | $ 29,289.42 | $ 1,157,676.89 | 30 | 30.38% | 40 | $ 97,965.11 | $ 1,223,954.21 | 72.04% |
| 12/01/01 | 12/31/01 | $ 21,810.63 | $ 1,040,818.62 | 31 | 24.34% | 71 | $ 119,775.74 | $ 1,143,993.60 | 53.09% |
| 01/01/02 | 01/31/02 | $ 80,193.44 | $ 1,067,277.10 | 31 | 87.26% | 102 | $ 199,969.18 | $ 1,120,677.80 | 62.98% |
| 02/01/02 | 02/28/02 | $ 27,331.83 | $ 1,124,220.01 | 28 | 31.26% | 130 | $ 227,301.01 | $ 1,121,440.74 | 56.13% |
| 03/01/02 | 03/31/02 | $ 11,893.65 | $ 1,132,664.73 | 31 | 12.19% | 161 | $ 239,194.66 | $ 1,123,601.88 | 47.60% |
| 04/01/02 | 04/30/02 | $ 68,590.19 | $ 1,200,537.44 | 30 | 68.56% | 191 | $ 307,784.85 | $ 1,135,686.00 | 51.08% |
| 05/01/02 | 05/31/02 | $ 11,295.28 | $ 1,213,588.48 | 31 | 10.81% | 222 | $ 319,080.13 | $ 1,146,564.27 | 45.13% |
| 06/01/02 | 06/30/02 | $ 10,702.23 | $ 1,224,848.71 | 30 | 10.49% | 252 | $ 329,782.36 | $ 1,155,883.86 | 40.76% |
| 07/01/02 | 07/31/02 | $ 10,231.12 | $ 1,149,594.23 | 31 | 10.34% | 283 | $ 340,013.48 | $ 1,155,194.88 | 37.44% |
| 08/01/02 | 08/31/02 | $ 10,219.46 | $ 1,157,461.88 | 31 | 10.25% | 314 | $ 350,232.94 | $ 1,155,418.69 | 34.75% |
| 09/01/02 | 09/30/02 | $ 10,223.45 | $ 1,194,791.62 | 30 | 10.27% | 344 | $ 360,456.39 | $ 1,158,852.38 | 32.55% |
| 10/01/02 | 10/31/02 | $ 10,558.30 | $ 1,205,633.45 | 31 | 10.17% | 375 | $ 371,014.69 | $ 1,162,719.61 | 30.63% |
| 11/01/02 | 11/30/02 | $ 7,712.56 | $ 1,218,029.38 | 30 | 7.60% | 405 | $ 378,727.25 | $ 1,166,816.63 | 28.85% |
| 12/01/02 | 12/31/02 | $ 11,566.11 | $ 1,225,975.69 | 31 | 10.86% | 436 | $ 390,293.36 | $ 1,171,022.90 | 27.52% |
| 01/01/03 | 01/31/03 | $ 21,287.24 | $ 1,170,443.21 | 31 | 21.12% | 467 | $ 411,580.60 | $ 1,170,984.42 | 27.10% |

