# EXHIBIT 30

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------x

GMAC COMMERCIAL CREDIT LLC,

Index No. 602338/02

                    Plaintiff,

**VERIFIED ANSWER
AND COUNTERCLAIMS**

-against-

RECEIVED

DAVID L. LANDAY,

JAN 0 2 2003

                    Defendant.

By_____

-------------------------------------------------------------------x

      Defendant David L. Landay ("Landay"), by his attorneys, Todtman, Nachamie, Spizz & Johns, P.C., for his answer to the verified complaint (the "Complaint"), responds as follows:

      1.     Landay denies knowledge or information sufficient to form a belief as to the truth of the allegations set out in paragraph 1 of the Complaint.

      2.     Landay admits the allegations set out in paragraph 2 of the Complaint, except denies that Seneca is a Massachusetts Corporation.

      3.     Landay denies knowledge or information sufficient to form a belief as to the truth of the allegations set out in paragraph 3 of the Complaint.

      4.     Landay denies the allegations set out in paragraph 4 of the Complaint, except admits that the Landay Guaranty provides for personal jurisdiction for certain limited purposes and respectfully refers the Court to the documents referred to therein for the precise terms thereof.

      5.     Landay admits the allegations set out in paragraph 5 of the Complaint.

6.     Landay denies the allegations set out in paragraph 6 of the Complaint and respectfully refers the Court to the document referred to therein for the precise terms thereof.

7.     Landay denies the allegations set out in paragraph 7 of the Complaint and respectfully refers the Court to the document referred to therein for the precise terms thereof.

8.     Landay denies the allegations set out in paragraph 8 of the Complaint and respectfully refers the Court to the document referred to therein for the precise terms thereof.

9.     Landay denies the allegations set out in paragraph 9 of the Complaint and respectfully refers the Court to the document referred to therein for the precise terms thereof.

10.     Landay denies the allegations set out in paragraph 10 of the Complaint and respectfully refers the Court to the document referred to therein for the precise terms thereof.

11.     Landay denies the allegations set out in paragraph 11 of the Complaint and respectfully refers the Court to the document referred to therein for the precise terms thereof.

12.     Landay denies the allegations set out in paragraph 12 of the Complaint and respectfully refers the Court to the document referred to therein for the precise terms thereof.

13.     Landay denies the allegations set out in paragraph 13 of the Complaint, except admits that GMAC and the Borrowers entered into a

Forbearance Agreement and respectfully refers the Court to the document referred to therein for the precise terms thereof.

14.    Landay denies the allegations set out in paragraph 14 of the Complaint, except admits that Seneca and Brookfield entered into the Forbearance Agreement and respectfully refers the Court to that document for the precise terms thereof.

15.    Landay denies the allegations set out in paragraph 15 of the Complaint and respectfully refers the Court to the document referred to therein for the precise terms thereof.

16.    Landay denies knowledge or information sufficient to form a belief as to the truth of the allegations set out in paragraph 16 of the Complaint.

17.    Landay denies knowledge or information sufficient to form a belief as to the truth of the allegations set out in paragraph 17 of the Complaint, except admits that GMAC sent out default notices.

18.    Landay denies the allegations set out in paragraph 18 of the Complaint.

19.    Landay denies the allegations set out in paragraph 19 of the Complaint.

20.    Landay denies knowledge or information sufficient to form a belief as to the truth of the allegations set out in paragraph 20 of the Complaint.

21.    Landay repeats and restates his responses to paragraphs 1 through 20 of the Complaint as his response to paragraph 21 thereof.

22.    Landay denies knowledge or information sufficient to form a belief as to the truth of the allegations set out in paragraph 22 of the Complaint.

23.    Landay denies knowledge or information sufficient to form a belief as to the truth of the allegations set out in paragraph 23 of the Complaint.

24.    Landay denies the allegations set out in paragraph 24 of the Complaint and respectfully refers the Court to the document referred to therein for the precise terms thereof.

25.    Landay denies the allegations set out in paragraph 25 of the Complaint.

26.    Landay denies the allegations set out in paragraph 26 of the Complaint.

27.    Landay repeats and restates his responses to paragraphs 1 through 26 of the Complaint as his response to paragraph 27 thereof.

28.    Landay denies the allegations set out in paragraph 28 of the Complaint.

29.    Landay denies the allegations set out in paragraph 29 of the Complaint.

30.    Landay denies knowledge or information sufficient to form a belief as to the truth of the allegations set out in paragraph 30 of the Complaint.

