UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-CV-11955-WGY

| | |
|---|---|
| DAVID L. LANDAY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GMAC COMMERCIAL CREDIT, LLC and )<br>GMAC COMMERCIAL FINANCE, LLC, )<br>)<br>Defendants. )<br>) | **PLAINTIFF,<br>DAVID L. LANDAY'S<br>MEMORANDUM IN<br>OPPOSITION TO<br>DEFENDANTS' MOTION IN<br>LIMINE** |

## **INTRODUCTION**

Plaintiff David L. Landay ("Landay") submits this Memorandum in Opposition to Defendants' Motion in Limine to Exclude Evidence Relating to New York Discovery Disputes.

In a futile attempt to "divide and conquer," GMAC has filed simultaneously several motions attacking individual components of Plaintiff's case. Specifically, GMAC has filed a motion for Summary Judgment, and, in an attempt to exclude a plethora of facts from consideration on that motion, it has filed two motions to exclude evidence (including the instant motion) and proposes to file yet another motion to exclude evidence. (Memorandum In Support of Defendants' Motion for Summary Judgment, p. 7, n. 4)

GMAC's Summary Judgment motion barely addresses Landay's Chapter 93A claim. In that motion, GMAC simply argues that, if its attack on Plaintiff's other three claims succeeds (usury, fraud, junior creditor rights), the Chapter 93A claim must fail

also. Perhaps in acknowledgement of the weakness of that position, GMAC is moving to exclude evidence that it found inconvenient on a summary judgment motion.

In the instant motion, GMAC seeks to isolate and remove from consideration some of its actions that support Landay's Chapter 93A claim. Specifically, GMAC asks this Court not to consider GMAC's refusal to allow Landay access to his and Seneca Sports, Inc.'s own books and records – at least insofar as this refusal continued during the discovery period in the New York case. Similarly GMAC asks this Court not to consider its refusal to provide Landay with the promised (but never delivered) accounting and other information necessary to understand GMAC's claims – at least insofar as this refusal occurred during the New York discovery period.

Defendant's "divide and conquer" strategy and arguments (both in the Summary Judgment Motion and in the instant motion) ignore the very nature of a Chapter 93A claim and the law relating to it. As will be shown more fully in Landay's opposition to GMAC's Summary Judgment Motion, a Chapter 93A claim is a separate statutory claim, independent of any of the other causes of action pleaded in the complaint. Kattar v. Demoulas, 433 Mass 1, 13, 739 N.E. 2d 246, 257 (2000). It is not merely the sum of the other claims in the complaint; it has a separate existence and "dispenses with the need to prove many of the essential elements of those common law claims." Id. It addresses a course of business conduct that is unfair or unscrupulous even if legal and not actually fraudulent. Kattar v. Demoulas, 433 Mass at 13-14, 739 N.E. 2d at 257.

Moreover, contrary to GMAC's assertion of lack of notice, the Plaintiff's Amended Complaint is crystal clear that Landay's Chapter 93A claim addresses all the unscrupulous practices in which GMAC engaged during the course of their relationship,

even if such practices happened to continue through the discovery process in New York.  Incredibly, GMAC has ignored the factual allegations of 90 paragraphs that are incorporated into the Chapter 93A cause of action by reference (Amended Complaint, paragraph 91) and disingenuously claims that "[t]o say the least, Count VII is short on detail."  (Memorandum in Support of Motion In Limine, p. 2) and that "Landay's amended complaint provides few details on his Chapter 93A claim (Count VII) other than to say it is based on the 'acts and practices' described elsewhere in the pleading." Memorandum in Support of Defendants' Motion for Summary Judgment, p. 20.

To the contrary, Landay's Amended Complaint describes in detail GMAC's unfair and deceptive acts and practices over the course of its relationship with Landay and alleges that many of such practices are continuing. It sufficiently informs GMAC that Landay is taking GMAC to task for all its abusive conduct since 2000, including conduct that is reflected in the New York discovery skirmishes, but is part and parcel of a continuing course of conduct that preceded commencement of the New York litigation.[1]

In addition to fraud and usury, each of which alone supports a Chapter 93A claim (McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass. 704, 714, 563 N.E.2d 188, 194 (1990), and Tavares v. Sprunk, 298 B.R. 195, 203 (Bankr. D. Mass 2003)), the Amended Complaint alleges many other unfair and deceptive acts or practices that support an action under Chapter 93A.  Among other things, it alleges facts showing how GMAC exploited the obvious David and Goliath nature of its relationship with Landay

