# EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------x

GMAC COMMERCIAL CREDIT LLC, : Index No. 602338/02

        Plaintiff, : IA Part 49
: (Cohn, J.)
– against –
: **AFFIDAVIT IN SUPPORT**
DAVID L. LANDAY, : **OF MOTION AND REQUEST**
: <u>**FOR ORDER TO SHOW CAUSE**</u>
        Defendant.

---------------------------------------------------------------x

STATE OF NEW YORK :
: ss.
COUNTY OF NEW YORK :

    JOSEPH H. EINSTEIN, being duly sworn, deposes and says:

    1.    I am counsel to the firm of Goodkind Labaton Rudoff & Sucharow LLP, attorneys for the defendant herein. I submit this affidavit in the absence of Barry M. Okun of this firm, who has been handling this matter since its inception. Mr. Okun is not available because his wife died on August 29 as the result of mestastic breast cancer. This affidavit is based upon my review of documents and information supplied to me by Mr. Okun.

    2.    This motion is submitted in support of defendant's request for dismissal (or related alternative relief) and sanctions due to plaintiff's deliberate failure to produce an enormous amount of critical documents and computer tapes. During the course of this litigation, counsel for plaintiff has represented to this Court that the material did not exist or could not be found. It is now known that these materials do exist, that they were easily locatable, and that the computer tapes have been in the possession of counsel since the inception of this case.

3. As a result, as will be discussed below, this action should be dismissed. Alternatively, at a minimum, full production should be ordered and the hearing currently on the Referee's calendar for September 20, 2005 should be stayed to provided this firm and defendant and his advisors time to review and analyze these materials.

4. Further, all other circumstances aside, given his unfortunate personal problems, Mr. Okun is unable even to assist in preparing and trying this case at the present time and an adjournment is required.

## BACKGROUND

5. This is an action by plaintiff, GMAC Commercial Credit LLC ("GMAC"), against defendant, David L. Landay ("Landay"), on a guaranty Landay gave GMAC of obligations owed to GMAC by two companies of which Landay was president, Seneca Sports Inc. and Brookfield International, Inc. (the "Companies").

6. GMAC had been providing financing to the Companies, secured by inventory and receivables. Following a default, GMAC seized all of the assets, took exclusive possession of the books and records of the Companies, and liquidated some of their assets.

7. GMAC here seeks to recover an alleged deficiency of $1.2 million against Landay personally.

8. By order entered May 26, 2004 (Exhibit A), this Court granted GMAC's motion for partial summary judgment. This Court agreed with Landay, however, that issues remained including whether GMAC had liquidated the pledged collateral in a commercially reasonable manner. Further discovery was found to be necessary on this subject. Thus, on page 15 of its opinion, this Court ruled that:

> further discovery is necessary to determine whether GMAC
> disposed of the collateral in a commercially reasonable

2

> manner. . . . The record includes documents which may support [defendant's] allegations, particularly with regard to the collection of the accounts receivable and unexplained debits against the collections.

This Court further directed discovery as to the "amount of principal and interest due." All of the issues were referred to an Official Referee for a hearing to be held after the completion of the additional discovery (Exh. A at 17-18).

9. A hearing before an Official Referee currently is scheduled for September 20, 2005.

10. In preparation for that hearing and, indeed, throughout this litigation, Landay has sought production of documents needed to defend himself, including the books and records of the Companies and the data contained in its computers, all of which GMAC had seized. Counsel for GMAC has represented to this Court that GMAC was unable to locate these critical records. That representation now turns out to have been untrue.

11. As will be discussed more fully below, in a companion action pending in the federal court in Boston, GMAC has admitted that these materials exist and it is clear that there was an egregious and willful discovery abuse in this case by plaintiff and its counsel. The documents have been in GMAC's possession all along and counsel himself has been in possession of the computer tapes.

