# EXHIBIT H

To:   Richard Rosenstein
From: John Rijo
Date: October 22, 2001
RE:   Seneca Sports, Inc.

Richard,

Below is a summary of my afternoon at Seneca today.

- I arrived at Seneca at 1pm and immediately stopped into David Landay's office to notify him I was there and that we needed to talk. He called Neal Finklestein into his office to discuss the current situation.
- I instructed him the first step was for me to gain control of the premises and that I needed to get all copy of keys held by employees and information to contact the security company to change all passwords. David's first reaction was that he needed to have those instructions provided to him by his lawyer but eventually agreed to provide me with my request.
- I also instructed David to notify all employees of the situation and asked him to provide me with an employee listing with contact numbers for future follow up. I also instructed Neal that I would like him, Richard Herman (MIS), and James Hart (Warehouse) to return the next day to help organize needed information and inventory for liquidation.
- David stated that he would be taking certain records with him, including company tax records and payroll information. I instructed him that he could organize everything and make a list of requested information and would have to arrange a time to pick up the information after I had a chance to review it. He did not provide any list to me.
- David expressed concerns that the inventory would be liquidated at too low of cost and that he thought all customers orders outstanding should be filled to maximize the liquidation value.
- After initially meeting with David Landay, I walked out to the warehouse to ensure no further shipping activity. James Hart informed me that one order had been picked up in the morning and two others had scheduled picked ups in the afternoon. I researched the orders and noted that one was to Closeout Wholesalers as was for approximately 40% of cost and the other was to JC Penney Catalog, a customer that has a significant return allowance that may dispute receivable payments. I then returned to the warehouse within a half-hour and noticed the orders being loaded on to trucks. I instructed James Hart to pull all goods off the truck and stop all future shipments until further instructed.
- I called a local locksmith and instructed him to come to Seneca and change the locks. He arrived at approximately 4pm and re-keyed all locks, providing me with the only keys. I also arranged for the security company come to Seneca and change all passwords the next morning.
- Between 3pm and 4pm, the remaining employees finished packing up their personal belonging and began to exit the property. David made a few of phone calls during that time and continued to pack personal belongings. He also made certain copies of records, including some of GMAC's daily cash sheets. I am not aware of any original documents that were removed from the location.
- I set up my computer near the front door and witnessed the employee's departure.
- At 4pm, once all other employees besides Neal had left, I asked David how much longer he planned to be there. He stated he was leaving as soon as he went to the bathroom. Shortly after that he left with his personal belongings.
- I instructed Neal he was free to go and that I would meet with him in the morning to discuss what information I needed from him.
- The locksmith finished re-keying all the doors at approximately 6pm.


DEPOSITION EXHIBIT 134