# EXHIBIT 2

# GMAC COMMERCIAL CREDIT LLC

July 31, 2000

Mr. David L. Landay
President
Seneca Sports, Inc.
75 Fortune Blvd.,
Milford, MA 01757



Dear Mr. Landay:

GMAC Commercial Credit LLC ("GMAC CC") hereby confirms that we have obtained approval from our credit committee, subject to and upon terms and conditions set forth in this letter and the attached Term Sheet of the same date (which is incorporated herein by reference and made a part hereof), to make the factoring and the revolving credit facility outlined in the Term Sheet available to Seneca Sports, Inc. ("Seneca" or the "Company") to provide financing to it in conjunction with the purchase of certain assets of Brookfield International, Inc., ("Brookfield") a subsidiary of CHI Holdings, Inc. and for its ongoing working capital needs. This approval is subject to and dependent on the completion to our satisfaction of certain closing items including but not limited to those listed in the Term Sheet and the following:

1. The execution of legal documentation in form and substance satisfactory to GMAC CC and its counsel, including without limitation third party agreements, waivers and consents deemed necessary or desirable by GMAC CC and its counsel, in their sole discretion.

2. GMAC CC obtaining a first priority perfected security interest in all collateral as outlined in the Term Sheet. In addition all of the specific licenses that Brookfield currently holds and that have been represented to GMAC CC as part of Seneca's business plan must have been transferred to Seneca, with the prior written consent with all licensors, so that all of such licenses may be utilized in Seneca's business operations without any claims of, or interference by, such parties.

3. GMAC CC shall be satisfied with the Sources and Uses of Funds, the Closing Balance Sheet and the initial Borrowing Base Certificate evidencing at least $300,000 of excess availability at the date of closing, pursuant to the Facilities and after the first draw (including Letters of Credit). In addition a standby letter of credit shall be issued to GMAC CC, as beneficiary, as additional collateral to secure GMAC CC's Obligations (in a face amount of not less than $4,100,000 in the aggregate), which must be in form and substance and issued by a financial institution satisfactory to GMAC CC in its sole discretion.

4. David L. Landay shall execute and deliver to GMAC CC a ($3,500,000) personal guaranty of payment to GMAC CC and the total of such guaranty and the standby letter of credit will total not less than $7.6MM. In addition the receipt and review of account statements from Fleet Private Bank shall show holdings of David L. Landay in a amount and structure acceptable to GMAC CC in its sole discretion.

5. There shall not have occurred any material adverse change in the condition, operations, collateral, business, prospects or projected performance of the Company from the date of the start of our due diligence to the date of any future closing. In addition an audit of the Brookfield assets and its backorder position will have

LAN   0263

occurred prior to closing and results must be determined to be acceptable to GMAC CC in its sole discretion.

*·X The standby letter of credit will stay in place until the need for this additional credit support may be reconsidered by GMAC CC, in its sole discretion, which it is not contemplated will be reviewed by GMAC CC, however, prior to the time that the first set of Seneca's audited financial statements are received and reviewed by GMAC CC and are determined to be satisfactory to GMAC CC. A reduction schedule acceptable to GMAC CC in its sole discretion may then be put in place based, among other considerations, upon updated financial projections reasonably in line with the current fiscal year 2001 projections.

The summary of the terms and conditions herein and in the Term Sheet is not meant to be, nor should it be construed as, an attempt to define all of the terms and conditions of the transactions contemplated hereby (collectively, the "Transactions"), nor is it intended to reflect specific document phrasing that will exist in the loan and security agreement or related documentation. This letter and the Term Sheet are intended only to outline the basic points of business understanding around which binding legal documentation will be negotiated and/or structured. Further negotiations will not be precluded by the issuance of this letter, the Term Sheet, or by acceptance by the Company. GMAC CC's commitment is conditional upon settlement, execution and delivery of loan, security and related documents satisfactory to GMAC CC, including without limitation the terms specified in this letter, the Term Sheet and other terms to be specified by GMAC CC.

