UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DAVID L. LANDAY<br>Plaintiff,<br><br>v.<br><br>GMAC COMMERCIAL CREDIT LLC<br>and GMAC COMMERCIAL FINANCE<br>LLC,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 04-cv-11955-WGY |

**DEFENDANTS' STATEMENT OF DISPUTED FACTS
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and Local R. 56.1, Defendant GMAC CF submits the following statement of disputed facts and additional material facts in support of its opposition to Plaintiff David L. Landay's motion for summary judgment on his usury count. *See* Docket No. 50. Any disputes over the facts referenced herein do not impact GMAC CF's own motion for summary judgment (Docket No. 52), as GMAC CF, for purposes of that motion, had presented such disputes in the light most favorable to Landay. For purposes of Landay's motion, however, GMAC CF is entitled to all favorable factual inferences. *See Skinner v. Cunningham*, 2005 WL 3116552, *1 (1st Cir. Nov. 23, 2005).

**Statement of Disputed Facts**

GMAC CF disputes Landay's statement in Paragraph 3 of his Statement of Material Facts that he "continues to be a secured creditor of Seneca with a perfected security interest in all of Seneca's assets," especially insofar as it contains statements of law regarding Landay's status as a "secured creditor" of Seneca and Landay's alleged possession of a "perfected security interest" in all of Seneca's assets. Moreover, Landay's factual evidence is limited to the information he

provided in response to GMAC CF's discovery requests. GMAC CF had asked Landay in an interrogatory, served pursuant to Fed. R. Civ. P. 33 on August 5, 2005, to state the basis for his claim that he was a secured creditor of Seneca. Defendant's First Set of Interrogatories at 4 (Interrogatory No. 4). *See* Affidavit of Mark B. Dubnoff ("Dubnoff Aff.")[1] ¶ 3 & Ex. 1. Landay responded with the following answer, served on September 6, 2005:

> As of September 19, 2000, Landay had loaned Seneca a total of $3,450,000. Seneca executed notes evidencing this debt and provided Landay with a security interest in all assets to secure such debt. These loans and their related security interest predated GMAC's loan to Seneca/Brookfield. All of the notes and security documents should be among the Seneca/Brookfield documents confiscated by GMAC and in its possession, custody and control. Landay would have to have ready access to those documents to describe the notes and security documents with greater specificity. Although he understands that some documents were delivered to counsel on Tuesday morning September 6, 2005, there has been insufficient time to review them before answering. The various notes were consolidated into a note dated 9/19/00 of which GMAC has a copy and which is referred to in paragraph 1 of the Subordination Agreement.

Plaintiff David L. Landay's Answers to Defendants' First Set of Interrogatories at 3 (Answer No. 4). Dubnoff Aff. ¶ 4 & Ex. 2. GMAC CF then invited Landay to review all of the Seneca/Brookfield documents he needed to review in order to supplement his interrogatory response. Dubnoff Aff. ¶ 7 & Ex. 5. Landay has not supplemented his response to Interrogatory No. 4. Dubnoff Aff. ¶ 8. On or about August 5, 2005, GMAC CF served Landay with a request, pursuant to Fed. R. Civ. P. 34, for all documents concerning his "claim to be a 'secured creditor' of Seneca Sports, Inc." Defendant's First Request for Production of Documents at 3 (Request No. 7). *See* Dubnoff Aff. ¶ 5 & Ex. 3. Landay responded by stating that subject to objections, he would "produce such documents, if any, that are in his possession, custody or control." Plaintiff David L. Landay's Answers to Defendants' First Request for Production of Documents at 4 (Response No. 7). Dubnoff Aff. ¶ 6 & Ex. 4. Landay did not produce any documents showing

---

[1] A copy of the Dubnoff Affidavit is attached as Exhibit A.

that he made any U.C.C. filings regarding an alleged security interest in Seneca with the Secretary of State's Office in Massachusetts after March 21, 1996, or with the Secretary of State's Office in Delaware at any time. According to the public records maintained by the Secretary of State's offices in Massachusetts and Delaware, Landay does not have any current financing statements naming Seneca or Brookfield as debtors and Landay as the secured party on file in either state. Affidavit of Katie E.P. Shean ¶¶ 3-4;[2] Affidavit of Judy Radoccia ¶¶ 3-4.[3] Additionally, while Landay has attached a document titled "Security Agreement" to his affidavit in support of his summary judgment motion, that document refers to a promissory note to Landay valued only at $250,000, not $3.5 million. *See* Landay Aff., Ex. 2 at p.2.

GMAC CF disputes Landay's statement in Paragraph 5 of his Statement of Material Facts that he actually loaned $3,450,000 to Seneca prior to September 19, 2000. Landay has not provided any proof of the amount loaned, and Neal J. Finklestein, the former controller of Seneca, could not locate documents supporting such a claim. *See* Deposition of Neal J. Finklestein[4] 134:17-137:3. Furthermore, as stated above, while Landay has attached a document titled "Security Agreement" to his affidavit in support of his summary judgment motion, that document refers to a promissory note to Landay valued only at $250,000, not $3.5 million. *See* Landay Aff., Ex. 2 at p.2.

