# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID L. LANDAY | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-cv-11955-WGY |
| | ) |
| GMAC COMMERCIAL CREDIT LLC | ) |
| and GMAC COMMERCIAL FINANCE | ) |
| LLC, | ) |
| Defendants. | ) |

## AFFIDAVIT OF MARK B. DUBNOFF IN SUPPORT OF GMAC CF'S OPPOSITIONTO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

I, Mark B. Dubnoff, upon oath, depose and state as follows:

1.      I am over 18 years of age, am competent to testify, and have personal knowledge of the facts set forth herein.

2.      I am an attorney with Edwards Angell Palmer & Dodge LLP, which represents the defendants in this lawsuit.  I am an active member in good standing of the bars of the United States Courts of Appeals for the First Circuit and the Ninth Circuit, the United States District Court for the District of Massachusetts and the Supreme Judicial Court of the Commonwealth of Massachusetts.

3.      The document attached as Exhibit 1 is a true and accurate copy of Defendant's First Set of Interrogatories in the above-captioned case, which I served upon plaintiff's counsel on or about August 5, 2005.

4.      The document attached as Exhibit 2 to this affidavit is a true and accurate copy of Plaintiff David L. Landay's Answers to Defendants' First Set of Interrogatories, which I received from plaintiff's counsel on or about September 7, 2005.

5.    The document attached as Exhibit 3 is a true and accurate copy of Defendant's First Request for Production of Documents, which I served upon plaintiff's counsel on or about August 5, 2005.

6.    The document attached as Exhibit 4 to this affidavit is a true and accurate copy of Plaintiff's Response to Defendant's First Request for Production of Documents, which I received from plaintiff's counsel on or about September 7, 2005.

7.    The document attached as Exhibit 5 is a true and accurate copy of a letter that I wrote and transmitted to plaintiff's counsel on or about September 8, 2005.

8.    As of the date of the execution of this affidavit, I have not received any supplementation of Plaintiff's Responses to Defendant's First Set of Interrogatories.

SWORN TO AND SUBSCRIBED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 14th DAY OF DECEMBER 2005.

Mark B. Dubnoff

BOS_513613_1.DOC/MDUBNOFF

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DAVID L. LANDAY<br>    Plaintiff,<br><br>v.<br><br>GMAC COMMERCIAL CREDIT LLC<br>and GMAC COMMERCIAL FINANCE<br>LLC,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 04-cv-11955-WGY |

## DEFENDANT'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant GMAC Commercial Finance LLC ("GMACCF" or "Defendant")[1] propounds the following set of interrogatories to Plaintiff David L. Landay ("Landay" or "Plaintiff").

## DEFINITIONS AND INSTRUCTIONS

1.      Plaintiff shall answer these interrogatories under oath within 30 days of the date of service.

2.      Defendant adopts and incorporates by reference the Uniform Definitions in Discovery Requests set forth in Local Rule 26.5(C) of this Court.

3.      The terms "and" and "or" mean "and/or."

4.      Any word written in the singular shall be construed as plural or vice versa, and any masculine word shall be construed as feminine or vice versa, where necessary to facilitate the response to a request.

5.      The term "you" means the party on whom these interrogatories are propounded, together with that party's agents, servants, and representatives.

6.      "GMACCF" and/or "GMAC" means GMAC Commercial Finance LLC and all subsidiary and other affiliated companies thereof, and any of their respective officers, principals, agents, employees, or attorneys.

7.      "Landay" means David L. Landay.

---

[1]      GMAC Commercial Finance LLC is the successor by merger of GMAC Commercial Credit LLC and GMAC Business Credit LLC.  In the interest of avoiding confusion, all three companies are referred to as GMACCF.

8.    The term "Complaint" as used herein refers to the First Amended Complaint filed in the above-captioned case, Civil Action No. 04-11955-WGY, in the United States District Court for the District of Massachusetts, and the allegations contained therein.

9.    The term "Answer" as used herein refers to the Answer that GMACCF filed in the above-captioned case, which was docketed on January 27, 2005, and is listed as item number 7 in the court's docket.

10.    The term "Factoring Agreement" as used herein refers to the document attached as Exhibit 1 to GMACCF's Answer.

11.    The term "Guaranty" as used herein refers to the document attached as Exhibit 2 to GMACCF's Answer.

12.    The term "Subordination Agreement" as used herein refers to the document attached as Exhibit 4 to GMACCF's Answer.

13.    The term "Forbearance Agreement" as used herein refers to the document attached as Exhibit 6 to GMACCF's Answer.

14.    The term "Ratification and Amendment of Guaranty" as used herein refers to the document attached as Exhibit 7 to GMACCF's Answer.

15.    The term "Loan Agreements" refers collectively to the Factoring Agreement, the Guaranty, the Subordination Agreement, the Forbearance Agreement, and the Ratification and Amendment of Guaranty, along with any ancillary agreements.

16.    If any information responsive to any of these interrogatories is withheld on the ground of privilege, please specify the nature of the asserted privilege and fully explain the basis for withholding the information.

17.    In answering interrogatories that ask you to state the basis of an allegation or contention, please be sure to comply with Local Rule 26.5(c)(8).

18.    These interrogatories will be deemed to be continuing so as to require supplemental answers pursuant to Fed. R. Civ. P. 26(e) whenever Landay comes into the possession of new knowledge or information responsive to the interrogatories. Landay shall comply with all of his obligations under Fed. R. Civ. P. 26(e) with regard to supplementation.

## INTERROGATORIES

1.    Identify any false statements that you have made to GMACCF in connection with the Loan Agreements, orally or in writing, including any false statements regarding your personal finances.

2.    Please identify each person whom you expect to call as an expert witness at trial of this matter, and for each such person, please state: the subject matter on which the purported expert is expected to testify; the substance of the facts and opinions to which the purported

- 2 -

expert is expected to testify; all documents that reflect the facts to which the purported expert is expected to testify; and all documents and things which each purported expert used, referred to, or consulted in formulating the opinions on which he is expected to testify.

3.    State the basis for the allegation in Paragraph 10 of the Complaint that "Fitzgerald represented to Landay that GMAC would look first to the assets of Seneca and Brookfield to satisfy any debt before it would seek to satisfy debt from Landay or any assets that Landay might provide personally as collateral."

4.    State the basis for the allegation in Paragraph 15 of the Complaint that Landay was "a secured creditor" of Seneca as of September 19, 2000.

5.    Identify all creditors of Seneca other than GMACCF and yourself as of October 22, 2001, by their names and amounts of indebtedness.

6.    State the basis for the allegation in Paragraph 18 of the Complaint that in early 2001 "GMAC reaffirmed its obligation to provide the Seasonal Overadvance and stated its intention to make those funds available."

