UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-CV-11955-WGY

| | |
|---|---|
| DAVID L. LANDAY,<br><br>    Plaintiff,<br><br>v.<br><br>GMAC COMMERCIAL CREDIT, LLC and<br>GMAC COMMERCIAL FINANCE, LLC,<br><br>    Defendants. | **PLAINTIFF DAVID L. LANDAY'S REPLY MEMORANDUM ON MOTION FOR SUMMARY JUDGMENT ON USURY COUNT** |

Plaintiff David L. Landay ("Landay") submits this Reply Memorandum ("Reply") in further support of his Motion for Summary Judgment on Usury Count ("Landay's Motion") and in response to GMAC's Memorandum in Support Of Defendants' Opposition To Plaintiff's Motion For Summary Judgment on Usury Count ("GMAC's Opposition Memorandum"). Defendants are hereinafter referred to as "GMAC."

**PRELIMINARY STATEMENT**

Landay's Motion involves only questions of law. Although GMAC has attempted to defeat this motion by contending that there are disputed issues of material facts, the material facts are not in dispute. The facts identified as "disputed facts" in Defendants' Statement of Disputed Facts and Additional Material Facts In Opposition to Plaintiff's Motion For Partial Summary Judgment ("GMAC's Statement of Disputed Facts") have not been contradicted by any evidence. GMAC disputes Landay's material facts with arguments, not with evidence. GMAC also raises immaterial facts as red herrings to help create the illusion that there are material facts in dispute. Finally, many of the "facts" relied on by GMAC depend on GMAC's presenting evidence out of context or not

completely. This is more fully described in Landay's Response to Defendants' Statement of Disputed Facts and Additional Material Facts ("Landay's Response to Disputed Facts") filed herewith. The Court is respectfully directed to that document.

One of the "disputed" facts that GMAC raises in its Opposition Memorandum (p.15) and in its Statement of Disputed Facts regards Landay's status as a junior secured creditor. The law is discussed, infra. As to the facts, Landay contends that the dispute is illusory because in each of his capacities of (a) guarantor and (b) junior creditor, he has standing to make a claim under the Massachusetts Usury Statute. Unable to mount a plausible attack on Landay's status as a guarantor (since it has sued him in that capacity), GMAC has raised the smokescreen that Landay must be denied summary judgment because he has not proved himself to be a secured junior creditor.[1] GMAC even purports to put in issue whether Landay actually loaned $3,450,000 to Seneca. However, GMAC has offered no facts that dispute Landay's sworn statements and evidence with which he has supported those statements. See Landay's Response to Disputed Facts, p. 2. In fact, the only "evidence" tendered by GMAC actually corroborates Landay.

GMAC relies on the deposition testimony of Neal J. Finkelstein, Seneca's former comptroller, to create its illusory fact "dispute." However, when the testimony is viewed in context and as a whole, it corroborates the evidence offered by Landay. Specifically, Finkelstein testified that Landay loaned Seneca around $3,450,000 and that Finkelstein kept documents evidencing those loans in a fireproof file at Seneca. See Finkelstein

---

[1] Even if Landay were not a secured junior creditor, his Usury claim must be sustained on the basis of his status as a guarantor. Therefore, the "disputed facts" concerning his status as a secured junior creditor are immaterial on this motion.

2

Deposition, Exhibit I to this Reply, pp. 37-39, 42-43, 46-47, 133-135.  <u>See</u>, <u>also</u>, Landay's Response to Disputed Facts, pp. 2-3.

Another allegedly "disputed fact" upon which GMAC relies (GMAC's Opposition Memorandum, p. 6) concerns Landay's evidence that the loan was funded by GMAC before its Massachusetts Usury Statement was filed.  GMAC cannot avoid the fact that it funded the loan on or about September 19, 2000, several days before its Usury Filing.  Instead, in an act of desperation, GMAC contends that it funded only a small part of the loan and that "[m]ost of the advances … did not occur until after September 22, 2000".  GMAC Opposition Memorandum, p. 6; GMAC's Statement of Disputed Facts, p. 4.  This is simply false. The undisputed evidence is that $9,170,130.56 of a $10,000,000 line was provided to Borrowers by September 20, 2000.  <u>See</u> Landay's Statement of Material Facts Not in Dispute #6 (docket #5); Complaint, ¶68; Answer, ¶68; Exhibit 1 to Exhibit A (Landay Affidavit) to Landay's Motion (docket #50).  Accordingly, it is difficult to see how GMAC can say that "the Factoring Agreement contemplated that most of the credit would be extended after September 22, 2000".  GMAC's Statement of Disputed Facts, p. 4.  In any event, there are no facts that dispute that at least $9,170,130.56 of the loan was funded before the Usury Filing was made.

