UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-CV-11955-WGY

| | |
|---|---|
| DAVID L. LANDAY,   )<br>  )<br>     Plaintiff,   )<br>  )<br>v.   )<br>  )<br>GMAC COMMERCIAL CREDIT, LLC and   )<br>GMAC COMMERCIAL FINANCE, LLC,   )<br>  )<br>     Defendants.   )<br>  ) | **PLAINTIFF DAVID L. LANDAY'S RESPONSE TO DEFENDANTS' STATEMENT OF DISPUTED FACTS AND ADDITIONAL MATERIAL FACTS** |

Defendant (hereinafter "GMAC") claims that the facts contained in Defendants' Statement of Disputed Facts And Additional Material Facts In Opposition To Plaintiff's Motion For Partial Summary Judgment ("GMAC's Statement of Disputed Facts") can defeat Landay's Motion for Summary Judgment on Usury Count but not GMAC's own Motion for Summary Judgment. GMAC states that on its Motion it gave Landay all favorable inferences. This is not true. If GMAC gave Landay all favorable inferences, it could not dispute that Massachusetts is the epicenter of the relationship and that GMAC is subject to Massachusetts Usury laws. In any event, GMAC has not offered any <u>facts</u> that put Landay's facts in dispute.

> I. **GMAC's Statement Of Disputed Facts Does Not Offer Any Evidence That Disputes Landay's Evidence.**

GMAC has no contrary evidence with respect to the facts it claims to "dispute." On the other hand, at a minimum, Landay has offered his own sworn testimony in support of the facts GMAC refuses to accept, but has failed to put in issue.

1.      GMAC disputes Landay's Statement of Material Facts Not in Dispute, ¶¶3 and 5, claiming that Landay has not "proved" he is a secured creditor. (GMAC's Statement of Disputed Facts, pp. 1-3) GMAC goes so far as to challenge whether Landay actually loaned $3,450,000 to Seneca.  However, GMAC has offered no evidence that disputes Landay's evidence which indeed shows him to be a secured creditor to whom Seneca is indebted in the amount of $3,450,000:

[a.]    Landay has sworn that he loaned Seneca $3,450,000 (Landay Opposition Affidavit, ¶25, Exhibit A to Landay's Opposition to Defendants' Motion For Summary Judgment, docket #62), and he has corroborated this sworn statement with the consolidated note dated September 19, 2000 (Landay Affidavit ¶7, Exhibit A to Landay's Motion and Exhibit 5 to said affidavit, docket #50), and the Subordination Agreement between Landay and GMAC (Exhibit 6 to Defendants' Appendix).  Landay has also provided a security agreement between Seneca and him that proves that he is a secured creditor (Exhibit 2 to Exhibit A to Landay's Motion).  That GMAC wants more proof (Defendants' Statement of Disputed Facts p.3) does not put Landay's sworn statement or supporting evidence in dispute.

In fact, it is outlandish for GMAC to "dispute" the existence of the loans on the ground that, on the day of his deposition, Mr. Finkelstein, Seneca's comptroller, could not find the predecessor notes that were consolidated into the $3,450,000 note.  Rather than dispute Landay, Mr. Finkelstein's testimony actually corroborates Landay's evidence.  At his deposition, Mr. Finkelstein testified that, indeed, there had been several promissory notes evidencing loans to Seneca by Mr. Landay in the millions of dollars, and that he (Finkelstein) kept those notes in his fireproof cabinet at Seneca.

Exhibit I to Landay's Reply Memorandum filed herewith, Finkelstein Deposition pp. 37-39, 42-43.  In fact, Mr. Finkelstein testified that $3.4 million dollars in outstanding loans from Landay to Seneca "sounds like that could very well be correct."  Id. pp. 46-47.  During the deposition, GMAC's attorney asked Finkelstein to look for the predecessor notes in the cabinets that GMAC had confiscated from Seneca in 2001.  Id., pp. 133-134.  The notes were not where Finkelstein had left them.  Id., p. 134-135.  Since GMAC had taken custody and control of this cabinet and its contents after expelling Landay from his offices on October 22, 2001, and since Finkelstein was on the premises working in a clerical capacity for GMAC for a short while thereafter (Id., p. 126) and had left the notes in the cabinet when he departed, the logical conclusion is that GMAC lost or disposed of the missing notes in the four years that it had exclusive control of the cabinets and their contents.  In any event, Mr. Finkelstein's inability to find notes that he remembered to exist in no way puts in dispute the fact that Mr. Landay had loaned Seneca $3,450,000.

     2.     GMAC's disputation of ¶¶6 and 7 Landay's Statement of Material Facts Not in Dispute, concerning the funding of the loan (GMAC's Statement of Disputed Facts, pp. 3-4) is also a smoke-screen.  The several paragraphs describing the nature of the loan do not dispute the following facts upon which Landay relies and which either have been admitted by GMAC and/or come from GMAC's own documents: On or about September 19, 2001, GMAC provided to Borrowers the sum of $ 9,170,130.56.  Landay's Statement of Material Facts Not in Dispute, ¶6; Complaint, 68; Answer 68; Exhibit 1 to Exhibit A (Landay Affidavit) to Landay's Motion, specifically, September 20, 2000 entry showing wire transfers totaling $9,170,130.56.  Moreover, the loan balance

3

did not decline below $5,876,744.50 from that date until September 30, 2001, when the loan balance stood at $7,376,884.31 (Exhibit III to Reply, Deposition Exhibit 106, Bates# GMAC_Landay 00123 and 00005).

Considering the fact that by September 20, 2000 GMAC had already provided Borrowers with $9,170,130.56 of a $10,000,000 borrowing capacity, it is specious for GMAC to claim in its Statement of Disputed Facts (p. 4) that "the Factoring Agreement contemplated that most of the credit would be extended after September 22, 2000."

3.   The other alleged "disputed facts" are not disputes of fact at all but, rather, disputes concerning the law. (GMAC's Statement of Disputed Facts, pp. 4-5, disputing ¶¶18 and 19 of Landay's Statement of Material Facts Not in Dispute).

## II.   GMAC's Statement Of Additional Material Facts Sets Forth Facts That Are Not Material To Landay's Usury Claim.

GMAC relies on the Statement of Undisputed Material Facts that it has filed in support of its Motion for Summary Judgment. To the extent that Landay has disputed those facts, the Court is respectfully referred to his Statement of Disputed Facts filed in Opposition to GMAC's Motion for Summary Judgment.

Most of the additional facts offered by GMAC here (Defendants' Statement of Disputed Facts, pp.6-8) have no relevancy to Landay's usury claim and are certainly not material facts. In this category are the facts concerning Seneca's quest for financing (#1-4) and Landay's lawsuit against former counsel (#8).

4

        Respectfully submitted,
        DAVID L. LANDAY,
        By his attorney,


/s/ Alan R. Hoffman
Alan R. Hoffman, BBO# 236860
LYNCH, BREWER, HOFFMAN & FINK, LLP
101 Federal Street, 22nd Floor
Boston, MA 02110
(617) 951-0800

Dated: December 23, 2005

232536_1

5