UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
DAVID L. LANDAY                     )
    Plaintiff,                      )
                                    )
       v.                           )   Civil Action No. 04-CV-11955-WGY
                                    )
GMAC COMMERCIAL CREDIT LLC          )
and GMAC COMMERCIAL FINANCE         )
LLC,                                )
    Defendants.                     )
_____)

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PORTIONS OF DAVID LANDAY'S AFFIDAVIT

In his answers to interrogatories, plaintiff, David L. Landay ("Landay") testified that "[t]he intellectual property [owned by Seneca Sports, Inc. and Brookfield International, Inc.] had a value that Landay cannot estimate." *See* Affidavit of Mark B. Dubnoff ("Dubnoff Aff.") (being refiled with this Memorandum) Ex. 2, Answer to Interrogatory No. 11 at 7. Nevertheless, in paragraphs 16, 18, 40 through 43 and 45 of the Affidavit of David L. Landay dated December 13, 2005 ("the Affidavit"),[1] Landay purports to place a value on the intellectual property owned by Seneca Sports, Inc. ("Seneca") and Brookfield International, Inc. ("Brookfield") (collectively Seneca and Brookfield are referred to as "the Borrowers"). In short, in the Affidavit, Landay purports to do precisely what his interrogatory answers say that he cannot do – value the Borrowers' intellectual property. As a matter of law, Landay is bound by the sworn testimony contained in his answers to interrogatories and cannot materially deviate from that testimony. Since paragraphs 16, 18, 40 through 43 and 45 of the Affidavit are inconsistent with, and materially deviate from, Landay's prior testimony, they must be stricken.

---

[1]     A copy of the Affidavit is attached to the Defendants' Objection and Motion to Strike Portions of David Landay's Affidavit as Exhibit A.

In addition, this Court should strike the last sentence of paragraph 38 as well as paragraphs 50 and 51 because they concern discovery disputes in the related New York action, a topic that this Court recently determined to be beyond the scope of this litigation. *See* Order dated December 13, 2005 relating to Docket No. 56.

## I.   BACKGROUND

Landay is the President and CEO of Seneca, a sporting goods distributor, and Brookfield, a company that sold juvenile sports equipment and sports toys. *See* Statement of Undisputed Material Facts ¶ 1.[2] On September 19, 2000, GMAC Commercial Finance LLC ("GMAC CF") entered into a commercial factoring agreement (the "Factoring Agreement") with Seneca and Brookfield. *Id.* ¶¶ 3-5. Among other things, the Factoring Agreement provided that GMAC CF would provide the Borrowers with a $10 million line of credit, secured by the Borrowers' accounts receivable and other assets. *Id.* ¶ 7. In conjunction with the Factoring Agreement, Landay executed a personal guaranty (the "Guaranty"). *Id*. ¶¶ 10-12.

As of August 9, 2001, the Borrowers were in default of numerous provisions of the Factoring Agreement. *Id.* ¶ 26. In order to induce GMAC CF not to immediately exercise its rights as a secured creditor, Landay, in his capacity as President of Seneca and Brookfield, executed a Forbearance Agreement (the "Forbearance Agreement") with GMAC CF. *Id.*¶¶ 27-29. In conjunction with the Forbearance Agreement, Landay personally signed a Ratification and Amendment of Guaranty. *Id.* ¶¶ 32-35.

By letters dated September 25, 2001, GMAC CF notified the Borrowers and Landay of the Borrowers' default under the terms of the Forbearance Agreement and demanded payment.

---

[2]   Record citations refer to the Statement of Undisputed Facts submitted by GMAC CF in support of its motion for summary judgment on November 23, 2005 (Docket No. 54) and the related Appendix of Exhibits (Docket No. 55).

*Id.* ¶ 45.  On October 22, 2001, GMAC CF took peaceful possession of certain of the Borrowers' assets.  *Id.* ¶ 51.  Acting through its agent, RAS Management Advisors, Inc., and RAS employee John Rijo, GMAC CF proceeded to liquidate the Borrowers' inventory and fixed assets.  *Id.* ¶ 52.  GMAC CF credited all of the funds recovered during the liquidation process against the Borrowers' account.  *Id.* ¶ 55.

