# EXHIBIT 1

```
 1
 2    SUPREME COURT OF THE STATE OF NEW YORK
 3    COUNTY OF NEW YORK
 4    ------------------------------------------x
 5    GMAC COMMERCIAL FINANCE, LLC,
 6                              Plaintiff,
 7           -against-
 8    DAVID L. LANDAY,
 9                              Defendant.
10    ------------------------------------------x
11    Index No. 602338/02
12                                    November 4, 2005
                                      60 Centre Street
13                                    New York, New York 10007
14
      B E F O R E :  LOUIS CRESPO, Special Referee,
15
16    A P P E A R A N C E S :
17        COHEN TAUBER SPIEGEL & WAGNER, LLP,
               Attorney for Plaintiff
18             420 Lexington Avenue
               New York, New York  10017
19        BY:  STEPHEN WAGNER, ESQ. of Counsel.
20
          LABATON SUCHAROW & RUDOFF, LLP,
21             Attorney for Defendant
               100 Park Avenue
22             New York, New York  10017
          BY:  JOSEPH H. EINSTEIN, ESQ. of Counsel.
23
                           ***
24
25
                                      Heyward C. Davis,
26                                    Official Court Reporter.
```

```
 1                          Proceedings
 2      the date that GMAC took peaceful possession of Seneca's
 3      assets.
 4              THE REFEREE:  Okay, that's noted.
 5              MR. WAGNER:  Fine.
 6              THE REFEREE:  Exhibit N is marked in
 7      evidence.
 8              (Received and marked Defendant's Exhibit N
 9          in evidence.)
10              MR. EINSTEIN:  We call Keith Lowey.
11              K E I T H    D.   L O W E Y,
12      Giving his business address as 124 Washing Street,
13      Foxborough, Massachusetts, 02035,
14      called as a witness on behalf of the
15      Defendant, having first been duly
16      sworn, was examined and testified as follows:
17              THE REFEREE:  How do you spell your last
18      name?
19              THE WITNESS:  L-o-w-e-y.
20              THE REFEREE:  Okay.  Your address, sir?
21              THE WITNESS:  Business or home?
22              THE REFEREE:  Business is fine.
23              THE WITNESS:  124 Washington Street.
24      Foxborough, Massachusetts, 02035.
25              THE REFEREE:  Mr. Lowey please follow my
26      instructions.  Only answer the question that is asked.
```

Mr. Lowey - by Defendant - direct

If you don't understand a question, advise the Court and I'll direct counsel to rephrase.

Speak in a loud, clear voice so that the official court reporter can take down your testimony. During your testimony if there is an objection, please stop and allow for this Court to make a ruling. If I overrule the objection, you must answer. If I sustain the objection, you must not answer the question. Okay?

THE WITNESS: Okay.

THE REFEREE: Mr. Einstein, you may inquire

DIRECT EXAMINATION

BY MR. EINSTEIN:

Q   Mr. Lowey, would you just tell the Court your business background and experience.

A   I graduated from Bentley College in 1983 with a degree in a bachelors of science in accountancy. I proceeded to work for Arthur Anderson for three years out of school in the commercial audit division. In 1986 I became certified and was employed by a company called Stadium Management Corporation, which was the owner of Foxborough Stadium, Shaeffer Stadium at that time. And proceeded to work for that and some successor as comptroller and chief financial officer until approximately 1990, when I then left the employee of the current owners of the stadium and got back into public accounting with a small firm that

8

1       Mr. Lowey - by Defendant - direct
2  currently, I'm currently employed with.
3       Q    What is the nature of your practice?
4       A    It's an accounting firm, two partners,
5  approximately 35 total employees. The nature of the
6  practice is about 75 percent bankruptcy and solvency,
7  litigation support type practice dealing with troubled
8  business situations. The remaining component is tax
9  compliance process. We do some personal financial
10 management, not investments, per se, but help people manage
11 their financial affairs and also do some work in campaign
12 finance reporting.
13      Q    Concentrating on the bankruptcy and solvency area,
14 have you participated in any liquidations?
15      A    Yes.
16      Q    How many of those? And describe for the Court the
17 nature.
18      A    We as a firm frequently get employed in which
19 oftentimes bankruptcy trustees, creditors, committees and
20 liquidating trustees as financial advisers and accountants.
21 Ever since 1990 we've probably been employed in
22 approximately 1500 Chapter 7 cases and approximately 150
23 Chapter 11 cases. In many of those, well, in virtually
24 every case that is an asset based case, whether it is a
25 Chapter 7 or 11, there are liquidation issues, typically I'm
26 involved in some way, shape or form.

