UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-CV-11955-WGY

| | |
|---|---|
| DAVID L. LANDAY, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>GMAC COMMERCIAL CREDIT, LLC and )<br>GMAC COMMERCIAL FINANCE, LLC, )<br>)<br>    Defendants. )<br>_____ ) | **MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PORTIONS OF DAVID L. LANDAY'S AFFIDAVIT** |

Plaintiff David L. Landay ("Landay") submits this memorandum in opposition to Defendants' Motion to Strike Portions of Landay's December 13, 2005 Affidavit in Opposition to Defendants' Motion for Summary Judgment. In addition to this memorandum, Landay is filing an affidavit in opposition to Defendants' Motion to Strike ("Landay's January 5, 2006 Affidavit").

## **INTRODUCTION**

Landay is the Plaintiff in the instant action and the Defendant in an action in New York brought by Defendants ("GMAC") for collection on a guaranty that Landay signed in September 2000 on behalf of two corporations in which he had a substantial interest. The two corporations, Seneca Sports, Inc. and Brookfield International, Inc. will be referred to jointly here as "Seneca."  In addition to Landay's interest in Seneca as a shareholder, at all relevant times he was also a secured creditor of Seneca.  When Landay signed the GMAC guaranty, he also subordinated his rights as a creditor to the rights of GMAC, becoming the junior creditor immediately behind GMAC.

After declaring its loan to Seneca in default, on October 22, 2001, GMAC seized all the assets of Seneca and all books and records of Seneca and expelled Landay from Seneca's premises. GMAC collected from Landay personally $5,350,000 million in collateral that he had provided to secure the GMAC/Seneca loan, and GMAC proceeded to liquidate Seneca's assets to pay the balance remaining on the loan. From the time Landay was expelled from his offices, GMAC withheld from him Seneca's records, despite Landay's many attempts to gain access, beginning in October 2001. Moreover, although GMAC promised Landay an accounting in 2001, Landay has yet to receive that accounting.

In the instant action, Landay seeks damages from GMAC on four legal theories that survived GMAC's Motion for Judgment on the Pleadings:  Usury, Fraud, Junior Creditor Rights and Chapter 93A.  GMAC's instant motion attacks paragraphs of Landay's December 13, 2005 Affidavit that relate to his Junior Creditor claim and his Chapter 93A claim.

Landay claims (and has supported his claims with facts) that GMAC conducted a liquidation of Seneca that violated Landay's rights as a junior creditor and as a guarantor.  It is also Landay's position that GMAC's cavalier treatment of Landay and Seneca in the liquidation is part of a continuous course of conduct by GMAC involving sharp business practices that violate Chapter 93A.  In addition to the facts concerning the liquidation, there are many more acts alleged (and proved) by Landay that are part of the course of conduct that must be scrutinized under Chapter 93A.  These include usury, fraudulent acts and conduct, sharp practices engaged in by GMAC personnel and representatives during the year that GMAC and Seneca/Landay did business, and

GMAC's post-seizure practices such as (i) its confiscation of Seneca's books and records and its refusal to grant Landay access for four years and (ii) GMAC's refusal to provide to date the accounting that it promised Landay in 2001. All of these acts are part of the mosaic that is subject to condemnation under Chapter 93A.

In its motion for summary judgment GMAC attacked Landay's Junior Creditor claim on the ground that he could not prove damages. GMAC claims that Landay cannot show at trial that a proper liquidation would have yielded more than GMAC was owed as Seneca's primary creditor.  In response to GMAC's motion, Landay showed that a proper liquidation, including the sale of intellectual property that GMAC made no attempt to sell, would have yielded enough to pay GMAC and part of Seneca's debt to Landay as well.  It is this evidence that GMAC attacks on the instant motion, claiming that the evidence contradicts one of Landay's interrogatory answers.  Landay shows below and in his January 5, 2006 Affidavit that this is not so.

