# EXHIBIT 6

Page 1

1

2          SUPREME COURT OF THE STATE OF NEW YORK
                    COUNTY OF NEW YORK
3          - - - - - - - - - - - - - - - - - - - - - X
4          GMAC COMMERCIAL FINANCE LLC,
5                              Plaintiff,

                                              INDEX NUMBER:
6                    - against -              602338/02
7          DAVID L. LANDAY,
8                              Defendant.
9          - - - - - - - - - - - - - - - - - - - - - X
                         71 Thomas Street
10                       New York, New York 10013
                         November 1, 2005
11
12         BEFORE:
13                  HONORABLE LOUIS CRESPO, JR.,
                         Special Referee
14
           APPEARANCES:
15
               COHEN TAUBER SPIEVACK & WAGNER, LLP
16             Attorneys for the Plaintiff
               420 Lexington Avenue, Suite 2400
17             New York, New York  10170
               BY:   STEPHEN WAGNER, ESQ., Of Counsel
18
               LABATON SUCHAROW & RUDOFF, LLP
19             Attorneys for the Defendant
               100 Park Avenue
20             New York, New York  10017
               BY:   JOSEPH H. EINSTEIN, ESQ., Of Counsel
21
22
23

                         DOMINIQUE MAUGER
24                   OFFICIAL COURT REPORTER
25
26

DOMINIQUE MAUGER - OFFICIAL COURT REPORTER

1                              Proceedings

2              SPECIAL REFEREE CRESPO:  We're about to

3     commence.

4              Is there anything that needs to be said on the

5     record before we start the examination of your witness,

6     Mr. Einstein?

7              MR. EINSTEIN:  No.

8              SPECIAL REFEREE CRESPO:  You wish to call your

9     next witness.

10             MR. EINSTEIN:  You have rested.

11             Right?

12             SPECIAL REFEREE CRESPO:  Do you wish to call

13    your first witness?

14             MR. EINSTEIN:  Since there is an application

15    to hear and report, I don't believe-- at this point a

16    motion to dismiss is not something entertainable.

17             SPECIAL REFEREE CRESPO:  No, it has to be sent

18    to the Judge, but it's noted for the record.

19             MR. EINSTEIN:  Thank you.

20             I call David Landay.

21             D A V I D    L A N D A Y, called as a witness,

22    having been first duly sworn, was examined and testified

23    as follows:

24             SPECIAL REFEREE CRESPO:   Please state your

25    name for the record.

26             THE WITNESS: David Landay, 26510 Rockery Lake

1                    Proceedings

2    Drive, Bonita Springs, Florida, 34134.

3                 SPECIAL REFEREE CRESPO:  Follow my

4    instructions, only answer the question that is asked.

5    If you don't understand the question, advise the court.

6    I will direct counsel to rephrase it.

7                    Speak in a loud, clear voice so that the

8    Official Court Reporter can take your testimony.

9                    During the testimony, if there's an objection,

10   stop your testimony and the objection will be noted.

11   Allow the court to make a ruling.

12                   If it's overruled, you must answer the

13   question.

14                   If it's sustained, you must not answer the

15   question.  Okay?

16                 THE WITNESS:  Yes.

17                 SPECIAL REFEREE CRESPO:  Thank you.

18                 You may inquire, Mr. Einstein.

19                 MR. EINSTEIN:  Thank you.

20   DIRECT EXAMINATION

21   BY MR. EINSTEIN:

22      Q    Mr. Landay, just give us a little bit of your

23   personal and business background, please?

24      A    I was born in 1939.  I have a Bachelor's degree

25   with a major in economics from Brandeis University, Class of

26   1960, a Master's in Business Administration from Boston

1          D. Landay-Defendant-Direct

2          Business peaked for Seneca in 1995, we had

3     sales of approximately $34 million.  As we know, that

4     company in early 2000, I was approached by a business

5     broker, who said that she was authorized to offer the assets

6     of the company that was in the wheeled goods business, with

7     a concentration license character merchandise, which I

8     recognized immediately as Brookfield, the company that I had

9     built and sold to Hyde and that Hyde later sold off.

10     Q     You said wheeled sporting goods merchandise, would

11     you explain what that is?

12     A     Primarily traditional roller skates, in-line roller

13     skates, skateboards, scooter boards and scooters.

14     Q     Did Seneca also have a line similar to that?

15     A     Seneca had a very similar line to that.  The

16     differences between the companies were Seneca did not have

17     the same licenses.

18     Q     Okay.  Go ahead.

19     A     I expressed immediate interest because I was

20     familiar with the company, because I had built the company

21     and was familiar with all of the merchandise.  We met in

22     February of the year 2000, here in New York City, at Toy

23     Fair, with the people who owned the company.

24          Soon after that we generated a letter of

25     intent and worked on getting the purchase put together.

26     Q     All right.  Now, what was the purchase price of

1                    D. Landay-Defendant-Direct

2    Brookfield?

3        A    If I recall correctly, the purchase price of

4    Brookfield was in the area of $5 million.  We purchased the

5    inventory, accounts receivable and the intellectual

6    property, and I don't recall the breakdown of the two, save

7    that the intellectual property was valued at $1.6 million of

8    that purchase price.

9        Q    And who financed that purchase?

10       A    The purchase was financed by GMAC Commercial.

11       Q    In connection with that financing, did GMAC review

12   the various agreements and allocations of values to the

13   assets that were being purchased?

14                    MR. WAGNER:  Objection.

15                    SPECIAL REFEREE CRESPO:  I will allow it, if

16       he knows.

17       A    Every document that was involved with the purchase

18   was given to GMAC.

19       Q    You tell me whether or not GMAC was aware at the

20   time that $1.6 million was allocated for the purchase price

21   of the intellectual property?

22                    MR. WAGNER:  Objection.

23                    SPECIAL REFEREE CRESPO:  I'll allow it.

24                    Overruled.

25       A    Yes.

26       Q    All right.  Now, in connection with that purchase,