# EXHIBIT 10

Mr. Landay - Defendant - redirect

MR. EINSTEIN: There is a couple of other items.

THE REFEREE: That came up after that? Yeah. We can deem it a continued redirect.

MR. EINSTEIN: Additional material that has come up.

THE REFEREE: Okay, this is continued redirect of Mr. Landay.

CONTINUED REDIRECT EXAMINATION

BY MR. EINSTEIN:

Q   Mr. Landay, let me start by showing you what has been marked as Defendant's Q for identification and ask you if you can identify that document?

A   Yes, this is a document I produced in this litigation which is a copy given to me by Paul Fitzgerald. I should say I don't know who gave it to me. Which is a list of the Seneca trademarks and patents that was circulated at the time of the closing.

Q   And was that provided -- Was that list of Seneca trademarks and patents provided to GMAC?

A   Of course. Yes, it has a GMAC cover actually to me from Paul Fitzgerald dated October 6, 2000.

Q   And to the best of your knowledge, on October 22, 2001 were all those patents and trademarks still valid and in effect?

Mr. Landay - Defendant - redirect

A    All the patents were certainly valid and in effect. I did an analysis of the Seneca trademarks, and I identified six out of the 47 listed that I thought were inactive.

Q    Okay.

A    And two that I had questions on. When I say a question, they were inactive, but in my mind had value.

Q    All right. So identify first the six on that list that were inactive?

A    Air Foam, the initials, capitalized, ITS.

Q    I don't know where you're reading from.

A    I'm reading from a list I made up.

THE REFEREE: That list you made up is based upon your recollection or based upon documents?

THE WITNESS: Based on my review of the --

THE REFEREE: Excuse me?

THE WITNESS: It's based on photos I made of the last list that has previously been provided. Because there was no way I could memorize all those.

MR. WAGNER: The list that was provided was part of Q?

MR. EINSTEIN: Let me start by moving Exhibit N in evidence.

THE REFEREE: It's already in, isn't it?

MR. EINSTEIN: I'm sorry.

Mr. Landay - Defendant - recross

Q   Other than an inquiry for $7500 --

A   No, I believe that was an offer, sir?

Q   Other than an offer -- It was $7500?

A   If I recall correctly.

Q   Other than an offer for $7500 on the zero trademark, have there ever been any other offers to purchase a trademark from Seneca?

A   Not to me.

Q   Now, in going down let's start with the patent status record. Do you see it?

A   Yes, sir.

Q   Okay. Now, when you -- You testified as to when these patents were still in use, correct?

A   Yes.

Q   Okay. Now, did you go to the patent and trademark office and determine whether these patents were still valid?

THE REFEREE: When? I'm confused.

Q   At the time that you made your analysis, when you testified just now, right? You were saying they were valid as of October 22, 2002, correct?

A   No, 2001.

Q   2001, correct?

A   Yes.

Q   Okay. Did you go to the patent and trademark office and determine whether these patents were valid as of

```
                                                                    129
1                Mr. Landay - Defendant - recross
2    October 22, 2000 --
3        A    No.
4        Q    October 22, 2001, did you?
5        A    No.
6        Q    So, what you are testifying to is that you were
     selling products that were protected by particular patents
     at the time, as of October 22, 2001, correct?
9        A    Yes.
10       Q    That doesn't reflect in any way on the validity of
     the patent, does it?
12       A    Of course.  If it's issued, then it would be a
     valid patent.
14       Q    Well, there are --
15       A    Because the patent and trademark office would
     knock it out.
17       Q    But if the patent and trademark office knocks it
     out, Mr. Landay, it doesn't prevent you from selling that
     product, does it?
20            MR. EINSTEIN:  Objection.  Argumentative.
21            THE REFEREE:  No, I'll allow it.
22       A    I would think that if the patent and trademark
     office knocks it out, you would not want to identify it as a
     patented product.  You would be, that would be false.
25       Q    Did you verify that as of October 22 these
     products were patented and had valid patents associated with
```

Mr. Landay - Defendant - recross

them?

A    My recollection is these were valid, and I paid the maintenance cost for any patents and trademarks for approximately a year after that.

Q    Okay. Again, my question is did you verify that these patents were valid?

A    No.

Q    When you testified before that certain patents here were, in your words, were inactive, that it was an inactive patent, did you mean you were no longer selling that particular product?

A    Yes.

Q    It doesn't mean you had verified that the patents had either expired or lapsed, is that correct?

A    That would be correct.

Q    All right. When you -- If you can look at L02103, I'll try to do this as quickly as possible, sir. You stated that the first one, package for ball, Pump and Cones (as amended) was active, correct?

A    Yes.

Q    Now, was it active in Canada?

A    Yes, to the best of my knowledge.

Q    Even though there is a, a note that under the status column it was abandoned in Canada?

A    There is also a note right below that that says

137

Mr. Landay - Defendant - redirect

Q   So, it's possible that, certainly possible that it was for a term deal; is that correct?

A   It could have been either way, I simply do not recall.

Q   Do you recall whether the customer was credit worthy or not?

A   I would have to believe the customer would have passed. Any customer we had we always applied to GMAC to see if they would factor the receivable.

Q   And did GMAC agree to factor this receivable?

A   I honestly don't know, because I don't recall who the customer was.

Q   In any event, certainly Jane Frangos, is your testimony, didn't give you the money to get the goods out of the warehouse at that time, correct?

A   That's correct.

MR. WAGNER:  I have no further questions of this witness.

MR. EINSTEIN:  Very briefly.

THE REFEREE:  Sure

REDIRECT EXAMINATION

BY MR. EINSTEIN:

Q   Mr. Landay, did you have counsel who dealt with the validity of patent and trademarks?

A   Yes.

Mr. Landay - Defendant - redirect

Q    And did you rely on those counsel to advise you if there were any problems?

A    Yes.

Q    And with respect to the patents and trademarks that you testified to, were you aware of any problems with respect to their validity?

A    No.

Q    Now, after October 22, 2001 did you have the ability to market and sell any of the patents and trademarks?

A    No.

Q    Why not?

A    Because they were all assigned to GMAC.

MR. EINSTEIN:   Nothing further.

A    They weren't mine to sell.

MR. WAGNER:   I have one further question.

THE REFEREE:   Sure.

RECROSS EXAMINATION

BY MR. WAGNER:

Q    I asked you with regard to the trademarks if you had ever had an independent appraisal of the value of the trademarks.  Did you ever have an independent appraisal of the value of the patent?

A    No.

Q    Did you, other than the situation we talked about