# EXHIBIT 11

```
 1
 2        SUPREME COURT OF THE STATE OF NEW YORK
 3        COUNTY OF NEW YORK
 4        ------------------------------------------x
 5        GMAC COMMERCIAL FINANCE, LLC,
 6                                      Plaintiff,
 7                  -against-
 8        DAVID L. LANDAY,
 9                                      Defendant.
10        ------------------------------------------x
11        Index No. 602338/02
12                                         November 4, 2005
                                           60 Centre Street
13                                         New York, New York 10007
14
          B E F O R E :  LOUIS CRESPO,  Special Referee,
15
16        A P P E A R A N C E S :
17            COHEN TAUBER SPIEGEL & WAGNER, LLP,
                   Attorney for Plaintiff
18                 420 Lexington Avenue
                   New York, New York  10017
19            BY:  STEPHEN WAGNER, ESQ. of Counsel.
20
              LABATON SUCHAROW & RUDOFF, LLP,
21                 Attorney for Defendant
                   100 Park Avenue
22                 New York, New York  10017
              BY:  JOSEPH H. EINSTEIN, ESQ. of Counsel.
23
                              * * *
24
25
                                         Heyward C. Davis,
26                                       Official Court Reporter.
```

```
                                                                    6
 1                         Proceedings
 2      the date that GMAC took peaceful possession of Seneca's
 3      assets.
 4              THE REFEREE:  Okay, that's noted.
 5              MR. WAGNER:  Fine.
 6              THE REFEREE:  Exhibit N is marked in
 7      evidence.
 8              (Received and marked Defendant's Exhibit N
 9      in evidence.)
10              MR. EINSTEIN:  We call Keith Lowey.
11              K E I T H   D.   L O W E Y,
12      Giving his business address as 124 Washing Street,
13      Foxborough, Massachusetts, 02035,
14      called as a witness on behalf of the
15      Defendant, having first been duly
16      sworn, was examined and testified as follows:
17              THE REFEREE:  How do you spell your last
18      name?
19              THE WITNESS:  L-o-w-e-y.
20              THE REFEREE:  Okay.  Your address, sir?
21              THE WITNESS:  Business or home?
22              THE REFEREE:  Business is fine.
23              THE WITNESS:  124 Washington Street.
24      Foxborough, Massachusetts, 02035.
25              THE REFEREE:  Mr. Lowey please follow my
26      instructions.  Only answer the question that is asked.
```

1           Mr. Lowey - by Defendant - direct

2      Q    And on what do you base that opinion?

3      A    From the material that was provided to us and in
4 conversations that we had with Mr. Landay, and looking at
5 the materials, specifically the write-up of the loan
6 prepared by GMAC, there were, there clearly was some value
7 recognized for the overall intangible assets of the
8 combination of Seneca and Brookfield.  Thirteen months prior
9 to the peaceful take over, Seneca paid $1.6 million --

10     Q    Point 1-6?

11     A    1.6.

12     Q    Thank you.

13     A    Million dollars for the intangible assets of
14 Brookfield, which included licenses, patent, trademarks and
15 whatever else was included in that category.  And that only
16 represented a portion of the entire portfolio of
17 intellectual property that the combination of the two
18 entities had.  Seneca had its own portfolio of patents,
19 patent applications and trademarks which we don't know what
20 the value of that was, but it was in addition to that
21 portfolio that Seneca had paid that large amount prior.

22          Mr. Landay, because of his relation with the loan,
23 being a guarantor, clearly would have been the best
24 individual to try and attempt to sell those assets.  In the
25 write-up it was acknowledged by GMAC that Mr. Landay had a
26 great history of dealing with licenses and intellectual

1      Mr. Lowey - by Defendant - direct
2  property, was certainly familiar with the Brookfield
3  portfolio, because he had been employed or owned part of
4  that earlier in his professional career.
5      And just given the fact that, well, because of his
6  experience, he was the most knowledgeable person as to how
7  to sell that package of assets.  In our practice it's not
8  infrequent for there to be a great deal of and numerous
9  components of either intellectual property, often whether it
10 be patents, sometimes trademarks, copyright, web cites.  In
11 a lot of the technology companies that we liquidate, the
12 majority of the assets are of the intangible nature.  And
13 our experience has been the only effective way to sell those
14 assets is to typically to get the reason who is most
15 familiar with those particular assets.  Because, not only
16 are they familiar with those assets because they're also
17 familiar with probably the majority of the universe of
18 potential buyers or the direction in which to go to.
19     And in the instances with those situations we've
20 been involved with where there has actually been a sale and
21 some value created by that, that's been the method.  And to
22 the extent it's, those individuals aren't retained and it's
23 not done in a timely manner, oftentimes whatever values is
24 there is lost over a period of time.
25     Q    Let me -- You said, done in a timely manner.
26 Would you explain what you meant by that?