UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DAVID L. LANDAY )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>GMAC COMMERCIAL CREDIT LLC )<br>and GMAC COMMERCIAL FINANCE )<br>LLC, )<br>    Defendants. )<br>) | Civil Action No. 04-cv-11955-WGY |

## MEMORANDUM SUPPORTING DEFENDANTS' MOTION
## *IN LIMINE* TO EXCLUDE EVIDENCE RELATING
## TO DISMISSED PORTION OF CHAPTER 93A CLAIM

Two bites at the apple apparently are not enough for Plaintiff David L. Landay ("Landay"). Now he is seeking a third.

### Background

As this Court is by now well aware, Landay filed this lawsuit only after a New York court granted partial summary judgment for GMAC Commercial Finance LLC ("GMAC CF")[1] in a parallel case (the "New York Action"). In its ruling, the New York court explicitly dismissed all seven of the claims that Landay has asserted in this case, including Landay's claims of fraud (second counterclaim), violation of his rights as a junior creditor of Seneca Sports, Inc. ("Seneca") (fourth counterclaim), and a violation of Mass. Gen. Laws ch. 93A ("Chapter 93A"). *See* Order, May 25, 2004 (Docket No. 55, Exhibit #31) at pp.6-9, 18.[2] This Court has since re-dismissed most of them.

---

[1] GMAC Commercial Finance LLC is the successor by merger of GMAC Commercial Credit LLC and a third GMAC entity, GMAC Business Credit LLC. For ease of reference, throughout this motion and all supporting documents, all three companies are referred to jointly as GMAC CF.

[2] Although the Court left open Landay's defense that GMAC CF had failed to dispose of the Borrowers' assets in a commercially reasonable manner, it struck his fourth counterclaim, which mirrors Count VI in this case.

**This Court's Earlier Rulings**

First, on May 17, 2005, this Court granted in part GMAC CF's motion for judgment on the pleadings, dismissing Landay's claims that GMAC CF breached a September 19, 2000 Factoring Agreement with "Borrowers" Seneca and Brookfield International, Inc. (Count III); breached an August 9, 2001 Forbearance Agreement with the Borrowers (Count IV); and breached the implied covenant of good faith and fair dealing ancillary to the factoring and forbearance agreements (Count V). At the same time, this Court also dismissed the portion of Landay's Chapter 93A claim (Count VII) that was based on the same facts underlying Counts III, IV and V. The clerk entered an electronic docket entry memorializing those rulings, which stated: "After hearing the Motion is Allowed in part and taken Under Advisement in part. Counts 3,4,5, are dismissed totally, count 7 is dismissed in part."[3]

On November 23, 2005, GMAC CF moved for summary judgment on Landay's remaining claims, which consisted of misrepresentation (Count I); usury in violation of Mass. Gen. Laws ch. 271, §49 (Count II); violation of Landay's rights as a junior creditor of Seneca (Count VI); and the rest of Count VII. See Docket No. 52. Landay, meanwhile, cross-moved for partial summary judgment on his usury claim. See Docket No. 50. On the same day, GMAC CF moved *in limine* to exclude evidence relating to discovery disputes in the New York case. See Docket No. 56. In that motion, GMAC CF pointed out that Landay planned to argue that GMAC CF's conduct in the New York Action constituted a Chapter 93A violation. This Court granted GMAC CF's motion *in limine* on December 13.

Then on January 25, 2006, this Court held a hearing on the parties' cross-motions for summary judgment. From the bench, this Court denied plaintiff's motion for partial summary judgment; granted defendant's motion as to Count II (usury), most of Count I

---

[3]   The Court ultimately denied the remainder of GMAC CF's motion for judgment on the pleadings.

(misrepresentation), and, defendants understood, those portions of Count VII (Chapter 93A) that were based on the dismissed claims; and denied defendant's motion as to the rest of Count I, all of Count VI, and, defendants understood, those portions of Count VII that were based on the surviving claims.

On January 27, this Court issued a two-page Order affirming that the only part of Count I that survived summary judgment was "Landay's claim of 'Seasonal Overadvance' misrepresentations, related to statements GMAC [CF] allegedly made after the 2000 loan agreements upon which Landay supposedly relied before the 2001 forbearance agreements." Order, Jan. 27, 2006 (Docket No. 82) at p.1. The Order also stated that GMAC CF's motion for summary judgment was granted as to Count II, but denied as to Counts VI and VII. *Id.* at p.2.

### Landay's Efforts To Recast His Entire Case Under Chapter 93A

Discouraged by the Court's repeated narrowing of the issues for trial, but emboldened by the fact that this Court's written order did not distinguish between the dismissed and surviving portions of Count VII, Landay is now trying to revive his entire Amended Complaint (except for the usury allegation) by recasting all of his claims in the context of Chapter 93A. This new approach is on display in three different sections of the Joint Pretrial Memorandum, which the parties filed on February 24, 2006. *See* Docket No. 86 (the cited pages are re-attached hereto as Exhibit 1).

