UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID L. LANDAY<br>    Plaintiff,<br><br>v.<br><br>GMAC COMMERCIAL CREDIT LLC<br>and GMAC COMMERCIAL FINANCE<br>LLC,<br>    Defendants. | Civil Action No. 04-cv-11955-WGY |

## MEMORANDUM SUPPORTING DEFENDANTS' MOTION
## *IN LIMINE* TO PRECLUDE PLAINTIFF FROM
## OPINING AS TO THE VALUE OF INTELLECTUAL PROPERTY

There are at least five reasons why this Court should preclude Plaintiff David L. Landay ("Landay") from opining at trial about the value of patents and trademarks that Seneca Sports Inc. ("Seneca") and Brookfield International (collectively, the "Borrowers") owned as of October 22, 2001. First, such testimony is legally irrelevant in the absence of additional evidence regarding the diminution of the intellectual property's value since October 22, 2001, and Landay has offered no such evidence. Second, Landay's claim that Defendant GMAC Commercial Finance LLC ("GMAC CF")[1] violated his rights as a junior creditor of Seneca (Count VI) is based on the Uniform Commercial Code, which does not require that GMAC CF sell the Borrowers' intellectual property. Third, GMAC CF never took title to the Borrowers' intellectual property, so Landay had every opportunity to sell it for value if he believed it had any. Fourth, even if Landay's opinion as to the value of the intellectual property were legally relevant, it would be inadmissible lay testimony under Fed. R. Evid. 701 because it requires

---

[1]    GMAC Commercial Finance LLC is the successor by merger of GMAC Commercial Credit LLC and a third GMAC entity, GMAC Business Credit LLC. For ease of reference, throughout this motion and all supporting documents, all three companies are referred to jointly as GMAC CF.

specialized knowledge within the scope of Rule 702. Fifth, it would be unfair to permit Landay to ambush GMAC CF with his opinion at trial, since he did not provide it during discovery, even though he was directly and repeatedly asked to do so.

## Background

As GMAC CF explained in its motion for summary judgment (Docket Nos. 52-53), Landay cannot prevail on Count VI without proving both that GMAC CF disposed of the Borrowers' assets in a commercially unreasonable manner and that a commercially reasonable disposition would have generated sufficient proceeds to eliminate the Borrowers' debt to GMAC CF and pay off junior secured creditors (which Landay claims to be). GMAC CF also pointed out that the Borrowers' loan balance always exceeded $1 million and Landay's own expert, Keith Lowey, believed that a commercially reasonable disposition of the Borrowers' inventory and accounts receivable would have generated only an additional $360,360 in net proceeds. Thus, GMAC CF argued, there was no way for Landay to prevail on Count VI.

In a desperate gambit to save his Count VI claim, Landay submitted an affidavit, dated December 13, 2005, in which he expressed his personal belief that the Borrowers' intellectual property was worth approximately $2 million as of October 22, 2001. *See* Docket No. 62, Attachment # 1, ¶ 43. Landay claimed to base this belief entirely on his personal experience, which included knowledge of Seneca's agreement to purchase Brookfield from Craft House, Inc. on September 19, 2000 (the "Asset Purchase Agreement). *See, e.g., id.* ¶¶ 18, 41-42. Landay noted that the $5 million purchase price for Brookfield included a negotiated price of $1.6 million for Brookfield's intellectual property, *id.* ¶ 18, and opined that trademarks and patents accounted for $1.3 million of that figure, *id.* ¶ 41, even though the Asset Purchase Agreement contains no such representation. *See* Docket No. 62, Attachment # 2. Landay also opined that

the Borrowers' trademarks and patents probably lost value after October 22, 2001, *see* Docket No. 62, Attachment #1, ¶ 45, although he did not offer an opinion about the amount of lost value. *See generally id.*

Prior to the submission of Landay's belated affidavit, GMAC CF gave Landay several opportunities to offer such an opinion, but he declined them all. On or about August 5, 2005, GMAC CF served Landay with its First Set of Interrogatories. *See* Affidavit of Mark B. Dubnoff (Docket No. 71) ¶ 3. Among other things, GMAC CF asked Landay to state the value that he believed GMAC CF should have been able to obtain for the Borrowers' assets and to "state the basis" for his belief. *Id.*, Ex. 1 at 3 (Interrogatory No. 11). Landay signed his answers to interrogatories on September 6 and delivered them to GMAC CF's counsel the next day. *Id.* ¶ 4 and Ex. 2. Nowhere in his response to Interrogatory No. 11 did Landay offer an opinion as to the value of the Borrowers' patents and trademarks as of October 22, 2001. *See* Dubnoff Aff., Ex. 2 at 7.

