UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DAVID L. LANDAY<br>    Plaintiff, | ) ) ) ) | |
| v. | ) ) | Civil Action No. 04-cv-11955-WGY |
| GMAC COMMERCIAL CREDIT LLC<br>and GMAC COMMERCIAL FINANCE<br>LLC,<br>    Defendants. | ) ) ) ) ) ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS
MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATING TO
ALLEGED ORAL MODIFICATIONS TO THE FACTORING AGREEMENT**

This Court should refuse to admit evidence of statements made by GMAC CF's former

employee, Paul Fitzgerald ("Fitzgerald"), which if admitted and credited would operate to orally

modify the Factoring Agreement (Joint Ex. 2) because settled New York law prohibits the oral

modification of written contracts which, like the Factoring Agreement, contain provisions

precluding oral modification. *See* Ex. 2 ¶14(g) at 12.

## I. INTRODUCTION

GMAC CF entered into the Factoring Agreement (Joint Ex. 2) with Seneca Sports, Inc.

("Seneca") and Brookfield International, Inc. ("Brookfield") (collectively, the "Borrowers") on

September 19, 2000.  Landay acknowledges reading the Factoring Agreement and reviewing the

document with his attorney.  Yet notwithstanding the express language of the Factoring

Agreement that precludes any oral modification of its terms, Landay grounds the last remnant of

his fraud claim (Count I) on the alleged oral representation of a dead man that squarely

contradicts a fundamental term of the Factoring Agreement. Landay claims that Fitzgerald[1]

"reiterated" in early 2001 that GMAC CF would provide the Borrowers with a Seasonal

Overadvance in May 2001, which, according to Landay, "amounted to a promise that GMAC

would exercise its discretion to make the Seasonal Overadvance in May of 2001." *See* Pl.'s

Mem. Opp. Defs.' Mot. Summ. J. at 11-12 (emphasis in original). Landay does not claim that

anyone else at GMAC CF made similar representations. Nor does he point to any writing in

which GMAC CF adopts or affirms Fitzgerald's alleged representation. In short, Landay's fraud

claim depends exclusively on his account of conversations he supposedly had with Fitzgerald in

early 2001.

Importantly, the alleged statement, if admitted and credited, would in effect materially

amend the Factoring Agreement by eliminating GMAC CF's discretion not to advance funds for

a Seasonal Overadvance. Given the tenuous nature of Seneca's financial position in September

2000 and the risky nature of the Brookfield acquisition, GMAC CF specifically retained the

discretionary right to accept or reject all requests for loans or advances.

> If you request, **we may in our discretion** make payments to you of the purchase price of Receivables in advance of the Settlement Date ("Advances") and cause documentary Letters of Credit ("Letters of Credit") to be issued for your account, subject to our right to withhold Reserves. All amounts which we pay or make available to you or for your account in excess of the purchase price of Receivables are loans and shall be chargeable to your account when paid or made available to you. **Notwithstanding anything to the contrary, herein or elsewhere, all Loans or Advances hereunder are to be made on a totally discretionary basis on our part....**Without limiting the **discretionary** nature of the Advances, upon the occurrence of an Event of Default, we may at our sole **discretion** make no further advances to you.

*See* Joint Exhibit 2 ¶4(a) at 1-2 (emphasis added).

---

[1]    Paul Fitzgerald passed away on September 16, 2003.

BOS_525750_5.DOC/JZANETTI

Landay himself admitted in his deposition that GMAC CF had full discretion under the

Factoring Agreement to advance or not advance loan funds:

> Counsel for GMAC CF: Did you understand that under the terms of the factoring agreement, GMAC's obligation to extend credit was entirely discretionary?
> Landay: Extend credit to who?
> Counsel for GMAC CF: Seneca-Brookfield
> **Landay: It's discretionary, yes.**
> Counsel for GMAC CF: And what's your understanding of what that means?
> Landay: It means they could refuse to lend [to] you if they choose to. I believe that would be language common in every loan agreement. (emphasis added).

Landay Deposition at 97:18-98:4.