Exhibit F
Page 1 of 6

**Seneca Sports, Inc.**
**Lending Activity with GMAC (10/01 to 12/03)**

| Date | Beginning Balance | Code 140 Advances | Code 001 Interest | Code 185 Bank Charges/LOC Fees | Misc/LOC Fees | Code 195 Month End Charge on Sales | Code 175 Receipt | Code 191 Transfer | Write Downs | Code 198 Collection | Ending Balance | Daily Balance | Days at Balance | Avg Monthly Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/01/01 | $7,376,864.31 | | | | | | | | | (22,364.59) | $7,354,519.72 | $7,354,519.72 | 1 | |
| 10/02/01 | $7,354,519.72 | | | | | | | | | (270,240.69) | $7,084,370.03 | $7,084,370.03 | 1 | |
| 10/03/01 | $7,084,370.03 | | | | | | | | | (3,516.41) | $7,080,854.62 | $7,080,854.62 | 1 | |
| 10/04/01 | $7,080,854.62 | 2,400.00 | | | | | | | | (72,305.98) | $7,008,948.64 | $7,008,948.64 | 1 | |
| 10/05/01 | $7,008,948.64 | | | | | | | | | (7,293.27) | $7,001,655.37 | $7,001,655.37 | 4 | |
| 10/09/01 | $7,001,412.37 | | | | | | | | | (7,293.27) | $7,993,912.27 | $7,993,912.27 | 1 | |
| 10/10/01 | $7,024,460.98 | | | | | | | | | (39,361.31) | $7,024,460.98 | $7,024,460.98 | 1 | |
| 10/11/01 | $7,009,922.01 | | | | | | | | | (14,538.56) | $7,009,922.01 | $7,009,922.01 | 1 | |
| 10/12/01 | $7,009,240.12 | | | | | | | | | (681.89) | $7,009,240.12 | $7,009,240.12 | 3 | |
| 10/15/01 | $7,003,557.62 | | | | | | | | | (5,682.50) | $7,003,557.62 | $7,003,557.62 | 1 | |
| 10/16/01 | $6,990,405.62 | | | | 558.07 | | | | | (13,152.00) | $6,990,405.62 | $6,990,405.62 | 1 | |
| 10/17/01 | $6,904,766.02 | | | | | | | | | (85,726.91) | $6,904,766.02 | $6,904,766.02 | 3 | |
| 10/18/01 | $6,904,766.02 | | | | | | | | | (1,907.43) | $6,904,766.02 | $6,904,766.02 | 1 | |
| 10/17/01 | $2,804,766.02 | | | | | | | | | | $2,804,766.02 | $2,804,766.02 | | |
| 10/17/01 | $1,807,742.27 | | | | | | | | | (85,804.04) | $1,807,742.27 | $1,807,742.27 | | |
| 10/18/01 | $1,714,938.48 | | | | | | | | | | $1,714,938.48 | $1,714,938.48 | 1 | |
| 10/18/01 | $1,464,938.48 | | | | | | | | (250,000.00) | | $1,464,938.48 | $1,464,938.48 | | |
| 10/19/01 | $1,464,434.19 | | | | | | | | | (504.29) | $1,464,434.19 | $1,464,434.19 | 1 | |
| 10/22/01 | $1,457,250.86 | | | | | | | | | (7,183.54) | $1,457,250.86 | $1,457,250.86 | 3 | |
| 10/22/01 | $1,457,803.00 | | | | | | | | | | $1,457,803.00 | $1,457,803.00 | | |
| 10/23/01 | $1,427,511.19 | | | | | | | | | (30,282.75) | $1,427,511.19 | $1,427,511.19 | 1 | |
| 10/24/01 | $1,425,958.57 | | | | | | | | | (1,552.62) | $1,425,958.57 | $1,425,958.57 | 1 | |
| 10/25/01 | $1,426,000.77 | | | | | | | | | | $1,426,000.77 | $1,426,000.77 | | |
| 10/25/01 | $1,408,763.08 | | | | | | (16,652.00) | | | (242.69) | $1,408,763.08 | $1,408,763.08 | 1 | |
| 10/29/01 | $1,422,674.59 | | | | | | | | | | $1,422,674.59 | $1,422,674.59 | 1 | |
| 10/29/01 | $1,422,498.43 | | | | | | | | | (176.16) | $1,422,498.43 | $1,422,498.43 | | |
| 10/29/01 | $1,408,364.24 | | | | | | | | | (14,132.19) | $1,408,364.24 | $1,408,364.24 | 3 | |
| 10/29/01 | $1,448,710.93 | 46,346.69 | | | | | | | | | $1,448,710.93 | $1,448,710.93 | | |
| 10/30/01 | $1,484,354.14 | | | | 25,102.00 | | | | | | $1,484,354.14 | $1,484,354.14 | 1 | |
| 10/30/01 | $1,473,912.52 | 16,115.00 | | | | | | | | (5,573.79) | $1,473,912.52 | $1,473,912.52 | 1 | |
| 10/31/01 | $1,430,805.37 | | | | | | | | | | $1,430,805.37 | $1,430,805.37 | 1 | |
| 10/31/01 | $1,412,830.37 | | | | 22.62 | | | | | | $1,412,830.37 | $1,412,830.37 | 1 | |
| 10/31/01 | $1,412,862.99 | | | 50.00 | | | | | | | $1,412,862.99 | $1,412,862.99 | | |
| 10/31/01 | $1,412,912.99 | | | 50.00 | | | | | | | $1,412,912.99 | $1,412,912.99 | | |
| 10/31/01 | $1,413,207.96 | | | 274.97 | 260.00 | | | | | | $1,413,207.96 | $1,413,207.96 | | |
| 10/31/01 | $1,413,214.04 | | | | | 6.08 | | | | | $1,413,214.04 | $1,413,214.04 | | |
| 10/31/01 | $1,414,876.37 | 45,000.00 | | | | 1,662.33 | | | | | $1,414,876.37 | $1,414,876.37 | 1 | |
| 10/31/01 | $1,409,907.14 | | | | | | | | | (4,969.23) | $1,409,907.14 | $1,409,907.14 | | |
| 10/31/01 | $1,438,970.25 | 27,063.11 | | | | | | | | | $1,438,970.25 | $1,438,970.25 | 1 | |
| 11/01/01 | $1,436,970.25 | | | | | | | | | | $1,436,970.25 | $1,436,970.25 | 1 | |
| 11/02/01 | $1,428,689.71 | | | | 10,169.45 | | | | | (8,280.54) | $1,428,689.71 | $1,428,689.71 | 1 | |
| 11/05/01 | $1,438,858.14 | | | | | | | | | | $1,438,858.14 | $1,438,858.14 | 3 | |
| 11/05/01 | $1,438,040.74 | | | | | | | | | (807.40) | $1,438,040.74 | $1,438,040.74 | 1 | |
| 11/05/01 | $1,438,290.74 | | | | 250.00 | | | | | | $1,438,290.74 | $1,438,290.74 | | |
| 11/06/01 | $1,429,909.72 | | | | | | | | | (8,381.02) | $1,429,909.72 | $1,429,909.72 | 1 | |
| 11/06/01 | $1,474,909.72 | 45,000.00 | | | | | | | | | $1,474,909.72 | $1,474,909.72 | | |
| 11/06/01 | $1,480,008.32 | | | | | | (44,916.40) | | | | $1,480,008.32 | $1,480,008.32 | | |
| 11/06/01 | $1,424,164.20 | | | | | | (5,923.12) | | | | $1,424,164.20 | $1,424,164.20 | 1 | |
| 11/07/01 | $1,297,639.27 | | | 178.00 | | | | | | (126,524.93) | $1,297,639.27 | $1,297,639.27 | 1 | |
| 11/07/01 | $1,297,817.27 | | | 167.50 | | | | | | | $1,297,817.27 | $1,297,817.27 | | |
| 11/07/01 | $1,297,974.77 | | | | | | | | | | $1,297,974.77 | $1,297,974.77 | | |
| 11/07/01 | $1,291,485.76 | | | | | | | | | (6,489.01) | $1,291,485.76 | $1,291,485.76 | 1 | |
| 11/07/01 | $1,291,485.76 | | | | | | | | | (5,826.91) | $1,285,658.92 | $1,285,658.92 | 1 | |
| | | | | | | | | | | | | | | $ 4,335,571.71 |