31.    Landay denies knowledge or information sufficient to form a belief as to the truth of the allegations set out in paragraph 31 of the Complaint.

32.    Landay denies the allegations set out in paragraph 32 of the Complaint and respectfully refers The Court to the document referred to therein for the precise terms thereof.

33.    Landay denies knowledge or information sufficient to form a belief as to the truth of the allegations set out in paragraph 33 of the Complaint, except admits that he has not paid $1,009.056.70 to GMAC sought by GMAC in this action.

34.    Landay denies the allegations set out in paragraph 34 of the Complaint.

35.    Landay denies the allegations set out in paragraph 35 of the Complaint.

### AS AND FOR A FIRST DEFENSE

36.    The Complaint does not state a cause of action for which relief can be granted.

### AS AND FOR A SECOND DEFENSE

37.    To the extent that Landay entered into any contracts with GMAC relating to the borrowings of Seneca Sports, Inc. ("Seneca") and Brookfield International, Inc. ("Brookfield") that would obligate him to pay GMAC, such contracts are void as having been induced by fraud and misrepresentation, as explained in greater detail below.

### AS AND FOR A THIRD DEFENSE

38.    To the extent that Landay entered into any contracts with GMAC relating to the borrowings of Seneca and Brookfield that would obligate him to

pay GMAC, such contracts cannot be enforced because GMAC has breached the covenant of good faith and fair dealing.

## AS AND FOR A FOURTH DEFENSE

39.    GMAC did not sell the assets of Seneca and Brookfield, which assets were sold for the sole purpose of paying down the loans, in a commercially reasonable matter.

## AS AND FOR A FIFTH DEFENSE

40.    GMAC did not serve Landay with a notice of auction or any private sale.

## AS AND FOR A SIXTH DEFENSE

41.    GMAC has not provided an accounting to Landay of the disposition of the assets of Seneca and Brookfield in the possession of GMAC.

## AS AND FOR A SEVENTH DEFENSE

42.    The causes of action are barred by the doctrine of unclean hands.

## AS AND FOR AN EIGHTH DEFENSE

43.    Landay is entitled to set off against any amount owed to GMAC all damages that he suffered as a result of GMAC's failure to maintain and to preserve the assets of Seneca and Brookfield that GMAC had in its possession.

## AS AND FOR A NINTH DEFENSE

44.    The causes of action are barred by the doctrines of laches, waiver and estoppel.

## AS AND FOR A FIRST COUNTERCLAIM

45.    Seneca and Brookfield are distributors of sporting goods and their customers include large national retail chain stores such as Walmart and J.C. Penny. On or about September 19, 2000, Seneca and Brookfield entered into a Factoring Agreement (the "Factoring Agreement") with GMAC providing for a line of credit of up to $10,000,000 secured by the accounts receivable, inventory or certain other assets of Seneca and Brookfield (the "Collateral") as provided in the Factoring Agreement. Landay executed a personal guaranty (the "Landay Guarantee") of the obligations of Seneca and Brookfield under the Factoring Agreement with a $3,500,000 limit on his liability pursuant to that Agreement. In addition, Landay provided a standby letter of credit (the "Standby Letter of Credit") in the amount of $4,350,000 drawn in favor of GMAC as collateral for the obligations of Seneca and Brookfield. Landay also subordinated to GMAC certain indebtedness of Seneca to Landay in the amount of $3,450,000 (the "Subordinated Debt").

46.    Pursuant to the terms of the Factoring Agreement, GMAC received the payments of Seneca and Brookfield accounts receivable made by their customers and was to make advances to Seneca and Brookfield equal to 90% of such accounts receivable and specified percentages against inventory and other assets. Due to the seasonal nature of their business, GMAC also agreed that during the months of May through October of 2001, it would make a seasonal overadvance of up to $500,000 in excess of the advances otherwise provided (the "Seasonal Overadvance") to permit the borrowers to operate during this

period when sales in their industry were customarily low.  GMAC failed to make the Seasonal Advances in the amounts required.  Furthermore, GMAC failed to fund other advances it had advised Seneca and Brookfield it would make, causing Seneca and Brookfield to issue checks which GMAC did not fund thereby impairing their credit and reputation with vendors and suppliers.