---

[1] GMAC characterizes Landay's position incorrectly when it states that Landay's counsel "indicated" he may argue that the New York discovery disputes "form an independent basis for Landay's Chapter 93A claim."  GMAC's Memorandum in Support of Motion in Limine, p. 5 (emphasis added).  It is Landay's position that GMAC's withholding of documents and information from him (especially his own documents) is part of the pattern and practices engaged in by GMAC that violate Chapter 93A, and that GMAC's refusal to produce in New York – even to the extent of claiming it could not locate such documents – is included in this scheme.

3

(see, e.g., Paragraphs 17-21). It describes how GMAC used its financial advantage over Landay to force him into exposing more of his personal assets to it (e.g. Paragraphs 18-19; 23-26). It describes how GMAC misused its superior position and delayed execution of the Forbearance Agreement and the release of funds while refusing to make corresponding date changes in Borrowers' obligations, thereby engineering a default by Borrowers to occur shortly after Landay increased his guaranty and posted more collateral (Paragraphs 34-45). It shows how GMAC lulled Landay into a false sense of security, believing he could satisfy GMAC (Paragraphs 26-29) or, at least refinance with Platinum Credit Corp. (Paragraphs 46-48), while instead GMAC was positioning itself to collect all Landay's personal collateral. With regard to Platinum Credit Corp., the Complaint alleges that GMAC stated that it would consider the proposal, while simultaneously seizing the security which Landay had posted (Paragraphs 47-49). It alleges how GMAC summarily expelled Landay from his business premises and refused to allow him access to his own companies' books and records (Paragraph 50). It alleges how GMAC wasted the assets of the Borrowers without any regard to Landay's rights or interests either as guarantor or as the junior creditor (Paragraph 53). It alleges that through and including the date of the Amended Complaint (September 15, 2004) – both outside the context of the New York action and within that action - GMAC continued to refuse to provide Landay with any information about the assets it had seized, continued to deny him access to the Borrowers' books and records, and continued to deny him an accounting – even though all of the foregoing had been requested by Landay before the commencement of the New York suit so that he could attempt to understand GMAC's claim and avoid protracted litigation

4

(Paragraphs 52, 54, 55, 57, 58). The cited paragraphs also make clear that GMAC's refusal to provide the previously-requested information continued during discovery in the New York litigation and was continuing at the time the Amended Complaint in this action was filed.

## ARGUMENT

A.   GMAC Had Ample Notice Of The Conduct At Issue.

A Chapter 93A claim does not have to be pleaded with the specificity of a fraud claim. U.S. Funding, Inc. of Am. v. Bank of Boston Corporation, 28 Mass. App. Ct. 404, 407, 551 N.E. 2d 922, 925 (Mass. App. Ct. 1990).[2] Nonetheless, the Amended Complaint provided considerably more notice and detail concerning Landay's Chapter 93A claim than required by notice pleading. By incorporating Paragraphs 1 through and including 90 in the Chapter 93A Count, the Amended Complaint advised GMAC that Landay deemed GMAC's refusal to grant Landay access to his own company's books and records, its refusal to provide Landay with any information concerning the assets it had seized and how it arrived at the alleged loan balance (failure to account), and its decision to, instead, sue him in New York where it continued to deprive him of such information were among GMAC's unscrupulous business practices that violated Chapter 93A.

GMAC's contention that it was not put on notice that its resistance to discovery was a part of this case rings hollow in light of the allegations of the Amended Complaint. The discovery requests that Landay made in New York were but a reiteration of the

---

[2] "While Mass. R. Civ. P. 9(b) requires specification of circumstances in 'averments of fraud, mistake, duress or undue influence,' the concept of 'unfair or deceptive acts or practices' made actionable by G.L. c. 93A 'goes far beyond the scope of the common law action for fraud and deceit,' Slaney v. Westwood Auto, Inc., 366 Mass. 688, 703, 322 N.E.2d 768 (1975), and does not necessarily require similar pleading specificity." Id.