## PRIOR REQUESTS FOR DOCUMENTS

12. During the course of this litigation, Landay repeatedly has sought documents concerning the nature of the collateral and its disposition to show that GMAC did not act in a commercially reasonable manner in disposing of the collateral. In April 2003, our predecessor counsel served a First Request for the Production of Documents (Exhibit B). Item 12 specifically sought detailed information as to the nature and extent of the collateral and its

3

disposition by GMAC. Although GMAC said it would produce responsive documents (see Exhibit C), none were forthcoming. Defendant also propounded two sets of Interrogatories (Exhibits D and E, hereto) that dealt, in part, with this subject. Mr. Okun also sent a letter in lieu of a formal request for documents (Exhibit F) in which defendant requested documents that related to the Interrogatories.

13. These requests sought details as to the assets sold, method of disposition, and other related information, all of which was relevant to the questions of commercial reasonableness and the amount of principal and interest due. Defendant specifically sought identification of each asset and receivable.

14. Plaintiff did not produce any of the original records of the Companies although they were the primary source of this critical information.

15. Upon the Companies' default on GMAC's loan, on or about October 22, 2001, GMAC foreclosed on the collateral underlying the loan and seized all the Companies' assets, including all their books and records. Accordingly, after GMAC's October 2001 seizure, GMAC (not the Companies and Landay) had exclusive possession of the Companies' books and records.

16. In spite of the fact that it had taken possession of the critical records, plaintiff furnished almost no information as to the nature and extent of the collateral and its disposition. The documents that were supplied contained second-hand information culled from other sources. Most importantly, plaintiff did not produce any of the documents it has seized from the Companies or any of the information contained in their computers, which had been downloaded onto tapes.

17. The ostensible reason for this was that GMAC was unable to locate this material.

4

18. Landay moved for relief seeking to compel production and the motion was heard by this Court on April 14, 2005. Mr. Okun apprised this Court that the Companies' books and records had been seized by GMAC, that Landay needed those documents to litigate the open issues, and that GMAC had never produced the documents. I am advised by Mr. Okun that GMAC's counsel did not deny that the Companies' documents had been seized by GMAC, but represented to this Court that GMAC had already conducted a diligent search for them and they could not be located, and that any further search for such documents would be unduly burdensome. While this Court recognized the importance of the documents and Landay's need for them, it commented that GMAC could not be ordered to produce documents that GMAC could not locate, and, on the basis of GMAC's counsel's representations, did not grant any relief to Landay. Indeed, relying on plaintiff's counsel's statements, this Court specifically ruled that since GMAC could not locate the documents, that "the document demand . . . [has] now been complied with" (Transcript of Order dated April 14, 2005, copy annexed as Exhibit G). (The transcript erroneously notes no appearance for the defendant, although Mr. Okun was present.)

19. As described below, the excuse offered by plaintiff's counsel for not producing the records was false.

## THE WILLFUL FAILURE TO PRODUCE CRITICAL DOCUMENTS

20. We have now learned that there is a warehouse in Massachusetts filled with the required documents. It also appears that GMAC's counsel has been in possession of the computer tapes since the beginning of this case. That information was disclosed not in this action but in a related case pending in the federal court in Boston, Massachusetts.

21. In addition to the action before this Court, an action is pending between Landay and GMAC in the United States District Court for the District of Massachusetts entitled *Landay*

5

*v. GMACCF Commercial Credit, LLC, and GMACFF Commercial Finance, LLC*, No. 04-CV-11955-WGY. Discovery in that action is ongoing. We have just been advised by Landay's counsel in that case (Alan Hoffman of the law firm of Lynch Brewer Hoffman & Fink, LLP) that GMAC, in Interrogatory Responses served on or about August 10, 2005, GMAC disclosed that:

> To the best of GMACCF's knowledge, all of the records that GMACCF seized from the borrowers on or about October 22, 2001, either have been produced to Landay in connection with the New York Action and this litigation or are still in the storage facility referenced by Mr. Rijo in his deposition.... The facility is called Armored Self-Storage and is located at 498 Fortune Blvd. in Milford, Mass.