By your acceptance of this letter, you agree to pay, upon demand by GMAC CC, all legal, appraisal, audit, insurance, search, filing, and other fees, costs and expenses and all liabilities which may be paid or incurred or sustained by GMAC CC or any of its authorized agents in connection with the Transactions, at any time and from time to time, including but not limited to fees for GMAC CC employees at GMAC CC's then standard rates and fees for outside consultants as billed and all liabilities that may be incurred or sustained by GMAC CC or its authorized agents in connection with the Transactions, whether or not the Transactions contemplated herein are consummated. This shall further include, without limitation, all fees, costs and expenses related to due diligence efforts and negotiation and preparation of this letter, all loan and ancillary documentation related to this transaction and any claim or cause of action asserted by the Company or any third party arising out of this letter or the credit facility contemplated hereby (the "Transaction Expenses"). We hereby acknowledge the prior receipt of a $15,000 deposit which upon your execution hereof, we shall apply to the Transaction Expenses pursuant to our letter to you dated June 2, 2000. Subject to the preceding sentence, this letter and the Term Sheet supercedes all prior communications on this subject. The Company is obligated to make continuing deposits to reimburse our out-of-pocket costs upon request. In the event that the Company declines for any reason to borrow from GMAC CC, or the Transactions are not consummated for any reason whatsoever, GMAC CC shall be entitled to retain the full amount of all deposits as compensation for Transaction Expenses paid or incurred and to retain the excess, if any and the entire Closing Fee, as liquidated damages. The Company shall be responsible for, and shall reimburse GMAC CC for and pay to GMAC CC, the amount, if any, by which the Transaction Expenses exceed the deposits hereunder, and the Company's obligation for Transaction Expenses shall survive termination of this letter and the Term Sheet.

By acceptance of this letter, the Company agrees to unconditionally indemnify and hold GMAC CC, its affiliates and GMAC CC's and such affiliates' directors, officers, employees, agents, attorneys and consultants, harmless against and from any and all losses, claims, damages, liabilities and expenses (including fees and disbursements of counsel) that may be paid or incurred by or asserted against any such indemnitees in connection with or arising out of any documentation, litigation, proceeding or other matters related to the financing transactions herein described, this letter, the Term Sheet, or the credit facilities discussed herein, whether or not such indemnitees are parties to such documentation, investigation, litigation, proceeding or other matter and whether or not such financing and/or other Transactions are consummated or any future

documentation executed. GMAC CC and its affiliates shall not be responsible for or liable to the Company or any other person for any special, indirect, punitive, exemplary or consequential damages which may be alleged. The obligations contained in this paragraph will survive the closing of the facilities and/or any termination of this commitment.

THE COMPANY HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING UNDER THIS LETTER, THE TERM SHEET, ANY TRANSACTION RELATING HERETO OR THERETO, OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR THEREWITH, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

This letter, the Term Sheet and all of the loan and other documents contemplated herein and any controversy hereunder shall be governed by the laws of the State of New York and any claim, demand, action, cause of action or proceeding arising thereunder or relating thereto shall be subject to the exclusive jurisdiction of the courts of such state.

The Transactions contemplated by this letter shall close on such date as is mutually satisfactory to the Company and GMAC CC, but no later than 60 days subsequent to your acceptance of this letter and the Term Sheet, unless GMAC CC agrees in writing to any extension. In the event that the Transactions are not closed by such date, or any written extension of such date, GMAC CC shall have the right to terminate this letter and the Term Sheet and GMAC CC shall have no obligation hereunder or thereunder. However, the Company's obligations with respect to Transaction Expenses and its indemnification to GMAC CC shall survive any such termination. GMAC CC and the Company will proceed in good faith towards the closing of this transaction subject to the terms and conditions set forth in this letter and the Term Sheet.

This letter and the Term Sheet has been delivered to you on a confidential basis with the express understanding that neither of such items nor their substance will be disclosed, except to those who maintain a confidential relationship with you (provided that they too do not describe it to others), or where such disclosure is required by law.