GMAC CF disputes Landay's statement in Paragraph 6 of his Statement of Material Facts that "GMAC funded its Loan to the Borrowers" on September 19, 2000, insofar as it implies that there was only one loan that GMAC CF made to the Borrowers under the Factoring Agreement. In fact, the credit arrangement was not a single loan, but multiple advances. Under the Factoring Agreement's terms, when the Borrowers sold goods on open account, they would sell the

---

[2] A copy of the Shean affidavit is attached as Exhibit B.
[3] A copy of the Radoccia affidavit is attached as Exhibit C.
[4] Copies of the cited pages from Finklestein's minuscript are attached as Exhibit D.

resulting account receivable to GMAC CF for a price equal to the face amount of the account price minus a commission. *See* Factoring Agreement at 1, ¶ 3. GMAC CF did not have to pay the Borrowers for that receivable until after it had collected the proceeds from the purchaser. *Id.* However, while the Borrowers were waiting for such a payment, they could seek an interest-bearing advance from GMAC CF. *Id.* at 1-2, ¶ 4. Assuming GMAC CF exercised its discretion to make such an advance, when GMAC CF collected that specific receivable, it paid the Borrowers the purchase price due for it, the Borrowers would use that money to repay the advance. *Id.* Thus, the financing arrangement embodied in the Factoring Agreement was not a single isolated loan; rather, it was a series of discrete monetary advances that were each tied to a specific account receivable. *See generally id.* As a result, most of the advances that GMAC CF made to the Borrowers under the Factoring Agreement did not occur until long after September 19, 2000. *Id.*

GMAC CF disputes Landay's statement in Paragraph 7 of his Statement of Material Facts, insofar as it implies that all "credit was extended" prior to September 22, 2000. Because each advance was made on a Borrowers new request, and was separately considered by GMAC CF, and for reasons stated in the preceding paragraph, the Factoring Agreement contemplated that most of the credit would be extended after September 22, 2000.

GMAC CF disputes the entirety of Landay's statement in Paragraph 18 of his Statement of Material Facts, especially insofar as it purports to contain statements of law regarding the proper interpretation of the Massachusetts usury statute. Between October 22, 2001 and January 31, 2003, GMAC CF charged only $144,922.08 in actual interest charges against the Borrowers' account. *See* Deposition of Kathleen A. Pappalardo of August 18, 2005, 13:24-14:3,

38:5-25 & Deposition Exhibits 3, 4 and 58.[5] While Landay's purported expert, Keith D. Lowey, submitted a Report[6], in which he opines that GMAC CF charged the Borrowers a total of $411,480.80 in usury-related charges between October 22, 2001 and January 31, 2003, *see* Statement of Undisputed Facts ¶ 84, Lowey's calculation erroneously included a $56,908.22 payment that GMAC CF made to cover Disney's draw on a letter of credit issued at the request of, and for the benefit of, the Borrowers, *id.* ¶ 87, as well as at least $71,204.47 in legal fees incurred by GMAC CF in connection with its efforts to collect the Borrowers' debt. *Id.* ¶ 88. Additionally, Lowey's Report included within the usury tabulation such things as "overadvance charges," which were assessed because the Borrowers had borrowed too much against accounts receivable; "commission charges," which were applied because the Borrowers had failed to meet a minimum sales target; wire charges; bank and other charges incurred by GMAC CF in connection with the Disney letter of credit; and unused line fees. *Id.* ¶ 86.

GMAC CF disputes the entirety of Landay's statement in Paragraph 19 of his Statement of Material Facts, especially insofar as it purports to contain statements of law regarding the interpretation of the Massachusetts usury statute. As stated above, the actual interest charges that GMAC CF assessed against the Borrowers' account between October 22, 2001 and January 31, 2003, totaled only $144,922.08, which amounted to an annualized rate of far less than 28.02 percent. *See* Deposition of Kathleen A. Pappalardo of August 18, 2005, 13:24-14:3, 38:5-25 & Deposition Exhibits 3, 4 and 58. Lowey's opinions about what charges may be considered

---

[5] Copies of the cited portions of Pappalardo's minuscript were attached as Exhibit 18 to the Appendix of Exhibits that GMAC CF filed in support of its motion for summary judgment. *See* Docket No. 55. GMAC CF accepts Landay's claim that true and accurate copies of Deposition Exhibits 3, 4 and 58 are attached to his statement of undisputed facts.