7.    Identify all of the "other advances" that you reference in Paragraph 21 of the Complaint.

8.    State the basis for the allegation in Paragraph 22 of the Complaint that "[a]s a result of GMAC's actions, Seneca and Brookfield lost sales."

9.    State the basis for the allegation in Paragraph 51 of the Complaint that after October 22, 2001, "GMAC and its agent RAS proceeded to dispose of the assets of Seneca and Brookfield in an irresponsible fashion, not designed in any way to maximize collection but, rather in derogation of Landay's rights as a guarantor, a creditor and a shareholder of Seneca and Brookfield."

10.    State the basis for the allegation in Paragraph 53 of the Complaint that "GMAC's disposition of Seneca and Brookfield amounted to waste."

11.    State the value that you believe GMAC should have been able to obtain for "the assets of Seneca and Brookfield" and state the basis for your belief.

12.    State the basis for the allegation contained in paragraph 56 of the Amended Complaint that "[a]ccording to Landay's calculations, the day he was excluded from the premises, the assets of Seneca and Brookfield were more than sufficient to satisfy the net balance allegedly due to GMAC and, in fact, there were sufficient assets to entitle Landay to a refund of some of the $5,300,000 collateral GMAC collected from him.

13.    State the basis for your contention in Paragraph 63 of the Complaint that "[e]ach time GMAC represented to Landay that it would make the Seasonal Overadvance, it had a preconceived intent not to do so."

14.     State the basis for the allegation in Paragraph 67 of the Complaint that "GMAC's transactions with Seneca, Brookfield and Landay were in violation of the Massachusetts usury statute (M.G.L. 271, Section 49)."

15.     State the basis for the allegation in Paragraph 71 of the Complaint that as a result of GMACCF's alleged usury, Landay suffered damages, "including but not limited to the $5,350,000 [Landay has] already paid to GMAC."

16.     State the basis for the allegation in Paragraph 90 of the Complaint that as a result of GMACCF's alleged violation of Landay's rights as a junior creditor, "Landay, as guarantor and creditor, has been damaged in an amount ... no less than $3,450,000."

17.     State the basis for your claim that GMACCF violated Section 11 of Massachusetts General Laws, Chapter 93A.

GMAC COMMERCIAL FINANCE LLC

John A. Houlihan (BBO # 542038)
Mark B. Dubnoff (BBO # 637212)
Edwards & Angell, LLP
101 Federal Street
Boston, MA 02110
(617) 439-4444

DATED:     August 5, 2005

## CERTIFICATE OF SERVICE

I, Mark B. Dubnoff, hereby certify that on this 5th day of August, 2005, I caused a copy of the foregoing document to be sent by hand delivery to Alan R. Hoffman, Lynch, Brewer, Hoffman & Fink, LLP, 101 Federal Street, Boston, MA 02110, counsel for David L. Landay.

Mark B. Dubnoff

BOS_498501_2/MDUBNOFF

# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-CV-11955-WGY

DAVID L. LANDAY,                           )
                                           )
            Plaintiff,                     )
                                           )
v.                                         )
                                           )
GMAC COMMERCIAL CREDIT, LLC and            )
GMAC COMMERCIAL FINANCE, LLC,              )
                                           )
            Defendants.                    )
_____)

RECEIVED
SEP 07 2005
EDWARDS & ANGEL

## PLAINTIFF DAVID L. LANDAY'S ANSWERS TO
## DEFENDANTS' FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff David L.

Landay ("Landay" or "Plaintiff") hereby responds to Defendants' First Set of

Interrogatories as follows:

### GENERAL OBJECTIONS

The following objections are asserted in response to each and every

interrogatory propounded by Defendants (hereinafter "GMAC" or "Defendants"). Each

objection will not be restated in each response, but instead will be incorporated by

reference. A response does not constitute a waiver of any objection asserted.

1.      Plaintiff objects to Defendants' interrogatories insofar as they seek

information which is beyond the scope of discovery permitted by Rule 26 of the Federal

Rules of Civil Procedure or by any other discovery law or rules.

2.      Plaintiff objects to Defendants' interrogatories on the grounds of the

attorney-client privilege and the attorney-work product privilege. Plaintiff will not provide

a response to any interrogatory to the extent it seeks information subject to the attorney-client privilege, the attorney work-product privilege or other applicable privilege or protection.

3.      Plaintiff objects to these interrogatories to the extent that they purport to impose obligations upon Plaintiff beyond those required by the Federal Rules of Civil Procedure.

4.      Plaintiff objects to these interrogatories to the extent that they call for Plaintiff to describe documents or information in the possession, custody or control of Defendants. It is impossible for Plaintiff to provide complete answers without obtaining from Defendants documents and information that Plaintiff has requested. Plaintiff reserves his right to supplement his answers to these interrogatories with material obtained from Defendants.

## INTERROGATORIES

### INTERROGATORY NO. 1

Identify any false statements that you have made to GMACCF in connection with the Loan Agreements, orally or in writing, including any false statements regarding your personal finances.

### ANSWER NO. 1

Plaintiff objects to this interrogatory on the ground that it calls for information not relevant to any of the claims or defenses in this action and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Plaintiff states that he is not aware of any false statements.

### INTERROGATORY NO. 2

Please identify each person whom you expect to call as an expert witness at trial of this matter, and for each such person, please state: the subject matter on which the purported expert is expected to testify; the substance of the facts and opinions to which the purported expert is expected to testify; all documents that reflect the facts to which the purported expert is expected to testify; and all documents and things which each

purported expert used, referred to, or consulted in formulating the opinions on which he is expected to testify.

## ANSWER NO. 2

Plaintiff has selected an expert witness but because of the unavailability of numerous relevant documents, including those belonging to Seneca Sports, Inc. and Brookfield International, Inc. (the "Borrowers"), the expert has not yet completed his analysis and report. Upon completion of the expert's report it will be delivered to the Defendants and the answer to this interrogatory will be supplemented to the extent required by the Rules of Civil Procedure. Be that as it may, Plaintiff objects to this interrogatory insofar as it purports to require him to identify "all documents that reflect the facts to which the purported expert is expected to testify" as vague, ambiguous, burdensome and in violation of the attorney work-product privilege.

## INTERROGATORY NO. 3

State the basis for the allegation in Paragraph 10 of the Complaint that "Fitzgerald represented to Landay that GMAC would look first to the assets of Seneca and Brookfield to satisfy any debt before it would seek to satisfy debt from Landay or any assets that Landay might provide personally as collateral."

## ANSWER NO. 3

This is what Paul Fitzgerald said to Plaintiff in various conversations in the period July – September 2000. Plaintiff specifically recalls statements of this nature made by Mr. Fitzgerald to Plaintiff in conversations they had at the end of July-first week of August 2000 in relation to the term sheet that Mr. Fitzgerald presented to Plaintiff and Borrowers.