GMAC has made another equally audacious assault on the undisputed fact that it made a late Massachusetts Usury Filing: GMAC simply contends that it did not have to make the filing at all.  GMAC pretends that it made the filing <u>at the behest</u> of Landay's Boston attorney, Gary Hoff.  In support, GMAC offers a carefully-crafted affidavit of Louis G. Marcus, its New York attorney, to the effect that he felt the filing was not necessary in light of the choice of law provision.  Before accepting any of GMAC's or

3

Marcus' statements, the Court should read the Hoff Opinion Letter to which Mr. Marcus and GMAC refer (Exhibit 3 to Marcus Affidavit). First, the Hoff letter does not ask or tell GMAC to make the filing; accordingly, the filing was not made at Hoff's "behest."[2] Second, the letter makes clear that it is Hoff's opinion that, although the choice of New York law provision would be honored in Massachusetts courts, the Massachusetts Usury Statute still applied to the loan.[3] The opinion of Attorney Marcus that "there was no reason to believe that GMACCF had to comply with a Massachusetts statute" (Marcus Affidavit, ¶9) is an inadmissible conclusion of law which cannot create a dispute of material fact. Moreover, it contradicts the very opinion letter to which it refers. In any event, the fact that GMAC attempted to comply with the Massachusetts statute (but failed) speaks louder that the artfully constructed affidavit of Attorney Marcus. In September 2000, GMAC clearly believed that it was subject to the Usury laws of Massachusetts.

In addition to disqualifying Attorney Marcus' attempt to denigrate Landay's evidence concerning the Usury Filing, the Court should also disregard as conclusory Marcus' (and GMAC's) statement that "all of the significant events relating to the loan occurred in New York." Marcus Affidavit, ¶9. Marcus has demonstrated no personal knowledge of all the negotiations that Landay conducted with GMAC's Boston office and, accordingly, he has not taken them into account. The "negotiations" Marcus had with Attorney Hoff were only over the legal drafting of the terms that <u>Landay had already</u>

---

[2] Behest: "an order, command or request." Webster's New World College Dictionary (Third Ed. 1997), p. 126.

[3] Specifically, Hoff wrote, " Provided you have complied with the applicable provisions of G.L.c.271, § 49, by making the required filing in the form attached hereto with the Criminal Bureau of the Attorney General of the Commonwealth of Massachusetts…, the transactions contemplated will not…cause this transaction to be in violation of the usury laws of the Commonwealth of Massachusetts…" GMAC's Statement of Disputed Facts, Exhibit G (Marcus Affidavit), Exhibit 3, p. 5.

<u>negotiated with GMAC's Boston office</u>.  Landay Opposition Affidavit ¶¶21-23, Exhibit A to Landay's Opposition to Defendants' Motion for Summary Judgment (docket #62).  Moreover, the attorney negotiations were telephonic or by facsimile (with Marcus in New York and Hoff in Boston) but for the last minute changes that were made on the day of the closing in New York, September 19, 2000.  Marcus Affidavit, ¶¶6 and 7.  Considering that Seneca's and Landay's relationship with GMAC commenced with Landay's initial contact with GMAC's Boston office, that Landay negotiated the terms of the loan with the Boston office through August 1, 2001 when GMAC's Boston employee delivered a term sheet to Landay, and that Landay continued to deal with the Boston office (Landay Opposition Affidavit ¶¶21-23, 26-27, 30-31; Exhibit II to this Reply, Landay Deposition, pp. 46, 176-177), the one day that Landay and Hoff spent at a closing in a New York lawyer's office does not support Marcus' and GMAC's self-serving conclusion.  All of the facts Landay has presented in his previous filings with this Court show that Massachusetts was the center of gravity of the borrowing relationship between Seneca and GMAC, including its formation.