## II. PROCEDURAL HISTORY

### A. The New York Action

This is the second lawsuit between GMAC CF and Landay to address the same operative facts and legal theories.  On October 25, 2002, GMAC CF sued Landay on his Guaranty in New York, seeking to collect $1,205,402.13 plus interest, attorneys' fees and other collection costs (the "New York Action").  *Id.* ¶ 94 and Ex. 29.  Landay denied GMAC CF's allegations and asserted nine affirmative defenses and seven counterclaims, including fraud, failure to dispose of the Borrowers' assets in a commercially reasonable manner, breach of a "fiduciary duty to Landay as a junior creditor of Seneca under the Subordination Agreement," and violation of Mass. Gen. Laws ch. 93A ("Chapter 93A").  *Id.* ¶ 95 and Ex. 30.

After some initial discovery, GMAC CF moved for summary judgment, and on May 25, 2004, the New York Court granted the bulk of GMAC CF's motion, holding that GMAC CF was entitled to summary judgment on all issues relating to liability, including the liability aspect of its claim to recover the costs of collection and attorneys' fees.  *Id.* ¶ 96 and Ex. 31.  The Court referred the few remaining questions to a Special Referee, including the issues of "whether or not the collateral was disposed of in a commercially reasonable manner, and the net amount, if any, due to [GMAC CF] from [Landay]," as well as "the reasonable amount of collection expenses and attorneys' fees incurred by [GMAC CF]."  *Id.* at 18.  Hearings before the Special Referee

began on October 27, 2005 and concluded on November 4, 2005. The parties will submit post-hearing briefs in early February 2006, and no decision is expected from the Special Referee before March 2006.

### B.   This Lawsuit

Landay initiated this action on September 9, 2004, approximately four months after the New York court issued its summary judgment ruling. He subsequently served GMAC CF with an Amended Complaint on December 16, 2004. After filing its Answer, GMAC CF moved for judgment on the pleadings on all of Landay's claims, pursuant to Fed. R. Civ. P. 12(c). This Court heard oral argument on the motion on May 17 and granted GMAC CF's motion as to Counts III, IV and V, as well as that portion of Count VII that was based on Counts III, IV and V. The Court took the rest of the motion under advisement. On July 22, 2005, this Court issued an Order stating, "GMAC CF's motion for judgment on the pleadings on the basis of res judicata is denied." *See* Docket No. 40.

In Count VI of his Amended Complaint, Landay alleges that GMAC CF violated his rights as a junior creditor of Seneca by breaching its duties under a Subordination Agreement, pursuant to which Landay subordinated to GMAC CF a debt that Seneca owed to him. As part of its discovery efforts relating to that claim, GMAC CF served Landay with an interrogatory request that he "[s]tate the value that you believe GMAC – [CF] should have been able to obtain for "the assets of Seneca and Brookfield" and state the basis for your belief." Affidavit of Mark B. Dubnoff Dec. 14, 2005 at ¶ 3, Ex. 1 at 3. Landay provided the following response on or about September 7, 2005:

> Landay's belief is as follows: The cost of the inventory seized by GMAC was approximately $1,800,000. (see LAN 0167) A proper liquidation should have resulted in about 40% of this value. The accounts receivable were approximately $1,306,000 (RAS 01565). Historically, Seneca's dilution did not exceed 5% of

> the total balance; Borrowers typically were able to collect 95% of their receivables. Allowing for a liquidation situation, GMAC should have collected at least three quarters of the $1,306,000 owed, especially where, as here, (a) GMAC had approved the account as credit worthy and collectable and (b) Jayne Frangos had told Landay on October 15, 2001 in front of Robert Schwartz, Richard Lamontagne, David Maddoff, Esq. And GMAC lawyers that GMAC is relentless with accounts receivable and can collect 100% of all monies due. ***The intellectual property had value that Landay cannot estimate.*** However, he believes that there may be a reasonable basis for estimating such value based on either or both of Seneca's financial records, not in his possession at this time, or the Brookfield acquisition papers. He believes that certain licenses could have been sold or assigned and he knows that certain patents and trademarks could have been sold. In addition to purchase inquiries that Landay's attorney forwarded to GMAC to no avail (*see* Answer to Interrogatory 9), according to documents produced by GMAC, Rand inquired into one patent that it wanted to buy along with the inventory. ("Glan 00085) but RAS mistakenly decided that the patent was expired. Additional documents, which support this allegation are contained among the Borrowers [sic] documents not currently in Landay's possession. See answer to Interrogatory No. 4. Landay reserves his right to put a dollar figure on the intellectual property after he obtains further discovery from GMAC.