9

Voir dire - Plaintiff

    MR. EINSTEIN: Let me mark as the next exhibit, Mr. Lowey's curriculum vitae.

    THE REFEREE: Four pages marked for identification.

    (Received and marked Defendant's Exhibit O for identification.)

Q    I show you Exhibit O. Does that accurately summarize your background and experience as an accountant in the liquidation field?

A    Yes.

Q    All right.

    MR. EINSTEIN: I'd like to both offer this in evidence and ask that Mr. Lowey be qualify as an expert witness.

    THE REFEREE: All right.

    MR. WAGNER: I have no objection to the C V going in, but I do have an objection to Mr. Lowey being qualified as an expert.

    THE REFEREE: Do you want a voir dire?

    MR. WAGNER: Sure.

VOIR DIRE EXAMINATION

BY MR. WAGNER:

Q    Mr. Lowey, you stated that you were involved in bankruptcies and that in most bankruptcies there are liquidation issues. Can you please describe what those

Voir dire - Plaintiff

liquidation issues that you personally are involved in.

A   Sure. Frequently in asset type cases there are, whatever the remaining assets are, whether it be account receivables, inventory, intangible assets, personal property we will typically be involved in working with, working with whoever employed us to determine what the most effective way to, well either to account for or what the most effective way to liquidate those assets are.

And a lot, it typically depends on where the case is when we're retained. If the assets are still there and they haven't been liquidated, we're typically participating in the decision on how to liquidate those assets. If we're employed, which is in some instances the case where the assets have already been sold and we're typically retained from an accounting prospective, we'll just do accounting and oftentimes tax compliance issues.

Q   Have you ever been involved in the actual liquidation of assets?

A   Yes.

Q   Have you called retailers or potential purchasers to see if they were going to buy inventory from a business going, that's going out of business or out of business already?

A   Not directly, no.

Q   Have you ever testified as a witness with regard

      to the commercial reasonableness of a, of an asset liquidation sale?

      A    No.

      Q    Have you ever been involved in the liquidation of assets of a manufacturing business?

      A    Yes.

      Q    How many times?

      A    There is one prominent one, that was Nordic Trac.

      Q    Can you tell me what your experience was with Nordic Trac, please.

      A    Yes, we were employed initially for about two weeks to help the debtor prepare their bankruptcy schedules. And then subsequent to that, we were retained as what was called the estates administrator, which basically, I was the individual appointed by the Court to oversee the liquidation itself and worked with the organization that was retained to actually liquidate the inventory. A lot of the inventory, anyway. They didn't liquidate the entire portfolio, but also to sell components to the business and then to go and collect the receivables and liquidate the remaining assets, which included personal property and manufacturing equipment.

      Q    Which organization did you work with?

      A    Ozer.

      Q    And Ozer was the one that actually did the hands

12

1  Mr. Lowey - by Defendant - direct
2  on work of selling off the assets?
3     A    The majority of the inventory and the business,
4  certain business components.
5     Q    And Ozer reported back to you?
6     A    Yes.
7     Q    Other than Nordic, were there any others?
8     A    There may have been some, many smaller cases in
9  terms of Chapter 7's, and so I can't say for certain how
10 many there were, but there were others.  I can't quantify
11 the number.
12           MR. WAGNER:  I have no further questions on
13      voir dire.  And I object.
14           THE REFEREE:  Okay.  Based upon his responses
15      during your Q and A, I overrule the objection.  I shall
16      qualify him as an expert.
17           MR. EINSTEIN:  Thank you.
18 CONTINUING DIRECT EXAMINATION
19 BY MR. EINSTEIN:
20    Q    Mr. Lowey, let me start by directing your
21 attention to what has been marked as Defendant's Exhibit A.
22           MR. EINSTEIN:  I'm sorry, withdrawn.
23    Q    Mr. Lowey, in connection with your preparation to
24 testify in this case, did you review any papers and
25 documents?
26    A    Yes, I did.