In its Motion for Summary Judgment, GMAC gave minimal treatment to Landay's 93A claim.  It simply stated that if Landay's other claims fell, so must the Chapter 93A claim.  In response, Landay showed otherwise and pointed out that the Court must consider the entire course of GMAC's conduct, whether or not it amounts to fraud or proves some other claim. On the instant motion, GMAC seeks to strike from consideration some of that conduct, claiming that this Court's December 13 order prohibiting Landay from introducing evidence of New York discovery disputes also wipes off the slate any of GMAC's underlying conduct regarding its withholding of all of Seneca's business records and its failure to account, even if that conduct began in 2001 and continues to date. By removing pieces of the mosaic, GMAC plans to eviscerate

3

Landay's Chapter 93A claim. As will be shown below, this Court did not take such a draconian action in its December 13, 2005 Order.

## ARGUMENT

### I. This Court Should Not Strike The Paragraphs Of Landay's Summary Judgment Affidavit Regarding Intellectual Property.

GMAC claims that paragraphs 16, 18, 40-43 and 45 of Landay's December 13 affidavit concerning Seneca's intellectual property clearly contradict Landay's September 6, 2005 answer to GMAC's interrogatory 11 in which he was asked to "State the <u>value that you believe</u> GMAC <u>should have been able to obtain</u> for the assets of Seneca and Brookfield and state the basis for your belief" (emphasis added). After answering as to accounts receivable and inventory, Landay stated the following:

> The intellectual property has value that Landay cannot estimate. <u>However, he believes that there may be a reasonable basis for estimating such value based on either or both of Seneca's financial records, not in his possession at this time, or the Brookfield acquisition papers</u>. He believes that certain licenses could have been sold or assigned and he knows that certain patents and trademarks could have been sold….Additional documents which support this allegation are contained among the Borrowers documents not currently in Landay's possession…. <u>Landay reserves his right to put a dollar figure on the intellectual property after he obtains further discovery from GMAC</u>" (emphasis added).

As shown in Section A below, the bulk of the affidavit statements attacked by GMAC as inconsistent with the foregoing answer are paragraphs in which Landay recites historical facts, not his belief concerning the amount GMAC should have realized upon a proper liquidation of the intellectual property. Except for an opinion expressed in a portion of paragraph 43 and, to a lesser extent, a statement in a portion of paragraph 42, none of the statements under attack could even remotely contradict any answer to a

4

question asking what Landay believed GMAC "should have realized" for the intellectual property.

As shown in Section B below, the opinions expressed in paragraphs 42 and 43 of Landay's affidavit do not contradict Landay's answer to Interrogatory 11 at all. When read a whole, the interrogatory answer is very clear that Landay stated that he was unable to estimate the liquidation value of the intellectual property <u>at the time of his answer</u> because he need to review Seneca documents in GMAC's exclusive possession and, accordingly, Landay reserved his right "to put a dollar figure on the intellectual property after he obtains further discovery from GMAC." The worst thing that can be said about Landay's interrogatory answer is that, when the sentence relied on by GMAC is quoted by itself and out of context, it could be viewed as making the rest of the answer ambiguous. This is not grounds to strike portions of Landay's affidavit. Finally, as shown in Section C below, even if this Court were to determine that there was a contradiction between the interrogatory answer and affidavit, none of Landay's affidavit should be stricken.

> A. <u>In Moving To Strike Averments Which Do Not Constitute Landay's Estimate Of Value And Which Are Independently Relevant To An Alternative Method Of Valuing Assets, GMAC Has Painted With Too Broad A Brush</u>.

GMAC's Motion is based on the purported contradiction between Landay's Answer to Interrogatory No. 11, where he stated, in part and with qualification, that he was unable to estimate the value of Seneca's intellectual property, and the opinion of value which he proferred in the December 13 Affidavit. Yet, GMAC has moved to strike averments of the affidavit which contain evidence which is not even arguably contradictory to Landay's answer that he was unable to place a liquidation value on the

5

property at that time.  In seeking to strike these averments, GMAC is attempting to remove evidence that is relevant to proof of the value of Seneca's intellectual property on a theory which is wholly independent of Landay's valuation.