First, in the Plaintiff's Summary of Evidence (Docket No. 86 at pp. 1-7), Landay practically ignores Counts I and VI and instead describes his entire case in the framework of Count VII. For example, Landay begins by stating that he will offer evidence that GMAC CF engaged a pattern of conduct consisting of "sharp business practices prohibited by Chapter 93A." *Id.* at p. 1. Landay later explains that these "sharp practices" include "many fraud-like practices

*in addition to the conduct that supports Landay's fraud claim.*" *Id.* at p. 2 (emphasis added). Landay then regurgitates all of his "fraud-like" arguments that this Court rejected when it granted summary judgment to GMAC CF on most of Count I. *Id.* at p. 3 (referring to alleged promises by GMAC CF (a) to look to the assets of the Borrowers before Landay's personal collateral in the event of a default; (b) to repay Landay for a "bridge" loan to the Borrowers; and (c) to facilitate an orderly liquidation of the Borrowers if Landay provided a $1 million cash deposit and increased his exposure on the Guaranty by $1 million). Landay also announced plans to introduce evidence of "sharp practices condemned by Chapter 93A that destroyed the business of Borrowers and damaged Landay." *Id.* (listing as examples GMAC CF's allegedly "arbitrary refusal to accommodate the business needs of Borrowers;" GMAC CF's failure to execute the Forbearance Agreement on Landay's desired timetable; and GMAC CF's allegedly "arbitrary" refusal to let Platinum Funding Corp. acquire the loan in late 2001). Landay also contends that his Chapter 93A claim is supported by GMAC CF's alleged refusal to provide him with an accounting; its decision to sue Landay in New York on his Guaranty; and its alleged denial of his access to Borrowers' books and records. *Id.* at p. 6.

Next, in Plaintiff's Statement of Contested Issues of Fact, Landay provides a lengthy list of GMAC CF's alleged actions that he claims constitute "unfair and/or deceptive acts or practices violative of Chapter 93A," the overwhelming majority of which have nothing to do with either Count VI or the surviving portion of Count I. *Id.* at pp. 27-29. More precisely, Landay lists seventeen different examples of GMAC CF's alleged unfair and/or deceptive acts or practices, only three of which mirror the surviving portions of Counts I and VI. *See id.* (including, for example, an alleged "arbitrary refusal to accommodate the business needs of the Borrowers;" GMAC CF's refusal to adjust Schedule C of the Forbearance Agreement to reflect

its alleged delay in signing and funding that agreement; several other claims relating to GMAC CF's enforcement of the Forbearance Agreement; and GMAC CF's expulsion of Landay from the Borrowers' premises in October 2001).

Finally, in Plaintiff's Issues of Law, Landay suggests that the following are open issues for trial: "Whether the dismissal of the Fraud Count with regard to several of the fraud allegations precludes Landay from offering the underlying facts in proof of his Chapter 93A claim;" "Whether GMAC's conduct concerning the Platinum Credit Corp. buy-out proposal will support a finding that Chapter 93A was violated;" and "Whether Landay's allegations regarding GMAC's failure to account and its failure to provide him with access to Seneca's business records support a Chapter 93A violation." *Id.* at pp. 39-41.

## Argument

### A.   Landay Should Not Be Permitted To Reargue Dismissed Claims

This Court should preclude Landay from doing an end-around of earlier rulings in the New York litigation and in this case. It cannot be seriously disputed that on May 17, 2005, this Court dismissed the portions of Landay's Chapter 93A claim that were based on the same facts underlying Counts III, IV, and V. Yet many of the claims that Landay asserts in his portions of the Joint Pre-Trial Memorandum are clearly based on those dismissed counts.

For example, Landay apparently intends to offer evidence regarding GMAC CF's alleged refusal to adjust Schedule C of the Forbearance Agreement to reflect its alleged delay in signing and funding that agreement. *See id.* at p. 28. Additionally, Landay claims Chapter 93A violations in GMAC CF's alleged refusals to (a) finance in accordance with Schedule C because Borrowers had been placed off-schedule by GMAC CF; or (b) provide the amount of money indicated on Schedule C. *Id.* Clearly, each of these allegations is simply another way of

accusing GMAC CF of violating the Forbearance Agreement and its ancillary implied covenant of good faith and fair dealing (dismissed Counts IV and V). Similarly, Landay's allegation that GMAC CF violated Chapter 93A by allegedly refusing to consider the Platinum Funding proposal must be based on one of the dismissed counts because it is a claim that could have accrued only to the Borrowers as parties to the Forbearance Agreement and supposed Platinum Funding proposal. Landay has maintained throughout this litigation that he cannot be bound by the terms of the Forbearance Agreement because he did not sign it in an individual capacity; he cannot now assert any rights to relief under that agreement or its implied covenants.