Although Landay purported to "reserve[] his right to put a dollar figure on the intellectual property after he obtain[ed] further discovery," *id.*, he never supplemented his interrogatory responses during the discovery period. Indeed, at his deposition, Landay testified that he had reviewed his interrogatory responses and was expressly asked whether he saw anything that he wanted to correct or supplement. Deposition of David L. Landay, Oct. 18, 2005 ("Landay Dep.") 182:11-12 (previously filed as Docket No. 80, Attachment # 1). While Landay mentioned some interrogatory responses he might want to amend, he did not include Interrogatory No. 11 among them. *See* Landay Dep. 182:13-185:18. Landay did not even supplement his interrogatory responses by the discovery cutoff date of November 11, 2005. Dubnoff Aff. (Docket No. 71) ¶ 8.

After Landay submitted his December 13, 2005 affidavit, GMAC CF moved to strike it. *See* Docket Nos. 69-70. This Court denied that motion. On January 6, 2006, Landay served GMAC CF with supplemental interrogatory answers, which included a supplemental response to Interrogatory Response No. 11. GMAC CF then moved to strike these supplemental interrogatory answers, *see* Docket Nos. 79-80, but this Court denied that motion as well.

### Argument

Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402. There are at least three reasons why Landay's opinion as to the value of the Borrowers' intellectual property on October 22, 2001 is not legally relevant and should, therefore, be excluded under Fed. R. Evid. 402.

First, it does not matter what Landay's intellectual property was worth on October 22, 2001, if Landay cannot show a substantial diminution of that value after October 22, 2001. More specifically, since Landay's expert has opined that a commercially reasonable disposition of the Borrowers' inventory and accounts receivable would have netted only $360,360 in additional proceeds, and the Borrowers' overall debt to GMAC CF never dipped below $1 million, Landay would have to present some evidence that the intellectual property declined in value by at least $640,000 since October 22, 2001. There is no such evidence in the record. Thus, Landay's opinion as to what the intellectual property was worth in 2001 is not "of consequence to the determination of the action," Fed. R. Evid. 401, and should be excluded. Fed. R. Evid. 402.

Second, Landay acknowledged at the summary judgment hearing that Count VI is based on Article 9 of the U.C.C., which states in relevant part, "… a secured party *may* sell, lease,

license, or otherwise dispose of the collateral … ." Mass. Gen. Laws ch. 106, § 9-610(a) (emphasis added). Nothing in the U.C.C. requires that a secured party sell collateral. The statute simply mandates that any disposition be accomplished in a commercially reasonable manner. *See In re Emergency Beacon Corp.*, 48 B.R. 341, 348 (S.D.N.Y. 1985) (stating general principle that there is "no mandate under U.C.C. [§ 9-610] that a secured creditor conduct a sale of collateral following a default; all that is required is a reasonable disposition of the collateral."). Here, it is undisputed that GMAC CF has not sold any of the Borrowers' patents and trademarks. Thus, the provisions of the U.C.C. are not triggered. In other words, GMAC CF's business decision not to liquidate the Borrowers' intellectual property cannot constitute a commercially unreasonable disposition of collateral under the U.C.C. for the simple reason that there was no disposition of the collateral. The patents and trademarks remain (and always have remained) available to their title owners, Seneca and Brookfield, for disposition in whatever manner they deem advisable, subject to GMAC CF's priority lien.

Third, it is a stipulated fact that at all times relevant to this action, the Borrowers were either the title owners or the assignees of the intellectual property at issue. *See* Joint Pre-Trial Memorandum (Docket No. 86) at 25-26. As a result, Landay, as the President and CEO for the Borrowers, was free to sell the intellectual property on behalf of the Borrowers, subject to GMAC CF's lien. Indeed, the evidence will show that GMAC CF invited Landay to sell some of the intellectual property and apply the proceeds to the Borrowers' loan balance, but Landay declined that opportunity. Under such circumstances, Landay cannot blame GMAC CF for any failure to generate proceeds from the disposition of the intellectual property. If anything, Landay's failure to sell the intellectual property on his own constituted a breach of his duty to

mitigate whatever damages he claims to have sustained as a result of GMAC CF's decision not to foreclose on its security interest.

Even if Landay's opinions on the value of the Borrowers' patents and trademarks were legally relevant – and they are not – they still would not be admissible under Fed. R. Evid. 701. That rule, as amended in 2000, sets forth three requirements for the admission of lay opinion testimony: such testimony must be "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact at issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Landay's proffered opinion does not meet either the first or third prong of this test.