The Factoring Agreement also provided that any modifications to the contract had to be

in writing. *See* Ex. 2 ¶14(a) at 12. Over the course of the first seven months of 2001, Landay

had ample opportunity to seek a specific written promise to provide the Overadvance financing

that he claims Fitzgerald promised. He failed to do so.

## II. ARGUMENT

If as Landay claims, Fitzgerald's representations "amounted to a promise that GMAC CF

would exercise its discretion to make the seasonal over-advance in May of 2001," evidence of

such a representation, if admitted and credited, would necessarily effect a material change in the

Factoring Agreement, by eliminating GMAC CF's discretion to decline to provide Seasonal

Overadvance funding months before it faced the decision. However, settled New York law

prohibits such a result.

It is undisputed that New York law governs the terms of the contract in this

action. Although GMAC CF's motion to exclude evidence of oral modifications to the

Factoring Agreement is admittedly an evidentiary issue, this Court should look to New

- 3 -

York substantive law to determine relevancy under Fed. R. Evid. 401 and 402. With two

narrow exceptions,[2] which do not apply in this case, New York law prohibits oral

modification of contracts that contain a provision prohibiting oral modification:

> A written agreement or other written instrument which contains a
> provision to the effect that it cannot be changed orally, cannot be changed
> by an executory agreement unless such executory agreement is in writing
> and signed by the party against whom enforcement of the change is sought
> or by his agent.

NY GEN OBLIG §15-301(1) (2006). In interpreting that statute, the Court of Appeals of

New York stated:

> The purpose of subdivision 1 of section 15-301 of the General Obligations
> Law, which was intended in part to compensate for the demise of the seal
> [citation omitted], was to assure the authenticity of an amendatory
> agreement; thus, the statute requires the dignity of a formal writing to
> insure the validity and genuineness of a contractual modification.

*DFI Communications, Inc. v. Greenberg*, 41 N.Y.2d 602, 606 (1977).

In short, the New York statute exists to prevent exactly what Landay seeks to

accomplish in this action. Landay – who was not a party to the Factoring Agreement –

claims that he reasonably relied on representations of a dead man. If made as Landay

now claims, Fitzgerald's representation would have resulted in an improper oral

modification of a New York contract in violation of settled New York law. As such it

---

[2] The two rare and narrow exceptions are the doctrines of partial performance and equitable
estoppel. In order to invoke either exception to the statute, the actions of a party must be
"unequivocally referable" to the oral modification and "must not otherwise be compatible with
the agreement as written." *Rose v. Spa Realty Associates*, 42 N.Y. 2d 338, 343-344 (1977). "In
order to be unequivocally referable, conduct must be inconsistent with any other explanation."
*Richardson & Lucas, Inc. v. New York Athletic Club*, 304 A.D. 2d 462, 463 (2003). The
standard, "is a stringent one because if the performance can be 'reasonably explained' by any
other possible reason than the alleged oral modification, the performance is equivocal." *Blue
Ridge Investments, LLC v. Anderson-Tully Company*, 2005 WL 44382 at *5 (S.D.N.Y, Jan. 10,
2005).

BOS_525750_5.DOC/JZANETTI

would not have been enforceable against GMAC CF. This Court cannot permit Landay to circumvent settled New York law and accomplish indirectly via a fraud claim a result that New York law prevents the Borrowers from achieving directly via a contract action. In order to prevent such a result, this Court should refuse to admit evidence relating to any improper oral modification of the Factoring Agreement.

### III. Conclusion

New York law strictly enforces contract clauses that require any changes to the contract to be in writing. It is undisputed that the Factoring Agreement contains such a clause. As such, all evidence relating to any alleged oral modifications of the Factoring Agreement should be excluded from evidence, since such testimony if admitted and credited would in effect result in an improper oral modification of a contract in violation of settled New York law.

Respectfully submitted,

GMAC COMMERCIAL FINANCE LLC

/s/ John A. Houlihan
/s/ Mark B. Dubnoff
John A. Houlihan (BBO # 542038)
Mark B. Dubnoff (BBO # 637212)
Edwards Angell Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA 02199
617-239-0100