Seneca Sports, Inc.
Lending Activity with GMAC [10/01 to 12/31]

| Date | Beginning Balance | Code 140 Advances | Code 001 Interest | Code 166 Bank Charges/LOC Fees | Code 160 Misc/L/E Fees | Code 165 Month End Change on Sales | Code 176 Receipt | Code 191 Transfer | Write Downs | Code 166 Collection | Ending Balance | Daily Balance | Days at Balance | Avg Monthly Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/09/01 | $1,266,506.92 | | | | 627.00 | | | | | | 1,266,285.92 | | | $1,167,676.49 |
| 11/09/01 | $1,266,286.92 | | | | 216.00 | | | | | | 1,266,501.92 | | | |
| 11/10/01 | $1,266,501.92 | | | | | | | | | (48,116.69) | 1,241,385.23 | 1,241,385.23 | 4 | |
| 11/14/01 | $1,241,385.23 | | | | 6,633.72 | | (16,475.00) | | | | 1,226,844.96 | | 1 | |
| 11/14/01 | $1,226,844.96 | | | | | | | | | (125,134.97) | 1,104,709.98 | 1,104,709.98 | 1 | |
| 11/15/01 | $1,104,709.98 | | | | | | | | | (34,653.75) | 1,070,040.28 | 1,070,040.28 | 1 | |
| 11/16/01 | $1,070,040.28 | | | | | | | | | (16.47) | 1,048,578.55 | 1,048,578.55 | 3 | |
| 11/19/01 | $1,048,578.55 | | | | | | | | | (21,462.21) | 1,048,242.16 | 1,048,242.16 | 1 | |
| 11/19/01 | $1,048,242.16 | | | | | | | | | (338.39) | 1,048,242.16 | 1,048,242.16 | 5 | |
| 11/20/01 | $1,048,070.09 | 10,763.00 | | | | | | | | (20,035.07) | 1,038,070.09 | 1,028,207.09 | 1 | |
| 11/26/01 | $1,039,953.85 | | | | | | | | | (34.74) | 1,039,953.85 | 1,035,953.85 | 1 | |
| 11/27/01 | $1,035,777.99 | | | | | | | | | (3,107.86) | 1,035,777.99 | 1,035,777.99 | 1 | |
| 11/28/01 | $1,032,769.92 | | | | 1,392.53 | | | | | (2,070.07) | 1,032,769.92 | 1,032,769.92 | 1 | |
| 11/29/01 | $1,034,191.45 | | | | 120.00 | | | | | | 1,034,191.45 | 1,034,191.45 | 2 | |
| 11/29/01 | $1,034,311.45 | | | | | 2.91 | (200.00) | | | (20,618.92) | 1,034,311.45 | 1,034,311.45 | 1 | |
| 11/30/01 | $1,012,592.53 | | | | | | (700.00) | | | | 1,013,492.53 | 1,013,492.53 | 1 | |
| 11/30/01 | $1,011,892.53 | | | | | | (700.00) | | | | 1,011,892.53 | | | |
| 11/30/01 | $1,011,897.53 | | | | | | | | | | 1,011,897.53 | | | |
| 11/30/01 | $1,012,202.51 | | | | | 635.44 | | | | | 1,012,202.51 | | | |
| 11/30/01 | $1,012,214.44 | | | | | | | | | | 1,012,214.44 | | | |
| 11/30/01 | $1,012,257.56 | | | | 11.93 | | | | | | 1,012,257.56 | | | |
| 11/30/01 | $1,013,062.79 | | | | | | | | | | 1,013,062.79 | | | |
| 11/30/01 | $1,000,980.72 | | 8,065.98 | | | | | | | (12,082.07) | 1,000,960.72 | | | |
| 12/01/01 | $1,009,058.70 | | | | | | | | | | 1,009,058.70 | 1,009,058.70 | 2 | |
| 12/03/01 | $1,009,058.70 | 7,140.00 | | | | | (38.29) | | | | 1,016,160.70 | 1,009,058.70 | | |
| 12/03/01 | $1,015,187.41 | | | | | | (171.00) | | | | 1,016,160.70 | | | |
| 12/03/01 | $1,016,187.70 | | | | | | | | | | 1,016,187.70 | | | |
| 12/04/01 | $1,015,987.41 | | | | 206.00 | | | | | | 1,015,987.41 | 1,015,987.41 | 1 | |
| 12/04/01 | $1,015,251.41 | | | | | | (2,500.00) | | | | 1,015,251.41 | | | |
| 12/05/01 | $1,012,751.41 | | | | 424.15 | | (2,500.00) | | | | 1,012,751.41 | | | |
| 12/05/01 | $1,012,251.41 | | | | 62.50 | | (2,500.00) | | | | 1,012,251.41 | | | |
| 12/06/01 | $1,010,251.41 | | | | | | (77,000.00) | | | | 1,007,451.41 | | | |
| 12/07/01 | $930,451.41 | 35,042.00 | | | | | | | | | 930,451.41 | 930,451.41 | 3 | |
| 12/07/01 | $930,451.41 | | | | | | | | | (5,119.22) | 925,332.19 | 925,332.19 | 2 | |
| 12/07/01 | $925,332.19 | | | | | | | | | (3,500.00) | 921,782.19 | | | |
| 12/10/01 | $1,048,021.69 | | | | | | | | | 129,238.89 | 1,048,021.69 | 1,048,021.69 | 1 | |
| 12/11/01 | $1,042,858.21 | | | | | | | | | (5,163.78) | 1,042,858.21 | 1,042,858.21 | 1 | |
| 12/11/01 | $1,042,858.21 | | | | 1,855.89 | | | | | | 1,042,858.21 | | | |
| 12/12/01 | $1,032,176.96 | | | | | | | | | (10,884.26) | 1,032,176.96 | 1,032,176.96 | 3 | |
| 12/17/01 | $1,032,301.10 | | | | 124.15 | | | | | | 1,033,301.10 | 1,033,383.70 | 2 | |
| 12/17/01 | $1,033,383.70 | | | | | | | | | | 1,033,383.70 | 1,033,383.70 | 2 | |
| 12/18/01 | $1,097,425.70 | | | | | | | | | (12,202.72) | 1,097,425.70 | 1,097,425.70 | 3 | |
| 12/19/01 | $1,055,222.98 | | | | | | | | | (9,074.82) | 1,055,222.98 | 1,055,222.98 | 1 | |
| 12/20/01 | $1,048,144.15 | | | | 6,030.00 | | | | | | 1,048,144.15 | 1,046,144.15 | 3 | |
| 12/20/01 | $1,046,144.15 | | | | | | | | | | 1,046,144.15 | | | |
| 12/31/01 | $1,047,882.87 | | | | 4,684.08 | | | | | (117.07) | 1,047,882.87 | 1,047,882.87 | 2 | |
| 12/31/01 | $1,045,670.27 | | | | | | | | | (2,212.40) | 1,045,670.27 | 1,045,670.27 | 1 | |
| 12/31/01 | $1,045,670.27 | | | | | | | | | | 1,055,385.25 | 1,055,385.25 | | |