47.    As a result of GMAC actions, Seneca and Brookfield were unable to fill orders and purchase inventory to generate the volume of sales necessary to comply with the terms of the Factoring Agreement.

48.    GMAC refused to make further advances and on or about August 20, 2001, GMAC, Seneca and Brookfield signed a Forbearance Agreement dated August 9, 2002 modifying the Factoring Agreement and the Landay Guaranty.

49.    Landay provided additional collateral in the form of a $1,000,000.00 cash deposit in a Bankers Trust account in GMAC's name (the "Cash Deposit") and agreed to the extension of the expiration date of the Standby Letter of Credit (the "Additional Collateral") and agreed to increase the amount of the limit on his liability to GMAC on his guaranty, from $3,500,00 to $4,500,000 plus interest thereon and the cost and expenses of collection.  This amount was in addition to the Additional Collateral.

50.    The consideration for the Cash Deposit and the Additional Collateral was GMAC's execution of the Forbearance Agreement and assurances made by GMAC that it would make payments in accordance with the schedule provided by the forbearance agreement, finance inventory purchases

and finance orders so that Seneca and Brookfield could fill orders and pay down their indebtedness. The Forbearance Agreement would permit Seneca and Brookfield to continue to operate their business into the Christmas holiday season when their sales and profitability were at their peak.

51.    A financial plan was annexed to the Forbearance Agreement.

52.    The failure to meet the projections on a weekly basis would constitute a default under the Forbearance Agreement.

53.    The financial plan, which was attached to and incorporated into the Forbearance Agreement, contemplated that GMAC would provide the necessary financing to conduct their business in an amount greater than the $1,000,000.00 Cash Deposit so that Seneca and Brookfield could fill orders and pay down their debt to GMAC. The Forbearance Agreement stated that the amount of Seneca and Brookfield's debt to GMAC as of August 9, 2002 was $6,719,177.62 which was secured by the borrowers' accounts receivable, inventory and other assets having a value in excess of that amount. The Cash Deposit and Additional Collateral represented cash collateral of $5,350,000 affording GMAC collateral substantially in excess of the amount loaned.

54.    The financial plan contemplated that Seneca and Brookfield would be able to draw down on its line of credit with GMAC as of the effective date of the Forbearance Agreement.

55.    Although GMAC had the unexecuted Forbearance Agreement in its possession before the effective date, it did not execute the agreement until some time after the effective date.

56.    GMAC knew that the financial plan contemplated by the Forbearance Agreement were based on Seneca and Brookfield receiving the advances provided. Despite its delay in executing the Forbearance Agreement, GMAC refused to change any of the dates in the Forbearance Agreement to reflect its delay in funding advances which would cause Seneca and Brookfield to be in default under the Forbearance Agreement from the outset.

57.    As a result of GMAC's actions and refusals to act, Seneca and Brookfield were unable to meet the projections set out in the plan and were in default under the Forbearance Agreement from the time it was executed by GMAC. GMAC acted in a fraudulent manner and at the very least its conduct constitutes negligent misrepresentation.

58.    Further, as a result of GMAC's actions and refusals to act, Seneca and Brookfield were unable to fill orders that had been made and lost those orders. Moreover, GMAC foreclosed on Seneca and Brookfield in October 2001. Brookfield and Seneca were prevented by GMAC from realizing the profits they had anticipated from their Christmas sales.

59.    Despite the fact that the plan contemplated the reimbursement of Landay for certain expenses that he had paid, GMAC refused to reimburse Landay for such expenses.

60.    Despite the fact that the plan contemplated the release of funds by GMAC in excess of the $1,000,000.00 Cash Deposit as of the effective date of the Forbearance Agreement, GMAC refused to release funds in excess of the Cash Deposit. GMAC refused to release _any_ funds prior to its belated execution

of the Forbearance Agreement. Upon execution of the Forbearance Agreement, GMAC almost immediately noticed the defaults of Seneca and Brookfield caused by GMAC's delays and seized the collateral, including the Cash Deposit and Additional Collateral.

61.    Implicit in every agreement is a covenant of good faith and fair dealing.

62.    GMAC's actions set out above breached its obligations under the Forbearance Agreement and the covenant of good faith and fair dealing implicit in the agreement.