5

many requests he made prior to commencement of that litigation for (a) access to his own records and (b) information relevant to an accounting.  The Amended Complaint specifically calls attention to the fact that GMAC's information refusals were continuing in the context of the New York case. (See e.g., Amended Complaint Paragraph 52: "GMAC….refused to provide Landay with any information.  It confiscated the books and records of the businesses and either continues to hold them or has destroyed and/or abandoned them"; Paragraph 54: "Landay has requested such an accounting from GMAC several times.  GMAC refuses to provide an accounting."; Paragraph 55: "Instead, in or about June-July 22, 2002, without providing Landay with an accounting" GMAC filed a Summons with Notice in the New York Court; Paragraph 58: "GMAC has since proceeded with its litigation in New York" and "GMAC remains intransigent and still has not provided an accounting.")

     Prior to the New York litigation, GMAC merely denied or ignored Landay's requests for access and for information.  Exhibit A, correspondence between Landay's Boston attorney and GMAC's attorney, and Exhibit B, e-mail sent by Landay's Boston attorney.  Once litigation was filed, a GMAC lawyer flippantly told Landay that, if he wanted such information, he could get it only through discovery.  Exhibit C, correspondence between Landay's New York counsel and GMAC's attorney.  Then, when Landay reiterated his requests in the context of discovery, GMAC claimed that it could not locate relevant records, including the Borrowers' records which it had seized on October 22, 2001.  Exhibit D, Affidavit of Joseph Einstein, ¶¶2, 18.[3]

---

[3] Based on such representations by GMAC, the New York judge denied Landay's discovery motions for additional information.  Exhibit D, ¶18.  It was only through discovery in the instant case that Landay finally obtained access to his own books and records in August 2005 – documents that had been in the possession, custody and control of GMAC since 2001 and which GMAC had placed and maintained in a

The fact that GMAC's misconduct respecting corporate records and information extended to discovery in the New York litigation does not divorce it from this case, especially when the Amended Complaint clearly called GMAC's attention to the New York aspect.

B.    GMAC Has Not Demonstrated Any Prejudice.

Noticeably absent from GMAC's Motion in Limine is any claim that the alleged lack of notice in the pleadings is somehow prejudicial to GMAC at trial.  First, as shown above, the Amended Complaint gave adequate notice.  Second, even if the Amended Complaint did not put GMAC on notice, there could be no such prejudice.

In his answers to GMAC's interrogatories served September 6, 2005, Landay made it abundantly clear that GMAC's continuing refusal to provide information – including its tactics in the New York litigation to keep Landay uninformed – are a part of Landay's 93A claim.  See pp. 10-12 of Landay's Answers to Interrogatories, attached as Exhibit 1 to GMAC's Motion In Limine.  GMAC had full opportunity to examine Landay on this aspect of his claim when it took his deposition on October 18, 2005.

C.    The Offending Conduct Did Not Occur Entirely In New York;
      Massachusetts Is Primarily And Substantially Involved.

GMAC claims that the offending conduct occurred during discovery and that this occurred entirely in New York.  Citing a Massachusetts Superior Court case and contending that the law requires "that the allegedly unfair and deceptive conduct occurred 'primarily and substantially' within the Commonwealth of Massachusetts", GMAC's Memorandum in Support of Motion in Limine, p. 7, GMAC concludes that its

---

warehouse.  See Exhibit E, GMAC's Responses to Landay's First Set of Interrogatories p. 6 and Rijo deposition pages.  Moreover, it was only because of discovery in the instant case that Landay discovered other GMAC documents that had been in the possession of GMAC's New York lawyer but that GMAC had claimed could not be located. Exhibit F, excerpt from the Deposition of Kathleen Pappalardo.

7

conduct respecting the New York case should be excluded from evidence. GMAC has mischaracterized the facts and the law.

GMAC mischaracterizes the offending conduct by calling it discovery abuse that occurred in New York. GMAC's ploy to isolate a small portion of a larger pattern of conduct in order to remove the nexus from Massachusetts must be rejected. Indeed, the Supreme Judicial Court of Massachusetts has specifically rejected such an approach. In Kuwaiti Danish Computer Co. v. Digital Equipment Corp., 438 Mass. 459, 473, 781 N.E. 787, 799 (Mass 2003), the Supreme Judicial Court clearly and unequivocally stated that a Chapter 93A claim can be sustained if the "center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." The approach to be followed by a court in determining the center of gravity is to examine the case as a whole:

> We conclude that the analysis required under § 11 should not be based on a test identified by any particular factor or factors because of a tendency to shift the focus of inquiry away from the purpose and scope of c. 93A. Section 11 suggests an approach in which a judge should, after making findings of fact, and after considering those findings in the context of the entire § 11 claim, determine whether the center of gravity of the circumstances that give rise to the claim that is primarily and substantially within the Commonwealth. Id.