22. Since none of these documents had been produced in this action, the bottom line is that <u>all</u> of the documents long sought in this case are in that warehouse. These are the very same documents that GMAC's counsel had represented to this Court in this case that GMAC had been unable to locate after a diligent search.

23. Now, for the first time, defendant has access to the materials needed to support his position.

24. On August 28, 2005, Mr. Landay was able to gain access to the warehouse in order to survey the extent of these materials. Annexed as Exhibit H is a memo prepared by Landay which details the enormous amount of documents belatedly "discovered" by GMAC on the eve of trial of this action. As noted, Mr. Landay estimates that there are 1 million pages of documents that have now been located. Many of these are of critical importance to the defense of this matter.

25. The August 10, 2005 Interrogatory Response by GMAC in the federal action was the first indication that GMAC was able to locate these records. GMAC's witness, Mr. Rijo, had testified in March 2004 that these records had been placed in storage but had not been able to

6

provide a location. Notwithstanding, GMAC steadfastly stated that it was not able to locate and produce them, most recently taking that position before this Court on April 14, 2005.

26.     This Court has ruled that fact issues exist regarding the "commercial reasonableness" of the disposition of the collateral because, among other things, GMAC had seized more than $2.7 million worth of collateral – more than twice the amount allegedly owed – but yet still claims a deficiency of over $1 million. The bulk of the collateral seized by GMAC consisted of the Companies' inventory and accounts receivable. Key issues to be litigated here concern the amount of GMAC's damages and the "commercial reasonableness" of GMAC's disposition of the collateral. The amounts and value of the collateral seized (including both accounts receivable and inventory), as well as GMAC's collections of the accounts and dispositions of the assets are at issue. The documents and tapes contain an enormous amount of information relevant to these matters.

27.     To date, GMAC has produced, for the most part, only self-serving summary documents pertaining to the accounts receivable and inventory seized, and its collections or dispositions thereof. There is reason to question even the starting numbers GMAC proceeds from, i.e., the value of the assets seized as of the day of seizure. Normally, Landay would be able to test the accuracy of GMAC's documents concerning the collateral and its disposition using the books and records of his Companies. In this case, however, GMAC took those books and records from the Companies and they were not provided during the discovery process in this action.

28.     Thus, Landay was put in an unusual and unfavorable position: attempting to contest GMAC's damage claim and challenge the "commercial reasonableness" of GMAC's disposition of the collateral without access to the Companies' books and records concerning the

7

collateral — including the Companies' inventory, intellectual property, and accounts receivable — because those documents had been seized and warehoused by GMAC. Yet, although GMAC maintained possession, custody, and control of those crucial documents (and although they were clearly called for by the discovery requests herein) they were never produced by GMAC in this lawsuit.

29. It is beyond belief that GMAC was unable to locate these documents, during the course of this litigation, but now, suddenly, is able to do so. GMAC's counsel was not being candid with this Court when he represented at the April 14 conference that GMAC had searched for the Companies' documents but had been unable to find them. Rather, it seems apparent that he was making an unfounded assertion in order to avoid legitimate discovery. This Court declined to order such discovery based on a blatantly false representation by GMAC's counsel who, at a minimum, had not conducted the requisite inquiry of his client.

30. In addition to GMAC's failure to produce the paper books and records it seized from the Companies, GMAC also failed to produce a set of computer back-up tapes made from the Companies' computers at or about the time of the seizure. These tapes also fall squarely within the extant discovery demands.

31. At a deposition held two weeks ago of GMAC employee Kathleen Pappalardo in the Massachusetts Action, Landay's Massachusetts counsel raised the issue of the computer tapes. Once again, Mr. Rijo had testified in April of 2004 as to the creation of these tapes, and stated that they had been sent to GMAC's counsel. Landay's attorney at the time noted that no such tapes had been provided to him by GMAC's counsel. Thereafter, the tapes were not produced and we assumed that counsel's statement that the records could not be found also embraced the tapes.