If you wish to accept this letter and the Term Sheet, please execute where indicated and return an original signed copy to GMAC CC, together with $50,000 (representing one-half of the total, nonrefundable Closing Fees) and an additional good faith deposit of $40,000. The $40,000 additional good faith deposit and earlier $15,000 deposit referred to above shall be applied to Transaction Expenses and otherwise as set forth above. If closing does not occur for any reason, then GMAC CC shall retain the full amount of these deposits and fees as liquidated damages with no further obligation to the Company or to any other person, but the Company shall pay nevertheless and remain obligated for, the amount, if any, by which the Transaction

LAN     0265

Expenses exceed the deposits. Whether or not closing occurs, the Company shall be responsible for and pay on demand to GMAC CC the amount by which the Transaction Expenses exceed the aggregate $65,000 of deposits referred to above. If GMAC CC does not receive $90,000 and the executed copy of this letter by 5:00 p.m., Tuesday, August 1, 2000, this letter and the Term Sheet shall be automatically withdrawn, and we shall have no obligation hereunder or thereunder.

Sincerely,

GMAC Commercial Credit LLC


By: _____
Paul F. FitzGerald
Senior Vice President

ACCEPTED AND AGREED TO:

Seneca Sports, Inc.


By: _____
David L. Landay
President
Date: _____

07/31/00

C:\Kab\Brant\Mastcind.doc

LAN    0266

7/31/00 TERM SHEET

$10,000,000 Revolving Credit Facility and Factoring Agreement

Subject to the 7/26/00 Cover Letter
                              31
                                                                    DCC

Borrower:                   Seneca Sports, Inc. ("Seneca")

Guarantor:                  David Landay (covering payment of $3,500,000 of principal,
                                together with all related interest, fees, costs and
                                expenses (the "Personal Guaranty"))

Lender/Factor:              GMAC Commercial Credit LLC ("GMAC CC")

Facilities:                 Discretionary Revolving Advances and Loans up to the lesser of:

                            (I)     $10,000,000 ("Line of Credit"); or

                            (II)    The Sum of:

                                    (a) Up to 90% of Eligible Credit Approved Receivables, plus

                                    (b) Up to 50% of Eligible Inventory capped at $2,500,000,
                                        plus

                                    (c) 100% of the Net Amount of a Standby Letter
                                        of Credit (in a face amount of not less than
                                        $4,100,000 in the aggregate), in form and
                                        substance and issued by a financial
                                        institution satisfactory to GMAC CC in its
                                        sole discretion (the "Standby Letter of
                                        Credit"), plus

                                    (d) A $500,000 seasonal overadvance during the months of
                                        May through October of fiscal year 2001, less

                                    (e) Reserves to be determined by GMAC CC in its sole
                                        discretion

                            Sublimit of $500,000 within the above limits for Letters of Credit.

                            All Advances and Loans and Letters of Credit are offered on a
                            discretionary basis.

Borrowing Rate:             The rate shall be the GMAC CC Alternate Base Rate ("ABR") plus
                            1.25% per annum. ABR shall mean, for any day, a rate per
                            annum equal to the higher of (I) The Bank of New York Prime
                            Rate in effect on such day and (ii) the Federal Funds Rate in
                            effect on such day plus ½%.

L060

| | |
|---|---|
| Unused Line of Credit: | 0.25% per annum payable quarterly on the unused portion of the Line of Credit. |
| Letter of Credit Rate: | 3.00% per annum plus all applicable bank related activity charges. |
| Closing Fee: | $100,000, which will be non-refundable, payable to and for the sole account of GMAC CC as follows: $50,000 with the signing of the attached letter and the balance at closing. |
| Default Rate: | During the continuance of an Event of Default and after maturity, the Borrowing Rate will increase by an additional 2% per annum. |
| Collateral: | A first priority, perfected security interest in and lien on all of Seneca's: (a) present, future and wherever located assets, including but not limited to, all accounts, inventory, contract rights, all rights to the payment of money, instruments, documents, chattel paper, general intangibles (including but not limited to patents, trademarks, trade styles, and trade names whether owned or licensed), and all machinery, equipment, fixtures and real estate, and (b) right, title and interest in and under their purchase agreement in respect of Brookfield International, Inc., a subsidiary of CHI Holdings, Inc. ("Brookfield") or its assets ("Purchase Agreement Collateral Assignment"); and (c) all proceeds and products thereof. |
| Eligible Credit Approved Receivables: | All bona fide accounts receivable created by Seneca in the ordinary course of business which have been credit approved by GMAC CC and which meet all of GMAC CC's other eligibility criteria in effect from time to time in its sole credit judgment and which are otherwise acceptable to GMAC CC in all respect at all times. |
| Eligible Inventory: | All finished goods inventory of Seneca which meets GMAC CC's then prevailing eligibility criteria including, but not limited to, location within the United States and on premises owned by Seneca or, if on leased or mortgaged premises, where landlord or mortgagee waivers have been provided in form and substance acceptable to GMAC CC in its sole discretion, or inventory in transit for which title has passed to Seneca, which is insured to the full value thereof and for which GMAC CC shall have in its possession (a) all negotiable bills of lading properly endorsed and (b) all non-negotiable bills of lading issued in GMAC CC's name. Additional standards of eligibility may be applied from time to time solely by GMAC CC, in GMAC CC's sole credit judgment exercised in good faith. |