[6] On December 13, 2005, GMAC CF filed a motion *in limine* to exclude Lowey's testimony. (*See* Docket No. 60.) GMAC CF refers to Lowey's testimony in connection with its opposition to Landay's motion for partial summary judgment as to the Count II usury claim only because Landay relies upon the Lowey Report in support of his motion. For thr easons stated in its motion *in limine* to exclude Lowey's testimony, GMAC CF continues to argue that this Court should decline to admit Mr. Lowey's Report and testimony – particularly as they relate to the Count II usury issue.

interest under the Massachusetts usury statute are inadmissible for reasons stated in GMAC CF's motion *in limine* to preclude his testimony (Docket Nos. 60-61). Furthermore, the $121,822.98 figure referenced in Paragraph 19 of Landay's Statement of Facts comes from a Supplemental Report that was stricken as to its damage estimate. *See* Electronic Order, December 13, 2005.

### Statement of Additional Material Facts

GMAC CF relies on and incorporates its Statement of Undisputed Material Facts (Docket No. 54) and Appendix of Exhibits (Docket No. 55) to the extent those documents contain evidence of additional material facts that relate to Landay's motion for summary judgment on his usury claim, including but not limited to those facts referenced in Paragraphs 2, 5-13, 26-36, 49, 60-70, 76-78, 81 and 84-92, of GMAC CF's Statement of Undisputed Material Facts. GMAC CF further states as follows:

1. Before entering into the 2000 Loan Agreement with GMAC CF, Seneca had a multi-million dollar financing arrangement with Bank of Boston. Landay Dep. Oct. 18, 2005, 35:13-19.[7]

2. Landay, on behalf of Seneca, approached Bank of Boston in early 2000 for the purpose of obtaining additional financing to acquire Brookfield. *Id.* 36:24-37:9. Bank of Boston informed Landay that because of its pending merger with Fleet Bank on April 1, 2000, it would not be able to provide Seneca with the financing to acquire Brookfield. *Id.* 37:14-24.

3. Landay, on behalf of Seneca, then sought financing from other lenders in the Boston area, such as Wells Fargo and General Electric. *Id.* 41:11-18. None of those entities agreed to provide such financing to Seneca. *Id.* 42:1-44:11.

4. When Wells Fargo refused the financing, Landay, on behalf of Seneca, turned to GMAC CF. *Id.* 42:14-43:8.

---

[7] Copies of all cited pages of Landay's minuscript are attached as Exhibit E to this document.

5.      Gary L. Hoff of the law firm Casner & Edwards, LLP represented Landay and the Borrowers throughout their negotiations with GMAC CF over the 2000 Loan Agreement. *Id.* 11:23-12:1; Affidavit of Louis G. Marcus ("Marcus Aff.")[8] ¶ 6. GMAC CF was represented by Louis G. Marcus, who was licensed in New York and worked out of New York City. *See* Marcus Aff. ¶¶ 1-4. Prior to the closing, Marcus and Hoff had several interstate communications by telephone and facsimile regarding the proposed loan agreement. *Id.* ¶ 6.

6.      The closing of the 2000 Loan Agreement took place in Marcus's office in New York City on or about September 19, 2000. *Id.* ¶ 7. Landay and Hoff met with Marcus and his assistants for many hours in New York City before agreeing on the final terms of the 2000 Loan Agreement. *Id.*

7.      In conjunction with the 2000 Loan Agreement, Casner & Edwards, LLP, provided GMAC CF with a letter dated September 19, 2000. Marcus Aff. ¶ 8 & Ex. 3. In the letter, Casner & Edwards, LLP, Landay's and the Borrowers' counsel stated that it was of the opinion that "[a] court sitting in Massachusetts would give effect to the choice of laws provision of the Factoring Agreement and other Loan Documents." *Id.* Ex. 3 at 5.

8.      Landay is currently suing Gary L. Hoff, Casner & Edwards, LLP, and other attorneys in Massachusetts Superior Court for Suffolk County in a case docketed at Number 03-5879E.[9] In a deposition in that case, Landay stated that Hoff and Casner & Edwards, LLP should have advised him not to sign documents governed by the laws of the state of New York. Among the claims that Landay raises in that lawsuit is that Hoff failed to explain to him the language in his Guaranty that he was waiving his right to assert defenses, offsets or

---

[8]     A copy of the Marcus affidavit is attached as Exhibit F to this document.
[9]     A copy of Landay's Complaint in that case is attached as Exhibit G.

counterclaims on the Guaranty, and that the Guaranty would be governed by New York law. Exhibit G ¶¶ 19, 22(c), 23.; Landay Dep. 123:20-124:15.

9. Pursuant to GMAC CF's general practices and procedures, all North American transfers of United States and Canadian dollars to commercial service clients, like Seneca and Brookfield, are made by wire from GMAC CF's New York offices. No money would have been wired to Seneca or Brookfield from a Massachusetts location. Affidavit of Jeffrey F. Hegel ¶¶3-4.[10]

DATED: December 14, 2005

/s/ John A. Houlihan
/s/ Mark B. Dubnoff
John A. Houlihan (BBO # 542038)
Mark B. Dubnoff (BBO # 637212)
EDWARDS ANGELL PALMER & DODGE LLP
101 Federal Street
Boston, MA 02110
(617) 439-4444

---

[10] A copy of the Hegel affidavit is attached as Exhibit H.

BOS_513581_2/MDUBNOFF