## INTERROGATORY NO. 4

State the basis for the allegation in Paragraph 15 of the Complaint that Landay was "a secured creditor" of Seneca as of September 19, 2000.

## ANSWER NO. 4

As of September 19, 2000, Landay had loaned Seneca a total of $3,450,000. Seneca executed notes evidencing this debt and provided Landay with a security interest in all its assets to secure such debt. These loans and their related security interest predated GMAC's loan to Seneca/Brookfield. All of the notes and security documents should be among the Seneca/Brookfield documents confiscated by GMAC and in its possession, custody and control. Landay would have to have ready access to those documents to describe the notes and security documents with greater specificity. Although he understands that some documents were delivered to counsel on Tuesday morning September 6, 2005, there has been insufficient time to review them before

answering. The various notes were consolidated into a note dated 9/19/00 of which GMAC has a copy and which is referred to in paragraph 1 of the Subordination Agreement.

## INTERROGATORY NO. 5

Identify all creditors of Seneca other than GMACCF and yourself as of October 22, 2001, by their names and amounts of indebtedness.

## ANSWER NO. 5

Plaintiff objects to this interrogatory on the ground that it calls for information not relevant to any of the claims or defenses in this action and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Plaintiff states as follows: Landay has no independent recollection of the names of creditors and/or the amounts owed except to state that after the transaction with GMAC, the only secured creditors were GMAC and Landay. The creditors can probably be identified from the Seneca and Brookfield records that GMAC confiscated on October 22, 2001; Landay does not have ready access to those documents which are in GMAC's possession custody and control. Landay refers GMAC to such documents; it can identify creditors from those documents more readily than can Landay.

## INTERROGATORY NO. 6

State the basis for the allegation in Paragraph 18 of the Complaint that in early 2001 "GMAC reaffirmed its obligation to provide the Seasonal Overadvance and stated its intention to make those funds available."

## ANSWER NO. 6

Landay recalls several conversations with Paul Fitzgerald to this effect and there are several GMAC memos (GLAN 00203, GLAN00432 and GLAN 00538) as well. There is also a facsimile from Fitzgerald to Landay dated 4/12/01 which is Exhibit 5 to the October 24, 2003 Landay Affidavit in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Cross-Motion filed in the New York action (hereinafter, the "Landay Affidavit").

## INTERROGATORY NO. 7

Identify all of the "other advances" that you reference in Paragraph 21 of the Complaint.

4

## ANSWER NO. 7

Landay recalls that Seneca and Brookfield issued checks in reliance on representations by Frangos and/or Fitzgerald that GMAC would advance certain funds and that the checks bounced. Landay would have to review the documents that GMAC seized from Borrowers' to be more specific as to dates, times and/or amounts. See Answer No. 4.

## INTERROGATORY NO. 8

State the basis for the allegation in Paragraph 22 of the Complaint that "[a]s a result of GMAC's actions, Seneca and Brookfield lost sales."

## ANSWER NO. 8

Seneca and Brookfield needed product to fulfill orders. When GMAC did not supply the funds with which to purchase, import and ship the product, Seneca/ Brookfield lost the ability to make sales of product. For example, customers had ordered goods from Seneca/Brookfield to be delivered to them by certain dates. Seneca and Brookfield could not obtain product because they had no money. Consequently such orders were cancelled. The lost sales from May 2001 were analyzed and reported to GMAC in June of 2001 (Exhibit 6 to the Landay Affidavit) and were a direct result of GMAC not providing the Seasonal Overadvance. See also, Landay Affidavit, paragraphs 21 – 22; paragraph 3 of 10/19/01 e-mail from Neal Finklestein (Seneca/Brookfield) to Jane Frangos Re: Collateral Reconciliation and Inventory Listings. GMAC's continuing refusal to fund the business and provide funds in accordance with the schedule of the Forbearance Agreement destroyed the business of Seneca and Brookfield. Without funds to purchase product to fill orders and, thus, generate necessary sales, the business of Borrowers' was brought to a virtual standstill. Landay would have to review the Borrowers' documents in the possession, custody and control of GMAC to provide more specifics. See Answer No. 4.

## INTERROGATORY NO. 9

State the basis for the allegation in Paragraph 51 of the Complaint that after October 22, 2001, "GMAC and its agent RAS proceeded to dispose of the assets of Seneca and Brookfield in an irresponsible fashion, not designed in any way to maximize collection but, rather in derogation of Landay's rights as a guarantor, a creditor and a shareholder of Seneca and Brookfield."

## ANSWER NO. 9

The basis for these allegations are the facts contained in the documents produced by GMAC in this action and the New York action, the Borrowers' documents that GMAC confiscated on October 22, 2001 that are in GMAC's possession, custody and control, the deposition testimony of John Rijo of RAS Associates, GMAC's agent,

5

and Landay's own knowledge of the industry and the money that should have been collected and applied to Borrowers' debt (see answer to Interrogatory 12 below). Based on information received from GMAC in discovery, it appears that GMAC collected only a small portion of the $1, 306,000 in accounts receivable shown in RAS 01507- 01565 (October 23, 2001 Accounts Receivable Aging Report printed off the Seneca computer by Mr. Rijo). It allowed Borrowers' customers to deduct large amounts from bills owed Borrowers without any explanation or justification. It apparently made very little effort to pursue customers that owed money to Seneca/Brookfield, despite the fact that all sales to all customers had been approved in advance by GMAC as being credit-worthy and collectable. GMAC did not call upon Landay or any other employee of Borrowers to help collect the accounts receivable and/or to explain and challenge the actions of the customers. When GMAC had any questions, it appears to have sent letters to Borrowers that Borrowers could not possibly answer because the premises, books, records and all assets had been seized by GMAC, and its liquidator was in complete control of the premises. Among the Seneca/Brookfield documents recently produced by GMAC are unopened mail sent by GMAC to Borrowers' address which contained such letters as are contained in Exhibit 1 to Landay's First Set of Interrogatories. See GMAC documents attached as Exhibit 1 to Landay's First Set of Interrogatories in the instant action. Put simply, GMAC made very little effort to follow through to collect what was owed; it simply accepted anything the customers chose to pay. In at least one instance GMAC allowed one customer a deduction or refund that exceeded the amount bought by that customer from Seneca/Brookfield that year. (Compare GLAN 01656-63, 01638-44, 01694-01703, 01813-19, 01821-30, 01891-98 to GLAN 02002-02013 ) As to inventory: The RAS agent in charge of the liquidation was inexperienced. He sold only half of the inventory and abandoned the rest in warehouses. The portion that he did sell was sold for less than should have been realized as illustrated by the offer from Rand that he botched. (GLAN 00085) The RAS agent missed out on a significant offer from Rand to purchase inventory because he erroneously determined that a patent that was sought as part of the purchase had expired; he did not bother to call Landay or any other employee of Seneca/Brookfield to locate the patent information. (The cavalier treatment of the Borrowers' assets is demonstrated by GMAC's recent production of Borrowers' documents that included envelopes of cash collected from Borrowers' retail store. This cash had been thrown in among Borrowers' documents and was placed in storage by RAS and GMAC for the past almost-four years.) As to other intellectual property: GMAC has done little if anything with the intellectual property it confiscated from Borrowers' – despite direct inquiries made by potential buyers that have been referred to GMAC's attorneys. (See letters from Landay's New York attorney to GMAC's New York attorney, including Exhibit 10(a)-(g) attached to Landay's 10/24/03 affidavit in opposition to GMAC's motion for Summary Judgment in the New York case.) To the best of Landay's knowledge, GMAC has done nothing to keep the patents and trademarks current and has allowed them to loose their value. To the best of Landay's knowledge, GMAC made no attempt to sell or assign valuable licenses. As to other assets: GMAC will not reveal to Landay what became of Borrowers' other assets (such as the computers); he can only surmise that they have been abandoned or destroyed.