## ARGUMENT

    A.    **<u>The Massachusetts Usury Statute Applies To Landay's Usury Claim.</u>**

    1.    <u>Whether The Usury Claim Arises Out Of The Factoring Agreement Or The Guaranty, The Choice-Of-Law Provision Does Not Cover It.</u>

As noted in Landay's Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Landay's Opposition Memorandum"), p. 1-2 (docket #63), the choice-of-law provisions in the Factoring Agreement and the Guaranty are virtually

identical.  Exhibit 1 to Answer, p. 11, ¶13(d) and Exhibit 2 to Answer, p. 2.[4]  Therefore, the arguments which he made in Landay's Opposition Memorandum, pp. 1-4, apply to the Factoring Agreement as well as the Guaranty.[5]

GMAC again relies on "the one carve-out contained in the Guaranty's choice-of-law provision – i.e., that it is to be interpreted 'without giving effect to New York law on conflicts of law'", GMAC's Opposition Memorandum, p. 9, in order to avoid the well-settled principle that a civil claim of usury is a tort.  As to this principle, see Landay's Memorandum in Support of Motion for Summary Judgment on Usury Count, pp. 7-8 (docket #51).

Moreover, GMAC ignores the fact that Stagecoach Transportation, Inc. v. Shuttle, Inc., 50 Mass. App. Ct. 812, 817-819 (App. Ct. 2001) is not a conflict-of-law decision but rather an interpretation under New York law of the scope of a choice-of-law provision, like the one at bar.  In this regard, the recent case of Finance One Public Co. v. Lehman Bros. Special Financing, Inc., 414 F.3d 325, 334 (2d Cir. 2005) made it unmistakably clear that the issue before this Court is not a conflict-of-law question, but rather a question of the scope of a choice-of-law provision which selects New York law for the interpretation of an agreement.  Indeed, to the extent that the law of the forum,

---

[4] The other language in the Factoring Agreement referenced by GMAC, which authorizes GMAC to charge interest at the "highest rate permitted by New York law", does not appear as a part of the choice-of-law clause.  To the extent that the Massachusetts Usury Statute controls and New York allows a rate higher than 20%, this clause would not be enforceable in any event since, as noted below, a usury claim may not be waived.

[5] Nothing in Attorney Hoff's opinion letter, Exhibit F, Defendants' Statement of Disputed Facts, Exhibit 3, or in Landay's malpractice case is inconsistent with his present position or creates a genuine issue of material fact for trial.  As to the former, Landay's agrees with Hoff's statement that "[a] court sitting in Massachusetts would give effect to the choice-of-laws provisions of the Factoring Agreement and other Loan Documents."  Id., Exhibit 3, p. 5.  Landay simply disagrees with GMAC as to the scope of the pertinent choice-of-law clauses.  As to the latter, the waiver of "any defenses, offsets or counterclaims" "in any action or proceeding upon this guaranty," which Landay's attorney did not explain to him, has caused Landay the additional legal expenses of litigating in two forums.

i.e., Massachusetts, provides the decisional law on the question before this Court, the Stagecoach Transportation, Inc. case establishes that the relevant provisions in the Factoring Agreement and the Guaranty do not apply to tort claims. In that case, the Appeals Court held that: "We determine that the clause here, as read in the light of New York law, would not be deemed to encompass Shuttle's tortious conduct in refusing to sign the agreement it had promised to sign." Stagecoach Trans., Inc., 50 Mass. App. Ct. at 819-820.[6]

      2.     <u>Massachusetts Law Is Applicable To Landay's Usury Claim Under Governing Choice-Of-Law Principles.</u>

In its Memorandum in Support of Defendants' Motion for Summary Judgment, p. 9 (docket #53), GMAC correctly cited Dasha v. Adelman, 45 Mass. App. 418, 423 (App. Ct. 1988) and Restatement (Second) Conflict of Laws § 145 (1971) as providing the appropriate choice-of-law standard in a tort case. As argued in Landay's Opposition Memorandum, pp. 3-4 (docket #63), Landay submits that, under the applicable standard, Massachusetts law applies. In that regard, the Dasha Court wrote as follows: "Section 145 of the Restatement provides the general principle 'applicable to all torts and to all issues in tort,'…", citing Cosme v. Whitin Mach. Works, Inc., 417 Mass. 643, 646-647 (1994).