Dubnoff Aff. Ex. 2 at 7 (emphasis added).

In light of the last sentence in Landay's response and similar responses to other interrogatories, *see, e.g., id.* at 2-7, 10-13 (Answer to Interrogatory Nos. 2, 4, 5, 7, 8, 9, 11, 17), counsel to GMAC CF wrote to Landay's counsel offering Landay extra time to review the documents that GMAC CF previously made available for his inspection and requesting that Landay supplement his answers to interrogatories on or before September 23, 2005. *See* Dubnoff Aff. ¶7 and Ex. 5. Although he received ready access to the Seneca/Brookfield documents, Landay never submitted supplemental answers to his interrogatories. Notwithstanding his failure to supplement his interrogatory responses, in his December 13 Affidavit, Landay purported to testify concerning the value of the Borrowers' intellectual property. Significantly, he did so without offering any explanation for the change in his testimony between September 6, 2005 and December 13, 2005.

On November 23, 2005, GMAC CF moved, *in limine*, for an order excluding evidence relating to New York discovery disputes.  *See* Docket No. 56.  This Court granted that motion by an Order dated December 13, 2005.  Nevertheless, in several places in the Affidavit, Landay offers testimony relating to New York discovery disputes.

### III.   ARGUMENT

**A.  This Court Should Strike Paragraphs 16, 18, 40 through 43 and 45 of the Affidavit.**

In the First Circuit it is settled law that "… a party opposing summary judgment may not manufacture a dispute of fact by contradicting his earlier sworn testimony without a satisfactory explanation of why the testimony is changed." *Abreu-Guzman v. Ford*, 241 F. 3d 69, 74 (1st Cir. 2001).  *See also, Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed"); *Torres v. E.I. DuPont De Nemours & Co.*, 291 F. 3d 13, 20-21 (1st Cir. 2000) (same).  This rule applies with equal force to answers to interrogatories.  *See, e.g., In re: Independent Serv. Org. Antitrust Litig.*, 85 F. Supp.2d 1130, 1156, (D. Kan. 2000) (applying rule to interrogatories and noting "[p]rior discovery responses made under oath essentially are prior sworn testimony and should be analyzed in the same manner as prior deposition testimony"); *Donohoe v. Consolidated Operating & Prod. Corp.*, 982 F.2d 1130, 1136 n.4 (7th Cir. 1992) (stating that the district court did not consider the affidavit, "… because it contradicted [the witness'] earlier responses to an interrogatory …" and concluding that "[t]he court's refusal to consider the affidavit was appropriate"); *Martin v. Merrell Dow Pharmaceuticals, Inc.* 851 F.2d 703 (3rd Cir. 1988) (the supplemental affidavit supplied by the plaintiff contradicted answers previously given in

deposition testimony and in sworn answers to interrogatories); *Jack v. Trans World Airlines, Inc.*, 854 F. Supp. 654, 660 n.6 (N.D. Cal. 1994) ("The court disregards the affidavit of Mohammad Meddoun as an unexplained sham contradiction of his original interrogatory responses").

In *Murphy v. Ford Motor Co.*, 170 F.R.D. 82, 85 (D. Mass. 1997), the plaintiff testified at deposition that "… he did not specifically remember looking at the sections of the Owner's Guide relative to the Taurus' air bag restraint system prior to leasing the vehicle." *Id*. at 85. Subsequently, in an affidavit, he stated "… that he did, in fact, read the relevant pages of the Owner's Guide and that he relied on them in deciding to lease that particular automobile." *Id.* Confronted with those facts the Court struck the offending portions of the affidavit stating:

> A litigant may not defeat summary judgment by submitting an affidavit that, without plausible explanation, contradicts his own prior deposition testimony … If he tries to do so, the contradictory matter in the affidavit *must be stricken*.

*Id.* (emphasis added) (citations omitted).