This is demonstrated by a summary of those portions of the paragraphs which GMAC seeks to have stricken which do not contain Landay's opinion of value.  In this regard, paragraph 16 of Landay's December 13, 2005 Affidavit states that Seneca created numerous patented products and registered trademarks and, in or about 2000, Seneca acquired Hutch and Forster trademarks for $250,000.  Paragraph 18 reflects that in September 2000 Seneca bought the Brookfield intellectual property for $1,600,000.  Paragraph 40 states that, as of October 22, 2001, Seneca owned the patents and trademarks referred to above.  Paragraph 41 states that $1,300,000 of the $1,600,000 paid for Brookfield's intellectual property in September 2000 related to the patents and trademarks.  In the second, third and fourth sentences of paragraph 42 Landay characterizes the Brookfield and Seneca patents and trademarks and refers to the letter of Timothy French, Esq. which describes Seneca's patents and trademarks. In the first two sentences of paragraph 43, Landay states that, on the date of the GMAC takeover in October, 2001, Seneca owned all the trademarks and patents which it had held in 2000 and, with few exceptions, that Seneca had maintained the patents and trademarks by paying all necessary fees.  Finally, in paragraph 45, Landay states that patents and trademarks lose their value over time and that GMAC should have offered Seneca's patents and trademarks for sale immediately after the seizure.

Even assuming arguendo (and contrary to the clear meaning of Landay's interrogatory answer) that Landay's interrogatory answer stated without qualification

6

that Landay cannot estimate the value of Seneca's intellectual property, the affidavit statements referred to above do not contradict the answer. Moreover, the statements in the affidavit are admissible as evidence of the value of Seneca's patents and trademarks on a valuation theory which is separate from and independent of Landay's opinion of value. As Landay showed in his Memorandum in Opposition to GMAC's Motion for Summary Judgment, with sufficient facts concerning value, the Court can reach its own conclusion concerning liquidation value without opinion evidence. Indeed, the <u>best evidence</u> of value is a recent arm's length sale, like Seneca's acquisition of the Hutch-Forster trademarks and the Brookfield patents and trademarks. See <u>Schonfeld v. Hilliard</u>, 218 F.3d 164, 178 (2d Cir. 2000) ("a recent sale price for the subject asset, negotiated by parties at arm's length, is the 'best evidence' of its market value"). Therefore, GMAC's Motion to Strike should be denied with respect to paragraphs 16, 18, 40, 41, all but the first sentence of 42, the last two sentences of 43, and 45. Landay shows below that the motion should be denied as to the remaining sentences in 42 and 43 as well.

    B.    <u>There Was No Contradiction Between Interrogatory Answer No. 11 And The Paragraphs In Landay's December 13 Affidavit In Which He Expresses An Opinion Of The Value Of Seneca's Patents And Trademarks</u>.

As shown in the discussion above, the only portions of Landay's Affidavit which are even arguably contradictory to his Answer to Interrogatory No. 11 are the last two sentences of paragraph 43, in which Landay expresses his opinion of the value of Seneca's portfolio of patents and trademarks, and, perhaps, the first sentence of

paragraph 42.[1]  In order to prevail on this issue, GMAC must establish a <u>clear contradiction</u> between Landay's interrogatory answer and these portions of his affidavit. <u>Colantuoni v. Alfred Calcagni & Sons, Inc.</u>, 44 F.3d 1, 4-5 (1st Cir. 1994).  As will be shown below, there was none.