Nor should Landay be permitted to re-litigate the portions of his fraud claim that were dismissed at summary judgment simply by re-casting them as Chapter 93A allegations. Thus, he should not be permitted to introduce any evidence or argument concerning alleged misrepresentations regarding: (a) the order in which GMAC CF would seize its collateral in the event of a default; (b) the provision of a Seasonal Overadvance, where the statements were made *before the execution of the Factoring Agreement*; (c) the reimbursement of a "bridge loan" that Landay allegedly made to Seneca; and (d) Landay's provision of an additional $1 million in cash collateral and an increase by $1 million on the limit of his Guaranty. Although this Court's written order stated only that GMAC CF's motion for summary judgment as to Count VII was denied, this Court had made it clear during oral argument two days earlier that its rulings on Count VII would track those on the underlying claims. Landay clearly is aware of the distinction or he would have re-asserted all of his usury-based claims as Chapter 93A claims as well.

This Court should preclude Landay from getting a third bite at this Chapter 93A apple and put an end to his attempt to circumvent this Court's earlier rulings.

B.      **There Is No Merit To Landay's Recast Chapter 93A Claims.**

Even if this Court had not already dismissed most of the claims that Landay is now reasserting under Chapter 93A, it still should preclude Landay from offering evidence in argument on those claims since they have no possible merit. Indeed, what Landay describes as "sharp practices" essentially consists of either: (1) decisions by GMAC CF to enforce strictly its contracts with the Borrowers and Landay; and (2) GMAC CF's refusal to make special allowances or perform favors for the Borrowers and Landay that it was under no obligation to do.

For example, Landay complains about GMAC CF's alleged "arbitrary refusal to accommodate the business needs of the Borrowers," "refusal to adjust Schedule C of the Forbearance Agreement," "refusal to finance in accordance with Schedule C because Borrowers had been placed off-schedule by GMAC," "refusal to consider the Platinum Funding take-out," and "refusal to grant Landay's request for an accounting to avoid litigation." Landay even suggests that it was a violation of Chapter 93A for GMAC CF to sue Landay on his Guaranty in New York, as demonstrated by his claim for recovery of $450,000 in legal fees relating to the New York action. *See* Docket No. 86 at p.6. Landay has not and cannot cite to a single case in support of his contentions that enforcing contracts strictly and refusing to do favors for somebody is a violation of Chapter 93A. *See Massachusetts Bricklayers & Mason Trust Funds v. North American Specialty Ins. Co.*, 20 F. Supp. 2nd 237, 240 (D. Mass. 1998).

To the extent that Landay contends that GMAC CF engaged in "fraud-like" conduct that can give rise to a Chapter 93A claim, even though there was not reasonable reliance necessary to support a fraud claim, Landay simply misunderstands the law. Citing to *Kattar v. Demoulas*, 433 Mass. 1 (2000), and *Grand Pacific Fin. Co. v. Brauer*, 57 Mass. App. Ct. 407 (2003),

Landay argues that his Chapter 93A claim is still viable with respect to the dismissed fraud allegations because reasonable reliance is not an element of Chapter 93A. *See* Docket No. 86 at pp. 39-40. *Kattar* and *Grand Pacific Fin. Co.*, however, are extreme cases with fact patterns bearing no resemblance to this case. In *Kattar*, for example, the Court found a Chapter 93A violation where the defendant foreclosed on a mortgage as retribution for the plaintiff's refusal to provide false testimony. *See* 433 Mass. at 12-15. Similarly, in *Grand Pacific Fin. Co.*, the Court imposed Chapter 93A liability where a law firm "utilized delaying tactics that were fraught with deceit, conflicts of interest, breach of ethical rules of confidentiality, privileged information, and the wrongful holding back of monies belonging to [their client]." 57 Mass. App. 419. Indeed, *Kattar* has since been distinguished and sharply limited by the Supreme Judicial Court in *Buster v. Moore*, 438 Mass. 635 (2003). In *Buster*, the Court refused to impose Chapter 93A liability against a land developer who, upon facing resistance by a landowner to his development plans, purchased the landowner's note and mortgage, which were in default, and foreclosed on them. *See* 438 Mass. at 649-652. In the process, the Supreme Judicial Court noted that "the market is a rough and tumble place where a competitor's lack of courtesy, generosity, or respect is neither uncommon nor in itself unlawful." *Id.* at 650-651. Such an admonition is particularly relevant in this case where Landay is essentially complaining about GMAC CF's "lack of courtesy, generosity, or respect."

Indeed, courts have repeatedly dismissed Chapter 93A claims where the underlying conduct cannot give rise to an independent claim of fraud. *See, e.g., McCartin v. Westlake*, 36 Mass. App. Ct. 221 (1994); *Turner v. Johnson & Johnson*, 809 F.2d 90 (1st Cir. 1996).

## Conclusion

For all the foregoing reasons, this Court should grant GMAC CF's motion *in limine* and preclude Landay from offering any evidence or argument in support of his Chapter 93A claim that is not based on the same facts underlying his other surviving claims.

Respectfully submitted,
GMAC COMMERCIAL FINANCE LLC

DATED: March 7, 2006

/s/ John A. Houlihan
/s/ Mark B. Dubnoff
John A. Houlihan (BBO # 542038)
Mark B. Dubnoff (BBO # 637212)
EDWARDS ANGELL PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA 02199
(617) 239-0100

BOS_526051_1/MDUBNOFF