As for the first element of the Rule 702 test, Landay cannot honestly argue that his opinions about the value of patents and trademarks are based on rational perceptions. This is not a case where he is being called upon to opine as to issues involving appearances, manners of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, or the normal list of items that cannot be described factually in words apart from inferences. *See* Fed. R. Evid. 701, advisory committee notes. He is simply speculating on the value of the patents and trademarks in October 2001 based on what they might have been worth more than a year earlier. Indeed, Landay does not even have any basis for suggesting that the Brookfield patents and trademarks that Seneca acquired in September 2000 were worth $1.3 million at the time. While Seneca's asset purchase agreement with Craft House for the Brookfield assets placed a value of Brookfield's overall package of intellectual property at $1.6 million,[2] nothing in that contract or any other document suggests that the patents and trademarks were worth $1.3

---

[2] This purchase price allocation was made by an unknown third party for unknown reasons outside these proceedings. GMAC CF does not accept this figure as an accurate assessment of value.

million of that $1.6 million figure.[3]  In short, Landay picked that number out of thin air simply because it serves his litigation purposes.  Such testimony is not even close to the type of rationally-based opinion testimony contemplated by Rule 701 and should be excluded.

With regard to the third prong, the 2000 amendments to Rule 701 were specifically designed "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701, advisory committee notes.  "By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 ... by simply calling an expert witness in the guise of a layperson." *Id.*  "The amendment does not distinguish between expert and lay *witnesses*, but rather between expert and lay *testimony*." *Id.* (emphasis in original).  While courts have sometimes permitted owners of real or personal property to opine about that property's value, GMAC CF's research failed to uncover any cases in which a company's officer and/or shareholder was permitted to testify under Rule 701 as to the value of the company's patents and trademarks.

It is beyond reasonable debate that patent and trademark valuation is a form of "specialized knowledge within the scope of Rule 702." *See, e.g., Platinum Tech., Inc. v. Federal Ins. Co.*, 2001 WL 109814, *9 (N.D. Ill. Feb. 2, 2001) (stating that Rule 702 "extends to all specialized knowledge including the specialized knowledge of evaluating the value of trademarks."). *See also Shane v. Shane*, 891 F.2d 976, 984 (1st Cir. 1989) (allowing expert testimony on trademark valuation); *Leisure Time Entertainment v. Cow Vista*, 35 Fed. Appx. 565, 566 (9th Cir. 2002) (allowing expert testimony on copyright valuation); *Cascade Designs,*

---

[3]  He cannot testify as to the value of any individual patent or trademark; he never obtained an appraisal of the Borrowers' intellectual property; and he never made any market analysis of similar patents or trademarks.

*Inc. v. Commissioner of Internal Revenue*, 2000 WL 204380 (U.S. Tax Ct. Feb. 23, 2000) (permitting expert testimony on the valuation of patents); *Ventura v. Titan Sports, Inc.*, 65 F.3d 725, 734 (8th Cir. 1995) (allowing expert testimony on license and license royalty valuation). If Landay intended to offer evidence on such a highly specialized topic, he should have retained an expert and complied with the disclosure requirements relating to expert testimony. For whatever reason, Landay chose not to do so. This Court cannot permit him to evade the requirements of Fed. R. Civ. P. 26 by channeling an expert opinion through his own lay testimony.

Finally, Landay should be precluded from offering any opinion testimony regarding the value of the Borrowers' patents and trademarks because his failure to disclose this opinion until after discovery closed unfairly prejudiced GMAC CF's rights in this case. GMAC CF never had an opportunity to depose Landay about this opinion, which means that it never had any reason to hire its own expert witness to investigate those bases for Landay's opinion and possibly rebut that opinion. As far as GMAC CF knew, Landay's only proffered expert, Keith Lowey, had no opinion as to the value of the Borrowers' intellectual property. Therefore, there was no need for GMAC CF to solicit its own expert opinion on the topic. This Court should preclude Landay from engaging in such trial by ambush tactics.

## Conclusion

For all the foregoing reasons, this Court should grant GMAC CF's motion *in limine* and preclude Landay from offering any opinion testimony regarding the value of the Borrowers' patents and trademarks as of October 22, 2001.

|  |  |
|---|---|
|  | Respectfully submitted,<br>GMAC COMMERCIAL FINANCE LLC |
| DATED:  March 7, 2006 | /s/ John A. Houlihan<br>/s/ Mark B. Dubnoff<br>John A. Houlihan (BBO # 542038)<br>Mark B. Dubnoff (BBO # 637212)<br>EDWARDS ANGELL PALMER & DODGE LLP<br>111 Huntington Avenue<br>Boston, MA  02199<br>(617) 239-0100 |