Exhibit F
Page 3 of 6

Seneca Sports, Inc.
Lending Activity with GMAC (10/01 to 12/03)

| Date | Beginning Balance | Code 140 Advances | Code 001 Interest | Code 185 Bank Charges/LOC Fees | Code 160 Misc/AE Fees | Code 185 Month End Charge on Sales | Code 175 Receipt | Code 191 Transfer | Write Downs | Code 198 Collection | Ending Balance | Daily Balance | Days at Balance | Avg Monthly Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/21/01 | $1,055,385.28 | | | | | | | | | (4,012.49) | | $1,051,372.76 | 5 | |
| 12/26/01 | $1,051,372.76 | | | | | | | | | (484.08) | | $1,050,008.88 | 1 | |
| 12/27/01 | $1,050,008.88 | | | | 2,181.54 | | | | | | | $1,053,090.22 | 1 | |
| 12/27/01 | $1,053,090.22 | | | | | | | | | (361.62) | | $1,052,538.60 | | |
| 12/31/01 | $1,052,538.60 | | | | | | | | | (1,315.02) | | $1,051,223.58 | 3 | |
| 12/28/01 | $1,051,223.58 | | | 15.00 | | | | | | | | $1,051,238.58 | | |
| 12/31/01 | $1,051,238.58 | | | 274.97 | | | | | | | | $1,051,513.55 | | |
| 12/31/01 | $1,051,513.55 | | | | | | | | | (1,669.80) | | $1,049,669.07 | | |
| 12/31/01 | $1,049,669.07 | | 7,305.81 | | | | | | | 46.92 | | $1,057,223.38 | 1 | $1,040,816.62 |
| 01/02/02 | $1,057,223.38 | | | | | | | | | | | $1,057,223.38 | 1 | |
| 01/03/02 | $1,057,223.38 | | | | | | | | | (910.00) | | $1,056,313.38 | 5 | |
| 01/07/02 | $1,056,313.38 | | | | | | | | | (15,936.11) | | $1,040,375.27 | 1 | |
| 01/08/02 | $1,040,375.27 | | | | 37,777.79 | | | | | | | $1,040,341.14 | 2 | |
| 01/11/02 | $1,040,341.14 | | | | | | | | | (34.13) | | $1,078,118.93 | 1 | |
| 01/15/02 | $1,078,118.93 | | | | | | | | | | | $1,080,662.33 | 1 | |
| 01/16/02 | $1,080,662.33 | | | | | | | | | 2,543.40 | | $1,080,662.33 | 1 | |
| 01/16/02 | $1,080,662.33 | 175.00 | | | | | | | | | | $1,084,062.33 | | |
| 01/17/02 | $1,084,062.33 | | | | | | | | | | | $1,084,237.33 | 1 | |
| 01/23/02 | $1,084,237.33 | | | | | | (2,121.60) | | | | | $1,084,109.33 | | |
| 01/24/02 | $1,084,109.33 | | | | 1,922.69 | | (4,387.65) | | | | | $1,077,742.20 | 1 | $1,077,742.20 |
| 01/24/02 | $1,077,742.20 | | | | | | | | | (183.31) | | $1,079,664.89 | 6 | |
| 01/24/02 | $1,079,664.89 | | | | 2,045.50 | | | | | | | $1,081,527.08 | | |
| 01/25/02 | $1,081,527.08 | | | | | | | | | | | $1,081,527.08 | 1 | 1,072,461.58 |
| 01/25/02 | $1,080,837.34 | | | | | | | | | (689.74) | | $1,080,837.34 | 1 | |
| 01/30/02 | $1,080,837.34 | | | | | | | | | (513.85) | | $1,078,123.69 | 3 | |
| 01/30/02 | $1,078,123.69 | | | | | | | | | (106.26) | | $1,078,017.43 | 2 | |
| 01/31/02 | $1,078,017.43 | | | | | | | | | | | $1,105,614.43 | 1 | |
| 01/31/02 | $1,105,614.43 | | | | | | | | | | | $1,105,614.43 | | |
| 01/31/02 | $1,105,614.43 | | | | | | | | | (32.49) | | $1,105,899.40 | | |
| 02/01/02 | $1,105,899.40 | | | | | | | | | | | $1,105,866.91 | | |
| 02/01/02 | $1,113,432.40 | | | | | | | | | | | $1,113,432.40 | 1 | 1,067,277.10 |
| 02/01/02 | $1,113,432.40 | | | | | | | | | | | $1,113,432.40 | 3 | |
| 02/04/02 | $1,113,432.40 | | | | 12,866.67 | | | | | | | $1,113,432.40 | 1 | |
| 02/05/02 | $1,126,401.07 | 1,896.00 | | | | | | | | | | $1,126,401.07 | 1 | |
| 02/07/02 | $1,128,297.07 | | | | | | | | | | | $1,128,297.07 | 1 | |
| 02/14/02 | $1,128,297.07 | | | | 1,608.50 | | | | | | | $1,124,674.61 | 3 | |
| 02/14/02 | $1,124,674.61 | | | | | | | | | (3,422.46) | | $1,124,674.61 | 1 | |
| 02/14/02 | $1,124,674.61 | | 3.07 | | | | | | | (326.88) | | $1,121,545.73 | 1 | |
| 02/15/02 | $1,121,545.73 | | | | | | | | | | | $1,121,545.73 | 2 | |
| 02/21/02 | $1,123,000.34 | | | | | | | | | (167.19) | | $1,123,000.34 | 1 | |
| 02/22/02 | $1,123,000.34 | | | | | | (769.50) | | | | | $1,122,241.34 | | |
| 02/22/02 | $1,122,241.34 | | | | | | (1,695.50) | | | | | $1,120,544.84 | 8 | |
| 02/22/02 | $1,120,544.84 | | | | | | | | | | | $1,121,655.50 | | |
| 02/22/02 | $1,121,655.50 | | | | 2,130.00 | | | | | | | $1,123,572.16 | 1 | |
| 02/25/02 | $1,123,572.16 | | | 90.00 | | | | | | | | $1,123,572.16 | 3 | |
| 02/26/02 | $1,125,702.76 | | | | | | | | | (33.15) | | $1,125,669.61 | 1 | |
| 02/26/02 | $1,125,577.55 | | | | | | | | | (92.06) | | $1,125,577.55 | 2 | |
| 02/26/02 | $1,125,560.62 | | | 274.99 | | | | | | | | $1,125,560.62 | | |
| 02/28/02 | $1,125,560.62 | | | | | | | | | | | $1,125,660.61 | | |
| 02/28/02 | $1,125,960.61 | | | | | | | | | | | $1,125,960.61 | 1 | |
| 03/01/02 | $1,132,875.99 | | 7,016.36 | | | | | | | | | $1,132,875.99 | 8 | 1,124,220.01 |
| 03/08/02 | $1,132,875.99 | | | | | | | | | | | $1,132,875.99 | 4 | |
| 03/11/02 | $1,130,211.56 | | | | (2,752.48) | | | | | | | $1,130,211.56 | 8 | |
| 03/13/02 | $1,130,211.56 | | | | | | | | | (213.34) | | $1,129,998.22 | 8 | |
| 03/21/02 | $1,129,998.22 | | | | 2,762.43 | | | | | | | $1,132,760.65 | | |