63.    Compliance with all the terms of the Forbearance Agreement was made impossible due to the acts of GMAC.

64.    As a result of the foregoing, Landay has been damaged in an amount to be determined at trial but not less than $10,000,000.00

### AS AND FOR A SECOND COUNTERCLAIM

65.    Landay repeats and restates the allegations set out in the first counterclaim as if set out fully herein.

66.    In the summer of 2001, during the negotiations relating to the Forbearance Agreement, GMAC represented to Landay that it would begin providing financing to Seneca and Brookfield as of the August 9, 2001 effective date of the Forbearance Agreement.

67.    In the summer of 2001, during the negotiations relating to the Forbearance Agreement, GMAC represented to Landay that it would lend

Seneca and Brookfield a sum in excess of the $1,000,000.00 Cash Deposit that Landay was to deposit in Banker's Trust in an account in the name of GMAC.

68.     In the summer of 2001, during the negotiations relating to the Forbearance Agreement, GMAC represented to Landay that he would be reimbursed for certain expenses that were listed in the financial plan annexed to the Forbearance Agreement.

69.     Landay reasonably relied on these representations in providing GMAC with the Additional Collateral, increasing the amount of the limit of his liability under the Landay Guarantee and providing GMAC with the $1,000,000.00 Cash Deposit and would not have taken such action if not for such assurances.

70.     At the time that GMAC made these representations, it knew that it had no intention of providing funding as of August 9, 2001, lending Seneca and Brookfield a sum in excess of the $1,000,000.00 Cash Deposit and/or reimbursing Landay's expenses despite the fact that Landay had made the Cash Deposit, extended the expiration date of the Standby Letter of Credit, increased the amount of the limit of his liability under the Landay Guaranty and had previously subordinated his loan to Seneca. GMAC still refused to fund purchases that it had previously approved, resulting in checks of Seneca and Brookfield being dishonored and impairing their ability to obtain credit from vendors and suppliers. GMAC's actions made it impossible for Seneca and Brookfield to conduct business and generate sales with which it could pay down the indebtedness

71.    Instead, shortly thereafter, GMAC seized the collateral, including the Cash Deposit and the Additional Collateral. GMAC failed to liquidate the accounts receivable of Seneca and Brookfield or sell the collateral and other assets of Seneca and Brookfield in a commercially reasonable manner. GMAC also abandoned certain of the assets of Seneca and Brookfield in warehouses, where such assets are continuing to be sold at distress prices to pay the warehouse fees. GMAC did not even attempt to sell any intellectual property of Seneca and Brookfield, such as patents and licenses, and it failed to pay patent and license fees to preserve the value of certain of the assets that it seized.

72.    As a result of the foregoing, Landay has been damaged in an amount to be determined at trial but not less than $10,000,000.00 and is entitled to punitive damages.

## AS AND FOR A THIRD COUNTERCLAIM

78.    Landay repeats and restates the allegations set out in the first, and second counterclaims as if set out fully herein.

79.    GMAC seized the accounts receivable and other assets belonging to Seneca and Brookfield, the proceeds of which should have been used to pay down their indebtedness to GMAC. On information and belief, GMAC failed to collect the accounts receivable payable to Seneca and Brookfield, GMAC abandoned other assets it seized in warehouses, which assets have been sold at distress prices to pay the unpaid warehouse fees or otherwise abandoned , and failed to pay certain patent and license fees needed to maintain the value of certain of the assets that it seized.

80.     GMAC, refused to allow Landay to assist in the collection of accounts receivable or in the sale of the assets and retained a third party to handle the sale of the assets.

81.     GMAC alleges that the assets were liquidated (presumably by the third party) although neither it nor the third party gave any notice of the sale to Landay, Seneca and/or Brookfield, which notice is required as a matter of law.

82.     Although GMAC has claimed that there is a deficiency of $1,009,056.70, it has failed to provide Landay with an accounting. Landay has made a demand for such an accounting through his counsel, but GMAC has refused to provide an accounting. In fact, when Counsel for Landay reminded GMAC it had promised to give an accounting, GMAC, by letter dated August 6, 2002 (annexed hereto as Exhibit A), denied this promise was ever made and informed Landay he could obtain this information through litigation.

83.     Landay has no adequate remedy at law.

84.     Such an accounting is necessary to ensure that the sale of assets, which was not done at a public auction, but through a third party, was done in a commercially reasonable manner.

85.     Landay is entitled to such an accounting as to the sale of the assets of Seneca and Brookfield.

## AS AND FOR A FOURTH COUNTERCLAIM

86.     Landay repeats and restates the allegations set out in the first, second and third counterclaims as if set out fully herein.