Indeed, the judge in the case cited by GMAC in its Memorandum engaged in the very exercise outlined in Kuwaiti Danish Computer before he concluded that the "center of gravity" was not in Massachusetts. See Welch Foods, Inc. v. Liberty Mutual Fire Ins. Co., No. 001249A, 2005 WL 1131747, at *26 (Mass. Super. April 6, 2005). ("[T]his court considers its findings of facts within the context of the entire claim to determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within Massachusetts.") There were insignificant contacts with Massachusetts in Welsh Foods. Landay's case stands in stark contrast.

Depriving Landay of his records and information was only one of the many unscrupulous practices in which GMAC engaged in the period 2000 to date. All of the practices alleged in the Amended Complaint and identified in discovery have to be read as a whole, and when that is done there can be no question that the center of gravity for GMAC's unfair and deceptive practices is Massachusetts.[4] Whether or not this <u>universe</u> of sharp practices complained about by Landay are primarily and substantially Massachusetts related has not been addressed by GMAC on this motion at all. For that very reason alone, GMAC's "nexus" argument must fail.[5]

Moreover, even if GMAC's conduct concerning documents and records were to be considered separately, the New York discovery refusals were only an aspect of GMAC's scheme to deprive Landay of information. GMAC's behavior during the New York litigation was merely a continuation of its prior refusals to allow Landay access to his documents and to information necessary to an accounting. Accordingly, it cannot be isolated as "conduct occurring entirely in New York."

On the contrary, GMAC's misconduct respecting the documents and information began in Massachusetts on October 22, 2001, the day that Landay was expelled by

---

[4] Landay was a Massachusetts resident and his companies (Borrowers) were located in Massachusetts. GMAC had a Massachusetts office with which Landay initiated borrowing discussions and with which Landay dealt. GMAC made a Massachusetts usury filing. Key representations were made to Landay by GMAC's Massachusetts employee, Paul Fitzgerald. While some of GMAC's "blows" to Landay may have originated in GMAC's New York office, they were delivered by its Boston office and landed on Landay and Borrowers in Massachusetts. The Landay Letters of Credit cashed by GMAC were issued by Landay's bank against funds that Landay maintained in Boston accounts managed by Boston bank personnel. The seizure of the Borrowers assets occurred in Massachusetts. The GMAC liquidator operated out of Borrowers' seized premises in Massachusetts, and when assets were sold GMAC issued a Secured Party Bill of Sale that recited that GMAC's possession and sale was pursuant to the Massachusetts Uniform Commercial Code. Exhibit G. GMAC's 2001 seizure of Borrowers' books and records occurred in Massachusetts and the books and records were stored and kept from Landay in a warehouse in Massachusetts until they were recently delivered to GMAC's Massachusetts counsel. The foregoing is only a partial list of the substantial contacts with Massachusetts.

[5] GMAC bears the burden of establishing that Massachusetts is not the center of gravity. M.G.L. c.93A § 11. See also <u>Welch Foods</u>, 2005 WL 113174, at *26.

9

GMAC from his Milford, Massachusetts offices and denied records and/or a reasonable opportunity to copy records.  Exhibit H, October 22, 2001, Memorandum of John Rijo, GMAC's Massachusetts liquidator.  Thereafter, GMAC failed to comply with requests by Landay (Massachusetts) and his attorney (Massachusetts) for access to the confiscated documents (Massachusetts).  Exhibits A and B.   It also failed and/or refused to respond to requests by Landay's Massachusetts lawyer and his New York lawyer for an accounting and relevant information.  Exhibits B and Exhibit C.

In November of 2001, GMAC placed Landay's/Borrowers' Massachusetts business records in a Massachusetts warehouse where they remained until August 2005 when GMAC removed them to the offices of its Massachusetts counsel.  From the moment they were confiscated (October 22, 2001) until August 2005, Landay was denied access to the records by GMAC.  Included in this denial were GMAC's representations to the New York Court that GMAC did not have and/or could not locate the records – the very records that were sequestered in a Massachusetts warehouse in GMAC's custody and control.