8

32. Then, at a deposition held on August 19, 2005 in the Massachusetts action, GMAC's counsel in this case, who attended the deposition on behalf of GMAC, suddenly revealed on the record that he had reexamined the materials he had "accumulated since the beginning of this case" and had located five cassettes that he identified as the back-up tapes to which Mr. Rijo had testified. Thus, the tapes, which counsel failed to produce, were in his possession all along. In effect, counsel for GMAC recanted, stating:

> MR. WAGNER: Good morning.
>
> After yesterday's deposition, Mr. Houlihan told me certain questions came up with regard to a computer tape that the witness was asked about, and that there was reference by someone that Mr. Rijo had testified to back-up computer tapes.
>
> Frankly, I didn't know anything about the computer tapes, although I was present at the Rijo deposition.
>
> But at Mr. Houlihan's request, <u>we went back and went through all of the boxes that we have, that we have accumulated since the beginning of this case and, we did find five cassettes that I am going to identify for the record.</u>
>
> These cassettes are the old tape cassettes with actual tape, and they appear to be the back-up tapes that were discussed by Mr. Rijo and asked about yesterday. (Emphasis added)

33. The Companies' computer tapes are as crucial to the testing of GMAC's damage calculation, and its disposition of the collateral, as the Companies' paper books and records. It is astonishing that GMAC's counsel could have had these crucial materials in his office for years and not produced them.

34. Counsel for GMAC has now proposed a procedure to download and recapture this information. (<u>See</u> Exhibit I hereto.)

9

35. This record clearly supports the conclusion that there has been blatant and highly prejudicial discovery abuse. At best, there has been overwhelming sloppiness and disregard for discovery obligations by plaintiff's counsel.

### THIS ACTION SHOULD BE DISMISSED OR OTHER APPROPRIATE RELIEF GRANTED; THE HEARING SHOULD BE STAYED.

36. The facts at bar present a crass case of discovery abuse. After years of asserting that documents could not be found, GMAC now admits (a) that voluminous files were in a specifically identified warehouse and (b) critical computer tapes were held by its counsel. Further, when GMAC's own witness disclosed the existence of the warehouse in its August 10, 2005 Interrogatory Responses in the Massachusetts action, its counsel here totally ignored his obligations under CPLR 3101(h) to provide that information to this firm. Further, we can find no excuse for counsel's having failed to produce material in his own files. (Indeed, we wonder what else those files contain that has not been produced.)

37. This sort of discovery abuse should result in dismissal or preclusion and substantial monetary sanctions; not a slap on the wrist.

38. At a minimum, the September 20 hearing must be adjourned. There is now an enormous amount of material available that must be obtained and analyzed. Mr. Landay and this firm require time to review, sort, and analyze the warehoused documents. The computer tapes have to be converted to usable form and then reviewed and analyzed.

39. GMAC should be ordered to produce all of the "newly" discovered documents in this action, and the hearing currently scheduled for less than a month from now, on September 20, 2005, should be adjourned to give Landay an adequate opportunity to review these extensive documents and use them to prepare for the trial. Given the sheer volume of the documents, and

10

the need to have them reviewed, Landay should be given at least three months from the date full production is made before the hearing is rescheduled.

40. Finally, Mr. Okun has been the attorney working on this case since its inception and was scheduled to conduct the trial. Due to the devastating personal loss he has just suffered, and the time he recently was required to spend attending to his wife while she has been gravely ill, Mr. Okun simply has been unable to focus his time and attention on this matter. Accordingly, for that reason too, an adjournment is required.

41. I respectfully request that this motion be granted and that this Court stay the pending hearing until it has had an opportunity to hear and rule upon this motion.

42. There has been no prior application for the relief herein requested.

_____
Joseph H. Einstein

Sworn to before me this 31st
day of August, 2005

_____
Notary Public

DANETTE L. McKENZIE
NOTARY PUBLIC, State of New York
No. 01MC6087432
Qualified in Queens County
Commission Expires February 18, 20 07

632142 v1

11