L060

6

LAN    0268

| Reserves: | The sum of all ineligible receivables, disputed items, deductions, allowances, credits, consignment sales, letters of credit, steamship guaranties, airway releases, and any other offsets asserted or granted, ineligible inventory including but not limited to packaging materials, samples, work-in-process, and such additional reserves, whether or not related to receivables or inventory deemed appropriate in GMAC CC's sole discretion. |

## FACTORING AGREEMENT

| Contract Type: | Purchase of all receivables of Seneca on a full notification basis using collection accounting methodology. Collection, ledgering, bookkeeping, and remittance posting will be performed by GMAC CC with all proceeds to be received through a GMAC CC lockbox. All sales credit approvals will be in the sole discretion of GMAC CC. |
| --- | --- |
| Factoring Commission: | GMAC will receive a commission of 0.65% of domestic receivables and 1.20% of foreign receivables, plus .25% of any receivable for each 30 days (or portion thereof) in excess of 60 days of selling terms, but in no event less than $5.00 per invoice. Without limiting GMAC CC's discretion, in no event will credit approvals be issued for foreign receivables unless (a) the receivable is insured on terms and conditions and by a credit insurer acceptable to GMAC CC, (b) the receivable is covered by a letter of credit in form and substance and issued by a financial institution acceptable to GMAC CC or (c) a foreign factor acceptable to GMAC CC assumes the credit risk. |
| Minimum Annual Sales Volume: | $20,000,000 per year or part thereof. |
| Collection Days: | Three (3) business days. |
| **Other:** Crossing: | All Obligations to GMAC CC will be cross defaulted, cross collateralized and cross acceleratable in all respects. |
| Term: | Thirty-six (36) months from closing. Thereafter, the agreement will automatically renew annually unless terminated by Seneca or GMAC CC with 90 days written notice prior to the end of the initial three year term or at the end of any subsequent one year renewal term. Subject also to GMAC's standard termination rights. |
| Mandatory Prepayments: | Customary mandatory prepayment provisions to be negotiated, in relation to disposition of Seneca's assets. |

7

L060

LAN    0269

Collateral Reporting:      Daily sales and credit assignments to be transmitted electronically in form and substance acceptable to GMAC CC.

Weekly inventory designations to be submitted in form and substance acceptable to GMAC CC.

Financial Reporting:      Annual certified financial statements by a certified public accountant firm acceptable to GMAC CC in its sole discretion, and monthly internal financial statements, in each instance in form and substance acceptable to GMAC. All statements must also be certified by CFO of Seneca.

Other Reporting:      Annual projections of operating status, balance sheet and cash flow portrayed on a monthly basis. Other financial information and disclosure in form and substance and at intervals satisfactory to GMAC CC in its sole discretion.

Documentation:      In form and substance satisfactory to GMAC CC and its counsel, concerning matters set forth herein and others to be specified by GMAC CC.

Covenants, Representations, and Warranties:      The credit agreement will include limitations on other indebtedness, limitations on shareholder loans or withdrawals, and other covenants, warranties and representations, etc. which are usually required by GMAC CC in comparable situations. Without limiting the foregoing in any way, the agreement will require compliance with the borrowing base availability as represented in Seneca's business plans and projections submitted to GMAC CC.