6

## INTERROGATORY NO. 10

State the basis for the allegation in Paragraph 53 of the Complaint that "GMAC's disposition, [of the assets] (sic) of Seneca and Brookfield amounted to waste."

## ANSWER NO. 10

See Answer to Interrogatory 9 above.

## INTERROGATORY NO. 11

State the value that you believe GMAC should have been able to obtain for "the assets of Seneca and Brookfield" and state the basis for your belief.

## ANSWER NO. 11

Landay's belief is as follows: The cost value of the inventory seized by GMAC was approximately $1,800,000. (See LAN 0167) A proper liquidation should have resulted in about 40% of this value. The accounts receivable were approximately $1,306,000 (RAS 01565). Historically, Seneca's dilution did not exceed 5% of the total balance; Borrowers typically were able to collect 95% of the receivables. Allowing for a liquidation situation, GMAC should have collected at least three quarters of the $1,306,000 owed, especially where, as here, (a) GMAC had approved the accounts as credit worthy and collectable and (b) Jane Frangos had told Landay on October 15, 2001 in front of Robert Schwartz, Richard Lamontagne, David Madoff, Esq., and GMAC lawyers that GMAC is relentless with accounts receivable and can collect 100% of all moneys due. The intellectual property had value that Landay cannot estimate. However, he believes that there may be a reasonable basis for estimating such value based on either or both of Seneca's financial records, not in his possession at this time, or the Brookfield acquisition papers. He believes that certain licenses could have been sold or assigned and he knows that certain patents and trademarks could have been sold. In addition to purchase inquires that Landay's attorney forwarded to GMAC to no avail (see Answer to Interrogatory 9), according to documents produced by GMAC, Rand inquired into one patent that it wanted to buy along with inventory. (GLAN 00085) but RAS mistakenly decided that the patent was expired. Additional documents which support this allegation are contained among the Borrowers documents not currently in Landay's possession. See Answer to Interrogatory No. 4. Landay reserves his right to put a dollar figure on the intellectual property after he obtains further discovery from GMAC.

## INTERROGATORY NO. 12

State the basis for the allegation contained in paragraph 56 of the Amended Complaint that "[a]ccording to Landay's calculations, the day he was excluded from the premises, the assets of Seneca and Brookfield were more than sufficient to satisfy the

7

net balance allegedly due to GMAC and, in fact, there were sufficient assets to entitle Landay to a refund of some of the $5,300,000 collateral GMAC collected from him.

## ANSWER NO. 12

See answer to Interrogatory 11 above. GMAC's "screen" (LAN 0167-68) shows a balance due of $1,535,162.11 (LAN 0168 "Total Investment"). Once GMAC collected the $250,000 Letter of Credit still shown as uncollected on that "screen" (LAN 0167, "Other Collat"), the balance became $1,285,162.11. Even without selling any other assets (such as the intellectual property) if GMAC had collected 75% of the accounts receivable ($1,306,000x.75=$979,500) and 40% of the inventory value ($1.8Mx .40=$ 720,000) the debt would have been more than satisfied and Landay could have money back.

## INTERROGATORY NO. 13

State the basis for your contention in Paragraph 63 of the Complaint that "[e]ach time GMAC represented to Landay that it would make the Seasonal Overadvance, it had a preconceived intent not to do so."

## ANSWER NO. 13

Various GMAC loan committee minutes indicate that the intent was not to make the "Seasonal Overadvance," the promised advance of $500,000. Instead, GMAC intended to lend only as much as it could talk Landay into securing with additional collateral – essentially making Landay into the lender. See GLAN 00524, GLAN 00341, GLAN 00342, GLAN 00335 and RAS 00445. Jane Frangos sent an internal e-mail that shows she intended to get Landay to put up more collateral. GLAN 01064-5. RAS did a liquidation analysis in June 2001 at the same time that Frangos and Fitzgerald were telling Landay that GMAC would advance money to Borrowers if Landay increased his collateral. See RAS 00090-114  Moreover, in retrospect, the reasons given by Jane Frangos at various times for refusing the overadvance appear disingenuous at best and calculated to force Landay into increasing his personal risk and to create a liquidation scenario for GMAC. In or about May or June 2001 Frangos told Landay that she was not releasing funds because she was waiting for her legal department to perfect some overlooked paperwork. However, this overlooked paperwork had not prevented the loan from being funded from September 2000 through April 2001, and it appears that this was an excuse designed to avoid further funding while extracting more collateral from Landay and positioning GMAC to foreclose on the loan.

## INTERROGATORY NO. 14

State the basis for the allegation in Paragraph 67 of the Complaint that "GMAC's transactions with Seneca, Brookfield and Landay were in violation of the Massachusetts usury statute (M.G.L. 271, Section 49)."

## ANSWER NO. 14

The total of interest, fees and other charges charged by GMAC appears to exceed the 20% limit of the Massachusetts usury statute. In order to answer this interrogatory fully, Landay must obtain from GMAC the documents he has requested (and which GMAC has refused to produce) so that his expert may prepare a detailed study. However, in documents produced by GMAC in the New York action, the interest, fees and other charges in November 2001 appear to total 7% of the loan balance, or 84% annualized and the December interest, fees and charges appear to total 18% of the loan balance, or 216% annually. (See GLAN 01522-23 and GLAN 01526-27). Moreover, calculations made by GMAC witness Pappalardo (Exhibits 1 and 3 to her deposition) although different from the foregoing, still show interest and charges in the month of November 2001 at 5.8% of the loan balance (69% annualized) and 6.3% for December (76% annualized). It is Landay's understanding that GMAC did not make a timely filing with the Attorney General and is, therefore, subject to the usury statute. See GLAN 01165 and 01167.