In its latest submission, GMAC abandons this approach and opts for the contractual choice-of-law provision of the Restatement, Restatement (Second) of

---

[6] GMAC's discussion of the case of Micera v. Neworld Bank 412 Mass. 728, 729-730 (1992) misses the point – the Court's selection of the four-year statute of limitations for consumer protection, i.e., a <u>tort</u> statute of limitations, over the six-year contract statute of limitations. Moreover, the Court did not distinguish between M.G.L. c. 183, § 60 and the Usury Statute in the manner which GMAC suggests. Rather, it referenced M.G.L. c. 271, § 49 in a different context, i.e., "plaintiff's argument that § 60 should be construed and applied as a usury law, with each payment creating a new cause of action." Micera, 412 Mass. at 733.

7

Conflicts of Laws § 194, and relies on a number of cases applying it. Landay submits that GMAC was correct four weeks ago when it addressed usury as a tort issue. Moreover if, indeed, civil usury is contractual, resort to Conflicts of Laws § 194 is not necessary since the choice-of-law provision of the governing documents would mandate the application of New York law, subject to the public policy exception referred to below. On the other hand, if, as Landay contends, a civil claim of usury is tort-based, the Dasha case and Restatement (Second) Conflict of Laws § 145 (1971), which the Dasha Court applied, strongly point to the application of Massachusetts law.[7]

      3.      The Greenwood Decision Should Bar The Application Of New York Law.

In his Memorandum in Support of Motion for Summary Judgment on Usury Count, pp. 8-9, Landay argued that this Court should apply the public policy rationale of its decision in Greenwood Trust Co. v. Massachusetts, 776 F. Supp. 21 (D. Mass. 1991), rev'd 971 F.2d 818 (1st Cir. 1992). This argument would apply even if this Court deemed the Usury claim to be contractual in nature and thus within the choice-of-law provisions of the operative documents. In making this argument, Landay acknowledged that the Greenwood Trust Co. case arose in the consumer context.

Landay contends that, in light of the strong public policy of M.G.L. c. 271, § 49, this Court should apply the same reasoning to bar the application of New York law to his Usury claim. This policy has been enunciated in a number of cases cited by the parties, but most importantly by the Supreme Judicial Court in Begelfer v. Najarian, 381 Mass. 177, 185 (1980) ("The public policy against usury is clearly a matter for grave legislative

---

[7] To the extent that Section 194 were to apply, Landay submits that this case would come within the exception to the rule since, for the reasons stated in Landay's Opposition Memorandum and in the next argument, Massachusetts "has a more significant relationship under the principles stated in § 6 to the transaction and the parties." Restatement (Second) Conflict of Laws § 194.

8

concern,…"). See also, LBM Fin., LLC v. Edgewater Inv. Ltd. P'ship, Nos. 01798, 01656, 02286, 2004 WL 2075565, at *4 (Mass Super. Aug. 5, 2004).[8] It should be noted that neither of these cases involved consumer loans; nor did they involve "loan sharks". The policy behind Section 49 protects all persons who are harmed by usurious lending practices, and it should be enforced.

### B. Landay Has Standing To Assert A Usury Claim Both As Junior Creditor And As Guarantor.

GMAC repeats, in part, the argument made in its Summary Judgment Memorandum, which as Landay pointed out in Landay's Opposition Memorandum, pp. 4-5, cites inapplicable foreign law and mischaracterizes the Supreme Court case and the one Massachusetts case it relies on. Landay respectfully refers the Court to the argument which he made in Landay's Opposition Memorandum (docket #63) and his Memorandum in Support of Motion for Summary Judgment on Usury Count, pp. 9-10 (docket #51).

In its Opposition Memorandum at page 15, GMAC in essence asks this Court not to follow LBM Financial, LLC v. Edgewater Investment Ltd. Partnership, 2004 WL 2075565 (Mass. Super. Aug, 5, 2004), the only precedent decided under Massachusetts law which deals with the issue of whether a party other than a borrower can avail himself of the protections of M.G.L. c. 271, § 49(a). To the contrary, this Court should follow LBM Financial and apply it to the facts of this case.