Similarly, in *Mahan v. Boston Water & Sewer Comm'n*, 179 F.R.D. 49, 55 (D. Mass. 1998) this Court disregarded a plaintiff's sworn testimony that certain offensive conduct continued, albeit on a less pervasive basis, when at an earlier deposition she testified that the offensive conduct stopped a few years earlier. *Id.* The plaintiff failed to provide a satisfactory explanation for the contradiction between her deposition testimony and her affidavits, claiming only that at her deposition, she was "confused about time frames." *Id.* This Court disregarded the offending portions of the plaintiff's affidavit. *Id.*

Precisely the same result is in order here. In his interrogatories Landay unequivocally stated: "The intellectual property had value that Landay cannot estimate." Dubnoff Aff. Ex 2 at 7. Now, in response to GMAC CF's motion for summary judgment, he has submitted an

affidavit that purports to value the Borrowers' intellectual property. See Ex. A ¶¶ 16, 18, 40 through 43 and 45.  No explanation is given, or is possible, for Landay's contradictory sworn testimony.

All of the documents that Landay might have relied upon when he submitted his affidavit were available to him when he answered his interrogatories.  To the extent that as of September 7 Landay needed more time to review the relevant documents, GMAC CF granted a reasonable extension.  Still, Landay did not supplement his interrogatory responses: not by September 23, not by the November 11 discovery deadline, and not by the date of this filing.  Given these facts and the settled law discussed in *Abreu-Guzman*, *Murphy*, *Mahan*, and the other cases cited in this memorandum, this Court must strike paragraphs 16, 18, 40 through 43 and 45 of Landay's affidavit as inconsistent with his prior sworn testimony.

### B.  This Court Should Strike the Last Sentence of Paragraph 38 And Paragraphs 50 and 51.

In its Motion *In Limine* to Exclude Evidence  Relating to New York Discovery Disputes, GMAC CF asked this Court to preclude Landay from offering any evidence or argument relating to the discovery disputes that plagued the related New York case on the grounds that such disputes (most of which were resolved adversely to Landay) have absolutely no bearing on any of the issues in this action.[3]  By order dated December 13, this Court granted GMAC CF's motion.  Nevertheless, portions of Landay's affidavit refer to several requests, made well prior to the initiation of this action, for access to Seneca's books and records.  *See* Ex. A ¶ 38.  Landay

---

[3]   Specifically, GMAC CF argued that  Landay's Amended Complaint did not refer to the New York discovery dispute and that the plain language of Chapter 93A precluded any claim based on conduct that must have occurred primarily and substantially in New York.  Finally, citing, *Gath v. M/A-Com, Inc.*, 440 Mass. 482, 498 (2003), GMAC CF argued that as a matter of law, the discovery disputes referenced by Landay could not give rise to a Chapter 93A claim even if they occurred primarily and substantially in Massachusetts.

then concludes his affidavit with two paragraphs devoted entirely to his dissatisfaction with various aspects of the New York litigation.  *See* Ex. A ¶¶ 50 and 51.  In short, it appears that Landay has simply ignored this Court's December 13 order.  Obviously, he cannot be permitted to do so.

Accordingly for the same reasons that it granted the Motion *In Limine* to Exclude Evidence  Relating to New York Discovery Disputes and because the Court's December 13 order is now the law of this case, this Court should strike the last sentence of paragraph 38 as well as paragraphs 50 and 51, each of which indisputably relates to New York discovery disputes and is irrelevant to the claims remaining in this action.

### IV.   CONCLUSION

In the Affidavit, Landay testified, under oath, that "[t]he intellectual property had a value that Landay cannot estimate."  Since mid-August 2005 Landay has enjoyed ready access to Seneca's records and documents, yet despite being invited to do so, he never supplemented his answers to interrogatories.  Having failed to supplement his answers to interrogatories before the close of discovery, Landay cannot now change his testimony in an effort to avoid summary judgment.  Accordingly, this Court should strike paragraphs 16, 18, 40 through 43 and 45 of the Affidavit on the grounds that they contradict Landay's sworn answers to interrogatories and differ in material respects from his prior testimony concerning his inability to value the intellectual property owned by Seneca and Brookfield.

Likewise, this Court should strike the last sentence of paragraph 38 as well as paragraphs 50 and 51 because they purport to introduce evidence relating to discovery disputes in the New York action, a topic that this Court has already determined to be outside the scope of this litigation.

|  | Respectfully submitted,<br>GMAC COMMERCIAL FINANCE LLC |
|---|---|
| DATED:  December 23, 2005 | /s/ John A. Houlihan<br>/s/ Mark B. Dubnoff<br>John A. Houlihan (BBO # 542038)<br>Mark B. Dubnoff (BBO # 637212)<br>EDWARDS ANGELL PALMER &<br>DODGE LLP<br>101 Federal Street<br>Boston, MA  02110<br>(617) 439-4444 |