GMAC singles out, highlights and takes out of context the statement that "[t]he intellectual property had value that Landay cannot estimate" and profers as "contradictory" the estimate in Landay's December 13, 2005 Affidavit.  However, there was no contradiction because the plain meaning of Landay's answer was that he could not make an estimate of value <u>at that time</u>.  That this is the case is shown by the following portions of Interrogatory No. 11 – "he believes that there may be a reasonable basis for estimating such value based on either or both of Seneca's financial records, not in his possession at this time, or the Brookfield acquisition papers" – and at the end of his answer – "Landay reserves his right <u>to put a dollar figure</u> on the intellectual property after he obtains further discovery from GMAC" (emphasis added).  Since it is obvious that Landay's interrogatory answer referred to his <u>then current</u> inability to provide an estimate of value, his December 13 Affidavit did not amount to a clear contradiction of the interrogatory answer.

In this regard, any ambiguity in the interrogatory answer should be resolved in Landay's favor.  This is so for several reasons.  First, the general rule is that, on summary judgment, all inferences must be resolved in favor of the party opponent. <u>Fleet Nat'l Bank v. H&D Entertainment, Inc.</u>, 96 F.3d 532, 537 (1st Cir. 1996), <u>cert. den.</u>

---

[1] This sentence reads as follows: "At the time of the September 19, 2000 closing, the numerous other valid trademarks and patents Seneca had developed and owned (including the Hutch-Forster trademarks for which Seneca had paid $250,000) were worth at least as much as the Brookfield trademarks and patents acquired in the purchase from Craft House."

520 U.S. 1155 (1997) (on motion for summary judgment, all inferences and questions of credibility are resolved in favor of opposing party).  Second, all ambiguities are to be resolved in favor of the party opposing the motion.  Doe v. Connecticut, 75 F.3d 81, 84 (2d Cir. 1996); and Philippeaux v. County of Nassau, 921 F. Supp. 1000, 1005 (E.D.N.Y. 1996).  Third, these general principles have been applied in the context of a claim that an affidavit filed in response to a summary judgment should be stricken as contradictory to a prior sworn statement.

In Selenke v. Medical Imaging of Colorado, 248 F.3d 1249 (10th Cir. 2001), the Court of Appeals, in reversing the trial court, held that an affidavit which referenced breathing difficulties should have been considered below, notwithstanding the plaintiff's failure to mention this condition in response to deposition questions, because of the ambiguity in her deposition testimony.  See, also, Tippens v. Celotex Corp., 805 F.2d 949, 953 (11th Cir. 1986) where the Court wrote that "[a] definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence", citing Moore's Federal Practice § 56.15[4] (2d ed. 1985).[2]

The First Circuit decision of Gillen v. Fallon Ambulance Service, Inc., 283 F.3d 11, 26 (1st Cir. 2002) is instructive.  In that case, the Court reversed a District Court which had rejected an affidavit that "contradicted" an admission in an earlier deposition relating to the plaintiff's ability to lift a 70 pound weight.  In this regard, the Court wrote:

> Although it is true that a party opposing summary judgment cannot create a genuine issue of material fact by the simple expedient of filing an affidavit that contradicts clear answers to unambiguous questions in an earlier deposition, Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-

---

[2] "An opposing party's affidavit should be considered although it differs from or varies [from] his evidence as given by deposition or another affidavit and the two in conjunction may disclose an issue of credibility."

5 (1st Cir. 1994), the deposition testimony here was neither clear nor unambiguous. The appellant testified that she did not know whether she could lift a particular weight on a particular date, but that it did not take her long to reach ninety pounds. Thus, the deposition testimony is, at best, inconclusive as to whether she could have lifted any given weight *lower* than ninety pounds at some earlier time (say, when she applied for an EMT position with FAS). A subsequent affidavit that merely explains, or amplifies upon, opaque testimony given in a previous deposition is entitled to consideration in opposition to a motion for summary judgment. Shepard v. Slater Steels Corp., 168 F.3d 998, 1007 (7th Cir. 1999); see also Herring v. Can. Life Assur. Co., 207 F.3d 1026, 1030-31 (8th Cir. 2000). Thus, the district court erred in disregarding the appellant's affidavit.

Id.