Page 3 of 6

Exhibit F
Page 4 of 6

**Seneca Sports, Inc.**
**Lending Activity with GMAC [16Oct to 12031]**

| Date | Code 140 Beginning Balance | Advances | Code 001 Interest | Code 185 Bank Charges/LOC Fees | Code 180 Misc/JE Fees | Code 195 March End Charge on Sales | Code 175 Receipt | Code 191 Transfer | Write Downs | Code 196 Collection | Ending Balance | Daily Balance | Days at Balance | Avg Monthly Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/22/2002 | $1,132,760.66 | | | | | | | | | | 1,134,476.59 | $ 1,134,475.99 | 3 | |
| 03/25/2002 | $1,134,475.99 | | | | 1,725.34 | | | | | | 1,138,449.90 | $ 1,138,449.90 | 3 | |
| 03/31/2002 | $1,138,449.90 | | 7,623.43 | 274.67 | 1,703.91 | | | | | | 1,138,724.57 | $ 1,138,724.57 | 1 | |
| 03/31/2002 | $1,138,724.57 | | | | | | | | | | 1,144,654.30 | $ 1,144,654.30 | | $ 1,132,664.72 |
| 04/01/2002 | $1,144,654.30 | | | | | | | | | | 1,144,654.30 | $ 1,144,654.30 | 1 | |
| 04/09/2002 | $1,144,654.30 | | | 56,908.22 | | | | | | | 1,201,462.52 | $ 1,201,462.52 | 3 | |
| 04/09/2002 | $1,201,462.52 | | | | 722.90 | | | | | | 1,202,185.42 | $ 1,201,462.52 | 3 | |
| 04/17/2002 | $1,201,125.84 | | | | | | | | | | 1,201,125.84 | $ 1,201,125.84 | 11 | |
| 04/22/2002 | $1,201,125.84 | | | | 605.00 | | | | | | 1,201,730.84 | $ 1,201,730.84 | 6 | |
| 04/25/2002 | $1,201,730.84 | | | | 2,202.02 | | | | | | 1,203,932.86 | $ 1,201,730.84 | 3 | |
| 04/25/2002 | $1,203,932.86 | | | | | | | | | 0.56 | 1,203,933.42 | $ 1,203,933.42 | 1 | |
| 04/26/2002 | $1,203,933.42 | | | | | | | | | (111.87) | 1,203,821.75 | $ 1,203,821.75 | 4 | |
| 04/30/2002 | $1,203,821.75 | | | 137.79 | | | | | | | 1,203,959.54 | $ 1,203,959.54 | 1 | |
| 04/30/2002 | $1,203,959.54 | | 8,014.26 | | | | | | | | 1,211,973.80 | $ 1,211,973.80 | | $ 1,200,637.44 |
| 05/01/2002 | $1,211,973.80 | | | | 637.67 | | | | | | 1,212,511.47 | $ 1,212,511.47 | 22 | |
| 05/03/2002 | $1,212,511.47 | | | | 2,254.00 | | | | | | 1,214,765.47 | $ 1,214,765.47 | 6 | |
| 05/09/2002 | $1,214,765.47 | | | 133.05 | | | | | | | 1,214,898.63 | $ 1,214,898.63 | 3 | |
| 05/31/2002 | $1,214,898.63 | | | | (1,059.68) | | | | | (108.82) | 1,214,789.70 | $ 1,214,789.70 | | |
| 05/31/2002 | $1,214,789.70 | | | | | | | | | 6,033.03 | 1,220,822.73 | $ 1,220,822.73 | | |
| 05/31/2002 | $1,220,822.73 | | 6,370.55 | | | | | | | | 1,226,193.29 | $ 1,226,193.29 | 1 | $ 1,213,598.46 |
| 06/01/2002 | $1,226,193.29 | | | | | | | | | | 1,226,193.29 | $ 1,226,193.29 | 10 | |
| 06/11/2002 | $1,226,193.29 | | | | | | | | | (50.65) | 1,226,142.64 | $ 1,226,142.64 | 3 | |
| 06/14/2002 | $1,226,142.64 | | | | | | | | | (83.53) | 1,226,059.11 | $ 1,226,059.11 | 10 | |
| 06/14/2002 | $1,226,059.11 | | | | 2,354.21 | | | | | | 1,230,407.12 | $ 1,230,407.12 | 10 | |
| 06/24/2002 | $1,230,407.12 | | | | 170.00 | | | | | | 1,230,577.12 | $ 1,230,577.12 | 4 | |
| 06/26/2002 | $1,230,577.12 | | | | | | | | | | 1,230,781.96 | $ 1,230,781.96 | 2 | |
| 06/28/2002 | $1,230,781.96 | | | | | | | | | (82,163.18) | 1,181,003.94 | $ 1,181,003.94 | 2 | |
| 06/30/2002 | $1,181,003.94 | | 6,178.02 | | | | | | | 33,180.00 | 1,189,781.96 | $ 1,189,781.96 | | $ 1,224,646.71 |
| 07/01/02 | $1,189,781.96 | | | | | | | | | | 1,189,781.96 | $ 1,189,781.96 | 4 | |
| 07/05/02 | $1,189,781.96 | | | | | | | | | (47,048.88) | 1,142,733.88 | $ 1,142,733.88 | 21 | |
| 07/26/02 | $1,142,733.88 | | | | 2,300.06 | | | | | | 1,145,033.94 | $ 1,145,033.94 | 5 | |
| 07/31/02 | $1,145,033.94 | | | | | | | | | 2,747.28 | 1,147,781.22 | $ 1,147,781.22 | | |
| 07/31/02 | $1,147,781.22 | | 7,931.09 | | | | | | | | 1,155,712.26 | $ 1,155,712.26 | 1 | $ 1,149,534.22 |
| 08/01/02 | $1,155,712.26 | | | | 2,330.60 | | | | | (1,046.90) | 1,154,665.36 | $ 1,154,665.36 | 21 | |
| 08/02/02 | $1,154,665.36 | | | | | | | | | | 1,156,996.98 | $ 1,156,895.98 | 7 | |
| 08/30/02 | $1,156,570.98 | | | | | | | | | (325.00) | 1,156,570.98 | $ 1,156,570.98 | 7 | |
| 08/30/02 | $1,156,570.98 | | | | | | | | | 29,661.16 | 1,186,232.14 | $ 1,186,232.14 | 1 | |
| 09/03/02 | $1,186,232.14 | | 7,988.86 | | | | | | | | 1,194,221.00 | $ 1,194,221.00 | 1 | $ 1,157,491.88 |
| 09/01/02 | $1,194,221.00 | | | | | | | | | | 1,194,221.00 | $ 1,194,221.00 | 26 | |
| 09/27/02 | $1,194,221.00 | | | | 2,246.86 | | | | | | 1,196,467.86 | $ 1,196,467.86 | 3 | |
| 09/30/02 | $1,196,467.86 | | | | | | | | | 154.61 | 1,196,622.47 | $ 1,196,622.47 | | |
| 09/30/02 | $1,196,622.47 | | 7,976.58 | | | | | | | | 1,204,599.05 | $ 1,204,599.05 | 1 | $ 1,194,761.62 |
| 10/01/02 | $1,204,599.05 | | | | 2,243.41 | | | | | | 1,204,599.05 | $ 1,204,599.05 | 20 | |
| 10/21/02 | $1,204,599.05 | | | | | | | | | | 1,206,842.47 | $ 1,206,842.47 | 4 | |
| 10/31/02 | $1,206,779.98 | | | | | | | | | (66.49) | 1,206,779.98 | $ 1,206,779.98 | 5 | |
| 10/30/02 | $1,203,843.75 | | | | | | | | | (3,190.24) | 1,203,649.76 | $ 1,203,649.75 | 4 | |
| 10/31/02 | $1,203,649.76 | | 8,314.89 | | | | | | | 5,913.65 | 1,217,772.29 | $ 1,217,772.29 | 1 | $ 1,209,653.46 |