87.    GMAC seized the accounts receivable and assets belonging to Seneca and Brookfield purportedly in payment of their debt to GMAC.  GMAC failed to collect the accounts receivable and intentionally or negligently abandoned certain of these other assets in warehouses, resulting in the sale of such assets at distress prices to pay unpaid warehouse fees.  GMAC also failed to pay certain patent and license fees necessary to maintain the value of such licenses and patents, allowing the rights under such patents and licenses to lapse. GMAC failed to exercise the ordinary care of a prudent creditor seeking to maximize the value of the assets so as to pay down, to the greatest extent possible, the indebtedness owed to it.  Landay has received no payments of the indebtedness of Seneca to him which was subordinated to GMAC under the Subordination Agreement.

88.    The acts of waste set out above were performed without the consent or license of Landay, Seneca or Brookfield.  GMAC breached its fiduciary duty to Landay as the Junior Creditor of Seneca under the Subordination Agreement and violated the implied covenants of fair dealing and good faith of the Subordination Agreement.

89.    As a result of the foregoing, Landay, as guarantor and creditor of Seneca and Brookfield, has been damaged in an amount to be determined at trial, but no less than $3,450.00, and is entitled to an award of compensatory and punitive damages.

## AS AND FOR A FIFTH COUNTERCLAIM

90.    Landay repeats and restates the allegations set out in the first four counterclaims as if set out fully herein.

91.    On or about October 5, 2001, Seneca and Brookfield entered into negotiation with Platinum Credit to provide financing to pay 90% of GMAC's loans and to pay off the remaining 10% over a two year period. GMAC refused to consider the terms offered by such lender, even though the Standby Letter of Credit exceeded this balance. Instead, shortly thereafter, GMAC foreclosed on Seneca's and Brookfield's assets and now alleges that it realized substantially less from the proceeds of the sale of assets than had been offered by Platinum Credit.

92.    GMAC failed to comply with its obligations of good faith and fair dealing and instead engaged in predatory lending practices including, among other things:

(a)    Refusing to execute the Forbearance Agreement until after the effective date thereof and refusing to advance money to Seneca and Brookfield prior to the execution of the Forbearance Agreement, ensuring that Seneca and Brookfield would be in default by the time the Forbearance Agreement was executed;

(b)    Refusing to change the dates on the Forbearance Agreement, putting GMAC in the position of being able to foreclose on the collateral at any time;

(c)    Failing to release funds to honor checks written by Seneca and Brookfield in reliance on GMAC's promise to release funds;

(d)    Seizing the accounts receivable and assets of Seneca and Brookfield and failing to collect such accounts receivables and permitting the sale of other assets at distress prices or abandoning them, failing to pay patent and licenses fees necessary to maintain their value and permitting the rights from such patents and licenses to lapse;

(e)    Refusing to advance the funds to Seneca and Brookfield above the amount of the Cash Deposit contemplated by the promises made to Seneca, Brookfield and Landay to obtain the Cash Deposit and Additional Collateral as well as an increase in the amount guaranteed by the Landay Guaranty;

(f)    Conducting secret sales or other dispositions of the accounts receivable and other assets of Seneca and Brookfield, through a third party, and refusing to account for such sales or dispositions to Landay, Seneca and Brookfield; and

(g)    Refusing to allow Seneca and Brookfield to refinance the debt with a new lender, under which refinancing plan 90% of their indebtedness would be paid within 60 days with the balance to be paid out over two years secured by Landay's Guaranty and Additional Collateral.

93.    GMAC's predatory lending practices, as set out above, kept Seneca and Brookfield from conducting their business and filling customer orders and ultimately put them out of business.

94.     As a result of GMAC's predatory lending practices, GMAC was able to extort assets from Landay to which it would not have been entitled had it not engaged in the fraud and predatory practices set out above.  Relying on GMAC's assurances and believing that GMAC would act in good faith, Landay provided GMAC with the $1,000,000.00 Cash Deposit, increased the limit of liability he assumed under his guaranty and extended the term of the Standby Letter of Credit.  He would not have done that had he known that GMAC would act in such bad faith.

95.     Because of the foregoing, Landay has been damaged in an amount to be determined at trial, but not less than $10,000,000.00, and he is entitled to recover compensatory and punitive damages.