There is no question that GMAC's conduct during the New York discovery process was merely part and parcel of a whole with its center of gravity in Massachusetts.  At a minimum, if there is any doubt as to that point, it can be resolved only after a full hearing of all evidence at trial where GMAC has the burden of showing that its wrongful conduct lacked the sufficient nexus with Massachusetts.   M.G.L. c. 93A § 11.  This Motion in Limine is not the place to resolve such an issue. Kuwaiti Danish Computer Co., 438 Mass. 459.

10

D.  GMAC's Argument Based On The Gath Case Is Without Merit.

GMAC's Gath argument (GMAC's Memorandum in Support of Motion for Limine, pp. 7-8) depends on (a) a mischaracterization of Landay's claim as one relating solely to discovery abuses and (b) an unwarranted expansion of the case-law.  As fully discussed above, the discovery abuses are simply part of a larger picture. Accordingly, even if the law were that discovery disputes alone cannot give rise to a Chapter 93A claim, Landay's claim does not fall into this category.

Moreover, the only case that GMAC has cited for this proposition is inapposite: Gath v. M/A-Com, Inc., 440 Mass. 482, 802 N.E. 2d 521 (2003), did not speak to the issue of whether or not discovery abuses could be part of a fact pattern that establishes unfair or deceptive practices under Chapter 93A.  It certainly did not deal with the issue of whether it is appropriate to consider discovery abuses that are in furtherance of an on-going pattern of denial of access to business records and information.  Rather, Gath simply stands for the proposition that Massachusetts adheres to the majority view that there is no cause of action for a claim of spoliation of evidence, particularly because spoliation can be remedied in Massachusetts by allowing the jury to draw an adverse inference against the offending party and because "allowing a separate cause of action for spoliation would recognize a claim that, by definition, could not be proved without resort to multiple levels of speculation.'" Gath, 440 Mass. at 499, 802 N.E. 2d at 534. None of this has any application to the instant case where the discovery abuses are part of a larger pattern that can be proved without speculation.

E.   GMAC's Description Of The Discovery Motions In New York Is Inaccurate.

In a final attempt to avoid introduction of Landay's evidence, GMAC denigrates it. GMAC argues that the evidence at issue on Landay's Chapter 93A claim is more tenuous than the claim rejected in Gath because the New York Court "repeatedly rebuffed" Landay's discovery motions. GMAC's Memorandum in Support of Motion in Limine, p. 8.  In making this argument, GMAC does not present the Court with all the facts and, to the extent that GMAC implies that Landay's motions were denied on the merits, this is not true.

As is shown in Exhibit D, GMAC was not sanctioned in the New York case because the Court accepted GMAC's representations that the materials did not exist or could not be found.  It was only on the eve of trial in New York that the materials were suddenly "found" in the Massachusetts warehouse and in the offices of GMAC's New York attorney. This belated find, and the unfortunate death of New York counsel's wife, was the basis for the motion in which "Landay most recently raised the issue of sanctions to the New York Court."  GMAC's Memorandum in Support of Motion in Limine, p. 8.

In that motion, Landay asked for sanctions or, alternatively, a delay of the imminent trial date.  Exhibit D, ¶38.  Contrary to the suggestion that sanctions were denied, that issue was removed from consideration by stipulation (Exhibit I hereto) and was never decided by the judge.  See Exhibit J, pp.7-8. The complete transcript (Exhibit J) shows that Landay dropped his sanctions request because GMAC agreed to stipulate to a continuance of the trial date. The judge denied the remaining portion of the motion

12

(continuance) because he directed that the application should be made to the Office of the Referee to which the case had been already transferred. Exhibit J, p.9

Rather than being "tenuous," the New York aspect of GMAC's conduct respecting Seneca's records is very strong evidence of GMAC's pattern of sharp practices. The strength of this evidence is clearly why GMAC seeks to remove it from the case.

## CONCLUSION

For the reasons stated above, this Motion should be denied.

>Respectfully submitted,
>DAVID L. LANDAY,
>By his attorney,
>
>/s/ Alan R. Hoffman
>Alan R. Hoffman, BBO# 236860
>Lynch, Brewer, Hoffman & Fink, LLP
>101 Federal Street, 22nd Floor
>Boston, MA 02110
>(617) 951-0800

Dated:  December 7, 2005

231517_1