Financial Covenants:      To be negotiated, and shall include, but not be limited to Tangible Net Worth, Minimum Fixed Charge Coverage Ratio, Minimum Interest Coverage, Maximum Losses and Capital Expenditure Covenants.

Audits/Appraisals:      Audits and/or appraisals may be performed at any time. Seneca pays all costs and expenses incurred by GMAC CC plus the then standard per diem charge of GMAC CC for each internal examiner or auditor. Any outside auditor, examiner, or appraiser services and expenses will be paid by Seneca as billed

Legal Costs:      Seneca pays all legal fees, costs and expenses incurred by GMAC CC, whether or not the transactions close.

Early Termination:      Seneca may terminate the facility at any time during the initial 36 month period or during any renewal year upon 90 day

L060

8

written notice to GMAC upon payment of a termination fee and all other obligations including, but not limited to, the minimum commission for the then remaining balance of the term. The Termination Fee shall be equal to 3% of the Line of Credit if termination occurs during the first contract year, 2% of the Line of Credit if termination occurs during the second contract year, and 1% of the Line of Credit if terminated during and prior to the end of the third contract year or in any renewal year.

**Conditions Precedent:** Usual and customary for transactions at this size, type and purpose including but not limited to:

A. Seneca furnishing GMAC CC with all financial information, projections, budgets, business plans, cash flows and such other information as GMAC CC may request.

B. Satisfactory legal review of the proposed transactions and loan structure and execution of loan documents, all in form and substance satisfactory to GMAC CC and its counsel. Such loan documents will contain such provisions, representations, warranties, conditions, covenants, and events of default as are usual and customary for transactions of such a size, type and purpose and which are otherwise acceptable to GMAC CC and its counsel.

C. GMAC CC's review and satisfaction with documentation evidencing the subordination of loans of Seneca due to David Landay in an aggregate principal amount outstanding of not less than $2,900.000. The corporate and capital structure of Seneca prior to closing must be acceptable to GMAC CC in its sole discretion.

D. David Landay's Personal Guaranty and the Standby Letter of Credit, in each instance in form and substance acceptable to GMAC CC in its sole discretion, with the aggregate amount of the Standby Letter of Credit and the Personal Guaranty not to be less than $7,600,000.

E. The excess availability under the lending formulas provided for above and subject to all applicable sublimits and to Reserves shall not be less than $300,000 at the closing, after the payment of all fees and expenses of the transactions and the application of the proceeds of the initial loans. The accounts payable of Seneca as of the closing shall be at a level and in a condition acceptable to GMAC CC in its sole discretion.

9

L060

F.  No material adverse change in the financial condition, operation, business, assets or prospects of Seneca.

G.  Absence of material litigation.

H.  Evidence of insurance coverage on Seneca's business operations, as well as all Collateral, with a Loss Payable Endorsement naming GMAC CC as loss payee, in form and substance and from carriers acceptable to GMAC CC and its counsel in their sole discretion.

I.  Evidence of liability insurance, in form and substance and from carriers acceptable to GMAC CC in its sole discretion and in amounts and covering risks customarily insured against by similar businesses.

J.  Receipt of consents, waivers and other third party documentation, as GMAC CC and its counsel determine are necessary or desirable, including but not limited to: (i) the Purchase Agreement Collateral Assignment; (ii) such documentation necessary to transfer all licenses utilized by Brookfield, for use in Seneca's business operations; and (iii) any landlords, licensors and others that might assert rights or claims against the Collateral.

| | |
|---|---|
| Indemnification: | Seneca shall unconditionally indemnify GMAC CC and hold GMAC CC harmless from and against any and all losses, claims, damages and causes of action arising out of or relating to the facilities. |
| Events of Default: | Usual and customary for facilities of this size, type and purpose, including without limitation: nonpayment, misrepresentation, breach of covenant, bankruptcy, ERISA problems, cross-defaults and judgments. |
| Governing Law/Courts/ Submission to Jurisdiction: | New York State Law and Federal and State Courts in New York County, New York. |

10

L060

LAN    0272