## INTERROGATORY NO. 15

State the basis for the allegation in Paragraph 71 of the Complaint that as a result of GMACCF's alleged usury, Landay suffered damages, "including but not limited to the $5,350,000 [Landay has] already paid to GMAC."

## ANSWER NO. 15

Overcharges to Borrowers result in overcharges that a guarantor is asked to pay for ultimately. Overcharges also destroy the underlying business and cause exposure to the guarantor. Landay reserves his right to more fully respond after GMAC has completed its document production and answered all Landay's interrogatories – all of which are necessary for review by Landay's expert before Landay can fully answer this interrogatory.

## INTERROGATORY NO. 16

State the basis for the allegation in Paragraph 90 of the Complaint that as a result of GMACCF's alleged violation of Landay's rights as a junior creditor, "Landay, as guarantor and creditor, has been damaged in an amount…no less than $3,450,000."

## ANSWER NO. 16

$3,450,000 is the amount of money that Landay had loaned to Borrowers' whose business was totally destroyed beyond repair by GMAC and all assets decimated by GMAC.

## INTERROGATORY NO. 17

State the basis for your claim that GMACCF violated Section 11 of Massachusetts General Laws, Chapter 93A.

## ANSWER NO. 17

The First Amended Complaint describes the basis for Landay's Chapter 93A claim. GMAC is referred to the facts alleged in the First Amended Complaint which Landay incorporates by reference into his answer to this interrogatory. To summarize those facts (without purporting to limit or change them) and to supplement them with recently discovered information:

GMAC engaged in sharp practices to Landay's damage. GMAC utilized deception in inducing and manipulating Landay into exposing his personal assets to collection by GMAC at the inception of the relationship and throughout the relationship. (See Landay's answers to Interrogatories 3, 6 and 13) At the inception of the relationship Landay was told by Paul Fitzgerald that GMAC would look to Borrowers' assets first (see answer to Interrogatory 3); this turned out not to be true. As the relationship progressed, GMAC insisted that Landay provide more collateral before GMAC would advance funds to Borrowers that it had committed to lend. This occurred both with respect to the Seasonal Overadvance and to funds scheduled to be released pursuant to the Forbearance Agreement – in essence, it made Landay the lender as to these funds. GMAC did not release to Borrowers the $500,000 Seasonal Overadvance. Rather, GMAC released to Borrowers only an additional amount that did not exceed the $250,000 Letter of Credit that Landay posted in response to Paul Fitzgerald's false representations that GMAC would release the $500,000 Seasonal Overadvance if Landay provided this Letter of Credit. (Landay extended the expiration date on this Letter of Credit based on additional false representations that the Seasonal Overadvance would be forthcoming. See First Amended Complaint, paragraphs 18-25) Similarly, rather than the funds called for by the Schedule attached to the Forbearance Agreement, GMAC released to Borrowers only an amount that corresponded with the $1 million in cash that Landay had provided to GMAC in conjunction with the Forbearance Agreement. Jane Frangos of GMAC induced Landay to pay the salaries of Borrowers' employees and Borrowers' other operating expenses with representations that Landay would be reimbursed with funds that GMAC would provide to Borrowers. (See Exhibits 13(A)-13(D) to the Landay Affidavit). After Landay paid such salaries and expenses out of his own pocket, GMAC refused reimbursement (Id.), continuing to position itself for a foreclosure on Landay's collateral and on the Borrowers' business and assets. In fact, as early as June 2001, GMAC consulted at least two firms about liquidating Borrowers (see GLAN 01456-58 and RAS 00090-14), and as early as April 2001, Frangos had been planning to extricate GMAC from the loan and to obtain as much money as possible from Landay (see GLAN 01064, Landay Affidavit Exhibit 15, Landay Affidavit, paragraph 23). In late June-early July 2001, without revealing to Landay that RAS was engaged by GMAC to prepare a liquidation analysis of Borrowers' business (See RAS 00090-114), Paul Fitzgerald of GMAC induced Landay to consult with RAS Associates and to provide RAS with proprietary details. Fitzgerald told

10

Landay in several conversations that GMAC would look more favorably on releasing funds to Borrowers if Landay had on board a consultant such as RAS. (When Borrowers ultimately hired another consultant, GMAC insisted that RAS be used as well.) The Forbearance Agreement and related documents, represented by GMAC to be a means to allow Landay to wind down the business of Borrowers in an orderly fashion and to pay back GMAC over the period August 1, 2001 – January 18, 2002 (see schedule to Forbearance Agreement) were designed to extract additional funds from Landay: At the time the Forbearance Agreement was entered, RAS had already prepared for GMAC its own liquidation plan. (See RAS 00090-114). Moreover, Frangos of GMAC refused Landay's requests to adjust the schedule of the Forbearance Agreement to reflect GMAC's delay in executing it and releasing funds, thereby placing Borrowers' in a default position and exposing Landay to collection of his assets by GMAC. Landay was induced by GMAC to increase his guaranty and to provide GMAC with an additional $1 million in cash collateral by promises that GMAC would fund according to schedule. See Schedule to Forbearance Agreement. Instead, as noted above, GMAC funded only so much as Landay provided as additional collateral. GMAC failed to give due consideration to proposals from Platinum Funding to pay off GMAC despite telling Landay that the proposals were under consideration; GMAC lulled Landay into a false sense of security while preparing to seize as much of Landay's assets as possible. On October 15, 2001, the day that a Platinum proposal was first presented to GMAC, GMAC cashed Landay's $4.1 million Standby Letter of Credit, but Frangos told Landay that same day that she could refuse or refund the proceeds if the proposal was acceptable. Thereafter, Frangos advised Landay that GMAC was considering the Platinum proposals and that she would discuss them with him on October 22, 2001. (See Landay notes of 10/19/01 telephone conversation with Frangos; 10/19/01 e-mail from Neal Finklestein to Frangos Re: Collateral reconciliation and inventory listings; Frangos 10/19/01 e-mail to Landay Re: collateral reconciliation and inventory listings; RAS 00266-279). On Monday, October 22, 2001, without responding to Landay concerning the Platinum proposals, GMAC proceed with a foreclosure. It engaged in abusive and intimidating tactics in expelling Landay from Borrowers' premises; it threatened a hostile take-over of the premises unless Landay turned over immediately his keys and all assets, books and records to RAS. (See RAS 00801). Denying Landay records that were rightfully his and/or the Borrowers has hindered Landay in pursuing his rights vis a vis GMAC. Rather than liquidating the assets of Borrowers in a commercially reasonable manner and then looking to Landay for any shortfall, GMAC seized Landay's assets as a substitute for expending any effort to reasonably liquidate Borrowers' assets. GMAC engaged in a wasteful series of exercises concerning Borrowers' assets whereby it failed to collect and/or abandoned a large portion of them. (See answer to Interrogatory 9) During the liquidation, it sent letters to Borrowers that purported to seek information that would be necessary to an orderly, proper liquidation. However, this was no more than another sharp practice of GMAC because there was no one at Borrowers to receive the letters; GMAC had assumed control of the premises and the books, records and assets of the Borrowers. In fact, some of those letters surfaced less than two weeks ago – unopened – among the Borrowers' documents that GMAC's agent RAS had placed in storage. Following GMAC's abandonment of its liquidation efforts, it sought to collect from Landay an