The LBM Financial case held that a junior attaching creditor, who had standing under the law of Massachusetts to contest the validity of a senior note and mortgage,

---

[8] One of the cases cited by GMAC, General Electric Co. v. Keyser, 166 W. Va. 456, 465 (1981), refused to apply New York's usury law in part because of "the strong public policy attending cases involving usury."

had a sufficient interest to assert a claim of usury. "As noted above, KOC is generally entitled to standing as a junior creditor attaching creditor. Surely the public policy interests of the usury statute are furthered by KOC's present claim". Id., 2004 WL 2075565, at *4. Landay submits that the same principle, which is consistent with the strong public policy of the Commonwealth disfavoring usurious transactions, supports Landay's right to assert a usury claim against GMAC either as junior creditor or as guarantor.

With regard to his position as junior creditor, Landay has standing to recover damages from GMAC's noncompliance with Article 9 since he is "a person that, at the time of the failure, was a debtor, was an obligor, or held a security interest in…the collateral." M.G.L. c. 106, § 9-625(c)(1). Landay held a security interest in the collateral which GMAC seized on October 22, 2001. Landay Affidavit ¶4, Exhibit A to Landay's Motion (docket #50) and Exhibit 2 to the Affidavit, the February 28, 1991 Security Agreement. The fact that Landay did not continue to perfect his security interest with subsequent Uniform Commercial Code filings after 1996 is totally irrelevant to this case since (a) it did not deprive him of a security interest in Seneca's assets and (b) the security interest remains viable via à vis GMAC In this regard, M.G.L. c. 106, § 9-201(a) states that "[e]xcept as otherwise provided in this chapter, a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors." Massachusetts law applies to Landay's security interest. M.G.L. c. 106, § 9-301(a), ("Except as otherwise provided in this section, while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in

10

collateral"). Under Massachusetts law, GMAC's knowledge of Landay's secured position – Subordination Agreement, Exhibit 6 to Defendants' Appendix – would make his security interest effective vis à vis GMAC See, e.g., In re Babcock Box Co., 200 F. Supp. 80, 81-82 (D. Mass. 1961). See also, (old) M.G.L. c. 106, § 9-301(c) and (d) which focus on the knowledge vel non of the transferee or buyer as a determinant of whether an "unperfected" security interest is subordinated to their rights. Since Landay has sufficient interest qua junior creditor to assert a claim against GMAC under the Uniform Commercial Code, Massachusetts law affords him standing to assert his Usury claim.

A similar line of reasoning supports Landay's standing qua guarantor. Under the Code, a guarantor is an "obligor" under M.G.L. c. 106, § 9-102(59)[9], and thus may sue GMAC in that capacity under M.G.L. c. 106, § 9-625(c)(1). Moreover, the pendency of the New York collection action against him, in which the usurious charges were asserted as part of GMAC's claim, shows that he has been "injured in fact". Therefore, this Court should affirm Landay's standing to assert the Usury claim as a guarantor. Such a ruling is well within the penumbra of the LBM Financial, LLC case and would also be in accord with the common law of other jurisdictions. See 12 Am. Jur. 2d Bills and Notes § 571 (2004) ("[t]he defense of illegality of the instrument has been held available to guarantors…particularly in regard to the defense of usury").

---

[9] "'Obligor' means a person that, with respect to an obligation secured by a security interest in or an agricultural lien on the collateral, (i) owes payment or other performance of the obligation, (ii) has provided property other than the collateral to secure payment or other performance of the obligation, or (iii) is otherwise accountable in whole or in part for payment or other performance of the obligation. The term does not include issuers or nominated persons under a letter of credit."

11

### C. Landay Did Not Waive His Right To Challenge The Loan As Usurious.

GMAC adds nothing to the waiver argument which it made in its Memorandum in Support of Defendants' Motion for Summary Judgment, pp. 10-11. Again, it ignores the controlling impact of Hammelburger v. Foursome Inn Corp., 76 A.D.2d 646, 649-650 (N.Y. App. Div., 2d Dep't 1980), modified, 54 N.Y.2d 580 (1981)[10], which held that a defense based on a criminal usury statute could not be waived, and United Bank of Africa, P.L.C., New York Branch v. Odimayo, No. 93 Civ. 3998, 1994 WL 185826 (S.D.N.Y. May 10, 1999), which limited the application of language virtually identical to the language in the Guaranty to defenses, offsets and counterclaims and held that a guarantor's claims could be asserted in a separate action. For the reasons stated in Landay's Opposition Memorandum, pp. 5-6, GMAC's waiver argument should be rejected.