Therefore, even if Landay's interrogatory answer were ambiguous, he is entitled to the favorable inference that he was referring only to his ability to estimate the value of Seneca's intellectual property <u>at the time of his answer</u>. Thus, there was no contradiction between his later opinion and the interrogatory, as GMAC asserts.

    C.    <u>Even Were This Court To Determine That There Was A Contradiction Between Landay's Interrogatory Answer And His Affidavit, Landay's Explanation Establishes That His Affidavit Is Not A Sham</u>.

Under the leading case of Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d at 4-5, even if a party has given "clear answers to unambiguous questions," which are later contradicted by an affidavit submitted to defeat a summary judgment motion, the affidavit should not be stricken if the party "give[s] a satisfactory explanation of why the testimony has changed." See 11 James W. Moore, et al., Moore's Federal Practice § 56.14[1][f], at 179 (3d ed. 1997) ("If a party's deposition and affidavit are in conflict, the affidavit is to be disregarded unless a legitimate reason can be given for the discrepancy"). See, also, 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2726 (3d. ed. 1998).

10

> It seems quite clearly correct to conclude that an interested witness who has given clear answers to unambiguous questions cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, without providing a satisfactory explanation of why the testimony is changed. <u>If such an explanation is proffered, a credibility question is presented; without it, there are no facts suggesting why a credibility question exists and the nonmoving party should not be allowed to manufacture a question of fact to delay resolution of the suit</u>.

(emphasis added).

In this regard, the First Circuit has written as follows: "[L]apse of memory, new sources of information <u>or other events</u> can often explain a revision of testimony." <u>Hernandez-Loring v. Universidad Metropolitana</u>, 233 F.3d 49, 54 (1st Cir. 2000) (emphasis added). Moreover, it has been held that "[a]dditional information may be provided by an affidavit submitted in opposition to a motion for summary judgment so long as the affiant did not testify at deposition that no such additional information existed." <u>RLI Ins. Co. v. Berry, Dunn, McNeil and Parker, LLC</u>, No. 02-175-P-H 2003 WL 21210297, at *5 (D. Me. May 22, 2003), citing <u>Elwell v. Conair, Inc.</u>, 145 F. Supp. 2d 79, 85 (D. Me. 2001). <u>See</u>, <u>also</u>, <u>Net 2 Press, Inc. v. 58 Dix Ave. Corp.</u>, 266 F. Supp. 2d 146, 153 (D. Me. 2003).

It cannot be denied that, far from stating in answer to Interrogatory No. 11 that no additional information existed, Landay stated that he believed that additional information did exist and he "reserves his right to put a dollar figure on the intellectual property after he obtains further discovery from GMAC." Moreover, while Landay contends that there is no contradiction between his interrogatory answer and his affidavit, to the extent that this Court were to find otherwise, Landay has set forth in his January 5, 2006 affidavit "other events" which provide a satisfactory explanation for any change in his testimony concerning his beliefs as to liquidation value.

11

When Landay answered his interrogatories, he had not reviewed fully the entire one-million page cache of Seneca documents which GMAC had recently produced. Landay Affidavit, ¶¶9 and 10.  Indeed, GMAC had just that day delivered the 5,000 pages which Landay had designated for photocopying upon his initial inspection of the Seneca documents in the offices of GMAC's attorneys.  Id., ¶10.  Moreover, Landay believed that his expert, Keith Lowey, would address the issue of the value of the intellectual property in his report.  Id., ¶10.  However, delays in obtaining information from GMAC concerning other aspects of Lowey's analysis prevented Lowey from making a full liquidation evaluation of the intellectual property by the time his report was due.  While Lowey's report states that the total value of Seneca's intellectual property presumably exceeded the $1.6 million paid for the Brookfield portion, it also stated that Lowey "was not able to assign a value to the intellectual property at this time." Id., ¶ 27.