Page 4 of 6

Exhibit F
Page 5 of 6

Seneca Sports, Inc.
Lending Activity with GMAC (10/01 to 12/03)

| Date | Beginning Balance | Code 140 Advances | Code 001 Interest | Code 185 Bank Charges/LOC Fees | Code 160 Misc/JE Fees | Code 195 Month End Charge on Sales | Code 175 Receipt | Code 191 Transfer | Write Downs | Code 196 Collection | Ending Balance | Daily Balance | Days at Balance | Avg Monthly Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/07/02 | $1,217,772.25 | | | | | | | | | | 1,217,772.25 | $1,217,772.25 | 26 | $1,218,029.33 |
| 11/08/02 | $1,217,772.25 | | 7,712.56 | | | | | | | | 1,225,484.85 | $1,225,484.85 | 1 | |
| 12/01/02 | $1,225,484.85 | | | | 3,650.00 | | | | | | 1,225,484.85 | $1,225,484.85 | 29 | $1,225,976.69 |
| 12/09/02 | $1,225,484.85 | | | | | | | | | | 1,229,134.85 | $1,229,134.85 | 1 | |
| 12/31/02 | $1,229,134.85 | | 7,915.11 | | | | | | | | 1,237,050.06 | $1,237,050.06 | 1 | |
| 01/01/03 | $1,237,050.06 | | | | | | | | | | 1,237,050.06 | $1,237,050.06 | 5 | $1,243,278.58 |
| 01/06/03 | $1,237,050.06 | | | | 11,341.50 | | | | | | 1,248,392.46 | $1,248,392.46 | 2 | |
| 01/08/03 | $1,248,392.46 | | | | 437.10 | | | | | | 1,248,829.56 | $1,248,392.46 | | |
| 01/08/03 | $1,248,392.46 | | | | (437.10) | | | | | | 1,248,392.46 | $1,248,392.46 | 1 | |
| 01/09/03 | $1,248,392.46 | | | | 2,374.83 | | | | | | 1,145,550.96 | $1,145,550.96 | 19 | |
| 01/28/03 | $1,145,550.96 | | | | | | | | | | 1,147,425.79 | $1,147,425.79 | 3 | |
| 01/31/03 | $1,147,425.79 | | 7,570.91 | | | | | | | | 1,155,061.70 | $1,155,061.70 | 1 | |
| 02/01/03 | $1,155,061.70 | | | | | | | | | | 1,155,061.70 | $1,155,061.70 | 27 | $1,175,443.22 |
| 02/28/03 | $1,155,061.70 | | 6,737.86 | | | | | | | | 1,161,799.56 | $1,161,799.56 | 1 | |
| 03/01/03 | $1,161,799.56 | | | | | | | | | | 1,161,799.56 | $1,161,799.56 | 10 | $1,155,002.34 |
| 03/10/03 | $1,161,799.56 | | | | (100.61) | | | | | | 1,161,698.95 | $1,161,698.95 | 3 | |
| 03/13/03 | $1,161,698.95 | | | | (825.00) | | | | | | 1,161,268.95 | $1,161,268.95 | 1 | |
| 03/14/03 | $1,161,268.95 | | | | (8,130.24) | | | | | | 1,166,183.71 | $1,166,183.71 | | |
| 03/14/03 | $1,166,183.71 | | | | (6,103.22) | | | | | | 1,150,049.99 | $1,150,049.99 | | |
| 03/31/03 | $1,160,049.99 | | 7,500.91 | | 11,559.99 | | | | | | 1,691,609.86 | $1,691,609.86 | 17 | |
| 03/31/03 | $1,161,608.95 | | | | | | | | | | 1,066,110.86 | $1,066,110.86 | 1 | |
| 04/01/03 | $1,066,113.95 | | | | 6,049.25 | | (76.35) | | | | 1,176,167.11 | $1,176,167.11 | 7 | |
| 04/08/03 | $1,176,167.11 | | | | | | | | | | 1,176,086.76 | $1,176,086.76 | 21 | |
| 04/29/03 | $1,176,086.76 | | | | 2,251.47 | | | | | | 1,177,338.23 | $1,177,338.23 | 1 | |
| 04/30/03 | $1,177,338.23 | | 7,358.49 | | | | | | | | 1,184,696.72 | $1,184,696.72 | 1 | $1,175,439.72 |
| 05/01/03 | $1,184,696.72 | | | | 5,488.96 | | | | | | 1,184,696.72 | $1,184,696.72 | 5 | |
| 05/06/03 | $1,184,696.72 | | | | 2,207.04 | | | | | | 1,190,185.68 | $1,190,185.68 | 23 | |