## AS AND FOR A SIXTH COUNTERCLAIM

96.     Landay repeats and restates the allegations set out in the first five counterclaims as if set out fully herein.

97.     GMAC's wrongful acts against Landay, as set out above, were intentional, calculated to cause Landay harm and did cause Landay harm.

98.     GMAC's motive in taking the actions it did was solely disinterested malevolence, and GMAC had no other excuse of justification for taking the course of action it did.

99.     In that GMAC's wrongful actions have caused the liquidation of Seneca and Brookfield, they have deprived Landay of the profits he would otherwise have enjoyed as a shareholder of Seneca and Brookfield, they wiped out his investment in Seneca and Brookfield, they deprived him of his status of a

senior creditor of Seneca and Brookfield, they deprived him of the Cash Deposit and the Additional Collateral he had put up to further secure the debts of Seneca and Brookfield to GMAC, they have caused him mental anguish and they have damaged his reputation in the business community.

100.    Landay is entitled to an award of damages in an amount to be determined at trial, and he is entitled to recover compensatory and punative damages.

## AS AND FOR A SEVENTH COUNTERCLAIM

101.    Landay repeats and restates the allegations set out in the first six counterclaims as if set out fully herein.

102.    The events relevant to this action took place in Massachusetts.

103.    The actions of GMAC set out above constitute "unfair or deceptive acts or practices in the conduct of any trade or commerce" as that phrase is used in Chapter 93 of Massachusetts General Laws §11 ("Chapter 93").

104.    The commission of unfair or deceptive acts or practices by GMAC was knowing and willful.

105.    Contemporaneously with the service of this Verified Answer and counterclaims Landay is also making the requisite demand for relief required by Chapter 93 § 9(3). If the actions of GMAC are determined to come within the scope of that section, Landay intends to amend this Answer and Counterclaim to include such Cause of Action.

105.    As a result of the actions of GMAC, Landay has been damaged in an amount to be determined at trial and is entitled to double or treble damages, attorneys' fees and the costs of this action.

WHEREFORE, Landay demands judgment, dismissing the complaint and awarding him damages (a) in an amount to be determined at trial on the first counterclaim, (b) in an amount to be determined at trial, together with punitive damages on his second counterclaim, (c) in an amount to be determined at trial, together with punitive damages on its fifth cause of action, (d) in an amount to be determined at trial, together with punitive damages on its sixth cause of action, (e) in an amount to be determined at trial on its seventh cause of action, and (f) ordering GMAC to provide an accounting as to the assets of Seneca and Brookfield that it sold on its fourth cause of action, and (g) in an amount to be determined at trial, together with treble or double damages, attorneys' fees and the costs of this action on its seventh counterclaim, together with the costs and

disbursements of this action and such other and further relief as is just and

proper.

Dated: New York, New York
   December 30, 2002

          Stephen M. Rosenberg
          TODTMAN, NACHAMIE, SPIZZ
           & JOHNS, P.C.
          Attorneys for Defendant
          425 Park Avenue
          New York, NY  10022
          (212) 754-9400

## VERIFICATION

STATE OF NEW YORK     )
                              ) ss.:
COUNTY OF NEW YORK )

       Stephen Rosenberg, an attorney admitted to practice in the courts of New York State, hereby affirms that the following statement is true, under penalty of perjury:

       I am a partner in the law firm of Todtman, Nachamie, Spizz & Johns, P.C., the attorneys for defendant. I have read the foregoing Verified Answer and Counterclaims and know the contents thereof. The same is true to my information and belief based on documents provided to me by the defendant and on extensive conversations that I have had with the defendant and on correspondence between me and plaintiff's counsel. The reason this verification is made by me and not by the defendant is that the defendant does not reside in the county in which my firm has its office.

Dated:       New York, New York
                 December 30, 2002

                                                STEPHEN ROSENBERG

# EXHIBIT A



**GMAC**
**Commercial**
**Finance**

*Legal Division*

Lorraine S. Field
Assistant General Counsel

**FIRST CLASS MAIL AND**
**FACSIMILE TRANSMISSION**      (212 704-6288)

August 6, 2002

Stephen Rosenberg, Esq.
Jenkens & Gilchrist Parker Chapin LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174

     Re:   GMAC Commercial Credit LLC ("GMACCC") v. David Landay

Dear Mr. Rosenberg:

  I am in-receipt of your "reminder" fax.  As you are well aware, you never made such a request to me.