alleged shortfall; however, it refused to tell Landay how it had arrived at the figure it sought. Despite the fact that GMAC acknowledges it owes Landay an accounting, it has steadfastly refused such accounting. When Landay asked for such accounting in an attempt to understand GMAC's claim and to avoid litigation, GMAC refused to provide the accounting and told Landay he would have to litigate if he wanted to know how GMAC arrived at its figures (see Exhibit 12 to Landay Affidavit, i.e., August 6, 2002 letter from GMAC counsel Lorraine S. Fields to Stephen Rosenberg, Esq.). In essence, it has continued to be GMAC's position that Landay should pay it whatever amount it demands without any showing that the amount is owed. As a result, Landay is engaged in protracted litigation with GMAC that is exhausting his resources. GMAC's heavy-handed tactics have continued throughout the New York litigation and GMAC still refuses to provide Landay with an accounting. In fact, it is only through the instant litigation that Landay has discovered that GMAC has been denying him access to documents that were in its possession, custody or control (or that of its New York attorneys) but which it had claimed could not be located. See GMAC's Responses to Landay's First Set of Interrogatories and Deposition Transcript of Ms. Pappalardo taken August 18-19, 2005. Rather than being mere discovery abuses, these failures are part of GMAC's sharp business practices that include a refusal to explain what happened to assets that should have satisfied Borrowers' debt and as to which Landay also has a claim. Finally, but not least, the interest, fees and other charges GMAC made to the loan were usurious. (See answer to Interrogatory 14). In fact, it appears that there were charges made to the loan after the seizure of assets and the cessation of business (October 22, 1005) that relate to a going business; they should not have been made but have been sought from Landay by GMAC without any explanation or justification. (See e.g., Pappalardo 8/19/05 deposition, pp.18-36 and GLAN numbers discussed therein and Pappalardo Deposition Exhibit 3: Advances, Overadvance Charges, Commission Charges, Wire Charges, Bank Charges, etc). There are also GMAC accounting practices that Ms. Pappalardo did not explain but which appear to have caused inflations of the loan balance upon which interest was inappropriately calculated, thereby adding to the usurious nature of the loan (see Pappalardo 8/18/05 deposition, e.g., pp. 50-53; and e.g., GLAN 01552). Landay requires further discovery from GMAC and consultation with an expert on these matters; accordingly, Landay reserves his right to supplement his answer upon receiving further information.

In addition to the documents cited above, there are numerous GMAC documents, RAS documents and correspondence between Landay and GMAC that support Landay's claims...including the very terms of the underlying agreements. Landay will produce all such documents, with the exception of documents produced by GMAC and its agent RAS in this action and in the New York action. Landay reserves his right to supplement his answers to interrogatories after obtaining full discovery from GMAC – including full review of Borrowers' documents that GMAC confiscated on October 22, 2001 and kept from Landay until August 23, 2005. See Answer to Interrogatory No. 4.

SIGNED UNDER THE PAINS AND PENALITIES OF PERJURY ON THIS 6th DAY OF SEPTEMBER, 2005.

_____
DAVID L. LANDAY

As to Objections:

_____
Alan R. Hoffman, BBO# 236860
Lynch, Brewer, Hoffman & Fink, LLP
101 Federal Street, 22nd Floor
Boston, MA 02110
(617) 951-0800

198307_1

13

# EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID L. LANDAY<br>  Plaintiff,<br><br>v.<br><br>GMAC COMMERCIAL CREDIT LLC<br>and GMAC COMMERCIAL FINANCE<br>LLC,<br>  Defendants. | )<br>)<br>)<br>)<br>)  Civil Action No. 04-cv-11955-WGY<br>)<br>)<br>)<br>)<br>)<br>) |

## **DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant GMAC Commercial Finance LLC ("GMACCF" or "Defendant")[1] requests that Plaintiff David L. Landay ("Landay" or "Plaintiff") produce the following documents for inspection and copying.

## **DEFINITIONS AND INSTRUCTIONS**

1.  Plaintiff shall respond to these document requests and shall produce the requested documents within 30 days of service of these requests.

2.  Defendant adopts and incorporates by reference the Uniform Definitions in Discovery Requests set forth in Local Rule 26.5(C) of this Court.

3.  The terms "and" and "or" mean "and/or."

4.  Any word written in the singular shall be construed as plural or vice versa, and any masculine word shall be construed as feminine or vice versa, where necessary to facilitate the response to a request.

5.  The term "you" means the party on whom these requests for production of documents are propounded, together with that party's agents, servants, and representatives.

6.  "GMACCF" and/or "GMAC" means GMAC Commercial Finance LLC and all subsidiary and other affiliated companies thereof, and any of their respective officers, principals, agents, employees, or attorneys.

7.  "Landay" means David L. Landay.

---

[1]  GMAC Commercial Finance LLC is the successor by merger of GMAC Commercial Credit LLC and GMAC Business Credit LLC. In the interest of avoiding confusion, all three companies are referred to as GMACCF.

8.   The term "Complaint" as used herein refers to the First Amended Complaint filed in the above-captioned case, Civil Action No. 04-11955-WGY, in the United States District Court for the District of Massachusetts, and the allegations contained therein.

9.   The term "Answer" as used herein refers to the Answer that GMACCF filed in the above-captioned case, which was docketed on January 27, 2005, and is listed as item number 7 in the court's docket.

10.   The term "Factoring Agreement" as used herein refers to the document attached as Exhibit 1 to GMACCF's Answer.

11.   The term "Guaranty" as used herein refers to the document attached as Exhibit 2 to GMACCF's Answer.

12.   The term "Subordination Agreement" as used herein refers to the document attached as Exhibit 4 to GMACCF's Answer.

13.   The term "Forbearance Agreement" as used herein refers to the document attached as Exhibit 6 to GMACCF's Answer.

14.   The term "Ratification and Amendment of Guaranty" as used herein refers to the document attached as Exhibit 7 to GMACCF's Answer.