### D. GMAC's Loan To The Borrowers Was Usurious As A Matter Of Law.

Landay has addressed GMAC's argument, which is based on an interpretation of the Massachusetts Usury Statute that flies in the face of its plain meaning, in Landay's Opposition Memorandum, pp. 7-8 (docket #63). However, GMAC makes several points as to which a reply is appropriate.

First, GMAC cites Comstock v. Steinbergh, No. 20042093J, 2004 WL 3120554 (Mass. Super. Dec. 16, 2004) for the proposition that "the criminal usury statute has generally been applied only to loans that 'in their face, contain a yearly interest rate exceeding twenty percent.'" GMAC's Opposition Memorandum, p. 18. However, almost immediately after the sentence which GMAC quotes, the Court wrote:

---

[10] The ruling was modified because the assignee of the lender had relied on the estoppel certificate and thus had taken without notice.

12

"Massachusetts courts also have determined that the 'interest and expenses' calculation under G.L. c. 271, § 49(a) includes default provisions that trigger additional interest payments, mortgage brokers' fees, and attorneys fees." Comstock, 2004 WL 3120554, at *3.  As noted in Landay's Memorandum in Support of Motion for Summary Judgment on Usury Count, p. 12, the major categories of charges included in the usury calculation are specifically provided for in the Factoring Agreement.  In this regard, items like the RAS charges, (liquidator's charges) and attorneys fees are specifically identified in paragraph 14(d) of the Factoring Agreement, Exhibit 1 to Answer, p. 12, which reads in part as follows: "we may charge to your account, when incurred by us, the amount of legal fees…and other costs, fees and expenses incurred by us…in enforcing our rights hereunder or in connection with the litigation of any controversy arising out of this agreement, or in protecting, preserving or perfecting our interest in, any collateral…".  Thus, the Comstock case supports Landay's position.

 GMAC then proceeds to bootstrap on the holding of the Comstock case – that the payment generated by a "shared appreciation" provision is not includable as part of a usury calculation – to argue that any charge, like legal fees, the amount of which is unpredictable at the time the loan is made should be excluded from the usury calculation.  Landay submits that both the plain meaning of Section 49(a) and the Comstock case itself, which as noted above recognizes that attorneys fees incurred as a result of a default are includable as "interest and expenses" under Section 49(a), contradict GMAC's unwarranted extension of Comstock's actual holding.

 GMAC's final point is that "there was no rationality behind Lowey's decision to focus his attention on the relevant time period of October 22, 2001 through January 31,

13

2003." GMAC's Opposition Memorandum, p. 19. In this argument, GMAC ignores both the language of the Usury Statute and Lowey's proffered rationale.

In this regard, the Usury Statute provides in part as follows: "Whoever in exchange for either a loan of money or other property knowingly contracts for, charges, takes or receives, directly or indirectly, interest and expenses the aggregate of which exceeds an amount greater than twenty per centum per annum upon the sum loaned or the equivalent rate <u>for a larger or shorter period</u>, shall be guilty of criminal usury…". M.G.L. c. 271, § 49(a) (emphasis added). In light of this permissive language, Lowey was authorized to analyze the usury damages for a substantial period which was less than the entire life of the loan. Moreover, the period which he chose – from October 22, 2001 through January 31, 2003 – has adequate support. As Lowey explained in his Report, "[t]he rationale for specifically identifying this period was that it begins with the date that GMAC took control of the Seneca businesses and concludes at the end of the month that includes the last significant transaction that was posted on the loan balance,…" Exhibit 1, pp. 2-3 to Affidavit of Keith D. Lowey, Exhibit J to Landay's Motion for Summary Judgment on Usury Count. Landay submits that Lowey's selection of this period was justified.[11]

### E. There Are No Factual Disputes Which Preclude The Entry Of Summary Judgment In Landay's Favor.

At pages 19 and 20 of its Opposition Memorandum, GMAC contends that there is a genuine dispute as to a material fact presented by the revolving nature of the credit extended by GMAC. GMAC concludes this argument as follows: "Unless Landay can prove that the advances included in the September 19, 2000 payment were among

---

[11] In this regard, it should be noted that GMAC has not proffered any expert testimony on what is an appropriate period under the Usury Statute under the circumstances of this case.