When Landay reviewed the expert report after its submission on October 10, 2005, and observed that Lowey had been unable to formulate an opinion of the full liquidation value of Seneca's patent and trademarks in the time allotted, Landay assumed the task.  Despite being unable to find the Hutch-Forster sales information and lists of intellectual property in the Seneca documents, Landay reviewed the documents available to him, gave further thought to the question of value and was able to give his opinion at the New York trial in early November.  Id., ¶¶13, 27-28.  This explanation is sufficient to explain the putative contradiction.  Thus, at most, the discrepancy should raise a credibility issue and not result in the allowance of the Motion to Strike.

At page 8 of its Memorandum, GMAC complains about Landay's failure to supplement his answer to Interrogatory No. 11. Be that as it may, the failure to supplement should not provide a basis for relief under the circumstances of this case.

GMAC's statement that "[a]ll of the documents that Landay might have relied on when he submitted his affidavit were available to him when he answered his interrogatories" (GMAC's Memorandum, p. 8) is simply incorrect for two reasons. First, the Seneca documents which Landay had designated for photocopying were not provided by GMAC until September 6, 2005, when they were delivered to counsel in Boston just before Landay signed his interrogatory answers; Landay had no opportunity to review the documents. Landay's January 5, 2006 Affidavit, ¶10. Second, Landay to this day has been unable to locate the documents relating to the Hutch-Forster intellectual property purchase despite surveying the one million pages of documents located in defense counsel's office on two separate occasions. Id., ¶¶12 and 13.

GMAC states that Landay was "granted a reasonable 'extension' to supplement his answers;" but Landay did not supplement his responses prior to the close of discovery on November 11, 2005 or prior to the filing of GMAC's motion. GMAC's Memorandum, p. 8. First, GMAC had no right to set a deadline for supplementation as it purported to do in its correspondence with Landay's counsel. Landay's January 5, 2006 Affidavit, Exhibits 2 and 4. The Federal Rules of Civil Procedure control the timing on supplementation of discovery responses; and under Federal Rules of Civil Procedure 26(e)(2), Landay was required to supplement his answers "seasonably." Second, while Landay had not formally supplemented his responses prior to the filing of GMAC's

13

Motion for Summary Judgment,[3] he had provided the basic information contained in his December 13, 2005 affidavit by way of the Lowey report and Landay's testimony under oath at the New York trial on November 1, and November 4, 2005.

At the New York trial, Landay identified the patents and trademarks which Seneca possessed at the time that GMAC took over Seneca's assets, (Landay's January 5, 2006 Affidavit, Exhibits 6, 7, 8 and 9); and averred that, with a few exceptions, they were still current at that time. Id., Exhibit 10. He referred to the purchase price for the Hutch-Forster intellectual property, and the Brookfield intellectual property. Id., Exhibits 6 and 7. He then opined that the Seneca patents and trademarks were worth at least $2,000,000 in October of 2001. Id., Exhibit 7. Therefore, it is undeniable that GMAC had the Lowey report and Landay's sworn statements which constituted a de facto supplementation of Interrogatory Answer No. 11 prior to the close of discovery. Id., ¶¶14, 27-29.

The case of The Coakley Landfill Group v. IT Corp., 116 F. Supp.2d 237, 242-243 (D. N.H. 2000) is instructive. Coakley Landfill Group involved a claim by IT, a terminated contractor, for payment. The contract allowed IT to recover the difference between (a) the contract price and (b) the payment already received and the Landfill Group's cost to complete. In an interrogatory answer, the Landfill Group had stated unequivocally that the contract price was $4,808,766.40. In another interrogatory answer, the Landfill Group stated that the cost to complete had been $2,006,350.76 so far and that "the costs continue to increase, and are not the final damage amounts." A year later, having never amended or supplemented its answers, the Landfill Group submitted an affidavit in opposition to a motion for partial summary judgment that stated

---

[3] Attached as Exhibit A hereto are Supplemental Answers which Landay is serving on this day.