| 05/29/03 | $1,190,185.68 | | | | | | | | | | 1,192,373.22 | $1,192,373.22 | 2 | |
| 05/31/03 | $1,192,373.22 | | 7,695.05 | | | | | | | | 1,200,068.27 | $1,200,068.27 | 1 | $1,189,746.44 |
| 06/01/03 | $1,200,068.27 | | | | 2,305.51 | | | | | | 1,200,068.27 | $1,200,068.27 | 29 | |
| 06/30/03 | $1,200,068.27 | | | | | | | | | | 1,202,375.78 | $1,202,375.78 | | |
| 06/30/03 | $1,202,375.78 | | 7,472.18 | | | | | | | | 1,209,840.95 | $1,209,840.95 | 1 | |
| 07/01/03 | $1,209,848.96 | | | | 2,254.45 | | | | | | 1,209,848.96 | $1,209,848.96 | 27 | $1,200,394.31 |
| 07/28/03 | $1,209,848.96 | | | | | | | | | | 1,212,104.41 | $1,212,104.41 | 3 | |
| 07/31/03 | $1,212,104.41 | | 7,667.24 | | | | | | | | 1,219,077.35 | $1,219,077.35 | 1 | |
| 08/01/03 | $1,219,071.35 | | | | 2,348.45 | | | | | | 1,216,671.25 | $1,216,671.25 | 28 | $1,210,384.86 |
| 08/29/03 | $1,219,071.25 | | | | | | | | | | 1,222,018.70 | $1,222,018.70 | 2 | |
| 08/31/03 | $1,222,018.70 | | 7,659.14 | | | | | | | | 1,223,648.84 | $1,223,648.84 | 1 | |
| 09/01/03 | $1,229,648.84 | | | | (14,425.00) | | | | | | 1,229,648.84 | $1,229,648.84 | 28 | $1,220,144.62 |
| 09/29/03 | $1,209,648.84 | | | | 2,367.66 | | | | | | 1,215,243.84 | $1,215,243.84 | 2 | |
| 09/30/03 | $1,215,243.84 | | | | | | | | | | 1,217,611.50 | $1,217,611.50 | 1 | |
| 09/30/03 | $1,217,611.50 | | 7,457.64 | | | (103,341.50) | | | 65.00 | | 1,225,040.14 | $1,225,040.14 | 1 | $1,225,015.55 |

Page 5 of 6

Exhibit F
Page 6 of 6

**Seneca Sports, Inc.**
**Lending Activity with GMAC (10/01 to 12/03)**

| Date | Beginning Balance | Code 140 Advances | Code 001 Interest | Code 185 Bank Charges/LOC Fees | Code 190 Med/JE Fees | Code 195 Month End Charge on Sales | Code 175 Receipt | Code 191 Transfer | Write Downs | Code 196 Collection | Ending Balance | Daily Balance | Days at Balance | Avg Monthly Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/01/03 | $ 1,225,048.14 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | | $ 1,225,048.14 | $ 1,225,048.14 | 1 | |
| 10/02/03 | $ 1,225,048.14 | $ - | $ - | $ - | 14,406.00 | $ - | $ - | $ - | $ - | | $ 1,239,454.14 | $ 1,239,454.14 | 29 | $ 1,239,869.46 |
| 10/03/03 | $ 1,239,454.14 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | | $ 1,239,454.14 | $ 1,239,454.14 | 1 | $ |
| 11/01/03 | $ 1,239,454.14 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | | $ 1,239,454.14 | $ 1,239,454.14 | 23 | $ |
| 11/24/03 | $ 1,239,454.14 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | (61,876.41) | | $ 1,177,576.73 | $ 1,177,576.73 | 1 | $ |
| 11/25/03 | $ 1,177,576.73 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | (209,262.50) | | 968,316.23 | 968,316.23 | 1 | $ |
| 11/26/03 | $ 968,316.23 | $ - | 10,955.76 | $ - | $ - | $ - | $ - | $ - | (968,316.23) | | $ - | 0.00 | 1 | $ |
| 11/26/03 | $ 0.00 | $ - | 10,955.76 | $ - | $ - | $ - | $ - | $ - | $ - | | 10,955.76 | 10,955.76 | 1 | $ |
| 12/01/03 | $ 10,955.76 | $ - | (10,965.76) | $ - | $ - | $ - | $ - | $ - | $ - | | 0.00 | 0.00 | 1 | $ 1,140,738.04 |