  If it is the intention on your client David Landay to defend GMACCC's claims asserted against him in the above-referenced litigation, you will have access to damages information in GMACCC's possession through the discovery process.

  If on the other hand, it is your client's intention to pay GMACCC the amount of indebtedness that is due and owing to it, without having to resort to a long drawn out litigation, please advise me and I will be happy to set up a meeting with you, your client and the appropriate GMACCC business executive to review the information we have supporting our damages claim.

      Sincerely yours,

      Lorraine S. Fields
      Assistant General Counsel

1290 Avenue of the Americas, Third Floor
New York, NY 10104
(212) 884-7281   Fax Number: (212) 884-7372  E-mail Address: lorraine.fields@gmaccc.com

I, the undersigned, am an attorney admitted to practice in the courts of New York, and

☐ **Attorney's Certification**

certify that the annexed

has been compared by me with the original and found to be a true and complete copy thereof.

☐ **Attorney's Verification by Affirmation**

say that: I am the attorney of record, or of counsel with the attorney(s) of record, for

. I have read the annexed

know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon the following.

The reason I make this affirmation instead of                          is

I affirm that the foregoing statements are true under penalties of perjury.

Dated:

.............................................................................................

*(Print signer's name below signature)*

STATE OF NEW YORK, COUNTY OF                          ss:

being sworn says: I am

☐ **Individual Verification**

in the action herein; I have read the annexed

know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.

the                                    of

☐ **Corporate Verification**

a corporation, one of the parties to the action; I have read the annexed

know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.

My belief, as to those matters therein not stated upon knowledge, is based upon the following:

Sworn to before me on

.............................................................................................

*(Print signer's name below signature)*

.............................................................................................

STATE OF NEW YORK, COUNTY OF                          ss:

being sworn says: I am not a party to the action, am over 18 years of age and reside at

On                          , I served a true copy of the annexed

in the following manner:

☐ **Service by Mail**

by mailing the same in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal Service within the State of New York, addressed to the last-known address of the addressee(s) as indicated below:

☐ **Personal Service**

by delivering the same personally to the persons at the address indicated below:

☐ **Service by Electronic Means**

by transmitting the same to the attorney by electronic means to the telephone number or other station or other limitation designated by the attorney for that purpose. In doing so I received a signal from the equipment of the attorney indicating that the transmission was received, and mailed a copy of same to that attorney, in a sealed envelope, with postage prepaid thereon, in a post office or official depository of the U.S. Postal Service within the State of New York, addressed to the last-known address of the addressee(s) as indicated below:

☐ **Overnight Delivery Service**

by depositing the same with an overnight delivery service in a wrapper properly addressed. Said delivery was made prior to the latest time designated by the overnight delivery service for overnight delivery. The address and delivery service are indicated below:

Sworn to before me on

.............................................................................................

.............................................................................................

*(Print signer's name below signature)*

TODTMAN, NACHAMIE, SPIZZ & JOHNS, P.C.

PLEASE TAKE NOTICE

☐ that the within is a (certified) true copy of a
the clerk of the within named Court on

☐ that an Order of which the within is a true copy
will be presented for settlement to the
Honorable one of
the judges of the within named Court, at
on
, at

Dated: _____

TODTMAN, NACHAMIE,
SPIZZ & JOHNS, P.C.

Attorneys for

425 PARK AVENUE
NEW YORK, N.Y. 10022

Pursuant to 22 NYCRR 130-1.1, the undersigned, an
attorney admitted to practice in the courts of New York
State, certifies that, upon information and belief and
reasonable inquiry, the contentions contained in the
annexed document are not frivolous.

Dated: _____

_____
Print signer's name

TODTMAN, NACHAMIE,
SPIZZ & JOHNS, P.C.

Attorneys for

425 PARK AVENUE
NEW YORK, N.Y. 10022

To

Attorney(s) for

143029.1

---

Index No.                                    Year

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

GMAC COMMERCIAL CREDIT LLC

                                    Plaintiff,

                    -against-

DAVID LANDAY

                                    Defendant.

DEFENDANT'S FIRST REQUEST
FOR THE PRODUCTION OF DOCUMENTS

TODTMAN, NACHAMIE,
SPIZZ & JOHNS, P.C.
Attorneys for

425 PARK AVENUE
NEW YORK, N.Y. 10022
(212) 754-9400

To

Attorney(s) for

Service of a copy of the within                    is hereby admitted.

Dated,

Attorney(s) for