15.   If any document or thing called for by this request is withheld, state the basis for withholding the document or thing, and, if any document or thing is withheld on the grounds of privilege:

        a.   State the date of its creation or transmittal;
        b.   Identify its author(s);
        c.   Identify the person(s) to whom it was addressed;
        d.   Identify the person(s) to whom it was sent or transmitted;
        e.   Identify the person(s) to whom it was disclosed, in whole or in part; and
        f.   State the name of the file or subfile in which it is presently maintained.
        g.   Provide such further information regarding the document to explain the claim of privilege and permit the adjudication of the property of that claim.

16.   If any document the production of which is sought by this request has been destroyed, please state, as to each such document, its date, author(s), recipient(s) and the circumstance of its destruction.

17.   These document production requests will be deemed to be continuing so as to require supplemental answers pursuant to Fed. R. Civ. P. 26(e) whenever Landay comes into possession of newly discovered responsive documents. Landay shall comply with all of his obligations under Fed. R. Civ. P. 26(e) with regard to supplementation.

## REQUESTS

1.     All documents referenced in your response to Defendant's First Set of Interrogatories.

2.     All other documents that you expect to present at trial in support of your claims against GMACCF.

3.     All correspondence between you and any current or former employee of GMACCF concerning any of your claims in this lawsuit.

4.     All correspondence between you and any third party concerning any of your claims in this lawsuit.

5.     All reports or drafts of reports concerning any of your claims in this lawsuit prepared by a person whom you expect to call as an expert witness at trial.

6.     All documents relied upon by a person whom you expect to call as an expert witness at trial in preparing that person's expert report.

7.     All documents concerning your claim to be a "secured creditor" of Seneca Sports, Inc. as of September 19, 2000.

8.     All documents identifying any other creditors of Seneca Sports, Inc. as of September 19, 2000, and the amounts owed to those creditors by Seneca Sports, Inc.

9.     All documents identifying any other creditors of Seneca Sports, Inc. as of October 22, 2001, and the amounts owed to those creditors by Seneca Sports, Inc

10.     All documents concerning any representations that GMACCF made to you regarding the "Seasonal Overadvances" referenced in your Complaint.

11.     All documents concerning the "other advances" referenced in Paragraph 21 of your Complaint.

12.     All documents concerning any representations made to you by Jane Frangos or Paul Fitzgerald, as alleged in Paragraph 30 of your Complaint.

13.     All documents concerning your claim in Paragraph 53 of the Complaint that "GMAC's disposition of Seneca and Brookfield amounted to waste."

14.     All documents concerning the "calculations" to which you refer in Paragraph 56 of the Complaint.

15.     All documents concerning your allegations in Paragraph 63 of the Complaint.

16.     All other documents concerning your claims in this lawsuit.

BOS_498603_1.DOC/MDUBNOFF

GMAC COMMERCIAL FINANCE LLC

John A. Houlihan (BBO # 542038)
Mark B. Dubnoff (BBO # 637212)
Edwards & Angell, LLP
101 Federal Street
Boston, MA  02110
(617) 439-4444

DATED:      August 5, 2005

### CERTIFICATE OF SERVICE

I, Mark B. Dubnoff, hereby certify that on this 5th day of August, 2005, I caused a copy of the foregoing document to be sent by hand delivery to Alan R. Hoffman, Lynch, Brewer, Hoffman & Fink, LLP, 101 Federal Street, Boston, MA 02110, counsel for David L. Landay.

Mark B. Dubnoff

BOS_498603_1/MDUBNOFF

# EXHIBIT 4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-CV-11955-WGY

DAVID L. LANDAY,                              )
                                              )
          Plaintiff,                          )
                                              )
v.                                            )
                                              )
GMAC COMMERCIAL CREDIT, LLC and               )
GMAC COMMERCIAL FINANCE, LLC,                 )
                                              )
          Defendants.                         )
_____       )

## PLAINTIFF DAVID L. LANDAY'S RESPONSE TO
## DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Fed. R. Civ. P. 34, Plaintiff, David L. Landay responds as follows to

Defendant's First Request For Production of Documents (the "Document Request") and

will produce documents at the offices of his attorneys, Lynch, Brewer, Hoffman & Fink,

LLP, 101 Federal Street, 22nd Floor, Boston, Massachusetts, at a mutually convenient

time on or after September 16, 2005.

### GENERAL OBJECTIONS

1.      To the extent that the requests seek documents which are protected by

the Attorney-Client and/or Attorney Work-product privileges, such documents will not be

produced.

2.      To the extent that these requests purport to require Landay to produce the

legal files and other material (such as depositions) from the New York litigation between

the parties, Landay objects on the grounds that such production would be overly

burdensome and prejudicial in terms of expense and inconvenience to the conduct of

the New York litigation. GMAC has copies of all papers served and/or filed in the New York action and production thereof would be burdensome and expensive to Landay. As to papers that Landay's attorneys generated in the New York action but did not serve on GMAC., they are immune from production pursuant to the work product and attorney client privileges

3.    To the extent that the requests require a privilege log (See Instruction #15) that would require inter alia Plaintiff to cause his New York attorneys to search their files and list all copies of all privileged materials (attorney-client as well as work-product), plaintiff objects on the grounds that such a demand is unduly burdensome, prohibitively expensive, disruptive to an active litigation and can interfere with Plaintiff's rights and cause him damage in that litigation.

4.    To the extent that instruction #15 of the Request goes beyond the requirements imposed on a party under the Federal Rules of Civil Procedure, Plaintiff objects to said instruction.

5.    To the extent that the requests are unduly burdensome and/or not calculated to lead to the discovery of admissible evidence, Plaintiff objects.

6.    By agreeing to the production of documents covered by any of the requests, Plaintiff does not admit or imply that such documents exist.

## RESPONSES

### REQUEST NO. 1

All documents referenced in your response to Defendant's First Set of Interrogatories.

2

## RESPONSE NO. 1

Subject to the General Objections, to the extent that Landay has any such documents in his possession, custody or control, he will produce them.

## REQUEST NO. 2

All other documents that you expect to present at trial in support of your claims against GMACCF.

## RESPONSE NO. 2

Among other things, Landay expects to rely on documents produced by GMAC as well as documents that GMAC has not yet produced but that are within its exclusive custody, possession or control.  Subject to the General Objections, Landay will produce the documents that he has currently which are in this category.  However, Landay will not identify them separately since, to do so, would violate the attorney work product principle.

## REQUEST NO. 3

All correspondence between you and any current or former employee of GMACCF concerning any of your claims in this lawsuit.

## RESPONSE NO. 3

Subject to the General Objections, Landay will produce such documents, if any, that are in his possession, custody or control.

## REQUEST NO. 4

All correspondence between you and any third party concerning any of your claims in this lawsuit.

## RESPONSE NO. 4

Subject to the General Objections, Landay will produce such documents, if any, that are in his possession, custody or control.