14

those still on the books in October 2001, and that GMACCF assessed 'interest and expenses' of greater than 20 percent on those advances, he will not be able to prevail on Count II, even under his tortured statutory interpretation." Id., p. 20.  GMAC's argument should be emphatically rejected since it is based on erroneous legal and factual premises.

The incorrect legal premise is that a lender can advance funds prior to a late Usury Filing and charge usurious rates as long as the borrower cannot establish that the funds as to which the illegal rates were applied were the same as those prematurely advanced.  GMAC has cited no case in support of this extraordinary proposition.  Moreover, the case of Hakim Enterprises, Inc. v. Reinhardt, 30 Mass. App. Ct. 911 (App. Ct. 1991) should sound the death knell for GMAC's dubious argument.  There the Court rejected a usury defense in these words: "Since [the borrowers] received no funds until [the date of the Usury Filing], the defendants have failed to show that the notice was not on file with the Attorney General prior to the time when the loan was made, that is, when the money was first advanced" (emphasis added).

It is undisputed that, on or about September 19, 2000, GMAC funded its loan to the Borrowers in the amount of $9,170,130.56.  Statement of Undisputed Facts, #6; Complaint, ¶68; Answer, ¶68; Exhibit 1 to Exhibit A (Landay Affidavit) to Landay's Motion, specifically, September 20th entry showing wire transfers totaling $9,170,130.56.  It is also undisputed that GMAC's purported Usury Notice was received by the Massachusetts Attorney General on September 22, 2000, after these funds were provided to Seneca.  Landay's Statement of Material Facts Not in Dispute, #7; Exhibit B to Landay's Motion, GMAC's Response to Landay's First Set of Interrogatories,

Response to Interrogatory 1(g); and Exhibit C to Landay's Motion, Deposition Exhibit 50 (excerpted), which includes Bates# GLAN 01165.  Since there is no dispute that funds were "first advanced" prior to GMAC's belated Usury Filing, GMAC has not established that there is a genuine issue of material fact.

Even if its legal premise were viable, GMAC has not proved the facts, albeit immaterial, on which it based its claim of a genuine dispute.  In this regard, it is clear from GMAC's own official records, i.e., its Client Statements, that the loan balance did not decline below $5,876,744.50 from the date these funds were provided until September 30, 2001, and stood at $7,376,884.31 on that date.[12]  See Exhibit III to this Reply, Deposition Exhibit 106, Bates# GMAC_Landay 00123, and 00005.  Moreover, in October of 2001, the opening balance of $7,376,884.31 was reduced to $1,436,970.25 at month's end, principally by the collection of Landay's cash and other collateral. Exhibit G to Landay's Statement of Material Facts Not in Dispute, Bates# GLAN 01517-01519.  Because the initial extension of credit was never liquidated below the October 22, 2001 balance, GMAC has not even demonstrated a genuine issue of material fact as to whether that October 22, 2001 balance was part of the original $9,170,130.56 extension of credit.  To the contrary, since Landay has established conclusively from GMAC's own records that approximately $1.4 million of the original extension of credit was still outstanding on October 22, 2001, GMAC's factual premise is entirely mistaken.

---

[12] Under the Factoring Agreement, GMAC had the right to credit payments to interest first, Factoring Agreement, Exhibit 1 to Answer, p. 10, ¶15.

**CONCLUSION**

For the reasons stated above, the arguments contained in GMAC's Opposition to Landay's Motion for Summary Judgment on Usury Count should be rejected and summary judgment should be entered in his favor.

                                          Respectfully submitted,
                                          DAVID L. LANDAY,
                                          By his attorney,

                                          /s/ Alan R. Hoffman
                                          Alan R. Hoffman, BBO# 236860
                                          Lynch, Brewer, Hoffman & Fink, LLP
                                          101 Federal Street, 22nd Floor
                                          Boston, MA 02110
                                          (617) 951-0800

Dated:  December 23, 2005
232429_1