14

that the contract price had been adjusted down by change orders to $4,625,196.40; the affiant offered no proof of the change orders or any explanation for the discrepancy between his affidavit and the interrogatory answer. The affidavit also stated that the cost to complete had increased due to the receipt of additional invoices. Although IT moved to strike these statements from the affidavit, they were allowed by the Court. Not surprisingly, where the interrogatory answer had indicated that costs would continue and the affidavit stated that additional invoices indeed had been received, the Court found "[t]he affidavit provides a sufficient explanation for the contradiction in costs of the project between the interrogatory answer of $2,006,350.76 and the affidavit statement of $2,413,130.99".[4] Id. at 243. However, the Court also accepted the affiant's unsupported, unexplained statement of the adjusted contract price. Expressing strong criticism of the affidavit in that respect, the Court nevertheless accepted the new figure based on an attorney letter that was sent "twenty-three days after an affidavit which partially contradicts the affidavit filed with the court which partially contradicts the unammended interrogatories." Id. at 243. Finding the explanation of this contradiction "barely sufficient," the Court nevertheless accepted the adjusted contract figure in recognition of the importance of avoiding credibility determinations on a summary judgment motion.

It should be noted that in The Coakley Landfill Group, the Landfill Group had never supplemented its answers to interrogatories. In this regard, the Court was critical of the Landfill Group, stating that "[a]t the very least 'seasonably' as used in 26(e)(2)

---

[4] Since the answer to the costs interrogatory had stated that costs were continuing to accrue, there was no real contradiction between the answer and affidavit. However, the answer to the interrogatory concerning the contract price directly contradicted the affidavit's statement of the contract price.

must mean within three or four months of discovery" – "it cannot mean a year", Id. at 242; but the Court nonetheless found that the affidavit filed in opposition to the motion for partial summary judgment would be considered. In this case, after serving his interrogatory answer, Landay supplemented it with his expert's report on October 13, 2005 and his own New York trial testimony in early November, and now, he is serving a Supplemental Answer to Interrogatory No. 11, which incorporates his trial testimony and December 13, 2005 Affidavit. Therefore, particularly because GMAC had most probably acquired the trial transcript by late November[5], Landay's supplementation was "seasonable".

## II. This Court Should Not Strike The Last Sentence Of Paragraph 38 And Paragraphs 50 And 51.

On December 13, 2005, this Court entered an order that precludes Landay from introducing evidence of his New York discovery disputes with GMAC. Again painting with an overbroad brush, GMAC claims that the last sentence of paragraph 38 and paragraphs 50 and 51 of Landay's December 13, 2005 affidavit violate this order. For the reasons set forth below, they do not.

In paragraph 38, Landay describes GMAC's seizure of Seneca's assets, books and records on October 2001 and goes on to state that "Despite several requests made by attorneys on my behalf beginning in October 2001, I never saw Seneca's books and records again until August 2005 when GMAC produced them in this litigation" (emphasis added). There is not one reference to New York discovery disputes in this paragraph. Moreover, discovery disputes in the New York action did not begin until October 2003. Landay's January 5, 2006 Affidavit, ¶¶17-18. Landay's requests for

---

[5] Landay's New York counsel has advised the undersigned that he was able to pick up all four transcript volumes by the end of November 2005.

16

access to Seneca's books and records and for an accounting preceded discovery disputes in New York by two years; in that period two different attorneys made those requests for Landay <u>outside</u> the discovery process. Id. With or without discovery disputes in the New York action, the fact remains that GMAC has had Seneca's books and records since October 21, 2001, and the fact remains that beginning in October 2001, Landay made numerous requests for access but did not get it until GMAC produced Seneca documents in this litigation in August 2005. These are facts that can be – and were – stated without reference to the New York discovery disputes.

     Similarly, while paragraphs 50 and 51 of Landay's December 13, 2005 Affidavit mention the New York litigation, they do not discuss the discovery disputes. The New York litigation defines the time period to which Landay refers in these paragraphs. However, Landay took every precaution not to mention the discovery disputes that occurred in New York. In paragraph 50 Landay merely points out that after the New York case commenced, he continued to ask for the same information and records that he had been requesting since October 2001; he does not mention that he sought them in discovery or that there were any disputes. In paragraph 51, Landay states that in late August 2005 on the eve of the New York trial, GMAC's Boston attorneys gave him access to the Seneca documents he had been requesting "since October 2001, both before and during the New York litigation."