Page 6 of 6

Exhibit G
Page 1 of 4

## KEITH D. LOWEY, CPA

## CURRICULUM VITAE

| | |
|---|---|
| POSITION | President, Verdolino & Lowey, P.C.<br>Certified Public Accountant, Massachusetts and Rhode Island |
| EDUCATION | B.S., Accountancy, Bentley College, Waltham, MA (1983) |
| PROFESSIONAL<br>AFFILIATIONS | American Institute of Certified Public Accountants, Member<br>Massachusetts Society of Certified Public Accountants, Member<br>American Bankruptcy Institute<br>Association of Insolvency Accountants<br>Turnaround Management Association<br>Candidate for Certified Insolvency and Reorganization Accountant |
| PROFESSIONAL | Verdolino & Lowey, P.C., President, 1990 to present. Extensive experience in accounting and consulting services; business transactions; business advisory services; business liquidations; business valuations; litigation support; and, bankruptcy matters including: taxation and accounting, valuation and insolvency, search for preference and fraudulent transactions, records reconstruction and expert witness services. Have been employed as accountants for Chapter 7 and 11 Trustees, Examiners, Debtors and Creditors' Committees; Examiner; Liquidating Agents; Estate Representative; SEC Receiver; Assignee; Disbursing Agent; Interim CEO/CFO; and, qualified and testified as expert witness. Over the past 10 years the firm has been employed in over 1,500 Chapter 7 cases and 150 Chapter 11 cases as well as in many liquidations done outside of bankruptcy. Specific companies that we have been employed by to provide liquidation services include NordicTrack, Learningsmith, Toysmart, Buck-a-Book, MotherNature.com, Ground Round, Newport Creamery, ACT, Digital Broadband, Olympus Healthcare Services, Service Sense, Molton Metals Technology, Send.Com, Anton Noll, Ironbridge, Adero, Bess Eaton, DD Barkan (6 Dunkin Donut locations) and Holland Mark.<br><br>Stadium Management Corporation/Foxboro Stadium Associates, L.P. 1986 to 1990. Controller/Chief Financial Officer. Responsible for all financial aspects of the Company and its subsidiaries.<br><br>Arthur Andersen & Co. Senior Auditor 1983 to 1986. Responsible for planning, administering and executing financial statement audits and special projects for medium to large size companies. |

## KEITH D. LOWEY, CPA

### CURRICULUM VITAE
continued

| | |
|---|---|
| **PUBLICATIONS AND SPEECHES** | Co-Author of *Bankruptcy Overview: Issues, Law and Policy, Third Edition (1996)*. |

Co-Author Boston Bar Association Bankruptcy Law Section Newsletter *The Gaps in GAAP, January 2001*.

Speaker United States Trustee seminar, July 1998.

Speaker at the American Bankruptcy Conference in July 2000 on the Strategic Use of Financial Statements in Bankruptcy.

Speaker at the Massachusetts Continuing Legal Education, Inc. seminar *Litigation by the Numbers*, February 2001.

Speaker at the Risk Management Association/Turnaround Management Association Panel Discussion in December 2002 on Forensic Accounting and Fraud.

Speaker at the American Bankruptcy Institute Conference in July 2005 on Significant Tax Issues in Individual Cases.

**PREVIOUS EXPERT TESTIMONY (trial or deposition)**

**Environmental Compliance Corporation, Inc.**
Chapter 11, Case No. 94-40281-HJB
Western District of Massachusetts

Hired by defendant in adversary proceeding to determine the solvency of the debtor; co-authored and submitted report to the Court.

**Bankruptcy of Edward S. Stimpson, III**
Chapter 7, Case No. 95-17407-CJK
Eastern District of Massachusetts

Testified in Court January 1997 regarding estate tax returns and various tax issues.

**Yary v. Zwick**
Superior Court of the State of California for the County of Orange
CA No. 781066

Deposed and testified in Court October 1998 regarding solvency of Hyphen, Inc.

Exhibit 8
Page 3 of 4

<u>KEITH D. LOWEY, CPA</u>

<u>CURRICULUM VITAE</u>
continued

**CyberStorage Systems, Inc. v. Trimm Technologies, Inc.**
U.S. District Court (Massachusetts)
Civil Action No. 97 CV 12369 RGS

Retained as expert to calculate lost profits; prepared report and deposed.

**The KMS Companies, Inc. v. Arthur Ivey, et. al.**
Adversary Proceeding
US Bankruptcy Court (Eastern District of Massachusetts)
Case No. 98-11412-WCH

Retained as expert to respond to allegations regarding the capitalization of various entities, the propriety and accounting treatment of certain transfers and transactions. Testified in Court April 2000.

**Edward Stanger, et.al. v. George Davis, et. al..**
U.S. District Court (Massachusetts)
Civil Action No. 96-11052 DPW

Retained as expert to express an opinion concerning whether or not funds were commingled by the defendants and whether the defendants acted in a reasonable and prudent manner as Trustees and if not to calculate the damages that resulted – prepared report.

**Atlantic Rancher, Inc.**
Adversary Proceeding
US Bankruptcy Court (Eastern District of Massachusetts)
Case No. 99-12942-JNF

Retained as expert to express an opinion concerning the proper classification of various advances made to the Debtor - prepared report and testified in Court.

**Newport Creamery, Inc.**
Adversary Proceeding
US Bankruptcy Court (District of Rhode Island)
Case No. 01-13196

Testified in Court as expert to express an opinion concerning the solvency of the Debtor after a leveraged buy-out transaction.

Exhibit G
Page 4 of 4

### KEITH D. LOWEY, CPA

### CURRICULUM VITAE
continued

**Timothy P. King, attorney in fact for and on behalf of Hilda Ayer
Anderson and the Ayer-Anderson Foundation, Inc.  v.
Jon F. Conant, John Byors, d/b/a West Side Marble, Robert E. Sayre,
and Bertram W. Allen**
Suffolk Superior Court (Commonwealth of Massachusetts)
C.A. No. 03-2012 BLS

Retained as expert to express an opinion on the responsibilities of a
financial fiduciary and analyze the financial activity of the plaintiff to
determine potential claims against each of the defendants. Prepared for
trial - cases settled and/or facts stipulated to.