## REQUEST NO. 5

All reports or drafts of reports concerning any of your claims in this lawsuit prepared by a person whom you expect to call as an expert witness at trial.

## RESPONSE NO. 5

Plaintiff objects to this request since the production would violate the attorney work product privilege.

## REQUEST NO. 6

All documents relied upon by a person whom you expect to call as an expert witness at trial in preparing that person's expert report.

## RESPONSE NO. 6

Subject to the General Objections, Landay will produce such documents, if any, that are in his possession, custody or control.

## REQUEST NO. 7

All documents concerning your claim to be a "secured creditor" of Seneca Sports, Inc. as of September 19, 2000.

## RESPONSE NO. 7

Subject to the General Objections, Landay will produce such documents, if any, that are in his possession, custody or control.

## REQUEST NO. 8

All documents identifying any other creditors of Seneca Sports, Inc. as of September 19, 2000, and the amounts owed to those creditors by Seneca Sports, Inc.

## RESPONSE NO. 8

In addition to the General Objections, Landay objects to this request on the grounds of undue burden and expense insofar as this request purports to shift to Landay the burden of researching records that are in the possession, custody or control of GMAC. The records that GMAC confiscated from Seneca Sports, Inc. on September 22, 2001 should reflect the information sought; GMAC is referred to those documents in its exclusive custody, possession or control. Subject to all the General Objections and the forgoing objections, Landay will produce all documents (if any) in this category that are in his possession, custody or control.

## REQUEST NO. 9

All documents identifying any other creditors of Seneca Sports, Inc. as of October 22, 2001, and the amounts owed to those creditors by Seneca Sports, Inc.

## RESPONSE NO. 9

In addition to the General Objections, Landay objects to this requests on the grounds of undue burden and expense insofar as this request purports to shift to Landay the burden of researching records that are in the possession, custody or control of GMAC. The records that GMAC confiscated from Seneca Sports, Inc. on September 22, 2001 should reflect the information sought; GMAC is referred to those documents in its exclusive possession, custody or control. Subject to the General Objections and the forgoing objections, Landay will produce all documents (if any) in this category that are in his possession, custody or control.

## REQUEST NO. 10

All documents concerning any representations that GMACCF made to you regarding the "Seasonal Overadvances" referenced in your Complaint.

## RESPONSE NO. 10

Subject to the General Objections, Landay will produce such documents, if any, that are in his possession, custody or control.

## REQUEST NO. 11

All documents concerning the "other advances" referenced in Paragraph 21 of your Complaint.

## RESPONSE NO. 11

Subject to the General Objections, Landay will produce such documents, if any, that are in his possession, custody or control.

## REQUEST NO. 12

All documents concerning any representations made to you by Jane Frangos or Paul Fitzgerald, as alleged in Paragraph 30 of your Complaint.

## RESPONSE NO. 12

Subject to the General Objections, Landay will produce such documents, if any, that are in his possession, custody or control.

## REQUEST NO. 13

All documents concerning your claim in Paragraph 53 of the Complaint that "GMAC's disposition of Seneca and Brookfield amounted to waste."

5

## RESPONSE NO. 13

Subject to the General Objections, Landay will produce such documents, if any, that are in his possession, custody or control.

## REQUEST NO. 14

All documents concerning the "calculations" to which you refer in Paragraph 56 of the Complaint.

## RESPONSE NO. 14

Subject to the General Objections, Landay will produce such documents, if any, that are in his possession, custody or control.

## REQUEST NO. 15

All documents concerning your allegations in Paragraph 63 of the Complaint.

## RESPONSE NO. 15

Subject to the General Objections, Landay will produce such documents, if any, that are in his possession, custody or control.

## REQUEST NO. 16

All other documents concerning your claims in this lawsuit.

## RESPONSE NO. 16

Landay objects to this request on the grounds that it is overbroad and burdensome. For example, even the telephone book that listed Seneca's address in Massachusetts is a document "concerning" Landay's claims (see Complaint, Paragraph 1) Subject to the General Objections and the foregoing objections, Landay will produce documents in this category that are in his possession, custody or control.

Respectfully submitted,
DAVID L. LANDAY,
By his attorney,


_Alan R. Hoffman_

Alan R. Hoffman, BBO# 236860
Lynch, Brewer, Hoffman & Fink, LLP
101 Federal Street, 22nd Floor
Boston, MA 02110
(617) 951-0800

Dated: September 6, 2005

198303_1

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document
was served upon the attorney of record for each other
party by hand (mail) on ___Sep 6, 2005___
_Alan R. Hoffman_

7

# EXHIBIT 5

# Edwards &Angell LLP

101 Federal Street   Boston, MA 02110   617.439.4444   *fax* 617.439.4170   Mark B. Dubnoff
617.517.5533
Direct Fax: 888.325.9149
mdubnoff@edwardsangell.com

September 8, 2005

**By Hand**

Alan R. Hoffman, Esq.
Lynch, Brewer, Hoffman & Fink, LLP
101 Federal Street, 22nd Floor
Boston, MA 02110-1800

> Re:   David L. Landay v. GMAC Commercial Credit, LLC et al.
>        Civil Action No. 04-11955-WGY

Dear Mr. Hoffman:

Yesterday I received a copy of plaintiff David L. Landay's Answers to Defendants' First Set of
Interrogatories. In many of Mr. Landay's responses, he stated that he was unable to respond
fully at the time the interrogatory responses were due, because his responses would be based to
varying degrees on his review of certain documents currently stored at our law offices, and Mr.
Landay did not obtain access to those documents until August 23, 2005. I refer you specifically
to Mr. Landay's responses to Interrogatory Nos. 2, 4, 5, 7, 8, 9, 11, and 17. In light of your
position, please accept my invitation to come back to our offices and review the documents at
any mutually convenient time to the extent that you believe it is necessary to enable Mr. Landay
to complete his answers to those interrogatories.

As you know, under the Federal Rules of Civil Procedure, Mr. Landay has thirty (30) days to
respond to the interrogatories propounded on him by GMACCF. Since Mr. Landay gained
access to the documents he claims are necessary to his ability to answer GMACCF's
interrogatories on August 23 and he submitted his responses to those interrogatories fifteen (15)
days later, another fifteen (15) days of review should be sufficient time for Mr. Landay to
supplement his responses. Accordingly, since today is September 8, Mr. Landay should provide
us with supplemental responses no later than September 23, 2005.

During this time period we will make every effort to reasonably accommodate Mr. Landay's
desire to review the documents that he claims are necessary to provide more comprehensive
responses to GMACCF's interrogatories. Please contact John Houlihan or me at any time to
schedule Mr. Landay's next visit or visits to our offices.

Sincerely,

*Mark B. Duff*

Mark B. Dubnoff

cc:   John A. Houlihan, Esq.

BOS_502776_1