     Landay does not purport to re-litigate his New York discovery disputes with GMAC in this action. He respects this Court's order and its disinclination to review another court's discovery rulings. However, every mention of the New York litigation cannot be banned from this case simply because there were discovery disputes in that

case that might relate tangentially to what is said. Similarly, every mention of tortious conduct by GMAC cannot be barred from this case because such conduct affected or dictated GMAC's discovery responses in New York which Landay challenged. If that were the case, GMAC would be absolved of all bad conduct insofar as GMAC can relate that bad behavior in some way to its discovery responses in New York. Silencing Landay to this extent and thereby sanitizing his case could not have been intended by this Court when it allowed GMAC's Motion in Limine.

Behavior of the nature described in paragraphs 38, 50 and 51 of Landay's December 13, 2005 Affidavit is actionable under Chapter 93A. See United States v. United States Trust Co., 660 F. Supp. 1085, 1090 (D. Mass 1986) (Triple damages under Chapter 93A based, in part, on the defendant's failure to answer communications and failure to give an accounting to the plaintiff). The conduct described in these paragraphs has continued for over four years and it is specifically described in Landay's Amended Complaint in this action. See, e.g. Amended Complaint, Paragraph.52 (GMAC….refused to provide Landay with any information. It confiscated the books and records of the business and either continues to hold them or has destroyed them and/or abandoned them"); Paragraph 54 ("Landay has requested such an accounting from GMAC several times. GMAC refuses to provide an accounting"): Paragraph 55 ("Instead…without providing Landay with an accounting" GMAC sued Landay in New York in 2002); Paragraph 58 ("GMAC has since proceeded with its litigation in New York" and "GMAC remains intransigent and still has not provided an accounting.")

The described conduct began in October 2001, continued through August 2005 and, to some extent, continues to date. (Landay still has not received an accounting

18

from GMAC and GMAC continues to hold all Seneca's books and records).  Landay's January 5, 2006 Affidavit, ¶¶16 and 34.  Indeed, in its Reply Memorandum on its motion for summary judgment GMAC claims for the first time[6] that it may not have perfected its lien on the patents and trademarks and suggests that Landay should have sold them!  If that is the case, GMAC's confiscation of Seneca's files – which included all the patent and trademark files - and its refusal to provide Landay access to Seneca's files is even more outrageous. It certainly provides a basis for this Court to grant double or treble damages pursuant to Chapter 93A.

For all of the above reasons, GMAC, should not be permitted to use this Court's December 13, 2005 Order to eviscerate Landay's case.[7]

        Respectfully submitted,
        DAVID L. LANDAY,
        By his attorney,

        /s/ Alan R. Hoffman
        Alan R. Hoffman, BBO# 236860
        LYNCH, BREWER, HOFFMAN & FINK, LLP
        101 Federal Street, 22nd Floor
        Boston, MA 02110
        (617) 951-0800

Dated:  January 6, 2006
232993_1

---

[6] Landay intends to move to strike this part of GMAC's Reply as it constitutes a new motion for summary judgment and is, therefore, untimely.

[7] If anything, the fact that this case will be tried by the Court rather than a jury should cause a narrow reading of any order that restricts the introduction of evidence.  This Court is able to disregard any evidence that it finds more prejudicial than probative.  It is able to distinguish what was a discovery skirmish in New York from a pattern of conduct that deprived Landay of essential information for over four years.  Accordingly, the Court will be able to give Landay's statements whatever weight it deems proper at trial.  In the meantime, on a motion for summary judgment on which Landay is entitled to all inferences in his favor, Fleet Nat'l Bank v. H&D Entertainment, Inc., 96 F.3d 532, the Court should not exclude Landay's proofs merely because the conduct in question led to discovery disputes in the New York case.